**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

_____

DONALD FELL,

              Movant,

     v.

UNITED STATES OF AMERICA,

              Respondent.

_____

)
)
)
)
)
) 2:01-CR-12-01
)
)
)
)
)
)
)
)
)

**MOTION OF DONALD FELL FOR COLLATERAL RELIEF, TO VACATE, SET ASIDE, OR CORRECT SENTENCE, AND FOR A NEW TRIAL PURSUANT TO 28 U.S.C. § 2255**

# VOLUME V OF VII

# EXHIBITS 146-210

# TABLE OF CONTENTS

## INDEX TO EXHIBITS

## NON-SEALED EXHIBITS

Exhibit

Donald Fell Mitigation Binder......................................................................................................1

Van Gorp Report (Apr. 6, 2001).................................................................................................2

Mills Report (May 7, 2001) .........................................................................................................3

Lipman Report (May 14, 2001) ...................................................................................................4

Cunningham Report (June 14, 2005) ..........................................................................................5

Declaration of Mark Cunningham, Ph.D., ABPP (June 27, 2005) ..................................................6

Wetzel Report (Oct. 11, 2002) ....................................................................................................7

Rabun Report (Dec. 31, 2002) ....................................................................................................8

Wetzel Report (June 27, 2005) ....................................................................................................9

Welner Report (July 5, 2005)......................................................................................................10

CYS Contact Sheet (Apr. 22, 1985) ...........................................................................................11

CYS Contact Sheet (May 8 1985) ..............................................................................................12

CYS Contact Sheet (Sept.—Oct.1985).......................................................................................13

CYS Contact Sheet (Aug. 8, 1991).............................................................................................14

CYS Contact Sheet (Aug. 8, 1991).............................................................................................15

CYS Contact Sheet (Aug. 8, 1991).............................................................................................16

CYS Contact Sheet (Oct. 1991)..................................................................................................17

First Hospital Wyoming Valley Discharge Report (Oct. 31, 1991) .............................................18

Wilkes-Barre General Hospital Progress Record (Apr. 1992).....................................................19

Wilkes-Barre General Hospital Adolescent Psych. Unit Interdisciplinary Progress Record (Apr. 1992)..................................................................................................................20

Wilkes-Barre General Hospital Discharge Face Sheet (June 6, 1993) .........................................21

Wilkes-Barre General Hospital Adolescent Psychiatric Unit Nursing Record (Apr. 1992)..........22

Wilkes-Barre General Hospital Adolescent Psychiatric Unit Nursing Record (Jan. 1993) ..........23

Wilkes-Barre General Hospital Adolescent Psychiatric Unit Nursing Record (June 1993) .........24

CRR Group Home Selection and Review (Sept. 22, 1993).........................................................25

Psychological Consultation of Donald Fell (Apr. 12, 1994) ........................................................26

Service Plan (Medical) (1994).....................................................................................................27

Service Plan (Medical – Dental) (1995) ......................................................................................28

CYS Contact Sheet (May 26, 1995) ............................................................................................29

Intentionally Left Blank...............................................................................................................30

Rutland City Police Department Incident Table (Jan. 11, 1996)..................................................31

Rutland City Police Department Incident Table (Sept. 4, 1996) ..................................................32

Rutland City Police Department Incident Table (Nov. 6, 1996) ..................................................33

Rutland City Police Department Incident Table (Nov. 6, 1996) ..................................................34

Rutland City Police Department Incident Table (Mar. 4, 1997)...................................................35

Rutland City Police Department Incident Table (July 3, 1997).....................................................36

Rutland City Police Department Incident Table (Sept. 16, 1997) ................................................37

Rutland City Police Department Incident Table (Jan. 14, 1998)...................................................38

Rutland City Police Department Incident Table (June 5, 1998)....................................................39

Rutland City Police Department Incident Table (July 28, 1998)...................................................40

Rutland City Police Department Incident Table (Apr. 30, 1999) .................................................41

Rutland City Police Department Incident Table (May 26, 1999)..................................................42

Rutland City Police Department Incident Table (Oct. 30, 1999) ................................................43

Rutland City Police Department Incident Table (Feb. 20, 2000) ................................................44

Luzerne County Detention Center Admission Page (Sept. 10, 1996) ..........................................45

Sullivan County Sheriff's Department Criminal Complaint (Aug. 12, 2000) ..............................46

New York State Incident Report and Arrest Report (Aug. 12, 2000) ...........................................47

Sullivan County Sheriff's Department Statement of Donny McNeeley (Aug. 12, 2000) .............48

Sullivan County Sheriff's Department Statement Joshua Jones (Aug. 12, 2000) ........................49

New York State Incident Report (Aug. 12, 2000) .......................................................................50

Sullivan County Sheriff's Department Statement (Teri Fell) (Aug. 12, 2000) ............................51

Sullivan County Sheriff's Department Handwritten Notes (Aug. 12, 2000) ...............................52

Sullivan County Sheriff's Department Supporting Deposition (Aug. 12, 2000) ..........................53

Sullivan County Sheriff's Department Handwritten Notes (Aug. 12, 2000) ...............................54

Sullivan County Sheriff's Department Handwritten Notes (Aug. 12, 2000) ...............................55

Sullivan County Sheriff's Department Handwritten Notes (Aug. 12, 2000) ...............................56

FBI FD-302 (Nov. 30, 2001 – Dec. 1, 2001) .............................................................................57

Intentionally Left Blank ............................................................................................................58

Intentionally Left Blank ............................................................................................................59

Interview of Donald Fell at Johnson County Sheriff's Department (Dec. 1, 2000) ....................60

Interview of Donald Fell at Johnson County Sheriff's Department (Dec. 2, 2000) ....................61

Interview of Donald Fell at Johnson County Sheriff's Department (Dec. 2, 2000) ....................62

New York State Police Investigation Report (Dec. 1, 2000) ........................................................63

New York State Police Supporting Deposition (Dec. 2, 2000) ...................................................64

Autopsy Report of Teresca King (Dec. 2, 2000) ........................................................................65

Interview of Donald Fell at Johnson County Sheriff's Department (Dec. 2, 2000) ......................66

United States Marshals Service Prisoner Intake ...........................................................................67

New York State Police Supporting Deposition of Francis Bellantoni (Dec. 1, 2000)...................68

Warrant Information Network Subject Report (Dec. 15, 2000) ......................................................69

Letter from A.U.S.A. Gregory Waples to Alex Bunin, Gene Primomo, and John Pacht
    (Dec. 22, 2000)  .......................................................................................................................70

Vermont Department of Corrections Inmate Disciplinary Report (Dec. 27, 2000) ......................71

Vermont Department of Corrections Inmate Disciplinary Report (Dec. 27, 2000) ......................72

NWSCF Facility Incident Report (Dec. 27, 2000) .......................................................................73

Letter from A.U.S.A. Gregory Waples to Alex Bunin, Gene Primomo, and John Pacht
    (Dec. 28, 2000) .......................................................................................................................74

Prison Medical Records of Donald Fell.........................................................................................75

2001 FBI Report ............................................................................................................................76

Vermont Department of Corrections Disciplinary Hearing Report (Dec. 27, 2000).....................77

FBI Report (Jan. 4, 2001) .............................................................................................................78

Letter from A.U.S.A. Gregory Waples to Alex Bunin, Gene Primomo, and John Pacht
    (Jan. 8, 2001)...........................................................................................................................79

Letter from Alex Bunin to A.U.S.A. Gregory Waples (Jan. 9, 2001) ...........................................80

FBI FD-192 (Jan. 22, 2001)..........................................................................................................81

Letter from A.U.S.A. Gregory Waples to Alex Bunin, Gene Primomo, and John Patch
    (Jan. 24, 2001)..........................................................................................................................82

Redacted E-mail (Mar. 15, 2001) .................................................................................................83

Letter from A.U.S.A Gregory Waples to Alex Bunin, Gene Primomo, and John Pacht
    (Mar. 26, 2001) .......................................................................................................................84

New York State Certificate of Disposition (Mar. 28, 2001).........................................................85

Letter from A.U.S.A. Gregory Waples to Alex Bunin, Gene Primomo, and John Patch (Apr. 5, 2001)................................................................................................................86

Memorandum from Cynthia Ayres to Dr. Mark Mills (Apr. 23, 2001).........................................87

Letter from Peggy Peterson, Luzerne County CYS......................................................................88

Letter A.U.S.A. Gregory Waples to Alex Bunin, Gene Primomo, and John Pacht (Apr. 5, 2001)................................................................................................................90

Handwritten D Management Team Meeting Notes (Apr. 21, 2001) ............................................91

Vermont Department of Corrections Facility Report Form (June 13, 2001)................................92

Correctional Medical Services Interdisciplinary Progress Notes (July 2001) ..............................93

Pennsylvania State Police Central Repository Criminal History of Christopher Eike .................94

Handwritten D Management Team Meeting Notes (July 16, 2001)..............................................95

D Wing Activity Sheet...................................................................................................................96

Redacted E-mail (Sept. 20, 2001) ...............................................................................................97

Redacted E-mail (Sept. 20, 2001)................................................................................................98

Redacted E-mail (Sept. 20, 2001)................................................................................................99

Redacted E-mail (Sept. 20, 2001)..............................................................................................100

Redacted E-mail (Sept. 20, 2001)..............................................................................................101

Vermont Department of Corrections Facility Report Form (Sept. 20, 2001)..............................102

Redacted E-mail (Sept. 20, 2001)..............................................................................................103

Handwritten note of Bobby Lee..................................................................................................104

Handwritten note of Bobby Lee..................................................................................................105

Individual Voir Dire (May 4, 2005).............................................................................................106

Redacted E-mail (Sept. 25, 2001)..............................................................................................107

Commonwealth of Pennsylvania Police Criminal Complaint against Christopher Eike (Nov. 7, 2001) ........................................................................................................108

Prison Health Records of Robert Lee ........................................................................109

Intentionally Left Blank ............................................................................................110

Intentionally Left Blank ............................................................................................111

Vermont Department of Corrections Incident Report (Mar. 17, 2004) ....................112

Intentionally Left Blank ............................................................................................113

FOIA 302 (Apr. 6, 2005) ..........................................................................................114

Letter to Judge Sessions from A. Bunin (Apr. 27, 2005) .........................................115

Sealed Document Order, Case No.:2:01-CR-12 (Apr. 28, 2005) .............................116

Jury Instructions .......................................................................................................117

Intentionally Left Blank ............................................................................................118

FOIA 302 (May 9, 2005) ..........................................................................................119

Intentionally Left Blank ............................................................................................120

Intentionally Left Blank ............................................................................................121

Letter from William B. Darrow and Stephen Kelly to Alexander Bunin, Gene Primomo, and Paul Volk..........................................................................................................................122

Blank Juror Questionnaire ........................................................................................123

Juror No. 26 Questionnaire (May 13, 2005) .............................................................124

Juror No. 162 Questionnaire (May 23, 2005) ...........................................................125

Intentionally Left Blank ............................................................................................126

Intentionally Left Blank ............................................................................................127

FBI Report (June 14, 2005) ......................................................................................128

FBI 302 Report of Interview with Christopher Eike (June 15, 2005) .......................129

United States' Trial Memorandum, United States v. Donald Fell .............................................130

Letter to Judge Sessions from David V. Kirby (June 29, 2005) ..................................................131

FBI 302 Report of Interview with [Redacted] (July 5, 2005) .....................................................132

FedEx Air Bill from Town of Bethel Justice Court to Andrew Bartnick (July 6th, 2006)..........133

Letter to Judge Sessions from Alex Bunin (July 8, 2005) ...........................................................134

Stipulation (July 8, 2005)..............................................................................................................135

Intentionally Left Blank................................................................................................................136

Memorandum to Alex Bunin from Paul Volk (July 20, 2005).....................................................137

Donald Fell's Motions for Judgment of Acquittal and New Trial, United States v. Donald Fell
     (Aug. 26, 2005) ......................................................................................................................138

Affidavit of Richard Wetzel, Ph. D (Sept., 12, 2005)..................................................................139

Appeal from the United States District Court for the District of Vermont, Brief of the United
     States, United States v. Donald Fell (May 25th, 2007) ..........................................................140

Letter to Victims Resource Center from Wanda Rivera (Apr. 21, 2005) ....................................141

Letter from Victims Resource Center to Andrew Bartnick (May 4, 2005) ................................142

School Heath Record of Donald Fell ............................................................................................143

Intentionally Left Blank................................................................................................................144

Wilkes-Barre General Hospital Progress Record of Donald Fell (June 1993) ............................145

Raymond Kotzer and Theresa Kotzer Divorce Records (Oct. 22, 1967) ....................................146

Arrest Warrant Affidavit for Donald Fell, Sr. (Mar. 4, 1990) .....................................................147

CYS Contact Sheet (Apr. – May 1990) ........................................................................................148

Jenkins Township Incident Report (Apr. 21, 1990)......................................................................149

CYS Contact Sheet (June 1990) ...................................................................................................150

Service Planning/Family Functioning Report (June 1990)...........................................................151

CYS Contact Sheet (Nov. 28, 1990)........................................................................................152

CYS Contact Sheet (Jan. 14, 1991) ......................................................................................153

CYS Contact Sheet (Feb. 14, 1991)......................................................................................154

Intentionally Left Blank........................................................................................................155

Intentionally Left Blank........................................................................................................156

CYS Contact Sheet (Mar. 19, 1991) .....................................................................................157

Suspected Child Abuse Referral Note (Apr. 18, 1993) ..............................................................158

CYS Contact Sheet (May 1, 1991) .......................................................................................159

CYS Contact Sheet (May 2, 1991) .......................................................................................160

CYS Contact Sheet (June 4, 1991) ........................................................................................161

CYS Contact Sheet (June 24, 1991) ......................................................................................162

CYS Contact Sheet (July 8, 1991) ........................................................................................163

CYS Contact Sheet (Dec. 20, 1991) ......................................................................................164

CYS Contact Sheet (Dec. 23, 1991) ......................................................................................165

CYS Contact Sheet (Jan. 13, 1992) .......................................................................................166

CYS Contact Sheet (Mar. 3, 1992).........................................................................................167

CYS Contact Sheet (Apr. 20, 1992)........................................................................................168

Intentionally Left Blank........................................................................................................169

Wilkes-Barre General Hospital Adolescent Psych. Unit Progress Record (1993) ......................170

CYS Client Information Profile (Apr. 18, 1993) ....................................................................171

CYS Contact Sheet (Apr. 20, 1993)........................................................................................172

Police Report (Jan. 26, 2001)................................................................................................173

Intentionally Left Blank........................................................................................................174

Wilkes-Barre General Hospital Adolescent Psych. Unit Progress Record (June 8, 1993)..........175

Office of the Sheriff, Luzerne County (Aug. 31, 1993)................................................................176

CYS Client Information Profile (Jan. 19, 1994) .........................................................................177

CYS Contact Sheet (Jan. 24, 1994) ............................................................................................178

CYS Contact Sheet (Jan. 24, 1994) ............................................................................................179

CYS Contact Sheet (Feb. 4, 1993)..............................................................................................180

CYS Contact Sheet (Mar. 10, 1994) ...........................................................................................181

CYS Contact Sheet (Mar. 24, 1994) ...........................................................................................182

CYS Contact Sheet (Apr. 7, 1994)..............................................................................................183

CYS Contact Sheet (Apr. 12, 1994)............................................................................................184

CYS Contact Sheet (Apr. 12, 1994)............................................................................................185

St. Michael's School Psychiatric Note (May 1994)....................................................................186

St. Michael's School Psycho Social Summary (Apr. 1994) .......................................................187

FBI Identification Record for Debra Fell (June 9, 1994).............................................................188

Wilkes-Barre Police Department Jailer's Report (Oc. 18, 1994) ...............................................189

Arrest Report for John Rhodes (Oct. 18, 1994) ..........................................................................190

Citation for John Rhodes (Oct. 18, 1994) ..................................................................................191

Wilkes-Barre Police Special Report for John Rhodes (Oct. 18, 1994).......................................192

Risk /Severity Assessment Form (Oct. 26, 1994).......................................................................193

Arrest Report for John Rhodes (Jan. 12, 1995) ..........................................................................194

Arrest Warrant for John Rhodes (Feb. 9, 1994)..........................................................................195

Arrest Warrant for John Rhodes (Jan. 12, 1995) ........................................................................196

CYS Contact Sheet (Jul. 1995) ..................................................................................................197

Substance Abuse Evaluation for Donald Fell (Sept. 16, 1996) ...................................................198

Affidavits Submitted in Motion in Limine in United States v. Haynes (May 24, 2000).............199

Letter to Judge Niedermeier (Dec. 5, 2000) ...............................................................................200

Letter to Charles Tetzlaff (Dec. 5, 2000)....................................................................................201

Letter to Judge Murtha (Dec. 11, 2000).......................................................................................202

Rutland Herald Article (May 13, 2002)........................................................................................203

Burlington Free Press Article (May 15, 2002)..............................................................................204

Donald Fell's Objections to Punishment-Related Questions (Jun. 10, 2002).............................205

Declaration of Thomas V. Ryan ...................................................................................................206

Letter to David Kirby (Feb. 23, 2005) .........................................................................................207

Letter to Judge Sessions (Jun. 29, 2005)......................................................................................208

Special Verdict Form (Jul. 14, 2005)............................................................................................209

Criminal History Record of Deborah Fell (Apr. 10, 1996) .........................................................210

Rutland City Police Department Incident Report (1996) .............................................................211

Rutland City Police Department Report (1994-2000) ..................................................................212

New York State Police Investigation Report (Dec. 1, 2000)........................................................213

Criminal Docket for Christopher Eike (Oct. 8, 2002)  ...............................................................214

Government Opposition to Motion (Jul. 10, 2002).......................................................................215

FBI Record (Apr. 25, 2005)...........................................................................................................216

Donald Fell Event Table (Apr. 30, 2005) .....................................................................................217

FBI Record (May 11, 2005)...........................................................................................................218

FBI Record (May 16, 2005)...........................................................................................................219

FBI Record (Jun. 9, 2005)..............................................................................................................220

FBI Record (Jun. 6, 2005)..............................................................................................221

Adolescent Psychiatric Reports for Donald Fell (1993) ...............................................222

Bail Certificate (Mar. 4, 1997).....................................................................................223

CYS Contact Sheet (May 20, 1992) .............................................................................224

FBI Record (Jun. 27, 2005)...........................................................................................225

FBI Record (Jun. 9, 2005).............................................................................................226

Statement by Teri Fell to Sullivan County Sheriff (Aug. 12, 2000)............................227

Deposition of Lance Rowland (Aug. 12, 2000).............................................................228

Certificate of Disposition (Aug. 16, 2000) ..................................................................229

Individual Voir Dire (Jun. 1, 2005) ..............................................................................230

Police Report (Nov. 1, 2002) ........................................................................................231

Wilkes-Barre Times Leader Article (Oct. 5, 2004) ......................................................232

Law and Human Behavior Article (1991) .....................................................................233

Specialty Guidelines for Forensic Psychology .............................................................234

United States v. Fell Court Order (Apr. 7, 2005)..........................................................235

Transcript Excerpt (May 13, 2005)...............................................................................236

Intentionally Left Blank................................................................................................237

Fell Motion to Dismiss Notice of Intent to Seek Death Penalty ..................................238

Declaration of Juror 23 .................................................................................................239

Conviction Record of Juror 26 (Apr. 2, 1996)..............................................................240

Declaration of Juror 143 ...............................................................................................241

Declaration of Sally Fell Francis ..................................................................................242

Declaration of Ronald Cupano.......................................................................................243

Declaration of Rose O'Hop ..................................................................................................244

Declaration of Claudia Bublo ..............................................................................................245

Trial Transcript Excerpt (May 13, 2005)..............................................................................246

Declaration of Robert Fell ...................................................................................................247

Declaration of Dorothy Grivner............................................................................................248

Declaration of John Timek....................................................................................................249

Declaration of Florence Wallace ..........................................................................................250

Declaration of John Gacek....................................................................................................251

Declaration of Adele Gacek .................................................................................................252

Declaration of Ernie Schuldaski ..........................................................................................253

Declaration of Jon Migatulski...............................................................................................254

Declaration of Steve Ratte ...................................................................................................255

Declaration of Marc Pelkey ..................................................................................................256

Voir Dire Transcript..............................................................................................................257

Declaration of Richard T. Callery, M.D., F.C.A.P. ...............................................................258

Intentionally Left Blank........................................................................................................259

Declaration of Mark J. Mills, J.D., M.D. .............................................................................260

Intentionally Left Blank........................................................................................................261

Declaration of Andrew Bartnick............................................................................................262

Declaration of Gene Primomo ..............................................................................................263

Declaration of Alexander Bunin ...........................................................................................264

Declaration of Cynthia Ayres ...............................................................................................265

Declaration of Sandra Shum .................................................................................................266

Declaration of Deborah Wisell ...................................................................................267

Declaration of Anthony Mistretta .............................................................................268

Declaration of Dora Carter........................................................................................269

Declaration of Jeff Van Buren ..................................................................................270

Declaration of Pat Johnson .......................................................................................271

Declaration of Mary Bell ..........................................................................................272

Transcript of Juvenile Proceedings (Apr. 8, 1994) ...................................................296

Childline Record (Apr. 22, 1991) ..............................................................................297

Officers Report...........................................................................................................298

Prison Record (Jun. 11, 2001)....................................................................................299

Declaration of Michael Sikirica ................................................................................300

Declaration of Francis Bellantoni .............................................................................301

Declaration of Lucinda Fruean .................................................................................302

Declaration of Michael Leight ..................................................................................303

Declaration of Paul Stoss...........................................................................................304

Declaration of Paul Volk ...........................................................................................305

Declaration of Charles Wetli .....................................................................................306

Birth Certificate of Theresa Kozersky (Aug. 9, 1935)...............................................307

Death Certificate of Frances Kozerski (Apr. 20, 2001) .............................................308

Declaration of John Edens .........................................................................................309

Government Motion in Limine to Exclude Report (Jul. 6, 2005)...............................310

Individual Voir Dire Excerpt (Jun. 6, 2005)..............................................................311

Photographs of Fell Home .........................................................................................312

Declaration of Jamie Dominick ...............................................................................................313

## SEALED EXHIBITS

5:01-cr-00012-gwc    Document 301-48    Filed 03/21/11    Page 16 of 45

15

# EXHIBIT 146



416

NO. Oct. TERM 19 67

Raymond Kotzen

VS.

Theresa Kotzen
for Divorce

### NOTICE

THESE PAPERS MUST NOT BE
TAKEN FROM THE OFFICE WITHOUT
AN ORDER FROM COURT.

THE DATE OF REMOVAL AND
TO WHOM DELIVERED MUST
ALWAYS BE NOTED ON FILING
CARD BY FILE CLERK AND
RECEIPT TAKEN THEREFOR.

Common Pleas of Luzerne County.
CERTIFIED FROM THE RECORDS THIS
21 DAY OF Sept A.D. 20 10
CAROLEE MEDICO OLENGINSKI
PROTHONOTARY
PER

FELL-00001801



416 October Term 1967

# Decree in Divorce

## to

Raymond Kotzer

FELL-00001802

# In the Court of Common Pleas of Luzerne County

Raymond Kotzer

Plaintiff.

vs.

Theresa Kotzer

Defendant.

No. 416 October Term, 19 67

# Decree in Divorce

Now December 2 , 19 6 7 , the Court having carefully read, scrutinized and considered the evidence in this case and the Master's findings of fact, conclusions of law and discussion of the same, and proceeded to determine the same as to law and justice appertain

Do sentence and decree that Raymond Kotzer be divorced and separated from the nuptial ties and bonds of matrimony heretofore contracted between h im the said Raymond Kotzer the Plaintiff, and the said Theresa Kotzer Defendant.

And that their said marriage be dissolved; and that thereupon all and every the duties, rights and claims accruing to either the said Raymond Kotzer or the said Theresa Kotzer at any time heretofore, in pursuance of said marriage, shall cease and determine.

By the Court,

_____ J.

FELL-00001803

AFFIDAVIT OF NON MILITARY SERVICE

OF DEFENDANT
************************************

COMMONWEALTH OF PENNSYLVANIA :
                              : SS
COUNTY OF LUZERNE             :


___BARBARA A. TRUSKOWSKI_____being duly sworn according to

law, does depose and say that she did, upon request of _____

__CLEMENT E. KISAILUS, ESQ., ATTORNEY FOR RAYMOND KOTZER_____

investigate the status of _____THERESA KOTZER_____

with regards to the Soldiers' and Sailors' Civil Relief Act of 1940;

and that she made such investigation personally_____

and your affiant avers that_____THERESA KOTZER_____

is/are not now, nor was/were she/they, within a period of three months

last, in the military or naval service of the United States within the

purview of the aforesaid Soldiers' and Sailors' Relief Act of 1940.

_Barbara A. Truskowski_

Sworn to and subscribed before me

this _22_ day of _October_, 196_7_.

_Clement E. Kisailus_

CLEMENT E. KISAILUS, Notary Public
Wilkes-Barre, Luzerne Co., Pa.
My Commission Expires July 6, 1970

FELL-00001804

FELL-00001805

IN THE COURT OF COMMON PLEAS OF
LUZERNE COUNTY
In Divorce

NO. 416      OCTOBER TERM, 1967

RAYMOND KOTZER,

                    Plaintiff,

          vs.

THERESA KOTZER,

                    Defendant.

T E S T I M O N Y

Phyllis Usher
Standing Commissioner

FELL-00001806

RAYMOND KOTZER,                    :  IN THE COURT OF COMMON PLEAS OF
                    Plaintiff,           LUZERNE COUNTY
                                   :
     vs.                                    In Divorce
                                   :
THERESA KOTZER,
                    Defendant.  :  NO. 416        OCTOBER TERM, 1967

T E S T I M O N Y

Testimony taken at a hearing held in the office of the Master, Joseph V. Kasper, Esquire, 35 N. Franklin Street, Wilkes-Barre, Pennsylvania, on Thursday, November 2, 1967, at 11:00 o'clock A.M., pursuant to a notice given by the Master.

APPEARANCES

Joseph V. Kasper, Esq., .. .. .. .. .. .. Master

Raymond Kotzer, .. .. . .. .. .. .. .. .. Plaintiff in person

Clement E. Kisailus, Esq., .. .. .. .. .. Counsel for Plaintiff

The defendant, Theresa Kotzer, was not present at the hearing, neither was she represented by counsel, and was therefore considered to be in default.

BY:  MR. KISAILUS.

If it please the Master, I would like at this time to offer into evidence the files in this case, consisting of the following, Complaint in Divorce, with Notice to Plead endorsed thereon, filed September 25, 1967;  Affidavit of Charles Prohaska, Deputy Constable, evidencing that he served a certified copy of the aforesaid Complaint in Divorce personally upon the defendant, Theresa Kotzer, at her place of residence, 229 N. Washington Street, Wilkes-Barre, Pennsylvania, on September 25, 1967, making known to her the contents thereof, filed September 26, 1967;  Motion for Appointment of Master and Order of Court appointing Joseph V. Kasper, Esquire, Master

FELL-00001807

in these proceedings, signed Hourigan, J., filed October 18, 1967;  Praecipe for Appearance by Frank McGuigan, Esquire, on behalf of the Defendant, filed October 23, 1967·  Notice of Master's Hearing fixing Thursday, November 2, 1967, at 11:00 A.M., and the office of the Master, 35 N. Franklin Street, Wilkes-Barre, Pennsylvania, as the time and place for the hearing, and attached thereto  certification by Joseph V. Kasper, Esq., Master, that he did personally serve a certified copy of the aforesaid Notice of Master's Hearing on the Plaintiff, c/o his Attorney, Clement E. Kisailus, Esq., and on the defendant, c/o her attorney, Frank McGuigan, Esq., on October 23, 1967, filed October 24, 1967;  Acceptance of Service of aforesaid Notice of Master's Hearing by Frank McGuigan, Esq., on behalf of the Defendant.

BY:  THE MASTER.

The files are accepted and placed of record.

RAYMOND KOTZER, PLAINTIFF, BEING DULY SWORN, TESTIFIED AS FOLLOWS:
PRELIMINARY QUESTIONS BY:  THE MASTER.

Q.  What is your full name?

A.  Raymond Kotzer.

Q.  And your date of birth?

A.  REDACTED - FELL

Q.  Where do you presently reside?

A.  REDACTED - FELL            Wilkes-Barre, Luzerne County, Pa.

Q.  Where were you born?

A.  In Pennsylvania.

Q.  Is this your first marriage?

A.  Yes.

Q.  Are you of the white race?

A.  Yes.

Q.  What is your usual occupation?

A.  Night shift foreman.

Q.  What was your wife's full maiden name?

A.  Theresa Frances Kyzerski.

Q.  And her date of birth?

A.  REDACTED - FELL

Q.  Where does she presently reside?

A.  REDACTED - FELL          Wilkes-Barre, Luzerne County, Pa.

Q.  Is this her first marriage?

A.  Yes.

Q.  Is she of the white race?

A.  Yes.

Q.  What is her usual occupation?

A.  Sewing machine operator.

Q.  Where did this marriage take place?

A.  In Wilkes-Barre, Luzerne County, Pennsylvania.

Q.  On what date?

A.  August 29, 1953.

Q.  Were any children born as a result of this marriage?

A.  Yes, three.

Q.  What are their names and ages?

A.  Deborah Ann, 13 years, Sandra Jean, 11 years and Donna
Marie, 8 years.

Q.  You, the husband, are the plaintiff in this action?

A.  Yes.

Q.  Who has custody of the three minor children?

A.  My wife.

Q.  On what legal grounds are you seeking this divorce?

A.  On the grounds of indignities.

BY:  THE MASTER.

    That's all for now, thank you.

= # =

FELL-00001809

DIRECT EXAMINATION BY: MR. KISAILUS.

Q. Mr. Kotzer, you are the plaintiff in this divorce action against your wife, is that correct?

A. Yes.

Q. And you live at REDACTED - FELL          Wilkes-Barre?

A. That's correct.

Q. And your wife is Theresa Kotzer?

A. That's correct.

Q. And she lives at REDACTED - FELL          in the City of Wilkes-Barre.

A. That's right.

Q. And both of you are citizens of the Commonwealth of Pennsylvania and of the United States?

A. That's right.

Q. And both of you have resided here in Luzerne County for more than 2 years prior to the filing of this Complaint.

A. That's right.

Q. Now, you were married on the 29th August, 1953 by whom?

A. The Reverend Kreskiewicz.

Q. And at what Church was that?

A. Holy Resurrection Russian Orthodox Church on North Main Street.

Q. Now, for the convenience of the Court, Mr. Kotzer, I want you to relate in your own words, exactly what happened to your marriage, why you are alleging that you have grounds for divorce, and relate these incidents in terms of where you lived. That is to say, where did you first move to after you were married?

A. On Washington Street, right above Butler and Washington Streets there. We lived in a 2 room basement apartment.

Q. O.K. Now, will you tell the Master in your own words what are some of the things that happened immediately after your

- 4 -

FELL-00001810

marriage between you and your wife.

A. Well, she was swearing, throwing things at me, cursing at me, filthy language, I can't even repeat in front of the young lady, and she was hanging around beer gardens Cornis's and California Bar, in fact, she worked in the California Bar at the time.

Q. In Wilkes-Barre?

A. In Wilkes-Barre. And she was seen coming out of the California Bar many times with more than one man.

Q. O.K. Now, let's start with the drinking. How much would she drink, and how often?

A. She would drink about a fifth of liquor every week.

Q. And she'd become intoxicated?

A. Intoxicated.

Q. And describe her attitude and her conduct when she was intoxicated towards you.

A. Well, very abusive, she swore at me, whatever she had in her hand she threw at me, she smashed dishes and everything else.

Q. Now, let's talk about this radical behavior. What would she throw at you?

A. Knoves, pots, pans, dishes.

Q. And were you struck by these objects?

A. Many times.

Q. Were you injured?

A. Oh yes, she caught me when she threw a knife here, it's still there, and she cut me with a knife on the hand, she hit me over the head with a bottle.

Q. Was it necessary for you to see a doctor?

A. I went up to the General Hospital, but I never reported that my wife did it.

Q. But medical care was necessary.

A. Right.

- 5 -

FELL-00001811

Q. Now, let's talk about this cursing and swearing. What were some of the words that you would be able to tell the Court she used against you?

A. Son of a bitch.

Q. She used the four-letter word?

A. The four-letter word, she used a little more than that word too, but I just can't repeat it in front of this young lady here. I mean, filthy language.

Q. What other words?

A. Goddam it, every possible curse word in the book she used.

Q. Now, did she use this language in a loud tone of voice?

A. Loud enough so the whole neighborhood hears it.

Q. And did the neighborhood hear it?

A. That's right.

Q. Did you ever receive complaints about this?

A. Yes, many times.

Q. Now, you stated that you had arguments with your wife, would you tell us how often you had these arguments?

A. Well, every night, it seems like. I used to work night shift, and every time I'd come home, she was either drinking, or she neglected the children, the children weren't being properly taken care of, there was neglect over me, she never had my meals ready.

Q. Did she wash your clothes properly?

A. She washed my clothes.

Q. Properly?

A. Not properly, they were washed.

Q. Did she clean the house?

A. No. I had many people come over to the house and they all used to say how dirty my wife was as a housekeeper.

Q. Did she take care of the children well and properly

A. No, not well.

Q. Now, what was the reason for these arguments basically, the

- 6 -

FELL-00001812

general reason?

A. Basically because she was drinking and running around with men and I used to come home and I used to tell her, "Theresa, sit home, you have children to take care of." She never wanted to sit home, she just wanted to run around.

Q. Did you drink at that time?

A. No, I didn't.

Q. Now, let's talk about this running around. How do you know she was running around?

A. People used to come and tell me, and in fact, a couple of years back, I caught her with a man, about 2 years back. Me and my friend went down having something to eat, and here she's pulling in with another man in the car, she had a car at the time. I told Theresa, I said, "Get home," I says, "You got children." I told the man to take off. He said, "Forget it, buddy," he said, "You have nothing to do with this woman," I says, "She's my wife." He said, "No it isn't." I said, "Don't tell me she's not." And she said she didn't want to come home.

Q. Is there any other incident you can tell us about?

A. Well, when we were living on Madison Street up there, she went to a Christmas party, she was drunk, fell down the steps, I said, "Theresa, let's go home," I come up to pick her up, she said, "No, I'm going home with my boss." So I finally drug her out of the place, not drug her, but took her out of the place and I got her mother, and I says to her mother, "Come on, help me take her up to the house," I says, "She's drunk." And about 2 days later after that she told me that my older daughter wasn't mine, and on Public Square there she was walking hand in hand. I said, "Theresa, let's go home." She said, "No." In fact she went back in Cornis's and she come after me with an axe, and it was right in the bar room.

-- 7 --

FELL-00001813

Q.  Now, did you ever see her walking?

A.  Yes, I did.

Q.  When?

A.  Many times, many times.

Q.  With who?

A.  With different men, I couldn't tell you their names.

Q.  You don't know their identity, but they were with her.

A.  Right.

Q.  Was she close and intimate?

A.  She was hand in hand.

Q.  She was hand in hand and she'd be walking.

A.  Right.  My brother seen her couple times with men walking out of a barroom.  This was when he come home from work.

Q.  And did your brother tell you about this?

A.  He told me about it.

Q.  Now, was your wife known to these people on East Market Street?

A.  Very well.

Q.  Did they know that you were married to her?

A.  Yes.

Q.  And did you feel himiliated about this?

A.  Very much so.

Q.  Now, where is the next place you went to live?  You went to live on Madison Street, did you not?

A.  Right.

Q.  About when was this?

A.  About a year after we were married.

Q.  Now, what was the condition of your wife then, was she stil

A.  She was still drinking, intoxicated, the baby was born, she come home from the hospital, she didn't even want to take care of the baby, I watched the baby, fed the baby the formula, make the formula, feed the baby, get up in the middle of the night, I used to be working day shift at the

— 8 —

FELL-00001814

time, get up in the middle of the night, walk the floor with the baby, she didn't want to have any part of married life.

Q. Now, was she happy about the baby's birth?

A. No, she said it was not mine, she was very much disgusted, she didn't want to have the baby, and she just didn't treat the baby properly either at the time.

Q. Then did you at all ever separate?

A. Yes, we did.

Q. While you were still on Madison Street?

A. Yes.

Q. What was the reason for separating?

A. The separation was because she got drunk at a Christmas party, when I took her home, she didn't want to go home with me, she wanted to go home with her boss.

Q. So this was the reason for your separation.

A. Right.

Q. And did you then reconcile at a later date?

A. Yes, we did.

Q. At whose instance?

A. Mine.

Q. Then did you move from there?

A. Yes, we did.

Q. And where did you go?

A. On Grant Street.

Q. And tell us what happened on REDACTED -

A. Well, she started running around — well, she never stopped running around, she kept on running around, I was too ashamed to live in one place too long, so I kept on moving, about a year, two years I lived in a place, I had to move, people was telling me my wife was running around and this and that. So she was drinking there, she never wanted to stay home, kept late hours, come home 3, 4 o'clock in the

- 9 -

FELL-00001815

morning, coming home, and drinking, throwing things at me.

Q. Still arguments and foul language?

A. Still arguments, still foul language.

Q. To a lesser degree or to a greater degree?

A. More so.

Q. More so, to a greater degree you mean.

A. Greater degree.

Q. Mr. Kotzer, did you ever confront your wife with her conduct and her running around with other men? And if so, what did she say?

A. Yes, I did, and she said she was running around with John Kormis, in fact she had a relationship with him, and he bought her different things, he bought her electric razors, women's electric razors, clock radios and different things like that, and when I asked her where she got them, she said she won them.

Q. She won them?

A. She won them on a chance board.

Q. And of course, when she admitted that she had a relation ship, of course, she actually meant a sexual relationship.

A. Right.

Q. Now, did you then separate again?

A. Yes.

Q. And how long did you stay apart?

A. About 6 months.

Q. Then you got back together again and where were you living at that time?

A. Then we moved up to REDACTED - FELL We got rid of the furniture, because she left the doors open, I went back to my mother's to live and I left the doors open for her to come home, she didn't come home in 30 days, so I gave

- 10 -

FELL-00001816

the furniture back to the store.  Then we moved up Lincoln
Street in a furnished apartment, and at that time I was
working down at Bass Manufacturing, and there was a Firemen's
Convention, I was working on Saturday.  Saturday came and
I called her up, I said, "Theresa," I said, "I can't get
out of Plymouth," She said, "What do you mean you can't
get out of Plymouth," She started swearing at me on the
phone.  I says, "Don't blame me, come down."  She took a
taxicab down and she couldn't get into Plymouth, so she
walked from Carey Avenue Bridge to the Polish Lions Hall,
and I was downstairs with the boss, and all these firemen
were in there, and she started drinking, got intoxicated,
she started dancing with these men, and she started making
a fool out of me.  So I said, "Theresa," I says, "Let's
go."  She says, "I'm going to smash your car."  She went
outside and she got a big rock and threw it at my car, the
cop picked her up and locked her up in jail.  My boss and I
went and bailed her out.

Q.  Did you take her home?

A.  I took her home.

Q.  On the way what did she say or what happened?

A.  Well, she started to swear at me and she jumped out of the
car.  She said, "I'm going to jump out of the car."  I said,
"You're going to hurt yourself."  She opened the door and
she jumped.  After that we separated again, I didn't see
her for about I'd say about 4 months after that.  She never
came back home, never made an attempt to come back home.

Q.  O.K.  Now, you got together again finally?

A.  Right.

Q.  At whose instance?

A.  Mine.

Q.  Did you see a priest?

— 11 —

FELL-00001817

A.  No, we didn't.

Q.  Now, when you lived on REDACTED - FELL   was she behaving herself the same way?

A.  The same way.  In fact, we had a christening down on Empire Street and my aunts were down there, and she was drunk when my aunts come down for the christening, to visit the baby, you know.

Q.  Did her conduct increase or diminish in reference to running around with other men, drinking and swearing?

A.  Increased.

Q.  Tell us how.

A.  Well, she was bringing her boy friends round to live in the house that I was living in.  Many times she fed them, many times they slept over there.

Q.  Was she drinking any more?

A.  More and more.  As far as I was concerned she was turning out to be an alcoholic.

Q.  Now, when did you live on REDACTED - FELL ?

A.  The date?

Q.  Roughly, the year.

A.  About 1961, 1962.

Q.  So that all this was going on from 1958 to 1962.

A.  Right.

Q.  Now, from 1962 until the present time, did the course of her conduct remain the same or increase?

A.  Increased.

Q.  Increased.  Were there still arguments?

A.  Still arguments.

Q.  Still drinking?

A.  Still drinking.

Q.  Still running around?

A.  Still running around.

- 12 -

Q. Still swearing?.

A. Still swearing.

Q. Still the same course of conduct that you testified to here today.

A. Right.

Q. And you lived at a few places. As a matter of fact, where did you live after Empire Street?

A. We moved down to REDACTED - .

Q. And then?

A. From REDACTED - FELL

Q. Culp. And then where?

A, Then we moved to REDACTED - FELL

Q. And then where?

A. Then we moved to REDACTED - Then Butler.

Q. Then where?

A. Then down to REDACTED - FELL

Q. REDACTED - FELL where you live right now. Why did you move so many times?

A. Well, she was embarrassing. People used to come and tell me, when I was working on night shift she had different men over the house, and she was swearing, cursing, coming in drunk, I was very embarrassed, so I kept on moving.

Q. How did she behave toward other people?

A. She threatened a woman up on Butler Street that she was going to kill her if she don't leave her alone. And in fact she was arrested and Murphey put her on a Peace Bond.

Q. She was put under a peace bond?

A. Yes, she was.

Q. Tell us any other incidents you think are important.

A. Well, many times, even this landlord, where I live right now on REDACTED - FELL ., he used to come over to the house, he said, "I had dinner up your house last night, Ray," he said, and I said, "You did?" And I said, "What were you

- 13 -

FELL-00001819

doing up the house?" He said, "I come for the rent." I says, "The rent wasn't due for another week or so." And I had an argument with my wife about it, I says, "What you bringing the landlord up here for?" And she says, "Well, we're getting free rent." I says, "What you mean, free rent, I've given you the money for the rent every month." I said, "I don't want no free rent, you just keep him out of here."

Q. Tell us what happened on REDACTED - ?

A. Well, they brought a man home, her and her mother, and she said, "Ray, can I bring him in for a cup of coffee?" "Theresa," I says, "Is this your boy friend?" She said, "No, it's my mother's." I said, "Your mother's? Your mother's quite old for this man," I said, "The man is only 21 years old, more like your age. Well, bring him in," I says, I didn't care any more, I was disgusted. She brought him in for a cup of coffee, after he had the cup of coffee, he went over my parlor, laid all over my parlor chair, didn't care where he threw his feet, I says, "Get your feet off my chairs," I says, "This is my house, not your's." And he started swearing at me. He says, "Your wife said I could do it," he says, "I was here before, I can do it, I can do anything I want in this house."

Q. Did your wife ever have you arrested for anything?

A. Yes, she did.

Q. Why?

A. Simply because every time she had me arrested she had men over the house. Every time. The neighbors always told me, they even called my sister up and my mother up, they said, "Come on down the house and see the man over the house while she puts Ray in jail."

Q. Now, what was the last incident you recall, Mr. Kotzer, when you had evidence that your wife was running around with

- 14 -

other men and misconducting herself?

A. Well, she wasn't home, she went out Saturday- - -

Q. When was this?

A. It was about 6 months ago.

Q. 6 months ago from this date?

A. That's right.

Q. All right, tell us about it.

A. Well, she went out Saturday, said she was going out with her girl friend, she didn't come home Saturday, she didn't come home Sunday. I went up her mothers, I called up the hospitals, she had my car, I figured she was hurt or something. But then her girl friend called me up and she said, "Ray," she said - no, I called the girl friend up, rather, I says, "Rose," I says, "Where's Theresa? She went out with you last night." "Ray," She said, "I left Theresa about 12:00 o'clock." I said, "Where did she go?" "Well," she said, "Either of three places, 3 motels she either went." So she gave me two motels, and the third one I found my wife. I had my friend take me up there, him and his wife took me up there, and there she was, coming out of the motel with this man. My car was parked right out in front of the motel. I took my car, she called the taxi up, she got in the taxi with this man, and she went down and checked in Quinn's Hotel down here on Pennsylvania Ave.

Q. Mr. Kotzer, is there anything else you would like to tell the Master concerning your domestic problems?

A. Well, we always had trouble, her drinking and her running around, and her swearing, cutting me with a knife, hitting me over the head with a bottle, I never hit her.

Q. Did you ever do anything to contribute to this conduct of hers?

A. No, I didn't.

-- 15 --

FELL-00001821

Q. Did you behave yourself as a good husband?

A. Yes, I did.

BY: MR. KISAILUS.

Cross examine.

CROSS EXAMINATION BY: THE MASTER.

Q. Mr. Kotzer, you were married in 1953, right?

A. Right.

Q. And you separated finally about 6 months ago.

A. Right.

Q. Is she living at the place where you separated from?

A. Yes, she is.

Q. You left there, then, about 6 months ago, is that right?

A. No, I left there about 4 months ago.

Q. 4 months ago. But the last episode about the motel business was about 6 months ago, wasn't it?

A. About 6 months ago, yes.

Q. I see. Did she still continue to carry on after the motel incident?

A. Yes, she did. In fact, she didn't come home until 30 days after. I mean, I was just going to separate, but she didn't come home at all. And then she finally came home and we got together, and then she left again, I didn't say that before, but she left again, she went with this man, I couldn't stand this no more, she lived common law with this man up on Market Street, she lived with this man up on Market Street. So I just couldn't stand it no more, so I left. I left for one reason too, because the kids had to go to school, and she couldn't find a place for the kids, and I had nobody to watch the kids, and they were staying with their mother, and she asked me, she said, "Ray, can I keep this house, and you keep half and me keeping half of the furniture?" I said, "Theresa, keep all the furniture," I

- 16 -

FELL-00001822

said, "I don't care," I said, "For the kids' sake," I said, "You can have everything in the house." I didn't want to live any more in those conditions.

Q. And you've tried to put up with it now for some – – –

A. 13 to 14 years.

Q. Did you ever try to sit down and talk to her about her conduct?

A. Many times, many times.

Q. Did she promise on occasion to change?

A. Well, she promised, but she never kept her promises.

Q. How often would she go out on the average during the week.

A. Well, I'd say about pretty near every night. She would be home before I come home from work. She would have my oldest daughter right now watching the kids, the other two, and she used to get babysitters, and she used to go out every night.

Q. And of course you were working.

A. I was working night shift.

Q. So that you didn't know really when she left or how long she was gone or anything else.

A. I didn't know anything.

Q. But this was a constant situation.

A. Constant situation.

Q. And of course, you must have lived in about 10 places or so over the period of 13 years.

A. Right.

Q. And you worked steady all during this time.

A. I worked steady always.

Q. And there was no question about providing adequately or anything like that.

A. In fact, just before I took off, I gave her my vacation pay, I gave her my pay, it was over $200.00, and she didn't

– 17 –

FELL-00001823

pay a bill with it.

Q. There's no way that this marriage could work out, is there?

A. Definitely not.

Q. Why?

A. Well, I couldn't stand her any more, she's swearing, cursing, running around, abusive language, throwing things at me, cutting me.

Q. Then this divorce is not the result of any agreement both of you, is it?

A. No, it isn't.

Q. And you're paying for this divorce yourself?

A. Right.

Q. Has there been any other action for divorce or annulment started in this or any other jurisdiction other than this particular one?

A. No.

Q. That is between both of you.

A. No, there isn't.

Q. And of course, you're both citizens of the United States.

A. Right.

Q. You've lived in Pennsylvania and you've been a resident here upwards of one year prior to filing of this Complaint.

A. That's right.

Q. Does she have custody of the children?

A. Yes, she does now. I agree with her having custody of the children. I am supporting the children.

Q. Neither you, Mr. Kotzer, nor your wife, is presently or have been a member of the Armed Forces since the time you were married, have you?

A. No.

BY: THE MASTER.

I have no further questions.

– 18 –

FELL-00001824

CERTIFICATE

  I HEREBY CERTIFY that the testimony taken at the Master's Hearing was taken fully and accurately by me at the time and place herein set forth; that the foregoing is a true and correct transcript of my shorthand notes; and that the plaintiff was duly sworn according to law by the Master.

Phyllis Usher
Standing Commissioner

  NOW, this  day of November, 1967, the under-signed Master certifies that he has read the foregoing testimony and does hereby approve the same.

Joseph V. Kasper
Master

FELL-00001825

RAYMOND KOTZER,                    :    IN THE COURT OF COMMON PLEAS OF

         Plaintiff,              :         LUZERNE COUNTY

   vs.                              :         IN DIVORCE

THERESA KOTZER,                   :

         Defendant.              :    NO. 416 OCTOBER TERM, 1967

## CERTIFICATE

I hereby certify that I did send a Notice of Filing Master's Report to the Plaintiff, Raymond Kotzer, C/o Clement E. Kisailus, Esq., 11 West Union Street, Wilkes-Barre, Pennsylvania, and Theresa Kotzer, C/o Frank McGuigan, Esq., First National Bank Building, Wilkes-Barre, Pennsylvania, by mailing a copy of the notice to the above parties by regular United States Mail on December ___13___, 1967. A copy of said notice is hereby attached.

                                _____
                                     MASTER

FELL-00001826



IN THE COURT OF COMMON PLEAS

OF LUZERNE COUNTY
IN DIVORCE
NO. 416 OCTOBER TERM, 1967

RAYMOND KOTZER,

Plaintiff,

vs.

THERESA KOTZER,

Defendant.

CERTIFICATE

FILED

67 DEC 13 PM 3 05

PROTHONOTARY
1-2-3-4-5-6-7-8-9

JOSEPH V. KASPER

FELL-00001827

RAYMOND KOTZER,                :    IN THE COURT OF COMMON PLEAS OF

          Plaintiff,          :         LUZERNE COUNTY

     vs.                      :         IN DIVORCE

THERESA KOTZER,               :

          Defendant.          :   NO. 416 OCTOBER TERM, 1967

## NOTICE OF FILING MASTER'S REPORT

TO:  Raymond Kotzer, Plaintiff
     C/o Clement E. Kisailus, Esq.
     11 West Union Street
     Wilkes-Barre, Pennsylvania

          - and -

     Theresa Kotzer, Defendant
     C/o Frank McGuigan, Esq.
     First National Bank Building of Wilkes-Barre
     Wilkes-Barre, Pennsylvania

DEAR SIR AND MADAM:

     You are hereby notified that the report of Joseph V.
Kasper, the Master, in the above captioned matter reccommen
the granting of a divorce AVM was filed in the Office of th
Prothonotary of Luzerne County at the Luzerne County Court
House, Wilkes-Barre, Pennsylvania, on December _13_ , 196

     If no exceptions are filed by you to said report with
ten days from December _15_ , 1967, the report will be
available to be presented to the Court promptly thereafter
final action.

                                   _Joseph Coop_
                                        Master