

IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY
IN DIVORCE

NO 416    OCTOBER TERM, 1967

RAYMOND KOTZER,

PLAINTIFF

VS.

THERESA KOTZER,

DEFENDANT

NOTICE OF MASTER'S HEARING
AND

CERTIFICATION

Clement E. Kisailus, Esq.
11 West Union Street
Wilkes-Barre, Pennsylvania

FP

FELL-00001829

RAYMOND KOTZER,                  :   IN THE COURT OF COMMON PLEAS

            PLAINTIFF    :        OF LUZERNE COUNTY

    VS.                          :          IN DIVORCE

THERESA KOTZER,                  :

            DEFENDANT    :   NO. 416      OCTOBER TERM, 1967


NOTICE OF MASTER'S HEARING


TO THERESA KOTZER, DEFENDANT AND RAYMOND KOTZER, PLAINTIFF:

        This is to advise you that I have been appointed Master
by the Court in the above entitled case to take testimony of
witnesses and to make a report on the same, together with a
recommendation.

        For this purpose I have fixed Thursday, November 2,
1967, at 11:00 A.M. at 35 North Franklin Street, Wilkes-Barre,
Pennsylvania, as the time and place for a hearing.

        You may, if you so desire, appear at this meeting for
purpose of presenting any testimony on your own behalf and to
cross-examine, either personally or by your own counsel, the
witnesses produced by the Plaintiff.

                                    _____
                                    Joseph V. Kasper, Master


October 23, 1967

FELL-00001830

RAYMOND KOTZER,       : IN THE COURT OF COMMON PLEAS

     PLAINTIFF  :   OF LUZERNE COUNTY

   VS.       :   IN DIVORCE

THERESA KOTZER,      :

     DEFENDANT  : NO. 416  OCTOBER TERM, 1967

## C E R T I F I C A T I O N

   I, JOSEPH V. KASPER, hereby certify that as Master in the above captioned matter and that I did personally serve a Notice of Master's Hearing, a copy of which is attached hereto on the Plaintiff, c/o his attorney, Clement E. Kisailus, Esq., 11 West Union Street, Wilkes-Barre, Pennsylvania and on the Defendant, c/o her attorney, Frank McGuigan, Esq., First National Bank Building, Wilkes-Barre, Pennsylvania, on October 23, 1967.

                _____

                Joseph V. Kasper, Esq.

FELL-00001831

No 416 Oct 1967

Kotzer

vs

Kotzer.

Acceptance of master
notice of Hearing

FILED

FELL-00001832

RAYMOND KOTZER,                :    IN THE COURT OF COMMON PLEAS OF

          Plaintiff,          :        LUZERNE COUNTY

     vs.                       :        IN DIVORCE

THERESA KOTZER,                :

          Defendant.          :    NO. 416 OCTOBER TERM, 1967


     NOW, this 23rd day of October, 1967 service of a copy of
Notice of Master's Hearing is hereby accepted and copy received.

                                   _____
                                   Attorney for Defendant.

IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY
IN DIVORCE

NO. 416    OCTOBER TERM,    1967

RAYMOND KOTZER,

Plaintiff,

vs.

THERESA KOTZER,

Defendant.

PRAECIPE FOR APPEARANCE

FILED
PROTHONOTARY'S OFFICE
LUZERNE COUNTY

OCT 23 1967

Clerk

FELL-00001834



RAYMOND KOTZER,           :   IN THE COURT OF COMMON PLEAS

       Plaintiff,     :      OF LUZERNE COUNTY

   vs.                  :       IN DIVORCE

THERESA KOTZER,           :

       Defendant.     :  NO. 416   OCTOBER TERM,  1967

### PRAECIPE FOR APPEARANCE

TO THE PROTHONOTARY:

Enter my appearance in the above-captioned matter on behalf of defendant.

Frank McGuigan
Attorney for Defendant

Dated:  October 23, 1967

FELL-00001835



IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY
IN DIVORCE

NO. 416        OCTOBER TERM, 1967

RAYMOND KOTZER,

                    PLAINTIFF

            VS.

THERESA KOTZER,

                    DEFENDANT

MOTION FOR
APPOINTMENT MASTER

Now _____ 19 ____ day of _____ 19__
RECEIVED $100.00 MASTER'S FEE
BERNARD J. PODCASY, PROTHONOTARY

Per _____

RAYMOND KOTZER,            :    IN THE COURT OF COMMON PLEAS

          PLAINTIFF    :          OF LUZERNE COUNTY

    VS.                       :          IN DIVORCE

THERESA KOTZER,           :

          DEFENDANT    :    NO. 416        OCTOBER TERM, 1967

## MOTION FOR APPOINTMENT MASTER

TO THE HONORABLE, THE JUDGES OF SAID COURT:

    NOW, this ___18___ day of October, 1967, Clement E. Kisailus, Esq., Attorney for Plaintiff, respectfully moves the Court to appoint a Master in the above-captioned proceeding, the Defendant having been properly served as required by law, and in accordance with the Rules of court, and no Answer having been filed to the said Complaint.

                                                      _____
                                              ATTORNEY FOR PLAINTIFF

FELL-00001837

RAYMOND KOTZER,              :   IN THE COURT OF COMMON PLEAS

           PLAINTIFF   :      OF LUZERNE COUNTY

    VS.                :       IN DIVORCE

THERESA KOTZER,            :

           DEFENDANT   :  NO. 416      OCTOBER TERM, 1967

## APPOINTMENT OF MASTER

NOW, this ___18ᵀᴴ___ day of October, 1967, at __2:50__ o'clock ____A.___ M., it appearing to the Court that the Complaint in Divorce in the above captioned case has been duly served upon the Defendant, and no Answer or other proceedings having been filed by the Defendant or on her behalf, and on motion of Clement E. Kisailus, Esq, Attorney for Plaintiff,

IT IS ORDERED that _____, Esquire, be and he hereby is appointed Master in the above entitled case for the purpose of taking testimony and reporting thereon to the Court.

BY THE COURT,

_____ J.



IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY
IN DIVORCE
NO. 416    TERM, 1967

RAYMOND KOTZER,
                    PLAINTIFF

          VS.

THERESA KOTZER,
              DEFENDANT

C O M P L A I N T

TO THE DEFENDANT WITHIN:
     You are hereby notified
to plead to the enclosed
Complaint within 20 days
from the date of service
hereof.

By
     Attorney for Plaintiff

RAYMOND KOTZER,                :    IN THE COURT OF COMMON PLEAS

        Plaintiff        :         OF LUZERNE COUNTY

   vs.                          :

THERESA KOTZER,                :              IN DIVORCE

        Defendant        :    NO.                    TERM, 1967

## C O M P L A I N T

1. Raymond Kotzer is the Plaintiff and Theresa Kotzer is the Defendant.

2. The Plaintiff, Raymond Kotzer is an adult individual residing at 1 REDACTED - FELL        Wilkes-Barre, Pennsylvania.

3. The Defendant, Theresa Kotzer is an adult individual residing at REDACTED - FELL        Wilkes-Barre, Pennsylvania.

4. The Plaintiff and the Defendant are both citizens of Pennsylvania and the United States of America.

5. The Plaintiff and the Defendant have resided in the Commonwealth of Pennsylvania for a period of more than two years immediately preceding the filing of this Complaint.

6. The Plaintiff and the Defendant were lawfully joined in marriage on the 29th day of August, 1953 by Reverend John Kreskievicz, Holy Resurrection Russian Orthodox Cathedral Rectory.

7. There were the following issue born of this marriage; Deborah Ann, age 13 years, Sandra Jean, age 11 years and Donna Marie, age 8 years.

8. The Plaintiff avers that in violation of her marriage vows and of the Laws of the Commonwealth the said Theresa Kotzer, Defendant, hath offered such indignities to the person of the

Plaintiff as to render the condition of the Plaintiff intolerable and life burdensome.

9.   That this action is not collusive.

10.   That there has been no prior action for divorce or annulment of marriage between the parties in this or any other jurisdiction.

WHEREFORE, Plaintiff prays that a decree in Divorce be entered divorcing Plaintiff from the bonds of Matrimony heretofore existing between Plaintiff and Defendant.

CLEMENT E. KISAILUS, ESQ.
Attorney for Plaintiff

FELL-00001841

Affidavit

COMMONWEALTH OF PENNSYLVANIA    )
                                )    SS.
COUNTY OF LUZERNE               )

RAYMOND KOTZER being duly sworn according to law deposes and says that the facts set forth in the foregoing are true and correct to the best of his knowledge, information, and belief.

RAYMOND KOTZER

Sworn to and subscribed
before me this 2 2
day of Sept. ,1967.

Notary Public

CLEMENT E. KISAILUS, Notary Public
Wilkes-Barre, Luzerne Co., Pa.
My Commission Expires July 2, 1968

FELL-00001842

FELL-00001843

FILED

1967 ... 25 AM ...

PROTHONOTARY
1-2-3-4-5-6-7-8-9

COMMONWEALTH OF PENNSYLVANIA    :              IN THE COURT OF COMMON PLEA
                                :   SS
COUNTY OF LUZERNE               :              OF LUZERNE COUNTY

_Raymond Kotzer_
          Plaintiff

          vs                                   No. _41c  Cct_    Term, 19

_Theresa Kotzer_
          Defendant


                      NOTICE OF

                  RETURN OF SERVICE
                  ***************
                  . . . . . . . . . . . . . .

_Charles Prohacka Dep't Constitu_ being duly sworn according to law depos
and says that he served a CERTIFIED copy of the NOTICE _Complaint In Divor_
upon _Theresa Kotzer_ _and this_, at her place of employment, residence REDACTED - FELL
_Wilkes-Barre_ Pennsylvania, on the day of ___25___
_____Sept_____ 196_7___, at_____ A.M. P.M. (EDST) o'clock and made
to____ _her_ ____the contents thereof.

                                        _Charles Prohacka_

Sworn and subscribed to this

_26_ day of _Sept_, 196 _7_.
_Jh. B. Meffn_

        NOTARY PUBLIC
   Wilkes-Barre, Luzerne Co., Pa.
   My Commission Expires Dec. 29, 1969

FELL-00001844

IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY
IN DIVORCE

NO. 416 OCTOBER TERM, 1967.

RAYMOND KOTZER,

Plaintiff,

vs.

THERESA KOTZER,

Defendant.

MASTER'S REPORT

JOSEPH V. KASPER
ATTORNEY AT LAW
35 NORTH FRANKLIN STREET
WILKES-BARRE, PENNA. 18701

FELL-00001845

RAYMOND KOTZER,              :    IN THE COURT OF COMMON PLEAS OF
                            :
              Plaintiff,    :         LUZERNE COUNTY
                            :
     vs.                    :         IN DIVORCE
                            :
THERESA KOTZER,             :
                            :
              Defendant.    :    NO. 416 OCTOBER TERM, 1967.

## MASTER'S REPORT

JOSEPH V. KASPER, ESQ., the Master appointed by your
Honorable Court to take the testimony of witnesses in the above
entitled divorce action and to return the same together with a
report thereon, respectfully represents:

I.   PLEADINGS AND SERVICE OF PROCESS AND NOTICES OF HEARING.

1.   The Complaint in this action was filed on September
25, 1967. A certified copy of said Complaint was served
personally upon the defendant, THERESA KOTZER, by CHARLES
PROHASKA, Deputy Constable, by handing the certified copy to her
personally at her residence, REDACTED - FELL
Wilkes-Barre, Pennsylvania on September 25, 1967. The Affidavit
of Service was filed on September 26, 1967.

2.   The Order of Court appointing the undersigned as
Master was made on October 18, 1967.

3.   That FRANK McCUIGAN, ESQ., entered his appearance
on behalf of THERESA KOTZER, filed of record on October 23,
1967.

4.   The Notice of Master's Hearing was accepted by
counsel for the plaintiff on October 23, 1967 by FRANK McCUIGAN,
attorney for the defendant, on the same date. Said acceptances
are about to be filed of record.

5.   The hearing was held as scheduled on Thursday,
November 2, 1967 at 11:00 A.M., after the notice given as above
stated.

FELL-00001846

II.   HEARING, ATTENDANCE AND WITNESSES

At the hearing the plaintiff was present with his attorney. The defendant was neither present nor was she represented by counsel at the hearing.

III.  ALLEGED GROUNDS FOR DIVORCE

1.  Indignities to the person.

IV.   ABSTRACT OF TESTIMONY

The plaintiff, RAYMOND KOTZER being duly sworn according to law, testified that he lives at REDACTED - FELL Street, Wilkes-Barre, Luzerne County, Pennsylvania, and that his wife, THERESA KOTZER, lives at REDACTED - FELL Wilkes-Barre, Luzerne County, Pennsylvania. He also stated that both of them are citizens of the Commonwealth of Pennsylvania and of the United States, and that both have resided in Luzerne County for more than three (3) years prior to the filing of this Complaint by him. They were married on August 29, 1953 by Rev. Kreskiewicz at the Russian Orthodox Church on North Main Street, Wilkes-Barre, Pennsylvania.

Plaintiff testified that after they were married they moved to a basement apartment on Washington Street, right above Butler and Washington Streets. He testified that immediately after co-habitation his wife started to swear, used filthy language and throw things at him. He also said that she was hanging around beer gardens, namely the California Bar and she was seen coming out of the bar many times with more than one man. He also stated that she would drink about a fifth of liquor every week, became intoxicated, and when she did that, she was very abusive. He indicated that in her radical behavior she would throw almost anthing, including knives, pots and pans and dishes. He said that he was struck many times by these objects and was injured.

- 2 -

he indicated that his wife threw a knife and also where he was cut and she also hit him over the head with a bottle, which medical care was required at the General Hospital. Then he related as to her cursing and swearing, using such words as a son of a bitch and the four-letter word, which the plaintiff was hesitant of repeating before the stenographer. He also indicated that she used every possible curse word in the book, and in this use, she was so loud that the whole neighborhood heard it. Plaintiff indicated that he received complaints many times concerning his wife's languge and the arguments that they had. He stated that it seemed to him that arguments developed almost every night and the arguments started because she was either drinking or neglecting the children or for the fact that she never had any meals ready.

Plaintiff stated that his wife's drinking and running around with other men was the major cause of the problems between the two. He indicated that he tried to remonstrate with her about staying home with her children but she never wanted to do that. She just wanted to go out all the time.

Plaintiff further testified that he caught his wife running around with a man about two years back. At the time his wife had a car and he saw her when she was pulling in with a man in the car and he tried to get his wife home and also tried to rebuff the man, who apparently did not think that she was married. Plaintiff's wife refused to come home.

Then he recalled an incident that happened when they were living on Madison Street. Apparently the wife went to a Christmas party, got drunk and fell down the steps. He tried to get her to come home but she refused and said that she was going home with her boss. He had to finally take her out of the place because of her condition. Two days later, defendant told him that his older daughter wasn't his and came after him with

- 3 -

FELL-00001848

an axe in the California bar.  He also indicated that he saw his wife on many occasions walking or being with other men and that they were walking together in an intimate fashion.  He also related that the defendant was known to many people on East Market Street where she apparently visited a great deal and most of these people knew that he was married to her and because of the type of conduct she carried on he was very much himiliated.

He also related that after a year that they were married they lived on Madison Street, and he had to take on his wife's duties to the extent that after the baby was born, he watched the baby, fed the baby the formula, made the formula, got up in the middle of the night even though he was working day shift. All of this was done without any interest on the part of the defendant, who did not want any part of married life.

He also indicated that his wife was very much disgusted with the birth of the baby, claiming that it wasn't his and he felt that she did not treat the baby properly.

while the parties were still on Madison Street they separated and the realbasis for it was her, the defendant, getting drunk at the Christmas party and the fact that she wanted to go home with her boss.  subsequently they did reconcile and then they moved to Grant Street and while the parties were living on Grant Street she still continued to run around, nothing changed and plaintiff said that he was ashamed to live in one place too long.  He related that the defendant never wanted to stay home, she kept late hours coming in as late as 3, 4 o'clock in the morning  and her foul language and arguments continued to a grater degree.  He also indicated that he did confront his wife about her conduct in running around with other men. She related that she was going around with a John Kormis and as a matter of fact he bought her

- 4 -

many different things such as electric razors, clock radios and different things like that. She did in fact admit that she did have a relationship with this man. As a result of this the parties separated and were apart for six months, but they did get back together and they moved to Lincoln Street. During this period of time he related an incident where he was working in Plymouth at the Bass Manufacturing, he called her and asked to her that she come down and get him. At this time there was a Firemen's Convention. Meanwhile his wife did come down and while he was there she got drunking, started dancing with the men and making a fool out of him. When he asked her to go she said that she was going to smash his car. She did in fact go out side, and she got a big rock and threw it at his car, as a result of which a cop picked her up and locked her up in jail. Subsequently, his boss and him bailed her out.

On the way home he related that she started to swear at him and jumped out of the car. A result of this action was that they separated once again and he did not see her for about four months. During this time she never came back home or even made an attempt to come back home. However, they did finally get together and they went to live on Empire Street but nothing changed. Her conduct was the same as in the past. He related that an incident occured when they had a christening down on Empire Street and when his aunts were down there, she again got drunk. He also related that she continued to go out and go with other men and as a matter of fact she was bringing her boy friends round to live in the house when he was living in. He indicated that many times his wife fed these boy friends and they even slept there. He further indicated that she was turning out to be an alcoholic.

- 5 -

FELL-00001850

The parties stayed at Empire Street and then they moved to Sherman Street, then to Culp, and then from Culp to Pennsylvania Avenue. From there they moved to Darling Street and then to Butler Street, then down to Washington Street. He related that the reason why they moved so many times was that it was embarrassing to him when people in the neighborhood use to come and tell him about her conduct, her swearing, her coming in drunk and because of this embarrassment he kept on moving. He related that while living on Butler Street his wife threatened a woman to the extent that she was going to kill her and a matter of fact she was arrested because of this and was put under a Peace Bond.

He also related the fact that even his landlord told him that he had dinner at his house when he was away. He questioned his wife why the landlord was coming up before the rent was due she told him what should he care, he's getting free rent. He then had to order her to keep the landlord out of the house.

Another incident which the plaintiff related concerning hi wife was when the parties were living on Darling Street and his wife brought home a man and was supposeively the boy friend of his wife's mother. He said he didn't care anymore about this because he was so disgusted. However, the man that was brough in and served coffee laid all over his parlor chair. When he remonstrated with him about it the man told him he could do anything he wanted to do as he was there before and his wife said that he had permission.

He then related the last incident invovling he and his wife which happend about six months prior to the hearing. Apparently his wife went out on a Saturday night but did not come home neither Saturday or Sunday. On inquiry he tried t check out where she was and he was referred to two or three

- 6 -

FELL-00001851

motels. After checking two of them he found her in a third
one. He caught her up there coming out of the motel with a
man. He then followed her to Quinn's Hotel where she checked
in there.

He related that the type of conduct carried on by his wife
was not due to anything that he did. He said that he tried to
be a good husband to her.

On cross examination he indicated that he finally
separated about six months ago, that she is living separate and
a part from him. He said that he got so disgusted with the
motel incident and the fact that they couldn't get together
and the fact that she went to live as he called it common law
with a man on Market Street that he couldn't stand it any more
and that he the reason that he left. In leaving he left all of
the furniture which he said he did for the kids sake but he
would not live any longer under those conditions. He indicated
that he put up with this type of conduct for a period of about
thirteen years. When asked whether or not hetried to talk to
his wife he said that he did on many occasions. She did promise
but she never changed and never kept her promises. He indicated
that she went out almost every night. He said the type of
conduct was a constant situation and there was never any
question about him adequately providing as he worked steady
for thirteen years. He indicated that there is no way in which
this marriage could work out, that he couldn't stand his wife
any more, her constant swearing, cursing and running around and
throwing things at him and even injuring him. He indicated
that this divorce is not a result of any agreement and that he
is paying for the divorce himself. He also testified that there
was no other action for divorce or annulment started in this or
any other jurisdiction other than this particular one. He also
indicated that they are both citizens of the United States. He
has indicated that his wife has custody of the children and

- 7 -

FELL-00001852

that he is in fact supporting them, the children. He also related that neither he or his wife is presently or have been a member of the Armed Forces since the time they were married.

V.  FINDINGS OF FACT.

1.  The plaintiff and the defendant were married on August 29, 1953 in Wilkes-Barre, Pennsylvania, by Reverend Kreskiewicz.

2.  The plaintiff has been a resident of the Commonwealth of Pennsylvania for a period in excess of one year prior to the filing of this action.

3.  The Plaintiff presently REDACTED - FELL REDACTED - FELL .lkes-Barre, Pennsylvania. And, the defendant's present address is REDACTED - FELL Wilkes-Barre, Pennsylvania.

4.  The plaintiff is 40 years of age and the defendant is 36 years of age.

5.  There were three children born of this marriage, all presently minors, who are in the custody of the defendant.

6.  There are no other actions for divorce or annulment pending between the parties in this or any other jurisdiction.

7.  The plaintiff always conducted himself in a proper manner and gave the defendant no cause to complain.

8.  The defendant did offer such indignities to the person of the plaintiff as to render his condition intolerable and his life burdensome.

9.  There is no agreement between the parties with reference to the procurring of a divorce.

10.  The defendant has shown no good faith or interest in a reconciliation.

- 8 -

FELL-00001853

VI.   CONCLUSIONS OF LAW

1.   The plaintiff and the defendant contracted a legal marriage and the marriage relation still subsists between them.

2.   The parties are properly before this Court.

3.   The Court has jurisdiction over both of the parties and of the subject matter.

4.   The facts testified to by the plaintiff are sufficient to meet his burden of proving the averments in the Complaint setting forth a cause of action on the grounds of indignities to the person.

5.   There has been no fraud or collusion between the parties to this action.

6.   The plaintiff is an innocent and injured spouse.

7.   The plaintiff is entitled to a divorce from the bonds of matrimony on the grounds of indignities to the person.

VII.   RECOMMENDATION

In accordance with the above Findings of Fact and the Conclusions of Law the Master finds that the record in this case will support the granting of a divorce from the bonds of matrimony.

JOSEPH V. KASPER, ESQ.
MASTER

December 12, 1967.

FELL-00001854



No. 416  October  Term, 1967

Raymond Kotzer
                                              Plaintiff

                        vs.

Theresa Kotzer
                                              Defendant

| TAKEN OUT | BY WHOM |
|---|---|
| 11/1/67 | E. Kisailus to Master Hearing |
| 12/27/67 | C. E. Kisailus to Court |
| 12/28/67 | RETURNED  Bromunk  EJM |
| | |
| | |
| | |
| | |
| | |
| | |

ALWAYS LEAVE THIS CARD IN
THE FILING BOX

FELL-00001855

that in...
be marked accordingly.

| | | Judgment |
|---|---|---|
| Raymond Kotzer | Complaint in Divorce | Debt |
| | | Interest |
| 416  FINAL DECREE GRANTED | Exit Sept. 25, 1967, | Costs |
| VS. | | Atty. |
| Theresa Kotzer | | Atty. Com. |

Now this Sept 26, 1967, Charles Bohoskus, Deputy Constable, says that he served a Certified copy of Complaint in Divorce, upon Theresa Kotzer, personally at her place of residence, 229 N. Washington St. Wilkes Barre, Pa

9:42 A.M. on the 26 day of Sept, 1967, at made known to her the contents thereof. Filed

And Now October 18, 1967 Joseph V. Kasper Esq., is hereby appointed Master.

By the Court, Hourigan J.

Nov 23 October 1967 by Praecipe filed Frank M. Surge Esq directs the Prothonotary to enter his appearance on behalf of the defendant

Nov 24 Oct. 1967 notice of master's hearing and Certification filed

Nov 22 November 1967 affidavit of non military service filed

Nov 13 December 1967 Master's report & Testimony filed

Nov 13 December 1967 Notice of filing Master's Report filed.

NOW Dec 28 1967 THE COURT HAVING CAREFULLY READ, SCRUTINIZED AND CONSIDERED THE EVIDENCE IN THIS ... ... OF LAW AND DISCUSSION OF THE SAME, AND ...

SEPERATED FROM ... Raymond Kotzer ... BE DIVORCED AND ... BETWEEN THEM

THE SAID ... Theresa Kotzer ... DEFENDANT,

SAID Raymond Kotzer OR THE Theresa Kotzer ... CLAIM ACCRUING TO EITHER THE AT ANYTIME HERETOFORE IN PURSUANCE OF SAID MARRIAGE SHALL CEASE AND DETERMINE.

BY THE COURT Hourigan J.

CERTIFIED FROM THE RECORDS THIS
23 DAY OF March A.D. 20 01
CAROLEE A. MEDICO, PROTHONOTARY
PER D. ...

FELL-00001856

M000076

FELL-00001857

# EXHIBIT 147

# ARREST WARRANT AFFIDAVIT

Louise Pesotski

**DISTRICT JUS...CE**
MAGISTERIAL DISTRICT NO.11-03-08
50 Second Street Plains Pa 18705

| COMPLAINT NUMBER | YEAR | TYPE | NUMBER |
|---|---|---|---|
| H 31945 | 1991 | C | 42 |

Complaint Numbers if Other Participar

| INCIDENT NUMBER | UCR NO. | OTN |
|---|---|---|
| 91-407 | | C564894-1 |

OMMONWEALTH OF PENNSYLVANIA
OUNTY OF _____LUZERNE_____

**COMMONWEALTH OF PENNSYLVANIA**
                          **VS.**
DEFENDANT:

NAME   Donald Robert FELL
AND    REDACTED - FELL Inkerman
ADDRESS  Jenkins Township Pa 18640

Ptlm. Sam Nardone            Jenkins Township Police Dept.            654-1281
(Name of Affiant)            (Police Department or Address of Private Affiant)            (Telephone Number)

being duly sworn (or affirmed) before me, according to law, deposes and says that there is probable cause to believe that:

PROBABLE CAUSE BELIEF IS BASED ON THE FOLLOWING FACTS AND CIRCUMSTANCES: (see instruc. below)

On 3-04-90 at about 1600 Hrs. this officer recieved a call to go to    REDACTED - FELL Inkerman. Upon arrival this officer spoke to Debbie Fell that she wanted her ex-husband Donald Fell to leave her home. At that time this officer asked  the above named Defendant to leave the home  in which he refused.

## PLEASE READ AND FOLLOW THESE INSTRUCTIONS CAREFULLY

1. If information was obtained from another person, e.g., an informant, a private citizen, or a fellow law officer, state specifically what information was received, and how and when such information was obtained. State also the factual basis for believing such other person to be reliable.

FELL-00001858

# EXHIBIT 148

<u>CONTACT SHEET</u>

CASE NUMBER:

CLIENT NAME: _Fell_

ADDRESS:

MONTH: April 90 - May 90

WORKER: Caughfelli

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE) 2. ) OUTCOME: (WHAT TRANSPIRED) |
|---|---|
| Date: April 24 Location: P-Office Who Seen: Zconker 9:30 | 1. 1) to discus report 2) Not in trail later on today 2. ) |
| May 1 P-Office Zconker 1:30 | 1) to discuss reports 2) not in trail later on today |
| May 1 P- Theresa Sharpe 2:00 | 1) to discus report 2) No answer |
| May 8 home visit C 1:45-2:15 mr & mrs. Fell | 1) to discus report 2) trailer was clean but cluttered. Debbie said she stayed away for 3 days until things settled down. |

FELL-00001859

no protection order , they were jus.
She can't afford one. We have to go to the magistrate
Donald was charged w/ D.V.I. — has to go though A.R.O.
No charges on this incident.

Children were at a friends house & the one called cause
to ask if they can stay down there.

denied report that cops were to the house, said
cops were at the neighbors house.

Colleen + Vernenba the cops none but said she was a
mary ann ← lady. Children were at Inkerson trailer Park
w/Rose? . . Her daughter plays w/ Rose's daughter

Donald — 4th Lincoln elem        (little league)
teri — 2nd        "        "      (Boy scouts)
    doing really good in school — improved.

Mr. Sell works @ Packett Auto Parts on Kidder St in
    WB.

mrs. sell works 12 to 8 at Suburn publishing

living in this trailer one year — wants to
stay here because the children are doing
    really well in school.

FELL-00001860

# EXHIBIT 149

# INCIDENT REPORT

| | | INCIDENT REPORT NUMBER |
|---|---|---|
| **Jenkins Township Police Department**<br>46½ Main Street, Inkerman<br>Jenkins Township, Pennsylvania 18640 | DATE OF REPORT _24 Apr. 90_<br>STATION _Jenkins Twp._ CODE _219_ | _90-162_ |

| NAME | Last _Fell_ | (First) _Donald_ | (Middle) | AGE/SEX/RACE | PHONE |
|---|---|---|---|---|---|

**ADDRESS** REDACTED - FELL, _Inkerman, Jenkins Township_

| DATE _21 April 1990_ | REPORTED BY: _Ron Cuyamo_ 655-0115 |
|---|---|

| TIME OCCURED _Approx._ | LOCATION OF INCIDENT _Pad 8 Sharon Trailer Park_ |
|---|---|

| SECTION _N/A_ | OFFENSE _Child Abandonment_ |
|---|---|

| STATUTE OR ORDINANCE _N/A_ | TOTAL AMOUNT OF PROPERTY STOLEN _N/A_ |
|---|---|

**DETAILS OF INCIDENT:**

On 21 April 1990 at approx. _____ hours this officer met Mr. Ron Cuyamo at the Jenkins Township Municipal Building. Mr. Cuyamo stated that Donald Fell, Jr. and Perry Fell showed up at his trailer this date stating that their mother & father had a fight and that they left the house because their father threatened to kill their mother and their mother left the residence leaving the children with Donald Fell, Sr. The children were afraid so they went to the Cuyamo residence because they are friends of his children. Mr. Cuyamo further stated that he was willing to keep the children over night since he was going for Pizza for them and just gave them a bath and got them ready for bed.

This officer then spoke with a Mary Ann Lambus from the Bureau of Children & Youth Services who stated that she would speak with Mr. and Mrs.

| CHECK: ☐ UNFOUNDED ☒ CLEARED ☐ NOT CLEARED | REPORTING OFFICER'S SIGNATURE: | BADGE NUMBER | SUPERVISOR'S INITIALS |
|---|---|---|---|

FELL-00001861

Cupano and give them permission to keep the children over-night. She also stated that she would turn all information over to an Intake Officer on Monday. This officer then informed Ms. Rambus that Children & Youth Services were notified in September of the condition is in the Fell Residence.

This officer then spoke with a Mrs. Sharp, the children's maternal grandmother who stated that she would pick up the children in the morning from the Cupano residence and keep them at her house. (Phone No. 822-7135). This officer then spoke, again, with Mary Ann Rambus and asked her to clear everything with the children's grandmother.

This officer later spoke with Ron Cupano who stated that his wife spoke with Mr. Fell and told him that she had his children and that he stated that "I don't give a fuck where my children are or what you do with them."

FELL-00001862

# EXHIBIT 150

CASE NUMBER:

CLIENT NAME: Fell

ADDRESS:

MONTH: June 90

WORKER: Carol Gacci

---

CONTACTS

1. ) GOAL OF CONTACT: (PURPOSE)
2. ) OUTCOME: (WHAT TRANSPIRED)

Date: June 1
Location: P- M. Cupino
Who Seen: 4:00

1) to discuss incident w/ Cupino residence
1. ) Mr & Mrs. Cupino went food shopping. Spoke to M.C. mother.
2. ) wk left name & phone #

---

June 1
P Debbie
Fell
4:05

1) wk discusses the outcome of the case w/ Mrs. Fell

2) case will be assigned for ongoing service due to domestic disputs & alcohol usage.

wk is attempting to contact officer Zoonker & schedule a time so we can both come to the home & address these issues.

Mrs. Fell feels it is a good idea & is in agreement.

Her husband does not work on this.

She starts a new job tonight 11 to 7 in Dupont. Wk asked her what about the job she had & she said they are going to close down soon so she started looking for something else,

She picks her husband up @ 5 & sometimes they have to go to Donald's gone & don't get home until 8:30.

wk will call officer now & see if Donald & Carol be set up. Tues would be a good day. He checks & will @ school & the both of you will be home from work. Kwill settle in now.

FELL-00001863

?- Jenkins
twp police

no one is answering.

654-3316

4:10

June 4
P. Cupano
residence

10:30

1) to discuss incident
2) no answer

FELL-00001864

# EXHIBIT 151

SERVICE PLANNING/FAMILY FUNCTIONING

Family Name: l

Complete the following for Service Planning:

1.   Date case accepted for service:  May 8, 1990

2.   Reason(s) for accepting this case:   (Identify the Protective Service Issues present in the family)

On April 21, 1990 Officer Zcanker of the Jenkins Township Police Department notified the on-call worker to report that the parents of the Fell children were fighting and the father threatened to kill the mother in front of the children.  The mother left the trailer and the father was intoxicated.  The children ran to a neighbor's house for help and this neighbor contacted the police.  ▆▆▆▆ and Donald Fell stayed at the Cupano residence overnight and in the morning the children went with their maternal grandmother who is Theresa Sharpe.  This case is being assigned for ongoing services due to the ongoing neglect issues, domestic problems and the alcohol usage of both parents.  This worker discussed this case with Officer Zcanker who reported the police are continuously at this home for domestic disputes.  This officer stated that in September 1989, Children and Youth was contacted regarding a domestic dispute and the children were not being taken care of.  This officer feels the children should be placed with the maternal grandmother who seems very appropriate.  Mr. Fell was arrested for DUI twice within ten days.  This officer had denied Mr. Fell A.R.D. as he was intoxicated and hit a child who was riding his bike.  On Mr. Fell's second offense, he didn't show up for his arraignment and was placed in jail for a two week period and he was also driving without a driver's license.  This officer stated that Mr. Fell is always intoxicated and several times she wanted to take Mrs. Fell to file for Protection from Abuse Order, but she had refused to do so.

This worker discussed this case with Mrs. Sharpe who stated her daughter's husband is a drunk.  Mrs. Sharpe states Mr. Fell is very belligerent, cursing all the time and calling her daughter names and won't allow her to go to a friend's house or to go to church.  Mrs. Sharpe states since the children were sexually molested by a babysitter, Mr. Fell has been continuously drinking ever since then.  Mrs. Sharpe states her daughter would do very well on her own without him and the two weeks he was incarcerated, things were fine.

On May 8, 1990, this worker met with Mr. & Mrs. Fell to discuss this incident.  Mrs. Fell stated to worker she left the trailer for three days until things settled down.  Both Mr. and

1

FELL-00001865

Mrs. Fell deny there was any physical violence in the home on that night. Mrs. Fell states that her daughter, ██████ after school went to a friend's house and Mr. Fell sent Donald to this home in order to get ████. The children then contacted their parents and asked if they could stay over night. On May 16, 1990, this worker again went to the home and met with Mrs. Fell and her two children to discuss this incident. This worker questioned both Teri and Donald who gave worker the same story as their parents.

This worker informed Mr. & Mrs. Fell that this case will be assigned for ongoing services at the agency and worker recommends that both of them become involved in drug and alcohol counseling and marital counseling. Mr. & Mrs. Fell were agreeable to these services.

## 3.    FAMILY FUNCTIONING

A) <u>Economic</u>:  Both Mr. & Mrs. Fell are employed full time and their combined income is approximately $400 a week. Mrs. Fell states they are able to meet their financial expenses.

B) <u>Housing</u>:  Mr. & Mrs. Fell and their two children reside in a trailer at 7 Main Street, Inkerman, PA. The family has lived in this trailer for approximately one year. The trailer has three bedrooms, kitchen, bath and living room. Worker has found the trailer to be clean, but cluttered as it appears to be small for the family of four.

C) <u>Medical Care</u>:  Dr. Stanish is utilized as the family physician. ████ or Donald do not have any outstanding medical problems.

D) <u>Educational History of Parents</u>:  Mrs. Fell quit school in the 10th grade at Coughlin High School. Mrs. Fell never went for her GED. Mrs. Fell is employed for the past 8 months at Suburban Publishing in Exeter. Prior to this job, Mrs. Fell had worked at S&L Graphics, Hart-Hanks and other factories.

Mr. Fell graduated from Meyers High School and had two years of college while he was living in Florida. Mr. Fell works at Auto Pachter on Scott Street in Wilkes-Barre and was assistant manager, but was recently demoted to another position due to his incarceration. Prior to this job, Mr. Fell also worked at Sears for five years as a service manager and also worked at Mr. Donut. Mr. Fell is employed from 8:30 A.M. to 5:00 P.M. and Mrs. Fell is employed from 12:00 A.M. to 8:00 A.M.

2

FELL-00001866

E)   Educational History of Child(ren):   Donald is in the 4th grade and ████████ s in the second grade and they both attend Lincoln Elementary School in Pittston.  Worker contacted the guidance counselor regarding Teri and Donald and was told they present no behavioral or attendance problems and they are both average students.

F)   Physical Care and Hygiene:  This worker has observed the children to be dressed neatly and in clean clothes and appropriate for the weather conditions.  The physical hygiene and appearance of Mr. & Mrs. Fell and the children are not an area of concern.

G)   Family Interactions (Describe strengths, conflicts, and behaviors):

    1)   Adult Interaction:  Mr. & Mrs. Fell have been married since November 1979 and before they were married they had lived together for two and a half years.  Mr. & Mrs. Fell deny any physical violence within the home.  Mrs. Fell stated that they do argue like any other married couple and denied being abused by her husband.  Mr. & Mrs. Fell have denied ever being abusive to their children.  Mr. Fell admits to having a few drinks and stated that this is done so at night in his own home.  Mr. and Mrs. Fell intend to stay together and are willing to work on their marriage.  Mrs. Fell has never gone through with a Protection from Abuse Order.

    2)   Parent/Child(ren) Interaction:  Worker has observed both children with their parents and they do not seem to be afraid to go to either one.  It appears Mrs. Fell is much closer to Teri and said that if ████ has to be placed, the separation would be very hard for her.  Donald appears to align with his father.  The parents discipline the children by withholding privileges and sending them to their room.  The parents say both children usually accept limits placed upon them.

    As far as relatives, there is minimal contact with extended family members.  Mrs. Fell's mother, Theresa Sharpe, has been a resource for ████ and Donald in the past and would intervene when a domestic dispute took place.  However, this worker questions the relationship between Mrs. Fell and her mother, as Mrs. Fell had stated to this worker if her children had to be removed, she would want them with a stranger before she would place them with her own mother.

3

FELL-00001867

3) <u>Sibling Interaction</u>: ███████nd Donald appear to get along with one another.  Donald is currently on the Little League Team and is also in Boys Scouts.

H)  <u>Community involvement (legal, school, agencies, relatives, neighborhood, etc.):</u>

Mrs. Fell has stated to this worker she has never had any legal involvement with the law.  However, Mr. Fell was incarcerated for a two week period in April of 1990 when he failed to appear for a court arraignment on his DUI charges.  Mr. Fell was released on his own recognizance.

The police were called to the Fell home on several occasions due to domestic disputes.  Mr. Fell had two DUI arrests within a two week time period.  On October 31, 1989 Mr. Fell was arrested for DUI and also hit a child who was riding his bicycle.  On November 10, 1989, Mr. Fell was again arrested for DUI.  This worker had spoken with Office Zcanker and stated to worker she had denied him ARD.

This agency originally became involved with the Fell family on March 11, 1985 when their two children were sexually abused by their babysitters.  The family was referred to Victims Resource Center and actively participated in counseling until July 1985. The case was then closed on March 22, 1985.  On April 21, 1985, this family was again referred to Children and Youth Services by the Kingston Police.  The Kingston Police had taken protective custody of the two Fell children and they were placed on a temporary basis with their maternal grandmother, Theresa Sharpe, who was also a foster parent at the time.  Mr. Fell was found walking down the street after being stabbed in the back by his wife. When the police took Mr. Fell to his home, they found Mrs. Fell profusely bleeding from the leg from a stab inflicted by a Mr. Fell.  They had been drinking heavily that day███████a physical altercation took place as they were both unable to deal with the issue of their children being sexually abused.  The children at the time were asleep and unharmed.

Mr. and Mrs. Fell have been married for ten years.  Mrs. Fell stated to worker that she feels they have a good marriage, but they do fight like any married couple and they do not fight in front of the children.  Mr. Fell admits to havi████drink occasionally at night, he does not feel he or his wife have a drinking problem.  Mr. & Mrs. Fell have agreed to undergo a drug and alcohol evaluation at Court Advocate.

Mr. & Mrs. Fell have agreed to undergo a drug and alcohol evaluation at Court Advocate.

4

FELL-00001868

Mr. & Mrs. Fell maintain minimal contact with extended family members and appear to rely on one another for support. In the past, Theresa Sharpe, maternal grandmother, has intervened during a domestic dispute. This worker questions the relationship between Mrs. Fell and her mother. Mrs. Fell does rely on her mother to babysit as she feels she cannot trust another babysitter since the incident with her children. Mrs. Fell's parents are divorced and she has no contact with her natural father, but her mother resides at 32 East Chestnut Street in Wilkes-Barre. Mrs. Fell states that her mother remarried and her stepfather died when she was very young. Mrs. Fell has three other sisters, one who resides in Virginia, a 16 year old who still lives at home with her mother and the other one living next door to her mother. Theresa Sharpe had informed this worker that Mr. Fell is divorced from his first wife and has three children. However, his wife and his children do not have any contact with him due to his drinking. Both Mr. Fell's parents are deceased. Mr. Fell has two sisters one in California and the other in Florida and contact is maintained by phone.

Family's Attitude Toward Community: Mr. and Mrs. Fell are receptive to services with the agency and stated that they intend to keep their marriage together and would follow any recommendations that would improve their marital relationship. The Fell's have had past involvement with Children and Youth Services.

I)  Worker's hypothesis about the cause of the problems in the family:

Mr. and Mrs. Fell have been involved with Children and Youth Services in the past due to domestic disputes and alcohol usage. Mr. and Mrs. Fell admit to drinking on occasion, however, they do not feel a problem exists.

This worker feels the alcohol usage and domestic problems have adversely effected their inability to provide a stable home environment for their children. This worker feels this type of physical behavior has a negative impact on their children and it has not happened yet, but it may, that the children could end up in the middle of their dispute and seriously get injured. This worker feels the marital relationship needs improvement as they need to communicate with one another and not resort to violence as a way of getting each other's attention. Mr. and Mrs. Fell have very little insight into the cause of their problem and tend to minimize them.

5

FELL-00001869

The family is somewhat isolated from extended family members and do not receive much support.  This family could benefit from active involvement with Children and Youth Services as well as Court Advocate and marriage counseling.  This worker will be filing a Dependency Petition in order to ensure services are provided to this family.


Date: June 5, 1990

Carol Galli, GPS Intake Caseworker


Mark J. Zara, GPS Intake Supervisor


CG/MJZ:LM


Date transcribed:    June 4, 1990

6

FELL-00001870

# EXHIBIT 152

CONTACT SHEET

CASE NUMBER:                          MONTH: Nov

CLIENT NAME: Fell                     WORKER: DGeiman

ADDRESS:

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE) |
|---|---|
| | 2. ) OUTCOME: (WHAT TRANSPIRED) |

Date: 11/28/90

Location: Home

Who Seen:

Teri

Debbie

1. ) Unannounced Visit

2. ) Donny was outside playing w/ friends.
Teri was in the kitchen eating pie.
Debbie informed w/c that Don had signed himself into a Detox on Friday night.
— He will be there until Frid + then he will attend out patien counseling w/ Tom Lavelle at Choices in Neesbitt Hosp. —
this counseling will also include family counseling sessions on Sats - from 10:30 - 2:30pm.

FELL-00001871

Don back in the house. When he
is out of detox he will go to
Visions (shelter)

Debbie also told us Don quit
his job b/c they had cut back on his
hrs.
    (Panther Auto).

FELL-00001872

# EXHIBIT 153

CONTACT SHEET

CASE NUMBER:

CLIENT NAME: Fell

ADDRESS:

MONTH: January

WORKER: Il Summ

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE) |
| | 2. ) OUTCOME: (WHAT TRANSPIRED) |

Date: 1/14/91
Location:
Who Seen: Home

Debbie
Teri
Donny Jr.

1. ) To review 11/90 FSP

2. ) — Debbie agreed to sign, however there was no signature page.

Wkr discussed the C.O.A. (children of alcoholics) groups with Teri & Donny.

Debbie reported that Don is staying at Visions, but every once in a while he does stay there.

She claims she attended 2 appts. at Catholic Social Service but now her car doesn't work so she hasn't returned —

FELL-00001873

Wkr explained that she could utilize Lorene/Wyoming Counties Transportation as long as she had an MA card.

Wkr instructed her to call & schedule an appt for next week & then call this wkr to schedule transportation. She said she'd call tomorrow.

Wkr also encouraged her to go to these appts. w/ Den and wkr informed her that Lars Troy (court advocate) would like her to come in w/ Den for a few of his OtH sessions.

FELL-00001874

# EXHIBIT 154

CONTACT SHEET

CASE NUMBER:

MONTH: Feb.

CLIENT NAME: Fell

WORKER: D. Feerma

ADDRESS:

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE) |
|---|---|
| | 2. ) OUTCOME: (WHAT TRANSPIRED) |

Date: 2/14/91

Location: Home

Who Seen:

Debbie
Denny
Teri

1. ) Unannounced Visit

2. ) Debbie informed wkr that she went to a D+A appt. w/ Don + learn that appt. They have decided to ~~be~~ not get back together.

Wkr asked Denny + Teri how they felt + Denny just shrugged his shoulders + said he didn't care. Teri said she didn't want to live w/ her dad.

Debbie said "it feels like there's been a huge weight lifted from ~~my~~ my shoulders since he left." Let said Don came + picked up his clothes + said

FELL-00001875

she could get rid of the rest of his staff

— Donny + Leia said they both enjoyed
the C.O.A. groups. — Donny then ~~$~~
left to ~~to~~ play w/ his friends.

Debbie was cooking supper.

Wkr encouraged Debbie to continue w/
the counseling at Catholic Social Services
& possible include the kids so they
can deal with the separation.

Debbie said she is interested in
returning to work, but wants to wait
until the summer is over.

FELL-00001876

# EXHIBIT 155

# INTENTIONALLY LEFT BLANK

FELL-00001877

# EXHIBIT 156

# INTENTIONALLY LEFT BLANK

FELL-00001878

# EXHIBIT 157

CONTACT SHEET

CASE NUMBER:

CLIENT NAME: Fell

ADDRESS:

MONTH: March

WORKER: *[signature]*

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE) |
| | 2. ) OUTCOME: (WHAT TRANSPIRED) |
| Date: 3/19/91<br>Location: Home<br>Who Seen:<br>Debbie<br>Denny Jr<br>Teri | 1. ) Scheduled visit.<br><br>2. ) Denny said hello + he liked the groups — then he rec'd 2 phone calls (one right after the other) + he said — goodbye + left. He starts baseball in 2 wks.<br>Teri was at the kitchen table + she talked to wkr a/b what she did in the COA grps + that she liked them.<br>Debbie said Den had |

FELL-00001879

came back to pick up the rest of
his clothes. He had brought
the police up there to ensure
that there would be no probs.

She said he threw his keys
on the table & left; however the
house key was not there.

She said she has spoken of her
counselor at C.S.S. + has asked for
family counseling instead of marital counseling
— They have not gotten back to her yet.

Teri said she doesn't really like
her dad + she didn't want him
to move back.

Debbie had meat out on the counter
defrosting for supper.

FELL-00001880