UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

----------------------------------------------------------------------- X
: 
DONALD FELL,                                                             :
                                                                        :
                          Movant,                                       :
                                                                        :         2:01-CR-12
            - against -                                                 :
                                                                        :
UNITED STATES OF AMERICA,                                               :
                                                                        :
                          Respondent.                                   :
                                                                        :
----------------------------------------------------------------------- X


# MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT DISCOVERY


LEWIS J. LIMAN                          CATHLEEN I. PRICE
Cleary Gottlieb Steen &                 P.O. Box 321762
Hamilton LLP                            New York, New York 10032
One Liberty Plaza                       (212) 998-6193
New York, New York 10006
(212) 225-2000                          RICHARD RUBIN
                                        Rubin, Kidney, Myer & DeWolfe
                                        237 N. Main Street
                                        Barre, Vermont, 05641-4125
                                        (802) 479-2514

Date:   May 5, 2011                     *Attorneys for Donald Robert Fell, Jr.*

## INTRODUCTION

Donald Robert Fell, Jr. respectfully submits this memorandum in support of his Motion for Leave to Conduct Discovery (the "Initial Discovery Request") pursuant to the Fifth, Sixth and Eighth Amendments to the United States Constitution and Rule 6 of the Rules Governing 28 U.S.C. § 2255 Proceedings. On March 21, 2011, Mr. Fell filed a Motion For Collateral Relief, to Vacate, Set Aside, or Correct Sentence, and For a New Trial Pursuant to 28 U.S.C. § 2255 (the "2255 Motion" or "Motion"), setting forth numerous grounds for relief.

The relief sought by this motion is limited. Mr. Fell seeks only leave to conduct discovery pursuant to the Federal Rules of Civil and Criminal Procedure, and to serve document requests and subpoenas pursuant to those rules. He does not seek an order that any particular request satisfies the relevancy provisions of the Federal Rules or any of the other requirements of those rules. Nor does he seek the adjudication of any rights as between him and the United States Attorney's Office or any third party. Those issues, if any, can be best addressed in the typical manner in which discovery issues are addressed – after service of a discovery request, the filing of objections and a meet and confer. Only then would any discovery issue be ripe for adjudication. Here, Mr. Fell seeks only the most basic and elementary relief,[1] the right to serve discovery and at least begin the process under the Federal Rules of obtaining the documents and other information he needs to successfully prosecute his 2255 Motion.[2]

---

[1]    By making this request at this time, Mr. Fell does not waive his right to seek additional discovery in the future, in the form of further requests for access to relevant documents and records, as well as depositions of relevant witnesses.

[2]    Mr. Fell respectfully requests that this Court resolve the issues contained in this Initial Discovery Request and any subsequent discovery motions prior to ordering a response to the 2255 Motion and before Mr. Fell's time to file his amendment as of right pursuant to Fed. R. Civ. P. 15, and prior to the scheduling of an evidentiary hearing on any of the claims set forth in Mr. Fell's 2255 Motion or any amendments thereto.

## BACKGROUND

### A.  Mr. Fell's 2255 Motion

Mr. Fell's 2255 Motion alleges serious constitutional errors that, if proved, would justify relief from his unreliable conviction and death sentence.  As relevant here, these errors include ineffective assistance of counsel and prosecutorial misconduct.  Among other errors, Mr. Fell received ineffective assistance of counsel when his appointed trial counsel failed to thoroughly investigate and present both available substantive defenses to the charge of capital murder and Mr. Fell's penalty phase case for life.  Trial counsel also ineffectively failed to investigate the few instances of Mr. Fell's prior misconduct which it knew the Government would use as aggravating evidence, including the false allegation that Mr. Fell had previously beat a young man named Christopher Eike into a coma; the false characterization that he had intentionally and remorselessly shot one of his childhood friends; and the inaccurate suggestion that he had gratuitously committed disciplinary incidents in prison.  Had counsel conducted a constitutionally sufficient investigation, the jury would have had a dramatically different image of Mr. Fell – one of a young adult plagued by mental illness and a legacy of drug and alcohol abuse who was operating with diminished capacity at the time of the offense, had no significant prior criminal history, had adapted successfully to the prison environment, and did not pose a serious threat to anyone.  Counsel also failed to undertake an effective investigation of the Government's forensic evidence from the crime scenes and generally failed to confront the Government's case throughout.

The trial was also marred by prosecutorial misconduct.  The Government knowingly used false testimony in violation of Napue v. Illinois, 360 U.S. 264 (1959), and failed to turn over critical exculpatory and mitigating evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972).  Individually, each of these instances of

2

misconduct or prejudicially deficient representation warrants relief under § 2255. Considered cumulatively, as § 2255 allegations must be assessed, Mr. Fell's claims present abundant grounds for relief.

### B. Mr. Fell's Efforts to Obtain Information In Support of His Motion

Mr. Fell's Motion is supported by specific and powerful facts that had never been produced by the Government prior to trial, and were never offered by the defense. Included within those supporting facts are new highly relevant records and affidavits detailing Mr. Fell's horrific upbringing that led to his mental illness; never before produced hospital and medical records that establish that Mr. Eike did not suffer medical injury; records of Mr. Eike's relevant criminal record; affidavits from the "victim" of the childhood shooting and his family; admissions by the correctional officer involved in the incidents in Vermont, Officer Pelkey; and prison records regarding Mr. Fell's co-defendant Mr. Lee showing Mr. Lee's independent violent and aggressive tendencies. All of this information was reasonably available to the defense over the four and a half years it had to investigate the case.

Mr. Fell's lawyers obtained this information without the benefit of compulsory or legal process through the service of document requests sent from the date of appointment in December 2009 until the filing of the 2255 Motion. In that period, counsel issued hundreds of records and document requests to federal, state and local law enforcement agencies, social services agencies, health care facilities and private organizations in four states including Arkansas, New York, Pennsylvania and Vermont. Those requests sought documents relevant to Mr. Fell's habeas claims, including FBI records that would indicate exculpatory evidence in the Government's possession was not disclosed to trial counsel; hospital and court records that should have been obtained by trial counsel as evidence of the mental health histories of Mr. Fell, his family and his caregivers; law enforcement records that prove pertinent information about Mr. Fell's family and

caregivers; and social services and school records that contemporaneously documented the chaotic and abusive environment in which Mr. Fell was raised.

At the same time though, Mr. Fell's requests for other highly relevant information have been frustrated by the absence of compulsory process. Some agencies have taken the position that information Mr. Fell seeks will not be disclosed absent compulsory process or a subpoena. Others have either produced heavily redacted documents or entirely withheld documents pursuant to claimed FOIA exemptions. Mr. Fell has appealed the denial of his requests on this basis. In some instances, those appeals are still pending, and Mr. Fell still hopes to obtain documents and records through public information requests. In all instances, however, the service of document requests has been insufficient to provide counsel with the complete access it needs to fully develop the facts relevant to Mr. Fell's claims for relief.

## ARGUMENT

### A. The Relevant Legal Standards

Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts gives this Court express authority to order discovery in a case such as this one. It provides:

> A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law.

The Supreme Court has held that good cause is established "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed,

4

be able to demonstrate that he is entitled to relief."[3]  Bracy v. Gramley, 520 U.S. 899, 908-909

(1997) (further stating that where such good cause is shown, "it is the duty of the courts to

provide the necessary facilities and procedures for an adequate inquiry"); Drake v. Portuondo,

321 F.3d 338, 345 (2d Cir. 2003) (quoting Bracy, 520 U.S. at 908-09).  Mr. Fell need not

conclusively establish his entitlement to relief on the merits of his claims – the Supreme Court

has ruled that discovery is warranted even if the claim presented is "only a theory," that is

currently "not supported by any solid evidence," and despite the fact that it is possible that

"petitioner will be unable to obtain evidence sufficient to support" the theory.  Bracy, 520 U.S. at

908-09.  The claims presented in Mr. Fell's 2255 Motion individually and collectively pass this

threshold.

### B.  Mr. Fell's Motion to Take Discovery Should Be Granted

Mr. Fell has made specific allegations that offer ample reason to believe that, if and when

the facts are fully developed, he will be entitled to relief.  Among these claims are those relating

to ineffective assistance of counsel, disclosure violations by the Government, prosecutorial

misconduct, and selective prosecution.

### 1.  Documents Relating to Ineffective Assistance and Prosecutorial Misconduct Claims Arising Out of Testimony and Arguments Relating to Mr. Fell's Prior Acts of Violence

Mr. Fell's Motion presented specific allegations of prosecutorial misconduct and

ineffective assistance of counsel related to the presentation at trial of two prior alleged instances

of violence.  The first involved a fight between Mr. Fell and a man named Christopher Eike in

Woodstock, New York a few months prior to the charged crime, and the second involved an

accidental childhood shooting of a friend named John Gacek.  Mr. Fell has specifically alleged

---

[3]     Though Bracy involved discovery in habeas corpus proceedings pursuant to the Rules Governing § 2254 Cases, its discussion of the "good cause" standard is fully applicable to § 2255 proceedings.  See United States v. Roane, 378 F.3d 382, 402-03 (4th Cir. 2004).

claims that the Government failed to disclose critical documents and information that contradicted their prejudicial arguments regarding the severity and nature of these incidents, and/or elicited false testimony and presented misleading arguments to the jury regarding these incidents, in violation of both Brady and Napue.  See 2255 Motion, Claim VI.  Further, Mr. Fell also presented specific allegations that his appointed counsel knew that the Government would seek to introduce information regarding these incidents and failed to conduct an investigation into readily available evidence regarding them.  Id.  The false depiction of the incidents as presented to the jury was highly prejudicial to Mr. Fell because it allowed the Government to argue that Mr. Fell was a depraved human being with a history of inflicting serious violence on others that had only gotten more severe as he got older.  Mr. Fell's Motion presents facts that – if credited – demonstrate there is a reasonable probability that at least one juror would have weighed this information differently and entitle him to a new trial.

### i.  Christopher Eike

At Mr. Fell's trial, the Government elicited testimony that Mr. Fell put Mr. Eike into a coma, likened the fight to the murder of Mrs. King and argued that the incident was indicative of the dangerously violent man Mr. Fell had become.  Mr. Fell's Motion presents critical and contrary information obtained through record requests to the Sullivan County Sheriff's Department and the Catskills Regional Medical Center, as well as an interview with Mr. Eike, which establishes that Mr. Eike was never in a coma, and in fact his injuries from the fight were superficial enough that he was treated for minor surface injuries and released from the hospital in a matter of hours.  Mr. Fell has also pled facts in his Motion that (a) Mr. Eike had a prior conviction involving sexual assault of a minor and (b) Sullivan County Sheriff Department officials had considered charging Mr. Eike with sexual assault of Mr. Fell's sister Teri Fell the night of the altercation.  Finally, Mr. Fell presented information suggesting that the Government

6

was aware of the nature of Mr. Eike's medical injuries and criminal history, and yet failed to

disclose that information to defense counsel and defense counsel never investigated it.  The

Government interviewed Mr. Eike.  In addition, pursuant to a FOIA request, the FBI provided

post-conviction counsel with a heavily redacted document that demonstrates that the FBI

conducted a criminal background check on Mr. Eike and learned that he had a criminal history:



An NCIC III and CCH conducted for     on 06/14/2005.
revealed the following criminal history for

2255 Motion, Ex. 128 at FELL-00001376 (June 13, 2005 FBI Report).

These specific allegations provide Mr. Fell good cause to take discovery of all evidence

referring or relating to the Woodstock incident and all documents related to the Government's

investigation into the Woodstock incident.  Specifically, if – as the facts alleged tend to suggest –

Mr. Eike was not in a coma and was not seriously injured and the fight was provoked by Mr.

Eike's attempted rape of Teri Fell – and the defense failed to discover that readily available

evidence – that proof would establish Mr. Fell's ineffective assistance of counsel claim and

entitle him to a new penalty trial.  Among the last words the jury heard were the prosecutor's

statement that Mr. Fell's assault on Mr. Eike was just like the murder of Mrs. King.  If, as the

facts alleged show, the Government knew this statement and the testimony it elicited to be false,

that would establish Mr. Fell's prosecutorial misconduct claim, also entitling him to a new trial.

### ii. John Gacek

The only other evidence of violent conduct by Mr. Fell prior to the King murder was the statement of the prosecutor that Mr. Fell had deliberately and remorselessly shot his best friend John Gacek when the two were young. Mr. Fell's Motion presents specific allegations that the shooting was entirely accidental and that Mr. Fell was extremely upset, apologetic and remorseful following the incident. This information is from post-conviction interviews of Mr. Gacek, his mother and his mother's boyfriend. It was readily available to the defense. It is inconceivable it was not known to the Government.

There is good cause for Mr. Fell to take discovery of all evidence regarding the Gacek incident and the Government's knowledge of that incident. Evidence corroborating that the incident was an accident and that Mr. Fell was traumatized by it and remorseful would powerfully undercut the Government's inflammatory claim that Mr. Fell was an incorrigible, remorseless killer from an early age. If that evidence was readily available to counsel with a subpoena, Mr. Fell received ineffective assistance. If the Government was aware of this evidence, that would establish the claim that the Government failed to disclose mitigating information in violation of <u>Brady</u>.

### 2. Documents Relating to Ineffective Assistance, <u>Napue</u> and <u>Brady</u> Claims Arising Out of Mr. Fell's Disciplinary History in Prison

At trial, the Government presented evidence of two videotaped incidents involving Mr. Fell in prison that it argued showed unprovoked aggressive behavior by Mr. Fell, proving that Mr. Fell would be a danger to others if he were sentenced to life in prison instead of death. Mr. Fell's Motion presents specific allegations that his trial counsel were ineffective for failing to investigate these prison incidents, and that the Government withheld critical, mitigating information relating to these prison incidents in violation of <u>Brady</u> and <u>Napue</u>. <u>See</u> 2255 Motion,

Claim VII. Those allegations include information from a post-conviction interview that Marc Pelkey, one of the officers involved in both incidents and to whom Mr. Fell directed his remarks, had an extensive disciplinary history of violence towards inmates. 2255 Motion, Ex. 256 (Declaration of Marc Pelkey). Mr. Fell alleged in his Motion that this information was readily available to the defense: Mr. Pelkey volunteered it. Mr. Fell's Motion also alleges that the Government knew it: Mr. Pelkey was with the Government for at least four days during trial, yet the Government curiously chose not to call him as a witness. The Government turned over numerous documents regarding his March 17, 2004 disciplinary incident, but heavily redacted documents counsel received from the U.S. Marshals Service pursuant to an information request show that the Government failed to disclose one report to trial counsel showing that Officer Pelkey advanced at Mr. Fell during the altercation.

Evidence regarding the incidents and the disciplinary histories of Mr. Pelkey and the other correctional officers is critical to Mr. Fell's Motion. Evidence that Mr. Pelkey (or others) had a disciplinary record or that the incident was provoked would undercut a key Government theme at trial and establish counsel's ineffective assistance. And if the Government knew this information and failed to disclose it, that would be misconduct.

Mr. Fell thus should be permitted to conduct discovery of the incident, the disciplinary histories of the officers, and the Government's knowledge of that information, including documents from the U.S. Attorney's Office, the Vermont Department of Corrections (the "VT DOC") and from the U.S. Marshals Service. See Appendices A, D and E.

> **3. Documents Relating to Claims of Prosecutorial Misconduct, Violations of the Government's Obligations Under <u>Brady</u> and <u>Giglio</u> and Ineffective Assistance of Counsel Arising Out of Dr. Welner's Evaluation and Report**

Among the most devastating incidences of defense attorney error and prosecutorial misconduct were the series of events that surrounded the prosecution's production of the Welner

9

report, defense counsel's immediate and precipitous retreat from its own challenge to the Welner report, the defense's withdrawal of any expert evidence on mental health (which it had promised the jury) and its acquiescence to a stipulation that simply and falsely stated that Mr. Fell suffered no mental disease or defect. These were virtually the last words the jury heard. Mr. Fell requests permission to conduct discovery regarding these errors. As specifically alleged in Mr. Fell's Motion, Mr. Fell's trial counsel rendered unconstitutionally deficient performance when they failed to pursue a valid motion to exclude the testimony of Dr. Michael Welner on the grounds that (1) the prosecution violated the Court's Order prohibiting the Government from engaging in unauthorized testing of Mr. Fell and preventing Dr. Welner from examining Mr. Fell and (2) Dr. Welner employed unorthodox, unreliable, and incredibly prejudicial methodologies, and therefore his testimony could have and should have been excluded as more prejudicial than probative under the FDPA. See 2255 Motion, Claim V. In its post-trial opinion, the Court itself ruled that "the intent of its April 7 Order was not followed." United States v. Fell, 2006 U.S. Dist. LEXIS 24707, at *25 (D. Vt. Apr. 24, 2006). There was ample evidence to support that finding, including that in Dr. Welner's report he acknowledged that he supplied Dr. Wetzel questions to ask Mr. Fell and used responses to these questions to administer unauthorized testing of Mr. Fell in direct violation of the Court's Order. See also id. at *27 (Welner used Dr. Wetzel's interview "to obtain the interview results he was precluded from obtaining on his own"). At the same time, the Court recognized as relevant but left for another day such questions as whether the violation caused Mr. Fell substantial prejudice. That day has come.

There is a square factual dispute on the prosecutor's misconduct. Mr. Fell's post-trial motion presented concrete proof that Dr. Wetzel had been encouraged to use questions prepared by Dr. Welner. Dr. Wetzel admitted as much to Paul Volk. Dr. Wetzel also never disputed that

10

he had made that admission.  If true, it would have established the misconduct.  In the carefully-worded affidavit that the Government submitted in response, Dr. Wetzel did not dispute that he had told counsel that the prosecution had encouraged him to use questions prepared by Dr. Welner, but said only that he had come to the realization – in conjunction with preparing the affidavit for the Government – that he may have been incorrect or imprecise in his conversation with Mr. Volk.  He also did not dispute that Mr. Darrow had provided Dr. Wetzel with Dr. Welner's questions, and confirmed that Mr. Darrow had informed him that there was "no legal reason" not to use them.  2255 Motion, Ex. 139 (Wetzel post-trial affidavit).  This evidence thus squarely presents the question of whether the prosecution engaged in misconduct relating to Dr. Wetzel's evaluation of Mr. Fell.  The answer to that question is centrally relevant to Mr. Fell's Motion.  If the Government engaged in misconduct that would have resulted in the exclusion of Dr. Welner's report, and the defense waived that argument for no strategic reason, then Mr. Fell would establish an important component of his ineffective assistance claim.  Given the Government's arguments, and the combination of trial counsel's abandonment of important and readily-available mental health evidence and agreement to an inaccurate and incredibly damaging stipulation to avoid Dr. Welner's testimony, prejudice would easily follow.

Moreover, there is even more basis now than there was at trial to suggest that the Government engaged in misconduct.  Defense investigator Andrew Bartnick has submitted an affidavit attesting that he witnessed the prosecution take possession of videotapes of the examination Dr. Wetzel conducted of Mr. Fell immediately after the interview, even though the Government was prohibited from viewing the "results and reports" of the compelled Government examination unless and until the defense confirmed the intention to offer expert mental health evidence after a guilty verdict was returned under the Court's Order and Federal Rule of

11

Procedure 12.2.  United States v. Fell, 372 F. Supp. 753, 761 (D. Vt. 2005); 2255 Motion, Ex.

262 (Declaration of Andrew Bartnick).

In failing to pursue a motion in limine to exclude Dr. Welner, trial counsel also failed to

seek discovery related to the bases for Dr. Welner's conclusions and failed to challenge Dr.

Welner's conclusions with readily available evidence.  Dr. Welner's report also contains a

number of knowingly false or misleading statements – which the Government knew or recklessly

failed to know were false.  As Mr. Fell has specifically alleged, Dr. Welner's report shows that

he interviewed a number of witnesses to support his conclusions about Mr. Fell's mental health.

The Government did not turn over interview notes relating to many of these witnesses to trial

counsel, even though many of the interviews of these witnesses were conducted in the presence

of an FBI agent.  Mr. Fell's Motion presents specific allegations that Dr. Welner

mischaracterized at least some of the statements of the individuals that he interviewed about Mr.

Fell's life.  See 2255 Motion, Claim V, Section B(1)(b)(5).  For example, Dr. Welner cited Sean

Campbell, the boyfriend of Mr. Fell's aunt, as a protective role model when in reality Mr.

Campbell was nearly the same age as Mr. Fell and very much involved in the household violence,

and Mr. Fell's time living with Sean and Jackie was instead characterized by horrific abuse.  Id.

(citing Exs. 10, 273).  The Motion also presents facts indicating that Dr. Welner obtained

mitigating evidence from some of the witnesses he interviewed yet knowingly chose not to

include that information to reach his pre-determined opinion and that the Government knew of

that omission – Government agents accompanied Dr. Welner.  There is good cause for the

discovery of records of all of the statements made to Dr. Welner.  If Mr. Fell obtains complete

and unredacted 302s of these interviews, he will be in a position to establish the full extent of Dr.

Welner's distortion of the facts, and the full prejudice Mr. Fell suffered from trial counsel's

12

failure to explore readily available avenues to challenge Dr. Welner's unreliable report. This discovery could also establish that the Government knowingly submitted false or selectively misleading expert testimony in violation of Mr. Fell's due process rights. Napue v. Illinois, 360 U.S. 264 (1959); Drake v. Portuondo, 553 F.3d 230 (2d Cir. 2009).

Mr. Fell also has good cause to believe that notes from Dr. Welner's interviews should have been turned over in accordance with the Government's obligation to turn over mitigating evidence under Brady. There were twenty FBI interviews listed as sources in Dr. Welner's report for which no 302s were disclosed, and twenty-three people who were interviewed by Dr. Welner without the FBI for whom no corresponding interview report was turned over to the defense. See 2255 Motion, Claim XVII.

In response to FOIA requests, the FBI produced thirty-eight 302s (the "FOIA 302s"), many of which were heavily redacted and nearly impossible to decipher. The FBI also withheld many documents, including some pages of FOIA 302s, in their entirety. The limited information the FBI has provided to date, though, has shown that Mr. Fell has good cause to discover complete, unredacted FBI 302s. The FOIA 302s include at least five additional interview reports by FBI agents that were not identified in the Welner Report as a source for his opinion, but appear to be based largely on questioning conducted by Dr. Welner. As specifically alleged in Mr. Fell's 2255 Motion, at least three of these 302s included mitigating information about Mr. Fell's background, giving Mr. Fell good cause to conduct discovery to determine whether other redacted or not-yet-disclosed information was suppressed by the Government in violation of its Brady obligations. Id. at Section 1(a), (b) (discussing, for example, 302s with information about Mr. Fell's poor family life, his mental struggles at St. Michael's and his grandmother Theresa's refusal to house him).

**4. Documents Relating to The Failure to Investigate and Failure to Disclose Information about Bobby Lee**

Mr. Fell's Motion asserts as error trial counsel's failure to investigate Mr. Lee, Mr. Fell's co-defendant, including Mr. Lee's relative culpability for the crimes. Mr. Fell also presented specific allegations that the Government withheld critical information about Mr. Lee from Mr. Fell's counsel, including information that contradicted the Government's depiction of Mr. Lee as a mere follower in the crimes who was influenced by Mr. Fell. See 2255 Motion, Claim VIII. Finally, Mr. Fell presented specific allegations that this information would have been exculpatory or mitigating and the defense's failure to discover it (and the prosecution's failure to disclose it) caused prejudice.

Post-conviction counsel received a number of documents relating to Mr. Lee from the U.S. Marshals Service and the FBI pursuant to information requests that were never provided to trial counsel, many of which were heavily redacted. These documents show that Mr. Lee was extremely aggressive and violent in prison, even though he was segregated from Mr. Fell and therefore not under his influence in any way. The Motion presented facts indicating that the Government was in the possession of a large collection of law enforcement, medical, social service and educational records about Mr. Lee stemming from its investigation of Mr. Lee prior to his death, yet failed to disclose them.

There is reason to believe that if the facts are more fully developed they may entitle Mr. Fell to relief. The records obtained to date without benefit of the Federal Rules or a subpoena show that Mr. Lee was anything but the meek follower he was depicted as at trial. They also show that it was Mr. Lee's influence (which, of course, would be absent in prison) that led to the horrible crimes of which Mr. Fell was convicted and sentenced to death. If, as the information discussed above gives good cause to believe, the undiscovered records are consistent with those

14

few that Mr. Fell has been able to obtain, that would entitle Mr. Fell to relief. Such evidence would establish both the deficient performance of trial counsel for their failure to investigate their client's co-defendant, as well as the prejudice of this failure, particularly given its obvious relevance. If – as this information also gives good cause to believe – the Government knew of this information and failed to disclose it, that would tend to establish prosecutorial misconduct. For those reasons, good cause exists for Mr. Fell to conduct discovery of all information relating to Mr. Lee, including information in the possession of the Department of Justice ("DOJ"), the U.S. Attorney's Office, the U.S. Marshals Service, and the VT DOC.

In the same vein, Mr. Fell also seeks discovery related to the FBI's interview of an eyewitness to the crimes, Francis Bellantoni. Mr. Fell has specifically alleged that the FBI interviewed Mr. Bellantoni for nearly an hour prior to trial, and supported his claim with a declaration from Mr. Bellantoni. 2255 Motion, Ex. 301 (Declaration of Francis Bellantoni). Mr. Bellantoni informed the FBI that he saw two men fighting in the presence of a woman on the side of the road near the crime scene on the morning of the crimes. The Government should have turned reports of this interview over to trial counsel because it corroborated Mr. Fell's account that he and Mr. Lee were in a disagreement about Mrs. King, and would have been mitigating for Mr. Fell. Mr. Fell therefore seeks discovery relating to the FBI's interview of Mr. Bellantoni in order to show that this evidence was favorable and material, and was suppressed in violation of Brady. Mr. Fell has additional good cause to seek this information because it is likely to further support Mr. Fell's claim that his trial counsel were ineffective for failing to interview Mr. Bellantoni when they knew he was an important witness.

15

**5. Documents Relating to Trial Counsel's Failure to Conduct an Adequate Forensic Investigation into the Death of Mrs. King and the Government's False Arguments Based on Forensic Evidence**

Mr. Fell seeks discovery of documents relating to the circumstances, nature and cause of Mrs. King's death and the state of her body when it was recovered in support of his claims, including that: (1) trial counsel were ineffective for failing to conduct an adequate forensics investigation into Mrs. King's death; and (2) the Government knowingly presented misleading testimony with regard to Mrs. King's death in support of the "heinous, cruel and depraved" aggravating factor. See 2255 Motion, Claims IX-X.

Mr. Fell alleged in the Motion that his trial counsel's performance was deficient for failure to conduct an adequate forensic investigation, and this deficient performance prejudiced Mr. Fell because it enabled the prosecution to argue, without any scientific foundation, that: (1) the distance of teeth and earrings recovered at the crime scene demonstrate the "heinous, cruel or depraved" nature of Mrs. King's death when in fact the distance of the teeth and earrings from the body could be attributed to other factors including animal activity; (2) 150 pounds of force were used to kill Mrs. King even though there are no valid scientific studies to support such a conclusion; and (3) Mrs. King was "killed twice," by both a rock and asphyxiation, when in fact there was only one cause of death – the rock wielded by Mr. Fell's co-defendant. Id.

While Mr. Fell has received autopsy photographs and photographs of the Dover Plains crime scene from trial counsel, Mr. Fell seeks to discover any additional documents relating to the earrings and teeth recovered at the crime scene and any post-mortem animal activity that were not turned over to trial counsel. Discovery of these documents is essential to demonstrate that Mr. Fell was prejudiced by trial counsel's failure to thoroughly investigate the reasons why the teeth and earrings were recovered at a distance from Mrs. King's body. Such discovery is

16

also necessary to support Mr. Fell's claim that the Government knowingly presented false arguments and testimony about the teeth and earrings in violation of Napue.

For the same reason, Mr. Fell also seeks to conduct discovery of evidence regarding the conclusion that Mrs. King was killed with 150 pounds of force. That assertion at trial went directly to the Government's claim that Mr. Fell's conduct was heinous, cruel and depraved. It also lacked any scientific basis. If the Government knew it lacked scientific basis or had evidence suggesting it had no scientific basis and failed to disclose that information, such misconduct would entitle Mr. Fell to a new penalty trial, thus Mr. Fell seeks these documents in order to establish both trial counsel's deficient performance and the Government's misconduct.

Mr. Fell has alleged that trial counsel were ineffective for failing to investigate the cause of Mrs. King's death because, if trial counsel had conducted an adequate forensic investigation, they would have learned that Mrs. King's death was caused by the rock wielded by Mr. Lee and not by asphyxiation from stomping by Mr. Fell, and they would have been able to challenge the Government's unscientific arguments that Mrs. King was "killed twice." Mr. Fell seeks discovery related to the Government's investigation into the cause of Mrs. King's death to support his claim that the Government knowingly presented false testimony regarding the cause of Mrs. King's death, which trial counsel was unable to challenge due to its deficient performance in failing to conduct an adequate forensic investigation.

### 6. Documents and Evidence Relating to Trial Counsel's Failure to Conduct an Adequate Forensic Investigation of the Rutland Crime Scene

Mr. Fell's Motion alleged that trial counsel were ineffective for failing to investigate the Rutland crime scene and that the Government engaged in related misconduct. Trial counsel failed to conduct any forensic investigation into the deaths of Ms. Fell and Mr. Conway, and never requested relevant documents and evidence that would be necessary to conduct an

17

adequate forensic investigation, including autopsy photographs of Ms. Fell and Mr. Conway, or the log of all evidence recovered from the Rutland crime scene. See 2255 Motion, Claims XI-XII.

Mr. Fell has good cause to request this discovery because witnesses who were never interviewed by trial counsel have informed post-conviction counsel that there were loud arguments at the Rutland crime scene on the night of the Fell and Conway murders. A thorough investigation of all evidence from the Rutland crime scene is necessary in order to determine what transpired on the night of the crimes in order to uncover any additional mitigation evidence. Mr. Fell therefore seeks all autopsy photos and reports and complete laboratory analyses relating to the deaths of both Ms. Fell and Mr. Conway, as well as all physical evidence recovered from the crime scene and any logs cataloging this evidence. Upon information and belief, this evidence is in the possession of the U.S. Attorney's Office in the District of Vermont, the Rutland City Police Department and the Vermont Medical Examiner's Office. These agencies have refused to provide Mr. Fell access to this evidence absent a court order.

### 7. Documentation the Government Failed to Turn Over Relating to Social Service Agencies in Violation of Its Obligations Under Brady and Giglio

Mr. Fell seeks discovery to support his claim that the Government also failed to disclose mitigating portions of a report authored by a social services worker in a 2001 FBI Report detailing background information collected about Mr. Fell and Mr. Lee. Although the social service worker's original report contained critical mitigation information about allegations of paternal abuse, the Government excerpted the worker's report in the FBI Report – omitting this mitigating information – and then failed to disclose the underlying report. This disclosure violation gives Mr. Fell good cause to believe that the Government may have withheld other mitigating social services documentation the FBI or other agencies collected in their

18

investigation into Mr. Fell's background in violation of its <u>Brady</u> obligations.  Accordingly, Mr. Fell seeks all potential <u>Brady</u> material stemming from the Government's investigation into Mr. Fell's background.

### 8.   Undisclosed Documentation Relating to Drug Abuse in Violation of the Government's <u>Brady</u> Obligations

Mr. Fell's Motion specifically alleges that the Government failed to disclose physical evidence relating to the investigation of the crimes and that trial counsel failed to investigate that evidence.  The Motion identified evidence that would corroborate Mr. Fell and Mr. Lee's accounts of their chronic drug and alcohol abuse, as well as their drug abuse on the night of the crimes and would have supported a substantive defense based on Mr. Fell's diminished capacity at the time of the crimes.  <u>See</u> 2255 Motion, Claim XVIII.  The Motion also alleged that the failure to elicit or discover this evidence was prejudicial because it left the Government free to argue that there was no evidence whatsoever regarding drug use the night of the crime.  As detailed in the 2255 Motion, a Marlboro box containing small plastic bags and a bottle of brown liquid was seized from the car in which Mr. Fell and Mr. Lee were stopped.  However, through a post-conviction public record request, counsel has obtained information from the FBI that the bottle was noted as having a drug weight of about 70 grams.  This information was not in trial counsel's files.  <u>Id.</u>  Post-conviction counsel have not been able to view these items, nor to obtain any information about the nature or results of any tests that might have been conducted on these items.

In addition, two pipes were found by the Clarksville Police Department in the car driven by Mr. Fell and Mr. Lee at the time of their arrest, but no test results about these pipes were disclosed to defense counsel.  There is no documentary evidence that these pipes were transferred from the Clarksville Police Department.

19

Counsel therefore seeks discovery of any available documentation regarding drugs or drug paraphernalia recovered during the course of the Government's investigation, whether in the possession of the Clarskville Police Department, the Rutland City Police Department, the U.S. Attorney's Office or any other agency involved in the investigations of the crimes to determine whether there was any evidence of drug abuse that was not disclosed by the Government in violation of its Brady violations, or that should have been investigated by trial counsel, prejudicing Mr. Fell. See Appendices A and B.

### 9. Documents Related to The Government's Decision to Seek the Death Penalty Against Mr. Fell on Impermissible Grounds

The Motion also alleges reversible error in that the decision by the U.S. Attorney General to charge Mr. Fell capitally was based upon constitutionally impermissible factors, including Mr. Fell's race, gender and geography, and the race and gender of the crime victim. See 2255 Motion, Claim XXIII. Both Mr. Fell and the victim in this case are white, and in the years prior to the crimes, the DOJ was under serious scrutiny for the racial disparities evident in its use of the federal death penalty. Indeed, just over a month before the crimes in this case, the DOJ released a troubling study on its modern use of the federal death penalty, which concluded that the vast majority of federal defendants sentenced to death during this period were minorities, and that white defendants were nearly twice as likely to receive plea agreements that took the death penalty off the table. See U.S. Dep't of Justice, The Federal Death Penalty System: A Statistical Survey (1988-2000) (Sept. 12, 2000).

Mr. Fell was offered a plea agreement in this case that would have eliminated his exposure to the death penalty given the strength of the mitigating circumstances. On May 18, 2001, Mr. Fell's trial counsel sent a letter to the Vermont U.S. Attorney's Office, detailing some of the mitigating factors in Mr. Fell's case and requesting that the U.S. Attorney's Office not

20

seek the death penalty.  Because they agreed that Mr. Fell did not deserve the death penalty based on the mitigating evidence in his case, the local Vermont U.S. Attorneys consented to a guilty plea on October 24, 2001.

In the intervening period, however, the Justice Department changed administrations and issued a new report rejecting the earlier findings of racial bias in its use of the death penalty, and simultaneously revised its death penalty protocol.  The revised protocols removed the discretion from local prosecutors in death-eligible cases, and required approval from the Attorney General in any plea agreement that would reduce a death-eligible offense to a non-capital offense. According to a June 6, 2001 report, this measure was designed to make U.S. Attorneys unable to "effectively negate a decision by the Attorney General" to seek the death penalty.

Pursuant to these revised protocols, Attorney General Ashcroft reversed the local prosecution's decision in January 2002, and insisted that the death penalty not thought necessary be nevertheless pursued.  It was painfully apparent that this decision was made in order to "improve" the statistics set forth in the September 12, 2000 study, and to support Attorney General Ashcroft's contemporaneous testimony before Congress that "[t]here is no evidence of racial bias in the administration of the federal death penalty."  The Washington Post, for example, reported:

> Fell's case illustrates one important difference between the capital punishment systems under Ashcroft and Reno: the oversight of plea agreements.
>
> In June 2001, Ashcroft released the final version of a Justice Department report which concluded that there was "no evidence of racial bias in the administration of the federal death penalty," but did find a "slight statistical disparity" in plea agreements that seemed to favor white defendants.
>
> As a result, Ashcroft said, he would begin reviewing all plea agreements in death-eligible cases, which previously could be settled without attorney general review.

21

> Under Reno, Hall's office likely would have proceeded with the
> Fell agreement without input from Washington, several officials
> said. Such an agreement for Fell, who is white, would have
> affected the racial distribution numbers.

Dan Eggen, *Ashcroft Aggressively Pursues Death Penalty*, Wash. Post, Jul. 1, 2002, at A1.

The Government's decision to seek the death penalty cannot be based on race or any other impermissible factors. See Vasquez v. Hillery, 474 U.S. 254, 264 (1986) ("[A] conviction is void under the Equal Protection Clause if the prosecutor deliberately charged the defendant on account of his race."); United States v. Batchelder, 442 U.S. 114, 125 n.9 (1979) ("The Equal Protection Clause prohibits selective enforcement based upon an unjustifiable standard such as race, religion, or other arbitrary classification.") (internal quotation and citation omitted).

In support of these claims, Mr. Fell has made record requests to various DOJ agencies, particularly the Office of the Attorney General and the Capital Case Unit of the DOJ's Criminal Division, seeking information Mr. Fell believes will support his valid claims for relief. However these agencies have failed to produce the documents, claiming various exemptions under the FOIA statute. Because these documents are not obtainable through other means and they are essential to the full factual development of Mr. Fell's claim that the Attorney General considered impermissible grounds in refusing to accept his offer to plead guilty, Mr. Fell requests permission to conduct discovery of any and all relevant documentation concerning the decision to seek the death penalty against Mr. Fell that is in the possession of the relevant DOJ agencies, as set out more specifically in Appendices A and C.

### 10. Documents Relating to the Government's Failure to Disclose Brady Material and Trial Counsel's Ineffectiveness in Failing to Conduct an Adequate Investigation into Donald Fell's Disability Status

Mr. Fell seeks to conduct discovery of information he has been unable to obtain without a subpoena relating to the reasons why he was diagnosed with a disability as a child, as well as his

receipt of disability payments from the federal government through the Supplemental Security Income ("SSI") program.  Mr. Fell has good cause for this discovery to support his claims that his trial counsel were ineffective for failing to investigate Mr. Fell's diagnosed disability, even though this information was readily available through subpoena and critical to assessing his mental health. See 2255 Motion, Claim III; Strickland v. Washington, 466 U.S. 668 (1984).  In response to information requests, the Social Security Administration has represented that all of Mr. Fell's files in its possession have been destroyed, and the only information they have about Mr. Fell's diagnosed disability is a computer entry showing the code for his disability and the identity of the agent who made the disability determination.  Mr. Fell seeks a computer screen shot of this entry from the Social Security Administration, along with all information necessary to decipher the codes demonstrating the basis for his diagnosed disability.  Mr. Fell also seeks discovery of any documents related to Mr. Fell's disability in the possession of the Wilkes-Barre Social Security Office or the Bureau of Disability Determination, which performed administrative and diagnostic services for the Social Security Administration and likely has access to critical information about Mr. Fell's disability.  Moreover, if, as Mr. Fell has specifically alleged, the Government was in possession of and withheld information relating to Mr. Fell's disability determination, the failure to disclose this information would violate the Government's Brady obligations.  Accordingly, Mr. Fell seeks the Court's authorization to conduct discovery of any and all records, documents or communications regarding Mr. Fell's disability and the determination of such disability in the possession of the U. S. Attorney's Office for the District of Vermont – as set out in Appendix A – as well as the Social Security Administration, the Wilkes-Barre Social Security Office or the Bureau of Disability Determination.

## CONCLUSION

There is good cause to believe that Mr. Fell would be entitled to relief if and when the evidence is fully developed on any one of these claims. There were numerous prejudicial errors committed by both the defense and the Government in Mr. Fell's trial, often despite this Court's extensive efforts to ensure he had a fair trial. But, of course, ineffective assistance and prosecutorial misconduct need not be assessed only claim by claim. The cumulative effect of counsel's errors also constituted ineffective assistance and the cumulative impact of the prosecutor's errors constituted misconduct. Accordingly, for those additional reasons, even if the Court were to find the Motion's showing with respect to any one claim to be insufficient in isolation, the claims should not be viewed in isolation. Mr. Fell should be granted leave to conduct the requested discovery. Objections as to particular requests, if any, can be addressed after discovery is served.

Dated: May 5, 2011                                    RESPECTFULLY SUBMITTED,
New York, New York

                                                      /s/ Lewis J. Liman
                                                      LEWIS J. LIMAN
                                                      Cleary Gottlieb Steen & Hamilton LLP
                                                      1 Liberty Plaza
                                                      New York, New York  10006
                                                      (212) 225-2550
                                                      Fax: (212) 225-3999
                                                      lliman@cgsh.com

Dated: May 5, 2011
New York, New York

                                                      /s/ Cathleen I. Price
                                                      CATHLEEN I. PRICE
                                                      P.O. Box 321762
                                                      New York, NY  10032

24

(212) 998-6193

Dated: May 5, 2011
Barre, Vermont

/s/ Richard Rubin

RICHARD RUBIN
Rubin, Kidney, Myer & DeWolfe
237 N. Main Street
Barre, Vermont,  05641-4125
(802) 479-2514
Fax: (802) 479-2516

ATTORNEYS FOR MOVANT,
DONALD FELL