UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA      *
                              *
              V               *
                              *
DONALD FELL                   * CRIMINAL FILE NO. 01-12


SCHEDULING CONFERENCE
Wednesday, June 1, 2011
Burlington, Vermont


BEFORE:

     THE HONORABLE WILLIAM K. SESSIONS III
     District Judge


APPEARANCES:

     WILLIAM B. DARROW, ESQ. and PAUL J. VAN DE GRAAF,
        ESQ., Assistant United States Attorneys, Federal
        Building, Burlington, Vermont; Attorneys for the
        United States

     LEWIS J. LIMAN, ESQ. and KRISTEN M. SANTILLO, ESQ.,
        Cleary Gottlieb Steen & Hamilton LLP,
        One Liberty Plaza, New York, New York; Attorneys
        for the Defendant

     CATHLEEN PRICE, ESQ., 515 Edgecombe Avenue, #52,
        New York, New York; Attorney for the Defendant

     RICHARD I. RUBIN, ESQ., Rubin, Kidney, Myer &
        DeWolfe, 237 North Main Street, Barre, Vermont;
        Attorney for the Defendant


ANNE E. NICHOLS
Registered Professional Reporter
United States District Court
Post Office Box 5633
Burlington, Vermont  05402
(802) 860-2227

WEDNESDAY, JUNE 1, 2011

(The following was held in open court at 1:30 p.m.)

COURTROOM DEPUTY:  This is case number 1-12, United States of America versus Donald Fell.  The government is present through Assistant United States Attorneys William Darrow and Paul Van de Graaf.  The defendant is not present in the courtroom, but present on behalf of the defendant are attorneys Lewis Liman, Cathleen Price, Richard Rubin and Kristen Santillo.

The matter before the Court is a scheduling conference.

THE COURT:  All right.  This is intended to be a scheduling conference.  First, Mr. Fell is not here. This is just intended to set a frame work for the scheduling of this matter.

Is there any objection to proceeding without Mr. Fell being present, Mr. Liman?

MR. LIMAN:  Lewis Liman for Mr. Fell.  No objection, your Honor.

THE COURT:  All right.  Any objection from the government?

MR. DARROW:  No, your Honor.

THE COURT:  All right.  The petitioner has filed a motion.  My understanding is that this is to be followed up with an additional memorandum to supplement

the motion; is that correct?

MR. LIMAN:  Your Honor, we're prepared to submit an additional memorandum.  We had submitted a letter to your Honor offering that and also suggesting that -- and moving for discovery and suggesting that we would file an amended pleading after discovery.  We would be prepared to file a memorandum whenever your Honor would like.

THE COURT:  So this would be after -- what you are suggesting is the memorandum would be submitted after discovery has been completed, or are you anticipating filing a memorandum, a preliminary memorandum, albeit a preliminary memorandum, now?

MR. LIMAN:  Your Honor, what we had anticipated was filing an amendment, and then -- which would be the document that would ultimately be what's subject to adjudication, and then in connection with that amendment, filing a memorandum of law briefing the legal principles.

We would be prepared, if your Honor would like a memorandum before that with respect to --

THE COURT:  I, frankly, don't think it's necessary that you actually supplement the memorandum at this point in light of the fact that there, I assume, will be extensive discovery in regard to the litigation.

4

So I don't think it's necessary.

The question is whether the government then in response to your particular motion is waiting for a memorandum.  I guess -- I think that one's not going to be submitted at this point, so I think the government has been given until the 20th of June; is that correct?

MR. DARROW:  Your Honor, you are referring now to the motion for leave to take discovery or --

THE COURT:  No.  No, I haven't seen the motion for leave to take discovery, frankly.  But I thought we are going to be talking about discovery requests in just a short period of time.

MR. LIMAN:  Your Honor, I can pass up -- we did file a motion for leave to take discovery on May 20th, and your Honor signed an order that was submitted by the government for an extension of time for their response to the motion with respect to discovery, extending it to June 20th.

THE COURT:  I am mistaken because I had thought actually that was an answer -- I thought we gave you until the 20th of June to answer the motion. Essentially to file an answer.

MR. DARROW:  Okay.  Well, with that in mind, as to -- well, where to start out.  As to whether the government's expecting or seeking a memorandum, I am

concerned that a memorandum in support of a 365-page motion might not fit in my office. We had understood the motion essentially to be the entire first 2255 submission, and --

THE COURT: And Mr. Liman has just said that that's the case.

MR. DARROW: Exactly.

THE COURT: Okay.

MR. DARROW: And we understand, consistent with what counsel represents to the Court, that at some point they will seek to file an amended motion to file it, which would be the instrument to adjudicate at the time.

THE COURT: Right. Once discovery has been completed, as I understand. Is that right?

MR. LIMAN: Yes, your Honor, that's correct.

THE COURT: All right. So expected that you will file a response to the 365 pages of a preliminary response now? I had thought that you were. Is that not correct?

MR. DARROW: We had not addressed that, your Honor. We had filed a request for additional time to respond to the discovery motion, and we had understood that the Court had given us until June 20th to respond to that motion.

THE COURT: Okay.

MR. DARROW: I can address our -- what we'd like to do with respect to --

THE COURT: I'd like to take just a brief recess and take a look at that, actually, the discovery motion, because I prepared by reading the 365-page motion, and I need to take a look at specifically what you filed.

Are you asking for a specific list of witnesses to depose as well as specific requests for discovery that you are going to make of the government?

MR. LIMAN: Not quite, your Honor. We are not asking for depositions at this moment. What we are asking for is for leave to be permitted to serve discovery requests on the government as well as on third parties, and we have in the motion given examples of the types of discovery we would like to take.

We have also suggested, your Honor, that the -- that the sole question with respect to the discovery motion is whether we're allowed to serve discovery, and that questions with respect to relevancy, privilege, and the like, the types of issues that come up with discovery under the Federal Rules of Civil Procedure, be addressed first through the customary method of objections. If there are objections, meet and confers

where we try to work things out with the party to whom we are directing the request.

THE COURT:  Sure.  All right.  I apologize.  I looked at the 365 pages; did not look at that motion.  I want to read that before we proceed.  So let's just take a brief recess.  I can now get it off the internet, so we will be okay.

MR. LIMAN:  Thank you.

THE COURT:  All right.  So we will just take a brief recess.

(Court was in recess at 1:38 p.m.)

(The following was held in open court at 1:55 p.m.)

THE COURT:  Okay.  I have had a chance to read -- this is only 26 pages.  I appreciate the brevity.  And also the appendices.  In fact, you are seeking records both from the U.S. Attorney's Office, the Department of Justice, the Marshal Service, the Department of Corrections.

Assuming that the Court permits you to subpoena those records, or notify those records, I assume each of those bodies would have the opportunity to object if they chose to object.  But now I understand.  So you have got till the 20th to respond to their particular request for discovery of documents; is that --

MR. DARROW:  That had been our understanding,

your Honor.

THE COURT: All right. So where does it go next after that? Assuming that you get some documents, where does it go by way of discovery? You going to seek depositions of witnesses?

MR. LIMAN: Your Honor, I imagine we will seek depositions of witnesses. As your Honor knows, the motion is a lengthy one and it's a detailed one, and I think that depending on the documents that are discovered, we'll know exactly how many witnesses we need to depose. But I imagine that we will need to take depositions of witnesses.

THE COURT: And what is your time schedule here? What do you anticipate taking for the depositions?

MR. LIMAN: Well, your Honor, my -- my anticipation for the discovery phase generally would be that discovery would be a year from the date on which the motion authorizing discovery is -- is permitted, and which we are permitted to take discovery. That, I believe, will permit us the time to serve the request, to meet and confer; if there are objections to our discovery, to get the documents, and then after having reviewed the documents, to schedule depositions in an orderly way.

THE COURT:  Okay, I don't think the government is right now in a place to respond to the amount of time, but essentially if you respond by the 20th, the Court rules on the particular discovery applications that have been made by the petitioner, parties get together and schedule a discovery schedule; is that appropriate?

MR. LIMAN:  Your Honor, I think that would be appropriate.  I would be happy to confer with Mr. Darrow or whoever his office designation to do that.

THE COURT:  Okay?

MR. DARROW:  Judge, you have heard from counsel what they'd like to do.  We have a proposal as well.

THE COURT:  Okay.

MR. DARROW:  It's different.

THE COURT:  What is that?

MR. DARROW:  Judge, you know, this is a new type of litigation for the district, and for my office.  This 2255 petition is a sort of a hybrid criminal/civil form of litigation.  Usually in this district, 2255 petitions are 15 to 25 pages long.  The government files a response within 30 days.  I think I have only known one to go to a hearing.  This, needless to say, is a whole new -- a whole new way of proceeding.

To try and understand how these things are handled, we reached out for two other federal districts handling capital 2255 cases now, and those were the District of Massachusetts, where Judge Wolf has the 2255 case pending in the Sampson matter.  That was filed about 18 months ago by Williams & Connolly, 2255 counsel firm in D.C., for Sampson.  The other one is out in Iowa, the Angela Johnson case.  I think it's Judge Bennett.

THE COURT:  Mark Bennett is the judge?

MR. DARROW:  Right.  He has been handling that.  Both those are well ahead of us.  They have been pending for quite a while.

We pressed the AUSAs as to, you know, what happens in these cases, and in particular what happens at the front end of them.  And it's our understanding that there is -- well, in both cases, there was a narrowing of the issues at the outset, consistent with *habeas* rule 4(b), which says that the judge will review the petition --

We're at an advantage here because, as the trial judge, you will recall the trial.  I think you will have some familiarity with the general issues.

The trial judge will -- will amend it down and dismiss any issues that don't need to go forward.  Out in Iowa, Judge Bennett, without input from the

government, shaved off, they tell me, eight or 10 issues in a ruling at the outset and said, you know, these are ones we are not going forward on; we are going forward on these other ones.

In Massachusetts --

THE COURT:  Well, was that -- when Judge Bennett did that, was he suggesting that the process was to be bifurcated in some sense?  For instance, there's a number of allegations here which could theoretically be bifurcated.  You have got allegations of prosecutorial misconduct.  You have allegations of jury misconduct. You have allegations of ineffective assistance of counsel, as well as some constitutional claims that have been made by the petitioner.

When Judge Bennett at the outset excluded a number of grounds, was that a definitive ruling on those particular motions?  In which case, it's a little premature because, frankly, discovery has not been conducted on issues of withholding of evidence or ineffective assistance of counsel for pursuing an investigation, et cetera.

MR. DARROW:  Well, Judge, Rule 4(b) says -- it's captioned Initial Consideration by the Judge:  The judge who receives the motion will promptly examine it. If it plainly appears from the motion and the attached

exhibits and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.

THE COURT:  Okay.

MR. DARROW:  So in response to your question, it's our understanding that both Judge Bennett and, in a slightly different procedural posture, Judge Wolf dismissed, ended a certain number of the issues raised by the petitioner.  Thus -- I mean, this motion, depending on how you count issues, has got dozens and dozens of issues.  I think the AUSAs in Boston says there were about 20 issues raised in the initial 2255 petition.  The USAO said that they filed a motion for summary dismissal under 4(b) and Judge Wolf cut out ten of them.

THE COURT:  So your expectation is that in addition to responding to the motion for discovery, you are going to be filing a motion to dismiss a number of these claims.

MR. DARROW:  That was -- that's what we would like to do, Judge.  You know, there are lots of claims -- I mean, reading the motion, they're -- I think it's fair to say they're sort of wanting to relitigate, picking over a multitude of different issues.  We would

like to seek 4(b) consideration.  I mean, I think overall --

THE COURT:  Well, there are a number of issues that have been raised.  There are subsections of more generalized claims:  ineffective assistance of counsel for lack of investigation or giving up the mental health defense, just as an example; the prosecution withholding evidence, or inflammatory comments during the summation; the jury misconduct issues; and then constitutional claims.  That's how I, in my own approach, divided up these particular claims so they are organizationally manageable, it seems to me.

But what you are suggesting is that you want to go through all of these, both generalized claims as well as the subsections, the individual assertions, and file a motion to dismiss those?

MR. DARROW:  Yeah.  I don't know if we'd get into every subsection.  And it may be possible, as you have indicated you have, to group them in general categories.  But we would like the opportunity to urge your consideration under *habeas* rule 4(b) and urge that some of them are meritless, and as to those, we do not need to go through a year of discovery.

I mean, I think probably we would -- it may be possible to group the multiple claims into three general

categories:  Those which should be dismissed at the outset of not worthy of further proceedings, one; two, those which should not be dismissed but can be handled by briefing and don't require additional discovery; and then thirdly, those which don't fall into the prior two categories.  They appear -- they are discoverable, and they may be worthy of discovery.  And we want an opportunity to try and sort these.

Probably, if the experience in Iowa and Massachusetts was an indication, we would like some of them dismissed coming out of the gate.

THE COURT:  Let me ask you about the experience in Iowa and Massachusetts.  Did capital counsel from the Department, from Washington, D.C., essentially intervene and represent the Department, represent the U.S. Attorney's Office in that litigation?

MR. DARROW:  Different answer for each district.  In Massachusetts, they have currently three AUSAs working on the Sampson 2255.  One of them was one of the trial AUSAs.  They have got two other AUSAs working with that trial counsel.  I don't think they have a capital case unit lawyer helping them.

THE COURT:  Okay.  So all of those are actually members of the U.S. Attorney's Office for the District of Massachusetts?

MR. DARROW:  That's my understanding.

THE COURT:  Okay.

MR. DARROW:  Now, in Iowa, the AUSA who did -- did the Johnson trial, or one of the AUSAs who did the trial, subsequently took a detail -- detail's what we call a yearlong assignment -- to the DOJ and is now -- he is part of the capital case unit, but he is working on the Sampson 2255, and I think he sees himself doing that pretty much because he was on the case out there. The capital case unit ordinarily does not do 2255s.

THE COURT: Okay.  All right.  So looking at the time sequence here, you have got till the 20th of June to respond to their particular requests for discovery.  You going to use the same deadline for filing a motion to dismiss some of the claims that have been made in the petition?

MR. DARROW:  Judge, respectfully, I think we need more time to do that because that will be a more substantive motion.  You know, the discovery motion, you know, raises some interesting issues about, you know, for example, whether you can subpoena a party or whether the person -- the lawyers for the United States, ordinarily the USAO, should receive discovery requests for federal government agencies like the FBI or the Bureau of Prisons or the Department of Justice.  But

those aren't really issues that go to the merits of the petition.

THE COURT:  Yeah, but you understand that if you haven't filed a motion to dismiss, what the Court has before it is your response to the discovery request made by the petitioner on all of the issues, so none of them would have been dismissed by that particular point, so the Court would address the discovery requests in regard to each and every issue.

If you have not filed the motion to dismiss that you intend to file somewhere down the road, so that you may find -- I mean, it's essentially up to you, but you may find that you are ordered to render discovery on an issue which theoretically could have been dismissed.

MR. DARROW:  Right.  And what the position we might take, Judge, on June 20th, would be that discovery -- the discovery sought in that motion, subpoenas, should be held in abeyance until the Court determines what issues we are going forward on.  And if -- if the petition can be narrowed down, all those subpoenas and probably motions to quash and related litigation may not be necessary.  And maybe we can -- well, as it happened in the Sampson case -- reduce by 50 percent the number of issues going forward.

THE COURT:  All right.  Well, assuming, Mr.

Liman, assuming that the government files a motion to dismiss sometime after their response on discovery, how much time would you need, generally speaking, to respond to their request to narrow the nature of the claims that you have raised here?

MR. LIMAN:  It's very difficult to say without having seen their motion.  I would think that if what they are seeking to do is dismiss a -- large parts of our motion, that we would need anywhere from 45 days to 60 days to respond to that.

THE COURT:  All right.

MR. LIMAN:  Your Honor, I am surprised by Mr. Darrow's proposal for two reasons:  First of all, when I spoke to him yesterday to see whether we could reach agreement on any issues with respect to schedule to narrow the issues for your Honor's consideration, he did not mention anything with respect to rule 4 or making this kind of motion.  In fact, the first time he said anything about it was moments before the hearing before your Honor began.

The second reason why I am surprised is because it seems to me that the proposal that he has made to your Honor would lead to a completely unwieldy, inefficient way of proceeding.

The topics that we have for the 2255 are the ones

which your Honor has described.  The topic heading of ineffective assistance of counsel, for example, has a number of different subparts.  Our position is that each of those subparts would entitle us to relief, but our position also is that looking at those all cumulatively -- and I don't quite understand what we are going to be doing responding to their motion, only then to file an amended pleading later on where, presumably, they are going to be making similar types of motions -- it seems to me the more efficient way to proceed and the more efficient way for the third parties is for us to take our discovery, for to us file the amendment, and then for there to be motion practice with respect to what will be the operative pleading.

THE COURT:  Well, if the government chooses to file a motion to dismiss out of hand prior to discovery, some of the subsections of your argument -- and I look at them as subsections of much broader arguments, that's what you're essentially raising -- I mean, they certainly have the opportunity to do that.  I don't know about the Sampson -- I knew about the Sampson case before but I don't know about it at this particular point, nor the Johnson case in the Northern District of Iowa.  Regardless, if they wish to file a motion to dismiss, then you can respond.

You know, I am particularly sensitive to the issue of a need for discovery, generally speaking, especially when you are talking about ineffective assistance of counsel for failure to investigate, or the withholding of evidence from the government, because a lot of that information has to be disclosed before you can adequately address the issue. But that having been said, there may be motions that are of merit, and you should have the opportunity to file that.

MR. DARROW: Thank you. Judge, it's precisely efficiency that is one of the primary things driving our requests to consider narrowing the issues at the outset, and I hope that this "Mr. Darrow said this and Mr. Liman said that" is not going to characterize things going forward, but as I explained, it was yesterday afternoon that I reached the decision-making AUSA in the Sampson case and that's why I didn't have the Sampson experience in mind.

THE COURT: It is going to be a little complex because there are allegations that material was not turned over by the government, and I don't know how you -- how you proceed to represent the government in that particular kind of situation. And I -- but we will address that, I guess, as we go along.

MR. LIMAN: And we may have an application

with respect to that issue at the right time.

THE COURT:  Right.

The second concern, frankly, is that there obviously are allegations of jury misconduct here, and I did, at the request of the defense, give them an opportunity to interview jurors.  And obviously they did, based upon the representation that's made here.

I am concerned about the jurors being overly burdened in this case.  How do the parties wish to proceed with -- with discovery in regard to the jury?

MR. DARROW:  Well, your Honor, we were alarmed when we read the petition that the lawyers had been interviewing the jurors because we thought that was not permitted in the district.

THE COURT:  No, it is permitted with a request.  There was a request based upon cause.  The Court ruled upon it.

MR. DARROW:  Okay.  We never received a copy of the request.  But --

THE COURT:  Well, that's -- but that's -- that is an *ex parte* request to conduct an investigation that is appropriate, in light of good cause, and, you know, it goes both sides.  I will get *ex parte* requests from the government as well.  Regardless, the question is how do you proceed at this particular point.

MR. DARROW:  It is our understanding -- I don't have the rule in front of me.  I found it and read it when I was looking at the 2255 argument.  But it's our understanding that deliberations of jurors are not a proper subject for evidence, and that what goes on behind the jury walls is supposed to stay there and that it would be improper to call a juror on the stand and say who said what and what did you do next.  So, I mean, that probably is one of the things we are going to be addressing in the requests for summary dismissal.

THE COURT:  Well, it has less to do with jury deliberations; it has to do with conduct during the course of the trial, is what the allegations are.

MR. DARROW:  Maybe -- my understanding, and this is a month or so ago that I read it, was that there was a claim about something that happened in the jury room.

THE COURT:  That's only one of them.

MR. DARROW:  All right.  Well, there are several.  In any event, I think we should be very careful about prying into what the jurors --

THE COURT:  I do too, and I just want to make sure that -- I mean, the defense was afforded an opportunity to speak with the jurors.  Theoretically, you would be as well, but I just want to make sure that

they are not overly burdened, and --

MR. DARROW:  Well, they haven't -- counsel hasn't requested further discovery of jurors yet.  And we, frankly, haven't considered interviewing them.  Maybe we should too.

THE COURT:  Okay.

MR. DARROW:  Thanks.

THE COURT:  All right.  So now we will get a response to the request for discovery on the 20th.  I thought you were going to give an answer to the petition, but obviously it's a request for discovery --

MR. DARROW:  Sorry for the confusion.

THE COURT:  -- because it is a preliminary petition at this particular point.  Soon thereafter, you will be filing a motion to dismiss.  Give the defense at least 45 days to respond to the motion to dismiss.  I assume you get 15 days to respond to their particular objections to discovery?

MR. LIMAN:  Your Honor, I was going to raise that.  If we could have 30 days to respond to their motion.

THE COURT:  All right, that's fine.  Any objection to that?

MR. DARROW:  No, your Honor, other than that, you know, again, we are trying to come up to speed on

how to handle these sorts of -- this sort of litigation, and it may well be that the June 20th response to discovery is a fairly simple request to hold discovery in abeyance until the 4(b) inquiry is completed. I mean, that would seem sensible. I hope that it wouldn't set things back too long, but given the schedule proposed at least at the outset by counsel --

THE COURT: Well, but you should have a pretty good expectation of what areas you want to attempt to narrow so that you should be able to, at least by the 20th, say, you know, these are the issues that we anticipate we may seek to dismiss and hold in abeyance the discovery in regard to those particular issues. But more generally, let the discovery go forward. Or raise your objection to the discovery in your response.

MR. DARROW: I am just afraid -- I am concerned that that inquiry will -- presupposes the 4(b) inquiry, and that we may not be ready on June 20th to get there.

The AUSA with whom I spoke yesterday in Boston indicated that their initial *habeas* petition was -- I think it was 300 pages long, and that the USAO's response, and I think requests for summary dismissal, was 170 pages. So we have got a lot of work to do to get there, and I am confident that we can do that in

July, but I am not confident, your Honor, that we can do that in --

THE COURT:  Right now you have a trial scheduled for September.

MR. DARROW:  That's one of the things I am worried about, and we are trying to find help from DOJ outside the capital case unit where they have indicated that they don't do this.  But, yeah.

THE COURT:  Okay.

MR. LIMAN:  Your Honor, listening to that schedule makes me quite concerned.  There are a number of areas, such as ineffective assistance and prosecutorial misconduct, in our view we are plainly entitled to discovery.  We'd like to get on with requesting the discovery.  There are -- always are issues with respect to memories fading, whether documents are going to be around.  The most efficient and the best way to do things is to move things forward.

I think we are going to need, because I don't know what I am getting from them on the 20th, the 30 days to respond, but if the -- if their opposition is one that says hold the motion in abeyance, we will be opposing that because we believe we are entitled to discovery and would like to get on with our discovery practice.

THE COURT:  Actually, I anticipated that and

that's why I suggested that perhaps if you know of areas in which clearly discovery will go forward, or the claims will go forward, will not be subject to a motion to dismiss, it seems to me that they should respond by the 20th to those.  But I am also sensitive to the issue.  If they have got legitimate arguments in regard to a motion to dismiss, they should be able to assert those, and it may take a little bit more time than the 20th.  So -- but you should be able to know what is likely to be the subject of a motion to dismiss, what's not.  Anyway.  So I appreciate the fact that you want to move forward.

All right.  Is there anything else that we need to address at this point?

MR. DARROW:  Not that I know of, your Honor.

MR. LIMAN:  No, your Honor.

THE COURT:  And I assume that this is just the beginning of the process so that once the discovery, if discovery proceeds, then the next round is talking about depositions, and this is going to be a -- Mr. Darrow's correct, this is a unique situation in this jurisdiction, but I assume that we will be in constant debate over discovery.

Is that your expectation, Mr. Liman?

MR. LIMAN:  It is my expectation that it will

be long and involved.  Hopefully we will not be in debate and hopefully we will try to work out as many issues as we can.

THE COURT:  Okay, Mr. Sampson's case has been going on for 18 months?

MR. DARROW:  That's what I was told, Judge.

THE COURT:  And it's not near to trial?

MR. DARROW:  I don't know what stage it's at now.  I was interrogating these fellows about what happens at the front of end of these things, and I should have asked more questions about what's happening now but I didn't.

THE COURT:  Okay.

MR. DARROW:  Thanks, Judge.

THE COURT:  All right, thank you.

MR. LIMAN:  Thank you.

(Court was in recess at 2:23 p.m.)

*** ** ***

C E R T I F I C A T I O N

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

June 30, 2011
Date                                    Anne E. Nichols