UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT
------------------------------------------------------------------ X
                                 :

DONALD FELL,                           :

               Movant,         :

           - against -         :     2:01-CR-12

UNITED STATES OF AMERICA,     :

            Respondent.    :

------------------------------------------------------------------ X

# REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT DISCOVERY

LEWIS J. LIMAN
Cleary Gottlieb Steen &
Hamilton LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

CATHLEEN PRICE
P.O. Box 321762
New York, New York 10032
(212) 998-6193

RICHARD RUBIN
Rubin, Kidney, Myer & DeWolfe
237 N. Main Street
Barre, Vermont, 05641-4125
(802) 479-2514

Date:  August 26, 2011

*Attorneys for Donald Robert Fell, Jr.*

**PRELIMINARY STATEMENT**

Mr. Fell's Section 2255 motion set out numerous claims and facts that both individually and cumulatively entitle him to relief from his conviction and sentence. These claims include that Mr. Fell received ineffective assistance of counsel and that the Government knowingly elicited and used false testimony, and additionally failed to turn over critical exculpatory and mitigating evidence.

The Government does not dispute that these allegations, if proven, would together or (in certain instances) separately entitle Mr. Fell to relief. Indeed, in apparent concession to the relevancy of discovery to the development of Mr. Fell's claims, the Government has already agreed to produce records relating to the collection of physical evidence from the Rutland, Vermont and Dover, New York crime scenes; documents obtained and reviewed by the FBI during its 2001 background investigations of Mr. Fell and Mr. Lee's lives; and an unredacted version of the June 14, 2005 memorandum from the Albany FBI to the Philadelphia FBI requesting interview of Christopher Eike. See Government's Response in Opposition to Motion for Leave to Conduct Discovery, United States v. Fell, 2:01-CR-12 (D. Vt. June 27, 2011), Dkt. No. 323 ("Opp. Br.") at 20-21, 25.

The Government nonetheless argues that Mr. Fell should be deprived of the rights that the law provides for him to obtain the evidence necessary to prove his claims and to receive relief. None of its arguments withstand scrutiny. The Government claims that the Court should not allow Mr. Fell to use the Federal Rules of Civil Procedure ("Federal Rules") because it will exercise its discretion to voluntarily provide Mr. Fell certain documents and will tell him that it does not have other documents. But the Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules") expressly permit the Court to authorize Mr.

Fell to use the Federal Rules upon a showing of good cause and does not permit the Government to pretermit that application by agreeing to produce those documents it deems relevant. See Rule 6 of the Section 2255 Rules ("Rule 6"). Indeed, the 2255 Rules could not permit the Government to pretermit a valid Rule 6 application. Only the Federal Rules have the force of law. Under governing Supreme Court law, the Court could not hold the Government to a voluntary offer to produce relevant documents or grant relief to Mr. Fell if it turned out (perhaps years after the fact) that the Government failed to honor that commitment.

The Government also argues that Mr. Fell has not established good cause for certain of his claims and thus is not entitled to discovery with respect to those claims. The Government is wrong on both the facts and the law. Mr. Fell has established good cause with respect to the claims individually but also – most importantly – read as a whole (a point the Government does not dispute). Moreover, to permit discovery, the Court need not find "good cause" with respect to each and every claim in isolation. It is sufficient that the motion contain specific allegations that "show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief" – a standard Mr. Fell manifestly has met. See Bracy v. Gramley, 520 U.S. 899, 908-09 (1997).

Finally, the Government argues that Mr. Fell's motion is not timely because it plans to make a motion for summary dismissal under Rule 4 of the Section 2255 Rules ("Rule 4"). However, there is no reason – or mandate within the Section 2255 Rules – for delay. The Government does not dispute that Mr. Fell has established good cause and thus there should be discovery. We anticipate that the Government's arguments will be meritless particularly at this early stage – but, even if they were not, the proper vehicle for the Government to raise them would be a motion for a protective order or to quash a subpoena after discovery has been served

2

and meet-and-confers held. Even the Government's cases do not support the position that Mr. Fell should be deprived of the right to serve discovery in the first place.

## ARGUMENT

**I.   SECTION 2255 AUTHORIZES THE COURT TO ORDER DISCOVERY PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE UPON A SHOWING OF "GOOD CAUSE"**

The Government argues that the Court should not authorize Mr. Fell to serve discovery pursuant to the Federal Rules because it will voluntarily produce certain documents (and state that it does not have other documents) and that accordingly discovery under the civil rules is "inappropriate." Opp. Br. at 19. It claims "the Court should handle discovery issues consistent with the way it handles matters in criminal cases." Id. The Government's argument is mistaken.

The plain language of the Section 2255 Rules allows the Court to permit Mr. Fell to use the Federal Rules to gather the facts and evidence to support his motion upon only a showing of good cause. See Rule 6 (providing that the Court may authorize a party to conduct discovery under the Federal Rules); Rule 12 of the Section 2255 Rules ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). Under the Section 2255 Rules, it is legally irrelevant whether any party – including the Government – agrees voluntarily to produce documents. If Mr. Fell has made "specific allegations [that] show reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief" (and he has here), the Court has the authority to permit Mr. Fell to use the Federal Rules to develop those facts. See Bracy, 520 U.S. at 908-09.[1]

---

[1]   Moreover, it is well-accepted that more liberal discovery is appropriate in capital cases where the stakes for the petitioner are so high. See e.g. Payne v. Bell, 89 F. Supp. 2d 967, 971 (W.D. Tenn. 2000) (citing Lockett v. Ohio, 438 U.S. 586, 604 (1978)).

Indeed, it could not be any other way. At this stage of the proceedings, only the Federal Rules (and the Federal Rules of Criminal Procedure) can provide the authority for Mr. Fell and this Court to compel the Government to produce the documents necessary to establish his right to relief and to impose consequences if the Government fails to do so. In particular, the Federal Rules provide standards for (1) the scope and process of discovery, including limitations on what is discoverable; (2) the timing and sequence of discovery; (3) the duty to supplement or correct disclosures; and (4) the obligations on a party responding to discovery. See generally, Fed. R. Civ. P. 26-37, 45. Of paramount importance, the Federal Rules have the force of law. A party served with a discovery request cannot just ignore it. And the Federal Rules provide standards (and a well-developed body of law) against which a person's compliance can be measured and disputes raised with the Court and adjudicated if they cannot be resolved voluntarily by the parties. See, e.g., Fed. R. Civ. P. 26(b)(2) (court's ability to place limitations or conditions on discovery), 26(b)(5) (mechanisms and grounds for asserting privilege). Further, of signal importance, if it turns out the Government fails to satisfy its discovery obligations there are consequences. If the case is still pending, the Court can order discovery and impose sanctions for the failure to comply. And, if judgment has been entered, and Mr. Fell learns of a discovery violation only too late, Mr. Fell would have recourse. See Catskill Dev., LLC v. Park Place Entm't Corp., 286 F. Supp. 2d 309, 312 (S.D.N.Y. 2003) (defendant's failure to disclose certain evidence constituted "misconduct" within the meaning of Rule 60(b)(3) that interfered with the plaintiff's ability to "fully and fairly" present its case); see also Zurich North America v. Matrix Service, 426 F.3d 1281, 1292 (10th Cir. 2005) ("failure to disclose requested information during discovery may constitute misconduct under Rule 60(b)(3)… [h]owever, this usually

4

requires the violation of a specific discovery request or order").[2] The Federal Rules are not too "complex." See Opp. Br. at 19-20. They have governed disputes since 1938 and bind all litigants from the mightiest corporation to the lowliest pro se applicant. See 12B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil Rules, Quick Reference Guide 5 (2011). "Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure." SEC v. Collins & Aikman Corp., 256 F.R.D. 403, 414 (S.D.N.Y. 2009).

By contrast, "voluntary" production – absent an order permitting Mr. Fell to use the Federal Rules – would not provide the Court or Mr. Fell the authority to compel production (from the Government or other party) or provide for standards against which compliance could be measured, or consequences if those standards are not satisfied. At this stage, the Court cannot "handle discovery issues consistent with the way it handles matters in criminal cases." Opp. Br. at 19. Mr. Fell is in post-conviction proceedings and under governing Supreme Court law, he does not have Brady or Giglio rights. For example, the Government can in its discretion turn over exculpatory and mitigating information (and we hope that it does), but there is no law that requires it to do so in post-conviction proceedings. See Seri v. Bochicchio, 374 Fed. App'x 114, 117 (2d Cir. 2010) (unpublished) ("'Brady is the wrong framework' to apply in assessing a convicted defendant's right to access exculpatory evidence'" (quoting Dist. Attorney's Office for

---

[2]  This avenue for potential relief is critical in the face of the stringent standards for filing a second or successive 2255 Motion. See 28 U.S.C. § 2255(h) (second or successive motion must be certified by a panel of the court of appeals to contain newly discovered evidence sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that previously unavailable); Duran v. United States, No. 9 CR. 300 (RCC), 2002 WL 867864, at *n 7 (S.D.N.Y. May 3, 2002) (the AEDPA imposes stringent requirements on second or successive § 2255 petitions); Davis v. Keane, 9 F. Supp. 2d 391, 393 (S.D.N.Y. 1998) (one of the "overriding policy goals" of the AEDPA is "the discouragement of successive petitions").

the Third Judicial Dist. V. Osborne, 129 S. Ct. 2308, 2320 (2009)). Thus, while cloaked in the language of cooperation, the Government's offer gives Mr. Fell cold comfort.

Indeed, the Government effectively concedes Mr. Fell's entitlement to discovery. It argues that "the most efficient discovery process would be for Fell to file motions to compel particular materials from the Government if they have not been provided." Opp. Br. at 19. However, there is no basis upon which Mr. Fell could make a motion to compel – or upon which the Court could grant such a motion – if the Court does not give Mr. Fell the right to serve discovery pursuant to the Federal Rules, the response to which could then be compelled. And if Mr. Fell is given the right to serve discovery for the materials the Government has not provided, it should certainly be permitted to serve discovery for those items that the Government is willing to provide. By granting Mr. Fell the right to serve those discovery requests, the Court will ensure that the Government satisfies its obligations to engage in a diligent search and that, if it does not, Mr. Fell has some recourse under law.

In the end, one wonders why the Government is fighting so hard? It offers to provide the underlying documents referenced in the 2001 background report regarding Mr. Fell. Opp. Br. at 21. It also offers the statements that the FBI did not prepare a report regarding its interview of Mr. Bellantoni (the only eye witness to the defendants while in transit with Mrs. King, yet a witness uncalled by the Government), Opp. Br. at 23, and suggests that it did not have "any contact with the medical center" who would have told it that Mr. Eike was not in a coma. Opp. Br. at 25. One doubts the veracity of these statements and offers – and Mr. Fell has established good cause for such doubt – but, if the Government is willing to offer that information in a brief in court why would it not agree to answer that request pursuant to a validly-issued discovery request that would require it to make the appropriate inquiries and to conduct the appropriate

6

search and that would be enforceable by a court of law?[3] See Payne v. Bell, 89 F. Supp. 2d 967, 971 n.2 (W.D. Tenn. 2000) ("By granting leave to conduct discovery, the Court does not in any way limit Respondent's ability to object to any discovery request in a manner consistent with the Federal Rules of Civil Procedure. In this motion, the Court simply addresses whether Petitioner has shown good cause under Habeas Rule 6 and such ruling leaves open the possibility that Petitioner could challenge the discovery requests under the Federal Rules of Civil Procedure but not under Habeas Rule 6.").

## II.   THE GOVERNMENT HAS NOT REBUTTED MR. FELL'S DEMONSTRATION OF GOOD CAUSE FOR DISCOVERY

The Government next argues that Mr. Fell has not established good cause as to certain of his claims and thus his request for permission to use the Federal Rules should be denied.

Contrary to the Government's argument, Mr. Fell is not looking "to use federal discovery for fishing expeditions to investigate mere speculation," or "to explore [his] case in search of its existence." See e.g., Opp. Br. at 15 (citations omitted). Mr. Fell's 2255 Motion sets forth extensive specific allegations and information that – if established by the requisite standard of proof – would entitle him to relief. This is no fishing expedition. In fact, the Government does not dispute – and thereby concedes – that the 2255 Motion read in its entirety (as it must be) would, if proven, entitle Mr. Fell to relief. See Linstadt v. Keane, 239 F.3d 191, 199, 203 (2d Cir. 2001) ("Strickland directs us to look at the 'totality of the evidence before the judge or jury' keeping in mind that '[s]ome errors [] have … a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture' … [w]e therefore consider these errors in the aggregate.") (citation omitted) (collecting cases); Kyles v. Whitley, 514 U.S. 419, 434, 441 (1995) (the Brady inquiry is whether, considering the cumulative effect of the suppressed

---

[3]   Simple representations in legal briefs – even intentional misstatements – might not, if later discovered, entitle Mr. Fell to relief.

7

evidence, "disclosure of the suppressed evidence to competent counsel would have made a different result reasonably probable"). Rule 6 requires no more for the Court to have authority to permit discovery under the Federal Rules. <u>Bracy v. Gramley</u>, 520 U.S. at 904, 908-09.

Moreover, none of the arguments the Government makes with respect to the few claims it challenges withstand the slightest scrutiny. The Government does not dispute that – contrary to its forceful argument before the jury – Mr. Eike was *never* in a coma. Instead, it argues that because the testimony it elicited that Mr. Eike *was* in a coma came from the mouth of Mr. Fell's sister (and in the Government's cross-examination) and was based on information allegedly received from Mr. Fell, it somehow was relieved from its constitutional obligations not to offer and argue evidence that it knew (or negligently failed to know) was false. Opp. Br. at 24-26.[4] Mr. Fell has offered extensive evidence of the prejudicial effect of that evidence and argument, and evidence that the Government actually knew that evidence was false: the Government interviewed Mr. Eike (who himself knew he was not in a coma) and the hospital records establish peradventure that his injuries were not serious. That the Government elicited the testimony from Mr. Fell's sister – who at the time of the incident was under the influence of intoxicants and would not have been able to diagnose a coma in any event – made that evidence all the more prejudicial. <u>See, e.g., United States v. Wallach</u>, 935 F.2d 445, 447 (2d Cir. 1991) ("[i]n light of Guariglia's acknowledged history of compulsive gambling, we believe that given

---

[4] <u>See United States v. Wong</u>, 78 F. 3d 73, 81 (2d Cir. 1996) ("Where the prosecution knew or should have known of the perjury, a new trial is warranted if 'there was any reasonable likelihood that the false testimony could have affected the judgment of the jury'") (internal quotations omitted); <u>United States v. Harris</u>, 498 F.2d 1164, 1169 (3d Cir. 1974) ("Regardless of the lack of intent to lie on the part of the witness, <u>Giglio</u> and <u>Napue</u> require that the prosecutor apprise the court when he knows that his witness is giving testimony that is substantially misleading. . . . [W]hen it should be obvious to the Government that the witness' answer, although made in good faith, is untrue, the Government's obligation to correct that statement is as compelling as it is in a situation where the Government knows that the witness is intentionally committing perjury.").

the inconsistencies in his statements the government should have been on notice that Guariglia was perjuring himself.").[5]

The Government next argues that Mr. Fell has not sufficiently alleged prosecutorial misconduct in connection with the prosecution's mischaracterization of Mr. Fell's role in, and reaction to, the accidental shooting of John Gacek. See Opp. Br. at 26. This argument is mistaken. Even if it could point to documents offered by the defense (for other reasons) that contained that information, Opp. Br. at 26-27, the Government still had an obligation not to argue false evidence. See Napue v. Illinois, 360 U.S. 264, 269 (1959); Berger v. United States, 295 U.S. 78, 88 (1935).[6] And even if the Government were correct that Mr. Fell has not alleged sufficient specific facts at this early stage to entitle him to relief on a prosecutorial misconduct theory, that would not deprive him of the right to obtain essential evidence relevant to the claim that his lawyers provided ineffective assistance of counsel as to the Gacek incident – the sufficiency of which claim the Government does not dispute. See Bracy, 520 U.S. at 908-09 (the

---

[5] The Government also misstates its Brady obligations by asserting that it was not required to turn over exculpatory information on Eike's criminal background and history of sexual assault on a minor simply because Mr. Eike was not a testifying witness at trial. Opp. Br. at 25. Brady and its progeny require disclosure of exculpatory and/or impeachment materials of witnesses, regardless of whether the witnesses testify at trial or whether the evidence would have been admissible. United States v. Rodriguez, 496 F. 3d 221, 226 n.4 (2d Cir. 2007); Wood v. Bartholomew, 516 U.S. 1, 8 (1995) (per curiam) (finding that inadmissible evidence that would have led to admissible evidence is material for Brady purposes); Leka v. Portuondo, 257 F.3d 89, 97 (2d Cir. 2001) (finding a Brady violation and granting habeas based on prosecution's failure to disclose a non-testifying witness's observations of the crime scene that were favorable to the defense and contradicted two eyewitnesses who testified for the prosecution).

[6] Mr. Fell's need for discovery as to this incident is not lessened by the fact that there may have been some evidence of Mr. Fell's remorse in the trial record. Opp. Br. at 27. The post-conviction investigation has uncovered evidence, in the form of interviews with John Gacek and his mother, that unequivocally and in more powerful fashion than any previous evidence, demonstrates the accidental nature of the shooting and Mr. Fell's subsequent and sincere remorse immediately after the incident. See Initial Discovery Request at 8; 2255 Motion, Claim VI. Mr. Fell is entitled to discover the entirety of available evidence on the issue.

9

only requirement for obtaining discovery is the demonstration of good cause).[7] Mr. Fell has also,

contrary to the Government's assertion, Opp. Br. at 27, demonstrated good cause for discovery

of records originating from the Social Security Administration that relate to his diagnosed

disability, 2255 Motion, Claim XVII, and he is likewise entitled to those records regardless of his

theory of relief.[8]

The Government further argues that Mr. Fell is not entitled to discovery relating to Dr.

Welner because "[t]he facts strongly indicated Fell's trial lawyers elected to forego mental health

testimony because, even if they persuaded the Court to exclude Dr. Welner, Dr. Wetzel's opinion

and the videotape [interview of Mr. Fell's mental health evaluation] would have come in." Opp.

Br. at 29-30. However, Mr. Fell has offered evidence – in the form of affidavits from trial

counsel – that they made the extraordinarily prejudicial decision to withdraw the mental health

case after they received Dr. Welner's report because they *assumed* the trial court would allow

Dr. Welner to testify – and not because of any fear that Dr. Wetzel's opinion would come in.[9] In

fact, both Drs. Wetzel and Rabun were on trial counsel's witness list as potential defense

witnesses. (Notably, it was after the Government received Dr. Wetzel's initial report that it

---

[7] Mr. Fell should also be entitled discovery from the Government for the simple reason that the Government may be its only remaining source for certain information. For example, law enforcement records regarding the Gacek shooting incident could buttress Mr. Fell's claims. Mr. Fell has requested such records from local and state law enforcement agencies, but his requests have been denied.

[8] If in fact the Government does not have any records concerning the Gacek incident or records from the Social Security Administration regarding Mr. Fell's disability, it should simply state so in a response to a document request.

[9] 2255 Motion, Decl. of A. Bunin (Ex. 264 ¶¶ 46-47) ("[W]e withdrew the mitigating factor that Mr. Fell was under mental and emotional disturbance when the crimes were committed to avoid the testimony of Dr. Welner" and "[w]e did not put on Dr. Mills' testimony because we believed that there was a risk that, if we called Dr. Mills, the Government would call Dr. Welner and we believed that the Court had already indicated that it would receive the testimony of Dr. Welner."); 2255 Motion, Decl. of G. Primomo (Ex. 263 ¶ 12) ("But for our concern that Dr. Welner would testify, we would have called Dr. Cunningham as an expert for Mr. Fell.").

originally opted to accept a life sentence in this case and not to seek death).  And Mr. Fell has offered evidence that trial counsel were sorely (and constitutionally) misguided in their analysis and actions.  This Court has already found that "the intent of its April 7 order was not followed" by the Government when it allowed Dr. Welner to administer new psychological tests to Mr. Fell, United States v. Fell, No. 02-CR-12 (WKS), 2006 U.S. Dist. LEXIS 24707, *26 (D. Vt. Apr. 24, 2006).  Whatever strained arguments the Government wants to make after the facts are fully developed, Mr. Fell has offered sufficient specific allegations at this point to allow him to fully develop those facts using the Federal Rules.  See Bracy, 520 U.S. at 908-09.

## III.    MR. FELL'S MOTION IS NOT PREMATURE

Finally, the Government argues that Mr. Fell's motion for discovery is "premature" because "the 365-page §2255 motion should be subjected to Rule 4 preliminary review prior to discovery," Opp. Br. at 18-19, and that the Court should stay a ruling on discovery until after it has ruled on a motion the Government has stated it intends to submit relating to the allegations concerning evidence of (1) Mr. Fell's conduct in prison, (2) Mr. Lee's behavior and psychiatric condition, and (3) selective prosecution as to the decision to seek the death penalty.  Opp. Br. at 21-23.  The arguments are fatuous.  There is no reason for, or mandate that would permit, delay.

The Government does not offer any argument or evidence that would rebut Mr. Fell's showing of good cause with respect to any of these claims.  For example, Mr. Fell offered evidence regarding the extremely prejudicial Government argument that he provoked a fight in prison – and thus that Mr. Fell "ha[d]n't changed," and had only "[g]otten more violent in prison."  Trial Tr. Vol. XII at 47:4 – 49:9 (July 13, 2005).  Mr. Fell's 2255 Motion presented evidence that – to the contrary – the prison guard involved in the incident had a history of

provoking fights and that he provoked this fight, and that the Government knew it. See Initial

Discovery Request at 8-9; 2255 Motion, Claim VII.[10]

The Government also argues that Mr. Lee's post-arrest conduct in custody, while

separated from Mr. Fell, would have been irrelevant at trial. Opp. Br. at 23. But, it also argues –

and argued before the jury – that Mr. Fell was "more 'outgoing' than the others, and 'more of a

leader.'" Opp. Br. at 6. Mr. Fell was, and is, entitled to evidence that was inconsistent with that

argument – whether that evidence was generated before the crime at issue here – or, as in the

case of the prison records, after the crime. See e.g., United States v. Curley, 639 F.3d 50, 56-57

(2d Cir. 2011) (Fed. R. Evid. 404(b) permits "other act" evidence, including subsequent bad acts

so long as it is offered to show "motive, opportunity, intent, preparation, plan, knowledge,

identity, or absence of mistake or accident," or any "'non-propensity purpose,' including state of

mind.") (internal citations omitted); see also In re Ashanti Goldfields Sec. Litig., 213 F.R.D. 102,

107 (E.D.N.Y. 2003) (in class action context, ordering documents produced that post-date the

class period but refer to class period events and documents). Nor does the Government

challenge Mr. Fell's showing of good cause that the Justice Department's decision to seek the

death penalty in this case, after the United States Attorney recommended a life sentence and after

concerns had been publicly raised about the disparate impact of the death penalty on African-

American defendants convicted of killing white victims, was infected with racial and other

unconstitutional prejudice. Initial Discovery Request at 20-22. Instead, it argues that courts

have found that a privilege attaches to certain information that may be contained in documents

---

[10]    The Government argues that Mr. Fell has requested records from the Vermont Department of Corrections pursuant to the Vermont Open Records Act, Opp. Br. at 22 n.10, but it neglects to mention that Mr. Fell's public records request was denied by the Vermont Department of Public Safety on the grounds that the requested records were not public under the open records statute. It is only through a subpoena under the Federal Rules that Mr. Fell can obtain such critical evidence.

related to the Government's decision to seek the death penalty, Opp. Br. at 22-23, and suggests that wholesale dismissal of the claim will therefore be appropriate. But the Government has made no particularized showing of privilege, and in fact the cases cited by the Government discuss the impermissibility of such blanket objections. See e.g., United States v. Perez, 222 F. Supp. 2d 164, 172 (D. Conn. 2002) (prosecution's blanket objection to producing any materials related to the decision to seek the death penalty was "somewhat conclusory ... insofar as any of [the defendant's] requests seek only raw information such as documents in the Government's possession, the Government's work product objections are ineffectual"). Moreover, the cases cited by the Government, Opp. Br. at 22 (citing cases), were not habeas proceedings, but rather involved pre-trial motions where the defendants enjoyed rights to discovery under both Brady and the Federal Rules of Criminal Procedure. The question of whether a privilege applies in the habeas context in a death penalty case appears to be an issue of first impression before this Court, and should be litigated in the context of specific documents after Mr. Fell has the opportunity to serve a document request and the Government produces all non-privileged materials, and sets forth the basis for withholding any responsive documents in a privilege log. That way, there will be some law against which the Court can address any privilege issue.

Finally, even if the Government were right that any of these claims could not survive in isolation – and even if the Government were correct in its dubious claim that it can use Rule 4 to dismiss some of allegations in a Section 2255 Motion[11] – that would not deprive Mr. Fell of his

---

[11]   Rule 4 permits a court to determine "whether the 'allegations, when viewed against the record [available to the court are] so palpably incredible, so patently frivolous or false, as to warrant summary dismissal.'" Randy Hertz and James S. Liebman, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 15.2(c)(i) (6th ed. 2011) (citing Blackledge v. Allison, 431 U.S. 63, 75-76 (1977). Here if the Court resolves Mr. Fell's discovery request on the proper issue of whether Mr. Fell has made his showing of "specific allegations before the court [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief," Bracy, 520 U.S. at 908-09, it will have necessarily decided that Mr. Fell has

13

rights under Rule 6 to serve discovery under the Federal Rules. Unlike other federal statutes that require a stay and prohibit a court from allowing discovery before a complaint is tested to determine whether it states a claim,[12] Rule 6 authorizes a court to permit discovery upon satisfaction of a simple statutory standard – "good cause."

If such cause is established (as it is here) there is no requirement for a court to delay a movant from using the tools of discovery (with the incident risk of destruction of documents, loss of memory and the like) pending the lengthy briefing and argument of a summary dismissal motion. Had Congress intended such a result it could have said so. It did not. And the Government does not cite a single authority that would deprive the Court of the power to permit discovery until a "Rule 4 preliminary review" takes place. Accordingly, Mr Fell's motion should be granted now and not delayed.[13]

---

survived Rule 4 scrutiny. There is no reason to delay this review based on purported further motion practice on the part of the Government.

[12] See e.g., Private Securities Litigation Reform Act, as codified at 15 U.S.C. § (b)(3)(B); Prison Litigation Reform Act, as codified at 18 U.S.C. § 3626(e)(2).

[13] If the Government has particular objections those should be addressed according to the standards of the Federal Rules after the process required by those rules is followed.

## CONCLUSION

For the foregoing reasons, Mr. Fell's motion for leave to conduct discovery should be granted.

Dated: August 26, 2011
New York, New York

RESPECTFULLY SUBMITTED,

/s/ Lewis J. Liman
LEWIS J. LIMAN
Cleary Gottlieb Steen & Hamilton LLP
1 Liberty Plaza
New York, New York  10006
(212) 225-2550
Fax: (212) 225-3999

Dated: August 26, 2011
New York, New York

/s/ Cathleen I. Price
CATHLEEN I. PRICE
P.O. Box 321762
New York, NY  10032
(212) 998-6193

Dated: August 26, 2011
Barre, Vermont

/s/ Richard Rubin
RICHARD RUBIN
Rubin, Kidney, Myer & DeWolfe
237 N. Main Street
Barre, Vermont,  05641-4125
(802) 479-2514
Fax: (802) 479-2516

ATTORNEYS FOR MOVANT,
DONALD FELL

# UNITED STATES DISTRICT COURT

# DISTRICT OF VERMONT

## CERTIFICATE OF SERVICE

I, Lewis J. Liman, an attorney admitted to practice in the State of New York and a partner of the firm of Cleary Gottlieb Steen & Hamilton LLP, hereby certify that:

On August 26, 2011, I electronically filed with the Clerk of Court the Reply Memorandum in Support of the Motion for Leave to Conduct Discovery using the CM/ECF system on behalf of Donald Fell. The CM/ECF system will provide service of such filings via Notice of Electronic Filing (NEF) to all parties with an e-mail address of record, who have appeared and consent to electronic service in this action.

Dated: August 26, 2011
New York, New York

/s/ Lewis J. Liman
Cleary Gottlieb Steen & Hamilton LLP
1 Liberty Plaza
New York, New York 10006
(212) 225-2550
lliman@cgsh.com