-3-

RE: _Robert Lee_                                    Date: _6/12/97_

_____ Pay restitution/fines; and if he/she secures employment, he/she is directed to pay 75% of his/her earnings until the restitution/fine obligation has been fulfilled in accordance with Section 6352 of the Juvenile Act. Parent(s)/guardian(s) shall be responsible for their child's restitution to the extent that is allowable under the Parental Liability Act. Also, directed to comply with Act 12 of 1995, a Judgement Order for said restitution will be entered in the Prothonotary's Office of Luzerne County. A wage attachment may be ordered to help defray the cost of restitution.
Amount ordered $ _____ to be paid within _____.

√ Pay all Court related costs immediately.

_____ Parent(s)/guardian(s) to participate in the Family Preservation Program (parental counseling) sponsored by Catholic Social Services in accordance with Section 6310 of the Juvenile Act. Said program to be held at the Juvenile Center.

_____ Parent(s)/guardian(s) to cooperate with random blood, breath and urine testing to be conducted by the Juvenile Probation Department.

_____ Parent(s)/guardian(s) to submit to an evaluation with _____
and pay any/all costs. Directed to follow all recommendations.

_____ Proceedings are hereby DISMISSED/WITHDRAWN.

SPECIAL TERMS:
_____
_____
_____
_____

Juvenile Probation Officer:                         Respectfully submitted,

_Robert Dilon_                                       _Sandra M. Brule_
                                                     Sandra M. Brulo, LSW, MPA
                                                     Chief Probation Officer

Certified from the record
this 18th day of June 1997

_Robert F. Reilly_                        BY THE COURT,

Clerk of the Court of Quarter Sessions        _Mark A. Vincent_
                                                                   J.

Probation Conditions:

Probation is an opportunity to prove that I can modify and improve my behavior with the help of my parents, the community and my probation officer. I understand that Probation is a privilege granted by the Judge and can be revoked at any time depending upon the seriousness of violation of my probation/parole rules. Also, I realize that compliance with all rules is necessary for my successful adjustment.
I must obey all Laws - Federal, State and Local. I must reside with those individuals to whom the Court has entrusted my custody. I must stay away from all victims/witnesses. I must not associate with accomplices. I must inform the Court of any change in residence, and I must notify my Probation Officer of any change of telephone number. I must obtain permission from the Chief Probation Officer prior to leaving Luzerne County. I must not possess any type of weapon or firearm. Hunting is not permitted without special permission of the Chief Probation Officer. I must refrain from the use of all illegal substances. Also, I realize that failure to comply with the terms of my probation/parole may result in appropriate action to be decided by the Court. Further, I understand that I am not released from Probation/Parole until I have received a letter from the Court notifying me of my release.

028616

028617

JUVENILE: Robert Lee          142/ 23302          DATE OF HEARING: 11-28-11

DOB: 11/28/80          **CHARGE SHEET**          Defense Counsel: None
A.D.A.: Michelle Olshefsk

Page 2 of 75   Filed 12/02/11   Document 337-6   5:01-cr-00012-gwc

| CHARGES | 1. PETITION # 98386 | | | 2. PETITION # ___ | | | 3. PETITION # ___ | | | 4. PETITION # ___ | | | 5. PETITION NO. ___ | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | (F) | (N) | Amended to | (F) | (N) | Amended to | (F) | (N) | Amended to | (F) | (N) | Amended to | (F) | (N) | Amended to |
| VIOLATION OF ███ PAROLE | ✓ | | | | | | | | | | | | | | |
| VIOLATION OF INFORMAL ADJUSTMENT CONSENT AGREEMENT | | | | | | | | | | | | | | | |
| OTHER: | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

## IN THE COURT OF COMMON PLEAS OF LUZERNE COUNTY
# JUVENILE DIVISION
# COURT ORDER

RE: __Robert Lee__          Date of Hearing: __4-16-98__

DOB: __11-28-80__

TYPE OF HEARING:

____ DELINQUENT CHILD                    ____ DELINQUENCY (DISPOSITION LATER DATE)

____ DEPENDENT CHILD                     _✓_ DELINQUENCY & DISPOSITION

____ DELINQUENT/DEPENDENT CHILD          ____ DISPOSITION

                                         _✓_ DETENTION / DETENTION SERVICE PLAN

____ CONSENT DECREE GRANTED              ____ PLACEMENT / DISPOSITIONAL REVIEW

____ CASE DISMISSED                      ____ OTHER _____

The following is the Juvenile Probation Department's recommendation for the above named juvenile:

____ Committed to / Released from _____.

____ Continued in placement at _____.

____ IV-E: It is ordered that said placement is a determination that continuation in his/her residence would be contrary to the welfare of the child; and said placement is necessary because reasonable efforts were made prior to the placement to prevent or eliminate the need for removal of this child from his/her home. It is also ordered that Luzerne County Juvenile Probation Department and Luzerne County Children & Youth Services share case management responsibility for this child while he/she remains in placement.

____ Luzerne County Juvenile Probation Department and Luzerne County Children & Youth Services equally share all placements costs while child remains in placement.

____ Remanded to the Luzerne County Juvenile Detention Center for:
    ____ psychological evaluation conducted by the C.S.C. at the Juvenile Center - parents/guardians to assume cost
    ____ drug/alcohol evaluation conducted by_____at the Juvenile Center - parents/guardians to assume cost
    ____ further planning and/or placement
    ____ other _____.
    ____ Detention Plan: attend school & medical exam

____ Parent(s)/guardian(s) to contribute financial support toward their child's detention/placement costs as determined by the Court and/or Juvenile Probation Department. Parent(s)/guardian(s) responsible for child's medical and dental coverage before and during commitment as well as any/all clothing needs while he/she remains in placement.

____ Transfer disposition to _____ County Juvenile Court.

_✓_ Released into the custody of __father_____.

_✓_ Placed on Probation for: _✓_ indefinite period. ____ period of _____. ____ Consent Decree for _____
    ____ Placed under House Arrest. Special terms: _____.
    ____ Courtesy Supervision (received from _____).

_✓_ Curfew: Sunday through Thursday __7:00 PM__ Friday and Saturday __8:00 PM__.
    Special terms: _____.

028618

RE: _Robert Lee_                              -2-                Date: _4-16-98_

\_\_\_\_\_ Placed on an electronic monitor. Special terms: _____.
Parent(s)/Guardian(s) responsible for all costs/damages/repairs of said electronic monitoring system.

\_\_\_\_\_ Participate in the Weekender Program at _____
for \_\_\_\_\_ sessions. Special terms: _____.
Parent(s)/Guardian(s) responsible for cost of said Weekender Program.

✓ Cooperate with random blood, breath and urine testing to be conducted by the Juvenile Probation Department.

\_\_\_\_\_ Attend AA/NA meetings. Special terms: _____.

\_\_\_\_\_ Perform _____ hours of community service at a site to be determined by the Juvenile Probation Department.
Special terms: _____.

\_\_\_\_\_ Not to apply for an operator's license without permission of the Court OR surrender operator's license to the Court.

\_\_\_\_\_ Operator's license restricted for _____.

**Cooperate with the following agencies and follow any/all recommendations:**

\_\_\_\_\_ Children's Service Center:
    \_\_\_\_\_ psychological/psychiatric evaluation conducted at the Juvenile Center. Parent(s)/guardian(s)
       responsible for cost of said evaluation(s).
    \_\_\_\_\_ outpatient services
    \_\_\_\_\_ psychiatric evaluation at CSC
    \_\_\_\_\_ Type 50 support services

\_\_\_\_\_ Northeast Counseling
    \_\_\_\_\_ psychological/psychiatric evaluation
    \_\_\_\_\_ outpatient services

\_\_\_\_\_ Catholic Social Services / The Bridge Youth Services

\_\_\_\_\_ Wyoming Valley Alcohol and Drug Program

✓ Court Advocate Program

\_\_\_\_\_ Choices

\_\_\_\_\_ Lower Luzerne County Alcohol and Drug Services

\_\_\_\_\_ Supported recreation program: \_\_\_\_\_ CYC (Wilkes-Barre    \_\_\_\_\_ YMCA (Hazleton)

\_\_\_\_\_ Other:_____
\_\_\_\_\_ _Keystone Job Corps_ _____
_____
_____

028619

-3-

RE: ___Robert Lee_____    Date: __4-16-98__

_____ Pay restitution/fines; and if he/she secures employment, he/she is directed to pay 75% of his/her earnings until the restitution/fine obligation has been fulfilled in accordance with Section 6352 of the Juvenile Act. Parent(s)/guardian(s) shall be responsible for their child's restitution to the extent that is allowable under the Parental Liability Act. Also, directed to comply with Act 12 of 1995, a Judgement Order for said restitution will be entered in the Prothonotary's Office of Luzerne County. A wage attachment may be ordered to help defray the cost of restitution.
Amount ordered S _____ . Payment to be received within _____ .

√ Pay all Court related costs immediately.

√ PROBATION SUPERVISION FEE: Ordered to pay S35.00 per month payable at the end of each month.

_____ Parent(s)/guardian(s) to participate in the Family Preservation Program (parental counseling) sponsored by Catholic Social Services in accordance with Section 6310 of the Juvenile Act. Said program to be held at the Juvenile Center.

_____ Parent(s)/guardian(s) to cooperate with random blood, breath and urine testing to be conducted by the Juvenile Probation Department.

_____ Parent(s)/guardian(s) to submit to an evaluation with _____
and pay any/all costs. Directed to follow all recommendations.

**SPECIAL CONDITIONS:** _____
_____
_____
_____

**Juvenile Probation Officer:**                                    **Respectfully submitted,**

_____                          _____
P.O. Telephone No.:                                Sandra M. Brulo, LSW, MPA
                                                   Chief Probation Officer
__835-1837__

                          **BY THE COURT,**

                                                   _____ J.

**Probation Conditions:**
    Probation is an opportunity to prove that I can modify and improve my behavior with the help of my parents, the community and my probation officer. I understand that Probation is a privilege granted by the Judge and can be revoked at any time depending upon the seriousness of violation of my probation/parole rules. Also, I realize that compliance with all rules is necessary for my successful adjustment.
    I must obey all Laws - Federal, State and Local. I must reside with those individuals to whom the Court has entrusted my custody. I must stay away from all victims/witnesses. I must not associate with accomplices. I must inform the Court of any change in residence, and I must notify my Probation Officer of any change of telephone number. I must obtain permission from the Chief Probation Officer prior to leaving Luzerne County. I must not possess any type of weapon or firearm. Hunting is not permitted without special permission of the Chief Probation Officer. I must refrain from the use of all illegal substances. I must attend school, job training or obtain a job. Also, I realize that failure to comply with the terms of my probation/parole may result in appropriate action to be decided by the Court. Further, I understand that I am not released from Probation/Parole until I have received a letter from te Court notifying me of my release.

028620

Page 6 of 75    Filed 12/02/11    Document 337-6    5:01-cr-00012-cmc    028621

JUVENILE DIVISION

142/23302

CHARGE SHEET

JUVENILE: Robert Lee

DOB: 11/20/80

DATE OF HEARING: 9/2/98

Defense Counsel: None

A.D.A.: Barbara Nause

| CHARGES | 1. PETITION # 98-540 | | | 2. PETITION # 98-539 | | | 3. PETITION # | | | 4. PETITION # | | | 5. PETITION NO. | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | (F) | (N) | Amended to | (F) | (N) | Amended to | (F) | (N) | Amended to | (F) | (N) | Amended to | (F) | (N) | Amended to |
| BURGLARY | | | | | | | | | | | | | | | |
| THEFT BY UNLAWFUL TAKING | | | | | | | | | | | | | | | |
| RECEIVING STOLEN PROPERTY | | | | | | | | | | | | | | | |
| CRIMINAL CONSPIRACY | | | | | | | | | | | | | | | |
| CRIMINAL TRESPASS | | | | | | | | | | | | | | | |
| CRIMINAL MISCHIEF | | | | | | | | | | | | | | | |
| POSSESSION OF WEAPON ON SCHOOL PROPERTY | | | | | | | | | | | | | | | |
| VIOLATION OF ███ Probation | | | | ✓ | | | | | | | | | | | |
| Possessing Instruments of ███ Crime | ✓ | | | | | | | | | | | | | | |
| SIMPLE ASSAULT | | | | | | | | | | | | | | | |
| FAILURE TO PAY FINES/COSTS LEVIED BY DISTRICT JUSTICE | | | | | | | | | | | | | | | |
| SUMMARY OFFENSE | | | | | | | | | | | | | | | |
| OTHER: ███ | | | | | | ███ | | | | | | | | | ███ |

# IN THE COURT OF COMMON PLEAS OF LUZERNE COUNTY
## JUVENILE DIVISION
## COURT ORDER

RE: _Robert Lee_                    Date of Hearing: _6/2/98_

DOB: _____

**TYPE OF HEARING:**

✓ DELINQUENT CHILD          ✓ DELINQUENCY (DISPOSITION LATER DATE)

____ DEPENDENT CHILD          ____ DELINQUENCY & DISPOSITION

____ DELINQUENT/DEPENDENT CHILD   ____ DISPOSITION

                              ✓ DETENTION / DETENTION SERVICE PLAN

____ CONSENT DECREE GRANTED   ____ PLACEMENT / DISPOSITIONAL REVIEW

____ CASE DISMISSED           ____ OTHER _____

<u>Please note parents are responsible for all program costs and any fees associated with Probation of their child.</u>

The following is the Juvenile Probation Department's recommendation for the above named juvenile:

____ Committed to / Released from _____.

____ Continued in placement at _____.

____ **IV-E:** It is ordered that said placement is a determination that continuation in his/her residence would be contrary to the welfare of the child; and said placement is necessary because reasonable efforts were made prior to the placement to prevent or eliminate the need for removal of this child from his/her home. It is also ordered that Luzerne County Juvenile Probation Department and Luzerne County Children & Youth Services share case management responsibility for this child while he/she remains in placement.

____ Luzerne County Juvenile Probation Department and Luzerne County Children & Youth Services equally share all placements costs while child remains in placement.

✓ Remanded to the Luzerne County Juvenile Detention Center for:
    ____ psychological evaluation conducted by the C.S.C. at the Juvenile Center - parents/guardians to assume cost
    ____ drug/alcohol evaluation conducted by_____ at the Juvenile Center - parents/guardians to assume cost
    ✓ further planning and/or placement
    ____ other_____.
    ✓ Detention Plan: attend school & medical exam

✓ Parent(s)/guardian(s) to contribute financial support toward their child's detention/placement costs as determined by the Court and/or Juvenile Probation Department. Parent(s)/guardian(s) responsible for child's medical and dental coverage before and during commitment as well as any/all clothing needs while he/she remains in placement.

____ Transfer disposition to _____ County Juvenile Court.

____ Released into the custody of _____.

____ Placed on Probation for:  ____ indefinite period.  ____ period of _____.  ____ Consent Decree for _____.
    ____ Placed under House Arrest. Special terms: _____.
    ____ Courtesy Supervision (received from _____).

028622

-2-

E: _Robert Lee_____          Date: _6/2/98_____

____ Curfew: Sunday through Thursday _____    Friday and Saturday _____.
Special terms: _____.

____ Placed on an electronic monitor. Special terms: _____.
Parent(s)/Guardian(s) responsible for all costs/damages/repairs of said electronic monitoring system.

____ Participate in the Weekender Program at _____
for _____ sessions. Special terms: _____.
Parent(s)/Guardian(s) responsible for cost of said Weekender Program.

✓ Cooperate with random blood, breath and urine testing to be conducted by the Juvenile Probation Department.

____ Attend AA/NA meetings. Special terms: _____.

____ Perform _____ hours of community service at a site to be determined by the Juvenile Probation Department.
Special terms: _____.

____ Not to apply for an operator's license without permission of the Court OR surrender operator's license to the Court.

____ Operator's license restricted for _____.

Cooperate with the following agencies and follow any/all recommendations:

____ Children's Service Center:
____ psychological/psychiatric evaluation conducted at the Juvenile Center. Parent(s)/guardian(s) responsible for cost of said evaluation(s).
____ outpatient services
____ psychiatric evaluation at CSC
____ Type 50 support services

____ Northeast Counseling
____ psychological/psychiatric evaluation
____ outpatient services

____ Catholic Social Services / The Bridge Youth Services

____ Wyoming Valley Alcohol and Drug Program

____ Court Advocate Program

____ Choices

____ Lower Luzerne County Alcohol and Drug Services

____ Supported recreation program: _____ CYC (Wilkes-Barre    _____ YMCA (Hazleton)

____ Other: _____

_____

_____

028623

-3-

RE: _Robert Lee_                                    Date: _6/2/98_

✓ Pay restitution/fines; and if he/she secures employment, he/she is directed to pay 75% of his/her earnings until the restitution/fine obligation has been fulfilled in accordance with Section 6352 of the Juvenile Act. Parent(s)/guardian(s) shall be responsible for their child's restitution to the extent that is allowable under the Parental Liability Act. Also, directed to comply with Act 12 of 1995, a Judgement Order for said restitution will be entered in the Prothonotary's Office of Luzerne County. A wage attachment may be ordered to help defray the cost of restitution. Amount ordered S _____. Payment to be received within _____.

✓ Pay all Court related costs immediately.

____ PROBATION SUPERVISION FEE: Ordered to pay S35.00 per month payable at the end of each month.

____ Parent(s)/guardian(s) to participate in the Family Preservation Program (parental counseling) sponsored by Catholic Social Services in accordance with Section 6310 of the Juvenile Act. Said program to be held at the Juvenile Center.

____ Parent(s)/guardian(s) to cooperate with random blood, breath and urine testing to be conducted by the Juvenile Probation Department.

____ Parent(s)/guardian(s) to submit to an evaluation with _____ and pay any/all costs. Directed to follow all recommendations.

SPECIAL CONDITIONS:

_____

_____

_____

Juvenile Probation Officer:                      Respectfully submitted,

_____

P.O. Telephone No.:                              Sandra M. Brulo, LSW, MPA
                                                 Chief Probation Officer
_____

                             BY THE COURT,

                             _____
                                                          J.

Probation Conditions:
        Probation is an opportunity to prove that I can modify and improve my behavior with the help of my parents, the community and my probation officer. I understand that Probation is a privilege granted by the Judge and can be revoked at any time depending upon the seriousness of violation of my probation/parole rules. Also, I realize that compliance with all rules is necessary for my successful adjustment.
        I must obey all Laws - Federal, State and Local. I must reside with those individuals to whom the Court has entrusted my custody. I must stay away from all victims/witnesses. I must not associate with accomplices. I must inform the Court of any change in residence, and I must notify my Probation Officer of any change of telephone number. I must obtain permission from the Chief Probation Officer prior to leaving Luzerne County. I must not possess any type of weapon or firearm. Hunting is not permitted without special permission of the Chief Probation Officer. I must refrain from the use of all illegal substances. _I must attend school, job training or obtain a job._ Also, I realize that failure to comply with the terms of my probation/parole may result in appropriate action to be decided by the Court. Further, I understand that I am not released from Probation/Parole until I have received a letter from te Court notifying me of my release.

028624

# IN THE COURT OF COMMON PLEAS OF LUZERNE COUNTY
## JUVENILE DIVISION
## COURT ORDER

142 / 23362

RE: ROBERT LEE

DOB: 11-28-80

Date of Hearing: 6-3-99

**TYPE OF HEARING:**

X DELINQUENT CHILD (6/2/98)

____ DEPENDENT CHILD

____ DELINQUENT/DEPENDENT CHILD

____ DELINQUENCY (DISPOSITION LATER DATE)

____ DELINQUENCY & DISPOSITION

X DISPOSITION   *Taper*

____ DETENTION / DETENTION SERVICE PLAN

____ CONSENT DECREE GRANTED

____ CASE DISMISSED

____ PLACEMENT / DISPOSITIONAL REVIEW

____ OTHER _____

Please note parents are responsible for all program costs and any fees associated with Probation of their child.

The following is the Juvenile Probation Department's recommendation for the above named juvenile:

X ( Committed to ) Released from ADVENTURE CHALLENGE TREATMENT ROBERT WILL. RETURN TO THE JUV. CTR. UPON COMPLETION

Continued in placement at OF THE PROGRAM

V IV-E: It is ordered that said placement is a determination that continuation in his/her residence would be contrary to the welfare of the child; and said placement is necessary because reasonable efforts were made prior to the placement to prevent or eliminate the need for removal of this child from his/her home. It is also ordered that Luzerne County Juvenile Probation Department and Luzerne County Children & Youth Services share case management responsibility for this child while he/she remains in placement.

____ Luzerne County Juvenile Probation Department and Luzerne County Children & Youth Services equally share all placements costs while child remains in placement.

____ Remanded to the Luzerne County Juvenile Detention Center for:

____ psychological evaluation conducted by the C.S.C. at the Juvenile Center - parents/guardians to assume cost

____ drug/alcohol evaluation conducted by _____ at the Juvenile Center - parents/guardians to assume cost

____ further planning and/or placement

____ other _____

____ Detention Plan: attend school & medical exam

X Parent(s)/guardian(s) to contribute financial support toward their child's detention/placement costs as determined by the Court and/or Juvenile Probation Department. Parent(s)/guardian(s) responsible for child's medical and dental coverage before and during commitment as well as any/all clothing needs while he/she remains in placement.

____ Transfer disposition to _____ County Juvenile Court.

____ Released into the custody of _____.

____ Placed on Probation for: ____ indefinite period ____ period of _____ ____ Consent Decree for _____
       ____ Placed under House Arrest. Special terms: _____
       ____ Courtesy Supervision (received from _____).

028625

-2-

E: _Robert Lee_____    Date: ___6-3-98____

_____ Curfew: Sunday through Thursday _____    Friday and Saturday _____.
Special terms: _____.

_____ Placed on an electronic monitor. Special terms: _____.
Parent(s)/Guardian(s) responsible for all costs/damages/repairs of said electronic monitoring system.

_____ Participate in the Weekender Program at _____
for _____ sessions. Special terms: _____.
Parent(s)/Guardian(s) responsible for cost of said Weekender Program.

__✓__ Cooperate with random blood, breath and urine testing to be conducted by the Juvenile Probation Department.

_____ Attend AA/NA meetings. Special terms: _____.

_____ Perform _____ hours of community service at a site to be determined by the Juvenile Probation Department.
Special terms: _____.

_____ Not to apply for an operator's license without permission of the Court OR surrender operator's license to the Court.

_____ Operator's license restricted for _____.

Cooperate with the following agencies and follow any/all recommendations:

_____ Children's Service Center:
_____    psychological/psychiatric evaluation conducted at the Juvenile Center. Parent(s)/guardian(s)
       responsible for cost of said evaluation(s).
_____    outpatient services
_____    psychiatric evaluation at CSC
_____    Type 50 support services

_____ Northeast Counseling
_____    psychological/psychiatric evaluation
_____    outpatient services

_____ Catholic Social Services / The Bridge Youth Services

_____ Wyoming Valley Alcohol and Drug Program

_____ Court Advocate Program

_____ Choices

_____ Lower Luzerne County Alcohol and Drug Services

_____ Supported recreation program: _____ CYC (Wilkes-Barre    _____ YMCA (Hazleton)

_____ Other: _____

_____

_____

028626

-3-

RE: _Robert Lee_ _____    Date: _6-3-99_

✓ **Pay restitution/fines;** and if he/she secures employment, he/she is directed to pay 75% of his/her earnings until the restitution/fine obligation has been fulfilled in accordance with Section 6352 of the Juvenile Act. Parent(s)/guardian(s) shall be responsible for their child's restitution to the extent that is allowable under the Parental Liability Act. Also, directed to comply with Act 12 of 1995, a Judgement Order for said restitution will be entered in the Prothonotary's Office of Luzerne County. A wage attachment may be ordered to help defray the cost of restitution.
Amount ordered $ _____ . Payment to be received within _____ .

_____ Pay all Court related costs immediately.

✓ **PROBATION SUPERVISION FEE:** Ordered to pay $35.00 per month payable at the end of each month.

_____ Parent(s)/guardian(s) to participate in the Family Preservation Program (parental counseling) sponsored by Catholic Social Services in accordance with Section 6310 of the Juvenile Act. Said program to be held at the Juvenile Center.

_____ Parent(s)/guardian(s) to cooperate with random blood, breath and urine testing to be conducted by the Juvenile Probation Department.

_____ Parent(s)/guardian(s) to submit to an evaluation with _____
and pay any/all costs. Directed to follow all recommendations.


**SPECIAL CONDITIONS:**

_____

_____

_____


Juvenile Probation Officer:                              Respectfully submitted,

_THOMAS J LAVAN_                                         _Sandra Brulo_
P.O. Telephone No.:                                      Sandra M. Brulo, LSW, MPA
                                                         Chief Probation Officer
_820-6313_

                        BY THE COURT,

                        _____  J.


Probation Conditions:
    Probation is an opportunity to prove that I can modify and improve my behavior with the help of my parents, the community and my probation officer. I understand that Probation is a privilege granted by the Judge and can be revoked at any time depending upon the seriousness of violation of my probation/parole rules. Also, I realize that compliance with all rules is necessary for my successful adjustment.
    I must obey all Laws - Federal, State and Local. I must reside with those individuals to whom the Court has entrusted my custody. I must stay away from all victims/witnesses. I must not associate with accomplices. I must inform the Court of any change in residence, and I must notify my Probation Officer of any change of telephone number. I must obtain permission from the Chief Probation Officer prior to leaving Luzerne County. I must not possess any type of weapon or firearm. Hunting is not permitted without special permission of the Chief Probation Officer. I must refrain from the use of all illegal substances. _I must attend school, job training or obtain a job._ Also, I realize that failure to comply with the terms of my probation/parole may result in appropriate action to be decided by the Court. Further, I understand that I am not released from Probation/Parole until I have received a letter from the Court notifying me of my release.

028627

*David Zzor, A.D.A.*

# IN THE COURT OF COMMON PLEAS OF LUZERNE COUNTY
## JUVENILE DIVISION
## COURT ORDER

*Juvenile Not Represented by Cansel*

:42 / 23302

RE: _Robert Lee_

DOB: _____

Date of Hearing: _Aug 4, 1998_

_____ DELINQUENT CHILD

_____ DEPENDENT CHILD

_____ DELINQUENT/DEPENDENT CHILD

_____ CONSENT DECREE GRANTED

_____ CASE DISMISSED

**TYPE OF HEARING:**

_____ DELINQUENCY (DISPOSITION LATER DATE)

_____ DELINQUENCY & DISPOSITION

__✓__ DISPOSITION

__✓__ DETENTION / DETENTION SERVICE PLAN

__X__ PLACEMENT / ~~DISPOSITIONAL~~ REVIEW

_____ OTHER _____

**Please note parents are responsible for all program costs and any fees associated with Probation of their child.**

The following is the Juvenile Probation Department's recommendation for the above named juvenile:

__✓__ ~~Committed to~~ / Released from _Adventure Challenge Treatment_

_____ Continued in placement at _Program effective 7/31/98._

_____ IV-E: It is ordered that said placement is a determination that continuation in his/her residence would be contrary to the welfare of the child; and said placement is necessary because reasonable efforts were made prior to the placement to prevent or eliminate the need for removal of this child from his/her home. It is also ordered that Luzerne County Juvenile Probation Department and Luzerne County Children & Youth Services share case management responsibility for this child while he/she remains in placement.

_____ Luzerne County Juvenile Probation Department and Luzerne County Children & Youth Services equally share all placements costs while child remains in placement.

__X__ Remanded to the Luzerne County Juvenile Detention Center for:

    _____ psychological evaluation conducted by the C.S.C. at the Juvenile Center - parents/guardians to assume cost

    _____ drug/alcohol evaluation conducted by_____ at the Juvenile Center - parents/guardians to assume cost

    __X__ further planning and/or placement

    _____ other _____

    __X__ Detention Plan: attend school & medical exam

__X__ Parent(s)/guardian(s) to contribute financial support toward their child's detention/placement costs as determined by the Court and/or Juvenile Probation Department. Parent(s)/guardian(s) responsible for child's medical and dental coverage before and during commitment as well as any/all clothing needs while he/she remains in placement.

_____ Transfer disposition to _____ County Juvenile Court.

_____ Released into the custody of _____.

_____ Placed on Probation for:   _____ indefinite period.   _____ period of_____.   _____ Consent Decree for_____.

    _____ Placed under House Arrest. Special terms: _____.

    _____ Courtesy Supervision (received from _____).

028628

R.E: _Robert Lee_____    Date: _Aug 4, 1998_____

_____ Curfew: Sunday through Thursday _____ Friday and Saturday _____.
Special terms: _____.

_____ Placed on an electronic monitor. Special terms: _____.
Parent(s)/Guardian(s) responsible for all costs/damages/repairs of said electronic monitoring system.

_____ Participate in the Weekender Program at _____
for _____ sessions. Special terms: _____.
Parent(s)/Guardian(s) responsible for cost of said Weekender Program.

__X__ Cooperate with random blood, breath and urine testing to be conducted by the Juvenile Probation Department.

_____ Attend AA/NA meetings. Special terms: _____.

_____ Perform _____ hours of community service at a site to be determined by the Juvenile Probation Department.
Special terms: _____.

_____ Not to apply for an operator's license without permission of the Court OR surrender operator's license to the Court.

_____ Operator's license restricted for _____.

Cooperate with the following agencies and follow any/all recommendations:

_____ Children's Service Center:
　　　_____ psychological/psychiatric evaluation conducted at the Juvenile Center. Parent(s)/guardian(s)
　　　　　responsible for cost of said evaluation(s).
　　　_____ outpatient services
　　　_____ psychiatric evaluation at CSC
　　　_____ Type 50 support services

_____ Northeast Counseling
　　　_____ psychological/psychiatric evaluation
　　　_____ outpatient services

_____ Catholic Social Services / The Bridge Youth Services

_____ Wyoming Valley Alcohol and Drug Program

_____ Court Advocate Program

_____ Choices

_____ Lower Luzerne County Alcohol and Drug Services

_____ Supported recreation program: _____ CYC (Wilkes-Barre) _____ YMCA (Hazleton)

_____ Other: _____.

028629

IN THE COURT OF COMMON PLEAS OF LUZERNE COUNTY
# JUVENILE DIVISION
## COURT ORDER 142\23302

Date of Hearing: 8-10-98

RE: *Robert Lee*

DOB: *11-28-80*

TYPE OF HEARING:

__X__ DELINQUENT CHILD

_____ DEPENDENT CHILD

_____ DELINQUENT/DEPENDENT CHILD

_____ DELINQUENCY (DISPOSITION LATER DATE)

_____ DELINQUENCY & DISPOSITION

_____ DISPOSITION

_____ DETENTION / DETENTION SERVICE PLAN

__X__ PLACEMENT / DISPOSITIONAL REVIEW

_____ CONSENT DECREE GRANTED

_____ CASE DISMISSED

__X__ OTHER _____

**Please note parents are responsible for all program costs and any fees associated with Probation of their child.**

The following is the Juvenile Probation Department's recommendation for the above named juvenile:

__X__ (Committed to)/ Released from _Y F C #3   G.J.G.  Robert will return to the Juv Ctr upon completion of the program.  $109.00 per day._

_____ Continued in placement at _____

_____ IV-E: It is ordered that said placement is a determination that continuation in his/her residence would be contrary to the welfare of the child; and said placement is necessary because reasonable efforts were made prior to the placement to prevent or eliminate the need for removal of this child from his/her home. It is also ordered that Luzerne County Juvenile Probation Department and Luzerne County Children & Youth Services share case management responsibility for this child while he/she remains in placement.

_____ Luzerne County Juvenile Probation Department and Luzerne County Children & Youth Services equally share all placements costs while child remains in placement.

_____ Remanded to the Luzerne County Juvenile Detention Center for:

_____ psychological evaluation conducted by the C.S.C. at the Juvenile Center - parents/guardians to assume cost

_____ drug/alcohol evaluation conducted by_____ at the Juvenile Center - parents/guardians to assume cost

_____ further planning and/or placement

_____ other_____

_____ Detention Plan: attend school & medical exam

__X__ Parent(s)/guardian(s) to contribute financial support toward their child's detention/placement costs as determined by the Court and/or Juvenile Probation Department. Parent(s)/guardian(s) responsible for child's medical and dental coverage before and during commitment as well as any/all clothing needs while he/she remains in placement.

_____ Transfer disposition to _____ County Juvenile Court.

_____ Released into the custody of _____.

_____ Placed on Probation for:   _____ indefinite period.   _____ period of_____.   _____ Consent Decree for_____.

_____ Placed under House Arrest. Special terms: _____.

_____ Courtesy Supervision (received from _____).

028630

-2-

RE: _ROBERT  LEE_                                    Date: _8-10-98_

_____ Curfew: Sunday through Thursday _____   Friday and Saturday _____.
      Special terms: _____.

_____ Placed on an electronic monitor.  Special terms: _____.
      Parent(s)/Guardian(s) responsible for all costs/damages/repairs of said electronic monitoring system.

_____ Participate in the Weekender Program at _____
      for _____ sessions.  Special terms: _____.
      Parent(s)/Guardian(s) responsible for cost of said Weekender Program.

__X__ Cooperate with random blood, breath and urine testing to be conducted by the Juvenile Probation Department.

_____ Attend AA/NA meetings.  Special terms: _____.

_____ Perform _____ hours of community service at a site to be determined by the Juvenile Probation Department.
      Special terms: _____.

_____ Not to apply for an operator's license without permission of the Court OR surrender operator's license to the Court.

_____ Operator's license restricted for _____.

Cooperate with the following agencies and follow any/all recommendations:

_____ Children's Service Center:
      _____ psychological/psychiatric evaluation conducted at the Juvenile Center.  Parent(s)/guardian(s)
            responsible for cost of said evaluation(s).
      _____ outpatient services
      _____ psychiatric evaluation at CSC
      _____ Type 50 support services

_____ Northeast Counseling
      _____ psychological/psychiatric evaluation
      _____ outpatient services

_____ Catholic Social Services / The Bridge Youth Services

_____ Wyoming Valley Alcohol and Drug Program

_____ Court Advocate Program

_____ Choices

_____ Lower Luzerne County Alcohol and Drug Services

_____ Supported recreation program: _____ CYC (Wilkes-Barre    _____ YMCA (Hazleton)

_____ Other:_____
      _____
      _____

028631

-3-

RE: Robert Lee                                    Date: 8-10-98

X Pay restitution/fines; and if he/she secures employment, he/she is directed to pay 75% of his/her earnings until the restitution/fine obligation has been fulfilled in accordance with Section 6352 of the Juvenile Act. Parent(s)/guardian(s) shall be responsible for their child's restitution to the extent that is allowable under the Parental Liability Act. Also, directed to comply with Act 12 of 1995, a Judgement Order for said restitution will be entered in the Prothonotary's Office of Luzerne County. A wage attachment may be ordered to help defray the cost of restitution.
Amount ordered $ _____ . Payment to be received within _____ .

____ Pay all Court related costs immediately.

____ PROBATION SUPERVISION FEE: Ordered to pay $35.00 per month payable at the end of each month.

____ Parent(s)/guardian(s) to participate in the Family Preservation Program (parental counseling) sponsored by Catholic Social Services in accordance with Section 6310 of the Juvenile Act. Said program to be held at the Juvenile Center.

____ Parent(s)/guardian(s) to cooperate with random blood, breath and urine testing to be conducted by the Juvenile Probation Department.

____ Parent(s)/guardian(s) to submit to an evaluation with _____ and pay any/all costs. Directed to follow all recommendations.

SPECIAL CONDITIONS: _____    _____

_____

Certified from the record
this 10th day of Aug 1998

_____

Juvenile Probation Officer:                    Respectfully submitted,

STEVE ADAMCHAK
P.O. Telephone No.:                    Clerk of the Court of Quarter Sessions

825-1537                                        Sandra M. Brulo, LSW, MPA
                                                Chief Probation Officer

BY THE COURT,

Mar 4                                        J.

Probation Conditions:
        Probation is an opportunity to prove that I can modify and improve my behavior with the help of my parents, the community and my probation officer. I understand that Probation is a privilege granted by the Judge and can be revoked at any time depending upon the seriousness of violation of my probation/parole rules. Also, I realize that compliance with all rules is necessary for my successful adjustment.
        I must obey all Laws - Federal, State and Local. I must reside with those individuals to whom the Court has entrusted my custody. I must stay away from all victims/witnesses. I must not associate with accomplices. I must inform the Court of any change in residence, and I must notify my Probation Officer of any change of telephone number. I must obtain permission from the Chief Probation Officer prior to leaving Luzerne County. I must not possess any type of weapon or firearm. Hunting is not permitted without special permission of the Chief Probation Officer. I must refrain from the use of all illegal substances. *I must attend school, job training or obtain a job*. Also, I realize that failure to comply with the terms of my probation/parole may result in appropriate action to be decided by the Court. Further, I understand that I am not released from Probation/Parole until I have received a letter from te Court notifying me of my release.

028632

IN THE COURT OF COMMON PLEAS OF LUZERNE COUNTY
## JUVENILE DIVISION
## COURT ORDER

12/2330

RE: _Robert Lee_

DOB: _11-20-80 (age 18)_

Date of Hearing: _2/18/99_

**TYPE OF HEARING:**

____ DELINQUENT CHILD      ____ DELINQUENCY (DISPOSITION LATER DATE)

____ DEPENDENT CHILD      ____ DELINQUENCY & DISPOSITION

____ DELINQUENT/DEPENDENT CHILD      ____ DISPOSITION

     ____ DETENTION / DETENTION SERVICE PLAN

____ CONSENT DECREE GRANTED      _✓_ PLACEMENT / DISPOSITIONAL REVIEW

____ CASE DISMISSED      ____ OTHER _____

Please note parents are responsible for all program costs and any fees associated with Probation of their child.

The following is the Juvenile Probation Department's recommendation for the above named juvenile:

____ Committed to _____

_X_ Released from ___YFC#3. (GIG)___ — _No Probation Supervision_

____ Continued in placement at _____

____ IV-E: It is ordered that said placement is a determination that continuation in his/her residence would be contrary to the welfare of the child; and said placement is necessary because reasonable efforts were made prior to the placement to prevent or eliminate the need for removal of this child from his/her home. It is also ordered that Luzerne County Juvenile Probation Department and Luzerne County Children & Youth Services share case management responsibility for this child while he/she remains in placement.

____ Luzerne County Juvenile Probation Department and Luzerne County Children & Youth Services equally share all placements costs and case management responsibility while child remains in placement.

____ Remanded to the Luzerne County Juvenile Detention Center for:
     ____ psychological evaluation conducted by the C.S.C. at the Juvenile Center - parents/guardians to assume cost
     ____ drug/alcohol evaluation conducted by _____ at the Juvenile Center - parents/guardians to assume cost
     ____ further planning and/or placement
     ____ other _____
     ____ Detention Plan: attend school & medical exam

____ Parent(s)/guardian(s) to contribute financial support toward their child's detention/placement costs as determined by the Court and/or Juvenile Probation Department. Parent(s)/guardian(s) responsible for child's medical and dental coverage before and during commitment as well as any/all clothing needs while he/she remains in placement.

028633

-2-

Re: _Robert Lee_                                        Date: _2/18/99_

_____ Transfer disposition to _____ County Juvenile Court.

_____ Released into the custody of _____.

_____ Placed on Probation for:  _____ indefinite period.  _____ period of _____.  _____ Consent Decree for _____.
_____        Placed under House Arrest.  Special terms: _____.

_____        Courtesy Supervision (received from _____).

_____ Luzerne County Juvenile Probation Office and Luzerne County Children & Youth Services will share case management responsibility for the child/family while child is in the community.

_____ Curfew:  Sunday through Thursday _____  Friday and Saturday _____.
Special terms: _____.

_____ Placed on an electronic monitor.  Special terms: _____.
Parent(s)/Guardian(s) responsible for all costs/damages/repairs of said electronic monitoring system.

_____ Participate in the Weekender Program at _____
for _____ sessions.  Special terms: _____.
Parent(s)/Guardian(s) responsible for cost of said Weekender Program.

_____ Cooperate with random blood, breath and urine testing to be conducted by the Juvenile Probation Department.

_____ Attend AA/NA meetings.  Special terms: _____.

_____ Perform _____ hours of community service at a site to be determined by the Juvenile Probation Department.
Special terms: _____.

_____ Not to apply for an operator's license without permission of the Court OR surrender operator's license to the Court.

_____ Operator's license restricted for _____.

Cooperate with the following agencies and follow any/all recommendations:

_____ Children's Service Center:
        _____ psychological/psychiatric evaluation conducted at the Juvenile Center.  Parent(s)/guardian(s) responsible for cost of said evaluation(s).
        _____ outpatient services
        _____ psychiatric evaluation at CSC
        _____ Type 50 support services
        _____ All reports, evaluations, etc. are to be submitted by the agency to the Juvenile Probation Office.

_____ Northeast Counseling
        _____ psychological/psychiatric evaluation
        _____ outpatient services
        _____ All reports, evaluations, etc. are to be submitted by the agency to the Juvenile Probation Office.

_____ Catholic Social Services              _____ The Bridge Youth Services

_____ Wyoming Valley Alcohol and Drug Program

_____ Court Advocate Program

028634

Re: _Robert Lee_                          -3-                    Date: _2-18-99_

(Agency participation continued from page 2)

____ Choices

____ Lower Luzerne County Alcohol and Drug Services

____ Supported recreation program: ____ CYC (Wilkes-Barre    ____ YMCA (Hazleton)

____ Other:_____

_____

____ All agency reports are to be sent on a monthly basis to the Juvenile Probation Office.

____ Pay restitution/fines; and if he/she secures employment, he/she is directed to pay 75% of his/her earnings until the restitution/fine obligation has been fulfilled in accordance with Section 6352 of the Juvenile Act. Parent(s)/guardian(s) shall be responsible for their child's restitution to the extent that is allowable under the Parental Liability Act. Also, directed to comply with Act 12 of 1995, a Judgement Order for said restitution will be entered in the Prothonotary's Office of Luzerne County. A wage attachment may be ordered to help defray the cost of restitution. Amount ordered $ _____. Payment to be received within _____.

____ Pay all Court related costs immediately.

____ PROBATION SUPERVISION FEE: Ordered to pay $35.00 per month payable at the end of each month.

____ SEE PARENT COURT ORDER for appropriate participation/directives.

SPECIAL CONDITIONS:

_____

_____

Juvenile Probation Officer:

_Steven J Adamchak_

P.O. Telephone No.:

_____

Respectfully submitted,

_Sandra M. Brulo_

Sandra M. Brulo, LSW, MPA
Chief Probation Officer

BY THE COURT,

_____ J.

Probation Conditions:
    Probation is an opportunity to prove that I can modify and improve my behavior with the help of my parents, the community and my probation officer. I understand that Probation is a privilege granted by the Judge and can be revoked at any time depending upon the seriousness of violation of my probation/parole rules. Also, I realize that compliance with all rules is necessary for my successful adjustment.
    I must obey all Laws - Federal, State and Local. I must reside with those individuals to whom the Court has entrusted my custody. I must stay away from all victims/witnesses. I must not associate with accomplices. I must inform the Court of any change in residence, and I must notify my Probation Officer of any change of telephone number. I must obtain permission from the Chief Probation Officer prior to leaving Luzerne County. I must not possess any type of weapon or firearm. Hunting is not permitted without special permission of the Chief Probation Officer. I must refrain from the use of all illegal substances. _I must attend school, job training or obtain a job._ Also, I realize that failure to comply with the terms of my probation/parole may result in appropriate action to be decided by the Court. Further, I understand that I am not released from Probation/Parole until I have received a letter from the Court notifying me of my release.

028635

```
                    Print Key Output                           Page    1
      5738SS1 V2R1M1 920306                CITYWB              04/06/01  10:03:19

   Display Device . . . . . :  B5
   User  . . . . . . . . . :  WARNICK

 REVIEW                       POLICE INFORMATION              04/06/01    A
 PS101S-54              Maintain Incident Information          10:03:13

  Incident ID:                  Segment...: NI NAME INQ
  Type.......:                  Occur.....:
  Name.......: LEE                    ROBERT
 ------------------------------------------------------------------------------
  Name/Incident ID          Address #1    Seg Alias   DOB      Soc Sec   Entered
  LEE, ROBERT                             PA        11/28/80             02/09/96
   R96A289644               25 HURLEY ST       WB                PA  18705
  LEE, ROBERT                             PM        11/28/80  161624689  03/14/96
   R95L059517               25 HURLEY ST       WILKES BARRE      PA
  LEE, ROBERT                             PP                            06/18/96
   R96C199635
  LEE, ROBERT                             PP                            06/18/96
   R96C199645               25 HURLY ST        WB
  LEE, ROBERT                             PP        03/30/57            12/12/96
   R96L049650               25 HURLEY ST       WB                PA  18702
  LEE, ROBERT                             PP                            02/28/97
   R97B279712               60 LAKEVIEW DR     MT TOP            PA
  LEE, ROBERT                             TP        11/09/64            09/03/97
   R97G129717               60 LARKVIEW DR     MT TOP            PA
 ------------------------------------------------------------------------------
 ELP      F3=Exit     F5=Options     F8=Retain     F9=Phonetic     Roll
```

028636

```
                       Print Key Output                              Page    1
    5738SS1 V2R1M1 920306              CITYWB              04/06/01  10:03:08

   Display Device . . . . . :  B5
   User . . . . . . . . . . :  WARNICK

 REVIEW                   POLICE INFORMATION                04/06/01    A
 PS101S-54           Maintain Incident Information          10:03:02

 Incident ID:                   Segment...: NI NAME INQ
 Type.......:                   Occur.....:
 Name.......: LEE                  ROBERT
 ------------------------------------------------------------------------------
 Name/Incident ID       Address #1     Seg Alias   DOB      Soc Sec   Entered
 LEE, ROBERT                           PP          03/30/57           05/26/98
   R98E249814           25 HURLEY ST        WB                    PA  18702
 LEE, ROBERT                           PA          11/28/80           05/26/98
   R98E249814           25 HURLEY ST        WB                    PA  18702
 LEE, ROBERT.                          PA          11/28/80           05/27/98
   R98E249815           25 HURLEY ST        WB                    PA  18702
 LEE, ROBERT                           PP                             07/24/98
   R9800708913          19 W BEATTY ST
 LEE, ROBERT C.                        CP          06/15/59           04/19/95
   R95D119511           222 SIMPSON ST      WB                    PA  18702
 LEE, ROBERT E.                        PA          11/22/51           08/21/91
   R9100011218          RD 4 BOX 327        DALLAS                PA
 LEE, ROBERT, JR.                      PA          11/28/80           12/22/93
   R93L099357           25 HURLEY STREET    WILKES BARRE          PA  18705

 ELP    F3=Exit    F5=Options    F8=Retain    F9=Phonetic    Roll
```

028637

```
                          Print Key Output                          Page    1
       5738SS1 VZR1M1 920306                    CITYWB            04/06/01  10:02:55

     Display Device . . . . . :  B5
     User  . . . . . . . . . . :  WARNICK

   REVIEW                      POLICE INFORMATION                04/06/01   A
   PS101S-54                Maintain Incident Information         10:02:48

    Incident ID:                 Segment...: NI NAME INQ
    Type.......:                 Occur.....:
    Name.......: LEE                  ROBERT
   ---------------------------------------------------------------------------
    Name/Incident ID        Address #1     Seg Alias    DOB      Soc Sec  Entered
    LEE, ROBERT, JR.                        PA          11/28/80          12/22/93
     R93L099357)            25 HURLEY STREET            WILKES BARRE   PA 18705
    LEE, ROGER C.                           TP          07/06/70          08/30/93
     R93H229317            29 MAPLE DR                  SWOYERSVILLE   PA
    LEE, SANDRA                             PP                            07/29/91
     R9100010474          102 LEHIGH STREET             WILKES BARRE   PA
    LEE, SHANE                              PA          11/05/79          12/22/93
     R93L099357            25 HURLEY ST                 WB             PA
    LEE, SHANE                              PP          11/05/79          03/11/92
     R92C099246            25 HURLEY ST                 WB             PA
    LEE, SHANE                              PA          11/05/79          12/22/93
     R93L099357            25 HURLEY STREET             WILKES BARRE   PA 18705
    LEE, SHANE                              CP          11/05/79          03/30/98
     R98C279833            25 HURLEY ST                 WB             PA
   ---------------------------------------------------------------------------
   ELP     F3=Exit      F5=Options     F8=Retain      F9=Phonetic    Roll
```

028638

```
                     Print Key Output          ·                        Page    1
    5738SS1 V2R1M1 920306                      CITYWB              04/06/01   10:41:28
  Display Device . . . . . . :  B5
    User  . . . . . . . . . . :  WARNICK

REVIEW                            POLICE INFORMATION              04/06/01     A
PS101S-15                      Maintain Incident Information       10:41:10

  Incident ID: R 96 A289644        Segment...: AC ACTIVITY
  Type.......:                     Occur.....:
  Name.......:
  ----------------------------------------------------------------------------
                           Activity Information
  Location..:       THE BOG PARK              WB Zone/Sector..: 6    6
  Activity..: 14    CRIM MIS      Priority..: 4    Disposition..: 01   OFF REPORT
                 Received  Dispatched   Arrived  Cleared
  Date........: 012896      012896      012896   012896
  Time........: 1631        1631        1636     2058
  Complainant.: UNK                          Call Received: TELE TELEPHONE
  Comp Loc....:        UNK                   WB Phon:            RcdBy: 546
  ............:                              ............:
  Off Assn....: 560   BIGUS                  Primary Unit.: 5
  Off Assn....:                              Backup Units.: 494
  Remarks.....: SUPPL, PROP RPT, 2 NON TRAF CIT.
  Description.: KIDS SPRAYING GRAFFITI ON THE BUILDING IN THE BOG. 1 SUBJ IN
  CUSTODY AT 1636 HRS. SUBJ CITED AND RELEASED TO PARENTS.


      F3=Exit     F5=Options     F8=Retain     F10=Narrative     F24=More Keys
```

028639

```
                      Print Key Output                          Page    1
      5738SS1 V2R1M1 920306                CITYWB              04/06/01  10:14:23

      Display Device . . . . . : B5
      User . . . . . . . . . : WARNICK

REVIEW                          POLICE INFORMATION              04/06/01    A
PS101S-58                   Maintain Incident Information        10:14:17

  Incident ID: R 96 A289644       Segment...: PA ARRESTS
  Type.......:                    Occur.....:
  Name.......: LEE                    ROBERT
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
  Arrestee No: 01                 Arrest Information               JUVENILE
  Name-L,F,MI: LEE                    ROBERT                 SSN..:
  Address1...: 25 HURLEY ST           Address2: W M 15
  City.......: WB                     State...: PA Zip.: 18705     DOB: 112880
  Phone......:                 Ext.:  Drv Lic.:                       State:
  Empl/School:                        Phone...:              Ext.:    Res:
  ArrCode: 14   VANDALISM  Arr Ofr: 494   BOZEK                  Arr#:
  StateID:              FBI#:          Wrnt#:             IssBy:
  Statute: 3304 WB CODE 9    Charge: CRIM MIS, PRO CODE 9
  Arr Dt/Time: 012896 16 31  Arr At: BOG OFF DEWEY ST            Arr Typ: O
  Weapon(s)..:                              MCI:     Status: VAND VANDALISM
  Fingerprint:                                       Disp: CR   CITED/REL
  RACE.......:                              SEX.......:
  OTN #......:             OFFICER....: 494           OFFICER....: 560
  Remarks....:

P     F3=Exit      F5=Options      F8=Retain     F10=Phys Desc    F24=More Keys
```

028640

```
                      Print Key Output                              Page    1
      5738SS1 V2R1M1 920306                  CITYWB          04/06/01  10:41:48

     Display Device  . . . . . :  B5
      User  . . . . . . . . . :  WARNICK

  REVIEW                        POLICE INFORMATION                04/06/01    A
  PS101S-15               Maintain Incident Information            10:41:43

   Incident ID: R 98 E249814       Segment...: AC ACTIVITY
   Type.......:                    Occur.....:
   Name.......:
   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                           Activity Information
   Location..:     25 HURLEY ST                WB Zone/Sector..: 6    6
   Activity..: 14   CRIM MIS      Priority..: 3   Disposition..: 01   OFF REPORT
              Received  Dispatched   Arrived  Cleared
   Date.........: 052498     052498      052498    052498
   Time.........: 0514       0514        0518      0619
   Complainant..: BOB LEE                       Call Received: TELE TELEPHONE
   Comp Loc.....: 25      HURLEY ST             WB Phon: 825 7483 RcdBy: 546
   . . . . . . . . . . . . :                    . . . . . . . . . . . . :
   Off Assn.....: 453    REBO                   Primary Unit.: 6
   Off Assn.....:                               Backup Units.: 579    583
   Remarks......: 2 NON TRAF.
   Description..: DOMESTIC DISPUTE VS BOB LEE JR. OFFENSE FOR HARASSMENT.
   SUBJ TAKEN TO NESBITT.


   P    F3=Exit     F5=Options     F8=Retain     F10=Narrative    F24=More Keys
```

028641

```
                        Print Key Output                           Page    1
     5738SS1 V2R1M1 920306                   CITYWB            04/06/01  10:14:44
   Display Device  . . . . . :  B5
   User  . . . . . . . . . :  WARNICK

REVIEW                     POLICE INFORMATION                  04/06/01    A
PS101S-58            Maintain Incident Information             10:14:39

 Incident ID: R 98 E249814     Segment...: PA ARRESTS
 Type.......:                  Occur.....:
 Name.......: LEE                 ROBERT
----------------------------------------------------------------------------
 Arrestee No: 01              Arrest Information              JUVENILE
 Name-L,F,MI: LEE                ROBERT                  SSN..:
 Address1...: 25 HURLEY ST        Address2: W M 17
 City.......: WB                  State...: PA Zip.: 18702    DOB: 112880
 Phone......:            Ext.:    Drv Lic.:                      State:
 Empl/School:                     Phone...:             Ext.:     Res:
 ArrCode: 14    VANDALISM  Arr Ofr: 453   REBO              Arr#:
 StateID:           FBI#:           Wrnt#:          IssBy:
 Statute: 3304 2709        Charge: CRIM MISCHIEF, HARASSMENT
 Arr Dt/Time: 052498 05 14  Arr At: 25 HURLEY ST             Arr Typ: S
 Weapon(s)..:                         MCI:      Status: VAND VANDALISM
 Fingerprint:                                   Disp: CR   CITED/REL
 RACE.......:                            SEX........:
 OTN #......:            OFFICER....:          OFFICER....:
 Remarks....:
P    F3=Exit     F5=Options     F8=Retain     F10=Phys Desc    F24=More Keys
```

028642

```
                           Print Key Output                            Page    1
      5738SS1 V2R1M1 920306                CITYWB             04/06/01   10:42:08

   Display Device  . . . . . . :  B5
        User . . . . . . . . . . :  WARNICK

REVIEW                          POLICE INFORMATION               04/06/01    A
PS101S-15                    Maintain Incident Information        10:42:03

  Incident ID: R 98 E249815        Segment...: AC ACTIVITY
  Type.......:                     Occur.....:
  Name.......:
  ---------------------------------------------------------------------------
                            Activity Information
  Location..:     25 HURLEY ST                WB Zone/Sector..: 6     6
  Activity..: 1089 HARRASSMNT     Priority..: 3    Disposition..: 01   OFF REPORT
               Received  Dispatched  Arrived  Cleared
  Date.........: 052498      052498     052498   052498
  Time.........: 0514        0514       0518     0720
  Complainant..: BOB LEE                        Call Received: TELE TELEPHONE
  Comp Loc.....: 25      HURLEY ST              WB Phon:          RcdBy: 546
  .............:                                .............:
  Off Assn.....: 453    REBO                    Primary Unit.: 6
  Off Assn.....:                                Backup Units.:
  Remarks......:
  Description..: OFFENSE FOR HARASSMENT, POSS ASSAULT. SUBJ TAKEN TO HOSP.



         F3=Exit     F5=Options     F8=Retain     F10=Narrative     F24=More Keys
```

028643

```
                        Print Key Output                                Page    1
      5738SS1 V2R1M1 920306                    CITYWB                04/06/01  10:15:05

   Display Device . . . . . :  B5
   User . . . . . . . . . . :  WARNICK

REVIEW                          POLICE INFORMATION                    04/06/01    A
PS101S-58                    Maintain Incident Information            10:15:00

  Incident ID: R 98 E249815      Segment...: PA ARRESTS
  Type.......:                   Occur.....:
  Name.......: LEE                    ROBERT
--------------------------------------------------------------------------
  Arrestee No: 01            Arrest Information                    JUVENILE
  Name-L,F,MI: LEE                 ROBERT                 SSN..:
  Address1...: 25 HURLEY ST         Address2: W M 17
  City.......: WB                   State...: PA Zip.: 18702     DOB: 112880
  Phone......:              Ext.:   Drv Lic.:                       State:
  Empl/School:                      Phone...:              Ext.:     Res:
  ArrCode: 24   DIS COND   Arr Ofr: 453   REBO                Arr#:
  StateID:           FBI#:          Wrnt#:            IssBy:
  Statute: 2709            Charge: HARASSMENT
  Arr Dt/Time: 052498 05 14  Arr At: 25 HURLEY ST                Arr Typ: S
  Weapon(s)..:                              MCI:    Status: 2709 HARASSMENT
  Fingerprint:                                      Disp: CR   CITED/REL
  RACE.......:                              SEX........:
  OTN #......:             OFFICER....:              OFFICER....:
  Remarks....:

P    F3=Exit     F5=Options     F8=Retain     F10=Phys Desc    F24=More Keys
```

028644

```
                    Print Key Output                              Page    1
   5738SS1 VZR1M1 9Z0306                  CITYWB          04/06/01  10:42:33

   Display Device  . . . . . :  B5
   User  . . . . . . . . . :  WARNICK

REVIEW                        POLICE INFORMATION            04/06/01    A
PS101S-15                 Maintain Incident Information      10:42:28

 Incident ID: R 93 L099357      Segment...: AC ACTIVITY
 Type.......:                   Occur.....:
 Name.......:
 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                        Activity Information
 Location..:    25 HURLEY ST             WB Zone/Sector..: 6    6
 Activity..: 14   CRIM MIS    Priority..: 3    Disposition..: 01   OFF REPORT
             Received  Dispatched  Arrived  Cleared
 Date........: 120993    120993     120993   120993
 Time........: 1927      1927       1931     2121
 Complainant..: NEIGHBOR                 Call Received: TELE TELEPHONE
 Comp Loc.....:                          WB Phon:           RcdBy: 429
 .............:                          .............:
 Off Assn.....: 335   GRENEVICKI         Primary Unit.: 6
 Off Assn.....:                          Backup Units.: 494
 Remarks......: 1085
 Description..: REPORT OF A DOMESTIC OUTSIDE ABOVE ADDRESS. OFFENSE REPORT MADE
 FOR VANDALISM.


    F3=Exit      F5=Options      F8=Retain      F10=Narrative      F24=More Keys
```

028645

```
                  Print Key Output                               Page    1
  5738SS1 VZR1M1 920306                   CITYWB                04/06/01  10:15:38

  Display Device . . . . . . : B5
  User . . . . . . . . . . : WARNICK

REVIEW                       POLICE INFORMATION                  04/06/01    A
PS101S-58                Maintain Incident Information           10:15:33


  Incident ID: R 93 L099357      Segment...: PA ARRESTS
  Type.......:                   Occur.....:
  Name.......: LEE                ROBERT, JR.
--------------------------------------------------------------------------------
  Arrestee No: 01            Arrest Information                  JUVENILE
  Name-L,F,MI: LEE                ROBERT, JR.               SSN..:
  Address1...: 25 HURLEY STREET      Address2: MINERS MILLS
  City.......: WILKES BARRE          State...: PA Zip.: 18705    DOB: 112880
  Phone......:               Ext.:   Drv Lic.:                      State:
  Empl/School:                       Phone...:              Ext.:     Res:
  ArrCode: 14    VANDALISM   Arr Ofr:                         Arr#:
  StateID:            FBI#:          Wrnt#:            IssBy:
  Statute: 3304              Charge: CRIMINAL MISCHIEF
  Arr Dt/Time: 122193        Arr At: CITATION FILED              Arr Typ:
  Weapon(s)..:                               MCI:    Status: VAND VANDALISM
  Fingerprint:                                       Disp:
  RACE.......: W                           SEX.........: M
  OTN #......:               OFFICER....: CASELLA      OFFICER....:
  Remarks....: DISMISSEDOCCURRED 120993,1900 HRS, 28 HURLEY ST.

    F3=Exit     F5=Options     F8=Retain     F10=Phys Desc    F24=More Keys
```

028646

```
                        Print Key Output                          Page    1
    5738SS1 VZR1M1 920306                CITYWB              04/06/01  10:15:54

    Display Device . . . . . . :  B5
    User . . . . . . . . . . . :  WARNICK


REVIEW                        POLICE INFORMATION              04/06/01    A
PS101S-58                 Maintain Incident Information       10:15:47


  Incident ID: R 93 L099357      Segment...: PA ARRESTS
  Type.......:                   Occur.....:
  Name.......: LEE               ROBERT, JR.
  -----------------------------------------------------------------------------
  Arrestee No: 02            Arrest Information              JUVENILE
  Name-L,F,MI: LEE               ROBERT, JR.            SSN..:
  Address1...: 25 HURLEY STREET  Address2: MINERS MILLS
  City.......: WILKES BARRE      State...: PA Zip.: 18705      DOB: 112880
  Phone......:           Ext.:   Drv Lic.:                        State:
  Empl/School:                   Phone...:           Ext.:       Res:
  ArrCode: 26   ALL OTHER  Arr Ofr:                       Arr#:
  StateID:         FBI#:         Wrnt#:            IssBy:
  Statute: 3503           Charge: CRIMINAL TRESPASS (DEFIANT)
  Arr Dt/Time: 122193     Arr At: CITATION FILED             Arr Typ:
  Weapon(s)..:                           MCI:    Status:
  Fingerprint:                                   Disp:
  RACE.......: W                              SEX.........: M
  OTN #......:            OFFICER....: CASWELLA     OFFICER....:
  Remarks....: DISMISSED
  -----------------------------------------------------------------------------
     F3=Exit     F5=Options     F8=Retain     F10=Phys Desc    F24=More Keys
```

028647

```
                     Print Key Output                          Page    1
  5738SS1 V2R1M1 920306              CITYWB              04/06/01  10:42:58

 Display Device  . . . . . :  B5
    User  . . . . . . . . . :  WARNICK

 REVIEW                      POLICE INFORMATION              04/06/01    A
 PS101S-15                Maintain Incident Information       10:42:53

  Incident ID: R 95 L059517      Segment...: AC ACTIVITY
  Type.......:                   Occur.....:
  Name.......:
 -----------------------------------------------------------------------
                          Activity Information
  Location..:      25 HURLEY ST           WB Zone/Sector..: 6      6
  Activity..: 29    MISSING PR    Priority..: 4    Disposition..: 04    MISS/RUNWY
                    Received  Dispatched  Arrived   Cleared
  Date.........: 120595      120595      120595     120595
  Time.........: 0959        0959        0959       0959
  Complainant..: ROBERT LEE SR                Call Received: WALK WALK IN
  Comp Loc.....:                              Phon: 825 7483 RcdBy: 464
  .............:                              .............:
  Off Assn.....: 240    YATESHIN             Primary Unit.: WAGON
  Off Assn.....:                             Backup Units.:
  Remarks......:
  Description..: ROBERT JOSEPH LEE JR


P      F3=Exit      F5=Options      F8=Retain      F10=Narrative     F24=More Keys
```

```
                        Print Key Output                              Page    1
   5730SS1 V2R1M1 920306                  CITYWB            04/06/01  10:19:53
 Display Device  . . . . . :  B5
   User  . . . . . . . . . :  WARNICK

 REVIEW                     POLICE INFORMATION              04/06/01     A
 PS101S-57             Maintain Incident Information        10:19:17

  Incident ID: R 95 L059517      Segment...: PM MISSING
  Type.......:                   Occur.....:
  Name.......: LEE               ROBERT
 ----------------------------------------------------------------------
                        Missing Person Information          JUVENILE
  Name-L,F,MI: LEE               ROBERT           SSN..: 161624689
  Address1...: 25 HURLEY ST      Address2:
  City.......: WILKES BARRE      State...: PA Zip.:       DOB: 112880
  Phone......: 717 825 7483 Ext.:   Drv Lic.:                 State:
  Last seen..:                   Last seen with..:
  Contact....: ROBERT LEE        Phone...: 717 825 7483   Ext.:
  NIC........: M887711521        ..........:              ..........:
  ..........:                    ..........:
  Remarks....:
  Status.....: RET   RETURNED


       F3=Exit     F5=Options     F8=Retain    F10=Phys Desc    F24=More Keys
```

028649

7A-AL-44453

25

## EMPLOYMENT

HUMANIK CONSTRUCTION
56 Kado Street
Wilkes-Barre, Pennsylvania (PA) 18705
October 4, 1999 - December 24, 1999
March 20, 2000 - May 26, 2000

On April 3, 2001, the following investigation was conducted by Special Agent JAMES J. GLENN:

JOSEPH HUMANIK, Owner, HUMANIK CONSTRUCTION, 56 Kado Street, Wilkes-Barre, PA, 18705, telephone number 570-824-9438, was interviewed concerning his knowledge of DONALD R. FELL. HUMANIK reviewed employment records which reflected that FELL was hired on a full-time basis beginning on October 4, 1999, and extending to December 24, 1999. HUMANIK rehired FELL during the period March 20, 2000 - May 26, 2000. HUMANIK stated that FELL was hired as a construction helper, and his job responsibilities included the removal of roofing material so that a new roof could be applied and general clean up.

HUMANIK stated that in approximately September 1999, he was in need of extra help at his construction business and visited the WILKES-BARRE AREA VOCATIONAL TECHNICAL SCHOOL and was fortunate to hire a student on a part-time basis. The student was JESSE WILLIAMS who was hired to work the hours 12:30 p.m.- 4:30 p.m. In the morning hours, WILLIAMS attended classes at WILKES-BARRE VOCATIONAL TECHNICAL SCHOOL. HUMANIK stated that his business was going so well that he asked WILLIAMS if he knew of anyone who would be interested in full-time employment. A short time later, WILLIAMS arrived at work with his cousin, DONALD FELL. HUMANIK stated that initially, FELL was a good worker who did what he was told. Since FELL did not drive, HUMANIK often picked him up at the TURKEY HILL MINI MARKET near his residence and would drop him off at night at his aunt's house on East Chestnut Street, Wilkes-Barre, PA. HUMANIK stated that he never observed FELL using drugs or alcohol on the job and stated that he came to work straight. In conversations with FELL, he learned that there was a large age difference between FELL's mother and father; the father being older. FELL was raised without a father for most of his life. HUMANIK advised that FELL never had a good word to say about his father and never cared for his mother.

HUMANIK stated that FELL had a bad disposition about everything. He described him as a Dr. Jekyll and Mr. Hyde

028650

7A-AL-44453

26

personality and would definitely describe FELL as a troubled kid. HUMANIK advised that FELL started to argue all the time and would not take instructions.  HUMANIK advised that even when he tried to do nice things for FELL, no thank you was ever received. HUMANIK stated that FELL was very cold hearted individual who had no regard for anything.  On one occasion, one of his aunt's dogs was giving her trouble, and FELL supposedly took the dog in the woods and shot it.  HUMANIK recalled that on the day after the event, FELL joked about killing the dog.

HUMANIK stated that FELL was a slightly built boy, yet came off as being a tough guy.  Since he was not manly enough to confront a person face-to-face, FELL would often say or do things behind HUMANIK's back.  HUMANIK emphasized the fact that there were good times with FELL.  HUMANIK believed that there were times when he thought he had him in control; however, FELL's hot headedness would get in the way.  HUMANIK stated that one of his wife's friends had a son who attended a drinking party with FELL. During the course of the evening, FELL picked up an iron frying pay and smacked the boy in the face.  HUMANIK did not know the outcome of that episode.

In approximately May 2000, FELL started to miss work, a day here and a day there.  Eventually, FELL missed three days in a row and showed up on a Wednesday afternoon demanding his paycheck.  HUMANIK stated that he had FELL's check at his residence and not at the job which angered FELL.  As HUMANIK was working on a roof, he overheard FELL say to his cousin, JESSE WILLIAMS, "I'll break his kneecaps."  HUMANIK stated that FELL was fired because of his not showing up for work.  HUMANIK explained that he attempted to find FELL when he did not show up for work.  HUMANIK called his Aunt JACKIE looking for FELL, and she informed him that FELL was tangled up with a girl who was committed to a mental health facility.  HUMANIK learned that FELL convinced the girlfriend not to return to the facility which angered his aunt, and she requested that he find a different place to live.

HUMANIK stated that he was not surprised to read in the newspapers that FELL killed his mother and others.  Although not physically intimidating, HUMANIK stated that FELL was "not wrapped too tight," i.e. he had some psychological problems. HUMANIK stated that he was relieved that FELL left his employment because he became an unreliable worker, and HUMANIK had to be on him all the time to get work out of FELL.

028651

7A-AL-44453

27

DJ CONCESSIONS
115 Willow Street
Wilkes-Barre, Pennsylvania (PA) 18702
June 1999 - August 1999
June 2000 - August 8, 2000

On April 3, 2001, the following investigation was conducted by Special Agent JAMES J. GLENN:

JESSE WILLIAMS, Date of Birth August 4, 1982, Social Security Account Number 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, was interviewed at his residence, 115 Willow Street, Wilkes-Barre, PA, 18702, telephone number 570-822-7360. WILLIAMS advised that his mother, DONNA WILLIAMS, and DONALD FELL's mother, DEBORAH KOTZER FELL, were sisters. As kids, WILLIAMS and FELL grew up a block away from each other. WILLIAMS resided on West Chestnut Street, and FELL resided on East Chestnut Street, Wilkes-Barre, PA. WILLIAMS stated that FELL is approximately two years his senior; and when they were approximately six and eight years of age, respectively, WILLIAMS would see FELL several times a week in the neighborhood. WILLIAMS stated that in approximately 1996, at about the age of 14, FELL moved in with his Aunt JACKIE at 32 East Chestnut Street, Wilkes-Barre, PA.

Prior to that time, FELL was living with his grandmother; however, upon her death, JACKIE SHARPE became FELL's legal guardian. WILLIAMS explained that FELL's mother was an alcoholic and could not function as a mother. WILLIAMS advised that in approximately 1980, at age eight, WILLIAMS and his mother moved to another part of the city; therefore, his contact with FELL was not as often. A short time later, WILLIAMS' family moved to West Virginia, and did not return to Wilkes-Barre, PA, for another six years. WILLIAMS recalled that when he returned to Wilkes-Barre, FELL was approximately 16 years of age and was attending the WILKES-BARRE AREA VOCATION TECHNICAL SCHOOL. WILLIAMS recalled that as a youth, FELL attended FLOOD ELEMENTARY SCHOOL, ST. MICHAEL'S SCHOOL, WILKES-BARRE AREA VOCATIONAL TECHNICAL SCHOOL, and COUGHLIN HIGH SCHOOL.

WILLIAMS stated that FELL always had a bad temper even as a kid. It was not uncommon for him to use profanity, and he often bragged about his fighting prowess; however, WILLIAMS never observed him physically fighting with anyone. WILLIAMS described FELL as a biker wannabe and advised that FELL emulated the look of a biker, i.e. wore a flannel shirt around his waist, wore his hair long, often wore jeans with holes in them, and biker boots. If FELL did not wear a baseball cap, he would then wear a

028652

7A-AL-44453

28

bandanna.  WILLIAMS stated that FELL had fairly poor hygiene and was slightly built.

WILLIAMS stated that FELL always displayed a cocky attitude and enjoyed partying with his friends.  WILLIAMS stated that he never hung around FELL's friends because they drank alcohol and did drugs which WILLIAMS is totally against. WILLIAMS stated that he is a member of STRAIGHT EDGE, a group that is anti-smoking, anti-drugs, and anti-alcohol.  During the course of the interview, WILLIAMS wore a STRAIGHT EDGE tee shirt. WILLIAMS was aware that FELL was a troubled individual.  It seemed that he was always in and out of trouble at school and in the home.  Through family conversations, WILLIAMS learned that FELL had once broken the wrist of his Aunt JACKIE with whom he resided.  WILLIAMS advised that other than ROBERT LEE, he did not know the names of FELL's friends and did not care to know them.

WILLIAMS recalled that FELL dropped out of school in the tenth grade in the spring of 1997.  In the fall of 1999, WILLIAMS was offered a part-time job while attending WILKES-BARRE AREA VOCATIONAL TECHNICAL SCHOOL by JOSEPH HUMANIK, owner of HUMANIK CONSTRUCTION, Wilkes-Barre, PA.  At that time, HUMANIK needed workers in his construction business, and WILLIAMS recommended FELL to him as a full-time helper.  WILLIAMS advised that FELL ended up quitting the job and once threatened to break HUMANIK's kneecaps if he did not get his paycheck.  During the summer of 1999, WILLIAMS hired FELL to help him with his traveling carnival show.  WILLIAMS stated that he contracted with S&S AMUSEMENTS to run his concessions in the traveling carnival. WILLIAMS advised that he ran the rat game which involves a rat running in a wheel and picking a particular color when it stops. FELL ran the goldfish game which involves throwing a ball toward a fish bowl, and if it lands in the bowl, a contestant wins a fish.  WILLIAMS advised that once FELL was fired from HUMANIK CONSTRUCTION in May 2000, WILLIAMS rehired him for the traveling carnival show.  WILLIAMS stated that FELL was hired in June 2000, and that they traveled to carnivals held in Allentown, PA; Honesdale, PA; Hereford, PA; Bath, PA; Philadelphia, PA; and Cementon, PA.

WILLIAMS stated that FELL brought along his friend, ROBERT LEE, and asked that WILLIAMS introduce him to members of the carnival so that he could obtain employment. WILLIAMS described LEE as a small framed individual with long curly hair and glasses.  WILLIAMS stated that LEE acted like FELL, i.e. displayed a cocky attitude, when in the company in FELL but was nicer when alone.  During the period June 2000-August 8, 2000, WILLIAMS hired LEE to run the quarter throw concession in the

028653

7A-AL-44453

29

traveling carnival. WILLIAMS stated that he may have met LEE through FELL one or two years prior to hiring him but really paid no attention to him. WILLIAMS advised that initially both LEE and FELL were fairly good workers and helped him set up his concessions at each town. Eventually, both became mouthy, and it was difficult getting any work from them. WILLIAMS stated that he towed an equipment trailer behind his camper and used the camper to sleep in. Each evening, WILLIAMS would lock the door of his camper at a certain hour; and if FELL and LEE were not back, they would not sleep in the camper. Since FELL and LEE were prone to drinking alcoholic beverages, practically every evening, LEE ended up buying a tent for them to sleep in. FELL's sister, TERI, and his friend JOHN EAVARONE also accompanied him during the carnival run. WILLIAMS remarked that TERI FELL saved every paycheck that she earned and used the money to pay rent when she returned to the Wilkes-Barre area. LEE and FELL, on the other hand, spent the money as fast as they earned it.

WILLIAMS stated that FELL often spent his free time reading fantasy books that involved dragons and wizards. He also liked to listen to hard rock music. LEE listened to music and engaged in devil worship. Both FELL and LEE sported upside down cross tattoos on their bodies with the number "666". WILLIAMS knew that both were engaged in drug activity and would use anything they could get their hands on to include Ecstasy and crack cocaine. WILLIAMS stated that he did not observe them actually taking the narcotics but overheard their conversations the next day.

WILLIAMS recalled that at one carnival near Monticello, New York, FELL and LEE decided to travel to Woodstock, New York, after work. WILLIAMS advised against them doing so because they had to work the next day, but the two did not listen and ended up assaulting a man and were arrested. WILLIAMS stated that FELL and LEE used fictitious names during their arrest and were also in the company of TERI FELL. Although TERI FELL was not involved in the actual assault, the police detained her until a family member could pick her up. WILLIAMS stated that he had to travel to Woodstock to bail out FELL and LEE. Since he lost so much business, both individuals were terminated. Upon their return to Wilkes-Barre, TERI FELL resided with WILLIAMS during the months of October, November, and part of December 2000. She eventually ran out of money, and WILLIAMS asked her to leave. He did not know where TERI FELL is presently residing but knew that she had been living with friends in Falls, PA. DONALD FELL made plans that same summer to travel to Rutland, Vermont, and to live with his mother. WILLIAMS stated that FELL was fairly excited about the trip and took LEE with him. TERI FELL would call her to get

028654

7A-AL-44453

30

updates on FELL's behavior and learned that FELL was being disruptive and abusive to his mother.

WILLIAMS recalled one episode in the same week when FELL and LEE were fired in New York. Members of the carnival were extremely upset because a cat had been found beaten to death. Although WILLIAMS did not know the true account, rumor had it that FELL and LEE had torn the cat apart. Another account was that they had played hockey with the cat. The cat belonged to one of the girls working at the carnival. WILLIAMS recalled that FELL walked with a fake limp when carnival workers were trying to find out who was responsible for the cat's death. FELL told everyone that his foot got run over by a car which WILLIAMS said was a complete lie.

On another occasion, prior to New York, WILLIAMS and LEE got into an argument, and LEE threatened to burn down WILLIAMS' camper. WILLIAMS was asked if he ever observed FELL in possession of a weapon. WILLIAMS stated that he observed FELL holding a rifle inside of his camper. WILLIAMS stated that he was extremely angry at FELL for carrying the rifle and asked him if he had a license to carry it. FELL said that he did but added that the gun was not loaded. WILLIAMS described the weapon as being black in color but did not know the caliber or type since he does not like guns. WILLIAMS warned FELL to keep the weapon out of sight which he did. No further conversation about the weapon occurred, and WILLIAMS never asked FELL where he got the gun.

Based upon his knowledge of FELL and his observations of LEE, WILLIAMS stated that he was not surprised to know that both were involved in a homicide. FELL once told WILLIAMS that he was going on a killing spree some day and would keep on killing until the cops killed him. WILLIAMS related that after FELL left JACKIE SHARPE's residence, in late spring 2000, he briefly stayed with WILLIAMS' mother, DONNA WILLIAMS, 39 Westminster Street, Wilkes-Barre, PA, telephone number 570-822-7188, for a few weeks. WILLIAMS' mother resides with BARRY SEIWELL.

028655

7A-AL-44453

31

NORTHEAST CONCESSIONS, INCORPORATED
C/O POCONO DOWNS
1280 Highway 315
Wilkes-Barre, PA   18702

On April 12, 2001, the following investigation was conducted by Special Agent JAMES J. GLENN:

MARIO PISANO, Director of Food Services, NORTHEAST CONCESSIONS, INCORPORATED at POCONO DOWNS RACETRACK, 1280 Highway 315, Wilkes-Barre, PA, telephone number 570-825-6681, advised that he has been employed as Director of Food Services at the racetrack for approximately 15 years.  PISANO stated that he was not familiar with the name DONALD FELL and reviewed past records, as far back as 1997, and no folder was found on FELL.  PISANO called his former secretary, KIM, in the Accounting Department, and FELL's name was not found in any computer record.

PISANO stated that he has a good feel for every employee he has ever hired, and FELL's name just does not ring a bell.  PISANO stated that every employee, part-time or full-time, must obtain a license from the PENNSYLVANIA HARNESS RACING COMMISSION.  To that end, CHRISTINE ABRAHAM, PENNSYLVANIA HARNESS RACING COMMISSION, was called, and no record of a license was ever issued to DONALD FELL.

PISANO stated that if FELL were employed by him, it may be under an alias, because no record of a DONALD FELL was found.

028656

7A-AL-44453

32

LAW ENFORCEMENT CHECKS

LUZERNE COUNTY JUVENILE PROBATION CENTER
280 North River Street
Wilkes-Barre, PA   18702

On April 6, 2001, JOHN COOKUS, Juvenile Probation
Officer, provided the juvenile records for ROBERT JOSEPH LEE,
JR., DOB November 28, 1980, SSAN 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, home residence 25
Hurley Street, Wilkes-Barre, PA, and also the records of
DONALD R. FELL, DOB April 30, 1980, SSAN 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, home
address 32 East Chestnut Street, Wilkes-Barre, PA.

LEE's first encounter with the Juvenile Justice System
occurred in an informal adjustment made on August 18, 1992,
wherein, LEE was charged with Criminal Mischief.  The charges
were filed by Detective WAYNE COONEY and JOHN GONOS, WILKES-BARRE
POLICE DEPARTMENT, Wilkes-Barre, PA.  LEE was placed under
temporary supervision and had to cooperate with authorities by
use of a random blood, breath, and urine test and to cooperate
with the CHILDREN'S SERVICE CENTER and CHILDREN AND YOUTH
SERVICES.  LEE's mother was listed as BONNY TONTI, Route 92,
Harding, PA, and his father was listed as ROBERT LEE, 25 Hurley
Street, Wilkes-Barre, PA.

A copy of LEE's juvenile history is attached hereto
this report.

LEE's history with the Juvenile Justice System begins
in August 1992, and extends to his arrest in Arkansas in 2000.
LEE's first appearance before a Court of Common Pleas Judge
occurred on January 31, 1996, with the charges of Aggravated
Assault, Resisting Arrest, Criminal Trespass, Disorderly Conduct,
and Criminal Mischief.  LEE was adjudicated delinquent of
Aggravated Assault, Resisting Arrest, Disorderly Conduct, and
Criminal Mischief.  The charge of Criminal Trespass was amended
to define Trespass which LEE was found delinquent.  By order of
Judge CHESTER MUROSKI, LEE was remanded to the LUZERNE COUNTY
JUVENILE DETENTION CENTER for a full-scale psychological
evaluation with final disposition at a later date.  Additionally,
LEE was to pay all court-related costs immediately.  LEE's
parents were also responsible to contribute towards the cost of
their son's stay in detention in the amount of $20 per day.

LEE's file reflects that on February 14, 1996, LEE was
found to be in need of treatment, rehabilitation, and

028657

7A-AL-44453

33

supervision.  LEE was ordered to abide by rules and regulations in his probation supervision plan.

A psychiatric evaluation conducted by THOMAS L. D'ZMURA, M.D., Child Psychiatrist, CHILDREN'S SERVICE CENTER, dated August 19, 1994, reflected the following, some of which is paraphrased:

"ROBERT is now 13 years, 9 months old.  He has been seen on an emergency basis.  ROBERT was seen before on July 26, 1994.  At that time, ROBERT was in ongoing treatment at CHILDREN'S SERVICE CENTER. ROBERT was extremely angry at his mother, perceiving her favoring of his siblings, particularly his four year old half brother.  A past diagnosis for ROBERT included major depressive disorder; recurrent and severe; conduct disorder; organic brain disorder, and temporal lobe epilepsy were not to be ruled out.

The evaluating psychiatrist learned that ROBERT's younger brother told the mother that ROBERT had taught him how to masturbate and that ROBERT abused him sexually.  ROBERT's mother confronted him about this, and he became extremely angry, violent, and threatening murder of his mother and half brother. He acknowledged all of these things when talked to, but he seemed to feel no remorse about it.  It seemed impossible for him to step back and view his own behavior in an objective fashion.

A foster home was discussed and noted when done before, as a follow-up to his first meeting with ROBERT, ROBERT had been very aggressive towards younger children in that home.  He did not want to be hospitalized.  He has been hospitalized four times prior because of his violence.

RECOMMENDATIONS

ROBERT should enter into the hospital again.  His behavior is indeed dangerous, he seems to have no real appreciation of his potential danger to other people, and he seems to have no motivation to make positive changes in his behavior.  It seems to me that he is indeed dangerous and should be hospitalized for his own safety as well as the safety of other people.

In my review of the chart, it does not show that diagnostic possibility of temporal lobe epilepsy has been ruled out.  This particular diagnostic entity might well be present here in ROBERT's case, and I think it should be searched for diligently."

028658

7A-AL-44453

34

A second and earlier psychiatric evaluation was conducted on ROBERT LEE on March 17, 1993, by Dr. CYRIL M.J. PUHALLA, Board Certified Child and Adolescent Psychiatrist. PUHALLA's evaluation, again paraphrased in some parts, reads as follows:

"ROBERT LEE is a 12 year, 4 month old, white male brought by his Parent/Counselor Program (PCP) counselor and father for an updated, routine psychiatric evaluation.

Since September 1992, ROBERT has been living in PCP foster care with the PARNELLs, adjusting well to this environment. ROBERT has been involved in most therapeutic divisions of CHILDREN'S SERVICE CENTER, including outpatient treatment, partial hospitalization, and home base intensive family services program.

ROBERT's medications include Mellaril, up to 100 mgs per day, and Clonidine to help with severe behavioral disorganization, cognitive disorganization, and aggressiveness.

ROBERT has presented in the past with an ADHD-type of syndrome that has been relatively unresponsive to the usual stimulant medications and Tricyclic anti-depressants.

ROBERT's father has collaborated that ROBERT can get quite destructive, aggressive, and dangerous to himself. His history includes four hospitalizations, three at WILKES-BARRE GENERAL, and the first being at FIRST HOSPITAL when much younger.

ROBERT's father is concerned because ROBERT has always been the child who has been "easily led by others" and most recently has verbalized his obsession with sexual things. ROBERT's father reports that ROBERT says inappropriate sexual remarks to women and, on at least one occasion, brought home an audio tape that had inappropriate sexual music or verbal material on it.

The father describes his son as easily provoked by minor stresses, having excessive amounts of energy, and being explosive. The father denies mental history but through collateral references it became clear that the father, himself, admits to having an explosive temperament at slight provocation but never to the extent that ROBERT or his brother, SHANE, demonstrate.

ROBERT's father is hoping that once ROBERT is out of the PCP, he could be reunited with ROBERT and SHANE. The father

028659

7A-AL-44453

35

plans to get a full-time nanny, at least during the daytime, to watch the boys when he is at long hours of work where he is the manager of a trucking company.

ROBERT's father is concerned about ROBERT's relationship with SHANE. He is very envious and has a jealous-type relationship that goes back to his earliest of childhood. At age three, the father vividly recalled ROBERT knocking SHANE out with a glass ashtray. SHANE was taken to the hospital and evaluated for a broken scull. The father has had problems in the past complying with the treatment recommendations, including his involvement in a Home Base Intensive Family Services Program; however, over the last one or two months, the father has become more compliant to our treatment recommendations.

ROBERT, age 12, presently attends ST. MICHAEL'S SCHOOL and is on Mellaril for aggressiveness and destructiveness. There is a 9 year old boy who has been adopted by the biological mother's new husband with whom he now lives. There is a heavy history of a biological-type of depression on the mother's side of the family with the biological mother being hospitalized at least three times for depression with suicide attempts and needing medication.

MENTAL STATUS EVALUATION

ROBERT's mother stated having a **severe depressive** illness when ROBERT was about four years of age. Even on his Mellaril and Clonidine, one could see that ROBERT barely has control of his aggressive drives and cognition; and if not continuously directed and helped to keep on track, he becomes circumstantial and tangential. More clinical observation needed to see if, in fact, his associations become loose enough to be considered diagnosed and illogical and to have a formal thorough process disorder.

In the past, some of his behaviors, which he admits to, include being aggressive, setting fires, and destroying property, do indicate he can have severe conduct problems that he engages in by himself. He is entering the early stages of puberty. He was open with his examiner in discussing some concerns and issues he has about his burgeoning sexuality and, in some ways, presented inappropriately, again almost hypo-manic in nature. He had very little insight into his problems; and by history, he shows poor social judgement.

FORMULATION

028660

7A-AL-44453

36

ROBERT brought in by KIM MARTINI, PCP, and his biological father.  ROBERT has had an extensive psychiatric history with four hospitalizations because of depression and severe aggressive behaviors.  He has done poorly in all treatment modalities and on all medications.  He is only maintaining tenuous control of his aggressive and newly found sexual drives.  At times, he feels like he is two people and may, in fact, be having disassociative experience.  He may have other psychotic symptoms such as cognitive and behavioral disorganization to the point where he loses touch with reality, and can be collaborated by recent projective testing.  He has a history of being involved in severe conduct problems, including being physically aggressive, destructive to property, and setting fires.  He admits to impulses of wanting to runaway but is free of any present suicidal/homicidal ideation, intent, or plan.  The heavy family history of depression with psychosis on the biological mother's side of the family and perhaps some schizoid tendencies; and dad has known, himself, to have an explosive temper and to somatize his anxiety, depression, and aggressiveness into physiological illnesses, such as a chronic "ulcer" problem.  Dad, in some ways, is too optimistic about the future, believing he will do well with ROBERT and SHANE, two very aggressive boys, who require anti-psychotic medications and a nanny to watch them during the day.  When explained to the dad about this and tried to explain the reality of the situation that even under those circumstances, it still may require another very special kind of person to help understand and control these young men, dad seemed not to hear or understand my concerns or understand the seriousness, depth, and nature of both of his sons' mental health issues.

## DIAGNOSIS

ACCESS I.   296.23-Major Depression Disorder, recurrent, severe, with psychotic features.

            312.00-Conduct Disorder, solitary aggressive-type.

ACCESS II.   None.

ACCESS III.   Presently, physically healthy.
              R/O organic brain disorder caused temporal lobe
              epilepsy (partial complex seizures) or other central
              nervous system disorders.

ACCESS IV.   Moderate.

ACCESS v.   CGAF:  35, highest in last year - 45.

028661

7A-AL-44453

37

## RECOMMENDATIONS

ROBERT needs to remain in his present PCP home and receive ancillary outpatient treatment and remain in his partial hospitalization program. In the future, as he grows, it is likely that he will need an increase of his neuroleptic medication, perhaps a mood stabilizing medication, such as Lithium, Tegretol, or Depallote. There should also be given consideration to moving to a higher potentency neuroleptic, if there is a further deterioration and clear cut psychotic symptoms. At present, he presents almost hypo-manic nature and barely controlling his aggressive and newly found sexual drives. He shows some control in a structured situation and is showing no side affects, such as tardive dyskinesia eps from his neuroleptic medication. Further clarification needs to be gotten about the automaticity of his aggressive outbursts; and if a sleeping and awakening EEG has not been done, perhaps it should be considered to rule out some central nervous system problems, such as partial complex seizures as contributing to his behavioral discontrol, disorganization, and aggressive disruptiveness."

Contained within LEE's juvenile probation record was a day treatment discharge summary from ST. MICHAEL'S SCHOOL. The period covered was from September 19, 1994-August 15, 1995. LEE's date of arrival was May 25, 1993, and date of readmission was September 19, 1994. The referring agency was listed as the LUZERNE COUNTY CHILDREN AND YOUTH SERVICES. The day treatment discharge summary is as follows:

## "MEDICATION

Upon his readmission to ST. MICHAEL'S Day Treatment Program, ROBERT was taking 125 mgs of Mellaril, QHS, Clonidine .1 mgs, B.I.D., and Dexedrine 5 mgs. The Dexedrine was discontinued, Clonidine lowered to .1 mg, B.I.D. (noon and 3:00 p.m.), and Mellaril lowered to 50 mgs.

## EDUCATION STATUS

Upon readmission, ROBERT was placed in the seventh grade curriculum, EL3 Class, with ST. MICHAEL'S program. He was promoted to the seventh grade prior to discharge on June 17, 1994. During the past school year, he was able to demonstrate significant progress academically. He was placed on the honor roll, two out of four quarters, and was nominated one of twenty "students of the year" from all of ST. MICHAEL'S population. It is recommended that ROBERT return to a public school setting.

028662

7A-AL-44453

38

## PRIORITY NEEDS

Need #1 - BOB needs to respect the rules of authority figures and consistently use appropriate language.

Need #2 - BOB needs to identify and verbalize feelings regarding family relationships.

Need #3 - BOB needs to complete all class work.

*All needs addressed during treatment.

## SECONDARY NEEDS

Need #4 - BOB needs to consider part-time employment. *Need met.

Need #5 - BOB needs to verbalize feelings and participate in individual counseling and possible involvement in the Sexual Offenders Program through CHILDREN'S SERVICE CENTER. *Need not met.

Need #6 - BOB needs to focus on and improve independent decision making skills.  #Need partially met.

Need #7 - BOB needs to be made aware of and discuss family feelings/concerns of father's current illegal status. #Need unmet.

## EXTERNAL NEEDS

Need #8 - BOB needs to participate in an evaluation through the Adolescence Sexual Offenders' Program (ASOP) at CHILDREN'S SERVICE CENTER.  *Need unmet.

Need #9 - BOB needs to participate in a drug and alcohol evaluation through CATHOLIC SOCIAL SERVICES (WB Office). *Need unmet.

## SUMMARY OF CHILD'S PROGRESS AND ADJUSTMENT

While in the Day Treatment Program, BOB's attitude and interactions with peers fluctuated.  BOB has been involved in a few altercations with peers, but these have been addressed with BOB in individual counseling sessions and have not repeated themselves.  He seems to take confrontation by staff as persecution and externalizes blame for many of his inappropriate and negative behaviors on others.  He seems to relate to younger

028663

7A-AL-44453

39

peers better than older ones as evidenced by the peer group with which he selects to associate.

Throughout his placement, BOB generally maintained appropriate levels within ST. MICHAEL'S behavioral system. Within the Day Treatment Program, BOB basically follows the rules and staff directions.  At times, he demonstrated verbal outbursts when confronted on rule infractions but, generally, was appropriate.  These outbursts mainly occurred when he felt as if he was being treated unfairly.  Upon discharge, BOB will remain in the care of Mr. ROBERT LEE and reside at 25 Hurley Street, Wilkes-Barre, PA.  He will return to a public school setting and follow all the after care plans established by ST. MICHAEL'S and the referring agency.

AFTER CARE

Records will be forwarded to PLAINS JUNIOR HIGH SCHOOL.

COUGHLIN may be the most positive setting for the 1995-1996 academic year.

BOB will remain involved with LUZERNE COUNTY CHILDREN AND YOUTH SERVICES.

BOB will participate in and complete a drug and alcohol evaluation through CATHOLIC SOCIAL SERVICES.

BOB will participate in the Youth Advocate Program."

A psychological evaluation conducted by LENORA HERRMAN FINN, PhD, Clinical Psychologist, Director of Assessment, CHILDREN'S SERVICE CENTER, Wilkes-Barre, PA, was completed on February 5, 1996, and reads as follows:

"INTERVIEW OF ROBERT LEE, SR.

Mr. LEE is bitter and angry, reports that BOB's biological mother divorced him sometime prior to 1986.  He believes that the ex-wife used the kids against him and brought charges just to get at him.  Both parents may have made allegations of abuse and alcohol and/or involvement.  ROBERT and his older sibling, SHANE, 16, were cared for by the paternal grandmother from 1986-1987, while Mr. LEE was a truck driver. From 1988, until late spring 1995, both boys resided with Mr. LEE, until his ex-wife obtained court custody.  After 15 days with his mother (now remarried) and his four younger half brothers, ROBERT was accused of sexually molesting one of his

028664

7A-AL-44453

40

half siblings and was hospitalized at the WILKES-BARRE GENERAL HOSPITAL, Adolescent Psychiatric Unit. ROBERT has also been hospitalized on four or five prior occasions at WILKES-BARRE GENERAL HOSPITAL or FIRST HOSPITAL WYOMING VALLEY. The father claims that ROBERT has been hit eight separate times by cars. He just rides into the street.

ROBERT has attended at least six schools to include MAIN STREET, DAN FLOOD, NYC, ST. MICHAEL'S, and the Alternative Education Program, Dallas, PA.

Mr. LEE recalls that ROBERT first demonstrated violent behavior at age four-five when he "beat up" his Head Start teacher. Expelled from public school in NYC for overturning desks, ROBERT threatened his principal at DAN FLOOD with some type of letter opener. He has runaway for one week with a female youth and has been accused of shoplifting at least ten times at TURKEY HILL, FAY'S, POCONO DOWNS, PRICE CHOPPER, etc. Most recently, ROBERT assaulted a Plains police officer, claiming that the officer first slapped his face for vulgar language during transport to the police station following a trespassing charge.

RECOMMENDATION

ROBERT's extensive past psychiatric history, explosive anger, alcohol abuse, chaotic family background, and alleged sexual molestation of his younger half sibling, all speak to the need for an updated psychiatric evaluation."

On August 19, 1994, ROBERT LEE, JR. was admitted to the care of Dr. FEUSSREN, Psychiatrist, and was dismissed on September 16, 1994. The results of Dr. FEUSSREN's evaluation are as follows:

"ADMITTING DIAGNOSIS

Major depression with psychotic features.

Hyper-kinetic conduct disorder.

Atypical bi-polar disorder.

DISCHARGE DIAGNOSIS

Major depression with psychotic features.

Hyper-kinetic conduct disorder.

028665

7A-AL-44453

41

Personality disorder traits.

Atypical bi-polar disorder.

REASON FOR REFERRAL

Actions and furtherance of homicidal and suicidal threats.

SUMMATION

ROBERT's four year old half brother, GEORGE, describes oral and anal sex with ROBERT. ROBERT denies the oral and anal sex but admits to showing GEORGE how to masturbate. ROBERT becomes angry and threatens to kill GEORGE, saying that he "blows things up" or exaggerates things. He grabbed GEORGE by the throat and banged his head against the wall. His parents stopped him, he threatened to shoot the mother and stepfather, and to cut their throats at night while they slept. He described how he would cut their throats and how he could blow up their house with pipe bombs. ROBERT admitted to all these things to the emergency worker but still denied oral and anal sex.

ROBERT and his one year older brother SHANE have been shuffled from one parent to the other since 1985, when the parents divorced. The mother has a history of psychiatric treatment and suicidal behavior. There is a six month old sister who died of Sudden Infant Death Syndrome. A nine year old brother currently lives with the mother. ROBERT was placed in a foster home for one and half years. Upon his return to the father in 1991, he was admitted to FIRST HOSPITAL for Active Violence, such as setting two fires in the house, attempting to stab the school principal, and acts of vandalism at the school. He was discharged on 25 mgs of Thorazine, three times a day, which the father said helped to control the behavior. At that time, ROBERT was age nine. At the CHILDREN'S SERVICE CENTER, partial hospital, we tried medications for hyperactivity such as Ritalin and Tofranil which also worked well at that time. His full-scale IQ was 100.

ROBERT was admitted to the WILKES-BARRE GENERAL HOSPITAL, Adolescent Unit, on March 25, 1992, from the CHILDREN'S SERVICE CENTER, partial hospital, where he scratched teachers, damaged furniture, and tried to stab peers with a knife, and had to be physically restrained on the floor to prevent resuming such behavior. He had been drawing pictures of a girl in his class having sex with animals. ROBERT was admitted to WILKES-BARRE GENERAL HOSPITAL, Adolescent Unit, on May 4, 1992, for beating up

028666

7A-AL-44453

42

an eight year old boy very severely who had wanted to ride his bicycle. After being scolded by his father, ROBERT reacted by "trashing his room" and threw everything in the middle of the floor. The father was afraid of the severe temper tantrums ROBERT was having, during which ROBERT lost control of himself and became extremely violent. The father was afraid he might seriously hurt one of the younger children in the neighborhood.

ROBERT was again admitted to the WILKES-BARRE GENERAL HOSPITAL, Adolescent Unit, on September 11, 1992, for fighting with his brother, SHANE, and for hitting younger children in the neighborhood. He had been attending CHILDREN'S SERVICE CENTER, partial hospital, where he was frequently aggressive towards peers and staff. He cried profusely and showed severe mood swings from anger through depression to silliness. He was always calmed down by the 25 mgs of Mellaril. He had to be admitted to the hospital when he refused to take Mellaril, and the severe behavior continued.

After his discharge from his last hospitalization at the WILKES-BARRE GENERAL HOSPITAL on September 28, 1992, he was placed at a PCP foster home, administered by CHILDREN'S SERVICE CENTER. While at the home, he showed improvement on his medications. He did attend the CHILDREN'S SERVICE CENTER for most of the year and was eventually transferred to a public school. He also spent a year of time at ST. MICHAEL'S, Day Program, which also had been attended by his older brother, SHANE, who did very well there. ROBERT did well there as long as he took his Mellaril and Clonidine.

In June 1994, ROBERT and SHANE were suddenly transferred to the custody of the biological mother. The mother had been wanting for the opportunity to take the children for years and finally jumped at the chance; and apparently, there is no objection by the father. At first, the mother questioned whether ROBERT and SHANE should be receiving any medications at all. She stopped SHANE's medicine altogether and, at first, was inconsistent in giving ROBERT his medications. Towards the end of the summer, the mother was requesting whether ROBERT's medications could be raised. She learned violent, impulsive, and dangerous ROBERT could be when unmedicated. The Clonidine increased to three times a day. A home base treatment team of the CHILDREN'S SERVICE CENTER called when the parents had the problem of GEORGE describing sex acts by ROBERT. The team will continue to be involved with the family after ROBERT's discharge."

028667

7A-AL-44453

43

A discharge summary from the YOUTH SERVICES OF BUCKS COUNTY was found in LEE's folder. The report was written by G. YEAGER. The date of the intake was June 3, 1998, and LEE's discharge date was August 1, 1998. According to Probation Officer STEVEN ADAMCHICK, ROBERT LEE was ordered to spend time in the Adventure Challenge Program which ADAMCHICK described as a camp setting to turn delinquent youth around. The following is the counseling observation from G. YEAGER:

"ROBERT has developed a consistent pattern of negative interaction with others since his arrival. Although he possesses potential, he is dramatically lacking in social skills with even simple chores and physical training that require a minimal amount of interaction.

This client's skill deficit has become so problematic that at present he lacks not only the social skills but also sufficient, positive relations with both staff and clients to engage him in the potent benefit available from the group oriented therapeutic design of the **ADVENTURE CHALLENGE PROGRAM**. In fact, at present, it has become routine to isolate ROBERT in order to minimize the risk he presents to himself and others. Initially, this was done to provide opportunities for ROBERT to compose himself and for staff to process his outbursts with the rest of his group. However, unlike other clients, ROBERT's attitude grew worse with each new episode. It has become apparent that this client is not only willing to challenge the limits of our behavioral expectation, he actually enjoys the attention he receives from violating them.

Consequently, it is the consensus opinion of the staff that ROBERT LEE is no longer appropriate as a client at Adventure Challenge. Treatment goals should include helping ROBERT learn to take responsibility for his behavior, learning basic social skills, coming to terms with his life circumstances, and making the best of opportunity."

LEE's record at the JUVENILE DETENTION CENTER is approximately four inches thick. On December 11, 1996, LEE was found to be delinquent and was committed to the Diagnostic Program at ST. MICHAEL'S under the supervision of LUZERNE COUNTY CHILDREN AND YOUTH SERVICES and the Juvenile Probation Department. On February 5, 1997, LEE was discharged from ST. MICHAEL'S Diagnostic Program and was committed to ST. MICHAEL'S Residential Program effective February 5, 1997. On June 12, 1997, LEE was released from ST. MICHAEL'S into his father's custody. He was placed on parole for an indefinite period of time and must participate in ST. MICHAEL'S Weekender Program on

028668

7A-AL-44453

44

July 25, August 22, and September 26, 1997.  He was also ordered to attend A&A/NA meetings, have random blood, breath, and urine tests, plus pay court costs.  On August 20, 1997, an amended court order from June 12, 1997, released LEE into the custody of his father and was placed on probation for an indefinite period of time.

On June 2, 1998, LEE was charged with Possessing Instruments of Crime.  He was remanded to the LUZERNE COUNTY JUVENILE DETENTION CENTER for further planning/placement.  On June 3, 1998, LEE received a hearing and was committed to the Adventure Challenge Treatment Program, ordered to pay restitution, and was placed on probation and supervision.  On August 4, 1998, LEE was released from the Adventure Challenge Treatment Program.  He was remanded to LUZERNE COUNTY JUVENILE DETENTION CENTER for further planning and/or placement.  On August 10, 1998, LEE was committed to the Youth Forestry Camp #3 and was to be returned to the JUVENILE DETENTION CENTER upon completion of the program.  On February 18, 1999, LEE was released from Youth Forestry Camp #3; no probation/supervision.

A complaint filed on October 20, 1994, by NANCY SMITH, Juvenile Officer, reported that ROBERT LEE was charged with three counts of Deviant Sexual Intercourse against his half brother, GEORGE TONTE, JR.  The incident occurred between June 14-August 18, 1994.  LEE shoved his finger into the victim's rectum even after the victim told LEE to stop; then LEE shoved his penis into the victim's rectum.  The complaint was withdrawn on December 30, 1994, as the police requested informal disposition.  It was believed that the victim being five years old would not be cooperative in prosecution.  The charges were resolved by way of informal disposition which were approved on November 18, 1994.

In a complaint filed on December 22, 1993, by Mr. ED CASELLA, 28 Hurley Street, Wilkes-Barre, PA, ROBERT LEE took Christmas lights from CASELLA's home and smashed them in the driveway.  On January 14, 1994, Magistrate MARTIN KANE sentenced ROBERT LEE, JR. to pay $170 for Deviant Trespass, Docket #NT-0001276-93.

According to the LUZERNE COUNTY JUVENILE PROBATION DEPARTMENT records, DONALD FELL, white male, DOB April 30, 1980, SSAN 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, first became known in the Juvenile Justice System through an informal adjustment on December 13, 1993.  On that occasion, FELL was charged with Failure to Pay Fines/Costs (Disorderly Conduct) by District Justice 11-308.  FELL was placed in temporary supervision and was to cooperate with random blood, breath, and urine testing and to cooperate with CHILDREN AND

028669

7A-AL-44453

45

YOUTH SERVICES, CHILDREN'S SERVICE CENTER, and school officials.
A copy of FELL's summary sheet is attached hereto this report.

On December 5, 1995, in an informal adjustment, FELL
was charged with non-payment of fines, filed by Magistrate DIANE
MALAST.  FELL was ordered to pay $50 in restitution and $10.  In
an informal adjustment, dated April 16, 1996, FELL was charged
with TERRORISTIC THREATS.  This was filed by Officer WASLOWSKY of
the Wilkes-Barre Area School District.  FELL's first court
appearance occurred on September 13, 1996, where he was
adjudicated delinquent by Judge GIFFORD CAPPELLINI.  FELL was
charged with terroristic threats and was released into the
custody of his aunt, JACKIE SHARPE; placed on probation for an
indefinite period of time; was to report to his probation officer
twice a week; cooperate with a court advocate program; follow
all recommendations; and pay all court-related costs immediately.
FELL was not to apply for an operator's license without
permission of the court.

On March 28, 1996, FELL entered Mr. KOZERSKI's class at
the WILKES-BARRE AREA VOCATIONAL TECHNICAL SCHOOL and threatened
to stab him.  Mr. KOZERSKI subdued him, and FELL said he was
going to come back and kill him.

FELL's records indicate that he was admitted to ST.
MICHAEL'S, Diagnostic Intake Unit, Purcell Place, by CHILDREN AND
YOUTH SERVICES on April 8, 1994.  At that time, he was 13 years
old.  FELL's initial intake synopsis is as follows:

"DONALD comes from a very dysfunctional family.  He was
residing with his mother, DEBRA, and sister, TERI.  When DONALD
was fined for truancy from school, his mother did not pay the
fine so she was placed in jail.  The children were placed with
the maternal grandmother but stated that she could not care for
DONALD due to the out of control behavior he was displaying.

DEBRA and her mother resided in a side-by-side duplex
which the maternal grandmother, THERESA SHARPE, owns.  When her
daughter was placed in jail, she had the home condemned.  The
home was infested with rats, cockroaches, and mice.  The home was
filthy, had litter, feces, and beer cans scattered in the living
room.  Mrs. SHARPE stated that DEBRA's home was in this shape for
two years.

It should be noted at this time that there were
numerous inconsistencies in DONALD's care.  Mrs. SHARPE called
CHILDREN AND YOUTH weekly about the conditions that the children
were living in, and she expressed personal anger toward CHILDREN

028670

7A-AL-44453

46

AND YOUTH SERVICES of Luzerne County.  However, Mrs. SHARPE refuses to take responsibility for the condition her grandchildren were living under on the property she owns. DONALD has had a long history of mental health interventions, including hospitalizations.  He was hospitalized at FIRST VALLEY in 1992, for out of control behavior and suicidal ideation.  Mrs. SHARPE's home was very neat and clean in its appearance.  Mrs. SHARPE stated that her son-in-law used alcohol regularly.  The children were sexually abused; and on one occasion, he stabbed DEBRA during a drinking binge.

In an interview of DONALD, he claimed both parents beat him.  The last school that he attended was PLAINS JUNIOR HIGH SCHOOL.  He was repeating seventh grade, was chronically truant, and ungovernable when he was there.  His grades were poor mostly due to him not paying attention and refusing to do the work.

SPECIAL CONCERNS

DONALD is a very confused young man.  He has acted as his own caretaker for sometime and is not readily acceptable to help.  His mother's drinking upsets DONALD.  DONALD's grandmother, THERESA SHARPE, made allegations that DONALD was sexually abused by a babysitter and by DEBRA FELL's boyfriend, but DEBRA did nothing about it.

IMPRESSIONS

DONALD needs supervision and structure.  He has to address issues surrounding alcoholism, truancy, and aggression. It is recommended that DONALD remain in a residential care unit until custody can be given to his grandmother or until his mother's situation becomes stable.  DONALD will attend drug and alcohol counseling and individual therapy, as well as attend school on campus.

DONALD's parents were married on November 10, 1979. They separated after ten years of marriage and have two children, DONALD and TERI.  Both parents abused alcohol and raised the children in a dysfunctional home.  FELL abused his wife, and the police were called often to their home for domestic violence.  At age six, DONALD's parents stabbed each other during a fight."

This assessment was written by MARK INNOCENZI, Social Worker.

On April 18, 1994, in the Court of Common Pleas of Luzerne County, Juvenile Division, it was ordered by the

028671

7A-AL-44453

47

Honorable CHESTER B. MUROSKI, Juvenile Court Judge, that LUZERNE COUNTY CHILDREN AND YOUTH SERVICES and the JUVENILE PROBATION OFFICE shall share case management for the cost of placement OF the minor child, DONALD FELL. Temporary legal custody of TERI FELL was transferred to her maternal grandmother, THERESA SHARPE. It was ordered that DONALD FELL be enrolled in ST. MICHAEL'S SCHOOL for a 30 day diagnostic evaluation. The natural mother, DEBRA FELL, shall undergo a comprehensive drug and alcohol induction as arranged by LUZERNE COUNTY CHILDREN AND YOUTH SERVICES. The natural mother and minor children, DONALD and TERI FELL, shall undergo comprehensive medical evaluations as arranged.

On May 28, 1993, DONALD FELL was cited by JAMES MURPHY, Home/School Visitor, Wilkes-Barre Area School District, for Disorderly Conduct. FELL directed obscenities at a classroom teacher and walked on table tops in the cafeteria. He was fined $375 by Magistrate DIANE MALAST on October 30, 1993. An informal adjustment was entered on December 13, 1993, as FELL was already under the supervision of CHILDREN AND YOUTH SERVICES and the JUVENILE PROBATION DEPARTMENT.

FELL's juvenile probation records indicated that on September 16, 1996, an evaluation was written by LISA M. RANDAZZO, Drug/Alcohol Treatment Specialist, Court Advocate Program.

The evaluation was to determine the existence of a drug and/or alcohol issue, and recommendations were completed on DONALD FELL on September 11, 1996. Diagnostic tools utilized in this evaluation consisted of administration of the Western Personality Inventory (WPI) and Alcohol Use Profile (AUP), a psycho-social assessment supplied by DONALD and an Adolescent Problem Severity Index (APSI).

"DONALD reported his first experience with alcohol occurred at age eight. He reported drinking beer from a tap when serving beer to adults in his home. DONALD reported regular use of alcohol began at age 13. DONALD stated that he consumed one 12 pack of beer daily and one-fifth of rum on weekends for one and a half years. DONALD stated that he also drank unknown amounts of alcohol on a binge basis during this time period. DONALD reported achieving an intoxicated state during each drinking episode. DONALD reported his last use of alcohol occurred in April 1994.

DONALD report he began to use marijuana (THC) at age 13 on a daily basis. DONALD reported unknown amounts of THC smoked

028672

7A-AL-44453

48

daily and binged use of THC on weekends. DONALD stated he did not use THC from April 1994 to August 1995, due to an out of home placement. However, DONALD admitted he returned to almost daily and weekend usage of THC since the winter of 1995. DONALD reported he has noticed a significant decrease in the amount of THC currently smoked when compared to the amounts smoked prior to April 1995. DONALD was unable to give specific amounts of THC used. DONALD reported his last use of THC occurred on July 4, 1996.

DONALD reported he experimented two times with LSD at age 13. He denied further use of this drug.

Scores on the WPI correlate with those who are prone to abuse alcohol. Scores on the AUP revealed a profile associated with alcoholism-denied.

From the information collected from DONALD, it is apparent he has a current THC abuse problem. He may also have a current alcohol abuse problem although he has denied use of alcohol since April 1994. It is my opinion DONALD is minimizing his use of alcohol and THC.

It is recommended that DONALD be tested by the JUVENILE PROBATION DEPARTMENT on a random basis and participate in drug/alcohol counseling at the Court Advocate Program with continued monitoring for in-patient drug/alcohol treatment."

In a letter, dated September 9, 1996, LISA RANDAZZO informed ROBERT ROMAN, Juvenile Probation Supervisor, that DONALD FELL did not attend appointments at the Court Advocate Program on August 21, August 22, September 3, and September 5, 1996. As a result, on September 10, 1996, FELL was lodged in the JUVENILE DETENTION CENTER for Failure to Cooperate. On September 12, 1996, FELL was released on probation.

In a Court of Common Pleas Court Order, dated December 11, 2000, the JUVENILE PROBATION DEPARTMENT's recommendation for DONALD FELL was commitment into the YOUTH SERVICES AGENCY OF PENNSYLVANIA at Camp Adams. This was recommended because continuation in his residence would be contrary to the welfare of the child and said placement was necessary because reasonable efforts were made prior to the placement to prevent or eliminate the need for removal of this child from his home. Currently, it was hereby ordered that the case of DONALD FELL be closed, as he was detained in the State of Vermont on three counts of murder. Failure to pay fines and costs levied by a District Justice in the amount of $228.50 filed

028673

7A-AL-44453

49

on April 20, 1999, by Martin Kane was also nol-prossed resulting from FELL's arrest in Vermont.

On April 6, 2001, ROBERT CHARLES NILON, Juvenile Probation Officer, 280 North River Street, Wilkes-Barre, PA, 18702, was interviewed regarding his knowledge and dealings with DONALD R. FELL. NILON advised that he has been a Juvenile Probation Officer for 29 years and had DONALD FELL under his supervision for approximately a four month period in approximately 1994. NILON stated that FELL was respectful to him and was quiet in his presence. He recalled that FELL never ran the streets but was always at home. NILON stated that FELL could never give him a reason why he did not show up for school, but FELL just did not want to leave the house. During the period that NILON was supervising FELL, he was residing with his mother on East Chestnut Street, Wilkes-Barre, PA. At that time, NILON never recalled FELL to be using drugs or possessing any weapons. He was approximately 14 years of age during his supervision. FELL, at that time, was classified as a school refusal; and after a short period of supervision, the school basically handled FELL's attendance problem. During the short time that NILON supervised FELL, he noticed minimal progress with FELL's truancy. NILON stated that several informal adjustments occurred with FELL, but he never appeared before a Juvenile Judge during his tenure. NILON recalled that the Juvenile Justice System got involved with FELL when he was petitioned for non-payment of fines. NILON recalled FELL as being a short and skinny boy but never observed any outward violence on FELL's part.

NILON recalled ROBERT JOSEPH LEE and believed that he supervised him during a two month period when LEE was at ST. MICHAEL'S SCHOOL. NILON recalled that LEE was somewhat on the quiet side and was cooperative with him. His recollection was that LEE was referred for supervision as a result of him fighting with his brother. NILON seemed to recall that LEE's father brought him in to the JUVENILE DETENTION CENTER for NILON to meet with him.

On April 6, 2001, MATTHEW SKREPANEK, Juvenile Probation Officer, was interviewed regarding his supervision of ROBERT JOSEPH LEE and DONALD R. FELL. SKREPANEK advised that he has been a probation officer for approximately five years and took over supervision of ROBERT LEE from FRANK ANDRUKEWICZ who retired as a probation officer. SKREPANEK recalled that LEE was approximately 16 years of age when he first met him at the JUVENILE DETENTION CENTER. At that time, LEE was described as a rolly-polly boy who dropped out of school and who spent a great deal of time in residential facilities, as directed by the

7A-AL-44453

50

Juvenile Justice Court.  SKREPANEK stated that he always interviewed LEE at the detention center and that LEE's father always brought him in.  SKREPANEK recalled he met with LEE every Thursday afternoon and that on a few occasions, LEE's urine was hot for the use of marijuana.  Since the detention center has a zero tolerance, LEE would have been housed in the JUVENILE DETENTION CENTER.  SKREPANEK recalled that LEE was a frail kid who was obviously disturbed and angry.  He never smiled, spoke in a low monotone, was never disrespectful to him, but at the same time, never expressed any pleasantries.  LEE was never social among his peers and appeared destined for adult prison based on his attitude.  SKREPANEK recalled that LEE had been referred to the CHILDREN'S SERVICE CENTER and CHILDREN AND YOUTH SERVICES for a myriad of problems.  SKREPANEK did not recall if LEE was supervised by any other probation officer after being supervised by SKREPANEK.

SKREPANEK advised that he also supervised DONALD R. FELL from April 1997, to August 1997.  SKREPANEK described FELL as a small framed teenager who resided with his aunt on East Chestnut Street, Wilkes-Barre, PA.  Since the JUVENILE PROBATION DEPARTMENT was not school based in 1997, he would have met FELL at the JUVENILE DETENTION CENTER.  SKREPANEK recalled that FELL was more personable than ROBERT LEE and appeared to have more going on (intelligence) than LEE but did not like going to school.  SKREPANEK stated that FELL respected his position as a probation officer and did what he needed to do while under supervision.  FELL was a vocational/technical student who quit school in the tenth grade.  Among his hobbies were attending rock concerts and listening to music.  SKREPANEK's recollection of FELL was that he failed very few drug tests and worked part-time in a traveling carnival show.

028675

Book _____ 146 _____

NO. _____ 24025 _____

Name ___ FELL, DONALD _____ DOB ___ 4-30-80 _____ Age 13 ____

Social Security # __ 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 ____

Address ___ 30 E. Chestnut St. _____

___ Wilkes Barre, Pa. 18702 _____

Mother ___ Debbie Fell _____     Father ___ Donald Fell - Unknown _____

Stepfather _____

Stepmother _____

INFORMAL ADJUSTMENT 12/13/93:  Charged with Failure to Pay Fine/Cost (Disorderly Conduct) by District Justice 11-3-08.  Temporary supervision; cooperate with random blood, breath and urine testing; cooperate with Children & Youth, Children's Service Center and school officials.

INFORMAL ADJUSTMENT - 12/5/95 - Charged with non payment of fines.  Filed by Magistrate Diane Malast.  Pay $50.00 restitution & $10.00.

INFORMAL ADJUSTMENT 4/16/96 - CHarged with terroristic threats.  Filed by Officer Waslasky of the Wilkes-Barre School District.  Continue under previous disposition.

(NOTE: DETENTION HEARING EVOLVED INTO AN ADJUDICATION HEARING)
HEARING: SEPTEMBER 13, 1996 - 1st App.
Petition No. 96-503: Terroristic Threats (M-1).  ADJUDICATED DELINQUENT AS CHARGED.
JUDGE CAPPELLINI: It is the Order of the Court that Donald Fell be released into the custody of his aunt, Ms. Jackie Sharpe; he is placed on probation for an indefinite period of time; report to his Probation Officer twice a week; cooperate with the Cou Advocate Program and follow all recommendations; and pay all court related costs immediately. Donald is not to apply for an operator's license without permission of Court.
Melissa Berlot, Esq., A.D.A.
Virginia Murtha-Cowley, Esq., A.P.D.
    For the Juvenile                    /s/ Cappellini, J.

028676

7A-AL-44453

51

WILKES-BARRE POLICE DEPARTMENT (WBPD)
15 North Washington Street
Wilkes-Barre, PA  18701

On April 10, 2001, the following investigation was conducted by Special Agent JAMES J. GLENN:

Lieutenant DALE RINKER, Detective Bureau, WBPD, 15 North Washington Street, Wilkes-Barre, PA, telephone number 570-208-4225, reviewed criminal history records relative to ROBERT LEE, JR. and DONALD FELL.  A copy of the police records are attached hereto this report and reflect the following:

**DONALD FELL**

On December 2, 1992, DONALD FELL, DOB April 30, 1980, 30 East Chestnut Street, Wilkes-Barre, PA, was suspected of throwing rocks at the window of MICHAEL DENNIS.  No disposition found, and no hard copy of the report was located.

On May 21, 1993, DEBRA FELL, 30 East Chestnut Street, Wilkes-Barre, PA, reported the theft of a Dyno 28 inch red bicycle, owned by DONALD FELL, that was taken in the vicinity of 42 Butler Street, Wilkes-Barre, PA.  Disposition:  Bike theft report initiated.

On August 1, 1993, a Missing Person's Report was filed by DEBRA FELL, 30 East Chestnut Street, Wilkes-Barre, PA.  She advised the police that 13 year old DONALD FELL, same address, has not been home since Thursday.  Disposition:  Returned home.

On March 21, 1997, DONALD FELL, 32 East Chestnut Street, Wilkes-Barre, PA, was cited for Disorderly Conduct. Disposition:  FELL cited and released.

On May 24, 1997, DONALD FELL, 32 East Chestnut Street, Wilkes-Barre, PA, was listed as a complainant and complained that he was pushed into a car; treated at GENERAL HOSPITAL.  FELL was cited for Harassment and released.

On February 3, 1998, DONALD FELL was issued a traffic violation at Penn Street, Wilkes-Barre, Pennsylvania. Disposition:  traffic citation issued.

On February 18, 1998, DONALD FELL, 32 East Chestnut Street, Wilkes-Barre, PA, was charged with Harassment, resulting from the theft of cigarettes from the TURKEY HILL MINI MART, 1056

7A-AL-44453

52

George Avenue, Wilkes-Barre, PA.   Disposition:   Cited, then released.

On July 22, 1998, District Justice MARTIN KANE found FELL guilty of the above offense.

On September 6, 1999, DONALD FELL, 32 East Chestnut Street, Wilkes-Barre, PA, was arrested by the WBPD per dispatch to 112 Regent Street, Wilkes-Barre, PA, for a report of a person on the porch of that residence and that the resident wanted the person removed.   FELL, who matched the description, was on the front porch.   FELL was patted down for weapons and was found to be in possession of marijuana and drug paraphernalia.   A copy of this arrest report is attached hereto this report.   Disposition: FELL was cited and released.

On September 13, 1999, DONALD FELL, 39 Westminster Street, Wilkes-Barre, PA, was arrested for Disorderly Conduct. FELL was observed at 740 North Main Street, Wilkes-Barre, PA, attempting to gain entry into a motor vehicle that did not belong to him.   Disposition:   FELL was cited and released.   A copy of this report is attached.

On August 30, 2000, DONALD FELL, 438 East Main Street, Wilkes-Barre, PA, was cited for Driving Without a License; Failure to Make Payment; no hard copy found.

Lieutenant RINKER advised that hard copies of FELL's criminal citations were either purged or could not be located. RINKER did locate computer printouts of the aforementioned incidents and provided same to be included in this report.

**ROBERT JOSEPH LEE, JR.**

On December 9, 1993, ROBERT LEE, JR., DOB November 28, 1980, was cited for Criminal Mischief after a report of a domestic dispute was occurring outside of 25 Hurley Street, Wilkes-Barre, PA.   An Offense Report was made for Criminal Mischief and Vandalism.   Disposition:   Dismissed.

On December 21, 1993, ROBERT LEE, JR., 25 Hurley Street, Wilkes-Barre, PA, was charged with Defiant Criminal Trespass.   Disposition:   Dismissed.

On December 5, 1995, a Missing Person's Report was filed for ROBERT LEE, JR., 25 Hurley Street, Wilkes-Barre, PA. Disposition:   Returned.

028678

7A-AL-44453

53

On December 8, 1996, ROBERT LEE, JR., 25 Hurley Street, Wilkes-Barre, PA, was charged with Vandalism and Criminal Mischief as a result of kids spraying graffiti on a building in the BOG Park, Wilkes-Barre, PA. Disposition: LEE cited and released to parent.

On May 24, 1998, ROBERT LEE, JR., 25 Hurley Street, Wilkes-Barre, PA, was cited for the offense of Harassment and Implausible Assault regarding a domestic dispute. The subject was taken to NESBITT HOSPITAL. Disposition: LEE cited and released.

The following investigation was conducted by Special Agent JAMES J. GLENN on April 10, 2001:

Detective WAYNE COONEY, Juvenile Division, WBPD, 15 North Washington Street, Wilkes-Barre, PA, advised that he recalled both DONALD FELL and ROBERT LEE, JR. COONEY stated that he has been employed by the WBPD for nearly 30 years and checked his records but found nothing relative to juvenile petitions or arrests filed on behalf of the Juvenile Division of the WBPD. COONEY recalled that FELL resided on East Chestnut Street, Wilkes-Barre, PA, and was involved in the local drug scene. FELL was into drinking alcohol and listening to satanic music. FELL was known to hang out with BOBBY LEE from Hurley Street, Wilkes-Barre, PA. COONEY stated that LEE resided directly across the street from Wilkes-Barre Patrolman ED CASELLA.

COONEY stated that FELL and LEE had "tombstones" in their eyes, i.e. no future. COONEY stated that FELL was always getting himself cited, but COONEY recalled that the incidents were never of a violent nature. COONEY described FELL and LEE as psychopaths and stated that he was not surprised to read in the papers that they were involved in murder.

COONEY specifically recalled the wardrobe warn by LEE. It consisted of a black tee shirt, black pants, black boots, and silver chains. The associates of LEE dressed in a similar fashion, and every cop in the city knew LEE and his brother because they looked like freaks and could be spotted 200 yards away.

COONEY stated that his brother and he have a joint interest in a deli located in the Miners Mills Section of the City of Wilkes-Barre. Approximately two years ago, the front glass plate window of the deli was smashed, and the only things removed were two six packs of beer. COONEY stated that the surveillance tape depicted a young man dressed in all black

028679

7A-AL-44453

54

committing the crime.  COONEY was convinced that LEE was
responsible but stated that he could not prove it.  LEE and his
brother, SHANE, were questioned at Police Headquarters and denied
any involvement in the crime.  COONEY stated that LEE had
emotional and mental health issues but was smarted enough or drew
the line far enough to become involved with the police.

028680



028681

*18F*

LCPR-8

| ZONE 1 | ☒ ADULT ☐ JUVENILE | ARREST REPORT | WILKES-BARRE POLICE DEPARTMENT | 2. IRC 9909004831 |

3. CHARGE: Possession Sm. Amt. Marijuana
DATE CHARGED 9/16/99    4. OFFENSE DATE 9/6/99
5. ARRESTING OFFICER'S NAME: J. R. Sheridan    BADGE NUMBER 581

6. OTHER CHARGES: Possession Drug Paraphernalia
7. LOCATION OF ARREST: 112 Regent St Wilkes-Barre
ONT — OFFENSE TRACKING NUMBER

8. WHEN ARRESTED 09/06/99  1934 HOURS    9. TYPE OF ARREST: ☒ ON VIEW ☐ WARRANT ☐ SUSPICION

10. NAME OF ACCUSED: Fell Aquala
11. AGE 19    12. RACE W    13. SEX M    14. ADDRESS 32 E. Chestnut St W-B

15. ALIAS/NICKNAME
16. TELEPHONE 822-7188    17. OCCUPATION Laborer

18. PLACE OF EMPLOYMENT/SCHOOL: Pomerante Staffing
19. DATE OF BIRTH 04/30/80    20. PLACE OF BIRTH Wilkes-Barre, PA

21. HEIGHT 508    22. WEIGHT 130    23. EYES Haz    24. HAIR Bro    25. BLOOD TYPE    26. MARKS, SCARS, TATTOO: L Upper Arm, R Lower Arm    27. COMPLEXION Fair

28. SSN 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    29. FBI NO.    30. SID NO.    31. PDID NO.    32. MILITARY NO.

33. VETERANS CLAIM NO.    34. OPERATOR PERMIT NO.    35. FINGERPRINT CLASSIFICATION    36. PHOTO TAKEN ☒ YES ☐ NO    NUMBER 9909004831    TYPE WEAPON(S)

37. FINGERPRINT CARD TO ☒ FBI ☒ PSP    38. INDICATION OF DRUGS ☒ YES ☐ NO    ALCOHOL: ☐ YES ☒ NO    ☐ YES    39. DEFENDANT ARMED ☐ YES ☒ NO
41. PERSONAL ARTICLES RECEIPT GIVEN ☐ YES ☐ NO    NUMBER

40. ARTICLES CONFISCATED FROM DEFENDANT: 1 White Metal Necklace

| 42. DEFENDANT VEHICLE IDENTIFICATION | YEAR | MAKE | MODEL | LICENSE NO./ST | DEFENDANT FAMILY CODE FOR BLOCKS 43 – 46 |

F – FATHER  W – WIFE  B – BROTHER  S – SON
M – MOTHER  S – SISTER  D – DAUGHTER

| 43 | NAME | ADDRESS | PHONE (RESIDENCE/OFFICE) |
| Aunt | Donna Williams | 32 E. Chestnut St W-B | 822-7188 |
| 44. | | | |
| 45. | | | |
| 46 | | | |

47. NAME/ALIAS/NICKNAME OF ACCOMPLICE    48. ADDRESS

49. NAME/ALIAS/NICKNAME OF ACCOMPLICE    50. ADDRESS

51. ATTORNEY NAME    TELEPHONE NO.    52. RIGHTS READ ☐ YES ☐ NO    BY WHOM

53. STATUS OF DEFENDANT ☒ DETAINED AT WBPD #9    ☐ RELEASED    ☐ PERSONAL BOND
☐ MONEY BOND – AMOUNT $ ____    ☐ PROPERTY BOND    ☐ TURNED OVER TO

ITEM NO.    54. CONTINUATION OF ABOVE ITEMS (INDICATE ADDITIONAL INFORMATION.)

NARRATIVE: Accused was arrested for Act 64 and transported to WBPD for processing.

55. ADJUDICATION DATE AND TIME: __/__/__ MO. DA. YR. HOURS

| 56. CHARGE | 56A. OTN | 57. MAGISTRATE/DISTRICT COURT | 58. DATE | 59. FINAL DISPOSITION |
| Act 64 | | Collins / 11-1-01 | | |
| | | | | |
| | | | | |
| | | | | |

60. COMM. CENTER WANT/WARRANT INQUIRY ☐ YES ☐ NO ☐ CANCEL    __/__/__ MO. DA. YR. HOURS    WARRANT NO.

61. DISTRIBUTION ☐ DETECTIVE ☐ JUVENILE ☐ NARCOTICS ☐ OTHER

028682

# POLICE CRIMINAL COMPLAINT

**COMMONWEALTH OF PENNSYLVANIA**

COUNTY OF: LUZERNE

Magisterial District Number: 11-1-01

District Justice Name: Hon. Michael Collins

Address: 106 S. Main St.
Wilkes-Barre, Pa

Telephone: (570) 825-7373

Docket No:

Date Filed:

OTN:

**COMMONWEALTH OF PENNSYLVANIA**

**VS.**

DEFENDANT:

NAME and ADDRESS

FELL, Donald
32 E. Chestnut St.
Wilkes-Barre, Pa 18705

| Defendant's Race/Ethnicity | Defendant's Sex | Defendant's D.O.B. | Defendant's Social Security Number | Defendant's SID |
|---|---|---|---|---|
| ☒ White ☐ Asian ☐ Black ☐ Hispanic ☐ Native American ☐ Unknown | ☐ Female ☒ Male | 04-30-80 | 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 | |

| Defendant's A.K.A. | Defendant's Vehicle Identification Plate Number | State | Registration Sticker (MM/YY) | Defendant's Driver's License Number State |
|---|---|---|---|---|
| | | | | PA \| 26005125 |

| Complaint/Incident Number | Complaint/ Incident Number if other Participants | UCR/NIBRS Code |
|---|---|---|
| 9909004831 | | |

**District Attorney's Office** ☐ Approved ☐ Disapproved because:

(The district attorney may require that the complaint, arrest warrant affidavit, or both be approved by the attorney for the Commonwealth prior to filing. Pa.R.Cr.P. 107)

_____

(Name of Attorney for Commonwealth - Please Print or Type)

(Signature of Attorney for Commonwealth(

(Date)

I, Ptlm. J.R. Sheridan      581

(Name of Affiant - Please Print or Type)

(Officer Badge Number I.D.)

of Wilkes-Barre City Police Dept.

(Identify Department or Agency Represented and Political Subdivision)

(Police Agency ORI Number)

(Originating Agency Case Number (OCA))

COPY

do hereby state: (check appropriate box)

1. ☒ I accuse the above named defendant, who lives at the address set forth above
   ☐ I accuse the defendant whose name is unknown to me but who is described as _____

   ☐ I accuse the defendant whose name and popular designation or nickname is unknown to me and whom I have therefore designated as John Doe

   with violating the penal laws of the Commonwealth of Pennsylvania at __112 Regent St. Wilkes-Barre__

   (Place - Political Subdivision)

   in ____LUZERNE____ County on or about __09-06-99 at 1920 hours.__

   Participants were: (if there were participants, place their names here, repeating the name of above defendant)
   FELL, Donald

2. The acts committed by the accused were:
   (Set forth a summary of the facts sufficient to advise the defendant of the nature of the offense charged. A citation to the statute allegedly violated, without more, is not sufficient. In a summary case, you must cite the specific section and subsection of the statute or ordinance allegedly violated.)

   THE CONTROLLED SUBSTANCE, DRUG, DEVICE, AND COSMETIC ACT SECTION 13(a)(31)
   Defendant did possess a small amount of marihuana only for personal use.

   THE CONTROLLED SUBSTANCE, DRUG, DEVICE, AND COSMETIC ACT SECTION 13(a)(32)
   Defendant did possess with the intent to use drug paraphernalia for the purpose of injesting inhaling, or otherwise introducing into the human body a controlled substance.

AOPC 412-(6/96)

028683

(Continuation of No. 2)

| Defendant's Name: | |
|---|---|
| FELL, Donald | |
| Docket Number: | |

**POLICE
CRIMINAL COMPLAINT**

COPY

all of which were against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the Act of Assembly, or in violation of

1. __13__     __(a)(31)__   of the __Act 64__    __1__
     (Section)       (Subsection)        (PA Statute)      (counts)

2. __13__     __(a)(32)__   of the __Act 64__    __2__
     (Section)       (Subsection)        (PA Statute)      (counts)

3. _____     _____   of the _____    _____
     (Section)       (Subsection)        (PA Statute)      (counts)

4. _____     _____   of the _____    _____
     (Section)       (Subsection)        (PA Statute)      (counts)

3.   I ask that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I have made. **(In order for a warrant of arrest to issue, the attached affidavit of probable cause must be completed and sworn to before the issuing authority.)**

4.   I verify that the facts set forth in this complaint are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 PA. C.S. § 4904) relating to unsworn falsification to authorities.

_____9-6_____ , 19 __99__     _____ 581
                                                        (Signature of Affiant)

AND NOW, on this date _____ , 19 ___ , I certify that the complaint has been properly completed and verified. An affidavit of probable cause must be completed in order for a warrant to issue.

_____        _____     **SEAL**
       (Magisterial District)                             (Issuing Authority)

AOPC 412-(6/96)                       2-3

028684

| Defendant's Name: FELL, Donald |  | **POLICE CRIMINAL COMPLAINT** |
| Docket Number: | | |

## AFFIDAVIT of PROBABLE CAUSE

On 06 September 1999 at approximately 1920 hours I was dispatched and responded to 112 Regent St. Wilkes-Barre, Pa for a report of a person on the porch of that residence who the resident wanted removed.

I was informed through dispatch that the subject was possibly wanted through Jenkins T Police Department. Dispatch informed me that the subject would be a white male with no shi and a pony tail.

Upon arrival I observed a white male fitting the description on the front porch of the residence. I approached the subject who identified himself as Donald FELL (defendant). Defendant was handcuffed for his safety and that of this officer, until I could verify the result of the warrant check. Defendant was informed of the reason for his being handcuffed

Upon doing a pat down for weapons this officer felt and immediately recognized three(3 lighters in the defendant's front right pocket. This officer then moved to the defendant's front left pocket and felt and immediately recognized what I knew to be a baggie containing marijuana. The defendant was then informed that he was under arrest. This officer then felt and recognized what was known to me to be rolling papers commonly used to roll marijuana cigarettes. Also found in the defendants front left pocket was a small round wooden item used to hold and smoke marijuana cigarettes. Defendant was transported to Wilkes-Barre police headquarters for processing.

COPY

I, _Ptlm. J.R. Sheridan    581_____ , **BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.**

_Ptlm_____
(Signature of Affiant)

Sworn to me and subscribed before me this _____ day of_____ , 19 _____ .

_____ Date _____ , District Justice

My commission expires first Monday of January, _____.        **SEAL**

028685

## OFFENSE REPORT

| | |
|---|---|
| **1. NATURE OF OFFENSE** | POSSESSION OF Sm. Amt. Marijuana |
| **2. ZONE** | 1 |
| **3. IRC NO.** | 9909004831 |

**4. BRIEFLY DESCRIBE CRIME**

**5. PLACE OF OCCURRENCE (EXACT STREET ADDRESS, IF BUSINESS GIVE FULL NAME)**
112 Regent St. Wilkes-Barre Pa

**6. TYPE OF PREMISE** Residence.

| 7. WHEN OCCURRED | HOURS | DAY | 8. WHEN DISCOVERED | HOURS | 9. WHEN REPORTED | HOURS | 10. WHEN ARRIVED (HOURS) |
|---|---|---|---|---|---|---|---|
| 9-6-99 | 1920 | Mon | 9-6-99 | 1920 | 9-6-99 | 1920 | 1934 |

**VICTIM**

11. JUVENILE ☐

**12. VICTIM'S NAME** Comm. of Pa.

| 13. DATE OF BIRTH | 14. AGE | 15. RACE | 16. SEX |
|---|---|---|---|

**17. VICTIM'S ADDRESS**

**18. PHONE NUMBER**

**19. OCCUPATION**

**20. PLACE OF EMPLOYMENT/SCHOOL**

**21. INJURY**

**22. HOSPITALIZED/TREATED AT**

**23. INDICATION OF:** ☐ ALCOHOL ☐ DRUGS

**COMPL**

23. SAME AS VICTIM ☐

**24. NAME OF COMPLAINANT** Harry Davis

| 25. DATE OF BIRTH | 26. AGE | 27. RACE | 28. SEX |
|---|---|---|---|
| 5-2-71 | 29 | W | M |

**29. COMPLAINANT'S ADDRESS** 112 Regent St Wilkes-Barre

**30. PHONE NUMBER** 821-7064

**31. EMPLOYED BY**

**32. INDICATION OF:** ☐ ALCOHOL ☐ DRUGS

**33. CODE FOR BLOCK 34**
W - WITNESS   P - PARENT   G - GUARDIAN   O - OTHER

**OTHER**

| 34. CODE | 35. NAME | | 37. JUVENILE ☐ YES ☐ NO | 38. AGE | 39. RACE | 40. SEX |
|---|---|---|---|---|---|---|

**41. ADDRESS**

**42. PHONE NUMBER**

**43. EMPLOYED BY**

**44. INDICATION OF:** ☐ ALCOHOL ☐ DRUGS

**SUSPECT**

45. JUVENILE ☐

**46. SUSPECT'S NAME** Donald Fell

| 47. DATE OF BIRTH | 48. AGE | 49. RACE | 50. SEX |
|---|---|---|---|
| 04-30-40 | | W | M |

**51. SUSPECT'S ADDRESS** 32 E. Chestnut St W-B

**52. PHONE NUMBER** 822-7188

**53. EMPLOYED BY** Pomerante Staffing

**54. RELATIONSHIP TO VICTIM** None

**55. ALIAS** N/A

**56. KNOWN ASSOCIATES AND/OR HAUNTS** N/A

**58. CLOTHING DESCRIPTION** Black Pants (jeans) No Shirt Blk Boots

| 59. HEIGHT | 60. WEIGHT | 61. EYES | 62. HAIR | 63. COMP |
|---|---|---|---|---|
| 508 | 130 | Haz | Bro | Fair |

**64. IDENTIFYING CHARACTERISTICS (SCARS, MARKS, TATOOS, ETC.)** Tattoo L Upper Arm 666 Rt Upper Arm - A

**65. WARRANT ON FILE** ☐ YES ☒ NO    **66. ARRESTED** ☒ YES ☐ NO

**67. IF JUVENILE INVOLVED,** PARENT OR GUARDIAN NOTIFIED: ☐ YES ☐ NO   BY WHOM:   DATE:   TIME:

**VEH**

**68. DESCRIBE VEHICLE IF INVOLVED IN CRIME:**

**69. VALUE OF STOLEN PROPERTY:**

**NARRATIVE**

**70. NARRATIVE**
On 6-Sept-1999 at approx 1920 hours I was dispatched and responded to 112 Regent St W-B for a report that a w/m black jeans no shirt and a pony tail by the name of Donald Fell was on the porch of that residence. Complainant stated to dispatch that the subject was wanted by Jenkins Twp PD. Complainant also told dispatch that he wanted the subject removed.

Upon arrival I observed suspect on the porch of 112 Regent St fitting the description given to me by dispatch. Suspect identified himself as Donald Fell. Suspect was handcuffed for his safety and that of the officer (cont →)

**CONTRO**

| 71. ENTERED NCIC/REG | 72. WHEN NOTIFIED | 73. MESSAGE NO. | 74. CANCELLED BY | 75. WHEN CANCELLED |
|---|---|---|---|---|

**76. INCIDENT STATUS** ☐ CLEARED BY ARREST ☐ CLEARED BY EXCEPTION

**77. INVESTIGATION STATUS** ☐ OPEN RECORD ☐ UNFOUNDED ☐ OPEN INVESTIGATION

**78. INVESTIGATING OFFICER NAME** [signature]   **PIN** 581   **DATE** 9-6-99

**79. REVIEWING SUPERVISOR** [signature]   **DATE** 9-6-99

RMZ 6-96

COPY

| WILKES-BARRE POLICE DEPT. SUPPLEMENT REPORT | | 1. INCIDENT NO. 9909004831 |
|---|---|---|
| **2. OFFENSE:** ACT 64 | **3. NAME OF VICTIM:** Comm of PA | **4. DATE:** 09-06-99 |

5. ☒ USED AS CONTINUATION SHEET OF CURRENT REPORT    6. TYPE REPORT CONTINUED OR SUPPLEMENTED: ☒ INITIAL CRIME ☐ VEHICLE ☐ ARREST

7. ☐ USED TO REPORT SUPPLEMENTAL INVESTIGATION    8. NEW OFFENSE IF CHANGED:    9. VALUE RECOVERED PROP.: $

10. STATUS: ☐ UNFOUNDED ☐ CLEARED ☐ NOT CLEARED    11. FURTHER ACTION & REPORT REQUIRED: ☐ YES ☐ NO    12. MULTIPLE CLEAR-UP? (LIST OTHER INCIDENT NOS. IN NARRATIVE) ☐ YES ☐ NO

13. NARRATIVE: IN FOLLOW-UP USAGE, RECORD ALL DEVELOPMENTS SUBSEQUENT TO LAST REPORT. LIST ANY ACCUSED AND/OR SUSPECTS AS FIRST ITEM. INCLUDE ARREST REPORT NUMBERS OF PERSONS ARRESTED, VALUE AND DISPOSITION OF RECOVERED PROPERTY (ATTACH PROPERTY RECORD), AND EXPLAIN ANY CHANGE IN OFFENSE

ACCUSED/SUSPECT

FELL, DONALD W/M 04-30-80

UNTIL A WARRANT COULD BE CONFIRMED. SUSPECT WAS EXPLAINED THE REASON FOR HIS BEING HANDCUFFED AND STATED HE UNDERSTOOD. THE SUSPECT WAS THEN PATTED DOWN FOR WEAPONS. DURING THE PAT DOWN THIS OFFICER IMMEDIATELY FELT THREE CIGARETTE LIGHTERS IN SUSPECTS FRONT RIGHT PANTS POCKET. THIS OFFICER THEN MOVED TO SUSPECTS FRONT LEFT POCKET WHERE I IMMEDIATELY FELT AND RECOGNIZED A BAGGIE CONTAINING MARIJUANA WHICH WAS REMOVED. AT THIS TIME THE SUSPECT WAS TOLD THAT HE IS NOW UNDER ARREST. UPON PREPARING SUSPECT FOR TRANSPORT THIS OFFICER FELT AND IMMEDIATELY RECOGNIZED A PACKET OF ROLLING PAPERS (ZIG-ZAG BRAND) THIS OFFICER ALSO REMOVED A ROUND WOODEN ITEM WHICH IS USED TO HOLD A MARIJUANA CIGARETTE. INSIDE THE BAGGIE OF MARIJUANA THERE WAS A PARTIALLY BURNED MARIJUANA CIGARETTE.

SUSPECT WAS TRANSPORTED TO W-B PD FOR PROCESSING. EVIDENCE WAS SECURED IN EVIDENCE BAGS & LOCKERS.

COPY

2    581    9-6-99

028687

## WILKES-BARRE CITY POLICE DEPARTMENT
### 15 North Washington Street
### Wilkes-Barre, Pennsylvania 18701

### PERSON IN CUSTODY REPORT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| SURNAME | FIRST | MIDDLE | ALIAS |
|---|---|---|---|
| FELL | DONALD | ROBERT | |

| ADDRESS 39 WESTMINSTER ST WILKES-BARRE | SSN. | DATE OF BIRTH |
|---|---|---|
| 440 E. MAIN (AUNT'S HOUSE) | 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 | 04-30-80 |

| PLACE OF BIRTH | HEIGHT | WEIGHT | EYES | HAIR | SEX | AGE |
|---|---|---|---|---|---|---|
| WILKES-BARRE, PA | 58" | 130 | HAZLE | BROWN | M | 19 |

| MARITAL STATUS | RACE/ETHY. | BUILD | COMPLEXION | OCCUPATION | PHONE NO. |
|---|---|---|---|---|---|
| SINGLE | W | THIN | LIGHT | WAREHOUSE | 821-7187 |

PLACE OF EMPLOYMENT / SCHOOL.
POMERANTZ    PUBLIC SQUARE W-B

SCARS - MARKS - TATTOOS - DEFORMITIES
Lt BICEP - UPSIDE DOWN CROSS w/ 3 - 6's
Rt BICEP - Anarchy symbol

| FINGERPRINTED ___ YES X NO | PHOTOGRAPHED ___ YES X NO | NCIC & LOCAL CHECK X YES ___ NO |
|---|---|---|

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CHARGE
Disorderly Conduct.

| DATE OF ARREST | TIME | DATE OF CRIME | TIME | ON VIEW X   WARRANT ___ |
|---|---|---|---|---|
| 09-13-99 | 0404 | 09-13-99 | 0404 | |

| PLACE OF CRIME | COUNTY | STATE | UNIFORM X   DETECTIVE |
|---|---|---|---|
| N. MAIN ST W-B | LUZERNE | PA | |

| ARRESTING OFFICER(S) & PIN NO. | INCIDENT NO. |
|---|---|
| I. NAHILL #566 | 990900968S |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### RECORD OF PERSON IN CUSTODY

1. This report must be maintained daily, in compliance with the jailer's regulations of the Wilkes-Barre City Police Department.
2. The officer on duty will check persons in custody every half hour, and enter his or her initials in the appropriate time - block and make appropriate entries under " Remarks " column.
3. Under " Remarks " column briefly enter physical condition, activity, etc, of person in custody and also time released.

Officer & Pin No. at Time Prisoner Received: J. HARKNESS 586

Condition of prisoner when received: OK                                Date  09-13-99

CELL #: 0420    Time In: 0420        Condition of Prisoner at Release:

Officer & Pin No. at Time of Released (Sign here): Nahill 566 ___

Date Released: 9-13-99    Time Released: 0450    Person Released To: Self

REMARKS:  NOT PLACED IN A CELL

CITED AND RELEASED

028688

24

LCPR-8

| 1 ZONE  5. | ADULT / JUVENILE | ARREST REPORT | WILKES-BARRE POLICE DEPARTMENT | 2 IRC 990900968 |

| 3. CHARGE Disorderly Conduct | DATE CHARGED 9/13/99 | 4 OFFENSE DATE 9/13/89 | 5. ARRESTING OFFICER'S NAME T. Nahill | BADGE NUMBER 566 |

6. OTHER CHARGES

7. LOCATION OF ARREST  740 N. Main St. W-B PA

ONT — OFFENSE TRACKING NUMBER

| 8. WHEN ARRESTED 9/13/99 0404 | 9. TYPE OF ARREST ☒ ON VIEW ☐ WARRANT ☐ SUSPICION |

**ACCUSED**

| 10. NAME OF ACCUSED Donald R Fell | 11. AGE 19 | 12. RACE W | 13 SEX M | 14. ADDRESS 39 Westminister St WB PA |

| 15. ALIAS/NICKNAME Donny | 16. TELEPHONE 821-7187 | 17. OCCUPATION Laborer |

| 18. PLACE OF EMPLOYMENT/SCHOOL Pomerantz | 19. DATE OF BIRTH 4/30/80 | 20. PLACE OF BIRTH W-B PA |

| 21. HEIGHT 5'8 | 22. WEIGHT 130 | 23. EYES HZL | 24. HAIR BRN | 25. BLOOD TYPE | 26. MARKS, SCARS, TATOOS Up side down cross L shldr | 27. COMPLEXION |

| 28. SSN 210 66 7294 | 29. FBI NO. | 30. SID NO. | 31. PDID NO. | 32. MILITARY NO. |

| 33. VETERANS CLAIM NO. | 34. OPERATOR PERMIT NO. | 35. FINGERPRINT CLASSIFICATION | 36. PHOTO TAKEN ☐ YES ☒ NO | NUMBER |

| 37. FINGERPRINT CARD TO ☐ FBI ☐ PSP | 38. INDICATION OF DRUGS: ☐ YES ☒ NO  ALCOHOL: ☐ YES ☒ NO | 39. DEFENDANT ARMED ☐ YES ☒ NO | TYPE WEAPON(S) |

| 40. ARTICLES CONFISCATED FROM DEFENDANT | 41. PERSONAL ARTICLES RECEIPT GIVEN ☐ YES ☐ NO | NUMBER |

**VEH**

42. DEFENDANT VEHICLE IDENTIFICATION — YEAR   MAKE   MODEL   LICENSE NO./ST

DEFENDANT FAMILY CODE FOR BLOCKS 43 – 46
F — FATHER   W — WIFE   B — BROTHER   S. — SON
M — MOTHER   S — SISTER   D — DAUGHTER

**FAMILY**

| 43 | NAME | ADDRESS | PHONE (RESIDENCE/OFFICE) |
| 44. | | | |
| 45. | | | |
| 46. | | | |

**ACC**

| 47. NAME/ALIAS/NICKNAME OF ACCOMPLICE | 48. ADDRESS |
| 49. NAME/ALIAS/NICKNAME OF ACCOMPLICE | 50. ADDRESS |

**ATT**

| 51. ATTORNEY NAME | TELEPHONE NO. | 52. RIGHTS READ ☐ YES ☐ NO | BY WHOM |

**STAT**

| 53. STATUS OF DEFENDANT ☐ DETAINED AT _____ ☒ RELEASED ☐ PERSONAL BOND ☐ MONEY BOND — AMOUNT $ _____ ☐ PROPERTY BOND ☐ TURNED OVER TO |

**NARRATIVE**

| ITEM NO. | 54. CONTINUATION OF ABOVE ITEMS (INDICATE ADDITIONAL INFORMATION.) |
| | Cited and Released. |

**CHARGE INFORMATION**

55. ADJUDICATION DATE AND TIME: ___/___/___ MO. DA. YR. HOURS

| 56. CHARGE | 56A. OTH | 57. MAGISTRATE/DISTRICT COURT | 58. DATE | 59. FINAL DISPOSITION |
| Disorderly Conduct | | 11-1-02 | 9-13-99 | |

**CONTROL**

60. COMM. CENTER WANT/WARRANT INQUIRY  ☐ YES  ☐ NO  ☐ CANCEL  ___/___/___  MO. DA. YR. HOURS   WARRANT NO.

| 61. DISTRIBUTION ☐ CHIEF ☐ DETECTIVE ☐ JUVENILE ☐ NARCOTICS ☐ OTHER |

| 62. ARRESTING OFFICER SIGNATURE T. Nahill | 9/13/99 | 63. REVIEWING OFFICER SIGNATURE Sgt. D Cree | 9/13/99 |

028689

24

## COMMONWEALTH OF PENNSYLVANIA

**NON-TRAFFIC CITATION**

**CITATION NO.** P 2041224-3

| 1. Magisterial District Number 11-1-02 | 2. Docket Number | 3. Social Security Number 21 0 6 6 7 2 9 4 |

4. Address of Magisterial District Office 150 S Penn Ave W.B PA

5. Driver's Number

6. State ☐ PA

7. Defendant's Name - First **Donald**    Middle **Robert**    Last **Fell**

8. Defendant's Address (Street-City-State-Zip Code) 39 Westminster St W.B PA 18702

**9. Race/Ethnicity**
(W) ☒ White    (A) ☐ Asian
(B) ☐ Black    (H) ☐ Hispanic
(I) ☐ Native American    (U) ☐ Unknown

**10. Sex**
(M) ☒ Male
(F) ☐ Female

**11. Date of Birth (MM/DD/YY)** 4-30-80

**12. Resident Status**
(R) ☒ Resident
(N) ☐ Non-Resident
(U) ☐ Unknown

**13. Type of Arrest**
(O) ☒ On-View
(S) ☐ Summoned/Cited

| 14. JUVENILE ☐ Yes | 15. Parents Notified ☐ Yes | 16. Parent's Name | 17. Date Notified | 18. Time |

**19. Charge**
☒ Disorderly Conduct    ☐ Criminal Trespass    ☐ Theft of Services    ☐ Criminal Mischief
☐ Harassment    ☐ Public Drunkenness    ☐ Scattering Rubbish
☐ Retail Theft    ☐ Purchase, Consumption, Possession or Transportation of Liquor or Malt or Brewed Beverages
☐ Other

**20. Nature of Offense**
THE DEFENDANT WAS OBSERVED ATTEMPTING TO GAIN ENTRY INTO A MOTOR VEHICLE THAT DID NOT belong TO him, WITH THE INTENT TO CAUSE Public INCONVENIENCE OR ALARM by ANY ACT THAT SERVES

21. Pa. Code

22. CRIMES CODE TITLE 18 ☐

| 23. SECTION 5503 | 24. SUB SEC A4 |
| 25. FINE | |
| 26. COSTS | |
| 27. J.C.P. | 1.50 |
| 28. TOTAL DUE | $ |

29. ☐ Lab Services Requested

| 30. Date 9-13-99 | 31. Time 0404 | 32. Day MON | 33. City-Twp-Boro WILKES-BARRE | 34. Code 304 | 35. Zone 5 |

36. Location 740 N. MAIN ST W.B PA.

37. County LUZERNE

38. County Code 40

39. Defendant's Signature / Acknowledges Receipt of Citation X Donald Fell

40. Date    ☐ Issued ☐ Filed

41. ☐ Filed on info. received

42. I verify that the facts set forth in this citation are true to the best of my knowledge, information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 Pa. C.S.A. § 4904) relating to unsworn falsification to authorities.

OFFICER'S SIGNATURE

BADGE NUMBER 566

ORI NUMBER

43. Station Address

| 44. Offense Code | 45. Property Record No. | 46. Systems Code | 47. ☐ Initial Report | 48. ☐ Attention LCE | 49. Incident No. 990900968 |

| 50. Victim's Name | 51. Date of Birth (MM/DD/YY) | 52. Sex | 53. Race/Ethnicity |

| 54. Victim's Address (Street-City-State-Zip Code) | 55. Phone Number |

56. Remarks / Subpoena List
X6 Legitimate Purpose of the Actor.

P2041224-3

| 57. Supv. Init. | Badge No. |

AOPC 407-95 (Rev. 10/96)

**DISTRICT JUSTICE**

028690