

**U.S. Department of Justice**

*United States Attorney*
*District of Vermont*

**FILE COPY**

*United States Courthouse and Federal Building*
*Post Office Box 570*                              *(802) 951-6725*
*Burlington, Vermont 05402-0570*                   *Fax: (802) 951-6540*

July 6 2005

Alexander Bunin, Esq.
Gene Primomo, Esq.
Office of the Federal Public Defender
39 North Pearl Street
Albany, NY 12207

Paul S. Volk, Esq.
Blodgett, Watts & Volk
P. O. Box 8
Burlington, VT 05402-0008

      Re:    United States v. Donald Fell
               Criminal No. 2:01-CR-12

Dear Messrs. Bunin, Primomo, and Volk:

    Please find enclosed additional discovery related to Donald Fell's prison file (recent incident on May 25, 2005) and other matter related to possible rebuttal testimony.

                      Sincerely,

                      DAVID V. KIRBY
                      United States Attorney

By:

                      STEPHEN D. KELLY
                      Assistant U.S. Attorney

Enclosure



GOVERNMENT
EXHIBIT

L

07/06/2005   01:15   8025277534                                    PAGE   02

...ont Department of Corrections Offender Locator

New Person New Action

## Disciplinary Report History
**DONALD ROBERT FELL DOB: 04/30/1980 Gender: M**

| Days Ago | Location | Infraction Date | Code | Description | Status | SignOff Date | Outcome | |
|---|---|---|---|---|---|---|---|---|
| 41 | NWCF | 05/25/2005 | B20 | Drugs, 1st | Signed Off | 05/31/2005 | Uphld | Details |
| 87 | NWCF | 04/09/2005 | A01D | Fighting, serious injury | Signed Off | 04/12/2005 | Uphld | Details |
| 87 | NWCF | 04/09/2005 | A06 | Creating disturbance | Signed Off | 04/12/2005 | Uphld | Details |
| 87 | NWCF | 04/09/2005 | B18 | Interfere with CO | Signed Off | 04/12/2005 | Uphld | Details |
| 219 | NWCF | 11/27/2004 | M02 | Possession contraband | Signed Off | 12/03/2004 | Uphld | Details |
| 255 | NWCF | 10/23/2004 | M02* | Possession contraband | Signed Off | 10/23/2004 | Uphld | Details |
| 275 | NWCF | 10/03/2004 | M22 | Obscene language | Signed Off | 10/04/2004 | Uphld | Details |
| 474 | NWCF | 03/17/2004 | B18 | Interfere with CO | Signed Off | 03/24/2004 | Uphld | Details |
| 474 | NWCF | 03/17/2004 | A01D | Fighting, serious injury | Signed Off | 03/24/2004 | Uphld | Details |
| 493 | NWCF | 02/27/2004 | M02 | Possession contraband | Signed Off | 02/27/2004 | Uphld | Details |
| 496 | NWCF | 02/24/2004 | B21 | Disruptive behavior | Signed Off | 03/01/2004 | Uphld | Details |
| 604 | NWCF | 11/08/2003 | M26 | Failure to abide | Signed Off | 11/14/2003 | Uphld | Details |
| 1119 | NWCF | 06/12/2002 | M26 | Failure to abide | Signed Off | 06/13/2002 | Uphld | Details |
| 1132 | NWCF | 05/30/2002 | M26 | Failure to abide | Signed Off | 06/03/2002 | Uphld | Details |
| 1267 | NWCF | 01/14/2002 | M26 | Failure to abide | Signed Off | 01/15/2002 | Uphld | Details |
| 1275 | NWCF | 01/06/2002 | M02 | Possession contraband | Signed Off | 01/11/2002 | Dismd | Details |
| 1444 | NWCF | 07/22/2001 | M09 | Agitating/provoking | Signed Off | 07/26/2001 | Uphld | Details |
| 1462 | NWCF | 07/04/2001 | B20 | Drugs, 1st | Signed Off | 07/11/2001 | Uphld | Details |

https://intranet.doc.state.vt.us/cgi-bin/offender_non_cgi/action

| 1497 | NWCF | 05/30/2001 | B11 | Stealing | Signed Off | 06/07/2001 | Dismd | Details |
|------|------|------------|-----|----------|------------|------------|-------|---------|

Docket Number: NW  052705 - 1

**Appendix VI**
410.01

## *WAIVER OF APPEARANCE*

I, DONALD FELL_____, have been advised of my right to appear at my Disciplinary Hearing regarding the charge of my violating Major __B__ Rule Number _18_ that has been scheduled for _10:00_ hours on __5-31-05__ .
(Date)

I do not wish to appear at this Disciplinary Hearing, and I hereby waive that right. I realized that by waiving my right to appear I am admitting my guilt and/or admitting that a preponderance of the evidence supports my being found guilty of the Major disciplinary infraction that I have been accused of.

I hereby accept the Disciplinary Sanction of: _5_ DAYS SEGREGATION SUSPENDED FOR 30 DAYS / NO MAJOR DR CONVICTIONS_____

Inmate Signature : _____    ___5-27-05___
                                                              (Date)

Witness: _____    ___5-27-05___
             (Staff Member Signature)                    (Date)

Superintendent's Signature: _____    __5/31/05__
                     (Superintendent's Signature)            (Date)

## *REFUSAL TO APPEAR*

I saw_____ on _____at _____

and advised the inmate of the right to appear before the Hearing Officer on _____ .

The inmate declined to appear at the Hearing but refused to sign a Waiver of Appearance.

_____    _____
(Staff Member Signature)                        (Date)

_____    _____
(Second Staff Witness)                           (Date)

NW    052705  -    1
**DOCKET NUMBER**

# ACKNOWLEDGMENT
# OF
# RIGHTS AND OPPORTUNITIES


I, <u>DONALD FELL</u>                        , acknowledge that I have been advised of and understand

my Rights and Opportunities with regard to the above captioned Disciplinary Report.

I also acknowledge that I have been advised of the **Maximum** sanction(s) which could be imposed upon

me if I were to be convicted of the alleged offense after a full hearing.

I further acknowledge that no threats or promises have been made to me to induce me to waive my

Rights and Opportunities and that I am doing so voluntarily with a full understanding of my Rights and

Opportunities which are afforded to me under Vermont Department Of Corrections Policy Directive 410.01.

By waiving my Right to Appear I am expressly acknowledging that a preponderance of the evidence

supports my being found guilty of the Major disciplinary infraction that I have been accused of.
and that the Hearing Officer will impose a Disciplinary Sanction of:

<u>5 DAYS SEGREGATION</u>

<u>SUSPENDED FOR 30 DAYS / NO MAJOR DR CONVICTIONS</u>

Finally, by signing this acknowledgment I understand that I am waiving my Right to Appeal both the

Findings of the Hearing Officer and the Sanction imposed.

|  |  |
|---|---|
| _(signature)_ | 5-27-05 |
| **DONALD FELL** | **Date** |
| _(signature)_ | 5-27-05 |
| **Hearing Assistant Signature** | **Date** |
| _(signature)_ | 5-27-05 |
| **Staff Signature** | **Date** |

TO:   Hearing Officer

FROM:   Investigating Officer

DATE:   5-25-c5

RE:   Disciplinary Investigation

On _____5-25-c5_____ I, __Co/ff MAHONEY__ interviewed
            (date)                    (name & title)
__DonALD FELL_____ on a disciplinary report issued on ___5-25-c5___
      (inmate)                                                      (date)
for violation of rule __MAJOR B# B__. Inmate made the following
                            (charge)
statements during the interview:

_____
_____NoNE    AT    THIS    TimE_____
_____
_____
_____
_____

X_____ Referred to disciplinary board for action.

_____ Inmate requested __GREGA__ as hearing assistant.

X_____ Requested staff member _____ agreed _____ refused to assist. _____
                                                                        (date)
_____ Hearing Officer needs to appoint assistant.

__Co/ff Mahoney_____            ___5-25-c5_____
      Investigating Officer                  Date
                                          1530

I __DonALD FELL__ did on __5-25-c5__ receive copies
      (Inmate)                  (time/date)
of all documentation to be used at my disciplinary hearing that I am
entitled too.

                              __Donald Fell_____
                                          (Inmate)
                              __5-25-c5_____
                                          (Date)

410.01 Appendix III

## VERMONT DEPARTMENT OF CORRECTIONS
### NOTICE OF HEARING

I.D. (or Docket)_____

Original __X__

Continuance_____

TO: _DONALD FELL_____ Date: _5-25-05_____

FROM: _CPT MAHONEY_____

This is to inform you that you will appear before the Hearing Officer on _31 MAY 05_ (D/M/Y) at _1020_ hours for the charged violation of: _MAJOR B#18 USE OF MARIJUANA_

_MODIFIED TO MAJOR B#13 REFUSAL_

### INMATE'S RIGHTS AND OPPORTUNITIES

You will have the following rights and opportunities:

a)  To be present and to be heard provided your conduct is orderly.
b)  To discuss the incident and present your case.
c)  To present documentary evidence and call the Reporting Officer and/or other reasonably available witnesses, who have relevant information, provided the witnesses are not unduly hazardous to facility security, order or discipline.
d)  To question or cross-examine witnesses at the hearing and to review factual evidence, if not hazardous to institutional security.
e)  To submit a written statement to the Hearing Officer.
f)  To request the assistance of a Hearing Assistant.
g)  To seek a continuance of the hearing for good cause shown.

I _X_ (do) _____ (do not) wish to be assisted by a Hearing Assistant. Name: _GREGA_____

I _X_ (do) _____ (do not) wish to have the reporting officer present. Name: _SOUSA_____

Names of witnesses you wish to call should be listed below. Briefly state what each proposed witness would be able to testify to.

Name: _NONE_____, can testify to: _____

_____

Name: _____, can testify to: _____

_____

I _____ (do) _X_ (do not) request a continuance because: _____

_____

I _X_ (do) _____ (do not) waive my 24-hour notice.

_Donald Fell_____          _5.25-c5_____
Signature of Inmate                         Date and Time

**White to DR Packet. Yellow to Inmate**

**I. D. (or Docket)**

**Vermont Department of Corrections**
**Division of Correctional Services**

### FACILITY/CAMP
- [x] NWSCF
- [ ] SSCF
- [ ] NWRCF
- [ ] NESCF
- [ ] MVRCF
- [ ] NERCF
- [ ] SESCF
- [ ] NECSC
- [ ] DALE

### FSU
- [ ] ST. ALBANS
- [ ] BURLINGTON
- [ ] RUTLAND
- [ ] BENNINGTON
- [ ] BRATTLEBORO
- [ ] WHITE RIVER JCT.
- [ ] BARRE
- [ ] ST. JOHNSBURY

## INMATE DISCIPLINARY REPORT

**(TO BE COMPLETED BY REPORTING OFFICER)**

Name of Inmate: *Fell, Donald*    Date of Incident: *5/25/05*    Time: *Approx 0935*

Living Assignment: *Echo - 64*    Security Level: *Closed*    Place of Incident *Echo*

Description of Violation: *Major B #18 Possession, Introduction or use of any alcohol, Narcotics, depressants, stimulants hallucinogenic substances or marijuana.*

Witness(es) of Incident: *None*

Description of Physical or Documentary Evidence: *See Report*

| Signature of Reporting Officer | Date and Time | Name and Title (Printed) |
|---|---|---|
| *[signature]* | *5/25/05 1035* | *Joseph Sousa C/oF* |

**(TO BE COMPLETED BY SHIFT SUPERVISOR AT TIME OF INCIDENT)**

Was Inmate's Security Level Changed?    Yes _____    No _✓_
Date and Time of Change _____
Signature _____    If Yes, to What _____

Does hearing need to be held within 72 hours?    Yes _____    No _✓_

INVESTIGATION Employee Assigned by Superintendent/Designee *Mahoney*    Date *5/25/05*

**(TO BE COMPLETED BY INVESTIGATING OFFICER)**

Delivered to Above Inmate by (Signature)    Date and Time
*[signature] C/oI*    *5/25/05 1035*

1. Will this be referred to criminal prosecution and/or criminal investigation? _✓_ No ___ Yes (if yes then suspend investigation)
2. Did you interview confidential informants? _✓_ No ___ Yes (See Appendix VI for guidance)
3. Did you interview inmate? _✓_ Yes ___ No (briefly explain _____

4. Did you compile available documentary evidence and statements of witnesses? _✓_ Yes ___ No (briefly explain) _____

5. Did you contact and/or interview the relevant witnesses? _✓_ Yes ___ No (briefly explain) _____
6. Recommendation: _✓_ Refer for resolution
   ___ Do not refer for resolution
   _X_ MODIFY VIOLATION TO: *Major B #13*

**WHITE (CASE FILE)**    **YELLOW (CENTRAL OFFICE)**    **PINK (INMATE)**

DEPARTMENT OF CORRECTIONS

## OFFENDER DRUG TESTING REPORT

DATE _5/25/05_

_Fell Donald_

Inmate Name

_Random_

Test Type

Male _✓_   Female ___

Age _25_

Test Results

Pos: ____   Neg: ____ _REFUSED 2 Hours Expired_

_Sousa_

_NWSCF / Ecko_

Testing Location

_0930_

Time

_____     _____

Legal Status                   Risk Status

Cumulative Number of Tests _____          Pos _____   Neg _____

Date of Last Positive Test _____

Number of Tests in Last Three Years _____

Comments:

Appendix 1

Revised 3/25/98

Offender Drug Testing

Directive 409.04

Appendix 2

## MONTHLY REPORT
## DRUG TESTING

| Location | Bens | THC | Coc | Math | Opiates | A1C |
|---|---|---|---|---|---|---|
| Number of Tests Performed | | | | | | |
| Number of Positive Tests | | | | | | |
| Number of Tests Sent to Lab | | | | | | |
| Number of Positive Lab Tests | | | | | | |
| Number of Refusals | | | | | | |

Page __1__ of __1__

**Vermont Department of Corrections**
**FACILITY REPORT FORM**

☐ CCWC        ☐ NSCF
☐ CRCF        ☒ NWSCF
☐ MVRCF       ☐ SESCF
☐ NERCF       ☐ SSCF
☐ DALE

To: Hearing OFFicer

From: Joseph Sonsa

Date: 5/25/05

Re: Inmate Pell, Donald

Type of Report:

☐ Incident        ☒ DR
☒ Informational   ☐ Confidential

Report: On above date at approx 0935, this officer was doing random urinalysis drug test. Inmate Fell, Donald was giving a two hour period to give this officer a urine sample. (0730 to 0930) At approx 0930 have this officer asked inmate Fell if he could give a sample and Inmate Fell refused.

Action Taken: Major D#18

Signature: _____ C/o I



Week of MAY 25th, 2003

# Chain of Custody for Urinalysis Authorization

| Random/Cause | Name | Date/ Time Collected | Collector | Date/Time to Lock Box | Signature of Mailer | Local Results | Lab Results |
|---|---|---|---|---|---|---|---|
| ███████ | ███████ | ███████ | ███████ | ███████ | ███████ | ███████ | ███████ |
| RANDOM | Fell, Donald | 5/29/03 0930 | Sousc | | | ROFUSAL | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

01/06/2005  01:15
802527753A
5:01-cr-00012-gwc   Document 338-14   Filed 12/21/11   Page 11 of 30

PAGE  11

## Roger Laroche

**From:**    <dbcron@corr.doc.state.vt.us>
**To:**      <jmurphy@corr5.doc.state.vt.us>; <macm@corr5.doc.state.vt.us>; <nwcf_drug@doc.state.vt.us>
**Sent:**    Wednesday, May 25, 2005 1:10 AM
**Subject:** NWSCF Drug test sample

<PRE>
Weekly Sample for NWCF Wed May 25 01:10:01 EDT 2005
(Include for 1 in 20)



FELL      ,DONALD    04/30/1980 (E-066)

Total= 234; yes=10; no=224

## VERMONT DEPARTMENT OF CORRECTIONS
## FACILITY REPORT FORM

NORTHWEST STATE CORRECTIONAL FACILITY

To: Hearing Officer

From: CO/II T. Mahoney

Date: 5-25-05

Re: Donald Fell Major B#18

Type of Report:

___ Incident          ___ DR

_X_ Informational     ___ Confidential

Report: This Officer has been assigned to investigate Donald Fell's major B#18. This officer modified the DR to a major B#13 for the following reason:

1.  Major B#18 is for "Possession, Use, or Introduction".
2.  Written report by issuing officer states that "Inmate Fell refused".
3.  Facility offender drug testing report states "refused 2 hours expired". Noted by issuing officer.

CO/II Timothy J. Mahoney

# FRANKLIN SUPERIOR COURT

| Type | Docket Number | Action |
|------|---------------|--------|
| COURT | S 407-04 Fc | Injunctive Relief |

---

**PLAINTIFF**
Fell, Donald R.

**DEFENDANT**
Gold, Steven, Commissioner Vt. Dept of Corrections

**COUNSEL FOR PLAINTIFF**
Prisoners Rights Office

**COUNSEL FOR DEFENDANT**
Department of Corrections

---

## CASE INFORMATION

Date Filed:    10/1/2004        Serv Compl:            PTC Date:            Judg For:
Trial Date:                     Case Disposed: 10/27/2004    How Disposed:    dismissed by plaintiff

## DISCOVERY STIPS

Stip Sent:
Date returned:
Due Back:
Second Letter:

## COUNTER CLAIMS

Date Filed:
Date Disposed:
How Disposed:

## CROSS CLAIMS

Date Filed:
Date Disposed:

How Disposed:

## PENDING MOTIONS

Date Filed          Date Due          Motion Description

---

## DOCKET ENTRIES

| 8/9/2004 | Pleadings fi by petitioner |
| 8/9/2004 | IFP submitted for consideration of filing fee. |
| 10/1/2004 | IFP issued by Clerk- E&D. |
| 10/1/2004 | Status Conference sched for Oct. 29, 2004 ccm w/copy of file to PRO/DOC/Fell. |
| 10/27/2004 | Notice of dismissal fi.- case closed. |
| 11/8/2004 | Waiver of service of summons fi by J. Wallace Malley fi. |

I HEREBY CERTIFY THAT THIS DOCKET SHEET HAS BEEN COMPARED
WITH THE ORIGINAL AND CERTIFY THIS DOCUMENT TO BE A
TRUE COPY THEREOF.

LAURIE MARTIN, ASST. CLERK
FRANKLIN SUPERIOR COURT

# FRANKLIN SUPERIOR COURT

| Type | Docket Number | Action |
|---|---|---|
| COURT | S 407-04 Fc | Injunctive Relief |

**PLAINTIFF**
Fell, Donald R.

**DEFENDANT**
Gold, Steven, Commissioner Vt. Dept of Corrections

**COUNSEL FOR PLAINTIFF**
Prisoners Rights Office

**COUNSEL FOR DEFENDANT**
Department of Corrections

## CASE INFORMATION

Date Filed:     10/1/2004          Serv Compl:              PTC Date:          Judg For:
Trial Date:                        Case Disposed: 10/27/2004   How Disposed:    dismissed by plaintiff

## DISCOVERY STIPS

Stip Sent:
Date returned:
Due Back:
Second Letter:

## COUNTER CLAIMS

Date Filed:
Date Disposed:
How Disposed:

## CROSS CLAIMS

Date Filed:
Date Disposed:

How Disposed:

## PENDING MOTIONS

Date Filed          Date Due          Motion Description

## DOCKET ENTRIES

| | |
|---|---|
| 8/9/2004 | Pleadings fi by petitioner |
| 8/9/2004 | IFP submitted for consideration of filing fee. |
| 10/1/2004 | IFP issued by Clerk- E&D. |
| 10/1/2004 | Status Conference sched for Oct. 29, 2004 ccm w/copy of file to PRO/DOC/Fell. |
| 10/27/2004 | Notice of dismissal fi.- case closed. |
| 11/8/2004 | Waiver of service of summons fi by J. Wallace Malley fi. |

I HEREBY CERTIFY THAT THIS DOCKET SHEET HAS BEEN COMPARED
WITH THE ORIGINAL AND CERTIFY THIS DOCUMENT TO BE A
TRUE COPY THEREOF.

LAURIE MARTIN, ASST. CLERK
FRANKLIN SUPERIOR COURT

State of Vermont                    Superior Court
Franklin County, SS.

Donald R. Fell
        plaintiff,
    -V-
Steve   Gold "commissioner of Corrections,"
        Defendant.                    FILED - FR. SUP. CT.

                                        AUG - 2 2004

            Petition For Injunctive Relief

    Now Comes, Donald R. Fell, PRO-SE, And
petitions this court For a preliminary/
permanent injunction ordering D.O.C to allow
him to participate in Native American "Talking
Circles" And to have access to Regular out-
door Recreation. Access to contact Visits
like other (ALL) Federal inmate.(Pre-trial)
being held at N.W.S.C.F. D.O.C's Refusal to
Allow Mr. Fell to participate in "Talking Circles"
and have access to a sweat lodge Violates the
First and Fourteenth Amendments to the US
Constitution; Chapter one, Articles Three and
Seven of the Vermont Constitution; 42 U.S.C §
2000cc (Religious land use and Institutionalized
Persons Act.)

I HEREBY CERTIFY THAT THIS PETITION HAS BEEN COMPARED WITH THE ORIGINAL AND CERTIFY THIS DOCUMENT TO BE A TRUE COPY THEREOF

LAURIE MARTIN, ASST CLERK

And V.S.A § 803. D.O.C.'s Refusal to allow Mr. Fell to have access to Regular out-door recreation violates the eighth Amendment to the U.S. Constitution; Chapter one, Article Eighteen of the Vermont Constitution. And the Echo Unit Management program inmate manual. Also petioner has a fear for his safety of a fire. Echo unit or delta unit has no sprinkler system and the fire alarm go's of by itself for no reason, there is no fire here also.

## "Statement of Facts"

FILED - FR. SUP. CT.

(1) Donald Fell is a Federal pre-trial detainee in Vermont D.O.C custody, housed at North west state Correctional Facility. (NWSCF)

(2) Vermont D.O.C. Receives Federal Funding.

(3) Mr. Fell has been at N.W.S.C.F. since 12-12-2006

(4) Mr. Fell spent his whole stay in Echo-unit.

(5) Mr Fell has never been to general population.

(6) D.O.C has never allowed Mr. Fell access to paid employment, full time Education, program opportunities, AA, or NA meetings, inmates in Echo-unit has no access to these opportunities.

FILED - FR. SUP. CT.

(7) Mr. Fell would like to practice his Native American Religion

(8) "Talking Circles" are an integral part of Mr. Fell's Native American Faith, akin to a Christian church service.

(9) N.W.S.C.F. has volunteers who run the "Talking Circles"

(10) D.O.C. refuses to allow inmates in echo-unit to partisipate in the Facility's "Talking Circles" and this substantially burdens his ability to practice his Native American Religion.

(11) The echo-unit inmate manual states that the inmates <u>will</u> <u>have</u> recreation periods in the outside bullpen (a cage-like wire stauture) from 8-10 am and 1-3 pm and 530 - 730 pm.

(12) During these recreation periods, inmates vote as to whether they want to go outside.

(13) No inmate go's outside unless a majority of the inmates want to go out.

(14) The manual does not mention a vote.

(15) If inmates do not go out, they must stay in a 10 by 15 foot room with a T.V. and 1 table. Nothing els, or stay in a cell.

(16) D.O.C. prohibits Echo-unit inmates to use the gym or the big Rec. Field.

(17) Mr. Fell is being refused contact visits.

(18) All other inmates in echo-unit could get contact visits on Fridays.

(19) Fire alarms go off all the time in echo- and Delta unit.

(20) There are no sprinkler systems in these units.

(21) There are no fire hoses to put fires out in echo or delta unit.

(22) Mr Fell has filed grievances regarding these things and has been denied.

<u>Relief Demanded</u>

FILED - FR. SUP. CT.

Plaintiff request that the court;

(1) Accept jurisdiction of this matter.

(2) Appoint counslor to represent Plaintiff

(3) schedule status conference and hearing.

(4) order D.O.C to allow mr Fell to participate in "Talking Circles"

(5) Allow Mr. Fell to regular outdoor recreation as to general population

(6) order D.O.C. To install fire sprinkler systems and fix Hazardous conditions here at N.W.S.C.F

7. order any other relief the court deems just and equitable.

(8) order D.O.C. to let mr Fell Recieve Contact visits like all other inmates.

Dated at St. Albans, ~~Vermont~~ Swanton, Vermont, this August 6 2004

Donald Fell
3649 Lower Newton Rd.
Swanton, Vermont, 05488

x Donald Fell

FILED - FR. SUP CT.

AUG 9 2004

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    05/31/2005

JUNE M. KONDRASKI, white female, Date of Birth ███████ 1963, was interviewed at her place of residence, 8 Chandler Street, Wilkes-Barre, Pennsylvania (PA), 18705, home telephone number 570-825-8806. Present during the interview was ROBERT J. LEE, SR., 84 Miner Street, Hudson, PA, 18705. After being advised of the official identity of the interviewing Agent and the nature of the interview, KONDRASKI provided the following information:

KONDRASKI advised that she is married to DAVID KOWALCZYK, same address as above; however, she maintains her maiden name. KONDRASKI explained that she has been friends with ROBERT LEE, SR. and his family for 30 years. KONDRASKI was friends with LEE's ex-wife, BONNIE DURWAY LEE, before she was married to LEE.

KONDRASKI advised that she has been more of a mother to the LEE boys, SHANE and ROBERT, JR., than their own biological mother. KONDRASKI stated that she would often babysit the boys when their father was at work. KONDRASKI stated that BONNIE and ROBERT LEE had a stormy marriage which ended after five years. KONDRASKI stated that she has known BOBBY LEE all of his life and could not believe that he could ever kill anyone on his own volition. KONDRASKI was aware that BOBBY had emotional and behavioral problems, yet there was a very sensitive side to him. KONDRASKI stated BOBBY once gave her a crystal heart shaped pendant and told KONDRASKI that she had his heart. This heart shaped pendant was given to her in the presence of his own mother.

KONDRASKI stated that BOBBY hated his mother. KONDRASKI recalled that when BOBBY was just a young boy, he got into a fight with his brother SHANE and did a tremendous amount of damage to the interior of the LEE home. As a result, BOBBY was evaluated at the CHILDREN'S SERVICE CENTER, Wilkes-Barre, PA, and prescribed medication to help ease these outbursts.

KONDRASKI provided eight pictures depicting BOBBY posing with various animals. She asked that these pictures be returned upon the conclusion of the Federal death penalty trial of DONALD FELL scheduled for June 20, 2005, in Burlington, Vermont.

KONDRASKI stated that BOBBY associated with a group of friends who enjoyed heavy metal rock music. This group of friends

Investigation on    05/24/2005    at  Wilkes-Barre, PA

File #  7A-AL-44453 —180                          Date dictated  05/31/2005

by    SA JAMES J. GLENN:mh

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

04565

FD-302a (Rev. 10-6-95)

7A-AL-44453

Continuation of FD-302 of _____JUNE M. KONDRASKI_____ , On 05/24/2005 , Page ___2___

would get into trouble occasionally, which led BOBBY to be adjudicated delinquent. He was approximately 12 or 13 years of age, and he was sent to a wilderness camp near Williamsport, PA. KONDRASKI stated that BOBBY associated with DONALD FELL, Wilkes-Barre, PA, and met him when they attended elementary school.

In KONDRASKI's opinion, FELL was obsessed with BOBBY and had to be around him all the time. KONDRASKI stated that she once resided at the Pocono Trailer Park, Jumper Road, Plains, PA. On one occasion, when BOBBY was in his late teen's, he and FELL came to her trailer and stayed overnight. They played cards and drank beer. KONDRASKI stated that the more FELL drank, the more bizarre his behavior was. He would get very obnoxious which disturbed KONDRASKI. She told BOBBY that she never wanted FELL in her home again.

KONDRASKI stated that BOBBY had a special way with animals. While attending the wilderness camp, one of the counselors suggested that BOBBY seek employment in working with animals. Once BOBBY was off probation, his uncle, KENNETH LEE, secured him employment at a wildlife refuge in Florida. He worked with panthers, lions, and other exotic animals and appeared to enjoy his work. He was in Florida for a seven month period in late 1999, and returned home in approximately April 2000. KONDRASKI stated that BOBBY was permitted to stay in the KONDRASKI residence from April 2000-October 2000. When he returned from Florida, BOBBY renewed his association with DONALD FELL, and together they worked with a traveling carnival and were hired by FELL's cousin, JESSIE WILLIAMS. In approximately July 2000, FELL and BOBBY were engaged in a fight in Monticello, New York. KONDRASKI stated that she drove to the magistrate's hearing with BOBBY's grandmother. His grandmother bailed him out of jail, and he returned to PA to live with KONDRASKI. KONDRASKI warned BOBBY that there would be new changes and that he was not to associate with FELL.

KONDRASKI stated that she knew BOBBY used marijuana but had no knowledge of any other drug use. In October 2000, BOBBY told KONDRASKI that he was going to return to Florida to work with his animals. He departed on a Saturday evening from the MARTZ BUS TERMINAL on Public Square, Wilkes-Barre, PA. KONDRASKI stated that she gave him a ride to the bus terminal. On the next day, KONDRASKI received a call from Trooper CHARLES PRULA, PENNSYLVANIA STATE POLICE, Wyoming, PA, Barracks. Trooper PRULA asked if could come to the KONDRASKI residence and go through BOBBY's belongings to see if any items matched what was taken from car break-ins in

04566

FD-302a (Rev. 10-6-95)

7A-AL-44453

Continuation of FD-302 of ___JUNE M. KONDRASKI_____ , On 05/24/2005 , Page ___3___

the Harding, PA, area. KONDRASKI stated that no items matched.
PRULA asked that BOBBY call him as a follow up. Approximately two
weeks later, BOBBY called to wish KONDRASKI's daughter a happy
birthday. At that time, he said he was still in Florida. In
actuality, KONDRASKI learned that BOBBY had taken a bus to Vermont
to visit DONALD FELL who was staying with his mother in Rutland,
Vermont. KONDRASKI stated that they had no further contact with
BOBBY; and on December, 1, 2000, SHANE LEE, BOBBY's brother, called
her house to advise that he had heard about some murders in Vermont
and that BOBBY and FELL may have been involved. KONDRASKI stated
that she was able to confirm the murders by reading articles on the
internet.

KONDRASKI learned that FELL and BOBBY had returned to the
Wilkes-Barre, PA, area after the murders; however, they never
stopped to see any relatives.

04567

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    05/31/2005

   ROBERT J. LEE, SR., white male, Date of Birth ▮▮▮▮▮▮▮ 1957, Social Security Account Number ▮▮▮▮▮▮▮▮▮▮, who resides at 85 Miner Street, Second Floor Rear Apartment, Hudson, Pennsylvania (PA), 18705, cellular telephone number 570-762-6233, was interviewed at the residence of DAVID KOWALCZYK and his wife, JUNE KONDRASKI, 8 Chandler Street, Wilkes-Barre, PA, 18705. Present during the interview was JUNE KONDRASKI. After being advised of the official identity of the interviewing Agent and nature of the interview, LEE provided the following information:

   LEE advised that he recently spoke to Special Agent (SA) MICHELLE C. HEILNER, FEDERAL BUREAU OF INVESTIGATION (FBI), Rutland, Vermont, and agreed to provide original letters written by his son, ROBERT LEE, JR., while he was incarcerated in jail at ST. ALBANS, Vermont, to SA JAMES J. GLENN, FBI, Scranton Resident Agency. LEE advised that he had copies of additional letters, but he has not yet found them. LEE agreed to provide any additional copies of letters to the FBI once he finds them. LEE requested that the letters be returned to him at the conclusion of the Federal death penalty trial of DONALD FELL slated to begin on June 20, 2005, in Burlington, Vermont. LEE added that these letters represent the only link he has with his deceased son.

   LEE stated that he was married to BONNIE DURWAY LEE; however, the marriage only lasted five years before they were divorced. LEE recalled that his son, BOBBY, was only approximately five years of age when he was divorced. LEE explained that his ex-wife fought for custody of their two sons, SHANE and BOBBY LEE. After several years of legal battles, LEE was finally awarded custody of his two boys. LEE stated that since his sons had resided with their mother, he did not have sufficient furniture in his home; and until he purchased beds for the boys, he could not have custody of his sons. LEE stated that his two boys were placed in foster care for a three year period prior to him receiving custody.

   LEE stated that his son BOBBY hated his mother. LEE's good friend, JUNE KONDRASKI, was considered more of a mother to BOBBY LEE than his own biological mother. LEE stated that he met KONDRASKI through his ex-wife as they were good friends while growing up. LEE hired KONDRASKI as his secretary when he owned a

Investigation on 05/24/2005 at Wilkes-Barre, PA

File # 7A-AL-44453 —179   Date dictated 05/31/2005

by SA JAMES J. GLENN:mh

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

04568

FD-302a (Rev. 10-6-95)

7A-AL-44453

Continuation of FD-302 of ___ROBERT J. LEE, SR._____ , On 05/24/2005 , Page 2

used car lot located in Kingston, PA.  LEE stated that after his divorce, he remained close friends with KONDRASKI and her family. LEE added that he has known KONDRASKI for approximately 30 years.

LEE stated that as early as age four, his son BOBBY demonstrated some behavioral problems.  When he was four years old and attending Head Start, he became enraged at his teacher and completely tore up the classroom.  After that incident, BOBBY was evaluated by professionals and was diagnosed as having a disassociated syndrome; wherein, BOBBY could only get so close to people before shutting them out.  Additionally, he was diagnosed with Attention Deficit Hyper Activity Syndrome and was prescribed medication.  LEE stated that as long as BOBBY took his medicine, he acted like any other normal student his age.

BOBBY attended the PLAINS ELEMENTARY SCHOOL located on West Carey Avenue, Plains, PA.  While in the sixth grade, BOBBY became friends with DONALD FELL.  They became instant friends and continued to associate with one another from that point.  LEE stated that DONALD FELL was approximately 12 years old when he first met him.  LEE recalled FELL was living with his aunt and sister in Wilkes-Barre and had numerous fights with the aunt.  At times, FELL would be thrown out of his house and end up staying overnight at the LEE residence.  LEE stated, initially, he thought FELL was a decent boy.  There were times when LEE would get up in the morning, and breakfast would already be made compliments of FELL.

LEE stated that in his free time, his son BOBBY enjoyed camping, the outdoors, collecting fossils, and had a mineral rock collection.  BOBBY enjoyed playing baseball and loved animals.  LEE stated that his son was intrigued by FELL, and the two became inseparable.

LEE related that BOBBY was not a great student; however, he was no dummy.  LEE would do as much work as was necessary to get by but was not motivated.  LEE stated that his son was a fan of heavy metal rock music and wore clothing that reflected that type of music.  LEE stated that his son wore the tee shirts of his favorite bands, dark blue jeans, and boots.  LEE stated that his son was not a violent individual; however, he would fight if he felt there was an injustice or that he had been wronged in some way.  During his teenage years, his son was adjudicated delinquent by Judge CHESTER MURASKI, Luzerne County, Wilkes-Barre, PA.  LEE could not specifically recall why he was placed in a juvenile

04569

FD-302a (Rev. 10-6-95)

7A-AL-44453

Continuation of FD-302 of ___ ROBERT J. LEE, SR. _____ , On 05/24/2005 ___ , Page ___ 3 ___

wilderness camp by Judge MURASKI but added that his son hung around kids who terrorized their neighborhood. LEE stated that his son was never involved in any violent activities but was engaged in some property destruction. LEE stated that while at the youth wilderness camp near Williamsport, PA, one of the counselors suggested that his son pursue a career working with animals because he had a knack in that area. After completing the youth camp, LEE's brother, KENNETH LEE, got BOBBY interested in working at a wildlife conservation named PANGEA near Miami, Florida. BOBBY loved working with exotic animals, such as panthers, alligators, and lions.

LEE stated that his son continued to associate with DONALD FELL and believed that FELL had something over him. For some reason, FELL could not stand being away from BOBBY. LEE recalled that for a six month period in 1999-early 2000, BOBBY worked at the PANGEA.

LEE recalled that in April 2000, after BOBBY returned from Florida to the Wilkes-Barre area, he hooked up with FELL and worked at JESSIE WILLIAMS' traveling carnival. WILLIAMS' is FELL's cousin. LEE recalled that in approximately July 2000, his son and FELL got into a fight in Woodstock, New York, and were incarcerated as a result. FELL advised that JUNE KONDRASKI and his mother went to New York and bailed out BOBBY from jail. LEE stated that his mother put up the money to get him out of jail. LEE advised that they left FELL in Woodstock.

LEE advised he planned to renovate an old classic automobile, either a Chevrolet Nova or Chevrolet Malibu, and planned to work with his son on this project. At this time, BOBBY was residing with LEE's friend JUNE KONDRASKI in Wilkes-Barre. BOBBY advised KONDRASKI that he planned to return to Florida and work with exotic animals. In October 2000, KONDRASKI gave BOBBY a ride to the MARTZ BUS TERMINAL in Wilkes-Barre where he boarded a bus supposedly to Florida. LEE stated that his last contact with his son was shortly after the incident in Woodstock. LEE stated that unknown to him, his son boarded the bus for Vermont to be reunited with DONALD FELL. LEE stated that it was uncharacteristic of BOBBY not to call or to forget special events. He did call KONDRASKI's home on October 31, 2000, to wish KONDRASKI's daughter a happy birthday. On November 5, 2000, LEE's brother, SHANE LEE, did not receive a birthday call. LEE stated it was not until early December 2000, that he learned about the murders of DEBORAH FELL, CHARLES CONWAY, and TERESCA KING.

04570

FD-302a (Rev. 10-6-95)

7A-AL-44453

Continuation of FD-302 of _____ROBERT J. LEE, SR._____ , On 05/24/2005 , Page  4

      LEE stated that he wanted to use the legal services of
LOU DIAMOND and LEO DeVAUL of Staten Island, New York.  LEE advised
that the courts in Vermont had JOHN PACHT represent his son.  PACHT
was a lawyer from Main Street, Burlington, Vermont.

04571

FD-302 (Rev. 10-6-95)

-1-

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    05/31/2005

On May 25, 2005, JUNE M. KONDRASKI, 8 Chandler Street, Wilkes-Barre, Pennsylvania, 18705, provided a folder containing copies of letters and drawings created by ROBERT J. LEE, JR. while he was incarcerated in prison at ST. ALBANS, Vermont. A short time later, LEE's father, ROBERT J. LEE, SR., arrived at KONDRASKI's residence to ensure that Special Agent JOSEPH F. NOONE received all pertinent documents.

Investigation on    05/25/2005    at Wilkes-Barre, PA

File # 7A-AL-44453 —|8|                                    Date dictated 05/31/2005

by    SA JOSEPH F. NOONE:mh

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

04572

SCI 302

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    06/15/2005

CHRISTOPHER EIKE, date of birth ███████ 1983, was interviewed at the State Correctional Institute (SCI), Coal Township, Pennsylvania. After being advised of the identities of the interviewing agents and the purpose of the interview, EIKE provided the following information:

EIKE was asked if he recalled the events surrounding his being assaulted on August 12, 2000. EIKE said yes and provided the following information:

EIKE worked an ice cream concession stand at the Wayne County Fair. While working at the fair EIKE met a man named DON who also worked at the fair. EIKE did not recall what attraction or concession DON worked. EIKE also met a man he thinks was DON'S brother, and a girl he thinks was DON's sister while working at the fair. EIKE did not recall this man's name but said the girls first name was TERRI.

On the second day of the fair EIKE drove DON, DON's brother, his friend TIM, TERRI, and a girl named CRYSTAL LNU to Woodstock, New York in his Camero. EIKE recalled CRYSTAL LNU working the dart game at the fair and living in a trailer park near Beach Lake, Pennsylvania. The group went to Woodstock to drink and do drugs. EIKE recalled having a minor traffic accident on the way to Woodstock. His car slipped off the wet road into the woods where it became stuck. The group pushed his car out and continued on their way to Woodstock.

On the fourth day of the fair, two days after the first trip to Woodstock, DON, Don's brother, TERRI LNU, and CRYSTAL LNU asked EIKE to drive them to Woodstock again. Because his friend TIM would not be going, he initially told them no. EIKE changed his mind when they offered to pay for gas and give him drugs.

They arrived at Woodstock around midnight, listened to a band, and began smoking weed, doing acid and mushrooms. EIKE said the drugs were purchased at Woodstock. DONALD FELL provided mushrooms and TERRI LNU provided acid. This was the first time EIKE had done mushrooms or acid.

| | | |
|---|---|---|
| Investigation on | 06/15/2005 | at Coal Township, PA |

File # 7A-AL-44453                              Date dictated  06/15/2005

SA Timothy K. O'Malley
by   SA C. Patrick Austin

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

04573

FD-302a (Rev. 10-6-95)

7A-AL-44453

Continuation of FD-302 of    Christopher Eike                                    , On 06/15/2005 , Page    2

Around 6:00 AM that morning DON, DON's brother, TERRI LNU, CRYSTAL LNU, and EIKE were in Yazgar's Barn. EIKE told the others that he had to drive them back because they had work that day. However, EIKE's Camero had been towed sometime during the night. Although his car had been towed, EIKE told the others that he needed to drive them back several more times. He did this because "I was on acid so I was kind of messed up".

When EIKE took the keys to his car out of his pocked and again told the others he needed to drive them back, DON took off his shirt and said "that's it". DON came over to EIKE and punched him in the face. EIKE fell to the ground. DON got on EIKE and repeatedly punched him in the face and slammed his head into the floor. The floor was covered in rocks, possibly slate. DON walked away momentarily to drink beer. When DON walked away, "another guy" kicked EIKE in the back. When DON returned, he urinated on EIKE's leg and kicked him in the head and ribs. EIKE does not recall DON saying anything during the assault. He heard the others laughing and recalled seeing the girls laughing.

Two men and an Italian looking girl with black hair wearing a shiny blue jacket came to EIKE's assistance. The two men stopped the assault as the girl called 911. EIKE passed out around this time. When he regained conscious he was in an ambulance and recalled someone treating him say that they had brought him back. EIKE believed that he had died and was resuscitated.

EIKE claims the police told him it wasn't wise to file charges because there were allegations that EIKE attempted to rape DON's sister the night of the assault. EIKE said the allegation was untrue but was the basis for he and his parents decision not to file charges.

At the time of the assault EIKE had only known DON for a few days. EIKE said he had no idea why DON assaulted him.

EIKE stated that he is willing to testify about this assault.

04574