CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA

NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS
LONDON · MOSCOW · FRANKFURT · COLOGNE
ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial: +1 212 225 2550
E-Mail: lliman@cgsh.com

MARK A. WALKER
LESLIE B. SAMUELS
EDWARD F. GREENE
ALLAN G. SPERLING
EVAN A. DAVIS
LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
A. RICHARD SUSKO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
WILLIAM F. GORIN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
JAIME A. EL KOURY
STEVEN G. HOROWITZ
ANDREA G. PODOLSKY
JAMES A. DUNCAN
STEVEN M. LOEB
DANIEL S. STERNBERG
DONALD A. STERN
CRAIG B. BROD
SHELDON H. ALSTER
WANDA J. OLSON
MITCHELL A. LOWENTHAL
DEBORAH M. BUELL
EDWARD J. ROSEN
JOHN PALENBERG
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
JANET L. FISHER

DAVID L. SUGERMAN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RAYMOND B. CHECK
RICHARD J. COOPER
JEFFREY S. LEWIS
FILIP MOERMAN
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
PAUL E. GLOTZER
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER

KRISTOFER W. HESS
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
CHRISTOPHER P. MOORE
JOON H. KIM
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
    RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
GABRIEL J. MESA
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
NANCY I. RUSKIN
WALLACE L. LARSON, JR.
JAMES D. SMALL
AVRAM E. LUFT
ELIZABETH LENAS
DANIEL ILAN
CARLO DE VITO PISCICELLI
    RESIDENT COUNSEL

December 3, 2010

VIA FAX AND EXPRESS MAIL

Honorable William K. Sessions III
11 Elmwood Avenue, Room 506
Burlington, VT 05401

U. S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
BY 7/23/2013
DEPUTY CLERK

Re: Ex Parte Notice regarding Juror Interviews in Donald Fell v. United States,
2:01-CR-12-01

Dear Judge Sessions,

Enclosed please find a letter providing the Court with notice of our intent to conduct jury interviews on December 17-18, 2010. For the reasons set forth in the enclosed letter, we request that this notice be considered ex parte and under seal.

Sincerely,

Lewis J. Liman

CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA

NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS

LONDON · MOSCOW · FRANKFURT · COLOGNE

ROME · MILAN · HONG KONG · BEIJING

MARK A. WALKER
LESLIE B. SAMUELS
EDWARD F. GREENE
ALLAN G. SPERLING
EVAN A. DAVIS
LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
A. RICHARD SUSKO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
WILLIAM F. GORIN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
JAIME A. EL KOURY
STEVEN G. HOROWITZ
ANDREA G. PODOLSKY
JAMES A. DUNCAN
STEVEN M. LOEB
DANIEL S. STERNBERG
DONALD A. STERN
CRAIG B. BROD
SHELDON H. ALSTER
WANDA J. OLSON
MITCHELL A. LOWENTHAL
DEBORAH M. BUELL
EDWARD J. ROSEN
JOHN PALENBERG
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
JANET L. FISHER

DAVID L. SUGERMAN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RAYMOND B. CHECK
RICHARD J. COOPER
JEFFREY S. LEWIS
FILIP MOERMAN
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
PAUL E. GLOTZER
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER

KRISTOFER W. HESS
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
CHRISTOPHER P. MOORE
JOON H. KIM
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
      RESIDENT PARTNERS

SANDRA M. ROCKS
ELLEN M. CREEDE
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
GABRIEL J. MESA
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
NANCY I. RUSKIN
WALLACE L. LARSON, JR.
JAMES D. SMALL
AVRAM E. LUFT
ELIZABETH LENAS
DANIEL ILAN
CARLO DE VITO PISCICELLI
      RESIDENT COUNSEL

Writer's Direct Dial: +1 212 225 2550
E-Mail: lliman@cgsh.com

December 3, 2010

VIA EXPRESS MAIL
Honorable William K. Sessions III
11 Elmwood Avenue, Room 506
Burlington, VT 05401

                 Re: *Ex Parte* Notice regarding Juror Interviews in Donald Fell v. United States,
                     2:01-CR-12-01

Dear Judge Sessions,

       We write to advise the Court of our intention to attempt to conduct informal interviews of the jurors in the above-captioned case.

       As post-conviction counsel for Mr. Fell, it is our professional obligation to investigate every potential claim he might assert in a Section 2255 petition. The purpose of these informal interviews is to investigate the possibility of any misconduct that may have infected the proceedings by which Mr. Fell was convicted and sentenced to death. The right to trial before an impartial jury is at the heart of the protections afforded by the Constitution, and claims implicating the Sixth Amendment right to trial before an impartial jury are appropriately raised on habeas corpus. *United States v. Smith*, 62 F.3d 641, 650 n.5 (4th Cir. 1995). Because jury impartiality is critical to a defendant's ability to receive a fair trial, Petitioner and his counsel must meaningfully explore issues of juror misconduct. *See Irvin v. Dowd*, 366 U.S. 717, 721, 81 S. Ct. 1639, 1642 (1961) (recognizing the right to trial by jury as "the most priceless" among constitutional safeguards); *see also Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 1833 (1999). It is incumbent on federal habeas counsel to "conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief." *McCleskey v. Zant*, 499 U.S. 467, 498, 111 S. Ct. 1454, 1472 (1991). This necessarily entails conducting an appropriate inquiry of the jurors to determine whether a constitutional violation has occurred. *See, e.g., Williams v. Taylor*, 529 U.S. 420, 440-43, 120 S. Ct 1479. 1492-94 (2000) (reaching merits of a juror misconduct claim in federal habeas where post-conviction counsel made a reasonable and timely effort to investigate possibility that a juror concealed on voir dire a

Honorable William K. Sessions III, p. 2

relationship that would have disqualified her from sitting at the guilt phase) *aff'd sub nom.*, 39 F. App'x 830 (4th Cir. 2002); *Bulger v. McClay*, 575 F.2d 407, 411–12 (2d Cir. 1978) (affirming the grant of a petition for habeas corpus where a juror admitted that he had based his decision on a newspaper article a fellow juror provided to him which contained information outside the record).

The proposed interviews are permitted by the Vermont Rules of Professional Conduct. Rule 3.5 of the Vermont Rules of Professional Conduct states, in pertinent part: "a lawyer shall not. . . communicate with a juror or prospective juror after the court clerk has certified that the juror's term of service is complete if: (1) the communication is prohibited by law or court order; (2) the juror has made known to the lawyer a desire not to communicate; or (3) the communication involves misrepresentation, coercion, duress or harassment." Vt. R. Prof. Cond. Rule 3.5 (2009). There is no law or court order that should prohibit counsel from attempting to interview jurors to fully explore whether Mr. Fell has a claim based on juror misconduct and counsel will ensure that he and all members of the team participating in juror interviews will adhere to all of the applicable professional standards, to ensure that juror interviews are conducted on a voluntary basis without a hint of misrepresentation, coercion, duress or harassment.

In particular, counsel intends to attempt to conduct the interviews from December 17-18, 2010. We have conferred with own local counsel, Richard Rubin, and have devised a protocol for all team members to follow to ensure adherence to the Vermont rules. Pursuant to this protocol, counsel will identify themselves as counsel for Mr. Fell at the beginning of all juror interviews. In addition, counsel will conduct all juror interviews with the utmost decorum and will meticulously respect the jurors' willingness to discuss the case, as well as their choice to decline. Counsel will ensure that all interviews are conducted under the supervision of Vermont local counsel (Mr. Rubin) and by members of our team who are admitted to practice. Our team of interviewers has been thoroughly educated in the law regarding issues arising out of jurors' conduct, and all questioning will be confined to pertinent matters that might give rise to cognizable claims such as, for example, extraneous influence.

This case involves a death sentence, a circumstance which the Supreme Court has consistently stressed requires heightened reliability. *Lowenfield v. Phelps*, 484 U.S. 231, 238–39, 108 S. Ct. 546, 578 (1988) (the "'qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed'") (citation omitted). The American Bar Association published commentary relating to the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel and Death Penalty Cases ("ABA Guidelines")[1] which clearly states that, where permitted, post-conviction counsel "***must*** investigate the possibility that the defendant was judged at either the guilt or the penalty phase by one or more jurors who were not impartial." American Bar Association, Guidelines for the

---

[1] The ABA Guidelines have been regularly cited by the Supreme Court as a guide to the proper defense of capital cases. *Rompilla v. Beard*, 545 U.S. 374, 387, 125 S. Ct. 2456, 2466 (2005); *Wiggins v. Smith*, 539 U.S. 510, 524, 123 S. Ct. 2527, 2536-37 (2003).

Honorable William K. Sessions III, p. 3

Appointment and Performance of Defense Counsel in Death Penalty Cases (February 2003), 31 Hofstra L. Rev. 913, 1017 n.197 (Feb. 2003) (emphasis added).[2]

We further ask that the Court consider this notice under seal and *ex parte*. We request that the Court review this notice *in camera* and maintain it under seal lest premature public disclosure of the notice will attract public attention and – due to the emotion surrounding this case – prevent the very interviews defense counsel seeks before defense counsel has had the opportunity to approach the jurors directly and request the opportunity to interview them, free from any public pressure jurors might feel not to participate in an interview conducted by counsel for a condemned inmate. We also are concerned that premature public disclosure of undersigned counsel's intent to conduct interviews of the jurors in this case may itself cause members of the press to contact jurors before defense counsel has the opportunity to approach them and in a manner that would not be as focused nor as attuned to jurors' potential desire for privacy as the interviews counsel intends to undertake.

We request that this notice be considered *ex parte* because notification to the United States Attorney's office is not necessary or appropriate in this case. When conducted by trial counsel in the context of Rule 33 motions for new trial, the Second Circuit has indicated a strong preference for notice to the trial court and opposing counsel before such interviews are conducted. *United States v. Moten*, 582 F.2d 654, 664–66 (2d Cir. 1978). However, the policy reasons underlying *Moten* are inapplicable here. In *Moten*, an attempt to influence the jury by members of an organized drug ring heightened the court's sensitivity to juror harassment. *Moten*, 582 F.2d at 656–57. Also, any perceived threat to the jury's integrity is substantially diminished at the post-conviction stage. Unlike in *Moten*, the jury interviews are being conducted more than five years after the verdict by post-conviction counsel, as opposed to trial counsel, and in a death penalty case where the ABA Guidelines require investigation of the possibility that one or more jurors was not impartial. As has later been observed by Chief Judge Brieant of the Southern District of New York, the notice requirements

> [are] not supposed to disable lawyers from establishing claims of
> juror bribery or improper outside influence. The right to assistance
> of counsel does not end with the judgment of conviction. We can
> conceive of no reason why counsel for criminal defendants should
> be forced either to await the fortuity of media investigation or to
> file unsubstantiated motions to impeach a verdict based only on
> suspicion. Any rule necessitating such a choice would so limit
> counsel as to deny criminal defendants their Sixth Amendment
> right to effective representation. It would also burden the courts

---

[2] *See*, American Bar Association Guidelines for the Appointment and Performance of Defense Counsel and Death Penalty Cases, 31 Hofstra L. Rev at 1051-52 n.260 ("[C]ounsel investigating a capital case should be particularly alert to the possibility that, notwithstanding surface appearances, one or more jurors were unqualified to sit at either phase of the trial and make every effort to develop the relevant facts whether by interviewing jurors or otherwise. Such inquiries can be 'critical in discovering constitutional errors'") (citation omitted).

Honorable William K. Sessions III, p. 4

> with meritless-and, by definition, unexamined-allegations.
> Practical necessity often leaves counsel with little choice but to
> conduct a limited independent investigation to substantiate
> suspicion in order to justify a court-directed full investigation.

*United States v. Ianniello*, 740 F. Supp. 171, 177 (S.D.N.Y. 1990), *rev'd on other grounds, aff'd in part*, 8 F.3d 909 (2d Cir. 1993).

We request that the Court review this notice *in camera* and maintain it under seal lest premature public disclosure of the notice will attract public attention and – due to the emotion surrounding this case – prevent the very interviews defense counsel seeks before defense counsel has had the opportunity to approach the jurors directly and request the opportunity to interview them, free from any public pressure jurors might feel not to participate in an interview conducted by counsel for a condemned inmate. We also are concerned that public disclosure of undersigned counsel's intent to conduct interviews of the jurors in this case may cause members of the press to contact jurors in a manner that would not be as focused nor as attuned to jurors' potential desire for privacy as the interviews counsel intends to undertake.

Furthermore, notification to opposing counsel would be inappropriate because the proposed jury interviews constitute paradigmatic attorney work product protected from disclosure to adversaries because they reveal defense counsel's strategy and the persons it chooses to interview prior to bringing a lawsuit, under Section 2255, as well as the product of those interviews. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947) ("[I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. . . . This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways. . . . Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. . . . The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."). It would also inevitably cause opposing counsel to contact the jurors first and potentially deter members of the jury from speaking to defense counsel.

Finally, there is no reason to provide notification to opposing counsel in this case, since there is nothing in this notice that would prevent the United States Attorney's Office from speaking to members of the jury itself. As this Court instructed the jurors at the close of the trial, "pursuant to the First Amendment of the United States Constitution, your names are essentially released to the press and to the public. You may receive telephone calls. It's certainly your right to speak with anyone if you wish to speak with anyone . . . ." Trial Tr. 181:25-182:4 July 13, 2005.

Honorable William K. Sessions III, p. 5

Accordingly, Counsel requests that the Court maintain this notice *ex parte* and under seal.

Respectfully submitted,

Lewis J. Liman

States Constitution, your names are essentially released to the press and to the public. You may receive telephone calls. It's certainly your right to speak with anyone if you wish to speak with anyone but I would remind you that the contents of a jury deliberation are confidential. I told you that at the very beginning. It's extraordinarily important -- this is not OJ Simpson. And I just want to remind you of that. But again, thank you very much, and you are now excused.

MR. PRIMOMO: Judge, please, may we approach?

THE COURT: Yes.

(The following was held at the bench.)

MR. PRIMOMO: Judge, Donnie Fell told me before, regardless of, regardless of the verdict, and specifically, even if there was a death verdict, that he wants me to ask you to permit, to invite the jury when you sentence him, at which time he wishes to thank them for their hard work, and offer his remorse, because he feels that if it was done before this time, it would not be construed that way.

THE COURT: Okay.

MR. PRIMOMO: And, I told him that I would ask you that, and that I believed that -- that you would invite them to the sentencing, and specifically, that --

THE COURT: If you wish to make a statement --

"We the jury decide by unanimous vote that a sentence of death shall be imposed upon Donald Fell."

Signed by the foreperson, July 14th, in the year 2005.

Mr. Foreperson, was that the verdict of the jury as read?

JURY FOREPERSON:  Yes, it was.

COURTROOM DEPUTY:  So say you all, ladies and gentlemen?

(The jury all indicate assent.)

THE COURT:  Does either side wish polling of the jury?

MR. DARROW:  No, your Honor.

MR. BUNIN:  Yes, your Honor, we ask the jury be polled.

THE COURT:  Okay.

(The jury was polled as to each count and all twelve members indicated agreement with the verdict as reported.)

THE COURT:  Well, I appreciate very much your service.  You paid attention throughout this trial.  You have really fulfilled the responsibilities of a jury to the maximum.  I want to say that I appreciate personally all of the efforts that you made, and I should say that now, pursuant to the First Amendment of the United