## UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

| | |
|---|---|
| DONALD FELL, <br><br>       Movant, <br><br>     v. <br><br> UNITED STATES OF AMERICA, <br><br>       Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> ) 2:01-CR-12-01 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONDUCT THE COURT'S JUROR INQUIRY *IN CAMERA*

LEWIS J. LIMAN
Cleary Gottlieb Steen &
Hamilton LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

CATHLEEN PRICE
P.O. Box 321762
New York, New York 10032
(212) 998-6193

RICHARD RUBIN
Rubin, Kidney, Myer & DeWolfe
237 N. Main Street
Barre, Vermont, 05641-4125
(802) 479-2514

Date:   July 24, 2013

*Attorneys for Donald Robert Fell, Jr.*

Donald Fell, by and through his undersigned counsel, respectfully submits this memorandum of law in support of his motion to conduct the Court's juror inquiry on Claim XXII of Mr. Fell's 2255 Motion *in camera* and to seal the transcript of said inquiry immediately afterward.

### I.   A Number of Compelling Interests Weigh Heavily in Favor of Closure.

Although court procedures in criminal matters are presumptively open to public access, there are times when the court is within its discretion to close them. The standards applicable to closure of court proceedings are well-settled. "[T]he district court must determine, in specific findings made on the record, if there is a substantial probability of prejudice to a compelling interest of the defendant, government, or third party, which closure would prevent." *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995). In the Second Circuit, the tailored closure of proceedings regarding juror-related claims is well within the discretion of a district court. *See United States v. Ianniello*, 866 F.2d 540, 544 (2d Cir. 1989) (district court has discretion to conduct an evidentiary hearing on juror misconduct *in camera*); *Doe*, 63 F.3d at 128 ("[I]f the court finds that closure is warranted, it should devise a closure order that, while not necessarily the least restrictive means available to protect the endangered interest, is narrowly tailored to that purpose." (citations omitted)). Indeed, this Court noted its interest in protecting the jurors in the scheduling conference on June 1, 2011, stating: "I am concerned about the jurors being overly burdened in this case." Tr. 20.

Here, there are a number of well-recognized compelling interests that warrant closure of the August hearing. First, the interests of the jurors in their privacy are not the only interests at stake. Mr. Fell has an independent interest in a hearing under circumstances that will ensure the flow of information free from any chilling effect that immediate public exposure

1

could cause.  Mr. Fell is under a sentence of death, and he has an exceptionally urgent need to protect his opportunity for the full and fair airing of the facts in support of his Section 2255 claims.  "[T]he penalty of death is qualitatively different from a sentence of imprisonment, however long . . .  Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case. . . .  The Supreme Court has held that if even one member of a jury that has sentenced a defendant to death was not impartial, that sentence must be vacated."  *United States v. Sampson*, 820 F.Supp.2d 151, 157 (D. Mass. 2011).  Mr. Fell has a compelling interest in a full review of his claims that cannot be protected if the flow of information is chilled by the jurors' fear of identification and disclosure.

Mr. Fell's interest in a full review of his claims is dependent upon a well-recognized independent and compelling interest in juror candor in criminal proceedings.  *See United States v. King*, 140 F.3d 76, 82-83 (2d Cir. 1998) (affirming order to close voir dire proceeding to protect juror candor where trial was highly publicized and sensitive issue of racial bias was at issue); *see also Doe*, 63 F.3d at 128 (noting that "the right of access to criminal proceedings is not absolute" and may be outweighed by the defendant's right to fairness in those proceedings).  Here, the subject matter of Mr. Fell's juror claims involves especially sensitive topics and context: childhood sexual abuse and its recall; domestic violence; prior criminal history including alcohol-related behaviors; and deliberate investigation of extraneous evidence.  Anything less than juror candor will substantially risk undermining Mr. Fell's opportunity for meaningful review of his juror claims.  Moreover, to the extent the inquiry that has been ordered reveals the need for discovery or a broader inquiry – perhaps involving other jurors – *in camera* proceedings will make it more likely that the Court will be able to receive candid, unrehearsed,

2

and untainted answers from these other jurors, whose willingness to testify openly and honestly will not be negatively impacted by media coverage of the August hearing. *See United States v. Sampson*, No. 01-10384-MLW, slip op. at 3 (D. Mass., Apr. 15, 2011) (attached hereto as Exhibit A).

Second, the Court has an independent institutional interest in juror candor that is complementary to Mr. Fell's compelling interests in a full review and juror candor. Courts routinely discuss sensitive matters with prospective jurors during pre-trial voir dire privately to ensure candor. *See, e.g.*, Trial Tr. JVD-I, 9, May 4, 2005 (allowing a juror to discuss a sensitive issue, his daughter's rape, at the bench). The same consideration that would warrant private questioning in pre-trial voir dire is equally operative now: the risk that in an open hearing jurors will not be candid about their private history. Other courts have recognized this very interest. *See King*, 140 F.3d at 82-83; *Sampson*, slip op. at 3 (Ex. A) (stating accurate fact-finding could be compromised "if the public was present in the courtroom when the jurors were asked highly personal and potentially embarrassing questions").

Third, the privacy of Mr. Fell's jurors is another well-recognized compelling interest that weighs in favor of closure of the proceeding. *See Doe*, 63 F.3d at 128 (noting "compelling interests" justifying closed proceedings include "privacy interests of the defendant, victims or other persons"); *Sampson*, slip op. at 3-4 (Ex. A) (conducting evidentiary hearings in a Section 2255 proceeding on whether jurors provided inaccurate answers about matters commonly understood as sensitive during voir dire *in camera* because, *inter alia*, sensitive issues implicated "significant privacy interests of the jurors and of third parties" and "[j]urors summoned from the community to serve as participants in our democratic system of justice are entitled to safety, privacy, and protection against harassment" (alteration in original) (quoting *In*

3

*re Globe Newspaper Co.*, 920 F.2d 88, 95 (1st Cir. 1990))); *cf. Press-Enter. Co. v. Superior Court,* 464 U.S. 501, 511 (1984) (a compelling interest may exist when voir dire "touches on deeply personal matters that [a] person has legitimate reasons for keeping out of the public domain"); D. Vt. Admin. P. for Elec. Case Filing (N)(1)(c) (Feb. 19, 2013)[1] (citing The Judicial Conference Policy on Privacy and Public Access to Electronic Case Files) (limiting the information about jurors or potential jurors that can be disclosed through electronic filing due to privacy concerns); *Guidance for Implementation of the Judicial Conference Policy on Privacy and Public Access to Electronic Criminal Case Files, Documents for Which Public Access Should not be Provided* (2004)[2] (same).

The Court itself seemed to recognize the compelling interest individual jurors might have in their privacy, but suggested any juror interested in privacy could invoke that interest himself or herself at the hearing. Respectfully, that suggestion is insufficient to protect the compelling interests that justify court closure here. Not only would reliance on a juror to invoke an interest in privacy be insufficient to protect the institutional interests and Mr. Fell's interests in juror candor and the free flow of information, *see King*, 140 F.3d at 82-83, but the jurors themselves cannot be expected (or required) to accurately determine their interest in privacy at the hearing itself. In the first instance, as further elucidated below, while certain of the headlines of the juror claims have become public, the identity of the jurors associated with those claims have not. The simple appearance of the jurors at the hearing – even if they are identified only by number – can threaten their privacy interests before they have the opportunity to request court closure. In addition, no juror at the outset of the hearing will have sufficient knowledge or information to make an informed decision about his or her privacy interests. In order to examine

---

[1] These procedures are available at: http://www.vtd.uscourts.gov/sites/vtd/files/ECFAdminProc.pdf.
[2] This guidance is available at:
http://www.uscourts.gov/RulesAndPolicies/JudiciaryPrivacyPolicy/CriminalCaseFilePolicyGuidelines2004.aspx.

the claims, the Court and the parties may need to elicit details of Mr. Fell's allegations that far exceed those disclosed at the pleading stage. In the course of the inquiry, questions may be asked that compromise the jurors' privacy interests in ways they did not predict. A closed hearing will relieve the jurors of the burden of anticipating a line of questioning that encroaches on their interests, halting questions coming from the Court or the parties, and requesting that the proceeding be sealed mid-hearing. Additionally, this process allows the court to unseal the transcript of the proceedings at a later date should it determine after the hearing that the jurors' privacy interests will not be impaired. For these reasons, the court need not require a juror to invoke privacy concerns before it closes the hearing. Based on the record before it, the Court could properly conclude that the privacy interests at stake necessitate the closing of the hearing.

Fourth, the privacy interests of other third-parties is a separate compelling interest that militates closure of the hearing and sealing of the transcript. The testimony of Jurors 26, 143, and 162 will likely feature statements about the behavior or history of third-parties such as the person accused of sex abuse, people who are not otherwise connected to the Fell prosecution. The privacy interests of these individuals further enhance the need for tailored closure of the proceeding, and sealing of the transcript. *See Doe*, 63 F.3d at 128; *Sampson*, slip op. at 3-4; *see also King*, 140 F.3d at 82-83.

From the moment of Mr. Fell's indictment, this case has received an enormous amount of publicity in the Vermont area. *See, e.g.*, Damian Pagano & Alethea Renzi, *Two Accused in Triple Murder*, RUTLAND HERALD, Dec. 2, 2000; Matt Sutkoski, *Triple Killing Angers, Scares Rutland*, BURLINGTON FREE PRESS, Dec. 3, 2000, at 01A; Brent Hallenbeck, *Ark. Chief Describes Arrests of Vt. Suspects*, BURLINGTON FREE PRESS, Dec. 4, 2000, at 01A. This publicity has continued through Mr. Fell's post-conviction appeals. *See, e.g.*, Sam

Hemingway, *Judge to Examine Conduct of 3 Jurors in Death Penalty Trial*, BURLINGTON

FREE PRESS, Jun. 5, 2013[3]; *Jurors from Vt. Death Trial to be Questioned*, WCAX.COM, Jun.

10, 2013.[4] An open inquiry of Jurors 26, 143, and 162 would put the sensitive matters in issue

on public display, and will quite likely subject the jurors to further harassment. As in *Sampson*,

which involved similarly sensitive issues, conducting the inquiry of the jurors *in camera* will

protect the jurors' privacy and obviate this risk. *Sampson*, 820 F. Supp. 2d at 161, 192-193

(conducting closed evidentiary hearings where juror's dishonesty during voir dire raised issues

including spousal abuse and family members' criminal conduct); Hr'g Tr. at 4-5, *Sampson*, Nov.

18, 2010 (relevant excerpt attached hereto as Exhibit B) (ordering courtroom doors locked

immediately after attorney appearances).

> II.    An Open Juror Inquiry Will Substantially Prejudice These Compelling
>        Interests and the Public's General Right to Access Needs to Be
>        Overridden.

Under these circumstances, closure of the juror hearing is necessary and

appropriate to avoid the substantial harms to the compelling interests that have been enumerated.

*See, e.g., Sampson*, slip op. at 3-4 (Ex. A). First, as has been explained, there are several

cognizable and compelling interests that are implicated in the open hearing of Mr. Fell's juror

claims: Mr. Fell's right to full review; the need for juror candor and an environment in which

juror candor can be secured generally; the privacy interests of the jurors themselves about the

facts at issue; and the privacy interests of otherwise uninvolved third-parties. As has also been

noted, these interests will necessarily be prejudiced by an open airing of the pertinent facts. *See,*

*e.g., Sampson*, slip op. at 3-4 (Ex. A). In *Sampson*, for example, Juror C testified in an initially

---

[3] This article is available at: http://www.burlingtonfreepress.com/article/20130605/NEWS02/306050017.
[4] This article is available at: http://www.wcax.com/story/22520627/3.

6

closed proceeding about "her disturbing personal experiences," which included domestic violence and the criminal history of her child. *See Sampson*, 820 F. Supp. 2d at 181, 183-84. The other jurors questioned *in camera* testified about their own criminal histories (driving violations) and their personal relationships (romantic involvement with a former police officer). *See id.* at 198-99. As in *Sampson*, Jurors 26, 143 and 162 will testify about deeply personal and potentially embarrassing, painful experiences, including Juror 26's criminal history and Juror 162's experience being sexually abused as a child. An open proceeding cannot protect the privacy interests of the jurors nor ensure the candid testimony that Mr. Fell's right to a fair hearing demands.

The limited public disclosure of some information about the claims that has occurred neither moots these interests nor makes the prejudice of a public hearing any less substantial. The Court has inquired whether an open court hearing will prejudice the interests of the jurors any more than they have already been prejudiced by the submission of certain information about the jurors in public filings and the attendant media attention those pleadings received. But an open court hearing would effect a substantial intrusion in privacy beyond anything caused by the limited disclosures to date. The disclosures to date have concerned the nature of Mr. Fell's claims and the type of information that, for example, was allegedly withheld by the jurors. That information has been disclosed in broad strokes. The identities of the jurors and the third parties have not been disclosed. Juror 162's declaration was filed under seal and remains so; documents pertaining to Jurors 26 and 143 were redacted to remove any identifying information.[5] Even if the Court were to refer to the jurors by only their juror numbers during the hearing, their very appearance in open court at a hearing would make them identifiable, both to

---

[5] Because of these actions, the press that has been generated around the August hearing has not identified the jurors. *See, e.g.*, Sam Hemingway, *Judge to Examine Conduct of 3 Jurors in Death Penalty Trial*, BURLINGTON FREE PRESS, Jun. 5, 2013, available at: http://www.burlingtonfreepress.com/article/20130605/NEWS02/306050017

7

those who know them (but do not know the allegedly withheld information about them) and to those who do not know their names but who could readily identify them from their appearance.[6] At minimum, the jurors would reasonably be concerned that their appearance will make them identifiable and that reasonable concern itself would have a chilling effect. Moreover, (as alluded to above) this examination will not merely reiterate the facts already repeated in the media. The reported facts include Juror 162's general statement that she was sexually abused, Juror 26's criminal history, and Juror 143's discussion of his trip to Rutland during trial and aim of a shotgun at a fellow juror during deliberations. There is a stark difference between revealing the fact of a juror's sex abuse or a prior criminal conviction, and discussing the details of these sensitive topics and how they impacted the jurors and their family members in open court. This publicity could harm the jurors' interests in their privacy, as well as jeopardize their willingness to testify regarding the events alleged in the 2255 Motion and to candidly answer follow up questions regarding those events.

Accordingly, the prejudice to the compelling interests at stake, which cannot be avoided through any alternative to closure, overrides the public's right to access. *See Doe*, 63 F.3d at 128 (holding that when it finds a substantial probability of prejudice will not be obviated by reasonable alternatives to closure, the district court should determine whether the prejudice to the compelling interest overrides the public's right to access). Mr. Fell's interest in a full and fair hearing, especially in light of his sentence to death, far outweighs the public's interest in immediate access to sensitive information from these jurors when, as the Court recognized, we are still in the investigative stage of these criminal proceedings.

---

[6] This is a substantial concern that counsel for Mr. Fell is prepared to elaborate on *in camera* but that would not be appropriate to further discuss in an unsealed court pleading for fear that mention of it would compromise the very privacy interests Mr. Fell is attempting to protect.

III.    An *In Camera* Inquiry with a Sealed Transcript Is Narrowly Tailored to Protect the Compelling Interests.

Mr. Fell is not asking that the hearing on his entire 2255 Motion be conducted in closed proceedings. He is merely asking that all inquiry regarding his claims about the conduct of the jurors be conducted *in camera* with sealed transcripts. After the hearing, the Court – in consultation with the parties – can determine which parts of the transcripts to make public. An order restricting public access to court proceedings need not be "the least restrictive means available to protect the endangered interest," but must be "narrowly tailored to that purpose." *Doe*, 63 F.3d at 128. As in *Sampson* and *United States v. Moten*, here there are no reasonable alternatives to *in camera* inquiry that will adequately protect Mr. Fell's rights, the jurors, and the other compelling interests. *See, e.g.*, Hr'g Tr. 6, *Sampson*, Nov. 18, 2010 (Ex. B) (finding there was no reasonable alternative to closure); *see also United States v. Moten*, 582 F.2d 654, 661 (2d Cir. 1978). No public interest in hearing the non-public facts in support of these claims can outweigh the need to protect their full and fair airing. Therefore, this Court should conclude that under *Doe* and as in *Sampson*, the hearing on Mr. Fell's juror claims (Claim XXII of the 2255 Motion) should be conducted *in camera*, and the transcript thereafter sealed. In the alternative, Mr. Fell respectfully requests that the Court conduct its juror inquiry on Claim XXII of Mr. Fell's 2255 Motion *in camera* and seal the transcript of said inquiry until the parties can submit briefs as to whether or not the transcript should remain sealed indefinitely.

IV.    Conclusion

For the foregoing reasons, Mr. Fell respectfully requests that the Court conduct its juror inquiry on Claim XXII of Mr. Fell's 2255 Motion *in camera* and seal the transcript of said inquiry immediately afterward.

9

RESPECTFULLY SUBMITTED,

Dated:  July 24, 2013
New York, New York

LEWIS J. LIMAN
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2550
Fax: (212) 225-3999

Dated:  July 24, 2013
Barre, Vermont

/s/ Richard Rubin
RICHARD RUBIN
Rubin, Kidney, Myer & DeWolfe
237 N. Main Street
Barre, Vermont, 05641-4125
(802) 479-2514
Fax: (802) 479-2516

Dated:  July 24, 2013
New York, New York

/s/ Cathleen Price
CATHLEEN PRICE
P.O. Box 321762
New York, New York 10032
(212) 998-6193

*Attorneys for Donald Robert Fell, Jr.*

10