UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| DONALD FELL | ) | |
| | ) | |
| v. | ) | No. 2:01-cr-12 |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

OPPOSITION OF THE UNITED STATES TO MOTION TO CLOSE COURTROOM AND
SEAL TRANSCRIPT

The United States of America, by and through its attorney, Tristram J. Coffin, United States Attorney for the District of Vermont, opposes Donald Fell's "Motion to Conduct the Court's Juror Inquiry *In Camera*," filed July 24, 2013.

Seeking to overturn the jury's 2005 capital verdict, one of Fell's many contentions is that three trial jurors committed misconduct. Fell urges that Jurors 162 and 43 were dishonest during jury selection, and that Juror 143 was dishonest during trial by responding falsely to the Court's inquiries about extraneous information. Fell also claims that Jury 143 threatened a wavering female juror by pointing an unloaded shotgun at her during deliberations, coercing her to change her vote.

The Court has scheduled an August 15, 2013, hearing on Fell's juror misconduct claims. The instant motion seeks to close the hearing and seal the transcripts. As justification for this extraordinary remedy, he urges that an open court would not adequately ensure "juror candor." In other words, Fell contends not only that jurors were dishonest during jury selection and trial, but they also are likely to be dishonest at an open hearing as well (eight years later), even when testifying under oath.

1

Fell fails to advance grounds to override the vital interests of the public, and the families of the victims he murdered, in open judicial proceedings.  His present efforts to subvert a Vermont jury's considered verdict, by claiming that jurors are dishonest and cannot be trusted, should be made in open Court, subject to the scrutiny of Vermonters and his victims.

The public and the press have a qualified First Amendment right to attend criminal proceedings.  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980).  The Supreme Court has observed that:

> Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the fact-finding process, with benefits to both the defendant and to society as a whole.  Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process.  And in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process – an essential component in our structure of self-government.

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982).

"The open trial . . . plays as important a role in the administration of justice today as it did for centuries before our separation from England.  The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known.  Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system."  *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 508 (1984).  *See also In re Oliver*, 333 U.S. 257, 270 (1948) ("The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power"); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975)

(publicity "serves to guarantee the fairness of trials and to bring to bear the beneficial effects of public scrutiny upon the administration of justice").

Needless to say, the open court rule is not limited to trials, since the strong public interest underlying the rule apply equally to other stages of a criminal case. *See Press-Enterprise*, *supra* (juror voir dire); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13 (1986) (preliminary hearings); *United States v. Haller*, 837 F.2d 84, 86-87 (2d Cir. 1988) ("Plea hearings have typically been open to the public, and such access, as in the case of criminal trials, serves to allow public scrutiny of the conduct of courts and prosecutors. Moreover, the taking of a plea is the most common form of adjudication of criminal litigation"); *United States v. Alcantara*, 396 F.3d 189 (2d Cir. 2005) (sentencing hearings). Fell does not attempt to argue that the rule does not apply to efforts to undermine a jury's verdict under 28 U.S.C. § 2255. The reasoning underlying the rule applies equally to such proceedings. It would make little sense to require public scrutiny of criminal trials, but later permit the outcome of such trials to be vacated in secret collateral proceedings.

In affirming the open court rule for sentencing hearings, the Second Circuit found that such proceedings are "extremely significant to victims of crimes, to family members of victims, and to members of the community in which the crime occurred. The Supreme Court has described the 'community therapeutic value' of open proceedings in criminal cases." *Alcantara*, 396 F.3d at 198 (citation omitted). Consistent with the reasoning of the court in *Alcantara*, the Crime Victims Act of 2004 ("CVRA") provides that crime victims – including family of murdered victims – have the right to attend related court proceedings. 18 U.S.C. § 3771(a).[1]

---

[1] Section 3771(a)(3) provides that crime victims have "[t]he right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding." *Id*. The statute provides, further, that "[b]efore making a

3

Before closing a courtroom to which the First Amendment right of access attaches, "[a] district court must make 'specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *United States v. Haller*, 837 F.2d 84, 87 (2d Cir.1988) (quoting *Press-Enterprise II*, 478 U.S. at 13-14 (internal quotation marks omitted); *see also Press-Enterprise I*, 464 U.S. at 510 ("The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered"); *United States v. Doe*, 63 F.3d 121, 128 (2d Cir.1995) (setting forth the "four steps that a district court must follow in deciding a motion for closure").

To overcome the "presumption of openness," *Press–Enterprise I*, 464 U.S. at 510, courts must – "before excluding the public from any stage of a criminal trial," *Presley v. Georgia*, 558 U.S. 209, 724, – satisfy themselves that the following four criteria are met: (1) "the party seeking to close the [proceeding] must advance an overriding interest that is likely to be prejudiced"; (2) "the closure must be no broader than necessary to protect that interest"; (3) "the trial court must consider reasonable alternatives to closing the proceeding"; and (4) the trial court "must make findings adequate to support the closure," *Waller*, 467 U.S. at 48; *accord, Ayala v. Speckard*, 131 F.3d 62, 69 (2d Cir.1997)(*en banc*).  "In other words, if a court intends to exclude the public from a criminal proceeding, it must first analyze the *Waller* factors and make specific findings with regard to those factors."  *United States v. Gupta*, 699 F.3d 682, 687 (2d Cir. 2012).

Fell fails to satisfy the required criteria.  He has not advanced an interest in secrecy likely to be prejudiced sufficient to override the "presumption of openness."  Fell's pervasive distrust of Vermont jurors, and his assertion that they will be unlikely to testify truthfully under oath in

determination described in subsection (a)(3), the court shall make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the criminal proceeding.  The reasons for any decision denying relief under this chapter shall be clearly stated on the record."  § 3771(b).  Fell has made no attempt to meet the requirements of the CVRA.

open court, is baseless. In addition, closure is unnecessary to protect the only legitimate concern

– privacy of jurors. If a juror has a significant concern about publicity, that juror may say so at

the hearing, and may be identified by juror number. Referring to jurors by number is the practice

employed to date to protect juror privacy. If necessary, that practice could continue.

Alternatively, if necessary, the portion of a juror's testimony presenting difficulties could be

received at the bench (a familiar practice in voir dire).[2]

Because the vital interests of the public and victim families in an open court are

substantial, and Fell has failed to establish that the extraordinary remedy of sealing the

---

[2] The fact that United States District Court Judge Mark Wolf in Massachusetts closed the courtroom for part of the § 2255 juror inquiry in the *Sampson* case is neither controlling nor persuasive. First, there was a basis for closing the courtroom in *Sampson*: a highly emotional juror ("Juror C") who deliberately and repeatedly lied to the court to conceal painful feelings. Thus, "her demeanor while testifying evinced her emotional pain and humiliation; she was visibly distraught when discussing P and J, crying and incoherently attempting to excuse her mendacity." *United States v. Sampson*, 2013 WL 3828663 (1st Cir. 2013). There is no basis to expect such an extraordinary situation in this case. In fact, the government anticipates that some of Fell's juror claims will prove to be exaggerated. Second, because the government did not oppose closure of the courtroom in *Sampson*, that issue was not examined closely. Third, respectfully, Judge Wolf's stated reasons for closing the courtroom failed to satisfy the legal test and are unpersuasive.

courtroom and the transcripts is justified, his motion should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA
TRISTRAM J. COFFIN
United States Attorney

By:

/s/ *William B. Darrow*
WILLIAM B. DARROW
Assistant U.S. Attorney
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725

By:

/s/ *Jacabed Rodriguez-Coss*
JACABED RODRIGUEZ-COSS
Trial Attorney
U.S. Department of Justice
1000 Lafayette Boulevard
Bridgeport, CT 06604
(203) 696-3027
jacabed.rodriguez-coss@usdoj.gov
