UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA      *
                              *
              V               *
                              *
DONALD FELL                   * CRIMINAL FILE NO. 01-12



                        STATUS CONFERENCE
                      Tuesday, July 23, 2013
                       Burlington, Vermont



BEFORE:

     THE HONORABLE WILLIAM K. SESSIONS III
     District Judge



APPEARANCES:

     JACABED RODRIGUEZ-COSS, ESQ., United States
        Department of Justice - Criminal Division, 1331
        F Street, N.W., Washington, D.C.; Attorney for
        the United States

     LEWIS J. LIMAN, ESQ. and KRISTIN M. SANTILLO, ESQ.,
        Cleary Gottlieb Steen & Hamilton LLP, One
        Liberty Plaza, New York, New York; Attorneys for
        the Defendant

     CATHLEEN PRICE, ESQ., P.O. Box 321762, New York,
        New York; Attorney for the Defendant

     RICHARD I. RUBIN, ESQ., Rubin, Kidney, Myer &
        DeWolfe, 237 North Main Street, Barre, Vermont;
        Attorney for the Defendant

                    ANNE NICHOLS PIERCE
               Registered Professional Reporter
                United States District Court
                   Post Office Box 5633
                 Burlington, Vermont  05402
                      (802) 860-2227

TUESDAY, JULY 23, 2013

(The following was held in open court at 10:38 a.m.)

COURTROOM DEPUTY:  This is case number 1-12, United States of America versus Donald Fell.  The government is present via telephone through Jacabed Rodriguez-Coss.  Also present via telephone are counsel for defendant:  Richard Rubin, Lewis Liman, Cathleen Price, and Kristin Santillo.

And the matter before the Court is a telephone status conference.

THE COURT:  All right.  Good morning everyone. I asked for this telephone conference to be arranged to address a number of concerns that I had after reviewing the pleadings of the parties.  So let me first begin by describing the concerns that I had and describe a little bit more from the Court's perspective what happened prior to the defense interviewing jurors.

The Court received a letter from defense counsel, Mr. Liman, I think, back in December of 2010, and the letter -- which now should be released.  The defense, as I understand it, has no objection to the release of that letter; is that correct?  Mr. Liman?

MR. LIMAN:  That's correct.

THE COURT:  So the letter arrives in December, mid-December of 2010.  There's no factual underpinnings

to the request to speak with jurors.  It was a request -- in fact, it wasn't a request.  The letter basically said that the defense intended to interview jurors, and if the Court had any objection, the Court should notify them prior to the interviews, which were going to be soon after the letter.

So in the government's motion, they're asking for affidavits and information which justified a court order to permit the defense to speak with jurors.  There is no court order.  Essentially what happened was, the defense filed this letter.  Based upon the letter, I then engaged -- as I remember.  This is, again, two years ago -- in research as to whether or not the Court had any authority to limit the ability of defense counsel to speak with jurors.

So I first went to the local rules, and the government has cited the local rule.  Well, if the government actually looks at the date of the local rule, you will see that local rule, which gave the Court the ability to control contacting jurors, became effective January 1, 2011.  This was obviously after the request that was made by the defense.

Then there also was another -- a number of other areas of investigation.  I then looked at what I said to the jury at the close of the case, and I cited the law

at that point, which was they have the right to speak with whomever they wish, and in fact I said that, cited the law. I discouraged them from contacting -- from talking about deliberations, but then speak to whomever they want. Their names were going to be made public.

In fact, I also became aware that many of them interviewed with the press soon thereafter. So basically jurors had already spoken with the -- with members of the public.

I then conducted some research and came to the conclusion that, really, the issue as to whether or not defense counsel or government counsel at that point, in December of 2010, had the right to speak with jurors was pretty well established. They have the right to speak with jurors, and the Court has no authority to stop that from happening.

Now, of course we have a local rule which the court passed soon after this situation. So as a result, because I felt that I did not have any authority one way or another to authorize contacting jurors, I did not respond to the letter. I didn't issue an order. I didn't require findings. I basically followed the law by saying -- by essentially saying the Court has no control over whether you have access to jurors. And as a result, apparently jurors were contacted.

Now, the logical consequence of that is that if the defense has the right to speak with jurors, the government also has the right to speak with jurors. Now, we have had a change in the local rule, but that would not, in my view, apply in this situation, or even if it did, it would not be fair.

So my first impression, when the government requests the ability to speak with jurors, are -- is just as the Court felt that the defense could speak with jurors, and the Court had no power to control them from doing that, the same would naturally be true with the government. But let me just continue on because I -- I want to make clear what I was thinking about when -- when arranging for these three jurors to come in and testify.

The defense raised a question of jury misconduct in its pleadings. The Court has a responsibility to explore whether in fact there is jury misconduct. And, you know, it's quite similar to Sampson and Judge Wolf, and, in fact, universally it's the case that if there's a question of jury misconduct, then the Court has the obligation to look into this.

The intention of the first hearing, which is in August, is investigatory. It's not adversarial. In other words, the defense has raised an issue. The

question is whether this continues on into further discovery and research or not.  And there needs to be a preliminary showing.

The Second Circuit has spoken pretty clearly that it's -- it's a heavy burden to start invading the jury deliberation process, and that you need to make an initial determination as to whether that needs further exploration.  And, in fact, that's what the Court intended this hearing to be.  It's essentially these three jurors come in and I ask them, and the counsel can follow up, what happened:  Did you do this, did you not do this, et cetera.  And from that, if in fact there are significant misconduct issues raised, then it may require a full evidentiary hearing.  And that's somewhere down the road.

So I, frankly, didn't think that the government is in any way harmed by not going to interview all of the jurors in advance of what is a preliminary investigative hearing.  This is not a hearing to decide ultimately the issue.  It's just to begin the process.  But anyway.

And the other concern that I have is that this discovery could go way beyond what the law permits. Frankly, I -- the issues about subjective feelings of jurors as to why they made decisions is totally irrelevant.  This is an objective standard.  All I want

to find out at this point is what happened.  That's it. Just what happened.  And then, once you figure out what happened, then you can make an objective analysis as to whether in fact that puts at risk the ultimate verdict. And I am just afraid that we are going to get into calling 12 jurors and say -- and asking them, Well, do you think this particular fact impacted your judgment? You know, that is, in my view, totally irrelevant.

So my intention is this.  And I am going to open this up once I have described to you what I really think should happen.  These three jurors should come in and testify.  In light of the government's response, which was in public, my thought is that this should be a public hearing unless an individual juror comes in and says, This is highly personal information and embarrassing information to me and I would ask that this portion of my testimony be sealed from the public.  Then I would take that under consideration.

But with that exception, I think the three individuals would come into court, they would describe what they did, why they did it, and what they said to the defendant's investigator.  They would be subjected to examination by both sides, and based upon that, I would then ask for follow-up memoranda as to where to proceed from there.  That would include expanding the

hearing to involve the testimony of all the jurors, if necessary. That could possibly be the case. Or it may be totally irrelevant. Or the information provided by these jurors may not meet a sufficient threshold to open up the issue. So that would be my intention.

Also, in light of the fact that the defense, I felt, had the right, without court interference or authorization, to interview jurors, that the government has the same right, and I don't think that, frankly, I have to order that they are able to do that. Well, I guess perhaps with the change in the rule at this point it may be wise, but I would certainly think that the government, as a matter of fairness, would have the right to interview the jurors.

And, finally, as to specific documents that the defense may have, it seems to me that in light of the fact that the government would have the right to interview jurors, that there is no compelling need to disclose work product information from the defense because the government can then go speak with the jurors themselves.

All right. So that was a long response to what seems to be the issue of the day, and so let me turn first to the government and get your response to what I have just said.

MS. RODRIGUEZ-COSS:  Your Honor, I have absolutely no objection with anything that the Court has just expressed, either substantively or procedurally. The only question we raised was with regard to documents that are not work product, that is, if the defense had, that this does not constitute work product, that pertains to any of the jurors and may be relevant to the issues that will be heard in the August hearing, whether perhaps they should produce those.

THE COURT:  All right.  So what you are asking for are nonwork product materials.  I know that you want the criminal record of one of the jurors.  I think the juror was 26, as I remember.

MS. RODRIGUEZ-COSS:  Correct.

THE COURT:  And my question is, can't you get that yourself?

MS. RODRIGUEZ-COSS:  Well, I suppose we could. Yes.  We probably could do that.

THE COURT:  Right.

MS. RODRIGUEZ-COSS:  But it -- but I don't know if they went further.  Court documents, to the extent that they already have those in their possession and could provide them, we would appreciate that.

THE COURT:  Well, my impression is that you would have the right to go interview these individuals.

You have got a work product protection as well.  In light of the fact that anybody can go talk to the jurors, I really don't want to get --

MS. RODRIGUEZ-COSS:  Okay.

THE COURT:  -- looking at each document that each side has and making a work product analysis.

MS. RODRIGUEZ-COSS:  Fair enough.

THE COURT:  All right?  Mr. Liman, on behalf of Mr. Fell?

MR. RUBIN:  Judge, this is Richard Rubin.

THE COURT:  Oh, okay.

MR. RUBIN:  They asked me to take the lead.

THE COURT:  Yes.

MR. RUBIN:  Good morning.

THE COURT:  Good morning.

MR. RUBIN:  We agree with the proposal with respect to bringing the jurors in and questioning the jurors with follow-up.  That's fine.  That's what both sides had proposed.

What we wanted to discuss with you at some point before we close here, the process for summoning the jurors.  We did submit a proposed letter to the jurors. We also wanted -- we don't have a date for the hearing yet.

THE COURT:  Gee, Mr. Rubin, I have got a date.

You have not been notified of a date?

MR. RUBIN:  No, sir.

MR. LIMAN:  No, sir.

THE COURT:  Oh, I thought it was --

MR. RUBIN:  We don't have a date.

THE COURT:  So hold on -- hold on just a second.

(Brief pause.)

THE COURT:  Okay.  Well, I am going to check to see what the date is because I thought we had talked about that.

MR. RUBIN:  We had talked about like Wednesday the -- you know, the week after -- the second week in August.  I think we have sort of a rough understanding of when it was going to be but we haven't gotten notice yet.

THE COURT:  All right.

MR. RUBIN:  We also wanted to talk to you about closing the hearing.  We have a draft of a memo that's a motion ready to go to hold the hearing *in camera*, perhaps talking to the jurors in chambers, both to encourage the candor of the jurors and to protect their privacy, and what we would ask the Court is to kind of reserve judgment on the issue how -- whether to close the hearing and talk to the jurors *in camera* until

you get our motion, the government has a chance to respond.

We think there are significant issues of -- I don't want to argue this at this point, but of privacy both for the jurors, which you have mentioned, but also candor, to get the jurors to talk about why they did or did not do something in connection with their voir dire or their questionnaires that we think would be much more likely to be fully aired *in camera*, and I think there's a balancing test that the Court can look to, and we have got a motion with substantial case law that we'd ask you to kind of hold on that until we file that. We'll file it tomorrow or today.

THE COURT: Okay. Well, I would be glad to do that actually. I know that in Sampson, it was all confidential and it was all sealed. The problem with sealing at this point is that many of the pleadings, including, by the way, the defense pleading in its initial petition, described what the jurors had to say, and so it becomes quite public. Clearly these jurors are never going to be identified by name, so that affords some protection. But anyway, I would be glad to consider that.

MR. RUBIN: One of the things -- if we have follow-up hearings, and the testimony of these jurors

is, you know, reported in the press, it may affect the testimony of other jurors about what happened.  So that's why we -- we'd ask you to consider that.

THE COURT:  Okay.

MR. RUBIN:  One of the --

MS. RODRIGUEZ-COSS:  If I could just weigh in on that one issue before we move on.

Just very, very quickly, obviously the decision of the government is the same as the Court's.  We understand this should be a public hearing absent a request from the juror that they be allowed to discuss a matter in private if they want.  This is contrary to Sampson in many respects, but specifically in the fact that these jurors have been completely forthcoming, as opposed to the juror at issue in Sampson, and they have discussed issues already openly with defense counsel, and those issues have been openly briefed, and so there's no indication whatsoever that they would in any way lack candor with the Court if this was to be in open court.

THE COURT:  All right.  Well, let me just reserve judgment on that, ask the defense to submit its memo pretty quickly, and the government will have a chance to respond.

The hearing date I have scheduled for August 15 at

10:30.

MS. RODRIGUEZ-COSS:  Okay.

THE COURT:  Is that --

MR. RUBIN:  The last -- in addition to talking about the process for summoning the jurors, I know that Mr. Liman may want to comment on the issue of summoning the jurors now so soon before the hearing.  I don't know if you want to follow up on that, Lewis?

MR. LIMAN:  Yes, your Honor, if I could be heard just for a moment on that.

The -- as your Honor has observed, we did interview some of the jurors.  We did so after notifying your Honor of our plans.  I wanted to point out that our interviews of the jurors ended in January of 2011, so now over two years ago.  Our last contact with any of the jurors was with Juror 162, when we informed that juror that we would be filing a motion, and that took place in March of 2011.

It was our view that the interviews were done back in 2011, at a time when there was no lawsuit filed, the criminal case had come to an end, the 2255 motion had not yet been -- being filed, and they were done for a different purpose, which was for the purpose of determining whether the process that the Court is going to engage in in August should be engaged in, that is,

whether there was a basis for a claim of juror misconduct.

We are obviously at a different stage of the proceedings now with the claim having -- having been filed and the Court having entered an order providing for that hearing, and what we would ask, if the -- if the Court is going to permit the government to interview the jurors -- it's been a long time since we spoke to the -- any of these jurors either, and we would ask that any permission be -- be reciprocal so that we can follow up on the questions that we had asked them as well.

THE COURT:  Okay.  But you understand that the purpose of this initial hearing in August is to just have those three jurors describe what happened and why it happened, and that if the claim is to proceed, we would be talking a much -- about a much larger evidentiary hearing, you know, way -- way into the future.  I mean, you understand this particular hearing is of very limited -- for a very limited purpose.

MR. LIMAN:  We understand that, your Honor.

THE COURT:  Okay.  Well, Ms. Rodriguez-Coss, do you have any objection to the defense essentially also having the ability to speak with jurors at this point?

MS. RODRIGUEZ-COSS:  Well, your Honor, we

would, in a sense that they had the opportunity to do so already.  They have obviously done so extensively to the extent that they have filed a very extensive petition, have filed a number of allegations, have filed sworn declarations or statements in support of those allegations.  I think that they had an opportunity to set forth what their allegations are.  We simply want an opportunity to meet with the jurors, explore some of those allegations, and be prepared for the August hearing as they are.

As the Court said, this is an initial investigative hearing, so I really don't see the need to overburden the jurors at this point.

THE COURT:  Well, there's a great case in Vermont called "Goose versus Gander."  It's essentially an issue of fairness.  I mean, essentially what I decided back in December of 2010 is that the defense had the right to speak with jurors and the Court did not have the right to say you cannot.

In fact, actually I took a look at the ABA standards in capital post-conviction cases, which puts the burden essentially on defense counsel to look into all avenues of possible attack on the verdict, including discussions with jurors.  So just like I didn't think that I had the power to say you cannot speak with the

jurors in 2010, I really think they should be afforded the opportunity to speak with them at this point.

It's been two years, or is it three years? It's two years, two and a half years. I think that both sides are given the fair opportunity to speak with jurors at this point. I just would ask that you not get into discussions about why they made particular decisions because that's totally irrelevant. But as to what happened, I think there's sufficient issues raised by the petition filed by the defendant that the issue should go forward at this stage. So the defense has the opportunity to speak with jurors and the government as well.

So what else do we have to address at this point?

MR. RUBIN: This is Richard Rubin. We submitted a letter, a proposed letter to send to the jurors with a summons for the Court. I think it was patterned after Sampson. Someone else can correct me if I am wrong about that. And we wanted to mention that we do not intend -- I don't know whether the Court was concerned about this, but Mr. Fell not be present. We talked to him about the hearing. He has no interest -- whether he is interested, he does not want to come to Vermont for the hearing, and we just wanted to let the Court know that that was our position on Mr. Fell's

presence at the hearing.

But we do want to talk a little bit about the process of summoning the jurors and whether the Court is going to send them a letter and how that's going to work.

THE COURT:  Well, you actually have taken perhaps one step ahead of your request.  The concern I had was when the jurors got information, either through the press or wherever, about the pending hearing, that they would be calling court, talking with people in the court.  I was really concerned about their being exposed to information from anyone, so the decision was made that actual notice of the hearing for the three jurors would be given to the jurors by the Marshal Service. Service, I believe, has been made at least on two if not three.  I think at least on two.  That I have instructed the court staff to have essentially no verbal communication with them about -- about the nature of the hearing or anything related to what's going to happen on the 15th.  So they have already been notified.  At least two have been notified.  I am not sure if the third one has been notified yet or not.

So I guess, you know, that is, in a sense, a rejection of the request to send them a particular kind of notice.  I just wanted them to get the notice from

the marshals:  You need to be here in court on the 15th at 10:30.  I apologize that the parties did not know that it was scheduled for that particular time.  And so I guess that's what happened.

MR. RUBIN:  Okay.  This is -- the court reporter wants my name again, but this is Richard Rubin. The only other question --

THE COURT:  I think we remember your name, Mr. Rubin.

MR. RUBIN:  Thank you, but she actually instructed us to say our names.

THE COURT:  Oh, she did?  Oh, all right.

MR. RUBIN:  Yes.  Now I have forgotten what I --

THE COURT:  I have never -- I have never been able to fluster you in the past.  This is quite the thrill.

MR. RUBIN:  I have got myself under control, your Honor.

THE COURT:  Good.

MR. RUBIN:  Is there a way that we can know that all of the jurors have been served and will be there so that we can prepare for the hearing?

THE COURT:  Absolutely.  We will contact you when we know -- I will look into that this afternoon.

And we will contact you; I will not personally, but -- but Judge Evelti will notify you about the fact that all of the jurors have been contacted.

By the way, we have also made available for them lawyers if they wished.

MR. RUBIN:  Okay.  That's all I have on my list, your Honor.  I just wanted to make sure that Mr. Liman and Miss Price have got everything covered that was on our list.

MR. LIMAN:  It's Mr. Liman.  And Mr. Rubin has covered every issue.

THE COURT:  Okay.

MS. RODRIGUEZ-COSS:  Your Honor, I don't know if the Court simply intended with this telephone conference to address only the -- but we do have a first motion to compel discovery on the record.

THE COURT:  Well, you --

MS. RODRIGUEZ-COSS:  I don't know if --

THE COURT:  You do.  You have got a motion to compel discovery.  The defense has not responded.  The 30 days has not -- they have responded but they want the 30 days to respond.

My real concern is that both sides seem to be ships passing in the night in terms of discovery.  Have there been efforts to sit down and say can we reach an

agreement as to deadlines and kinds of discovery?  I mean, the government has now asked for broad discovery. I assume the defense is going to be asking for broad discovery.

You have got a fundamental understanding here that broad discovery is going to be involved in this particular case.  It would seem to me that in light of that general understanding, you should be able to agree to the kinds of materials that you are seeking and deadlines.  Tell me if that's not realistic.

MS. RODRIGUEZ-COSS:  Well, your Honor, we had a telephone conference with the defense where we essentially set forth the very deadlines that we set forth in our first motion to compel.  And quite honestly, we were worlds apart in terms of a timetable for discovery in this case.  They were not prepared to discuss specific deadlines for specific types of discovery, and that's why we felt the need to involve the Court.

We are at this juncture no close to being ready in this case than we were on May 10th when we received the opinion and order of the Court.  And we honestly feel that -- given the extensive briefing that has taken place in this case, the extensive amount of time that both sides have had to prepare that briefing, review

that briefing, view the issues and claims in this case, that we can move far more expeditiously to the discovery in this case.

And we have been diligent -- this was -- obviously we have everything that was in our files. Whatever they haven't had, we have made efforts to get into their hands. There has been some discovery from the government to the defense already even before us finalizing our response to their petition.

Now the Court has indicated its desire to have an evidentiary hearing in this case. We need to have a certain amount of information to prepare for that hearing. And it's just not been forthcoming at all. We feel like that the prosecution is being delayed unnecessarily, and that's why we felt the need to involve the Court.

THE COURT: So what you are suggesting is that the two sides are unable to agree to a realistic timetable for the discovery to take place?

MS. RODRIGUEZ-COSS: Right.

THE COURT: And also I would add that there's going to be a dispute as to what discovery each side is entitled to. Obviously you have asked for a deposition not only of counsel, of defense counsel, but of Mr. Fell as well, and interrogatories of Mr. Fell.

So what I -- I haven't got a response from the defense yet.  You have not persuaded me that it's unlikely that the two sides will be able to agree.  Let me get a response from the defense, and then the Court will issue a discovery order with deadlines and also a description of the kinds of discovery which would be afforded both sides in this case.

In addition, obviously I will address the question of whether or not Mr. Fell could be deposed, defense counsel can be deposed.  You know, I assume that if you are going to start talking about depositions of the defense counsel, then you are talking about depositions of the government counsel, and -- well, I mean, this is -- this is going to become quite the interesting discovery order.

So, who is going to respond on behalf of the defense?

MR. LIMAN:  Your Honor, it's Lewis lime.  May I respond?

THE COURT:  Sure.  I mean, I don't think it's necessary that you go back and say, well, we did not agree or -- to point fingers.  The question is whether you are going to be responding to the request for the motion to compel, and whether you think realistically both sides can get together.  If not, then just tell me

in writing what you want and when you want the discovery, and then I'll try to sort it out.

MR. LIMAN: Your Honor, I am hopeful that when we talk to the government, we will be able to compromise and reach agreement on some issues. I am also fairly certain that there will be other issues as to which we would not be able to reach agreement.

Sitting here today, I cannot tell you for certain which issues will be ones we will reach agreement on, which issues we will not reach agreement on. The fact of the matter is that the government chose to file its motion prior to us having a meet and confer with respect to discovery and having --

THE COURT: Well, actually, if you look at the government's memorandum, they did have a provision in there which said they contacted you in writing one day before they filed the motion to compel, I think, in which they made a specific demand, there was no response, and as a result, they therefore filed the motion to compel.

So -- I mean, whether or not there was a consultation, I guess my question, do you think there can be a consultation at this point to limit the issues that the Court has to decide in terms of discovery?

MR. LIMAN: Yes, I do, your Honor.

THE COURT:  Then I'd ask that you get together, you know, promptly so we don't have to spend a whole lot of time working on the details of discovery, and whatever is left unresolved, then just let me know what they are, there will be adequate briefing on both sides, and then try to decide, or I will decide.

MR. LIMAN:  Your Honor, may I raise one additional matter --

THE COURT:  Sure.

MR. LIMAN:  -- with respect to the June hearing?  The parties did submit a joint proposed hearing with respect to -- joint proposed order with respect to that hearing --

This is Lewis Liman talking again.

THE COURT:  Yes.

MR. LIMAN:  -- that did reflect some of the areas as to which we had agreement with the government. To my knowledge, that order is still *sub judice*.  We can submit an additional copy of it if your Honor would like.  We would ask your Honor to answer that --

THE COURT:  Can I just say I did look at that. First of all, the parties agreed that this should be in confidence and -- or that this should be sealed, but it becomes sort of irrelevant to seal a hearing when in fact there are pleadings out there which identify the

nature of the dispute and identify the individual jurors who are going to be testifying.  So, that was one concern that I had with the joint proposal that you made.

You know, frankly, I -- if individual jurors want to come in and say that they feel uncomfortable, I think that warrants perhaps sealing, but I am not so sure, in light of all the pleadings that have been going on, in fact, all of the reports to the press, that it's necessary to have a sealed hearing.

And then second, I thought that both sides had agreed that once you would go through this hearing, that then there would be supplemental pleadings as to where we go from there.

MR. LIMAN:  Your Honor, we -- it's Lewis Liman.  We did with respect to the juror hearing in August.

THE COURT:  Yes.

MR. LIMAN:  In addition, with respect to the June hearing on additional issues, your Honor directed the parties to confer, to propose a schedule to your Honor with respect to the June hearing.  We submitted -- the defense submitted a proposed order with respect to that hearing.  I believe the government responded.  That order is still *sub -- sub judice*, and

it's -- it was -- when was it submitted?  We submitted it to the Court on June 10th of this year.

THE COURT:  Right.  Okay.  So you are going back to the general discovery.  Yes, that's absolutely true.  But reading both of those requests and filings, I mean, it looks like there wasn't a whole lot of effort to limit the issues in dispute.  I mean, you look at the government's response and it essentially is requesting a lot of the information that they're requesting in the motion to compel.

And I guess my question is, is it worth trying again to limit the number of issues that are in dispute in terms of what discovery is to be afforded and when the discovery is to happen?  And that's all I am asking. Is there a way in which you can just get together again, limit the issues in dispute, so then I can decided a limited number of issues as opposed to the whole discovery panoply?

MR. LIMAN:  Your Honor, it's Lewis Liman.  I misspoke with respect to the joint proposed order.  I did not misspeak with respect to my answer about talking to the government and limiting -- trying to limit the issues, and we will do that and we will reach out to the government to try to do that.

THE COURT:  Okay.

Okay.  Is there anything else that needs to be addressed?

MR. RUBIN:  No, your Honor.  Richard Rubin: No.

THE COURT:  Okay.

MS. RODRIGUEZ-COSS:  No, your Honor.

THE COURT:  Is there any -- any difficulty with the date of August 15th at 10:30?

MS. RODRIGUEZ-COSS:  None.

MR. RUBIN:  No.

THE COURT:  And I wonder if, since Mr. Fell is not going to be here, we can get a waiver of his presence?

MR. LIMAN:  Cathleen?

MS. PRICE:  Yes, your Honor.

THE COURT:  Okay.

MS. PRICE:  Yes, we can.  He waives presence.

THE COURT:  Yes.  He is waiving presence but I need that in writing.  All right.

MS. PRICE:  We will get that.

THE COURT:  I think we resolved all the issues, and we will see you on August 15th.

MR. LIMAN:  Thank you, your Honor.

MR. RUBIN:  Thank you.

MS. RODRIGUEZ-COSS:  Thank you.

29

THE COURT:  Okay, thank you.

(Court was in recess at 11:20 a.m.)

*** ** ***

C E R T I F I C A T I O N

    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

August 1, 2013                          _____
Date                                    Anne Nichols Pierce