UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT
---------------------------------------------------------------------- X
                                                                       :
DONALD FELL,                                                           :
                                                                       :
                                    Movant,                            :
                                                                       :        2:01-CR-12-01
                        - against -                                    :
                                                                       :
UNITED STATES OF AMERICA,                                              :
                                                                       :
                                    Respondent.                        :
                                                                       :
                                                                       :
---------------------------------------------------------------------- X

## <u>STATEMENT OF DISPUTED DISCOVERY</u>

Donald Fell respectfully submits this statement outlining his discovery disputes with the Government. <u>See</u> Order, Dkt. No. 411 (Sept. 27, 2013). Although the parties have reconciled many of their disagreements, a few contested issues remain. Mr. Fell seeks to depose the Government's trial attorneys and the Federal Bureau of Investigation ("FBI") agents who investigated certain aspects of his case. He also requests an Order compelling the Government to produce documents responsive to his First Request by November 25, 2013. Mr. Fell opposes depositions of Mr. Fell or his lay witnesses and, although he consents to a rebuttal mental health examination after service of his expert reports, he would object to the use of Dr. Michael Welner to conduct a psychiatric examination.

## I.     <u>Procedural History</u>

This Court has substantially sustained Mr. Fell's Motion For Collateral Relief, to Vacate, Set Aside, or Correct Sentence, and For a New Trial Pursuant to 28 U.S.C. § 2255 ("2255 Motion"), granting Mr. Fell an evidentiary hearing on a number of his claims, including claims that the Government failed to turn over exculpatory and mitigating evidence in violation

of its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and that it knowingly elicited false testimony in violation of Napue v. Illinois, 360 U.S. 264 (1959).  See Memorandum Opinion and Order, Dkt. No. 367 (May 10, 2013) ("May 10 Order"), at 114.

Over the Government's opposition, the Court has also granted Mr. Fell leave to conduct discovery to develop his claims, including the right to serve document requests relating to alleged prosecutorial misconduct by the office of the United States Attorney for the District of Vermont.  Order, Dkt. No. 369 (May 10, 2013) ("Discovery Order"), at 1.

On June 6, 2013, the Government sent Mr. Fell a document entitled "Government's First Motion for Discovery," which it filed with the Court along with a Proposed Order on June 10, 2013.  Dkt. No. 375 (June 10, 2013) ("Government's First Motion").  The Government's First Motion sought, among other things, immediate access to trial counsel's files in their entirety; immediate expert and lay witness disclosures; depositions of Mr. Fell, his family, his experts, and his trial lawyers; permission to propound unspecified interrogatories; and a "full-scope psychiatric evaluation" of Mr. Fell to be conducted by Dr. Michael Welner.  See Government's First Motion.[1]

The parties have reached substantial agreement with respect to the Government's discovery demands[2]:

- Mr. Fell agreed to disclose the portion of trial counsel's files implicated by his 2255 Motion, and such production is now substantially complete;

- Mr. Fell agreed to produce any social service records or other third-party records requested by the Government to the extent they are part of trial counsel's files;

---

[1] On September 19, 2013, the Government filed a Renewed Motion to Compel Discovery, reiterating its requests for immediate lay and expert witness disclosures, depositions of Mr. Fell and his sisters, and an examination by Dr. Welner, among other things.  See Government's Renewed Motion to Compel Discovery, Dkt. No. 409 (Sept. 19, 2013) ("Renewed MTC").

[2] The parties have also agreed to treat discovery materials as confidential to this action and to stipulate that inadvertent production would not waive privilege.

- Mr. Fell agreed to make expert disclosures by December 31, 2013;

- The parties have agreed to submit any specific interrogatories to each other before further discussion;

- Mr. Fell agreed to produce his trial experts, trial lawyers, and trial mitigation specialist for depositions (reserving the right to object to any testimony that remains privileged or is not responsive to the remaining claims in Mr. Fell's 2255 Motion), and the parties have agreed that the depositions of Mr. Fell's trial experts may begin no earlier than January 2014;

- The parties agreed to depositions of post-conviction experts for both sides; and

- Mr. Fell agreed in principle to submit to a psychiatric evaluation limited in scope to the rebuttal of any psychiatric issues raised by Mr. Fell. Mr. Fell does not agree that this evaluation can be performed by Dr. Welner, but agrees to meet and confer at a later date to determine the details of any such evaluation, such as timing and scope, and the identity of any experts involved.

Mr. Fell does not consent to depositions of himself or his family members.

On August 23, 2013, Mr. Fell served document requests on the Government consistent with the discovery requests already approved by the Court. See Movant's First Request for Production of Documents to the U.S. Attorney's Office for the District of Vermont ("First Request for Production of Documents," attached as Exhibit A). On October 22, 2013, the Government sent responses and objections to the First Request for Production of Documents ("Government's Response," attached as Exhibit B). In a meet and confer on October 23, 2013, counsel for Mr. Fell agreed to narrow certain of the requests, and the Government represented that it would disclose Robert Lee's prison records on October 25, 2013. The Government also agreed in principle to depositions of its trial experts. However, the Government's Response remains deficient in several key respects.

3

In addition to the document discovery, Mr. Fell has requested depositions of the Government's trial attorneys and of the FBI agents who investigated certain aspects of his case. The Government has refused this request altogether.

## II.     Mr. Fell's Affirmative Discovery

Mr. Fell respectfully requests that the Court authorize Mr. Fell to serve deposition notices on the Government's trial attorneys and certain FBI agents and to produce documentary discovery by November 25, 2013.

### A.     Mr. Fell Has Good Cause To Depose Government Lawyers And Agents

Mr. Fell seeks to depose the Government attorneys and FBI agents responsible for the investigation or prosecution of this case, including Assistant U.S. Attorney William B. Darrow.  The Government has indicated it will not make its attorneys available for deposition in response to a notice on deposition solely on the grounds that "it has not placed the conduct of its attorneys at issue, nor will any of Petitioner's claims be informed by the testimony of the Government attorneys."  Government's Renewed Motion to Compel Discovery, Dkt. No. 409 (Sept. 19, 2013) ("Renewed MTC"), at 8.  That argument is meritless.

Mr. Fell has alleged both prosecutorial misconduct and ineffective assistance of counsel in failing to litigate that misconduct, and the Government has put its conduct at issue by denying those allegations.  The 2255 Motion alleges that the Government: (1)  violated this Court's Order and Fed. R. Crim. P. 12.2 with respect to Dr. Michael Welner's proxy examination of Mr. Fell; (2)  failed to disclose favorable evidence to the defense in violation of its Brady obligations and (3)  knowingly elicited false testimony in violation of Napue, among other improper behavior.  See 2255 Motion, Claims V-VIII; Claims XVII-XXI.  The testimony that Mr. Fell requests relating to (1) goes to Mr. Fell's ineffective assistance of counsel claim.  See

2255 Motion, Claim V.  The testimony relating to the other items pertains to Mr. Fell's claims of prosecutorial misconduct.  This Court has rejected the Government's motion for summary dismissal and held that, based on Mr. Fell's factual allegations, Mr. Fell is entitled to discovery and an evidentiary hearing on these claims.  See May 10 Order at 114; Discovery Order at 1-3.

Specifically, the 2255 Motion alleges facts showing that the prosecution violated this Court's order of April 7, 2005 and that the defense rendered ineffective assistance of counsel in withdrawing its motion with respect to this issue.  See 2255 Motion, Claim V; Order, Dkt. No. 101 (April 7, 2005) ("April 7 Order").  This Court has already found that Dr. Welner violated the April 7 Order by engaging in psychological testing that the Court had expressly prohibited.  See Opinion and Order, Dkt. No. 236 (Apr. 24, 2006) ("Order Denying New Trial"), at 21-22.  Mr. Fell has also submitted substantial evidence that trial counsel did not litigate the motion to preclude Dr. Welner, and instead unreasonably withdrew their entire mental health case and agreed to a false stipulation, because counsel mistakenly believed that the Court had already ruled on this issue.[3]

The remaining issue is whether the motion to exclude Dr. Welner's testimony would have succeeded because, for example, the misconduct was severe.  2255 Motion at 139-40.  Mr. Fell has also pled facts in support of that allegation: the Government's attorneys facilitated Dr. Welner's proxy examination of Mr. Fell and encouraged Dr. Richard Wetzel to use Dr. Welner's questions, despite knowing of this Court's April 7 Order and that this conduct violated it, and those attorneys possessed and were able to review videotapes of this evaluation

---

[3] See, e.g., Declaration of Alexander Bunin, Mar. 17, 2011 (Fell. Ex. 264 at ¶ 51) ("I was also under the impression that the Court would not do anything to sanction the Government for violating the Court's order and that in order to prevent Dr. Welner from testifying we had no choice but to withdraw our 12.2 notice and pull the testimony of our mental health experts."); Order Denying New Trial at 23-24 ("[T]hese thought processes were infected by certain misapprehensions of the facts. . . . [I]t is undeniable that the Court could not preclude Welner's testimony on the grounds of prosecutorial misconduct before the demand was made.").

before the guilt phase verdict in a separate violation of the April 7 Order, Fed. R. Crim. P. 12.2, and the Sixth Amendment.  See 2255 Motion, Claim V; April 7 Order.

It is our understanding that the Government attorneys deny that they were complicit in this circumvention of the Court's order.  Tr. Vol. VII-II at 73:20-74:14(July 6, 2005).  However, because trial counsel withdrew their mental health case before the Court could rule on whether prosecutorial misconduct warranted the exclusion of Dr. Welner's testimony, neither Mr. Darrow nor any other Government representative has never been required to testify about this conduct.  See Order Denying New Trial at 22-23.  Nor has either of the doctors in question.  The Court has held that an evidentiary hearing is necessary to resolve this question:

> In assessing whether an instance of prosecutorial misconduct caused substantial prejudice, ordinarily a court would proceed to consider the severity of the misconduct, any measures to cure the misconduct, and the certainty of conviction absent the misconduct. Ordinarily, an evidentiary hearing would be necessary; the submissions of the parties alone do not enable this Court to judge the severity of the conduct, for example, whether the government deliberately set out to circumvent the Court's order, or whether its expert was simply a zealot who pursued his own agenda despite the restrictions imposed by the Court.

Order Denying New Trial at 22 (citation omitted) (emphasis added).  If that is so, and if the Government reserves its right to dispute Mr. Fell's allegations or to call its attorneys as witnesses, Mr. Fell plainly is entitled to a deposition to test those assertions and to further establish his case.

Mr. Fell has also alleged specific facts in support of his Brady and Napue claims, and the Court has ordered an evidentiary hearing with respect to those claims.  See 2255 Motion, Claims V-VIII; Claims XVII-XXI ; May 10 Order at 114.  For example, the Government claimed at trial that the summer before Mrs. King's death by kicking and stomping, Mr. Fell kicked Christopher Eike into a "coma" in "a horrible, violent assault on a person the same way

he later killed Terry King.  He did it intentionally.  He did it violently.  And he did it with the utter depravity that you have heard about in this case."  See, e.g., Tr. Vol. XII at 60:13-20 (July 13, 2005).  It went so far as to argue that the incident showed that Mr. Fell was on a downward "trajectory" and that he acted in a heinous, cruel and depraved manner—an argument that the jury accepted and would have relied on in returning the death sentence.  See Tr. Vol. XII at 53:8-24 (July 13, 2005); id  at 124:8-19; Special Verdict Form, July 14, 2005 (Fell Ex. 209).

It turns out that that claim was a fabrication.  Documentary evidence never provided to trial counsel shows that Mr. Fell got into a fight with Mr. Eike because Mr. Eike was sexually assaulting Mr. Fell's sister.  See, e.g., Redacted June 14 FBI Report, June 14, 2005 (Fell Ex. 128) (showing that FBI conducted criminal record check on Mr. Eike and redacting lengthy criminal history); SCSD Handwritten Notes of Unknown Authorship, Aug. 12, 2000 (Fell Ex. 55) (Sheriff's Department considered charging Mr. Eike with sexually abusing Teri Fell).  And far from being in a coma, Mr. Eike was awake and alert when authorities arrived at the scene, and, after having his condition checked out, walked out of the hospital the same day and on his own.  See, e.g., Prehospital Care Report, Aug. 12, 2000 (Fell Ex. 289) (initial assessment found only bruises); Emergency Room Record, Aug. 12, 2000 (Fell Ex. 286) (Mr. Eike was "awake/alert upon arrival," admitted "taking acid" and to having a "mental disorder," and had a "scalp contusion"); Patient Instruction Form, Aug. 12, 2000 (Fell Ex. 295 (instructions from day of incident telling patient to see a doctor in 1-2 days and to refrain from further drug use).

The undisputed evidence shows that the Government knew these facts, yet never provided them to defense counsel and continued to press its false argument in a desire to obtain the death penalty at any cost.  Unredacted June 14 FBI Report, Gov. Ex. F at 3-4 ("[A] detective from SCSO went to the hospital where Eike told the detective the following about the

7

incident."); Declaration of Christopher Eike, Mar. 24, 2011 (Fell Ex. 314 at 2) ("I definitely did not tell the FBI or anybody else that I had ever been in a coma or had any serious injuries due to the fight that night. . . . I told them I just had a black eye and that was it.").

But the Government now denies those allegations.  It argues that it "was not in possession [of] Eike's medical records or any records pertaining to his criminal history." Amended Opposition at 307.  Those assertions are mere ipse fixit—they are entitled to no evidentiary weight whatsoever —but if the Government intends to press them and to dispute the allegations of prosecutorial misconduct, fairness dictates that Mr. Fell have the opportunity to test the Government's assertions and show that they are wrong.  He is not required to accept them as true, as the Government seems to suggest.  See Amended Opposition at 211-12.  He should be able to question the members of law enforcement who spoke to Mr. Eike and the prosecutors about whether they knew, as the evidence suggests, that Mr. Eike was not in a coma and did not suffer serious injuries.  Once again, the Court has already ordered that "Fell is entitled to discovery to determine whether the government knowingly exploited the misinformation communicated by Fell, Lee and Teri Fell . . . ."  See May 10 Order at 89.

Mr. Fell also has alleged that the Government engaged in misconduct with respect to evidence that Officer Marc Pelkey attempted to assault Mr. Fell during the March 17, 2004 prison incident shown to the jury on videotape, was investigated for using excessive force, and was known for violent behavior against inmates.  2255 Motion, Claim VII. The Court has held: "[Fell] is entitled to discovery to determine whether the failure to disclose Pelkey's behavior during the incident or his disciplinary history may be imputed to the government for purposes of pursuing a Brady claim, and whether the government learned any pertinent information concerning excessive force or misconduct from Pelkey while he was a potential witness for the

8

government." May 10 Order at 92. Specifically, although the Government used the videotape of the March 17, 2004 incident to argue that Mr. Fell was "fighting, swearing, kicking, spitting, yelling, doing all he could to get in the way of those correctional officials who behaved themselves impeccably throughout," Tr. Vol. XII at 122:9-12 (July 13, 2005) (emphasis added), in fact Officer Pelkey was investigated for using excessive force during the March 17, 2004 incident and ordered by the Chief of Security not to have any more contact with Mr. Fell. Declaration of Marc Pelkey, Mar. 9, 2011 (Fell Ex. 256 at 2-3) ("Pelkey Declaration"). An incident report prepared by the United States Marshals Service showed, at a minimum, that at least one fellow officer believed that Officer Pelkey inappropriately bent Mr. Fell's wrist and repeatedly advanced toward Mr. Fell before being ushered out of the cell. USMS Incident Report, Mar. 17, 2004 (Fell Ex. 112).

The Government spent at least five days in Court with Officer Pelkey and intended to call him as a witness before they suddenly withdrew that request. See Pelkey Declaration at 3. Officer Pelkey readily admitted his disciplinary history to 2255 Counsel. See Pelkey Declaration at 2. There is thus every reason to believe that the Government knew what 2255 Counsel so easily discovered. Mr. Fell is entitled to take testimony to determine whether the Government knew those same facts,[4] particularly when it intended to call Officer Pelkey as a witness and basic prosecutorial good practice would have required it to ask Officer Pelkey the questions that 2255 Counsel later posed. See David W. Ogden, Memorandum for Prosecutors Regarding Criminal Discovery (Jan. 4, 2010), http://www.justice.gov/dag/discovery-guidance.html.

---

[4]The Government again put this question at issue by denying these allegations, asserting that there is "no evidence that the government knew about Officer Pelkey's prior conduct." Amended Opposition at 227; see also id. at 307 ("Nor was the Government in possession of Officer Marc Pelkey's Vermont Department of Corrections Disciplinary record.").

Next, Mr. Fell has alleged that the Government withheld scores of prison, social services, medical, law enforcement and education records, as well as an eyewitness interview, demonstrating codefendant Robert Lee's aggression and dominance.  2255 Motion, Claim VIII; see, e.g., Email Among NWSCF Staff, July 28, 2001 (Fell Ex. 98) (documenting threat to rape another inmate's mother); Warrant Information Network Subject Report on R. Lee, Dec. 15, 2000 (Fell Ex. 69) (describing display of suicidal tendencies and three-inch scars on hands).  He also alleges facts to support the claim that the FBI failed to disclose exculpatory facts from its interview of eyewitness Francis Bellantoni, an eyewitness who would have supported Mr. Fell's claim that Mr. Lee was the aggressor in the death of Mrs. King.  See 2255 Motion at 229-31; Declaration of Francis Bellantoni, Feb. 24, 2011 (Fell Ex. 301 at 1) (reporting men arguing and that man who was "yelled at" trailed behind in walk to woods).

The Government withheld these documents despite its strategy of portraying Mr. Fell as more aggressive and dominant than Mr. Lee.  See, e.g., United States' Trial Memorandum, June 17, 2005 (Fell Ex. 130 at 19-21) ("In all these circumstances, the evidence shows that Fell, not Lee, was the aggressor and Lee was the follower.").  The Government argued to the jury in its guilt phase summation that there was no "doubt about the dominance of Donald Fell in the Lee-Fell relationship."  Tr. Vol. IV-I at 71:15-72:5 (June 24, 2005).

Once again, these claims raise disputed issues requiring testimony.  The Government denies that it failed to disclose the contents of its interview of Mr. Bellantoni. Amended Opposition at 241 n.46.  Although it does not deny that it withheld certain evidence that Mr. Lee verbally and physically threatened other inmates, threatened to rape another inmate's mother, expressed homicidal and suicidal ideation, and otherwise misbehaved in prison, cf. Amended Opposition at 239; May 10 Opinion at 93-94, it does contend that it disclosed "its

10

entire lay investigation of Lee," pointing to the FBI report it disclosed to Mr. Fell on May 25, 2001, Amended Opposition at 240 n.4; Gov. Ex. B. But Mr. Fell is entitled to test that proposition. These denials squarely implicate what the Government knew. In this case, there is additional reason to doubt the Government's representations: Dr. Welner's report makes clear that the Government continued to investigate Mr. Lee after May 25, 2011. See Welner Report, July 5, 2012 (Fell Ex. 10 at 6-7) (noting reliance upon 2005 interviews of Robert Lee, Sr., June Kondraski, Shane Lee, Mr. Lee's attorney Leo Diamond, and mutual friends of Mr. Lee and Mr. Fell). In any event, unless the Government concedes that it withheld exculpatory and mitigating evidence, Mr. Fell is entitled to a deposition to assess whether "favorable evidence was withheld." See May 10 Order at 96.

These are a few of the many issues as to which the testimony of the Government's lawyers and agents is relevant in this case. Courts routinely order depositions of such witnesses to pending allegations of misconduct or ineffective assistance of counsel. See, e.g., Payne v. Bell, 89 F. Supp. 2d 967, 975 (W.D. Tenn. 2000) (granting request to depose state prosecutor concerning alleged Brady violations and explaining that "[o]nly [the prosecutor] knows what information was in his possession at the time of [the petitioner's] trial"); Reid v. Vaughn, No. CIV.A. 01–2385, 2003 WL 21027275 (E.D. Pa. May 2, 2003) (ordering deposition of prosecutor where witness allegedly made exculpatory statement to prosecutor during trial recess); Robb v. Ishee, No. 2:02-cv-535, 2012 WL 604225 (S.D. Ohio Feb. 24, 2012) (ordering deposition of special prosecutor to ascertain location of allegedly exculpatory files); Conway v. Houk, No. 3:07–cv–345, 2009 WL 961199 (S.D. Ohio Apr. 8, 2009) (ordering depositions of prosecutors about communications with key witness relevant to allegations of misconduct and ineffective assistance of counsel in failing to investigate witness). Where, as here, the Court has already

determined that an evidentiary hearing is warranted, it is only fair (and may result in a streamlining of the proceeding) for the movant to be able to take the testimony of the Government representatives who are disputing his well-pleaded allegations and who can be expected to testify at trial.  See Reid, 2003 WL 21027275, at *2.

B.      The Government's Response To Mr. Fell's First Request Is Inadequate.

On May 10, 2013, the Court granted Mr. Fell's Discovery Motion and permitted him to conduct discovery to develop his remaining claims, including to serve specified document requests supportive of his claims of prosecutorial misconduct and ineffective assistance of counsel.  Discovery Order at 1-3.  That Discovery Motion and the corresponding document requests were made on notice to the Government, which opposed the Motion.  Opposition of the United States to Fell's Discovery Motion, Dkt. No. 323 (June 27, 2011) ("Discovery Opposition").  On August 23, 2013, Mr. Fell served his First Request, seeking the documents the Court gave him leave to seek.  See First Request.  Consistent with the Federal Rules of Civil Procedure, the First Request requested that the Government produce the specified documents and physical evidence within 45 days.[5]  See First Request at 1.  The Government's time to respond thus expired on October 7, 2013.  The Government did not respond on October 7 or make any objections.  It has not produced any documents, or committed to a date by which it will complete its document production.  Instead, on October 22, 2013, three days before this filing was due, the Government finally sent responses and objections to Mr. Fell's First Request ("Government's Response," attached as Exhibit B).  It did not send any documents.

Notwithstanding the late date of the Government's filing, the parties have reached agreement on most of the issues raised by the Government.  The Government has agreed to

---

[5] The Federal Rules of Civil Procedure would otherwise have required the Government  respond in writing to Mr. Fell's First Request within 30 days of service.  See Fed. R. Civ. P. 34(b)(2)(A).

12

produce the documents that are responsive to twenty-eight of Mr. Fell's requests subject to the service of a privilege log containing assertions of attorney client privilege and attorney work product.[6]  After meeting and conferring on October 23, 2013, the parties resolved the Government's over-breadth challenge to two other document requests.[7]

There remain only two issues on which the parties need the Court's guidance and direction.  First, notwithstanding that the Court has already ruled on the issue, the Government objects to two requests relating to the examinations by Dr. Welner and Dr. Wetzel that repeat, in haec verba, the precise request before this Court in the motion for discovery.[8]  It asserts that the "information requested would not inform any of the claims set forth by the Petitioner in his 2255 Petition."  Government's Objection at 2.  Second, the Government has not produced any documents notwithstanding the deadline in the First Request, and has not proffered a date by which it will produce documents so that Mr. Fell's defense team can react to that date and plan their discovery and hearing preparation schedule accordingly.

1. The Government Should Be Compelled To Produce Documents Responsive To Requests No. 5 And No. 6.

The Government should be compelled to produce the documents responsive to Requests No. 5 and No. 6.  First, the Court has already found that good cause exists for each of the two discovery requests.  Discovery Order at 1-2; Government's Response at 2.  As the Court is aware, these requests were the subject of extensive briefing by the parties.  See Discovery

---

[6] Mr. Fell reserves the right to challenge any particular assertion of attorney-client privilege or attorney work product after the service of the privilege log.

[7] Those requests are Requests  No. 10  and No. 28 ("Any and all physical evidence, records, notes, communications and other documents relating to the death of Teresca King.").

[8] Those requests are Request No. 5 ("Any and all documents, notes and other records relating to Dr. Michael Welner's work in Mr. Fell's case.") and Request No. 6 ("Any and all documents notes, communications and other records relating to Dr. Richard Wetzel's examination of Mr. Fell on June 13, 2005, including communications between Dr. Richard Wetzel and the Government or between Dr. Richard Wetzel and other mental health professionals.")

Motion; Discovery Opposition; Reply Memorandum in Support of Motion for Leave to Conduct

Discovery, Dkt. No. 329 (Aug. 26, 2011); Surreply of the United States as to Fell's Discovery

Motion, Dkt. No. 334 (Oct. 7, 2011); and Response to the Government's Surreply to Mr. Fell's

Motion for Leave to Conduct Discovery, Dkt. No. 335 (Oct. 17, 2011).  The parties also wrote

several letters to the Court, and the Court heard oral arguments on March 5, 2013.

Based on this record, the Court determined that Mr. Fell was "entitled to take

discovery, with Court approval, concerning his remaining claims."  Discovery Order at 1.  The

Court evaluated whether Mr. Fell had shown good cause for each enumerated discovery request.

It denied certain requests as "insufficiently specific" or otherwise lacking good cause.  See

Discovery Order at 1-3.  It granted Mr. Fell's requests with respect to other document requests,

including the two as to which the Government now refuses to produce documents.  See

Discovery Order at 1-2.  The Government could have sought reconsideration within the time

period permitted for such motions, but did not.  See Local Rule 7(c) (requiring motion to

reconsider to be filed within 14 days of order unless governed by Fed. R. Civ P. 59 or 60).

Mr. Fell respectfully submits that the Court has already determined that the

information in these requests would "inform" his claims and that it is not open to the

Government to relitigate that issue. See Discovery Order at 1-2 (granting first eighteen requests).

The Court's ruling is now law of the case.  See U.S. v. Quintieri, 306 F.3d 1217, 1225 (2d Cir.

2002) (quoting U.S. v. Uccio, 940 F.2d 753, 757 (2d Cir. 1991)) ("[W]hen a court has ruled on

an issue, that decision should generally be adhered to by that court in subsequent stages in the

same case."); V.S. v. Muhammad, No. 07-CV-0213 (CBA)(JO), 2010 WL 1879321, at *3

(E.D.N.Y. May 10, 2010) (request for order barring plaintiffs from seeking discovery "plainly

meritless" in light of law of the case authorizing discovery).

14

Second, even if the issue were open to reconsideration, the Government's Response gives no reason the Court should reconsider the issue. Request Nos. 5 and 6 go to the merits of Mr. Fell's allegation that his trial lawyers rendered ineffective assistance in withdrawing their mental health evidence and stipulating that Mr. Fell was "intact" without first seeking to exclude Dr. Welner's testimony on the grounds of prosecutorial misconduct. See 2255 Motion, Claim V. Against the Government's objection, the Court has already found that Mr. Fell has alleged sufficient facts to support that claim and that he is entitled to a hearing. May 10 Order at 23. Having litigated and lost that issue, the Government should not now be heard to deny Mr. Fell the documents that he needs and that are relevant to offer at that hearing and to prevail on his claim.[9]

2.    The Court Should Impose A Deadline For The Government To Complete Its Response To The First Request.

As stated, the Government failed to produce responsive documents within the 45 days set forth in the First Request and has failed to offer to Mr. Fell a date certain by which it expects to complete its document production. This notwithstanding the fact that Mr. Fell will have completed the production of the bulk of documents from his attorneys files today, and the remainder next week. The most that the Government has been willing to say is that it is working on its document production and will produce Mr. Lee's prison documents on October 25, 2013. This response leaves Mr. Fell unable to plan for further discovery, to complete his expert work, to schedule depositions, or to put together a timetable to prepare for trial.

---

[9] Last, the Government waived any objections when it failed to respond in writing to the First Request by October 7, 2013. See Land Ocean Logistics, Inc. v. Aqua Gulf Corp., 181 F.R.D. 229, 236 (W.D.N.Y. 1998) ("[A] failure to respond or object to a discovery request in a timely manner waives any objections which may have been available."); Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.").

It is well settled that, in the absence of agreement or Court order to the contrary, the Federal Rules of Civil Procedure obligate a party to produce documents within 30 days after the service of a document request.  See Fed. R. Civ. P. 34(b)(2)(A) (30 days to respond absent stipulation or document request); Williams v. City of New York, 1984 WL 429, at *3 (S.D.N.Y. June 1, 1984) (party must respond within 30 days of receiving request for production).  See also Brunea v. Cnty. of Erie, No. 89-CV-1510E, 1993 WL 286090, at *4 (W.D.N.Y. July 28, 1993) (order compelling production appropriate when party failed to produce documents within 30 days of document request).

It is also well settled that the Court may establish deadlines for document production in the interests of effective case management, see, e.g., Plechner v. Widener Coll. Inc., 569 F.2d 1250, 1263 (3d Cir. 1977), or impose sanctions for noncompliance with the Rules or court-imposed deadlines, see, e.g., Johnson v. Fed. Express Corp., IP 99-1377-C-Y/K, 2002 WL 362753, at *5 (S.D. Ind. 2002) (ordering compliance within ten days); Firefighter's Inst. for Racial Equality ex rel. Anderson v. City of St. Louis, 220 F.3d 898, 902 (8th Cir. 2000) (stating that a district court may set deadlines for disclosure of evidence and impose sanctions for a party's failure to meet them).  See generally Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 37(c).  These rules perform a salutary and essential function.  Without any deadlines, the parties are unable to conduct discovery and to plan for a trial.

We understand that the Government has had difficulty complying with the deadline in the First Request or producing documents in light of the sequester and shutdown of the federal government, and we are not unsympathetic to those difficulties.  Both sides have indicated willingness to extend lawyerly courtesies, particularly under circumstances where there are budget difficulties.  At the same time, however, Mr. Fell needs the requested documents and

needs to know when they will be produced in order to move this proceeding forward on the Court's timetable.

Accordingly, Mr. Fell respectfully requests that the Court impose a deadline of November 25, 2013 for the Government to complete its production in response to the First Request.[10]

## III.    The Government's Discovery Requests

Mr. Fell objects to the Government's requests for depositions of Mr. Fell and his sisters and its request to retain Dr. Welner to conduct a rebuttal mental health examination.

### A.    The Government Has Not Shown Good Cause For The Deposition Of Mr. Fell.

The Government simply asserts, "Clearly Fell's own conduct and statements necessarily informed counsel's actions and the opinions of the defense's experts. As such, the Government requests that this court compel Petitioner to submit to a deposition." Renewed MTC at 9. This conclusory claim does not establish good cause. See Advisory Committee Note to Rule 6, 28 U.S.C. § 2254 (incorporated by reference in Advisory Committee Notes to 28 U.S.C. § 2255).

A defendant's right to take the deposition of the Government's attorneys and the Government's rights to take the defendant's deposition are not equivalent. Before the Government may take the extraordinary step of deposing a habeas petitioner, it must show a reason for doing so—that the motion has put at issue some question as to which the defendant has special knowledge. See Wessinger v. Cain, No. 04-637-JJB-SCR, 2009 WL 111735, at *1-2 (M.D. La. Jan. 15, 2009) (requiring showing of factual dispute about which petitioner likely to have relevant information).

---

[10] Mr. Fell reserves the right to expand the list of individuals of whom he seeks depositions, based on facts and information learned in the course of document discovery and interrogatories.

17

Mr. Fell's 2255 Motion does not put the contents of his communications with counsel at issue and post-conviction counsel do not expect to call Mr. Fell at trial.  The Motion alleges that certain jurors engaged in misconduct by, for example, providing misinformation and omitting responsive information during *voir dire*.  Mr. Fell's testimony is not needed on those claims.  They will stand or fall on other evidence—the jurors' testimony; testimony and evidence from other witnesses; and the jurors' answers during *voir dire*.  Mr. Fell also alleges governmental misconduct:  that the Government violated Court orders, made misrepresentations to the jury, and withheld information to which the defense was entitled.  See 2255 Motion, Claims V-VIII; Claims XVII-XXI.   That claim likewise will stand or fall based on evidence independent of Mr. Fell, including the facts he has alleged, the testimony of Government representatives, and the trial record itself, which will show prejudice.

Finally, Mr. Fell has alleged ineffective assistance of counsel.  But his claim of ineffective assistance is not based on alleged bad advice his attorneys provided him or some other claim as to which his testimony would be relevant.  He claims that his attorneys engaged in unreasonable professional conduct by abandoning his mental health claims, failing to investigate the Government's aggravation case, failing to investigate facts that were mitigating, and unreasonably presenting his defense at trial.  See 2255 Motion, Claims III-XVI; Claim XVIII; Claim XXIII(B) and (C).  The testimony of Mr. Fell's lawyers will be relevant to those issues, and Mr. Fell has agreed that the Government can depose his lawyers before they testify at any hearing.  See supra Part I.  But the Government has not identified any issue as to which Mr. Fell's testimony would be relevant.  Nor has it identified any issue as to which his testimony would be relevant and the testimony of his lawyers would not suffice.  See Bolin v. Chappell, 1:99-cv-05279 LJO, 2012 WL 6698270, at *3 (E.D. Cal. 2012) (finding no good cause for

18

deposition of petitioner where depositions of trial attorneys about tactical decisions available). And before there is any showing that those depositions are inadequate, the Government should not be permitted to take Mr. Fell's deposition.

In Wessinger, the court denied the Government's request to depose the petitioner concerning his many claims of ineffective assistance of counsel during the pretrial, guilt, and penalty phases because the Government's answer to his claims did not indicate that counsel based any strategic trial decision on petitioner-provided information, nor did it "assert, or even infer, that any of trial counsel's strategic decisions were made after consulting with the petitioner, informing him of counsel's proposed course of action, or communicating with the petitioner in any way." 2009 WL 111735, at *2.

The same is true of the Government's Amended Opposition, which contains no allegations that Mr. Fell and his lawyers had any conversations or communications that informed trial counsel's decision-making. Cf. Amended Opposition at 50-297. Nor could the Government have argued otherwise: the 2255 Motion did not put any such communications at issue. See generally 2255 Motion at 26-296 (alleging deficient performance based on inadequate investigation and presentation of lay witness testimony, failure to collect relevant records, failure to conduct a reasonable mental health evaluation, withdrawal of mental health evidence based on a misapprehension of the facts, and other failures relating to forensic evidence and trial practice).

Finally, even if such information exists, the Government has conceded that there are less drastic means of obtaining it by simultaneously requesting interrogatories. See Government's First Motion at 9; Renewed MTC, Proposed Order at 3. Depositions of a habeas petitioner raise Fifth Amendment concerns and should be undertaken only where the petitioner

19

possesses special knowledge and there are no other ways to obtain the relevant testimony. See Wessinger, 2009 WL 111735, at *2 ("The availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites."); Henry v. Marshall, No. CIV S-94-0916 JKS EFB P, 2009 WL 361745, at *1 (E.D. Cal. Feb. 12, 2009) (acknowledging Fifth Amendment implications of deposition regarding assertions of actual innocence).

Here, the parties have agreed to negotiate the appropriateness of specific interrogatories, including interrogatories on Mr. Fell, when they are proposed, and Mr. Fell has consented to depositions of his trial attorneys. Accordingly, there is no need for the parties to depose Mr. Fell himself.

B.    The Government Has Not Shown Good Cause For The Depositions Of Mr. Fell's Sister.

The Government also seeks to depose Mr. Fell's sister Teri Fell. Government's First Motion, Proposed Order at 1; Renewed MTC at 9. It asserts that "[c]learly the Government is entitled to explore what additional information if any [she] had to offer in support of Fell's defense." Renewed MTC at 9. The Government lacks good cause.

A deposition of Ms. Fell would be singularly inappropriate. She is a lay witnesses whose deposition would not advance the resolution of Mr. Fell's claims. See Capalbo v. United States, Nos. 10 Civ. 2563(RJH)(JLC), 02 Cr. 1237(RJH), 2012 WL 611539, at *3 (S.D.N.Y. Feb. 24, 2012) (finding no good cause for deposition despite assertions that deponent was "a unique" and "crucial witness to many other constitutional infirmities" because assertions too generalized to constitute specific allegation of how testimony would support habeas petition). A deposition is not necessary to determine what additional information Ms. Fell had to offer in support of Mr. Fell's defense. Mr. Fell has produced an extensive declaration from her with his 2255 Motion.

20

Declaration of Teri Fell, Mar. 15, 2011 (Fell Ex. 278).  She testified at trial and was subject to searching cross-examination.  Tr. Vol. VII-I at 75:25-162:13 (July 1, 2005).  She was interviewed by Special Agent James J. Glenn and separately by Dr. Welner in an interview to which the Government has access.  See, e.g., Welner Report (Fell Ex. 10 at 4) (citing "Interview of Terri Fell, sister of Donald Fell, April 5, 2001"); 2001 FBI Report (Fell Ex. 76 at 61-64).  Furthermore, she also spoke with Mr. Fell's mitigation specialist Cynthia Ayres, whose interview memos were given to the Government and relied upon by Dr. Welner.  Welner Report (Fell Ex. 10 at 7) (citing "Interviews of Terri Fell, sister, by Cynthia Ayres, April 25, 2001 and March 30, 2005").  The Government has all these materials at its disposal.

Ms. Fell is expected to testify at the hearing, and will be subject to cross-examination then.  She has suffered tremendously as a result of this tragic case.  Requiring this lay witness to testify at a deposition would be unreasonably burdensome.  The Government has not identified any fact issues that it would like to question her about at a deposition that it would not be able to ask her about at the hearing.[11]

Finally, in the May 10 Order, the Court indicated that many of the factual issues raised in the 2255 pleadings turn on credibility and other nuanced firsthand determinations about mitigation impact that require a hearing.  See, e.g., May 10 Order at 28 ("Given that the Court's task will be to assess the probability of a different outcome at sentencing, it must 'consider the totality of the available mitigation evidence—both that adduced at trial, and the evidence [proffered in the post-conviction proceeding]—and reweigh[h] it against the evidence in aggravation.'"); id. at 64 (denying summary dismissal of execution impact claim based on assertions "that there were additional family and friends who would have presented a

---

[11] Should Ms. Fell become unavailable to appear in person at the evidentiary hearing, Mr. Fell would not object to her testimony by deposition.

21

dramatically different picture of Fell's positive qualities and the emotional value he holds for them"). Whether the testimony available in Ms. Fell differed qualitatively from her testimony at trial, and whether the available testimony would have changed the picture presented to the jury, is best resolved through in-court testimony, and not from deposition transcripts.[12]

C. Mr. Fell Has Consented To A Rebuttal Mental Health Examination By An Appropriate Mental Health Expert. Dr. Michael Welner Is Not An Appropriate Expert.

The Government has moved to compel Mr. Fell to submit to a "complete psychiatric evaluation to be performed by a mental health expert to be selected by the Government" within the next 120 days. Renewed MTC, Proposed Order at 2. It has indicated that its expert of choice will likely be Dr. Michael Welner. See Renewed MTC at 10-11; Government's First Motion at 5; Government's First Motion, Proposed Order at 3.

Mr. Fell and the Government have agreed that the Government will be able to conduct a rebuttal mental health examination directed to countering the evidence Mr. Fell presents in these proceedings of any affirmative mental health issues. See supra Part I. Mr. Fell has not yet made expert disclosures. The parties have reached an agreement for the disclosures to be made by December 31, 2013. Accordingly, the Government's request for an examination to be conducted by any particular expert is premature and the Court need not address it at this point. If Dr. Welner's testimony is not relevant to rebutting the evidence Mr. Fell offers of a

---

[12] The Government also requests the testimony of Mr. Fell's half-sister Susan Benczkowski. Government's First Motion, Proposed Order at 1; Renewed MTC at 9. But that request is both premature and unwarranted. Mr. Fell has not yet decided whether to call Ms. Benczkowski as a witness, nor has he submitted a sworn declaration from her in these proceedings. If Mr. Fell does not call his half-sister at the evidentiary hearing, there would be no basis for taking her deposition. Mr. Fell would not rely on any new evidence from her. Even if he were to call Ms. Benczkowski as a witness, her deposition would be unnecessary for the same reasons that Ms. Fell's deposition is unnecessary. She is a lay witness, not represented by post-conviction counsel or any other counsel to our knowledge, and she has already borne a heavy burden. The Government will have an opportunity to cross-examine her at the hearing: to require her deposition would only be to make a lay witness submit to the same questioning twice.

mental defect, there will be no reason for the Court to address the other reasons why he should not be permitted to conduct a new mental health examination.

Were the Court inclined to reach that issue now, it should preclude Dr. Welner from conducting a further mental health examination of Mr. Fell.  In the first instance, the Court has already found that Dr. Welner disregarded the April 7 Order when he used Dr. Wetzel's authorized interview of Mr. Fell to conduct psychological testing.  See Order Denying New Trial at 21-22.  In considering whether prosecutorial misconduct warranted a new trial, the Court described the best-case scenario for the Government as one in which "its expert was simply a zealot who pursued his own agenda despite the restrictions imposed by the Court."  Order Denying New Trial at 22.

In addition, Dr. Welner is an indispensable fact witness in this case.  Mr. Fell claims that Dr. Welner would have been subject to an effective Daubert challenge, see 2255 Motion, Claim V, and the Government claims that Mr. Fell's lawyers did not engage in ineffective assistance of counsel and that Mr. Fell was not prejudiced by his lawyer's unreasonable conduct because of the impact that Dr. Welner's testimony would have had on the jury had it been received, see, e.g., Amended Opposition at 126-128 (explaining that Dr. Welner's testimony "would almost certainly have neutralized, if not completely overcome, Fell's mental health evidence").   Those issues inevitably will require testimony regarding what Dr. Welner was told with respect to Dr. Wetzel's examination, what conversations he had with the Government and with Dr. Welner, what he would have said on the stand, and what Daubert challenges he would have been subjected to, based on the analysis he conducted and his conclusions at the time.  The Government cannot rehabilitate him by having him do a new examination ex post.

Finally, for the reasons described in the 2255 Motion, Dr. Welner's testimony would be inadmissible at the June 2014 evidentiary hearing as unreliable. See 2255 Motion at 136-160 (alleging meritorious grounds for preclusion, including unreliability of "psychopathy" and Antisocial Personality Disorder diagnoses, unreliability of hearsay-based methodology, lack of objectivity, and irrelevance as rebuttal). Mr. Fell will be prepared to fully brief these objections if and when they become relevant.

## Conclusion

For the reasons described above, Mr. Fell respectfully urges the Court to authorize Mr. Fell to serve deposition notices on the Government's trial attorneys and certain FBI agents and to order the Government to disclose documents responsive to his First Request by November 25, 2013.

RESPECTFULLY SUBMITTED,

Dated:  October 25, 2013
New York, New York

/s/ Lewis J. Liman_____
LEWIS J. LIMAN
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2550
Fax: (212) 225-3999

Dated:  October 25, 2013
Burlington, Vermont

/s/ Richard Rubin_____
RICHARD RUBIN
Rubin, Kidney, Myer & DeWolfe
237 N. Main Street
Barre, Vermont, 05641-4125
(802) 479-2514
Fax: (802) 479-2516

Dated:  October 25, 2013
New York, New York

/s/ Cathleen Price_____
CATHLEEN PRICE
P.O. Box 321762
New York, New York 10032
(212) 998-6193

*Counsel for Donald Fell*