UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

------------------------------------------------------------------- X

DONALD FELL,

                 Movant,

            - against -

UNITED STATES OF AMERICA,

              Respondent.

------------------------------------------------------------------- X

    2:01-CR-12-01

## REPLY BRIEF IN SUPPORT OF STATEMENT OF DISPUTED DISCOVERY

Donald Fell respectfully submits this reply brief in response to the Government's

Brief Regarding Its Disputed Discovery Requests, Dkt. No. 424 (Oct. 25, 2013) ("Government's

Brief"), and in further support of his Statement of Disputed Discovery, Dkt. No. 425 (Oct. 25,

2013) ("Statement").  See Order, Dkt. No. 411 (Sept. 27, 2013).

    I.    Mr. Fell Should Be Permitted To Serve Deposition Notices On The Government's
           Attorneys And Federal Bureau Of Investigation ("FBI") Agents

The Government halfheartedly argues that depositions of its attorneys and FBI

agents should not be permitted because such testimony would not "inform Petitioner's Brady and

prosecutorial misconduct claims" and no case exists where Government lawyers have been

deposed post-conviction.  See Government's Brief at 11.  Neither claim is true.

Mr. Fell has made specific allegations that the Government knew or should have

known that its jury addresses as well as the testimony it elicited were false, that it violated this

Court's orders, and that it withheld exculpatory information.  Motion of Donald Fell for

Collateral Relief, to Vacate, Set Aside, or Correct Sentence, and for a New Trial Pursuant to 28

U.S.C. § 2255, Dkt. No. 301 (Mar. 21, 2011) ("2255 Motion"), at Claims V-VIII, Claims XVII-

XXI.  The Court has sustained those claims.  Memorandum Opinion and Order, Dkt. No. 367 (May 10, 2013) ("May 10 Order"), at 23, 89, 92, 95-96, 99, 102, 106.  While the Government has asserted that Mr. Fell's allegations are untrue, it has never made available the Government attorneys or agents whose testimony would be necessary to support that contention.  See Amended Opposition of the United States to Fell's § 2255 Motion, Dkt. No. 338 (Dec. 21, 2011), at 160-70, 211-217, 226-228, 233-240, 298-312.  If the Government intends to dispute Mr. Fell's allegations, Mr. Fell should be able to depose the Government's witnesses.

The Government's assertion that Courts do not allow depositions under these circumstances is just plain false.  Where the issues include what information the Government possessed or knew, as well as whether the Government violated Court orders, it is perfectly appropriate for the Court to permit a deposition of the Government's lawyers.  See Statement at 11 (citing Payne v. Bell, 89 F. Supp. 2d 967, 975 (W.D. Tenn. 2000); Reid v. Vaughn, No. CIV.A. 01–2385, 2003 WL 21027275 (E.D. Pa. May 2, 2003); Robb v. Ishee, No. 2:02-cv-535, 2012 WL 604225 (S.D. Ohio Feb. 24, 2012); Conway v. Houk, No. 3:07–cv–345, 2009 WL 961199 (S.D. Ohio Apr. 8, 2009)); see also U.S. v. Stein, 435 F. Supp. 2d 330 (S.D.N.Y. 2006) (holding that Government violated KPMG employees' rights to a fair trial after hearing testimony from prosecutors).[1]

---

[1] The Government argues in a footnote that Mr. Fell has failed to comply with the procedural requirements of 28 C.F.R. 16.21 et seq.  Government's Brief at 12 n.3.  As Mr. Fell's Statement makes clear, he requests only leave to serve deposition notices on the Government's trial attorneys and FBI agents at this time.  See Statement at 4, 24.  It would be premature for him to submit an affidavit or statement describing the testimony he seeks before he even serves a demand on the Government.  See 28 C.F.R. 16.23(c); Ferreira v. U.S., 350 F. Supp. 2d 550, 558 (S.D.N.Y. 2004) (regulations apply once applicant makes "a formal demand on the USAO").  In any event, these regulations provide internal guidance for the Department of Justice and "do not create an 'independent privilege' authorizing the Department of Justice to withhold documents."  Metro. Life Ins. Co. v. Muldoon, No. CV-06-2026-CM-DJW, 2007 WL 4561142, at *5 (D. Kan. Dec. 20, 2007) (quoting Kwan Fai Mak v. FBI, 252 F.3d 1089, 1092 (9th Cir. 2001)).

II.     The Government's Discovery Requests

**A.      There Is No Good Cause For Depositions Of Teri Fell And Susan Benczkowski**

The Government has not shown good cause for the depositions of Teri Fell and Susan Benczkowski.[2]  The Government does not dispute that Ms. Fell will be a witness at the hearing, where it will be able to cross-examine her, or that it has had far more access to her than an adversary usually has to a witness for the other side.  At trial, the Government had unlimited ability to cross-examine Ms. Fell and did so in two examinations that span a total of eighteen transcript pages.  See Tr. Vol. VII-I at 137:9-153:18; 160:23-162:13 (July 1, 2005).  Before trial, the Government had Dr. Michael Welner interview Ms. Fell along with an unknown FBI agent, and before that it had Special Agent James J. Glenn interview her and prepare a 4-page 302.  See Welner Report (Fell Ex. 10 at 5); 2001 FBI Report (Fell Ex. 76 at 61-64).  The Government also has a police report prepared by Wilkes-Barre Police Department Detective James Touey after he interviewed Ms. Fell in December 2000.  See Supplement Report re Rutland, Vermont Homicides, Dec. 11, 2000.  If the Government would like to know what else she will say at the evidentiary hearing, it has the benefit of the 32-page declaration she submitted in connection with Mr. Fell's 2255 Motion setting forth the content of her proposed testimony.  See Declaration of Teri Fell, Mar. 15, 2011 (Fell Ex. 278).  There is simply no reason to subject Ms. Fell, a third party who has already been examined by the Government under oath and will be again soon, to yet a third examination under oath.[3]

---

[2] The Government at times purports to seek depositions of "Fell's witnesses," "lay witnesses," "certain factual witnesses that it understands are central to Fell's claims," or witnesses "who will presumably testify in support of his contentions during the evidentiary hearing."  Government's Brief at 3-4.  The only witnesses it has identified whose depositions it wants to take, however, are Ms. Fell and Ms. Benczkowski.

[3] This Court also lacks the authority to compel Ms. Fell to submit to such a deposition.  Ms. Fell lives over 100 miles from Burlington, Vermont and is not a party to this litigation.  Accordingly, any subpoena for her deposition must issue from the United States District Court for the Middle District of Pennsylvania.  See Fed. R. Civ. P.

The Government's arguments to the contrary are gossamer thin.  It claims that it needs to take Ms. Fell's deposition in Pennsylvania under oath because it wants to know the facts that inform the opinions of Mr. Fell's post-conviction experts.  See Government's Brief at 5.  But Ms. Fell does not know what facts will inform the opinions of the post-conviction experts.  The best source of this information is the experts themselves, and Mr. Fell has agreed to disclose the materials they rely upon and to allow the Government to depose them.  See Statement at 3.  Likewise, the Government says it needs Ms. Fell's deposition testimony to discover "[her] interactions with Fell, trial counsel and Fell's mitigation specialist."  Government's Brief at 5.  But Mr. Fell has already produced all contemporaneous physical communications between Ms. Fell and the trial team and mitigation specialist, as well as notes and memoranda memorializing their interactions, and, what is more, trial counsel and their mitigation specialist will be deposed.  See Statement at 2-3.  There is no reason to believe that Ms. Fell—a 30-year-old woman who has been physically, emotionally, and sexually abused; driven to self-mutilation; and threatened with the execution of her brother—will remember in detail the contents of her fleeting communications with these professionals over eight years ago.[4]  Nor is there reason to believe

45(a)(2)(B) (subpoena for deposition must issue "from the court for the district where the deposition is to be taken"); Fed. R. Civ. P. 45(c)(3)(A)(ii) (requiring issuing court to modify or quash subpoena that requires non-party to travel "more than 100 miles from where that person resides, is employed, or regularly transacts business in person"); see also In re Edelman, 295 F.3d 171, 178 (2d Cir. 2002) ("[U]nless a person is party to the litigation or an officer of a party, he cannot be compelled to travel more than 100 miles from where he resides or works to be deposed."); Price Waterhouse LLP v. First American Corp., 182 F.R.D. 56, 64 (S.D.N.Y. 1998) ("[T]he Federal Rules contemplate that deposition subpoenas issue only from the district in which the deposition is to occur [and] [t]o modify the Subpoena at issue to require deposition [outside the district] would be to create a subpoena that does not issue from 'the district in which the deposition is to be taken.'").

[4] As the Court is aware, Mr. Fell has also submitted sworn declarations from Ms. Fell, Alexander Bunin, Cynthia Ayres, and Andrew Bartnick describing these interactions.  See Declaration of Teri Fell, Mar. 15, 2011 (Fell Ex. 278 at 29-30) ("I met with Donny's trial lawyers a couple times before trial. . . Donny's lawyers didn't listen to me. They didn't want to hear what I had to say.  I could have told them about all the stuff in this statement and more.  I was willing to do so, but they just didn't ask me about most of this stuff and didn't seem interested to learn more."); Declaration of Alexander Bunin, Mar. 17, 2011 (Fell Ex. 264 at ¶ 41) ("I did not meet Mr. Fell's sister, Teri, until she came up to Vermont for trial."); Declaration of Cynthia Ayres, Mar. 18, 2011 (Fell Ex. 265 at ¶ 9) ("Teri Fell, who is Mr. Fell's sister and his closest witness, was interviewed for a total of seven hours, over three visits in four years."); Declaration of Andrew Bartnick, Mar. 16, 2011 (Fell. Ex. 262 at ¶ 6) ("Aside from the interviews I

that she has evidence on these subjects that the trained professionals whom the Government will depose lack.

There is even less cause for the Government to depose Mr. Fell's half-sister, Ms. Benczkowski.  The Government asserts that Mr. Fell alleges that trial counsel were ineffective in connection with the investigation and presentation of her testimony.  But that is not true.  See Statement at 22 n.12.  Ms. Benczkowski did not submit a declaration in connection with Mr. Fell's 2255 Motion, and Mr. Fell does not intend to call her as a witness at the hearing.  The fact that Mr. Fell does not allege that counsel were ineffective in connection with the testimony of Ms. Benczkowski regarding the first eight months of Mr. Fell's life has no bearing on whether counsel were ineffective in investigating his adolescence and later teenage years, the heart of Mr. Fell's lay mitigation claim.  See 2255 Motion at 38-59, 62-66; Henry v. Poole, 409 F.3d 48, 72 (2d Cir. 2005) (finding ineffectiveness based on single error and explaining that "reliance on 'counsel's competency in other respects' . . . fail[s] to apply the Strickland standard at all"); Walbey v. Quarterman, No. 08-7007, 2009 WL 113778, at *7 (C.A.5 Tex. Jan. 19, 2009) (stating that "counsel can be prejudicially ineffective even if some of the available mitigation evidence is presented").  Ms. Benczkowski's trial testimony is not in dispute and there is no basis for her to be deposed in this proceeding.

Finally, the Government's motion should not be granted on the theory that these two depositions will permit it to move for summary judgment.  Government's Brief at 4, 5.  The Government has already had a bite at that apple.  Indeed, that it did not once suggest that it might move for summary judgment before, during, or after oral argument on its motion to dismiss

---

conducted to develop evidence of Donny's good adjustment to life in prison and investigation of the prison incidents, I was not involved in interviewing or preparing lay mitigation witnesses to testify . . . .").

shows how pretextual that argument is.[5]  See Transcript of Motions Hearing, Dkt. No. 366 (Mar. 5, 2013).

Mr. Fell supported his allegations of ineffective assistance of counsel with the testimony from Ms. Fell that he has claimed that trial counsel were ineffective for failing to investigate and present.  See 2255 Motion at 48-51.  The Government sought summary dismissal in part on the grounds that Ms. Fell's proposed testimony was not credible and that, even if credited, it would not support a claim for relief.  See Amended Opposition at 73-74, 81-86.  The Court denied that motion and held that Mr. Fell's submissions, including Ms. Fell's declaration, raised factual issues that could not be decided on the papers and required a hearing.  See May 10 Order at 28 ("[Fell] is entitled to present evidence on this issue.").

There is thus no testimony the Government could develop at a deposition that would eliminate Mr. Fell's right to have this Court decide for itself on the basis of testimony presented directly to it whether he is entitled to relief.  When the Court asked whether Juror # 26 should be deposed privately by counsel or examined in open court, the Government quickly answered that the better procedure was an in-court examination.  See Transcript of Examination of Jurors 143 & 162, Aug. 15, 2013 (under seal, citing from proceedings conducted in open court), at 5.  There should be no different treatment here.  Even if the Government cast doubt on Ms. Fell's credibility at a deposition, as it unsuccessfully argued it would be able to do in its Amended Opposition, that would at most require an evidentiary hearing—precisely what the Court ordered and what will take place next summer.  There is no good cause to delay the proceedings and impose a needless burden on Ms. Fell by ordering her deposition beforehand.

---

[5] The Government expressed doubt as to whether it will even seek summary judgment given the already extensive briefing in these proceedings.  See Transcript of Motions Hearing, Dkt. No. 366 (Mar. 5, 2013), at 127:8-12 ("But another year of sort of summary judgment motions—you have already seen a thousand pages.  I don't know if you want another thousand pages with summary judgment motions.  So, maybe we just go to the hearing.").

See Advisory Committee Note to Rule 6, 28 U.S.C. § 2254 (incorporated by reference in Advisory Committee Notes to 28 U.S.C. § 2255) ("Note to Rule 6") ("Discovery may, in appropriate cases, aid in developing facts necessary to decide whether to order an evidentiary hearing . . . ."); Puglisi v. U.S., 586 F.3d 209, 213 (2d Cir. 2009) (procedure for determining whether evidentiary hearing is necessary comparable to summary judgment); Taylor v. U.S., 287 F.3d 658, 661 (7th Cir. 2002) (affirming determination that no evidentiary hearing required "by parallel to Fed. R. Civ. P. 56").

### B.       There Is No Good Cause For Mr. Fell's Deposition

The Government seeks Mr. Fell's deposition on the limited subject of "his communications and relationship with the trial counsel he now attacks."  Government's Brief at 8.  The Government has not established good cause for Mr. Fell's deposition on this topic.  The Government argues first that by challenging the lawfulness and constitutionality of the judgment, Mr. Fell consented to a deposition where he can be asked questions that could incriminate him. See Government's Brief at 6.  But that is not right.  The Government must, instead, establish good cause by showing that the petitioner possesses personal knowledge relevant to specific claims for relief.  See Wessinger v. Cain, No. 04-637-JJB-SCR, 2009 WL 111735, at *1-2 (M.D. La. Jan. 15, 2009) (requiring showing of factual dispute about which petitioner likely to have relevant information); Rule 6(a), Rules Governing 2255 Proceedings (authorizing discovery, including depositions, only "for good cause" shown).  Were the law otherwise, it would require habeas petitioners to waive the Fifth Amendment privilege against self-incrimination to bring any claim for collateral relief, no matter how removed from their personal knowledge, and would intolerably burden the right to challenge a judgment or sentence.[6]  Cf. Detrich v. Schriro, No.

---

[6] Even if the law permitted all habeas petitioners to be deposed, courts would retain discretion to prevent such depositions from burdening the privilege against self-incrimination. Habeas proceedings are recognized as "a

CV 03-229-TUC-DCB, 2007 WL 177831, at *2 (D. Az. Jan. 23, 2007) ("[T]he privilege is potentially applicable in a habeas proceeding that could result in a new trial or sentencing.").

Such good cause is missing here. The Government argues that Mr. Fell has "put into issue his personal communications with his counsel about his life story and his mental health" and that his testimony regarding those subject would be the "most probative evidence". Government's Brief at 6. It states, "The best evidence concerning the adequacy of the work performed by his counsel is what questions his counsel asked or did not ask and what answers Fell did or did not give." Id. That is not true. The best evidence of the work performed by Mr. Fell's counsel is the testimony of Mr. Fell's trial counsel, as well as the undisputed evidence from the numerous other witnesses whom counsel did or did not contact. That is the evidence that Mr. Fell relies on in his 2255 Motion and that the Court has held gives rise to the need for a hearing. May 10 Order at 28 ("Fell has alleged on the basis of numerous extra-record sworn declarations that the jury heard a superficial, truncated and inaccurate narrative of his life. He has provided declarations from the defense team that suggest that the failure to conduct a more extensive investigation into Fell's background was not reasonable . . . . Fell has raised factual issues with respect to deficiency, and is entitled to present evidence on this issue.").

Mr. Fell did not submit a declaration with his 2255 Motion or assert any information on the basis of personal knowledge. The Government has made no showing

---

continuation of the criminal trial." U.S v. Cook, 997 F.2d 1312, 1319 (10th Cir. 1993); see also U.S. v. Sampson, 724 F.3d 150, 158-59 (1st Cir 2013). Courts have a recognized role to play in safeguarding Fifth Amendment rights where, as here, there is reason for heightened concern. See Brock v. Tolkow, 109 F.R.D. 116, 119-21 (E.D.N.Y. 1985) (heightened concern when civil and criminal cases substantially overlap); U.S. v Scrushy, 366 F. Supp. 2d 1134 (N.D. Ala. 2005) (heightened concern of manipulation when same governmental actor involved). Depositions are also generally disfavored when they might burden a testimonial privilege of the deponent. See In re Subpoena to Goldberg, 693 F. Supp. 2d 81, 88 (D.D.C. 2010) (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)) (refusing to permit deposition of journalist that could potentially implicate First Amendment privilege when alternative sources existed that were "more convenient, less burdensome or less expensive"). Accordingly, the district court for the Eastern District of New York stayed a civil deposition to prevent a habeas petitioner from facing questions concerning crimes for which he could be retried if his petition succeeded. Pipitone v. N.Y., No. 06-cv-0145 (RJD)(JMA), 2012 WL 1431485, at *1-2 (E.D.N.Y. Apr. 25, 2012).

whatsoever that Mr. Fell has relevant non-cumulative testimony to give on these subjects and it is implausible to believe that he does. Mr. Fell's lawyers Alexander Bunin and Gene Primomo spent no more than 19.5 and 38.5 hours meeting with Mr. Fell respectively in the five and a half years between their retention in December 2000 and the beginning of trial in May 2005; Mr. Fell spent no more than 7 hours meeting with Mr. Bunin and 19.5 hours meeting with Mr. Primomo in the over three and a half years between the Court's invalidation of the Federal Death Penalty Act in September 2002 and trial. While counsel may recall these interactions and what they did or did not cover, it is unrealistic to expect Mr. Fell–a lay witness unfamiliar with the criminal justice system and facing the death penalty–to recall such sporadic interactions with his trial lawyers over a decade later. See Pipitone, 2012 WL 1431485, at *1-2 (staying deposition pending conclusion of habeas proceedings because "the value of what [civil defendant] could now be compelled to testify about is de minimis"); see also Sahu v. Union Carbide Corp., 262 F.R.D. 308, 317 (S.D.N.Y. 2009) (disallowing deposition of witnesses about years' old events when they could not "be expected to provide accurate and detailed accounts").

Mr. Fell's trial lawyers and their files present the best record of what of value was developed during those few hours they spent together. His lawyers also have evidence with respect to the other witnesses they spoke to or did not speak to, as well as their entire investigation of the crime, the Government's aggravating factors, their own mitigating factors, and Mr. Fell's mental health. Guideline 10.7(A), ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (2003) (duty "to conduct thorough and independent investigations").[7] The Government may ask trial counsel and any other witnesses

---

[7] The Government again points out that Mr. Fell's post-conviction experts may rely on recent statements he has made to them. Government's Brief at 8. Again, Mr. Fell will produce to the Government all materials upon which his 2255 experts rely. See Statement at 3.

9

who testify what questions trial counsel asked or did not ask of Mr. Fell or others, and what answers Mr. Fell and others gave or did not give.  See In re Lott, 424 F.3d 446, 454 (6th Cir. 2005) (overruling decision to grant deposition of trial counsel on actual innocence claim because petitioner was not "relying upon privileged communications to make [his] case").

The Government's cases do not hold otherwise.  Strickland v. Washington, 466 U.S. 668, 691(1984), states only that "inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions".  But Strickland contemplates that counsel will act "on informed strategic choices made by the defendant and on information supplied by the defendant." Id.  The Government has not alleged—nor could it— that Mr. Fell himself made any of the decisions he has challenged in the 2255 Motion, or that his lawyers made or should have made any strategic decisions based on information he provided.[8] In the other cases the Government relies upon, the petitioners made allegations, absent here, that they had special knowledge about their own strategic contributions which could only have been addressed by the petitioner's testimony.  In Allen v. United States, for example, the petitioner claimed that his lawyers failed to adhere to his strategic choices during "both the guilt-innocence and penalty phases of the trial," to the extent that he was so "frustrat[ed] with his inability to get trial counsel to listen to him or to act on the information he provided [that he] requested, during trial, that his lead trial counsel be replaced."[9] Amended Pet. at 2, Allen, No. 4:07-cv-00027(ERW), 2011 WL 4729819 (E.D. Mo. Oct. 7, 2011).  Likewise, the petitioner in Bean v.

---

[8] Mr. Fell has also facilitated the Government's inquiry into his conversations with his lawyers: he has disclosed the physical evidence of counsel's conversations with him and consented to depositions of his counsel.  Strickland does not hold that the Government is entitled to depose the defendant under these circumstances, particularly where there is no showing that the defendant recalls any such conversations or that his lawyers do not.

[9] For this reason, the court held that "taking the Supreme Court's language in Strickland together with Allen's allegations, the United States is 'entitled to discover not only counsel's version of what was said, but also petitioner's version as well.'"  Allen, 2011 WL 4729819, at *8 (emphasis added) (quoting Bean v. Calderon, 166 F.R.D. 452, 457 (E.D. Cal. 1996)).

10

<u>Calderon</u> made multiple allegations that he was sidelined from contributing to trial strategy, <u>see</u> Amended Pet. at 37:4-11, 49:23-8, <u>Bean</u>, 166 F.R.D. 452, 457 (E.D. Cal. 1996), and claimed that "[d]efense counsel unreasonably determined to place [him] on the stand in the guilt phase of his trial . . . ." <u>Id.</u> at 262:7-8. <u>See</u> <u>Rock v. Arkansas</u>, 483 U.S. 44, 52 (1987) (emphasis added) ("Logically included in the accused's right to call witnesses . . . is a right to testify himself, should he <u>decide</u> it is in his favor to do so."). And the court in <u>Detrich</u>, 2007 WL 177831, at *1, found that the petitioner was "uniquely knowledgeable" about trial counsel's investigations. There are no such allegations here.[10]

### B.    Evaluation By Dr. Michael Welner

The Government concedes that the Court may permit an expert examination only when "the mental or physical condition … of a party … is in controversy," and even then can refuse the Government permission to use a particular expert on the basis of a "well-founded objection." Government's Brief at 9 (internal citations and quotations omitted). At this stage, it has not established that Dr. Welner's examination would be relevant to a matter "in controversy" and Mr. Fell has presented a well-founded objection to that examination.[11]

The Government has not shown—and cannot now show—that Dr. Welner's examination is relevant to any matter now at issue. Mr. Fell has alleged that he suffers from a number of mental health problems that should have been investigated and presented to his

---

[10] The Government's cases also involve claims of innocence and thus squarely implicate trial counsel's handling of the petitioners' unique knowledge. <u>See</u> Amended Pet. at 3:7-8; 62:21, <u>Bean</u>, 166 F.R.D. 452 (pleading "Tony's innocence" and a "compelling inference" that petitioner did not commit certain charged crimes); Amended Pet. at 34, 43, <u>Detrich</u>, 2007 WL 177831 (pleading "Mr. Detrich's innocence of first-degree murder . . ." and asserting ineffective assistance of counsel in connection with "put[ting] forth a misidentification defense").

[11] The Government's Brief offers no response to Mr. Fell's objection that it should not be allowed to retain an expert who has previously disregarded an order of this Court in these proceedings and who would be precluded from rendering an opinion under <u>Daubert</u>. <u>Cf.</u> Government's Brief at 9-11. This Court has already found that, even assuming the facts most favorable to the Government, Dr. Welner is "a zealot who pursued his own agenda despite the restrictions imposed by the Court." Opinion and Order, Dkt. No. 236 (Apr. 24, 2006) at 22.

11

sentencing jurors and this Court.  See 2255 Motion at 69, 80-95.  Mr. Fell has also alleged that trial counsel rendered ineffective assistance in withdrawing their mental health evidence and stipulating that their client's "intellect and cognitive functions were intact" and that he "did not suffer from any mental disease or defect" out of fear that the Government would call Dr. Welner in rebuttal.  See 2255 Motion at 6; Tr. Vol. XI at 94:3-5 (July 12, 2005).

Pursuant to the agreement of the parties, Mr. Fell will serve his expert reports in support of those claims on the Government by December 31, 2013.  Statement at 3.  At that point, the Government may have a properly qualified expert examine Mr. Fell to determine whether his post-conviction claims are factually supported (but may not conduct the "complete mental health evaluation" or "full-scope psychiatric evaluation" it purports to seek, see Government's Brief at 9, 10).[12]  See Fed. R. Crim. P. 12.2, Notes of Advisory Committee (purpose of the Rule "is to give the government time to prepare to meet the issue"); Opinion and Order, Dkt. No. 100 (April 7, 2005) ("April 7 Order"), at 16 (authorizing Dr. Wetzel or Dr. Rabun to conduct a mental health examination because "the government has the right to rebut any expert testimony presented by the defense as to those mitigating factors").  The Government would have the right to present the testimony of a properly-qualified expert to rebut the testimony of Mr. Fell's experts regarding Mr. Fell's mental health problems.  If Mr. Fell shows that his trial counsel rendered prejudicially unreasonable performance either in not conducting a proper investigation into Mr. Fell's mental health, in agreeing to the stipulation or in withdrawing Mr. Fell's mental health claim, the Government may then be entitled, at the

---

[12] The Government appears to acknowledge these limitations on its evaluation.  See Government's Brief at 11 ("The evaluation will be limited in scope to an assessment of Fell's mental health, as it relates to his assertions of mental disease or defect at the time he murdered Charles Conway, Deborah Fell and Terry King.  The Government agrees to confer with counsel to determine the tests to be administered.").  However, the Government's language is inconsistent and imprecise: the rebuttal evaluation to be conducted in these post-conviction proceedings must be limited to evidence that Mr. Fell introduces in these proceedings.

12

evidentiary hearing, to seek to offer the testimony that Dr. Welner would have been prepared to give had trial counsel put Mr. Fell's mental health at issue.  In that event, Mr. Fell will be able to demonstrate that Dr. Welner's testimony would have been excludable as a sanction for prosecutorial misconduct or on Daubert or other grounds.  2255 Motion at 138-161.

Permitting Dr. Welner to examine Mr. Fell again is not necessary to resolve either issue and would severely prejudice Mr. Fell.  With respect to Mr. Fell's claim that his counsel should have investigated his mental health problems, until Mr. Fell discloses his post-conviction expert reports with respect to those mental health problems, it would be premature for the Government to select any expert to examine Mr. Fell.  There will be time enough after expert disclosures for the Government to select an appropriate rebuttal expert, if it so chooses.  And whether trial counsel's failure to investigate or their decisions to withdraw the mental health case and to agree to the stipulation were prejudicial turns in part on what Dr. Welner would have said at the time based on the examination he had already conducted (assuming his testimony were not excluded), and on whether his testimony would have been excluded on Daubert or other grounds based on that examination and his communications with counsel.  See R.F.M.A.S., Inc. v. So, 748 F. Supp. 2d 244, 252 (S.D.N.Y. 2010) (court must determine admissibility of "proposed testimony").  It will not turn on, nor be rehabilitated or bolstered by, any post-trial examination.  In fact, if Dr. Welner is permitted to conduct another evaluation, that would only compromise his testimony and taint his recollections of his work before the trial eight years ago.

The posture of this case thus demonstrates the fallacy of the Government's argument that Dr. Welner "is not a factual witness."  Government's Brief at 10.  Dr. Welner is clearly a fact witness as to what he was told with respect to Dr. Wetzel's examination, what conversations he had with the Government and with Dr. Wetzel, what he would have said on the

13

stand, and what <u>Daubert</u> challenges he would have been subjected to.  Statement at 23.  Dr. Welner should not be permitted to conduct an examination in 2013 that will jeopardize his testimony about his conduct in 2005.[13]  <u>See</u> <u>Callahan v. Lash</u>, 381 F. Supp. 827, 833 (N.D. Ind. 1974) (court entitled to take steps to protect against "impairing the testimony of witnesses").

### <u>Conclusion</u>

For the reasons described above, Mr. Fell respectfully urges the Court to grant the relief requested in his Statement.

---

[13] In any event, if the Court were inclined to permit the Government to use Dr. Welner to conduct its rebuttal mental health examination, the Government should be bound by that choice and not permitted to retain additional experts to conduct subsequent evaluations of Mr. Fell.  <u>See</u> April 7 Order at 17 ("Rule 12.2 gives the government the ability to select one expert, not three.").  Mr. Fell requests such an order in the alternative.

RESPECTFULLY SUBMITTED,

Dated:  November 4, 2013
New York, New York

/s/ Lewis J. Liman_____
LEWIS J. LIMAN
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2550
Fax: (212) 225-3999

Dated:  November 4, 2013
Burlington, Vermont

/s/ Richard Rubin_____
RICHARD RUBIN
Rubin, Kidney, Myer & DeWolfe
237 N. Main Street
Barre, Vermont, 05641-4125
(802) 479-2514
Fax: (802) 479-2516

Dated:  November 4, 2013
New York, New York

/s/ Cathleen Price_____
CATHLEEN PRICE
P.O. Box 321762
New York, New York 10032
(212) 998-6193

*Counsel for Donald Fell*

15