**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT**

| | | |
|---|---|---|
| **DONALD FELL,** | ) | |
| *Petitioner*, | ) | |
| | ) | |
| **v.** | ) | **Civil Case No.** |
| | ) | **Criminal Case No. CR-01-12-S** |
| **UNITED STATES OF AMERICA** | ) | |
| *Respondent.* | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO FELL'S STATEMENT OF DISPUTED DISCOVERY**

**COMES NOW**, Respondent, the United States of America, by and through the

undersigned counsel, and, responds in opposition to Fell's Statement of Disputed Discovery.

**Introduction**

Petitioner filed a Statement of Disputed Discovery insisting that he be allowed to depose

Government trial counsel. Moreover, for the first time Petitioner states that he also would like to

depose the investigating agents who conducted the investigation in this case.[1] The Government

opposes the deposition of its trial attorneys. While Petitioner in large part re-states many of the

claims that he sets forth in his 2255 Petition, he fails to identify what testimony he would elicit

from the Government trial attorneys and how the testimony will inform his ineffective assistance

of counsel and *Brady* claims. The Government submits that the testimony of Government trial

counsel would not inform any of Petitioner's claims; therefore, Government trial counsel should

not be forced to submit to a deposition. Similarly, Petitioner has failed to identify how the

testimony of Government investigative agents will inform his claims. Fell has made no attempt

to satisfy the applicable federal regulation limiting such depositions, 28 C.F.R. 16.21 (even after

the Government cited its application here), and he makes no effort to explain why lesser alternatives, such as interrogatories or testimony in court, would not suffice.

Petitioner further opposes the deposition of his lay witnesses and himself. The Government submits that the testimony of Fell and his lay witnesses are central to his ineffective assistance of counsel claims that allege that trial counsel failed to investigate Fell's social history, his relationship with Lee and his interactions with correctional Officer Pelkey. Therefore, the Government should be afforded an opportunity to depose both Fell and his lay witnesses.

Fell also claims that Dr. Michael Welner is a factual witness in this case and should not be permitted to assist the Government as a mental health expert. First, assuming that Dr. Welner could inform any claim alleged by Fell, which the Government denies, Petitioner fails to explain why Dr. Welner could not also provide an expert opinion in this case. The Government submits that Dr. Welner has been announced as a government expert witness since 2004, has invested a great deal of time investigating Fell and has prepared to rebut mental health evidence. Denying the Government the use of its expert of choice would be fundamentally unfair and infringe on the separation of powers.

Last, the Government submits that privileged communications among the Government trial team should not be disclosed as they would not inform any of Petitioner's claims.

---

[1]  In none of the discovery conferences held so far with 2255 counsel was this request raised. The Government is willing to entertain this request in good faith, so long as Fell complies with a showing of materiality and complies with the applicable federal regulations as set forth *infra*.

**Argument**

1.    Depositions of AUSAs and the FBI Case Agent are unwarranted.

The "Government's Brief Regarding Its Disputed Discovery Requests," Doc. 424, filed October 25, 2013, urged that Fell's request to take depositions of Assistant United States Attorneys ("AUSAs") was unwarranted and unprecedented.  The Government pointed out that prosecutorial misconduct claims based on *Brady* violations are routinely considered by courts without such depositions, and stated that it, "has found no case in which Government lawyers are deposed post-conviction to resolve claims of this nature." *Id*., p. 11.  That statement was made after the Government canvassed attorneys at the U.S. Department of Justice's Capital Case Section, and found no instances of AUSAs being deposed in capital 2255 cases.  Further, the U.S. Attorney's Office for Vermont – both Criminal and Civil Divisions – knows of no Vermont AUSA ever being subject to a deposition by opposing counsel.  It is an extraordinary, indeed unprecedented, measure.  Until today, when the Court has required information from an AUSA, the AUSA simply answers the Court's question(s), submits a written statement or affidavit, or, in rare instances, testifies before the Court (such as in a threat or perjury case).

Fell's "Reply Brief in Support of Statement of Disputed Discovery," Doc. 429, filed November 4, 2011, states that the Government's above-quoted statement "is just plain false." *Id*. at 2.  None of the five cases cited by Fell, however, authorizes the deposition of an AUSA in a 2255 proceeding, and one of the cases does not authorize depositions of AUSAs at all.

*United States v. Stein*, 435 F.Supp.2d 330 (S.D.N.Y.), does not appear to have involved AUSA depositions.  In *Stein*, the court ultimately dismissed an indictment against former partners of an accounting firm because the government coerced the firm to stop paying their

3

legal fees. *See United States v. Stein*, 541 F.3d 130 (2d Cir. 2008) (affirming dismissal). The problem arose from a 2003 U.S. Department of Justice policy memorandum stating that charging considerations for business organizations included whether the organization "cooperated" with an investigation by not "protecting" employees under investigation by paying their attorneys fees. Two AUSAs relied upon the memorandum in persuading the firm's counsel to limit, then terminate, paying the attorneys' fees for its target employees. After the former partners were indicted, they moved to dismiss, urging that the government had infringed upon their 6th Amendment right to counsel. In response, the court reviewed the policy memorandum, and "ordered an evidentiary hearing and limited discovery," explicating the scope of both ("whether the government, through the [policy] memorandum or otherwise, affected the [firm's] determination with respect to the advancement of legal fees and other defense costs to present or former partners and employees . . . ." 435 F.Supp.2d 352. At the hearing, the two AUSAs testified, along with the firm's attorneys. The court also reviewed written notes of a key meeting among the attorneys. The Court then held, and the Second Circuit affirmed, that the AUSAs had "reinforced th[e] message" of the policy memorandum to cause the firm to end the fee payments. Needless to say, *Stein* does not support the proposition that AUSAs need be subject to depositions in 2255 cases. To the contrary, *Stein* supports the notion that, when an issue is well-supported and the scope of an inquiry limited, a Court may ask an AUSA to testify.

The remaining four cases relied upon by Fell do not involve AUSA depositions – they treat county prosecutors in connection with 28 USC § 2254 proceedings. As such, the cases do not consider 28 CFR 16.21 – cited on page 12 of the Government's Brief Regarding its Disputed Discovery Requests" (Dkt. No. 424). Further, all but one of the cases set forth strong reasons for

4

the depositions, and carefully limit their scope. *See, e.g*. *Robb v. Ishee,* 2012 WL 604225 (S.D. Ohio 2012) (involving a Brady claim where the prosecutors' trial file was missing and a deposition was needed to explore its location); *Reid v. Vaughn*, 2003 WL 21027275 (E.D.Pa. 2003) (deposition regarding "an exculpatory statement that Commonwealth witness Tyrone Mackley allegedly made to the prosecutor during a trial recess"); *Conway v. Houk*, 2009 WL 961199 (S.D. Ohio) (Magistrate Judge's finding that two county prosecutors could be deposed about a limited subject:  their communications with counsel for a key trial witness).  In contrast to these cases, Fell fails to advance good cause for deposing AUSAs here, fails to comply with the applicable federal regulation, fails to consider lesser alternatives, and fails to propose adequate limits on the scope of any deposition.

Critical to the determination of whether Fell has carried his burden of establishing "good cause" to depose his prosecutors and investigative agent is whether he has carefully and specifically explained what it is that he wishes to inquire about in the proposed depositions. Fell's "Reply Brief in Support of Statement of Disputed Discovery," filed November 4, 2011, makes little effort to define the scope of his extraordinary request, offering but a single sentence:  "Mr. Fell has made specific allegations that the Government knew or should have known that its jury addresses as well as the testimony it elicited were false, that it violated this Court's orders, and that it withheld exculpatory information." *Id*., page 1.  This showing is insufficient to establish good cause for such an unprecedented and extraordinary measure.

5

2.    <u>Because Fell's 2255 Welner claim alleges ineffective assistance of counsel, depositions of AUSAs are unwarranted.</u>

Claim V in Fell's 2255 petition asserts that his trial counsel were ineffective in failing to pursue a motion at trial to exclude rebuttal trial testimony by Michael Welner, MD.  Thus, each of Claim V's sub-arguments 1 - 7 cite failures of trial counsel regarding Dr. Welner.  The December 2011, "Amended Opposition of the United States to Fell's § 2255 Motion," responded in detail to the Welner ineffectiveness claim.  And Fell's August 20, 2012 "Reply" to the Government's opposition, again, captioned its treatment of the issue:  "Mr. Fell has adequately alleged that trial counsel were ineffective for withdrawing their mental health case."

In its "Memorandum Opinion and Order" entered May 10, 2013 (Doc 367), the Court also described Claim V as an attack on "trial counsel's abandonment of their mental health case at sentencing." *Id*. at page 22.  The Court found that it "cannot determine without further development of the facts whether the decision to withdraw the mental health case was a reasonable strategic decision." *Id*. at 23.

When trial counsel decided during the 2005 trial to withdraw the mental health case, they acted on contemporaneously available information.  The decision, and that information, did not extend to testimony by AUSAs.  While it may be key to evaluate the thought processes of Fell's trial counsel at the time, it would make little sense to order depositions of AUSAs to inquire as to what they would have said at a hearing that never took place (because counsel waived it) and a Court decision that was never made.  Defense trial counsel did not have the benefit of AUSA's thoughts when they decided to withdraw their motion.  Therefore, deposing AUSAs would not inform Claim V.

The ineffectiveness allegation in Claim V will be tested by evidence from Fell's trial

counsel and the Government's disclosed mental health evidence.  The significant facts will be the evidence Fell's counsel had before them and their decision making process at the time of their July 2005 decision to withdraw their mental health case and not pursue their motion to exclude Dr. Welner.  The reasonableness of counsel's performance must be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances" *(Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)), and without "the distorting effects of hindsight." *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  It is "all too tempting" for a convicted defendant to "second-guess counsel's assistance" and "all too easy" for a court to find an act or omission "unreasonable" because it was unsuccessful – "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Government's trial counsel did not inform defense trial counsel's decision to withdraw his mental health case in 2005, and they could not inform Fell's claim of ineffective assistance of counsel now.

Despite the fact that Claim V is an ineffectiveness claim, turning on a decision of Fell's trial counsel, Fell's "Reply Brief in Support of Statement of Disputed Discovery," filed November 4, 2011, asserts that he "has made specific allegations that the Government . . . violated this Court's orders," *id*., page 1, citing his 2255 Claims V-VIII, and XVII-XXI.  Because he does not specify what Court "orders" are at issue, such that the Government and the Court must speculate.  However, the only claim of which the Government is aware asserting that it violated a Court order in relation to Dr. Welner is the claim raised by Fell's 2005 post-trial motion.

In "Donald Fell's Motions for Judgment of Acquittal and New Trial," filed August 26,

2005, he argued that the Government was at fault for his decision not to call mental health experts during the penalty phase.  Fell urged that the Government subverted a Court Order regarding his Rule 12.2 interview in two regards:  (1) by employing a proxy psychologist to conduct a videotaped interview that was in fact planned and scripted by Michael Welner, M.D., and (2) by arranging for Dr. Welner to use Fell's responses to the scripted questions at the interview to support a diagnosis that he was a psychopath.  Fell claimed that the Government then lied to the Court during the trial to conceal its deceitful strategy, leading the Court to rule that Dr. Welner could testify.  That wrongfully obtained ruling compelled Fell to withdraw his mental health evidence in order to avoid Welner's prejudicial testimony.

Fell's above post-trial motion was denied by the Court in its April 24, 2006, "Opinion and Order" (Doc 236).  The Court determined that Government trial counsel did not lie to the Court with regard to Dr. Wetzel's examination of Fell:

> Was government counsel untruthful with the Court at the July 6 hearing?  After consideration of the transcript and Wetzel's affidavit, the Court holds that there is no basis for concluding that the government lied.  Both Wetzel and government counsel denied that the government directed the experts to have Wetzel ask Welner's questions.  Government counsel further stated his belief that the April 7 order didn't preclude additional testing or evaluation done outside the interview. There is no basis to believe that counsel misrepresented his belief.

Dkt. No. 236, p. 20.  The Court went on to conclude that the intent of its Order, nonetheless, was not followed, despite the Government's genuine belief that no additional psychological testing was done.  *Id.* at p. 21.  However, the Court concluded:

> When Fell decided to drop any presentation of expert evidence on his mental condition while a challenge to the admissibility of the government's expert rebuttal evidence was pending, he also dropped his claim of misconduct by the government in obtaining its rebuttal evidence.  Regardless of the reasons for Fell's decision to withdraw his expert evidence, he waived his prosecutorial misconduct claim by failing to pursue it at sentencing when the essential facts of his claim were known to him.

Id at 26-27.

Fell raised the Court's adverse finding as to the Welner prosecutorial misconduct claim on direct appeal without success. *United States v. Fell*, 531 F.3d 197, 224-27 (2d Cir. 2008). Fell may not now re-litigate his 2005 claim alleging Government misconduct with regards to Dr. Welner's evaluation in a 2255 collateral challenge. The Court already held that claim was waived at trial. In any event, it was raised and resolved in the criminal case, before this Court, and the Court of Appeals. Therefore, Fell cannot now relitigate this claim. *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992) (generally, a claim raised and rejected on direct appeal cannot be relitigated in a 2255 motion). Accordingly, there is no basis for Fell to take depositions of AUSAs regarding that matter.[2]

3.      None of Petitioner's prosecutorial misconduct claims based on alleged *Brady* violations will be informed by a deposition of Government trial counsel.

Fell further argues generally that he has filed a number of prosecutorial misconduct claims that allege that the Government failed to disclose favorable information as mandated by *Brady* prior to trial. This is true, Fell has indeed made such allegations. But reciting the prosecutorial misconduct allegations he made does not in and of itself discharge his burden. The fact remains that none of the alleged claims would be informed by Government trial counsel's deposition testimony, and Fell fails to set forth what specific information he would solicit from Government trial counsel that would inform his claims.

For example, Fell claims that the Government failed to disclose the criminal record of

---

[2]  Fell urges that the Court denied summary dismissal and authorized discovery on his claims. But the Court authorized the discovery only as provided in its Order of May 10, 2013, Dkt. No. 369. The Court did not authorize any depositions as part of its Order.

Christopher Eike, which he contends was favorable to him. Without conceding that the criminal record of Eike was in fact favorable, the Government has admitted that it did not disclose the criminal record of Eike to the defense. Whether or not this information was in fact favorable to Fell at trial is not informed by the subjective impressions of Government trial counsel. A *Brady* violation is informed by the nature of the information, its relevance to the defendant's case and the prejudice, if any, that resulted from its nondisclosure. *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Therefore, the testimony of Government trial counsel would not inform this claim.

Similarly, Fell claims that the Government knowingly elicited false testimony regarding the condition of Christopher Eike following a violent beating by Fell.[3] Specifically, Fell claims that the Government falsely represented to the jury that Eike was in a coma. Regarding this claim, Fell already has the FBI Interview Report of Eike, which was provided to Fell prior to trial. Moreover, the Government has produced in discovery all documents related to the Fell assault on Eike that the Government had in its possession prior to trail. The Government has informed that it did not have possession of Eike's medical records prior to trial. Fell claims that he is entitled "to test the Government's assertions and show that they are wrong." Dkt. 425, p. 8. While Fell is certainly entitled to attempt to show that the Government is wrong, he is not entitled to attempt to do so through the deposition of Government trial counsel. Nothing that the prosecutor can add will further inform Fell's claim. In short, again, the strength of Fell's *Brady*

---

[3] The Government reiterates its argument that this claim by Fell is defaulted as he should have, but failed to raise it at trial or on direct appeal. Fell clearly had sufficient information prior to trial to contest the Government's argument given that the FBI interview report of Eike was provided to Fell prior to trial. Dkt. 367, p. 85. Fell also had sufficient information at the end of trial to raise this issue on direct appeal, but failed to do so. He should not be permitted to raise this claim collaterally.

claims is measured by the information at issue, and its materiality and resulting prejudice – not by the subjective impressions of Government counsel.

In the alternative, Fell has failed to demonstrate that the use of interrogatories will not suffice to obtain any additional information or affirmations he understands he needs to substantiate his claim. Merely reasserting his claim is not enough. Petitioner must identify the information he understands Government trial counsel will provide that would further inform his claim.

Likewise, the Government's alleged failure to disclose information regarding Correctional Officer Pelkey's history of misconduct will not be informed by the testimony of Government trial counsel. The Government already disclosed all of the information it had in its possession regarding the March 4, 2005, incident. Further, the Government has already stated that it did not have Officer Pelkey's disciplinary record in its possession. Moreover, the Government could not have predicted the relevance of this information (which is not conceded). In addition, Fell fails to identify what additional information Government trial counsel can provide that would inform this claim.

Fell again recites his allegations contained in his 2255 Petition regarding the alleged nondisclosure of information about co-defendant Robert Lee and argues that since the Government has denied the allegations he is entitled to depose Government counsel. Dkt. 425, p. 11. Petitioner's argument lacks merit. The relevant claim here is whether the Government failed to disclose information about co-defendant Lee that would have been mitigating to Fell. The Government has demonstrated that it produced in discovery to Fell prior to trial the FBI investigation of both Lee and Fell, which contained school records, teacher interviews, family

11

interviews, etc.  The Government has recently turned over again in discovery copy of the pertinent discovery letter and its attachments.  The Government has further turned over in discovery to 2255 counsel the correctional records of Lee it had in its possession, which the Government did not turn over to Fell prior to trial.  Fell claims that he is entitled to a deposition of Government trial counsel to determine "whether favorable evidence was withheld."  But Government's counsel testimony will not inform this issue.  This is a decision to be made by the Court, after it has an opportunity to examine the information itself in light of the entire record.

Similarly, Fell claims that the Government failed to disclose an FBI report of an interview of Francis Bellantoni.  The Government submits that this report does not contain more information than Fell received prior to trial through the New York State Police Report.  The Court recognized in its Order of May 10, 2013, Dkt. No. 367, p. 94, that this claim would require a comparison between the two reports.  Again, a deposition of Government trial counsel would not inform this claim.

Fell further claims that the Government failed to disclose reports of interviews conducted by Dr. Welner with the assistance of the FBI. The Government has responded by stating that the bulk of the reports not disclosed were of witnesses that were on Fell's trial witness list; therefore, he had knowledge of the information they could provide.  The Court acknowledges in his Order of May 10, 2013, Dkt. No. 367, p. 98, that this claim requires the review of the notes and/or reports in question.  And respectfully, of the reports and notes of defense trial team investigators who also spoke to these witnesses.  In any event, the testimony of Government trial counsel would not inform this claim.

Fell also makes a series of arguments alleging prosecutorial misconduct based on

12

Government's trial counsel's statements during his summation. The testimony of Government trial counsel would not inform these claims. As the Government has argued, Fell has defaulted on these claims. But, in any event, the statements of counsel during summation can be compared to the evidence received during trial to determine whether Government counsel misquoted the record, and if so, whether his statements in argument were prejudicial.

    4.    <u>The Government should be allowed to select its experts</u>.

The Government established the common-sense notion that a party should be permitted to choose its own expert in its brief regarding disputed discovery (Doc 424), pp. 9 - 11. Fell fails to overcome that fundamental proposition. He concedes that his 2255 petition "has alleged that he suffers from a number of mental health problems that should have been investigated and presented" at trial, and that he now contests his trial stipulation that his "intellect and cognitive functions were intact [and he] did not suffer from any mental disease or defect." Reply Brief in Support of Statement of Disputed Discovery (Doc 429), pp. 11-12 ("Reply Brief"). In his 2255 petition, Fell cites a number of newly identified mental health problems, including, "inter-generational predisposition to mental illness," *id*. page 62; "a number of brain impairments," *id*. at 69; and "untreated mood disorder." *Id*. His instant claim that he suffers from previously uninvestigated mental deficits invites – indeed, necessitates – a government examination. How else can the Government test the new claims?

As to the selection of the Government's expert, Fell again asks the Court to restrict the Government's choice. At trial the Government intended to rely in part upon Dr. Welner, who completed what he and the Government believed was an exhaustive evaluation of Fell. Both the Government and Dr. Welner invested significant time and resources in that evaluation. The

Government intends to rely upon Dr. Welner to test Fell's new claim that his multiple pre-trial psychological evaluations failed to diagnose "a number of mental health problems." Having already reviewed extensive materials, including investigative reports, life history documents, the multiple 2001-2005 psychological examinations, and the lengthy videotaped interview of Fell by Dr. Richard Wetzel, Dr. Welner begins with a substantial base of knowledge. The Government should not be forced use an alternative expert who will have to repeat Dr. Welner's work and begin again.

Fell urges that Dr. Welner is a "fact witness" on the issue of trial counsel's withdrawal of the defense mental health case. Yet his effort to cast an obvious expert as a fact witness is clumsy and unavailing. If Dr. Welner is called upon to explain the circumstances surrounding his 2005 evaluation and possible trial testimony, that is no reason why he cannot remain an expert. If he had testified at a 2005 Daubert hearing regarding such matters, he would have remained an expert witness. There is no reason why he cannot do the same today: explain the 2005 circumstances, and testify as an expert. Fell protests that a new evaluation by Dr. Welner could compromise his testimony and taint his recollection of 2005. That may be a consideration for the Government in selecting its expert, but should not be Fell's concern. Cross-examination is the appropriate means by which Fell can test such matters. Dr. Welner's thorough and detailed, over 70-page 2005 evaluation, memorializes his 2005 conclusions, and is the measure of his 2005 work. Any new evaluation would similarly be memorialized. Finally, Fell's efforts to shackle the Government's consideration of his mental health evidence is also reflected in footnote 13 to his Reply Brief, urging that if the Court does allow the Government to choose Dr. Welner, it "should be bound by that choice and not permitted to retain additional experts." Fell

14

chose and relied upon four mental health experts prior to trial, and now evidently has chosen and is relying upon additional such experts; his protestations regarding the Government's choice of experts lacks force.

Consistent with the fundamental proposition that a party should be permitted to select its own experts, this Court stated at trial that, "My intention is to provide both sides with the opportunity to present their experts openly and on everything that those experts want to testify to."   Trial Transcript VII at 17.  If Fell is permitted on collateral review to introduce new mental health expert testimony regarding newly identified mental health problems, the Government should be permitted to prepare rebuttal testimony from an expert of its choice.

5.    The Court should permit the Government to depose Fell and his lay witnesses.

In support of his claims that trial counsel performed ineffectively, Fell has proffered declarations from several lay witnesses, who will presumably testify in support of his contentions during the evidentiary hearing. This Court should permit the Government to depose Fell's witnesses, specifically his sisters Terry Fell and Susan Benczkowski, and Petitioner, in anticipation of the evidentiary hearing.

Fell's trial counsel presented an extraordinary amount of information about Fell and his upbringing, including the testimony of his two sisters.  The Government is confident that upon further examination, it will become evident that Fell's trial counsel conducted an adequate mitigation investigation and presentation before the jury.  In order for the Government to make this showing, it must be permitted to depose the witnesses upon whom Fell relies.  Depositions of witnesses will lead to the discovery of evidence and facilitate potentially dispositive motions that could narrow the scope of the evidentiary hearing.  *See generally Celotex Corp. v. Catrett*,

15

477 U.S. 317, 324 (1986). Good cause for the proposed depositions exists: The witnesses provided statements in support of Fell's 2255 Petitions. Depositions of these witnesses will permit the Government to fully and fairly prepare for the evidentiary hearing and to seek summary judgment as to claims that can be determined without evidentiary development. It is perplexing for Fell to state that this witness will definitely be called to testify at the evidentiary hearing in this case, but the Government should be not allowed to depose this witness ahead of the hearing.

Similarly, the Government submits that Fell's testimony will also inform a number of his claims. For example, Fell claims that the disciplinary record of Officer Pelkey was favorable information that the Government should have disclosed because of his conduct towards Fell during the incident of March 4, 2005. The Government placed the best evidence before the jury, the videotape of the incident. Fell responds that the alleged actions of Pelkey of which he complains occurred outside the view of the camera. If that is so, then the Government should be permitted to interview Fell regarding this incident given that he is the only source of the information underlying this claim.

Similarly, Fell claims that the Government failed to disclose favorable information about his co-defendant Lee that would have demonstrated that Lee was the dominant figure in the Fell-Lee relationship. The Government should also be permitted to explore this allegation with Fell. As well as allegations that his trial counsel failed to adequately investigate his life history. What other information Fell had, but trial counsel failed to uncover, that would have enhanced Fell's mitigation case, is also properly explored with Fell.

Contrary to what Fell would have this Court believe, the bulk of his 2255 Petition alleges

ineffective assistance of counsel in their failure to investigate such matters as the Government's

case in aggravation, Fell's social history, Fell's mental health, etc.  The Government is entitled

to explore what information if any Fell provided to his attorneys that should have raised a flag in

any of these areas.  Fell argues that the Government's opposition contains no allegations that

Fell's and his lawyers had any conversations or communications that informed trial counsel's

decision-making.  How can the Government form any such allegations without the benefit of

interviewing both trial counsel and Fell regarding the claims set forth in his Petition?

      6.      <u>The Government should not be compelled to disclose privileged communications between members of the Government trial team</u>.

Petitioner has requested "any and all documents, notes and other records relating to Dr.

Michael Welner's work in Mr. Fell's case."  The Government has already produced Dr. Welner's

report, together with all supporting reports of interviews conducted by him.  The Government

objects to the compelled disclosure of privileged communications between Dr. Welner and other

members of the trial team.  Such communications are protected by the deliberative process and

attorney work product privilege.  Moreover, such communications did not inform the decision

made by Fell's trial counsel to withdraw his mental health case.  Fell's trial counsel would not

have been privy to those communications; therefore, they are irrelevant to Fell's ineffectiveness

claim.

      7.      <u>The Government should not be compelled to disclose privilege communications of Dr. Wetzel with other members of the trial team</u>.

Fell has requested "any and all documents, notes, communications and other records

relating to Dr. Richard Wetzel's examination of Mr. Fell on June 13, 2005, including

communications between Dr. Richard Wetzel and the Government or between DR. Richard

Wetzel and other mental health professionals." The Government has already produced Dr. Wetzel's reports, together with all supporting data. The Government objects to the compelled disclosure of privileged communications between Dr. Wetzel and other members of the trial team. Such communications are protected by the attorney work product privilege. Moreover, such communications would not have informed the decision made by Fell's trial counsel to withdraw his mental health case. Fell's trial counsel would not have been privy to those communications; therefore, they are irrelevant to Fell's claim.

As established in section 1, supra, Fell's claim of ineffective assistance of counsel as a result of trial counsel having withdrawn his mental health case prior to a hearing on his motion to exclude Dr. Welner's testimony, must be decided based on the circumstances in existence at the time that trial counsel made his strategic decision. At that time he was not privy to privileged communications of Government trial counsel; therefore, those communications would not inform Fell's claim.[4]

8.    The information requested in Discovery Requests Nos. 5 and 6 is privileged and protected by Rule 16(a)(2).

Communications between the U.S. Attorney's Office and its experts are protected by the deliberative process and work-product privilege. "The attorney work product doctrine, codified in part in Rule 26(b)(3) of the Federal Rules of Civil Procedure and Rule 16(b)(2) of the Federal Rules of Criminal Procedure, provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoenas dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 383  (2d Cir.  2003). Both "distinct from and

broader than the attorney-client privilege," *United States v. Nobles,* 422 U.S. 225, 238 n. 11, 95

S.Ct. 2160, 45 L.Ed.2d 141 (1975), the work product doctrine permits discovery of "documents

and tangible things" prepared by or for counsel in anticipation of civil litigation "only upon a

showing that the party seeking discovery has substantial need of the materials ... and that the

party is unable without undue hardship to obtain the substantial equivalent of the materials by

other means," Fed.R.Civ.P. 26(b)(3).  In the context of a pending criminal prosecution, the

doctrine is even stricter, precluding discovery of documents made by a defendant's attorney or

the attorney's agents except with respect to "scientific or medical reports." Fed.R.Crim.P.

16(b)(2).

In *Hickman v. Taylor,* 329 U.S. 495 (1947), the Supreme Court first recognized the work

product doctrine as essential to the proper functioning of our adversarial system.

> In performing his various duties ... it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.... This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed ... as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 510–11; *see also United States v. Adlman,* 134 F.3d 1194, 1196 (2d Cir.1998) (stating that

work product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare

and 384 develop legal theories and strategies 'with an eye toward litigation,' free from

---

4   It is somewhat ironic that Petitioner objects to the Government "re-litigating" a discovery issue, when his entire claim is a re-litigation of an issue that was resolved against him by this Court and the

unnecessary intrusion by his adversaries" (quoting *Hickman v. Taylor,* 329 U.S. at 511), 67 S.Ct. 385).

Here, the communications sought by Petitioner pertain to expert opinions obtained by the Government regarding the mental health of Petitioner, how the Government will rebut mental health evidence to be presented at trial, what information the Government will present, etc. Such communications are "deliberative" in nature and encompassed by the word-product privilege. They contain opinions, recommendations, or advice about agency decisions. In other words, such communications may include opinions with regard to whether the Government should present mental health evidence, which opinions to present, and how to present them, etc.

Rule 16 of the Federal Rules of Criminal Procedure recognizes the work product privilege and exempts from production "reports, memoranda, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). Thus, the written communications in question here fall squarely within the ambit of the work product privilege as they are both internal government documents prepared by a government expert in anticipation of litigation. *See United States v. Furrow,* 100 F.Supp.2d 1170, 1175 (C.D.Cal. 2000); *United States v. Nguyen,* 928 F.Supp. 1525, 1552 (D.Kan.1996).

This court should not compel the disclosure of privileged information, particularly when Petitioner has not demonstrated that the information sought is material to a fact at issue, or that he has exhausted other avenues of obtaining the information sought without infringing on the privilege.

---

Court of Appeals for the Second Circuit.

9.     The Government has complied with its discovery obligations.

On October 25, 2013, the Government produced to Fell all of Robert Lee's correctional records in its possession.

On November 8, 2013, the Government produced to Fell all of the discovery files provided to Fell prior to trial.

Fell references Fed.R.Civ.P. 34(b)(2)(A)'s 30 day compliance period for a document request.  The Government notes that Fell only produced its trial counsel's files, and only partially, on October 18, 2013, far more than 30 days after the Government's first request, and more than three months after the Government's First Motion to Compel Discovery.

WHEREFORE the United States respectfully requests that the Honorable Court take notice of the foregoing; grant its discovery requests; deny Petitioner's motion to depose Government trial counsel and to discover privilege communications and allowed it to present oral argument on these issues.

Respectfully submitted,

TRISTRAM J. COFFIN
United States Attorney

/s/ Jacabed Rodriguez-Coss
JACABED RODRIGUEZ-COSS
Trial Attorney
U.S. Department of Justice
1000 Lafayette Blvd.
Bridgeport, CT  06604
(203) 696-3027
Jacabed.rodriguez-coss@usdoj.gov

/s/ William B. Darrow
WILLIAM B. DARROW
PAUL J. VAN DE GRAAF
Assistant U.S. Attorneys

21

P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725
Bill.Darrow@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2013, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

Respectfully submitted,


/s/ William B. Darrow
WILLIAM B. DARROW
Assistant U.S. Attorney