UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

------------------------------------------------------------------------ X
                                                                          :
DONALD FELL,                                                              :
                                                                          :
                        Movant,                                          :
                                                                          :        2:01-CR-12-01
              - against -                                                 :
                                                                          :
UNITED STATES OF AMERICA,                                                 :
                                                                          :
                        Respondent.                                      :
                                                                          :
                                                                          :
------------------------------------------------------------------------ X


## <u>REPLY TO GOVERNMENT'S BRIEF RE JUROR MISCONDUCT CLAIM</u>


LEWIS J. LIMAN
Cleary Gottlieb Steen &
Hamilton LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

CATHLEEN PRICE
P.O. Box 321762
New York, New York 10032
(212) 998-6193

RICHARD RUBIN
Rubin, Kidney, Myer & DeWolfe
237 N. Main Street
Barre, Vermont, 05641-4125
802) 479-2514

Date:   January 24, 2014

*Attorneys for Donald Robert Fell, Jr.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT .......................................................................................................... 3

I.    Mr. Fell is Entitled To A Hearing On His Juror Misconduct Claim................................ 3

    A.    The Court Has Already Rejected the Government's Procedural Default Argument ........................................................................ 3

    B.    The Court Has Already Rejected the Government's Rule 606(b) Argument ....................................................................................... 4

    C.    The Court Should Order Merits Briefing Based on the Conduct of Juror #26 ................................................................................... 5

        1.    Juror #26 Answered the Court's Questions Untruthfully ............. 5

        2.    Truthful Answers Would Have Supported A For Cause Challenge and the Government Has Not Rebutted the Presumption of Prejudice ............................................................ 7

    D.    Mr. Fell Is Entitled to a Hearing with Respect to Jurors #162 and #143 .......................................................................................... 8

        1.    Mr. Fell Is Entitled to a Hearing with Respect to Juror #162 ........ 9

            a.    Mr. Fell Has Established that Juror #162's Answers Were Untruthful ................................................................ 10

            b.    The Government's Prejudice Argument Is Meritless ...... 17

            c.    Mr. Fell's Trial Counsel Was Not Required To Ask Follow-Up Questions To Preserve The Claim of Juror Misconduct ............................................................ 19

        2.    Mr. Fell Is Entitled to a Hearing with Respect to Juror #143 ...... 21

            a.    Mr. Fell Is Entitled To Offer Additional Evidence that Juror #143 Visited The Crime Scene During Trial .................................................................................. 21

            b.    The Government Has Not Rebutted the Presumption of Prejudice .................................................................... 23

CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ali v. Mukasey,
529 F.3d 478 (2d Cir. 2008).......................................................................................... 3

Amirault v. Fair,
968 F.2d 1404 (1st Cir. 1992)........................................................................................ 17

Benjamin v. Fischer,
87 Fed. Appx. 761 (2d Cir. 2004)................................................................................. 24

Brown v. Woods,
No. 07-CV-0058 (DLI), 2009 WL 789443 (E.D.N.Y. Mar. 20, 2009) ............................ 22

Dyer v. Calderon,
151 F.3d 970 (9th Cir. 1998) (*en banc*) ..................................................................... 6-7

Lopez v. Aramark Uniform & Career Apparel, Inc.,
417 F. Supp. 2d 1062 (N.D. Iowa 2006)....................................................................... 20-21

Lopez v. Miller,
915 F.Supp.2d 373 (E.D.N.Y. 2013) ............................................................................ 22

McDonough Power Equip. v. Greenwood,
464 U.S. 548 (1984)............................................................................................ 6, 13, 19

Sampson v. United States,
724 F.3d 150 (1st Cir. 2013) ......................................................................................... 13

Tennard v. Dretke,
542 U.S. 274 (2004)....................................................................................................... 17

United States v. Adeniyi,
277 Fed. Appx. 22 (2d Cir. 2008)................................................................................. 21

United States v. Farhane,
634 F.3d 127, 168 (2d Cir. 2011) ................................................................................. 7

United States v. Morgan,
385 F.3d 196 (2d Cir. 2004)........................................................................................... 22

United States v. Roshko,
No. 90 Cr. 265 (JAR), 1991 WL 18146 (S.D.N.Y. Feb. 7, 1991) ..................................... 8

United States v. Sampson,
820 F. Supp. 2d 151 (D. Mass. 2011) .................................................................. 17

United States v. Schwarz,
283 F.3d 76 (2d Cir. 2002)................................................................................... 2, 8, 9

United States v. Starks,
Criminal No. 09–10352–JLT, 2012 WL 4023557 (D. Mass. Sept. 5, 2012) .................... 19

United States v. Stewart,
433 F.3d 273 (2d Cir. 2006)................................................................................. 2, 8-9

United States v. Torres,
128 F.3d 38 (2d Cir. 1997)................................................................................... 13

United States v. Tucker,
137 F.3d 1016 (8th Cir. 1998) ..............................................................................19, 21, 22-23

United States v. Watts,
No. S3 09 Cr. 62 (CM), 2011 WL 167627 (S.D.N.Y Jan. 11, 2011) ................................ 22

Williams v. Taylor,
529 U.S. 420 (2000)............................................................................................ 4

**Rules and Statutes**

2 McCormick On Evidence § 263 (7th ed. 2013) ............................................... 7

**Other Authorities**

Anthony G. Amsterdam, Race and the Death Penalty Before and After *McCleskey*, 39
Colum. Hum. Rts. L. Rev. 34, 47 (2007)............................................................... 18

**PRELIMINARY STATEMENT**

The Government's brief regarding the juror misconduct claim seeks dismissal of Mr. Fell's juror claim without a hearing or receipt of the extensive evidence Mr. Fell has proffered to support that claim. The Government asserts as a blanket matter that Mr. Fell's claim is procedurally defaulted and is barred by Federal Rule of Evidence 606(b). This Court has already rejected all of the Government's arguments, and Mr. Fell has established his right to a hearing. The Court has squarely held that Mr. Fell did not procedurally default his juror misconduct claim: "[W]here, as here, the trial record did not disclose grounds for raising the jury issues on appeal, and the jury claims could not be presented without additional factual development, the procedural default rule will not apply to bar the claims." Mem. Op. and Order: Claim XXII: Juror Misconduct, Dkt. No. 368 (May 10, 2013), at 4. The Court has also already rejected the Government's Rule 606(b) argument, holding that Juror #162's statement to defense counsel "does not implicate Rule 606(b)" and, further, that Rule 606(b) does not bar testimony regarding the nature of extraneous information known to jurors. Mem. Op. and Order: Claim XXII: Juror Misconduct at 7, 17-18. And, with respect to the substance of Mr. Fell's claim, the Court has held that "Fell has provided substantial evidence that the juror's questionnaire response [Juror #162] was untrue," Mem. Op. & Order: Claim XXII: Juror Misconduct at 9, and that "[w]hat is not in dispute is that the juror's responses on the questionnaire and at voir dire were incomplete, and potentially misleading," Mem. & Order re: Discovery, Dkt. No. 458 (Dec. 19, 2013), at 13.

Mr. Fell does not dispute that "this Court designed and implemented an extensive and thorough jury selection process," Government's Brief Re Juror Misconduct Claims, Dkt. No. 450 (Dec. 16, 2013) ("Gov't Br."), at 2, employed a "thorough jury selection process," id. at 3, and "presided over the trial 'with care, fairness, and an exemplary concern for the protection of

Fell's rights.'"  Id. at 4 (internal citation omitted); see also id. at 41.  Through the conduct set forth in Mr. Fell's Motion and Amended Motion, proved at the August and September hearings, and proffered in his principal brief, several jurors subverted and confounded the Court's meticulous process.

This Court has held, consistent with the law in this Circuit, that "the appropriate course is to conduct an evidentiary hearing" when the facts cast doubt on a juror's impartiality. Mem. Op. and Order: Claim XXII: Juror Misconduct at 9; see also United States v. Stewart, 433 F.3d 273, 306 (2d Cir. 2006) ("[I]f any significant doubt as to a juror's impartiality remains in the wake of objective evidence of false voir dire responses, an evidentiary hearing generally should be held."); United States v. Schwarz, 283 F.3d 76, 98 (2d Cir. 2002) (post-trial hearing "mandatory" when party presents strong evidence that juror is exposed to extraneous information (emphasis omitted)).  The August and September hearings were limited to an examination of the jurors themselves to help determine whether Mr. Fell had "alleged a plausible non-frivolous claim" of juror misconduct sufficient to permit "further investigation."  Mem. Op. and Order: Claim XXII: Juror Misconduct at 9, 19; Status Conference Tr., Dkt. No. 396 (July 23, 2013), at 5-6 (juror inquiries held in August and September 2013 were "investigatory" in nature, geared towards determining whether "there are significant misconduct issues raised" that would permit "further exploration" at an evidentiary hearing).  With respect to Juror #26, Mr. Fell respectfully submits that the record establishes a constitutional violation and is ripe for merits briefing:  the Juror withheld information he knew he had – in response to specific questions both at voir dire and during trial – that, had it been disclosed, would have given rise to a for cause challenge. Separately, this extraneous information irreparably prejudiced Mr. Fell, causing harm that the Government did not – and cannot – rebut.  And, as to Jurors #162 and #143, both by the

2

testimony at those hearings and by the allegations set forth in his opening brief, Mr. Fell has

amply satisfied the relevant standards, and he is entitled to a hearing where he can call witnesses

and present evidence using the methods authorized by the Federal Rules.  At that hearing, Mr.

Fell would call further witnesses to the misrepresentations and omissions by Jurors #162 and

#143 and the impact that deception had on the trial.  That further proof, and the proof offered to

date, shows that Juror #162 intentionally withheld information and lied during voir dire, and that

Juror #143 visited the crime scene during the trial, contrary to the Court's instructions, and then

lied when repeatedly asked by the Court whether he was exposed to extrajudicial information.

<u>ARGUMENT</u>

**I.    MR. FELL IS ENTITLED TO A HEARING ON HIS JUROR MISCONDUCT
CLAIM**

**A.    The Court Has Already Rejected the Government's Procedural Default
Argument**

The Government contends that Mr. Fell is barred from asserting his juror

misconduct claim because he did not raise it during his trial or on direct appeal.  Gov't Br. at 39-

41.  The Government made the identical argument in its Amended Opposition to Mr. Fell's

§ 2255 Motion, <u>see</u> Am. Opp. of the United States, Dkt. No. 338 (Dec. 21, 2011), at 312-13, and

the Court considered and rejected it.  The Court squarely held: "where, as here, the trial record

did not disclose grounds for raising the jury issues on appeal, and the jury claims could not be

presented without additional factual development, the procedural default rule will not apply to

bar the claims."  Mem. Op. and Order: Claim XXII: Juror Misconduct at 4.  The Government

does not identify "an intervening change of controlling law," "the availability of new evidence"

or any other "cogent or compelling reason[]" for the Court to revisit that ruling.  <u>Ali v. Mukasey</u>,

529 F.3d 478, 490 (2d Cir. 2008) (internal citation omitted) (applying law of the case doctrine).

3

In any event, the Government's position has even less merit now than it did two years ago. The Government cites no case for its claim that Mr. Fell was obligated to raise his juror misconduct claim during trial, or at the direct appeal or post-trial motion stages, when the facts that supported that claim did not arise until after the direct appeal was completed. Indeed, the only case that the Government does cite for the proposition that Mr. Fell should have investigated the claim earlier – Williams v. Taylor, 529 U.S. 420 (2000) – supports the opposite position. The Supreme Court held that where, as here, "[t]he trial record contains no evidence which would have put a reasonable attorney on notice" that juror misconduct occurred, "[w]e should be surprised, to say the least, if a district court familiar with the standards of trial practice were to hold that in all cases diligent counsel must check public records containing personal information pertaining to each and every juror." Williams, 529 U.S. at 442-43.

**B.        The Court Has Already Rejected the Government's Rule 606(b) Argument**

The Government also seeks to relitigate whether Mr. Fell's allegations regarding Jurors #162 and #143 are barred by Federal Rule of Evidence 606(b). This contention too has been briefed, and the Government lost. Mem. Op. and Order: Claim XXII: Juror Misconduct at 7, 17-18. The Court's decision on this issue was correct; the Government's arguments are a regurgitation of its previous briefing; and the Government offers no reason to revisit it. Mr. Fell's allegations with respect to Juror #162 rest on the juror's false and misleading answers at voir dire. Id. at 7-8. His allegations with respect to Jurors #26, #27, and #143 similarly stem from those jurors' false answers at voir dire and at later court hearings. His allegations with respect to Jurors #26 and #143 are based on their exposure to extraneous evidence. Id. at 15-16. And his final allegation with respect to Juror #143 involves violent coercion of another juror. Id. at 16-18. None of these allegations arise out of, or otherwise depend on, statements made during deliberations or any juror's mental processes during deliberations.

4

**C.      The Court Should Order Merits Briefing Based on the Conduct of Juror #26**

The Government treats Juror #26 as an afterthought.  In fact, the Court should order briefing on Juror #26's highly prejudicial exposure to extra-judicial information or, in the alternative, should grant Mr. Fell relief on the basis of this claim.

1.      <u>Juror #26 Answered the Court's Questions Untruthfully</u>

The Government's main assertion is that Juror #26 was not dishonest in failing to tell the Court that he had been exposed to news reports about Robert Lee's supposed suicide because: (1) he "did not relate what he had heard on the news quite some time before trial to the trial he had been summoned to serve on"; and (2) he "did not consider the information to have been important."  Gov't Br. at 71.   That assertion is easily refuted.

The first claim is contradicted by Juror #26's own testimony at the September 27, 2013 hearing and is also irrelevant.  Juror #26 testified that as soon as he heard Mr. Lee's name, he connected Mr. Fell's case to the reports he had heard about Mr. Lee's suicide.  He testified that he "remembered [he] had heard [Mr. Lee's] name before, and then [he] realized . . . [that he] had heard it on the news that [Mr. Lee] had committed suicide."  Donald Fell's Brief in Supp. of an Evidentiary Hr'g, Dkt. No. 451 (Dec. 16, 2013) ("Fell Br."), at 65.  It is a matter of record that the first time Mr. Lee's name was mentioned was prior to voir dire.  [Juror #163] Long Form Questionnaire (Fell Ex. 322 at FELL-00002730, 2749).  By Juror #26's own account, then, he had connected the extrajudicial information that Mr. Lee committed suicide even before he answered questions on voir dire.

The argument is also unpersuasive.  The Court asked Juror #26 every day during the trial, along with all the other jurors, whether they had "learned anything about the case or read anything about this case from outside of the courtroom"  <u>See, e.g.</u>, Trial Tr. Vol. II-1, III:12-

5

14, June 21, 2005.[1]  Juror #26 had the same obligation to answer that question truthfully and honestly as he did with respect to the questions posed to him during voir dire.  His untruthful or dishonest answers to the questions posed by the Court in the midst of the trial just as surely violated Mr. Fell's constitutional rights as did his untruthful or dishonest answer during voir dire.  Thus, even if – as the Government seems to contend – Juror #26 had not made the connection precisely during voir dire, he surely had made the connection during trial when there was extensive discussion of Mr. Lee's death and the relative culpability of the two defendants.  His failure to disclose that information at that point violated Mr. Fell's constitutional rights.

The Government's second contention – really an admission by the Government – only highlights the constitutional violation.  The Government asserts that Juror #26 did not need to answer the Court's questions truthfully or disclose that he had been exposed to extrajudicial information (and that Mr. Fell is not entitled to a remedy for that violation) because the juror on his own deemed the information not to be important.  But, under our system of justice, it is not for the individual juror to decide whether one of the Court's questions calls for relevant or irrelevant information.  It is up to the Court.  And this Court has already made clear that the entire purpose of juror questioning is to alert the parties and the Court of "'possible biases, both known and unknown, on the part of potential jurors. . . . The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious.'"  Mem. Op. & Order: Claim XXII: Juror Misconduct at 5 (quoting McDonough Power Equip. v. Greenwood, 464 U.S. 548, 554 (1984)).  Regardless of whether Juror #26 knew of the significance of the information, he clearly knew it was responsive.  He thus was not excused from disclosing it.  See Dyer v.

---

[1] See also Trial Tr. Vol. I-1, 10:3-5, June 20, 2005; Trial Tr. Vol. III-1, 11:13-15, June 23, 2005; Trial Tr. Vol. IV-1, 24:18-21, June 24, 2005; Trial Tr. Vol. V-1, 18:22-25, June 28, 2005; Trial Tr. Vol. VI, 3:10-12, June 29, 2005; Trial Tr. Vol. VII-1, 41:13-15, July 1, 2005; Trial Tr. Vol. VIII-1, 3:11-13, July 6, 2005; Trial Tr. Vol. IX-1, 8:13-16, July 7, 2005; Trial Tr. Vol. X-1, 3:13-15, July 8, 2005; Trial Tr. Vol. XI, 38:5-8, July 12, 2005; Trial Tr. Vol. XII, 12:1-4, July 13, 2005.

Calderon, 151 F.3d 970, 984 (9th Cir. 1998) (*en banc*) ("[T]he magnitude of [the juror's] lies and her remarkable display of insouciance—her expressed feeling that only she would decide what matters—fatally undermine our confidence in her ability to fairly decide [the defendant's] fate.").

> 2.    Truthful Answers Would Have Supported A For Cause Challenge and the Government Has Not Rebutted the Presumption of Prejudice

The Government's assertion that Juror #26's extrajudicial information that Mr. Lee committed suicide was harmless is equally baseless. See Gov't Br. at 71-72. "'[T]he law presumes prejudice from a jury's exposure to extra-record information.'" Mem. Op. & Order: Claim XXII: Juror Misconduct at 12 (quoting United States v. Farhane, 634 F.3d 127, 168 (2d Cir. 2011)). And, "[t]he burden rests upon the government to show that the information is harmless." Id. The Government failed to rebut the presumption of prejudice caused by Juror #26's exposure to this information.

As demonstrated by the Court's treatment of this very same issue with respect to a different juror at voir dire, there could have been little more prejudicial information. "Another prospective juror was excused in part because he knew about Lee's death," reflecting the Court's "grave concern" that this information would prejudice Mr. Fell. Mem. Op. & Order: Claim XXII: Juror Misconduct at 12 n.4. The question of Mr. Lee's death loomed large over trial. Mr. Fell's counsel fought to exclude evidence that Mr. Lee had committed suicide, recognizing that suicide is "received as [an] admission[] by conduct, constituting circumstantial evidence of consciousness of guilt and hence of the fact of guilt itself." 2 McCormick On Evidence § 263 (7th ed. 2013). Evidence of suicide by Mr. Lee would also have undermined several of the mitigating factors presented by Mr. Fell, including that Mr. Fell was accepting responsibility for the crime and that Mr. Lee would not face execution. The report that Mr. Lee committed suicide – a report that would have been hotly contested had it been offered at trial – turned those claims

7

on their head:  Mr. Lee did not face execution because he took his own life.  The juror would well have thought that Mr. Fell was refusing to accept responsibility as Mr. Lee did, forcing that juror to make for Mr. Fell the decision Mr. Lee made for himself.  It was thus critical to the defense that the jury not be told that Mr. Lee's death was a suicide: that information would have relieved the jury from the full weight of the moral burden it was undertaking to decide on life or death.  As only he himself knew, Juror #26 was operating under a different understanding than the rest of the jury through the guilt and penalty phases – he had been told and believed that Mr. Lee had committed suicide, and not that his death was accidental.  Indeed, he continues to believe that Mr. Lee committed suicide.  See Sept. Hr'g Tr. at 13, 15, 27.  Merits briefing will establish that Mr. Fell's judgment must be vacated in the wake of this extraneous information.[2] See United States v. Schwarz, 283 F.3d 76, 99-100 (2d Cir. 2002) (extraneous information about co-defendant's guilty plea required a hearing because "a co-defendant's admission of wrongdoing can be very powerful evidence against a remaining defendant"); United States v. Roshko, No. 90 Cr. 265 (JAR), 1991 WL 18146, at *5 (S.D.N.Y. Feb. 7, 1991) (ordering a new trial because extraneous information went to defendant's intent, "a matter which is particularly difficult to determine").

**D.      Mr. Fell Is Entitled to a Hearing with Respect to Jurors #162 and #143**

The Government does not even address the standards that, in this Circuit, require a hearing regarding juror misconduct.  Under those standards, a movant – such as Mr. Fell – is entitled to a hearing when the facts cast doubt on a juror's impartiality.  See Mem. Op. and Order: Claim XXII: Juror Misconduct at 9; see also Stewart, 433 F.3d at 306 ("[I]f any

---

[2] The Government offers that "[t]he Court could have simply instructed Juror 26 not to share that information with other members of the jury, and to consider only evidence presented in Court."  Gov't Br. at 72.  But this counterfactual only highlights the harm caused by Juror #26's dishonesty: the Court and the parties were deprived of any opportunity to mitigate the prejudice caused by Juror #26's possession of extra-record information.

significant doubt as to a juror's impartiality remains in the wake of objective evidence of false voir dire responses, an evidentiary hearing generally should be held."); Schwarz, 283 F.3d at 98 (when party presents strong evidence that a juror is exposed to extraneous information, a post-trial hearing is "mandatory"). Instead, the Government puts forth a series of false arguments that either are contradicted by the evidence or that assume the very issue to be determined at a hearing. None of the Government's arguments is sufficient to defeat Mr. Fell's right to a hearing.

### 1.   Mr. Fell Is Entitled to a Hearing with Respect to Juror #162

The Government argues that Mr. Fell is entitled to no further hearing with respect to Juror #162, primarily on the basis of arguments it already lost in Court and on the basis of Juror #162's own self-serving statements. Mr. Fell and the Court are not required to accept those statements as true – particularly when they are contradicted by the evidence and the juror's own testimony. The Government claims that Mr. Fell "failed to establish that Juror 162 was untruthful." Gov't Br. at 42. But those arguments lack merit. The Government claims that Juror #162 must have forgotten about her sexual abuse because it happened a long time ago – but that point is undermined by the fact that, when she did not think it would disqualify her from serving as a juror (and apparently was not afraid of the embarrassment), Juror #162 mentioned the abuse less than a decade before trial, and then mentioned it again several years after trial. She clearly has not forgotten the event. The Government claims that the juror affirmed during voir dire that she could be fair and impartial and that she reiterated that claim during the August hearing, but that claim is undermined by her own statement to 2255 counsel and – in any event – is insufficient under governing Second Circuit law. See Gov't Br. at 15, 42. The Government further claims that Mr. Fell suffered no prejudice because the jury found that Mr. Fell was

9

sexually and physically abused as a child, Gov't Br. at 20, and that truthful answers would not have supported a for cause challenge, Gov't Br. at 53, but the question before the jury was whether to give that undisputed evidence weight in voting against the death penalty, and truthful answers absolutely would have given rise to a for cause challenge.  Finally, the Government blames Mr. Fell's counsel for failing to ask follow-up questions, but Juror #162 herself gave answers that the Court has already found to be untruthful.  The Government's arguments are meritless and do not defeat Mr. Fell's right to a hearing where he can prove his juror misconduct claim.

a.   Mr. Fell Has Established that Juror #162's Answers Were Untruthful

The Government's primary argument for why Mr. Fell's claim should be summarily dismissed is that he supposedly failed to show that the juror's answers were untruthful.  This Court has already held, however, including in a decision issued just as the Government filed its brief, that "Fell has provided substantial evidence that the juror's questionnaire response [Juror #162] was untrue," Mem. Op. & Order: Claim XXII: Juror Misconduct at 9, and that "[w]hat is not in dispute is that the juror's responses on the questionnaire and at voir dire were incomplete, and potentially misleading," Mem. & Order re: Discovery at 13.  The Government's claim that Juror #162 told the truth is of no merit whatsoever.

Mr. Fell has submitted extensive evidence that – contrary to Juror #162's statements at trial and during voir dire that she was not a victim of a crime – she was in fact a victim of sexual abuse over the course of several years.  This evidence includes the juror's own declaration in which she admitted that she was "sexually abused by my stepfather for years," Declaration of [Juror # 162] (Fell Ex. 280  at FELL-00002580-2581), and her testimony that the abuse occurred intermittently when she was a "very young child" when she was eight and nine

10

years old, and that she subsequently came to understand that she had been victimized. See Aug. 15, 2013 Hr'g Tr. ("Aug. Hr'g Tr.") at 98:20-99:2, 105:7. It also includes admissions to a psychologist decades after the sexual abuse occurred that the sex crimes committed against her led Juror #162 to run away from home, and that she continued to recall these traumatic events long after the abuse ended. See Fell Br. at 27. And this was not the only time that Juror #162 was a victim of crime. Juror #162 was also robbed of "everything she had" by her court-appointed guardian while institutionalized following the tragic death of her first husband. Id. at 12. She was further victimized when, after her release from the hospital, she was physically abused, threatened, harassed, and stalked by her partner – who was ultimately arrested and prosecuted for these crimes. Id. at 13.

Child sexual abuse went to one of the central issues in this case – the extent to which Mr. Fell's own childhood sexual abuse and that of his sister was entitled to weight in the balance of aggravating and mitigating factors. The defense argued at trial that Mr. Fell's culpability should be mitigated by the fact of the traumatic sexual abuse that he had endured as a young boy. See Trial Tr. Vol. XXII, at 70, 87-89 (July 13, 2005). The Government argued to the contrary that this was nothing more than an "abuse excuse," and that the sexual assault Mr. Fell suffered as a child had no bearing on Mr. Fell's case because "there's nothing sexual" about Mr. Fell's crimes. Trial Tr. Vol. XII, at 55:6, 118:22 (July 13, 2005). Yet Juror #162 herself made the connection, reaching a conclusion based not on the evidence but on her own experience: "I was sexually abused by my stepfather for years and it didn't turn me into a murderer. We all have choices in life …. That was important to me." Declaration of [Juror # 162] (Fell Ex. 280 ¶ 7 at FELL-00002580-2581).

11

The Government nevertheless urges this Court to disregard the prejudicial import of this connection.  None of these arguments have any force.  The Government asserts that "the conduct at issue took place more than 50 years before trial . . . [that] Juror 162 never spoke to anyone, other than a neighbor about it," and that "no one was arrested or prosecuted for the sexual abuse that Juror 162 experienced, nor was the conduct reported at the time to anyone of authority."  Gov't Br. at 45.  But the age of the crime does not excuse Juror #162's failure to mention it, and the assertion simply ignores the evidence the Government cannot address.  Mr. Fell has offered evidence that Juror #162 viewed this victimization as a significant event, and discussed it repeatedly over the course of her life.  She discussed it with her current husband, and learned that he too had been a victim of child sexual abuse.  She also discussed it as part of a psychological evaluation conducted in 1996 in connection with her son's divorce and child custody proceedings (to which she was a party).  Her childhood experience "prompt[ed] her to run away from home," and she reported that "even now 'the thought makes [her] feel dirty.'"  Fell Br. at 27.  The psychologist conducting the evaluation found the following:

> Her own childhood sexual abuse, and her apparent current minimization (i.e. characterizing her father as a 'very good and caring person' while at the same time reporting that he repeatedly molested her for two years, prompting her to run away from home) suggests that she may have problems recognizing in a child distress or discomfort related to physical touching, or in accepting the child's perception that they do not consider such touching as benign or harmless as she assumes.

Id. at 17-18.  Later, Juror #162 disclosed to 2255 Counsel during her 2011 interview, without any prompting from counsel, that she was sexually abused as a child  – demonstrating both that she freely recalls this abuse and that she links her abuse to Mr. Fell's trial.  Id. at 27.  The Government's assertion that "no one was arrested or prosecuted for the sexual abuse" is irrelevant on the face of the long questionnaire.  Gov't Br. at 45.  The first part of Question 38

12

asked, "Have you or has a family member or close friend ever been a witness to or the victim of a crime?"  It did not ask whether the crime was reported.  A different question asked that.[3]

The Government argues that Mr. Fell is not entitled to a hearing because, regardless of the nature of the lies Juror #162 told during voir dire, she affirmed during voir dire that she could be fair and impartial and reiterated that affirmation at the August 15, 2013 hearing.  But, as the Court recognized both at voir dire and in granting the defense's motion for case-specific questions, the parties and the Court were not required to resign themselves to a juror's self-serving statement that he or she could be fair and impartial.  See Op. and Order: Voir Dire, Dkt. No. 130 (May 25, 2005), at 2, 15.  They were entitled to truthful and complete answers to the questions designed to demonstrate whether they, in fact, could be fair and impartial.  The entire purpose of voir dire is to alert the parties and the Court of "'possible biases, both known and unknown, on the part of potential jurors. . . . The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious.'"  Mem. Op. & Order: Claim XXII: Juror Misconduct at 5 (quoting McDonough, 464 U.S. at 554).

That is none the less true on post-conviction.  The Second Circuit has squarely held that "once facts are elicited that permit a finding of inferable bias, then, just as in the situation of implied bias, the juror's statements as to his or her ability to be impartial become irrelevant."  United States v. Torres, 128 F.3d 38, 47 (2d Cir. 1997); see also Sampson v. United States, 724 F.3d 150, 164 (1st Cir. 2013) ("[A] person who harbors a bias may not appreciate it and, in any event, may be reluctant to admit her lack of objectivity." (quoting McDonough, 464 U.S. at 554)).  The Torres decision arose in the context of a determination by the district court to excuse a juror for cause during voir dire.  128 F.3d at 42.  The panel's basis for ignoring a juror's own statements as to her impartiality is even stronger in a situation like Mr. Fell's, where a

_____

[3] [Juror #162] Long Form Questionnaire (May 11, 2005) (Fell Ex. 322 at Fell-00002743).

profession of bias would result in a vacatur of Mr. Fell's judgment and sentence and would constitute an admission of wrongdoing by Juror #162. Her statement to 2255 Counsel in 2011 – before Mr. Fell filed his Motion alleging juror misconduct and thus before she had any reason to deny that she was biased – that "I was sexually abused by my stepfather for years and it didn't turn me into a murderer. We all have choices in life and Donald Fell just chose evil." – belies Juror #162's recent testimony that she was impartial. Had Juror #162 revealed during voir dire her own abuse, along with her statement connecting her abuse to Mr. Fell, she would have been stricken for cause. See Fell Br. at 4.

In a "heads-I-win, tails-you-lose argument," the Government claims that the evidence that Juror #162 was a victim of sexual misconduct cannot be used to support a juror misconduct claim because movant was able ultimately to adduce that evidence from Juror #162's own mouth. See Gov't Br. at 46. But that Juror #162 admitted that she was a victim of a crime during an extended interview with defense counsel long after that juror had achieved her objective of being able to serve on this jury, and at a time when the juror could not have thought her admission would have resulted in the vacatur of the judgment (and was not reminded of her answer on the juror questionnaire before she made the admission), has no bearing on the question of whether the juror lied during voir dire when she was directly asked the question whether she was a victim of a crime, and when she was informed prior to filling out her questionnaire to be candid because "[t]he purpose" of voir dire "is to try to insure the fairness and impartiality to both sides." Tr. Videotaped Jury Instructions (Fell Ex. 117 at FELL-00001345). Nor does the fact that she admitted to the crime at the August 15, 2013 hearing – at that point, the cat was out of the bag. Indeed, far more significant are the lies she continued to tell at the hearing.

14

Finally, in that respect, the Government's brief fails to address any of the body of evidence that Mr. Fell has offered indicating that Juror #162 did lie at voir dire, many times over, and that she continued to lie to the parties and the Court at the August 15, 2013 hearing.  The Government purported to "address[ ] only the claims raised in Fell's March 21, 2011 2255 Petition" because "leave to amend his original Petition . . . has not yet been granted."  Gov't Br. at 1.[4]  But "the allegation that Juror 162 responded untruthfully during voir dire is not new . . . [and] [t]he allegations regarding Juror 162's son are relevant to a determination of her credibility and to her willingness to be untruthful during voir dire."  Mem. & Order re: Discovery at 12-13. The same is true of the other evidence Mr. Fell submitted demonstrating that Juror #162 lied repeatedly at voir dire and intentionally gave false testimony at the August 15 hearing.  Mr. Fell's opening brief details these misstatements and the evidence showing that they were not inadvertent.  See Fell Br. at 25-44.  For example:

- Juror #162 was asked at voir dire if she had ever filed a complaint with the police against anyone.  She said that she had not.  In fact, she has filed numerous complaints with the police, including a complaint about an event in which Juror #162's former domestic partner, Lucille Tatro, threw rocks at Juror #162's car, tried to smash her windshield, burned cigarettes into the upholstery, and tried to run Juror #162 and her husband off the road.  This complaint led to the arrest and prosecution of Ms. Tatro.  See Fell Br. at 13.

- Juror #162 failed to disclose at voir dire that her son had been the victim of physical abuse.  Counsel asked at the August 15 hearing if it "[struck Juror #162] as untrue that [her] son reported to a probation officer that [Lucille Tatro] locked him out in the cold and threw him down a flight of stairs?"  Aug. 15 Hr'g Tr. at 169:6-8.  She responded: "I don't know anything about that.  Never heard of that."  Id. at 169:9-10.  In fact, Juror #162 was aware of this abuse and had heard these exact allegations.  She discussed this abuse in her 1996 psychological evaluation, and she read and responded to an account by her son stating that Tatro "dragged him

---

[4] Alternatively, the Government contends that "Juror 162 disclosed what she remembered at the time" of voir dire, and that "most if[ ] not all of [her son's] offenses are related to his abuse of alcohol and domestic abuse, and took place more than a decade before trial."  Gov't Br. at 48.  But Mr. Fell has demonstrated, and Juror #162 has admitted, that she was intentional and selective in what she disclosed at voir dire.  See Aug. Hr'g Tr. at 142, 199.

15

downstairs by the hair" and "put [him] outside with nothing on but underwear in the winter."  Fell Br. at 28.

- In an effort to explain why she did not completely disclose her son's criminal history, Juror #162 testified at the August 15 hearing: "My son hasn't lived with me since he was like 18 years old."  Aug. Hr'g Tr. at 157:16-17.  This was a lie.  Mr. Fell has obtained multiple official records demonstrating that Juror #162 and her son lived together in at least 1992 (when he was over 30 years old), 1996, and 1998.  They lived in adjoining apartments for at least five years, between 2001-2006, including the time period surrounding the 2005 trial in this case.[5]  Juror #162 also reported in an October 21, 2013 media article that she and her son currently live together.  Fell Br. at 35-36.

- Juror #162 failed to disclose at voir dire that her son had been convicted of burglary in 1983.  Counsel asked at the August 15 hearing if she knew that her son had broken into two homes, stealing a stereo, valuables, and six guns; pled guilty to a felony; and spent a year in jail as a result.  Aug. Hr'g Tr. at 156:12-17.  She responded: "I don't know anything about that. . . . I don't know anything about that ever happening."  Id. at 156:18-22  That is a lie.  Again, Juror #162 reported these identical, specific details as part of her 1996 psychological evaluation, disclosing that in the early 1980s, her son "was in jail for 'stealing guns.'"  Fell Br. at 32.[6]

- Juror #162 failed to disclose at voir dire that her son had been treated for substance abuse repeatedly, and that the treatment related not only to alcohol abuse, but also drug abuse.  She repeated these representations on August 15, testifying that her answer at voir dire was intended to refer to his treatment by an "alcohol counselor . . . at one time."  Aug. Hr'g Tr. at 158:24-25.  In fact, her son has been treated for drug and alcohol abuse not

---

[5] Even when Juror #162 and her son did not live together, they continued to live interconnected lives.  For example, Juror #162 and her son lived in adjoining apartments when her son was convicted of his fourth driving-while-intoxicated offense (in a car that Juror #162 co-owned), just a few years prior to voir dire.  See Fell Br. at 19-20.

[6] The Government claims that "most if[ ] not all of [her son's] offenses are related to his abuse of alcohol and domestic abuse, and took place more than a decade before trial."  Gov't Br. at 48.  This does nothing to justify Juror #162's selective and incomplete disclosures regarding his criminal history.  Juror #162 disclosed a single incident, 16 years prior to voir dire, involving a DWI and domestic abuse, and stated that her son had since been rehabilitated.  This was a lie – which Juror #162 continued to tell at the August 2013 hearing – as Juror #162 was well aware that her son's criminal history was far more extensive.  See Fell Br. at 30-31. The information provided by Juror #162's answer (a rehabilitated son who had overcome an isolated incident of criminal activity 16 years in the past) and the true facts (a son with chronic and varied substance abuse problems; repeated and numerous convictions for a variety of violent, aggressive, and intoxicated crimes; and an inability to rehabilitate) tell vastly different stories to the parties and the Court about Juror #162's ability to hear the facts of Mr. Fell's case impartially.  Further, Juror #162's son was convicted of four crimes in the eight years leading up to voir dire (and was charged with more), including two felonies, and was on parole in connection with the latter of those two felonies at the time Juror #162 was filling out her voir dire questionnaire.

once, but on a multitude of occasions. This substance abuse led to very frequent contact with law enforcement. In addition to numerous police and court records demonstrating that she was aware of these events, Juror #162 disclosed to the press in an October 22, 2013 article that prior to voir dire another event which had not been reported to the Court upon questioning had occurred: she sent her son to an inpatient treatment program as a result of drug abuse. See Fell Br. at 40-41.

Each of these misstatements demonstrates that Juror #162 intentionally withheld information in response to a material question.[7]

### b.   The Government's Prejudice Argument Is Meritless

The Government posits that no matter what facts Juror #162 concealed, she could not have been impaired from impartially considering Mr. Fell's own childhood sexual abuse because the jury found that Mr. Fell had been sexually and physically abused as a child. See Gov't Br. at 54. As the Government admits, it already made this argument when it moved for summary dismissal, and the Court rejected it. See Gov't Br. at 20. It has no more merit now.

The requirement that the jury be impartial does not end at its ability to find the existence of an undisputed fact to have been proven by a preponderance of the evidence. Rather, the "Eighth Amendment requires that the jury be able to *consider and give effect to* a capital defendant's mitigating evidence." Tennard v. Dretke, 542 U.S. 274, 285 (2004) (emphasis added). Mr. Fell is not contending that the jury was required to find that the mitigating factors that did exist – including that Mr. Fell had been sexually and physically abused as a child –

---

[7] For this reason, the Government's negative comparison of Juror #162 to "Juror D" in United States v. Sampson is entirely inapt. In Sampson, the court held that Juror D "was composed, candid, and credible when she testified." 820 F. Supp. 2d 151, 198 (D. Mass. 2011). Juror #162 was none of those things. In the case of Juror D, Judge Wolf found that Juror D was either not aware of the information that she omitted at the time of voir dire, or that she did not remember it when she was answering the questionnaire. By contrast, Mr. Fell has established evidence that Juror #162 did have knowledge of specific, unforgettable events that she did not disclose – and that she has continued to lie about her knowledge of these events and others in the 2255 proceedings. The Government's citation to Amirault v. Fair, 968 F.2d 1404 (1st Cir. 1992), is distinguished on these grounds as well. The court's conclusion in that case that the juror had "blocked" from her memory a victimization omitted at voir dire "was based in part on the court's assessment of the juror's honesty, sincerity and apparent respect for the integrity of the criminal justice system." Amirault, 968 F.2d at 1405. No such sincerity can be observed here.

17

outweighed any aggravating factors.  Rather, he has alleged that his constitutional right to an impartial trier of fact, capable of fair consideration of his mitigation evidence, was violated because Juror #162 intentionally omitted and misstated material information at voir dire.  Here, the facts that would have been disclosed through truthful answers "bespeak[ ] a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause."  Mem. Op. & Order: Claim XXII: Juror Misconduct at 6 (quotation marks omitted).  That risk would not be eliminated by a simple finding that Mr. Fell in fact was sexually and physically abused as a child – rather, as this Court has observed, that risk manifests itself where "this juror might not have been able to fairly and impartially consider evidence of childhood sexual abuse as a mitigating factor in a capital trial."  Id. at 8-9.[8]

Mr. Fell has established that truthful responses to the many questions that Juror #162 lied in response to at voir dire would have provided valid bases for a challenge for cause.  See Fell Br. at 44-48.  Juror #162 lied repeatedly, and continued to lie during the 2255 proceeding, which in and of itself indicates bias.  She lied about facts that are deeply personal and that provoked profound emotion.  This is evident by the very nature of the events she concealed – childhood sexual abuse by a caregiver; theft of life savings during an extremely vulnerable period; domestic violence; a son's unsuccessful struggle with drugs, alcohol, crime, and jail; and more – and by the reaction that Juror #162 had in court when she was confronted with them.  And she lied about facts that are unmistakably linked to central themes of Mr. Fell's case, including but not limited to the mitigating value of growing up in a chaotic environment,

---

[8] The Government cites to McCleskey v. Kemp, 481 U.S. 279, 311 (1987) – a case that has been called "the Dred Scott decision of our time," Anthony G. Amsterdam, Race and the Death Penalty Before and After McCleskey, 39 Colum. Hum. Rts. L. Rev. 34, 47 (2007) – for the unexceptional proposition that jurors are able to draw upon individual experiences during deliberations.  Gov't Br. at 54-55.  This proposition has no bearing on Mr. Fell's allegation that Juror #162 was not able to fairly and impartially consider the evidence introduced in his case, and withheld from voir dire the information about her individual experiences that would have revealed this fact to Mr. Fell.

exposure to domestic violence, childhood abandonment, childhood sexual abuse, drug and alcohol abuse, and rehabilitation in prison.

c.   <u>Mr. Fell's Trial Counsel Was Not Required To Ask Follow-Up<br>Questions To Preserve The Claim of Juror Misconduct</u>

Finally, the Government seeks to blame trial counsel for failing to ask follow-up questions, seemingly asserting that such questions were required to preserve the juror misconduct claim. But, as noted, this Court has already held that "Fell has provided substantial evidence that the juror's questionnaire response [Juror #162] was untrue," Mem. Op. & Order: Claim XXII: Juror Misconduct at 9, and that "[w]hat is not in dispute is that the juror's responses on the questionnaire and at voir dire were incomplete, and potentially misleading." Mem. & Order re: Discovery at 13.

The jury selection process here was "extensive and thorough." Gov't Br. at 2. The Court did not permit the jurors to make partial disclosures and tell half-truths or to tell something other than the "entire" truth. Gov't Br. at 47-48.[9] It directed, in the very first line of the long form questionnaire: "Upon your oath or affirmation, you must give true and <u>complete</u>

---

[9] The Government argues that Juror #162's incomplete answers regarding her son's criminal history do not support a claim because "nothing in the questionnaire required Juror 162 to summarize her son's entire criminal history, assuming that she could." Gov't Br. at 47-48. But, as a matter of law, incomplete answers at voir dire are sufficient to satisfy the first prong of <u>McDonough</u>. That case held that a party can seek a new trial based on <u>juror nondisclosure</u> or misstatements. <u>McDonough</u>, 464 U.S. at 549 (1984). Giving an incomplete answer is a failure to disclose. <u>See</u> Mem. & Order re: Discovery at 13 ("It is Fell's burden to establish that the juror gave <u>incomplete</u> or dishonest answers at voir dire, and that complete and honest answers would have permitted a successful challenge for cause." (emphasis added)); <u>see also</u> <u>United States v. Tucker</u>, 137 F.3d 1016, 1028 (8th Cir. 1998) ("[U]nder the <u>McDonough</u> test, [Petitioner] must prove that if [the juror] had given <u>complete</u> and honest answers at voir dire, she would have been subject to challenge for cause." (emphasis added)); <u>United States v. Starks</u>, Criminal No. 09–10352–JLT, 2012 WL 4023557, at *3 (D. Mass. Sept. 5, 2012) ("Where a juror provides inaccurate responses to voir dire questions, by giving either incorrect <em>or</em> <u>incomplete</u> answers to material questions, 'a party claiming he was denied an impartial jury may obtain relief by showing actual bias or implied bias,' or by satisfying the multi-factor test laid out by the Supreme Court in <u>McDonough Power Equipment, Inc. v. Greenwood</u>." (emphasis added)). And, as a matter of fact, the juror did not just fail to disclose information. The juror affirmatively lied, asserting that the only criminal incident involving her son occurred sixteen years prior to voir dire when he was placed on house arrest for "DWI and domestic abuse," Fell Br. at 29, even though she was well aware that her son's criminal record is far more extensive. <u>See</u> Fell Br. at 31-38.

19

answers to all questions." (emphasis added).[10]  The Court repeatedly instructed the jurors to answer the voir dire questions truthfully, and to be "absolutely candid and honest" in their disclosures.  Voir Dire Tr. JVD-1, at 9:14 (May 4, 2005); see also Tr. Videotaped Jury Instructions (Fell Ex. 117 at FELL-00001345, 1356) .  Counsel was thus entitled to understand that when Juror #162 represented that she herself had not been the victim of a crime and that over a decade earlier her son was able to "overcome his problem" with substance abuse by "hit[ting] the bottom before he went to the top," those answers were truthful, complete, and absolutely candid and honest.  Voir Dire Tr. JVD-9, at 137:7, 137:14-15 (May 23, 2005).  They were not.  Were the issue open to question, Mr. Fell would be prepared to have his lawyers testify how they were deceived and the impact that truthful answers would have had on their decisions with respect to jury selection.[11]

Thus, the Government's accusation that Mr. Fell is being "disingenuous" by asserting a claim based on the failure to disclose child sexual abuse because he never specifically asked about child sexual abuse, Gov't Br. at 56, is itself meritless.  The juror questionnaire did not ask whether the juror, or any member of the juror's family, was a victim or had perpetrated any specific crime.  It asked an umbrella question designed to ferret out all crimes of which the juror was a victim or an accused perpetrator.  The fact that it did not single out child sexual abuse thus no more excuses the juror's failure to mention that offense than it would a juror's failure to mention that he/she (or a family member) was a victim of any other crime that would have been relevant to assessing whether the juror could be fair and impartial.[12]

---

[10] [Juror #162] Long Form Questionnaire (May 11, 2005) (Fell Ex. 322 at Fell-00002729).

[11] The Government has requested, and movant produced, trial counsel's notes with respect to Juror #162.  Mr. Fell believes (and would be prepared at a hearing to prove) that those notes, along with the testimony of counsel that prepared them, show that counsel were deceived by the juror's answers and that, had the truth been revealed, they would have sought to remove her from the jury venire.

[12] The cases cited by the Government are inapposite.  In Lopez v. Aramark Uniform & Career Apparel, Inc., 417 F. Supp. 2d 1062  (N.D. Iowa 2006), the jurors were asked a narrow question: whether "any [juror] or any other family

20

2.      Mr. Fell Is Entitled to a Hearing with Respect to Juror #143

The Government half-heartedly asserts that because Juror #143 recanted his signed statement admitting he visited the crime scene during trial, the Court cannot credit that statement. It also argues that Mr. Fell has not proven prejudice. The Government's argument misstates the law and ignores the facts.

a.      Mr. Fell Is Entitled To Offer Additional Evidence that Juror #143 Visited The Crime Scene During Trial.

The Court and Mr. Fell are not required to accept Juror #143's belated assertion at the hearing that he did not visit the crime scene during the trial, particularly when that assertion contradicted his earlier written statement. Juror #143's written statement has all of the indicia of reliability. It was a statement against interest. The Court directed the jurors not to be exposed to extrajudicial information and inquired of them throughout trial whether they had been exposed to such information. Juror #143 did not admit to his visit to the crime scene at trial. His post-verdict admission is against his legal and penal interest. It was made under further circumstances assuring reliability. Juror #143 testified that he believed he was talking to a representative of the Court, not a representative of any party. The statement was not presented to Juror #143 until he had overnight to think about what he had said to counsel, and he was given ample time to review it and to make corrections. Juror #143 made corrections and additions when he believed that the

members or any close friends [had] ever been the victim of sexual harassment or any other type of discrimination." Id. at 1068. The court held that the question did not require the jurors to disclose sexual abuse because it was "relatively narrow [and] clearly limited in its scope to sexual harassment and other instances of discrimination." Id. at 1068-69. Likewise, in United States v. Adeniyi, 277 Fed. Appx. 22, 24 (2d Cir. 2008), the court held that a juror was not required to disclose that, in the course of conducting business, he had been on the receiving end of bad checks, because that information was "not responsive to the questions" asked during voir dire, because the questions inquired whether "any jurors had experiences with fraud which they believed could impair their ability to be fair and impartial," and because "check bouncing was not one of the categories of fraud inquired about by the District Court." Br. for the United States of America at 39 & n.A, United States v. Adeniyi, 277 Fed. Appx. 22 (2d Cir. 2008) (emphasis added). As in Lopez, the information omitted was not called for by questions posed at voir dire. That is not the case with respect to the information that was omitted here. See Tucker 137 F.3d at 1029 (rejecting argument that defendant waived juror bias claim by failing to ask questions about it at voir dire because "in this case [the defendant] asked the questions and he contends that [the juror] gave incorrect or incomplete responses").

21

statement required them; he made none to the critical paragraph about his visit to the crime scene during trial. And, even the Government admits that – as the juror testified at the hearing – all of the statements other than those upon which Mr. Fell would rely were truthful. The statement thus is admissible – see, e.g., United States v. Morgan, 385 F.3d 196, 208-09 (2d Cir. 2004) (admitting a letter under the Rule 807 hearsay exception because circumstances indicated that it was trustworthy); Lopez v. Miller, 915 F.Supp.2d 373, 425-26 (E.D.N.Y. 2013) (admitting affidavits under the Rule 807 hearsay exception because circumstances indicated that they were trustworthy); United States v. Watts, No. S3 09 Cr. 62 (CM) 2011 WL 167627, at *3-5 (S.D.N.Y. Jan. 11, 2011) (summarizing the requirements of the statement against interest hearsay exception and explaining why such statements are trustworthy) – and Juror #143's self-serving and selective recantation is entitled to no weight. See, e.g., Brown v. Woods, No. 07-CV-0058 (DLI), 2009 WL 789443, *7-9 (E.D.N.Y. Mar. 20, 2009) (recantation, as a rule unreliable, was untrustworthy given both the facts and the context of the recantation).[13]

Indeed, were it required (and it is not clear given the Government's papers whether it is still disputing the juror made a crime scene visit during trial), Mr. Fell is prepared to present witnesses who will unequivocally testify that, contrary to his testimony in court, Juror #143 in fact did go to Rutland during the summer of 2005 and spoke after the trip regarding what he found. At a minimum, then, Mr. Fell is entitled to a hearing. See Tucker, 137 F.3d at 1032 ("[A] defendant who makes an allegation of serious misconduct by a juror, supported by evidentiary materials with significant indicia of reliability, is entitled to a more thorough

---

[13] Mr. Fell is prepared to present witnesses to the signing of the statement who will testify that they interviewed Juror #143 on Saturday, and came back the following day to go over his statement with him. They will testify that Juror #143 made the two statements that he has disavowed, and that he took his time reading through and editing the statement before he signed it. And they will testify that the statement of Juror #143 accurately reflected what he told them.

investigation of his complaint than merely asking the juror whether he committed the misconduct.").

> b. <u>The Government Has Not Rebutted the Presumption of Prejudice</u>

The Government's second argument misstates the law. It contends that "Fell has failed to establish that [Juror #143's exposure to extraneous evidence] corrupted the trial in any way." Gov't Br. at 61. But where, as here, a juror intentionally exposes himself to extra-record information, it is not the defendant's burden to show that the exposure was prejudicial. Instead, it is the Government's burden to prove that the was information was harmless. <u>See</u> <u>supra</u> at 6-7. The Government did not meet its burden.

As demonstrated by Mr. Fell's opening brief, Fell Br. at 51-62, the information to which Juror #143 was exposed was far from "insignificant." Gov't Br. at 61. The degree of forethought and planning employed by Mr. Fell and Mr. Lee through the course of events on November 27, 2000 were central issues at trial and placed squarely in front of the jury in the form of several aggravating and mitigating factors. Fell Br. at 54-58.

Likewise, Mr. Fell's trial counsel told the jury over and over about the abusive and neglectful environment in which Mr. Fell grew up, illustrated by a run-down house littered with garbage and beer cans. Fell Br. at 57-58. The Government concedes that there was no other evidence regarding the condition of Debra Fell's house and neighborhood in Rutland, leaving Juror #143's observations (and report to his fellow jury members) that the neighborhood was "okay," the house was "decent," and Ms. Fell was "just trying to live her life," as the only image of a scene completely incongruous with the narrative presented by Mr. Fell's lawyers at trial.

Indeed, the great lengths Juror #143 went to in order to obtain this information belie any contention that the information was insignificant. Now he has perjured himself in an

effort to conceal the fact that he had this evidence in his possession at the time of trial.  See Benjamin v. Fischer, 87 Fed. Appx. 761, 763 (2d Cir. 2004) (affirming grant of habeas corpus on extraneous information claim where jurors "engaged in extraordinary efforts to discover" information not in evidence regarding issue that "was hotly disputed").  In response to these facts, the Government has presented no evidence in support of its bare assertion that the extraneous evidence viewed here is "insignificant."

## CONCLUSION

For the foregoing reasons and for the reasons set forth in Mr. Fell's opening brief, Mr. Fell respectfully requests that the Court order merits briefing regarding Juror #26 and order an evidentiary hearing at which Mr. Fell may present the evidence establishing his juror misconduct claim with respect to the other jurors.

Dated:  January 24, 2014                    RESPECTFULLY SUBMITTED,
Barre, Vermont


                                            /s/ Richard Rubin
                                            RICHARD RUBIN
                                            Rubin, Kidney, Myer & DeWolfe
                                            237 N. Main Street
                                            Barre, Vermont, 05641-4125
                                            (802) 479-2514
                                            Fax: (802) 479-2516


Dated:  January 24, 2014
New York, New York


                                            /s/ Lewis J. Liman
                                            LEWIS J. LIMAN
                                            Cleary Gottlieb Steen & Hamilton LLP
                                            One Liberty Plaza
                                            New York, New York 10006
                                            (212) 225-2550
                                            Fax: (212) 225-3999


Dated:  January 24, 2014
New York, New York


                                            /s/ Cathleen Price
                                            CATHLEEN PRICE
                                            P.O. Box 321762
                                            New York, New York 10032
                                            (212) 998-6193

                                            *Attorneys for Donald Robert Fell, Jr.*


25