UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA    *
                            *
            V               *
                            *
DONALD FELL                 * CRIMINAL FILE NO. 01-12


PRE-HEARING CONFERENCE
Wednesday, February 26, 2014
Burlington, Vermont

BEFORE:

    THE HONORABLE WILLIAM K. SESSIONS III
    District Judge


APPEARANCES:

    JACABED RODRIGUEZ-COSS, ESQ., United States
        Department of Justice - Criminal Division, 1331
        F Street, N.W., Washington, D.C.; Attorney for
        the United States

    TRISTRAM J. COFFIN, ESQ., United States Attorney,
        Federal Building, Burlington, Vermont; Attorney
        for the United States

    LEWIS J. LIMAN, ESQ., SCOTT BUELL, ESQ. and
        MICHAEL J. KAHN, ESQ., Cleary Gottlieb Steen &
        Hamilton LLP, One Liberty Plaza, New York,
        New York; Attorneys for the Defendant

    CATHLEEN PRICE, ESQ., P.O. Box 321762, New York,
        New York; Attorney for the Defendant

    RICHARD I. RUBIN, ESQ., Rubin, Kidney, Myer &
        DeWolfe, 237 North Main Street, Barre, Vermont;
        Attorney for the Defendant


ANNE NICHOLS PIERCE
Registered Professional Reporter
United States District Court
Post Office Box 5633
Burlington, Vermont  05402
(802) 860-2227

WEDNESDAY, FEBRUARY 26, 2014

(The following was held in open court at 10:05 a.m.)

COURTROOM DEPUTY:  This is case number 1-12, United States of America versus Donald Fell.  Present in the courtroom on behalf of the government is United States Attorney Tristram Coffin and Jacabed Rodriguez-Coss.  Also present in the courtroom on behalf of the defendant are attorneys Lewis Liman, Scott Buell, Cathleen Price and Richard Rubin.  The matter before the Court is a pre-hearing conference.

THE COURT:  All right.  This is a pre-hearing conference requested by counsel.  And there are a number of issues to be addressed.  In particular, I think there's an issue to be addressed at this point as to whether a hearing will go forward in March, but a number of issues that I think should be covered.  And then I will open it up to counsel to add any other issues that they wish to address.

The first is today I have released records in regard to John Doe.  Those are the correctional department records.  I have reviewed those, found those to be relevant to be issues to be addressed at any future hearing.  Those records have been released subject to a protective order.  They are not to be copied, they are not to be shown to anyone else, and

that if any records are to be submitted to protect the individual, I'd ask that those records be sealed.

Second, the Court has not ruled on the motion to amend the complaint. I will say that I have spent about a month on the Ninth Circuit, at least it seems like I spent a month on the Ninth Circuit, and that as a result, the ruling is going to be released during the week of March 10, certainly hoping it would be early in the week, but it's going to be released during that particular week.

Then, next, the expectation was that the hearing in March was to be a continuation of the essentially initial or preliminary hearing which began earlier on in these proceedings. And I had thought that counsel had consulted and had agreed that they will have this continuation of the hearing. The scope of the hearing would be dependent somewhat on the Court's ruling in regard to the motion to amend, and -- but then I have read the government's response and, in particular, the last paragraph in the government's response, which suggests to me that a hearing in March may be premature.

It is a continuation of the initial hearing, which makes it sort of an odd duck procedurally, but the government is essentially suggesting that even if the Court were to grant the leave to amend, which would add,

theoretically, the claim to Juror No. 27, add the additional claims with regard to other jurors, 162 in particular -- I think 143 is already covered -- that the government hasn't even responded yet, and so that they're, theoretically, raising the prospect that there may be no conflict in the positions of the defense and the government which would require a hearing.

I mean, that's how I read this particular response. I cannot imagine, frankly, that there would be an agreement between the government and the defense in regard to some of the issues raised, in particular in regard to Juror No. 162, and obviously 27 as well, but that's what is suggested.

So I think the government is suggesting that they can't go forward with the hearing if the Court granted the motion to amend until they file an answer and until there's a real conflict between the sides.

And can I ask the government, is that -- is that your position?

MS. RODRIGUEZ-COSS:  That is essentially our position, your Honor, and we apologize if there's been some sort of misunderstanding, and I welcome the input of defense counsel in this matter, but while the Court isn't -- is characterizing the March hearing as a continuation of the preliminary inquiry conducted

earlier, I think the parties viewed it more as the full-fledged evidentiary hearing to be held.

THE COURT: That was the second question I was going to ask you.

MS. RODRIGUEZ-COSS: Okay.

THE COURT: Is that the way you see that?

MS. RODRIGUEZ-COSS: That is the way we believe we envisioned it, and they can correct me if I'm wrong but I believe that's why what -- and why the parties have been scheduling the necessary depositions and exchanging exhibits and witness list and so forth, because we really felt that that was -- or the hearing we would have in March would be the evidentiary hearing on the juror misconduct claims, following which the Court would enter its final order on that claim.

THE COURT: Mr. Liman? You agree that this is -- this has really changed from what was essentially a preliminary question as to whether or not you could raise jury misconduct questions to ultimately a determination on those particular questions? Is that correct?

MR. LIMAN: Your Honor, I --

THE COURT: Procedurally.

MR. LIMAN: Let me try to answer that question by -- by identifying what may be the only real

difference between continuation and continuing it, because we did believe that this was a continuation, in I mind.

It is our view that the testimony and the evidence that came in during the hearings in August and September would be considered to be part of the corpus of evidence that the Court would rule upon following the conclusion of this hearing.

THE COURT:  Okay.

MR. LIMAN:  The government hasn't -- hasn't disputed that, and I can't imagine the need to call the jurors back in.  I think with that understanding, that this is all a single corpus of evidence, it probably doesn't make a difference whether one considers this the hearing as long as all of that evidence that was received is admitted.

THE COURT:  All right.  Well, it would be preferable, from my perspective, that this just be one hearing.  The juror misconduct issue has been raised.  I think that I have got the obligation to address it in an open-fashioned way, and it would be helpful to know this is the hearing, it includes all of the testimony earlier on, and then we will see on the motion to amend and where we go from there, but -- yes?

MS. RODRIGUEZ-COSS:  The reason we believe,

your Honor, that it does make a difference whether it's a continuation of the preliminary inquiry or the hearing in depth is because we also expected, and perhaps -- and there may be more miscommunication than we thought, is that following a preliminary inquiry the government would expect that the Court would revisit the claims and resolve some and then find that some needed a full-fledged evidentiary hearing, if the Court follows me.

THE COURT:  Oh, yes, that's what a preliminary hearing was supposed to be.

MS. RODRIGUEZ-COSS:  Okay.

THE COURT:  I understand that completely.

MS. RODRIGUEZ-COSS:  Okay.

THE COURT:  But, you see, that -- initially the claim was raised.  We have an initial set of hearings to address whether a full evidentiary hearing would be required, that you'd go forward with that.  But in light of the depth of the hearing so far, that -- in light of the really lack of need to call the jurors back again, I had thought there's some confusion, but I had thought that perhaps there was an agreement that this is just one set of hearings, and upon which -- and upon that -- those hearings, the Court will ultimately make a determination in regard to jury misconduct.

MS. RODRIGUEZ-COSS:  We may, your Honor, because -- we don't want the Court to feel later on that the government's misleading the Court in a way.  With regards to the potential need to recall the jurors, we -- the government still sees that there may be a need to do that, and I will explain myself.

THE COURT:  Oh, all right.

MS. RODRIGUEZ-COSS:  Specifically, and I think it becomes more pointedly with Juror 162, if the Court will recall, we entered that preliminary inquiry based solely on the claim established, or set forth by the petitioner, in March of 2011, which was, as the Court, I think, also understood, whether she had been honest about having been previously a victim of a crime.  And we were confronted with additional information during the course of the hearing that the government had not had an opportunity to review and certainly never had an opportunity to speak to the juror about it or examine her during the hearing, and so I think that perhaps would -- with regards to the other claims, if the Court sustains them, if the Court sustains them, then there may, may be a need to recall the juror because, quite honestly, she was cross examined or allowed to be cross examined for impeachment purposes only, not for the development of a full record on those claims.

THE COURT:  Well, but then you just threw in the language "if the Court sustains them," in which case what you are suggesting is the Court makes this preliminary ruling that the claim can proceed for a final evidentiary hearing.  That's the procedure that was put in place.  But now the hearings have been so extensive --

MS. RODRIGUEZ-COSS:  Well, I should --

THE COURT:  -- do we have to do that again?

MS. RODRIGUEZ-COSS:  What we meant with "if the Court sustains them," I meant if the Court even allows them to be filed --

THE COURT:  Oh, all right.

MS. RODRIGUEZ-COSS:  -- because our claim is that they are time barred.

THE COURT:  Right.  No, I appreciate that. The motion to amend is intended to address that particular question.

All right.  So my expectation, then, is -- and I am not going to prevent you from calling one of the jurors back, if you want to call one of the jurors back. There's no question about that.  So my expectation is that the Court addresses the motion to amend during the week of March 10th, and if I was to grant the motion to amend, then the government is correct that they have not

filed an answer, so is the government objecting then to the continuation -- or to an evidentiary hearing until you have had the opportunity to file an answer?

MS. RODRIGUEZ-COSS:  I certainly think that we would need to file an answer.

THE COURT:  Oh, no question about that, but the request is whether we hold off the hearing -- that's the suggestion you have here is that we -- we don't have a hearing until the answer is filed because you might not dispute some things, which perhaps -- perhaps that's true.

MS. RODRIGUEZ-COSS:  It's within the realm of possibilities.

THE COURT:  I would be shocked.  Right.  Or can we go forward with the --

MS. RODRIGUEZ-COSS:  And I am afraid the Court may not like my answer, but it's difficult for the government to answer that question until we see the ruling of the Court.  And so I think that whether or not we feel comfortable enough to proceed without an actual answer on the record prior to the hearing is going to depend on what claims we are going to have to be addressing at that hearing.

Again, we expected that after the preliminary inquiry some claims will -- would be ripe for -- for a

decision by the Court; others may need further evidentiary development. Until we see what claims are left on the table, if you will, it's difficult to respond to that.

THE COURT: Well, are we talking apples and oranges here? I thought -- we have a motion to amend raising these new issues in regard to Juror No. 162, Juror No. 27. Right? That's all set out in the motion to amend. That is either -- I either grant them the motion to amend and they're permitted to go forward with those, or I deny it, or, theoretically, I could -- I suppose, I could grant 162 and not 27. Right? Theoretically that could happen as well, but --

MS. RODRIGUEZ-COSS: And, theoretically, the Court could find that some of the claims with regards to 162 relate back to the original claim and some don't. That's also, we're hoping, a possibility. And that we address in our opposition.

THE COURT: All right. So, in other words, you cannot take a position at this point as to whether we go forward on the 19th until you get a response on the motion to amend.

MS. RODRIGUEZ-COSS: Could we have a second?

(Brief pause.)

MS. RODRIGUEZ-COSS: Yes, but, your Honor, we

will certainly expedite our response.  We can certainly expedite our response.

THE COURT:  And I will try to expedite the ruling as quickly as I possibly can.  So let's leave the hearing on, but I -- I appreciate that if you feel that there's a necessity of filing an answer after you have gotten the Court's ruling, and if either party wishes to postpone the hearing, I suppose that that can happen.

MS. RODRIGUEZ-COSS:  There's another matter that may affect the -- the hearing that week, your Honor, and that is we have been informed that Attorney Alex Bunin will not be able to be deposed until the week of the 17th.

THE COURT:  I saw he was in trial until the 17th.

MS. RODRIGUEZ-COSS:  And we would certainly like to conduct that deposition before we enter the evidentiary hearing, and I know that the Court had previously also offered some dates in April.  The government is willing to revisit those dates.  We would not -- we certainly don't want this postponed a long time.  We would like to continue our focus.  I think both parties have focused on these issues and we have worked hard to try and get ready for March, and -- but we would also like to have the opportunity to depose

Mr. Bunin before the hearing. And as the Court knows when it comes to deposition, once we get the transcript, they get to review it, corrections are made, so it takes a little time to be able to be ready for hearing, and -- if we conduct the deposition on the 17th. So that may also affect the timing of the deposition.

THE COURT: So, do you know, Mr. Liman, do you know Mr. Bunin's schedule? I mean, is he available at night for a deposition? I don't know of any jury trials go till midnight.

MR. LIMAN: I -- your Honor, I spoke to him about that. I spoke to him last week. And what he said was he was beginning to select a jury. He expected the trial to last through the week of the 17th. I asked him about taking the deposition over a weekend. I didn't ask about at night. And what he said was that he was the trial lawyer on the case, and that he would be spending the weekends preparing for the next day and the next week. I assume it would be the same answer about the evenings, but I don't know.

I can't imagine that the deposition would be very long, and I informed him of that. I could -- I could ask him the question.

THE COURT: Well, as far as the scope of the deposition, at this point he is not being deposed upon

all of the issues raised by your 225 -- 2255 petition. He is only being deposed in regard to his reaction to some of the information which has come out from some of the jurors, in particular, whether in fact he would have exercised a challenge for cause or peremptory challenge; is that right?

MR. LIMAN:  That's -- that's correct, your Honor.  And --

THE COURT:  Is that correct?

MR. LIMAN:  And I --

THE COURT:  Is that correct from the government?

MS. RODRIGUEZ-COSS:  Yes, sir, that's correct.

THE COURT:  So that would be a short -- that would be short.

MR. LIMAN:  I can revisit it with him.

I did, if your Honor would permit, want to make one comment with respect to a March hearing.  As we've informed the government, there are five witnesses we have identified so far who would testify at March  -- in March.  That's putting aside Juror No. 27.  One of those witnesses we would present through her deposition testimony.  That deposition's being scheduled, and that, you know, shouldn't occupy much --

THE COURT:  That's -- that's the one for March

6th?

MR. LIMAN:  Correct.  With respect to the remainder, those do include some lay witnesses who have been informed of the date and who have indicated their willingness to testify.  There may be a couple of other witnesses that fall into that category of lay witnesses. It would be our suggestion that that -- and our request, that we commence the hearing on March 18th, since these witnesses have been informed of the date, have agreed to make themselves available, get done what we can get done.  If there are pieces of evidence that can't be put in on the 18th, we wouldn't have an objection to putting in that -- that evidence at some later -- at some later date.

THE COURT:  Okay.  All right.  And the government is aware of who these witnesses are and what the nature of the testimony is?

MR. LIMAN:  That's correct, your Honor.

THE COURT:  So what do you think about that?

MS. RODRIGUEZ-COSS:  Well --

THE COURT:  Essentially these lay witnesses would testify.  You know what they are going to testify to.  You'd be able to cross examine them.  But then it could be continued into the future.

MS. RODRIGUEZ-COSS:  So I am assuming that by

lay witnesses, we are not talking the jury consultant or the -- or Attorney Primomo?

MR. LIMAN: Those depositions have been scheduled, and we have arranged for Mr. Primomo to be present in court on the 18th. There's a distinction between the two witnesses. We would intend to call Mr. Primomo as a witness. We have informed the government of that. The government asked to take the deposition of Mr. Primomo. We agreed to that. We have arranged for that deposition. He would be available to come to court and testify in person at this point.

THE COURT: But I think the government is asking you whether, first of all, these witnesses whom you intend to call on the 18th would be limited to the lay witnesses, or would they include Mr. Primomo? They may need more time for Mr. Primomo, in which case you could postpone that to later on.

MR. LIMAN: We would have no problem postponing that. I'm sure we could find a date.

THE COURT: Anything else you would like me to ask the defense?

MS. RODRIGUEZ-COSS: Not at this time, your Honor. Thank you.

THE COURT: Okay. Well, that sounds -- that sounds helpful. And that would resolve any of the

difficulties the government has in responding to answers, but let's leave that right on schedule at this point.

The other issues that I wanted to raise first relate to the exchange of witness lists and exhibits. The parties seem to be working well together. Do you have a date by which all of the witness lists and exhibits should be exchanged?

MS. RODRIGUEZ-COSS: The defense proposed March 7th. We are certainly working towards that. If, for whatever reason, we can't meet that, we will speak to them informally and -- but we are working towards that deadline.

THE COURT: Okay. And then I also was aware that depositions in advance of the hearing of Mr. Primomo, Mr. Bunin, juror consultant, and the defense witness, which I thought was March 6th, were to be scheduled. I guess they have already been scheduled. So that's been resolved.

MS. RODRIGUEZ-COSS: They have been scheduled.

THE COURT: Well, except for Mr. Bunin.

MS. RODRIGUEZ-COSS: That's right.

THE COURT: And you have the jury consultant.

MS. RODRIGUEZ-COSS: Yes, sir, March 6th, I believe, is the jury consultant.

THE COURT: Right. Next were the interviews of court personnel, past and present. Obviously court personnel work for me, theoretically -- well, not theoretically. In real terms. And my understanding is that the questions that the parties wish to ask relate to Juror No. 143 and, in particular, the gun going into the jury room.

In light of that, I have no objection to them being interviewed, but I'm concerned about the process, and I am also concerned about my role as the manager or employer. And so what I suggest is I get a list of witnesses whom you wish to -- or not witnesses, court personnel whom you wish to talk to, we would schedule a time for them to be available in a room, and I would like to be there just as their employer.

You know, obviously I have no interest in speaking with them about the topic. This is just to be there as their employer. Now, it's a little bit confusing because I am also the judge of the facts, but on the other hand, I am not going to consider those things that are said not on the record.

So my question is whether, first of all, you object to the process by which we just set up a room and you identify who you want to talk to and what you want to ask, and the employees will be there, and that I would

be there as well.  If you have some concern about the conflict between my role as the -- as the employer and the trier of fact, then let me know that.

MS. RODRIGUEZ-COSS:  I -- I think there may be, your Honor.  We haven't explored the matter, quite honestly.  It's the first time the Court has expressed itself on this issue.  But just -- I have got something going in my gut that tells me that there may be some -- some concerns about that.

I wonder whether the Court has considered perhaps counsels from the clerk's office, for example, would be with the court personnel if they wish?

THE COURT:  The other option is to have the clerk of court be present.

MS. RODRIGUEZ-COSS:  That may also be an alternative.

MR. LIMAN:  Your Honor, we -- we would have no problem with you being present.  If -- if the government has an issue, it may be possible to have -- I don't know if there's a magistrate judge who would be available.

THE COURT:  Well, it could be the magistrate judge as well.

MR. LIMAN:  The one thing that we request is that if the Court is going to be present, that the questioning -- that both sets of counsel be present in

that we do once --

THE COURT: No, this would be -- my sense is that this would just be once. You tell me who you want there and both sides would be there and you can ask whatever questions you want related to Juror No. 143.

Now, having just thought about the magistrate judge, the magistrate judge was an Assistant United States Attorney at the time of this investigation and trial, and I don't think that would work.

Mr. Coffin, wasn't Mr. Conroy -- he clearly -- when was he -- when was he made a magistrate judge, do you remember?

MR. COFFIN: Approximately 2008, 9 maybe, so --

THE COURT: So he was in the U.S. Attorney's Office at that time, so --

MR. LIMAN: I withdraw my suggestion.

THE COURT: Yeah. All right. Well, the government think about whether they have any objection to me being present. If they do, then -- then we will make some arrangements. Maybe Mr. Dunavin can be there or someone --

MR. COFFIN: I think what the Court's trying to do is have somebody there to be institutional support and kind of just preside in a way over the -- the

interviews as an employer, right?

THE COURT:  Right.

MR. COFFIN:  And I understand that, and I guess I do wonder if down the road that creates issues, since you are the presiding judge in the case, in some -- in some fashion; and if there were a way we could figure a different scenario, that would be --

THE COURT:  That's fine.

MR. COFFIN:  I am not at the point where I want to raise an objection with that.  I think we need to think about that, but I do worry down the road a little bit.

THE COURT:  Just thinking about this other case I have involving the Bosnian -- there's a case involving a charge of -- against a former Bosnian resident of war crimes, and the arrangement is being made for depositions to be conducted, and I would be sitting in the depositions, but those are a little different because those are depositions to preserve testimony, and this is just an informal thing.  So I --

MR. COFFIN:  And to me, one of the biggest issues is on-the-record/off-the-record kind of a thing. Of course we could have them come into court and have an interview here in court where they're -- everything's taken down and so forth and the Court is presiding, but

we are looking at a little different process.

THE COURT: Right. This is to be an informal discussion. You just tell me the areas you want to talk about and whom you wish to speak with, and give me a suggestion as to who should be present, but I think the -- I only raise my presence because, first of all, I don't want to speak with the employees about any of their knowledge if they ever were raised as a potential witness, and that -- but second, I think somebody representing the court system should be there.

MR. LIMAN: Shall we set a date by which the parties should respond to your Honor both on the issue of your presence and --

THE COURT: I think the 7th. The 7th would be fine.

Okay. Now, in regard to Juror No. 27, the issue remains outstanding. The Court has to address the motion to amend, and at that time I will address the question about Juror No. 27.

Now, in regard to the notices for treatment records that have been filed, I guess there's some confusion as to whether the Court should have sent notices or the defense should have sent notices. You have already sent notices. Those are appropriate under the last court order, and before there's any decision as to whether the

records are to be retrieved, there should be a response from John Doe, I think.

MR. LIMAN:  Thank you.

THE COURT:  Okay.  All right.  Now, those are the issues that -- that I felt should be addressed now. Now, who has other issues?

MR. LIMAN:  The issue of the presence of the movant, of Mr. Fell.  We've -- just to put on the record, we've spoken with him, Miss Price has spoken with him, and he waives his -- any right that he has to be present for the hearing on the claims on juror misconduct.

THE COURT:  Okay.  Anything else that you think that you need to address at this point?

MR. LIMAN:  Nothing from Mr. Fell.

THE COURT:  And how about the government?

MS. RODRIGUEZ-COSS:  With the Court's indulgence, your Honor?

(Brief pause.)

MR. LIMAN:  What Ms. Rodriguez-Coss has just mentioned to me is the motion that we made with respect to the out-of-state witness.  That motion has just been submitted and is *sub judice*.  I don't think there's anything the Court needs to address today with respect to that.

THE COURT:  You are speaking about whether it should be held in -- it should be done *in camera*, not *in camera*.

MR. LIMAN:  Whether the transcript should be sealed.

THE COURT:  Under seal.

MR. LIMAN:  It's our view the transcript should be sealed.  We can have conversations afterwards about whether any portion of it can be unsealed.  It seems to us that that is the orderly way to -- to proceed, and if there is a dispute after the deposition is held with respect to whether any portions of it should be unsealed, it's -- it could then be presented to your Honor, and that would be the more efficient way to raise it.

THE COURT:  And so this is the person on June 6th.  You also have three other lay witnesses?

MR. LIMAN:  March 6th.

THE COURT:  I'm sorry, March 6th.  Right.  You have three other lay witnesses?  Is that correct?

MR. LIMAN:  That is -- we have -- we have identified two other lay witnesses so far, and we have a couple of other lay witnesses who we are still in the process of making a decision and should be able to let the government know about them very soon.

THE COURT: Okay. And just for curiosity sake, are there other witnesses relating to Juror 143 or 162?

MR. LIMAN: There's one witnesses relating to Juror 143 and there's one witness relating to Juror 162.

THE COURT: Okay. All right. Now from the government, anything else to be --

MS. RODRIGUEZ-COSS: No, your Honor. We just received a proffer about this particular witness, the subject of this motion, last night, so we will respond.

THE COURT: Okay. Now --

MR. COFFIN: One thing I just wanted to say, your Honor, I appreciate counsel and the Court agreed to proceed in a segmented way in this case. I think that the record has been developed pretty fully on some of these juror issues and will be developed more fully. The Court may be able to render a decision. Depending on what the decision is, the government would certainly look very carefully at that and see where we go.

THE COURT: Okay. So let me just ask the broader question, just to make sure that I understand what your wishes are here. Is it your wish that we -- I say we, all of us, address the juror issue before you get into the second set of claims raised in the 2255 petition?

MR. COFFIN:  Yes, your Honor.

THE COURT:  So does that mean there's no discovery going on in regard to the other issues? That is being held in abeyance while the juror issue is resolved?

MS. RODRIGUEZ-COSS:  There is -- there is discovery going on.  The defense has produced quite a bit of discovery.  We have produced some discovery to them.  There's communications back and forth with regards to all these documentary discovery in the case. That is -- that is going on.  But with regards to the depositions, for example, we are at this point limiting them to the issue to be addressed at the March -- at the March hearing.  That's the juror misconduct issue.

THE COURT:  All right.  And -- okay.

MR. LIMAN:  Your Honor, just specifically, what's been happening, and the parties have agreed to, is the exchange of documents.  There are other forms of discovery that would take place with respect to the remainder of the case.

To inform the Court, we have produced to the government the expert reports for the experts who we would put on at a hearing on the remaining claims, and by agreement of the parties, subject to the Court's consent, we would hold in abeyance the taking of the

deposition of those experts, the government's obligation to put forward its expert reports for its experts, and any depositions of witnesses with respect to remaining claims, including the lay witnesses and Mr. Fell's --

THE COURT:  I ask the question because I am just a little concerned about where the case goes in the long run.  So the Court makes a determination on the juror issue, and of course that's subject to appeal.  I don't know -- I would suppose -- let's see.  I suppose if I rule for the defense, then the government can appeal, clearly.  If I rule for the government, it's essentially interlocutory appeal.  I am not sure the defense could appeal at that point.

MR. LIMAN:  Your Honor, frankly, we haven't looked at the issues of appealability --

THE COURT:  Right.

MR. LIMAN:  -- except to know there was an issue in the Sampson case about appealability.  The government took an appeal.  There was a question there as to whether that was interlocutory for the government and whether it's considered to be a civil case.  I raise that just for the Court's information.  The way the First Circuit resolved that issue was to determine that it was appealable.  As we know, the First Circuit ruled in the Sampson case.  We have not separately researched

the law in the Second Circuit.

THE COURT:  Okay.  But assuming that there is an appeal that's permitted, whether it goes either way -- this is clearly not to be taken as any kind of expression one way or another, this is just in the abstract, because you have done a whole lot of factual development here, 365-page complaint, 200 -- was it 200-some-pages response?  You have done a lot of discovery.  If all of a sudden there's an appeal in the middle, what happens to the rest of the case?  Does it all stop?  Or do you just continue on?

MR. COFFIN:  I don't know the answer to that question, your Honor, and I also don't know the answer to the question whether the government would appeal should the Court find for the defendant.  But, you know, the process would be we would review our decision very closely, we would have discussions with the Justice Department, Solicitor General's Office and appellate division, the criminal division, about whether an appeal would be appropriate and what other steps might be taken at that point.  That would be the process we would engage in.

THE COURT:  All right.  Well, anyway, the only reason I bring it up is it's a concern to me.  I mean, you are moving along, you are learning all about this

case.  Then all of a sudden if there's an appeal, it stops and nothing happens, and then you have to sort of start over again.

So I would be inclined, I should say -- I would be -- I am inclined to -- you know, if there's an appeal, the case continues on because you are at that point that you don't want to start over again, what -- however it goes.  And, you know, I want to say just as a general matter, although -- that this is obviously -- the juror issue, both of these issues are all very significant, and my general philosophy in the trial, as well as here, was let everything come out and get it resolved because otherwise two, three years down the road someone might tell you to take it back and do it again.  And -- I don't know who would do that.  I think the Court of Appeals would do that.  But anyway.  So I'd like to just do it once and do it well.

So are there any other issues?

MR. LIMAN:  Not from Mr. Fell.

THE COURT:  In regard to payment issues, I am going to contact the circuit.  As you know, this is the only death penalty case that is ever -- that is in this status, and so there's issues about payment of expenses, and I am going to deal with those issues with them.

MR. LIMAN:  Thank you.

THE COURT:  Okay.  Thank you.

MR. COFFIN:  Thank you.

(Court was in recess at 10:45 a.m.)

*** ** ***

C E R T I F I C A T I O N

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matte

March 4, 2014                    _____
Date                             Anne Nichols Pierce