UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

------------------------------------------------------------------- X

DONALD FELL,                                          :
                                                     :
                              Movant,                :
                                                     :
- against –                                          :    2:01-CR-12
                                                     :
UNITED STATES OF AMERICA,                            :
                                                     :
                              Respondent.            :
                                                     :
------------------------------------------------------------------- X

## OPPOSITION OF DONALD FELL TO THE GOVERNMENT'S EXPEDITED MOTION TO COMPEL CONTINUATION OF DEPOSITION

LEWIS J. LIMAN
Cleary Gottlieb Steen &
Hamilton LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

CATHLEEN PRICE
P.O. Box 321762
New York, New York 10032
(212) 998-6193

RICHARD RUBIN
Rubin, Kidney, Myer & DeWolfe
237 N. Main Street
Barre, Vermont, 05641-4125
(802) 479-2514

Date:   March 17, 2014

*Counsel for Donald Fell*

Donald Fell, by and through his undersigned counsel, respectfully submits this Opposition to the Government's Expedited Motion to Compel Continuation of Deposition.

INTRODUCTION

The Government has moved to compel the production of certain of the work product of Beth Bochnak, Mr. Fell's jury consultant at trial, regarding jurors other than those at issue in the claim of juror misconduct and to compel the continuation of her deposition.

The Government's motion is a pointless diversion of resources and fails the most elementary test of a motion to compel – showing the requested discovery is relevant to some claim or defense. The Government bases its request on the ostensible need to inquire into whether the defense viewed Juror #162 favorably based on the incomplete and misleading information she provided at trial and its risible claim that the defense would not have stricken her even if she had disclosed the extensive information about her victimization and the criminal and substance abuse history she illegally withheld at voir dire. Leaving aside the questionable legal merits of that claim, it has now been extensively tested. Ms. Bochnak was examined at a deposition that lasted four hours. Alex Bunin, lead trial counsel for Mr. Fell, was examined for two hours. Gene Primomo, who conducted the voir dire of Juror #162, was examined for over an hour. The Government has not complained (nor could it) about the depositions of the trial lawyers who made the decisions regarding the juror. Each trial lawyer explained the process of voir dire completely: the team did not create a profile of an ideal – or acceptable – juror, each member of the trial team separately took notes of the juror questionnaires and did not share those notes, there were no group meetings about the jurors prior to voir dire and the team did not discuss the questioning that was to be conducted of individual jurors, and the questioning lawyer got the impressions of the other members of the trial team about each juror only during the voir

2

dire of that juror himself or herself and generally after he had exhausted his initial list of questions.  Mr. Bunin and Mr. Primomo, both officers of the court, also testified that they did not like the juror venire; their peremptory strikes were exhausted before they exhausted the number of jurors they had wanted to strike.  The trial team members also testified consistently about their views with regard to Juror #162.  They did not like her.  They did not move to strike her for cause because she withheld information and lied at voir dire.  And they did not exercise a peremptory strike because – based on the limited and false information she provided – she did not appear to be as bad a juror (albeit a bad juror) as other jurors on the venire.  We have attached pages of the relevant transcripts and we ask the Court to review those transcripts.

Even apart from that failing, the Government's motion is meritless.  The Government makes two claims.  First, the Government claims that Mr. Fell has failed to comply with his discovery obligations.  Gov't Mot. at 6.  Second, the Government claims that counsel for Mr. Fell obstructed the deposition of Ms. Bochnak by objecting to questions not pertaining to Jurors #162, #143 or #26.  Gov't Mot. at 1.  Neither has merit.

The first claim is wrong.  Until the eve of Ms. Bochnak's deposition, the Government's discovery requests regarding jury selection were explicitly limited to those documents pertaining to Juror #162.  Mr. Fell produced all documents responsive to those requests located in trial counsel's files on January 16, 2014.  Mr. Fell subsequently obtained Ms. Bochnak's work product regarding jury selection, and produced Ms. Bochnak's work product relating to Juror #162 on February 7 and February 12.  The productions were complete.  In a subpoena directed to Ms. Bochnak on March 5, the Government requested the production of "[a]ll general work product . . . generated in connection with the jury selection process in United States v. Donald Fell . . . and any specific work product as described above related to Juror 162,

143, 26 and 27."   Mr. Fell had already produced the work product related to Juror #162.  Prior to the commencement of  Ms. Bochnak's deposition on March 6, counsel for Mr. Fell produced the remaining work product as it related to Jurors #143, #26, and #27.  Everything arguably relevant has been produced.

The second claim is equally baseless.  Counsel for the Government improperly sought to exceed the scope of the deposition that was dictated by the Court and agreed to by the parties at the status conference on February 26, 2014, and improperly sought to invade Mr. Fell's non-waived attorney client privilege and associated work product protection.  Mr. Fell's counsel objected to that invasion.  Further, prior to the depositions of Mr. Primomo and Mr. Bunin, which followed the deposition of Ms. Bochnak, Mr. Fell's counsel conferred with counsel for the Government and permitted Government counsel to inquire into the areas which were the subject of dispute in Ms. Bochnak's deposition, and which were outside the previously agreed upon scope of the depositions.  The result of those inquiries demonstrates that the reopening of Ms. Bochnak's deposition would be a pointless waste of time.

ARGUMENT

**I.      Mr. Fell Has Complied with His Discovery Obligations**

      A.      <u>Mr. Fell Produced All Documents Regarding The Jurors At Issue</u>

Mr. Fell made a production of trial counsel's documents related to the composition of voir dire questionnaires, including the first set of documents related to Beth Bochnak, Mr. Fell's jury consultant at trial, on November 1, 2013, over four months ago and long before the continuation of the juror hearing was ordered.  Included with those documents was a privilege log documenting what had been withheld from production on the basis of privilege.  The privilege log informed the Government that, among other things, counsel for Mr.

4

Fell had withheld non-responsive attorney work product pertaining to voir dire of individual jurors.

On January 7, 2014, the Government asked counsel for Mr. Fell to assist it in locating produced documents relating to jurors. Mr. Fell's counsel did so, and reiterated that Mr. Fell had withheld as privileged all documents pertaining to the voir dire of individual jurors:

> Please note that, as indicated by the privilege log which you were sent on November 1, 2013, a copy of which is also attached, <u>we have been withholding as privileged documents reflecting attorney work product pertaining to the voir dire of individual jurors.</u> We would welcome any explanation from you how the views of any member of the defense team as to an individual juror have been put at issue by the juror misconduct claims. Separately, we do not have Ms. Bochnak's files concerning the voir dire of individual jurors, but have requested them from her.
>
> We hope this addresses your concern. If not, <u>we are prepared to meet and confer and to reconsider our position as appropriate.</u>

Email from Dana Berkowitz to Bill Darrow, dated Jan. 8, 2014 (emphases added), Declaration of Lilia I. Toson in Support of Opposition of Donald Fell to the Government's Expedited Motion to Compel Continuation of Deposition ("Toson Decl."), Ex. 1.

The Government responded by requesting documents related to the individual voir dire of Juror #162. Email from Bill Darrow to Dana Berkowitz, dated Jan. 9, 2014, Toson Decl., Ex. 2 ("[I]t is our belief as to Juror 162 that during voir dire trial counsel was in a position to question her further regarding her son's record and history. We suspect that they may have elected not to pursue the issue because they viewed her as a favorable juror. We believe that we should be permitted to review related documents."); Email from Bill Darrow to Cathleen Price, dated Jan. 10, 2014, Toson Decl., Ex. 3 ("<u>Further on our request for the trial team's Juror 162 records,</u> we don't understand how on the one hand you can argue that counsel would have moved to strike her for cause had he known she was the victim of sexual abuse, and on the other, argue

that documents memorializing counsel's views of her are not relevant.  If the question is what counsel would have done, then information about what counsel was (sic) thought about it at the time seems relevant").  Rather than burden the Court with the issue how such documents could be relevant to the claim of juror misconduct, counsel for Fell simply agreed and produced the requested documents concerning Juror #162.  It also explained that certain of the documents that referenced jurors whose conduct was not at issue had been redacted.  See Email from Dana Berkowitz to Bill Darrow, dated Jan. 16, 2014, Toson Decl., Ex. 4 ("We enclose the documents with respect to Juror #162 that you have requested.  These documents consist of evaluation forms of Juror 162 prepared by counsel, as well as a chart collecting counsel's ratings of juror 162.  We have redacted the content of the chart as it pertains to jurors other than those for whom the Court has ordered a hearing." (emphasis added)).

        After obtaining the work product of Ms. Bochnak as it related to Juror #162, Mr. Fell produced that to the Government in two sets, the first provided on February 7.  Email from Scott Buell to Bill Darrow, dated Feb. 7, 2014, Toson Decl., Ex. 5.  The Government responded:

> Regarding the jury consultant, as we discussed this morning, could you please ask your team to review files to ensure that there are not more trial team work papers on Juror 162?  We have trouble believing that the only document generated by the jury consultant on a sitting juror was the two-sided juror form also used by the lawyers (disclosed last week).

Email from Bill Darrow to Lewis Liman, dated Feb. 11, 2014, Toson Decl., Ex. 6 (emphasis added).  After conducting the requested review, counsel for Mr. Fell produced additional documents relating to Juror #162, noting for the second time that the documents were redacted.  Email from Scott Buell to Bill Darrow, dated Feb. 12, 2014, Toson Decl., Ex. 7 ("The attached documents are charts collecting counsel's ratings of Juror 162 as well as certain other information.  We have redacted the content of the chart as it pertains to jurors other than those

for whom the Court has ordered a hearing.  Our review has identified no other documents reflecting work product by the consultant with respect to Juror 162.  This also responds to your email of yesterday to Lewis with respect to documents regarding Juror 162 in the possession of trial counsel's jury consultant." (emphases added)).

The Government never objected to the scope of these productions or to the disclosure by counsel for Mr. Fell that counsel had redacted or withheld documents unrelated to the four jurors as to which Mr. Fell had made claims.  Nor, prior to the eve of Ms. Bochnak's deposition, did it ever make any additional requests for documents regarding the jurors.

B.    The Government Is Not Entitled To Documents Beyond Those Relating To the Jurors At Issue

The day before Ms. Bochnak's deposition, the Government reversed course and for the first time propounded a subpoena on Ms. Bochnak, asking Ms. Bochnak for: "All general work product, including any notes, reports, outlines and tables generated in connection with the jury selection process in United States v. Donald Fell, Crim. No. 01-12, District of Vermont; and any specific work product as described above related to Jurors #162, #143, #26 and #27. In addition, any electronic communications with trial counsel for Donald Fell."  At the outset of Ms. Bochnak's deposition, counsel for Mr. Fell provided the remainder of Ms. Bochnak's documents relating to the four jurors as to which Mr. Fell had made claims.  Transcript of Deposition of Beth Bochnak held on Mar. 6, 2014 ("Bochnak Dep. Tr."), Toson Decl., Ex. 8, at 3.  After consideration, we have produced a strike list that, in addition to the name of a juror at issue, also shows the number of prospective jurors on that list.

The Government is not entitled to the remainder of these documents.  Mr. Fell has produced every non-privileged document responsive to the Government's prior requests. The remaining documents are privileged.  The attorney work product immunity protects documents

and tangible things that were prepared in anticipation of litigation or for trial by or for Mr. Fell or his representatives, including his attorneys and jury consultant. Fed. R. Civ. P. 26(b)(3); see also Hickman v. Taylor, 329 U.S. 495, 507 (1947). The attorney-client privilege protects communications between Mr. Fell and his lawyers reflecting requests or provisions of legal advice. See United States v. United Shoe Machinery Corp., 89 F. Supp. 357 (D. Mass. 1950). The Government argues that Mr. Fell has waived these privileges entirely. However, Mr. Fell has not waived privilege with respect to the entirety of trial counsel's representation by raising discrete claims of ineffective assistance of counsel. See Bittaker v. Woodford, 331 F.3d 715, 717-20 (9th Cir. 2003) (en banc) (scope of any waiver is "no broader than needed to ensure the fairness of the proceedings"). The Government has provided no authority – and counsel for Mr. Fell has identified none – standing for the proposition that a claim by a movant under 28 U.S.C. § 2255 that a juror lied at voir dire, and that truthful responses would have provided a valid basis for a challenge for cause, effects a waiver of that movant's attorney-client privilege, or of the protection of the work product of that movant's trial counsel including work product with respect to jurors not challenged.

The requested documents are also irrelevant. Under the Government's stated theory of the case, the documents would be relevant only if they tended to show that trial counsel had created an ideal profile of a juror which Juror #162 met and/or that trial counsel wanted Juror #162 on the jury. The undisputed evidence from each member of the trial team, including two officers of the court, is that neither of those things is true. "In a motion to compel, it is incumbent upon the moving party to provide the necessary linkage between the discovery sought and the claims brought and/or defenses asserted in the case." Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.p.A., 2009 WL 3757054 (E.D.N.Y. Nov. 9, 2009). The Government has not proven

8

any such linkage between these documents and its defenses—and the testimony in the record shows that there is none.

The Government also cannot show that the evidence now sought is needed for its defense against Mr. Fell's claims because it has waived that opportunity. The Court has set a hearing on the juror misconduct claims at which Mr. Fell will introduce numerous exhibits. The parties agreed and informed the Court at the February 26, 2014 status conference that they would exchange exhibit and witness lists on March 7, 2014 and the Court so directed. At that time, each side had the opportunity to raise outstanding issues, including those regarding discovery. As shown above, the Government knew what documents Mr. Fell was turning over and which it was not: it was turning over the documents relating to Juror #162. It did not then raise any objection, presumably because it had none. Nor did the Government indicate when exhibit lists were due that it intended to offer any documents with respect to jury selection – or that there was even an issue with respect to the documents regarding jury selection: indeed, it did not designate any exhibits it would offer. Thus, even were additional documents to be turned over, they would have no purpose: the Government had ample time prior to the hearing to raise these issues and to designate additional exhibits. The hearing is scheduled to begin on Tuesday and conclude on Wednesday. It is unfair in the extreme to allow the Government to raise this issue at this late date when it had ample time to do so earlier and thus presumably to delay the hearing.

II.     **Counsel for Mr. Fell Properly Objected to the Government's Attempts to Violate Mr. Fell's Privileges and to Exceed the Court's Limitations on the Scope of Ms. Bochnak's Deposition**

The Government's questioning at the deposition of Beth Bochnak sought to invade non-waived attorney-client privilege and attorney work product belonging to Mr. Fell, and exceeded the scope of the depositions as set out by the Court at the February 26 status

conference.  Further, there is no reason to believe that the reopening of Ms. Bochnak's

deposition will lead to the discovery of evidence relevant to any claim or defense.

The Government has repeatedly asserted one basis for its depositions of Mr. Fell's

trial team: that it believes that the trial team liked Juror #162 and wanted her on the jury.  Email

from Bill Darrow to Dana Berkowitz, dated Jan. 9, 2014, Toson Decl., Ex. 2 (stating "belief as to

Juror 162 that during voir dire trial counsel was in a position to question her further regarding

her son's record and history"  and suspicion that trial counsel "may have elected not to pursue the

issue because they viewed her as a favorable juror."); accord Email from Bill Darrow to Cathleen

Price, dated Jan. 10, 2014, Toson Decl., Ex. 3.  The Government has repeated this basis in its

pleadings.  In its Response to Fell's Brief regarding the Juror Misconduct claims, the

Government argued:

> In addition, the information provided was certainly sufficient for Fell to inquire
> further into her son's criminal conduct during voir dire, which Fell elected not to
> do. Likely, because as the Second Circuit has noted, a prospective juror with a
> family member who has been convicted of a crime is likely to be biased in favor
> of the defendant. *Stewart, supra*. Particularly in this instance where the family
> member was the juror's son. Moreover, in this case, Juror 162 was not a strong
> death juror, that is, she was also a favorable juror for the defense based on her
> views on the death penalty. Therefore, this is a juror that Fell wanted on the jury.
> Fell, having elected not to inquire further during voir dire about her son's criminal
> history, cannot now complain that Juror 162's disclosure was insufficient, much
> less intentionally so.

Gov't Response (Dkt. 465) at 18-19.

This line of argument has no basis in law or fact.  The trial team's views about a

juror are irrelevant to a McDonough claim.  "In McDonough Power Equipment, the United

States Supreme Court held that a party seeking a new trial based on juror nondisclosure or

misstatements must satisfy a two-part test. '[A] party must first demonstrate that a juror failed to

answer honestly a material question on voir dire, and then further show that a correct response

would have provided a valid basis for a challenge for cause.'"  May 10, 2013 Opinion and Order

10

on Claim XXII of Mr. Fell's § 2255 Motion at 5 (quoting McDonough Power Equip., Inc. v.

Greenwood, 464 U.S. 548, 548 (1984)). "The district court then must determine if it would have

granted the hypothetical challenge." United States v. Greer, 285 F. 3d 158, 171 (2d Cir. 2000).

At no point in this test must the court determine whether—based on the incomplete and

misleading information provided by the juror—Mr. Fell's trial counsel viewed this juror

favorably. Nor must the Court determine whether counsel subjectively would have moved to

strike her for cause.

> THE COURT: Well, as far as the scope of the deposition, at this
> point he is not being deposed upon all of the issues raised by your
> 225 -- 2255 petition. He is only being deposed in regard to his
> reaction to some of the information which has come out from some
> of the jurors, in particular, whether in fact he would have exercised
> a challenge for cause or peremptory challenge; is that right?
>
> MR. LIMAN: That's -- that's correct, your Honor. And --
>
> THE COURT: Is that correct?
>
> MR. LIMAN: And I --
>
> THE COURT: Is that correct from the government?
>
> MS. RODRIGUEZ-COSS: Yes, sir, that's correct.
>
> THE COURT: So that would be a short – that would be short.

Hr'g Tr. At 13-14, Feb. 26, 2014. As the Court has noted previously, there are also general

privacy concerns about permitting general inquiry into other jurors when – as the issues are

currently framed – there are only 3 jurors at issue. Memorandum Opinion and Order: Claim

XXII: Juror Misconduct, May 10, 2013 at 19 (ordering "limited inquiry" of jurors at issue and

11

ordering the parties to propose procedures for that inquiry considering "the need to safeguard the privacy of jurors and the deliberative process.").

Additionally, during the deposition, when counsel for Mr. Fell asked the Government to rephrase questions to limit them to the four jurors at issue, the Government did so. See, e.g., Bochnak Tr., Toson Decl., Ex. 8, at 27. Indeed, the Government fails to identify a single question where the instruction not to answer from counsel for Mr. Fell prevented it from obtaining evidence that is any way relevant to the pending hearing, or any question when re-asked in a continued deposition without the instruction would provide any such evidence. Counsel for Mr. Fell also initiated a break to discuss the scope of the deposition. Bochnak Tr., Toson Decl., Ex. 8, at 37. When the deposition reconvened, the Government agreed to begin again with the limitation to the relevant jurors in mind.

> MR. BUELL: Do you want to read back the last question? I think I can give you where we believe she can answer.
> So if the question was whether she prepared something like that for specific jurors, I think we would permit her to answer the question if you limit it to did she prepare something like this for the four jurors as to which we've made claims in the 2255 motion.
>
> MS. RODRIGUEZ-COSS: Okay. Let's start there.

Bochnak Dep. Tr., Toson Decl., Ex. 8, at 38. Presumably, it was satisfied then.

Moreover, even if the questions the Government has raised were legally relevant and this motion were made for reasons other than delay, the questions asked by the Government inquire into privileged and protected information that has not been waived. The presumption is that both the attorney-client privilege and the attorney work product immunity protect the documents and things prepared for voir dire about which Ms Bochnak would testify. See United Shoe Machinery Corp., 89 F. Supp. at 357; Fed. R. Civ. P. 26(b)(3); see also Hickman, 329 U.S. at 507. Mr. Fell has only waived these privileges with respect to the jurors whose conduct he has

put at issue.  See Bittaker, 331 F.3d at 717-20 (scope of any waiver is "no broader than needed to ensure the fairness of the proceedings").

For these reasons, counsel for Mr. Fell objected when the Government's questioning exceeded the scope of the deposition laid out by the Court and agreed upon by the parties – jury selection issues pertaining to the jurors as to which Mr. Fell made claims – and intruded into non-waived privilege and work product:

> MR. BUELL: I think the court has been pretty clear about what the scope of these depositions are.
>
> MS. RODRIGUEZ-COSS: The court has been anything but clear about the scope of the hearing or the depositions, the discovery, or anything else that has taken place in this case.
>
> …
>
> MR. BUELL: It is our position that [Ms. Bochnak's] work product and the attorney-client privilege associated with that and trial counsel's work product isn't waived outside of those [four] jurors [as to which Mr. Fell has made claims].
>
> Bochnak Dep. Tr. at 14-15.

These objections, and the subsequent instructions to the witness to not answer questions that exceeded the agreed-upon scope of the deposition, or that intruded into non-waived attorney-client privilege and attorney work product, were proper.  The Court's instructions regarding the scope of these depositions were clear, and counsel for Mr. Fell has consistently maintained that information regarding the voir dire of jurors not among those as to which Mr. Fell has made claims remains privileged and protected.  See supra pp. 4-8.  The Federal Rules of Civil Procedure dictate that: "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Fed. R. Civ. P. 30(c)(2).  Counsel for Mr. Fell only

instructed Ms. Bochnak not to answer when necessary to preserve a privilege and to enforce the limitation ordered by the Court on the scope of the trial team depositions.

Finally, any further deposition of Ms. Bochnak would be a waste. As the Government has conceded, Gov't Mot. at 5, following the deposition of Ms. Bochnak, where the Government's questioning proceeded beyond the scope that had been set forth by the Court and agreed upon by the parties, counsel for Mr. Fell agreed to permit the Government to inquire into the trial team's views and strategies regarding jury selection outside of the four jurors as to which Mr. Fell made claims. Counsel for Mr. Fell did so while expressly preserving the argument that the objections and instructions made during the deposition of Ms. Bochnak were proper, and expressly preserving any objection to that scope of questioning based on attorney-client privilege and work product protection.

Accordingly, the Government had the opportunity to fully explore this issue with each of the lawyers deposed. The testimony of Mr. Primomo and Mr. Bunin demonstrates that the Government has no basis for its claims that the trial team had a profile that Juror #162 fit, that Juror #162 had characteristics that the trial team viewed favorably, or that the trial team wanted Juror #162 on the jury. Indeed, they have uniformly testified that the trial team did not have any juror profile at all, in the manner proposed by the Government, much less one that Juror #162 fit.

In addition, every member of the trial team has testified that they did not view Juror #162 favorably. Ms. Bochnak testified that she did not think that the juror would be favorable or sympathetic.

Q    And did you find [Juror #162] to be favorable to your client?

A    No we did not.

14

. . .

A       We did not like this juror.

Bochnak Dep. Tr., Toson Decl., Ex. 8, at 77.

Q       I am asking if [Juror #162] was – you found her to be someone who would be sympathetic to your client?

A       No we did not.

Q       You did not think she would be sympathetic to your client?

A       No, we did not.

Q       Based on her responses in the questionnaire and the voir dire?

A       Correct.

Q       You did not?

A       We did not.

Bochnak Dep. Tr., Toson Decl., Ex. 8, at 107-08; see also id. at 126.  She testified that she did not think that the juror was willing to hear mitigation evidence.  Id. at 149.  Ms. Bochnak's conclusion was clear: "[S]he was not a good juror for us."  Id. at 150, 151.  She further testified that if she had known more of the true facts, she would have considered the juror "a much worse juror for [Mr. Fell]."  Id. at 158.

Q       Sure.  So the question is: If you were left with the understanding that her son had a criminal history that was repeated or chronic and recent to voir dire, do you think that those facts would have made Juror 162 less able to hear mitigation evidence in this case?

A       Yes, definitely.

Q       Do you think it would have made her unable to hear mitigation evidence?

A       I think it would have made her mitigation impaired.

Id. at 159-60.

Mr. Primomo also testified that he had a negative view of Juror #162.  Transcript of Deposition of Gene Primomo held on Mar. 11, 2014 ("Primomo Dep. Tr")., Toson Decl., Ex. 9, at 34, 37.  He also did not think she would be receptive to mitigation the defense intended to offer.

> Q.      Okay.  And did you conclude that she would be receptive to that mitigating circumstance?
>
> A.      Not really.

Id. at 41-42.  He testified:

> Q.      The Government has asserted in its pleadings that trial counsel liked Juror 162 and wanted her on the ultimate panel; is that true?
>
> A.      That defense counsel wanted her on the jury?
>
> Q.      Yeah, because of some of the reasons Mr. Darrow has stated.
>
> A.      No, that's not true.

Id. at 47-48.

Mr. Bunin testified to the same effect.  He testified that he had a negative impression of Juror #162:

> A.      . . . I wrote and this is not something she said, this is my impression, "Wants to get on the jury."
>
> And below here, this is during Gene's questioning, so when it says "probably could" and then I have "- sincere?"  I'm not sure she's being sincere in her answers to him, especially when she answers "probably" and then I pointed out it was hard to look at Donny.  She would not even look over toward our table.  And I don't remember much about her, but I have that particular memory that she was just staring straight at Gene and she would not look over at us."

Transcript of Deposition of Alex Bunin held on Mar. 14, 2014 ("Bunin Dep. Tr."), Toson Decl., Ex. 10, at 67.  Mr. Bunin testified:

> Q.      [Juror #162] was not among the worst of the worst?

16

A.    If we had more strikes, we would have struck her.

Q.    If you had more strikes you would have struck her after how many? Where was she on your list?

A.    I don't remember.  I just remember I didn't like her.

Q.    She wasn't in the top 52.  But she was an alternate?

A.    We didn't like most of the folks that got left.

Q.    How many did you like, Mr. Bunin?

A.    I can't recall liking any of them and I really didn't like her.

Id. at 102-03.

Each of the members of the trial team who testified to the issue testified that there were simply not enough strikes to strike Juror #162.  Bochnak Dep. Tr., Toson Decl., Ex. 8, at 150 ("Ultimately, we decide we can't strike her because there are worse people.  I'd be happy – I mean, there are examples in the transcript I'm sure that you could see that would indicate that she was not a good juror for us."); Bunin Dep. Tr., Toson Decl., Ex. 10, at 102-03 ("If we had more strikes, we would have struck her.").

The Government has not met its burden in bringing a motion to compel because the information sought from a continuation of Ms. Bochnak's deposition is of no relevance to the juror misconduct issues.  "Disclosure should not be directed simply to permit a fishing expedition."  United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir.1974).  "In a motion to compel, it is incumbent upon the moving party to provide the necessary linkage between the discovery sought and the claims brought and/or defenses asserted in the case."  Palm Bay Int'l, Inc., 2009 WL 3757054.  The Government can show no link between a continued deposition and its defense against Mr. Fell's claims.  Consistent with both Mr. Bunin and Mr. Primomo, Ms. Bochnak has already testified that the trial team did not want Juror #162 on the jury.  For the

17

Government's proposition to be accepted, one would have to accept the notion that all three witnesses – two of them officers of the Court – committed perjury.

A further deposition would be pointless for an additional reason. The Court has set a hearing on the juror misconduct claims at which Mr. Fell will call seven witnesses including Mr. Primomo. Mr. Fell made Ms. Bochnak available well before witness lists were due and the Government took her deposition prior to the date witness lists were due. It did not express any intent to call Ms. Bochnak at a hearing (nor did it reserve the right to do so). Thus, a continued deposition should be denied because – even if the Government took that deposition – it waived the right to call Ms. Bochnak at the hearing which we expect will conclude on Wednesday.

## CONCLUSION

For the reasons stated herein, Mr. Fell respectfully requests that the Government's Expedited Motion to Compel Continuation of Deposition be denied in its entirety.

18

RESPECTFULLY SUBMITTED,

Dated:  March 17, 2014
Burlington, Vermont

/s/ Richard Rubin
RICHARD RUBIN
Rubin, Kidney, Myer & DeWolfe
237 N. Main Street
Barre, Vermont, 05641-4125
(802) 479-2514
Fax: (802) 479-2516

Dated:  March 17, 2014
New York, New York

/s/ Lewis J. Liman
LEWIS J. LIMAN
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2550
Fax: (212) 225-3999

Dated:  March 17, 2014
New York, New York

/s/ Cathleen Price
CATHLEEN PRICE
P.O. Box 321762
New York, New York 10032
(212) 998-6193

*Counsel for Donald Fell*

## CERTIFICATE OF SERVICE

I, Lewis Liman, an attorney admitted to practice in the State of New York and a partner of the firm Cleary Gottlieb Steen & Hamilton LLP, hereby certify that on March 17, 2014, I electronically filed with the Clerk of the Court the Opposition of Donald Fell to the Government's Expedited Motion to Compel Continuation of Deposition. The CM/ECF system will provide service of such filings via Notice of Electronic Filing ("NEF") to all parties with an e-mail address of record who appeared and consented to electronic service in this action.

Dated: March 17, 2014
New York, New York

/s/ Lewis J. Liman
Lewis J. Liman
Cleary Gottlieb Steen & Hamilton LLP
1 Liberty Plaza
New York, New York 10006
(212) 225-2550
Fax: (212) 225-3999