UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

-------------------------------------------------------------------- X
    :
DONALD FELL,    :
    :
        Movant,    :
    :    2:01-CR-12-01
        - against -    :
    :
UNITED STATES OF AMERICA,    :
    :
        Respondent.    :
    :
-------------------------------------------------------------------- X


## REPLY TO GOVERNMENT'S OBJECTIONS TO MR. FELL'S PROPOSED EXHIIBTS

LEWIS J. LIMAN
Cleary Gottlieb Steen &
Hamilton LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

CATHLEEN PRICE
P.O. Box 321762
New York, New York 10032
(212) 998-6193

RICHARD RUBIN
Rubin, Kidney, Myer & DeWolfe
237 N. Main Street
Barre, Vermont, 05641-4125
(802) 479-2514

Date:   April 4, 2014

*Attorneys for Donald Robert Fell, Jr.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.      The Government Waived Its Right to Object Save for Relevance .................................... 2

        EXHIBIT 8 ...................................................................................................................... 8

        EXHIBIT 9 ...................................................................................................................... 9

        EXHIBIT 16 .................................................................................................................. 12

        EXHIBIT 17 .................................................................................................................. 13

        EXHIBIT 22 .................................................................................................................. 14

        EXHIBIT 25 .................................................................................................................. 15

        EXHIBITS 30 AND 31 .................................................................................................. 17

        EXHIBIT 35 .................................................................................................................. 19

        EXHIBIT 36 .................................................................................................................. 19

        EXHIBIT 37 .................................................................................................................. 20

        EXHIBITS 39 THROUGH 41 ........................................................................................ 21

CONCLUSION .................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Butler v. Coca-Cola Refreshments USA, Inc.,
No. 12 Civ. 1971(BMC), 2013 WL 3324995 (E.D.N.Y. July 1, 2013) ............................. 7

DeMarco v. Robertson Stephens Inc.,
318 F. Supp. 2d 110 (S.D.N.Y. 2004) ................................................................. 16

NRT Metals, Inc. v. Manhattan Metals (Non–Ferrous) Ltd.,
576 F.Supp. 1046 (S.D.N.Y.1983) ...................................................................... 7

Old Chief v. United States,
519 U.S. 172 (1997) .................................................................................... 1, 12

Prince Group, Inc. v. MTS Products,
1998 WL 273099 (S.D.N.Y. May 27, 1998) ......................................................... 7

United States v. Bahlav,
2000 U.S. App. LEXIS 8843 (2d Cir. May 3, 2000) .............................................. 8

United States v. Gotti,
641 F. Supp. 283 (E.D.N.Y. 1986) ..................................................................... 8

United States v. Robinson,
560 F.2d 507 (2d Cir. 1977) ............................................................................. 10

United States v. Viserto,
596 F.2d 531 (2d. Cir. 1979) ............................................................................ 10

**Rules and Statutes**

D. Vt. L.R. 16 ............................................................................................. 2, 5

D. Vt. L.R. 16(b)(3) ....................................................................................... 6

D. Vt. L.R. 40(c) ........................................................................................... 5

Fed. R. Civ. P. 16 Advisory Committee's Note ...................................................... 6

Fed. R. Evid. 103(a)(1) ................................................................................... 8

Fed. R. Evid. 106 .......................................................................................... 12

|  | **Page(s)** |
|---|---|
| Fed. R. Evid. 401 .................................................................................................. | passim |
| Fed. R. Evid. 401 Advisory Committee's Note ................................................... | 10 |
| Fed. R. Evid. 613(b)............................................................................................. | 16,17 |
| Federal Rule of Evidence 103............................................................................... | 8 |

**Other Authorities**

| | |
|---|---|
| 2-18 Moore's Federal Practice and Procedure § 18.05(4) ................................... | 6 |
| 21 Wright & Graham, Federal Practice & Procedure § 5036.1 .......................... | 8 |
| 6A Wright & Miller, Federal Practice & Procedure § 1527 (3d ed. 2013)......................... | 7 |
| 106 Weinstein's Federal Evidence § 106.2(1)..................................................... | 12 |

## PRELIMINARY STATEMENT

Two common themes pervade the Justice Department's March 28, 2014 letter objecting to certain of the exhibits offered by movant Donald Fell at the March 18-19 hearing[1]: (1) Mr. Fell should be limited to offering just those pages of exhibits that the Government believes is necessary to make the point the *Government* would make and (2) even where the Government agrees an exhibit contains relevant evidence, the Court cannot be trusted to receive and review the exhibit in its entirety, but must be limited to a truncated record.  The Government's objections are ill-founded.  The Justice Department does not get to choose Mr. Fell's filing (it objected to Mr. Fell's amendment of the 2255 Motion and lost), nor does it get to choose how Mr. Fell will prove his case.  Mr. Fell is permitted "to prove [his] case by evidence of [his] own choice," and, "with [his] burden of persuasion needs evidentiary depth to tell a continuous story."  Old Chief v. United States, 519 U.S. 172, 186, 190 (1997).  And this is a hearing before the Court and not a trial before the Jury where the Court assuredly can be trusted to review the evidence and determine at the appropriate stage, and after briefing, what is most compelling and what is not.  Most of the exhibits were attached to the Amended 2255 Motion, Dkt. No. 422 (Oct. 23, 2013) and are public records in any event.[2]  There will also be time enough for the Government to make all of its arguments regarding weight when the parties submit post-hearing briefs 30 days after the hearing is concluded.  Mr. Fell already limited his exhibits during meet and confers; there is no basis now to limit Mr. Fell's proof at the threshold

---

[1] See Letter from U.S. Department of Justice, United States Attorney, District of Vermont, to the Honorable William K. Sessions, III, United States District Court, District of Vermont (March 28, 2014) ("Government Objections to Proposed Exhibits").  The Government objects to the admission of Exhibit 8, Exhibit 9, Exhibit 16, Exhibit 17, Exhibit 22, Exhibit 25, Exhibit 28, Exhibit 30, Exhibit 31, Exhibit 35, Exhibit 36, Exhibit 37, Exhibit 39, Exhibit 40, and Exhibit 41.  Exhibits 8 and 35 were among those admitted by the Court at the March 18-19 hearing with no objection from the Government.

[2] These are: Exhibit 9, Exhibit 16, Exhibit 17, Exhibit 22, and Exhibit 25.  Pursuant to the Court's direction, names of jurors will be redacted before the Amended 2255 Motion is filed on the public docket; no other changes will be made.  Exhibit 28, attached to the Brief in Support of an Evidentiary Hearing, Dkt. No. 451 (Dec. 16, 2013) (the "Fell Brief") with juror names redacted, is also already part of the Court record.

before the Court has a chance (after full briefing) to review that evidence and see how it all fits together.

<strong><u>ARGUMENT</u></strong>

**I.    The Government Waived Its Right to Object Save for Relevance**

The Government objects to three exhibits on the grounds that they contain hearsay.[3]  Those objections are waived.

Prior to the Pre-Hearing Conference, and as required by Local Rule 16, Mr. Fell provided the Government the exhibits he then intended to offer at the hearing and the parties agreed on the admissibility of each of those exhibits save for objections based on relevance. Most of the exhibits (Exhibits 9 through 28) consisted of documents alleged in Mr. Fell's not yet ruled upon Amended 2255 Motion and attached to that pleading, as well as one exhibit attached to the Brief in Support of an Evidentiary Hearing, Dkt. No. 451 (Dec. 16, 2013) (the "Fell Brief").[4]  D. Vt. L.R. 16.  The results of the mandated meet and confer process were reported to the Court by letter of February 24, 2014.  Letter from Lewis Liman to the Honorable William K. Sessions, III, United States District Court, District of Vermont (February 24, 2014) ("February 24 Letter").  The letter specifically recited:

> Local Rule 16 requires counsel to confer prior to trial about the admission of exhibits, and Local Rule 40(b) and (c) respectively require counsel to offer stipulated exhibits for admission prior to trial and, also prior to trial, to provide exhibit lists to each party, the Court, the courtroom clerk, and the court reporter.  By email letters of February 3 and February 19, 2014, counsel for Mr. Fell informed the Government of the exhibits that Mr. Fell presently intends to offer at the hearing.  (Mr. Fell has not compiled a final exhibit list; the exhibits identified to the Government consist of

---

[3] Those exhibits are Exhibit 9, Exhibit 30, and Exhibit 31.

[4] The exhibits attached to the Amended 2255 Motion are Exhibits 9 through 27.  The only exhibit not attached to the Amended 2255 Motion but attached to the Fell Brief is Exhibit 28.  The three additional exhibits that were attached to the Amended 2255 Motion were admitted into evidence at the August 15, 2013 hearing: Exhibit 3, Exhibit 3, and Exhibit 8.

> Fell Exhibits 321-343, which were attached to Mr. Fell's Amended
> 2255 Motion, Dkt. 422 (October 23, 2013), and to Mr. Fell's Brief
> in Support of an Evidentiary Hearing, Dkt. 451 (December 16,
> 2013) (the "Fell Brief"), along with media coverage involving
> Juror 162, documents evidencing Juror 162's mental hospital
> institutionalization dates and  Juror 162's civil suits, and the
> business card of one of the lawyers who interviewed Juror 143 in
> 2010.)  In conversations of February 11, 2014, by email of
> February 19, 2014, and by meet and confer on February 20, 2014,
> the Government informed 2255 counsel that it did not object to the
> authenticity and admissibility (save for issues of relevance) of
> these exhibits.  The Government has not yet provided Mr. Fell with
> a list of the exhibits it intends to offer.

February 24 Letter at 2.[5]

Not only did the Government agree before the Pre-Hearing Conference that objections would be limited to relevance, but – when given the opportunity to object to that agreement during the Pre-Hearing Conference, it did not.  As the Court will recall, it walked through each of the items on the February 24 Letter during the Conference including the exchange of witness lists and exhibits.  Tr. Feb. 26, 2014 of Pre-Hr'g Conf., Dkt. No. 474 ("Pre-Hr'g Conf. Tr."), at 17:5-13.  It gave both sides the opportunity to talk or to comment during the hearing.  And it asked both sides whether there were any other issues.  Mr. Liman, on behalf of Mr. Fell, responded: "Not from Mr. Fell."  Pre-Hr'g Conf. Tr. at 29:18-19.  The United States Attorney for the District of Vermont himself, representing the Government at the Conference, also indicated there were none and thanked the Court.  Pre-Hr'g Conf. Tr. at 30:1-2.

That agreement was the product of extensive discussion and work between the parties even before the Pre-Hearing Conference.  On February 3, 2014, before the Pre-Hearing Conference was even scheduled and seeking to narrow the length of the hearing and organize its presentation at that hearing, counsel for Mr. Fell first informed the Government of certain of the

---

[5] The Government did not ignore the February 24 Letter; it raised an issue with respect to the interview of Court personnel but expressed no disagreement with respect to Mr. Fell's report of this agreement between the parties – it had made that agreement.  See Ex. 6.

exhibits that he intended to offer at the hearing and asked the Government to "[p]lease let us know as soon as possible whether [it] will object to the authenticity or admissibility (save on grounds of relevance, the objection for which would be preserved) to any of [those] documents." Ex. 1. At the time, the Court had not yet ruled on whether Mr. Fell could amend the 2255 Motion, and the Government opposed that motion. The Government communicated that it did not intend to object to the authenticity or admissibility (save on grounds of relevance) of any of the exhibits.[6]

On February 19, 2014, the AUSA reiterated to counsel for Mr. Fell that "[W]e do not anticipate authenticity/admissibility objections to the documents forwarded by your office. We await the additional documents. Upon receipt we'll review and confirm our position." See Ex. 4. Virtually simultaneously, also on February 19, Mr. Fell identified certain additional exhibits – not attached to the Amended 2255 Motion or the Fell Brief – that he intended to offer at the hearing. Those are Exhibits 29 through 33. See Ex. 5.

The following day, as promised in the February 11 email to the Court, the parties met and conferred with respect to exhibits. The parties reached agreement that the Government would agree to the admissibility and authenticity of the February 3 exhibits or the February 19 exhibits (save for the still-preserved objections as to relevancy with respect to exhibits attached to the still not ruled upon Amended 2255 Motion). As noted, that is what was reported to the Court.

---

[6] The Government's agreement was reflected in Mr. Fell's email to the Court of February 11, 2014, copying all parties and requesting the Pre-Hearing Conference. See Ex. 2. Counsel for Mr. Fell reported (without objection): "We have conferred with Bill Darrow of the Government who has informed us that, while he cannot make a final commitment, he does not anticipate objecting to the authenticity or admissibility (save on grounds of relevance) of the exhibits submitted with our Amended Motion (Dkt. 422) and our Brief in Support of an Evidentiary Hearing on the juror claim (Dkt. 451)." Id. Both the Assistant United States Attorney from Vermont assigned to this matter ("AUSA") and the Justice Department lawyer were copied on that email. The Justice Department lawyer responded the following day, on February 12, with respect to scheduling – but voiced no objection to the report of the agreement. See Ex. 3.

It is also that shared understanding on the basis of which Mr. Fell planned for and proceeded to the March 18-19 hearing. As required by Local Rule 40(c) and the Court's order at the Pre-Hearing Conference, on March 7 he provided exhibit lists to the Government, the Court, the courtroom clerk, and the court reporter. D. Vt. L.R. 40(c). He prominently indicated on that list, and by cover letter to the Government, copying the Court, that "[t]he parties have stipulated to the authenticity and admissibility of Exhibits 9 through 33…, save any objections as to relevance, which the Government has preserved." Letter from Lewis Liman to Jacabed Rodriguez-Coss, U.S. Department of Justice, and William B. Darrow, United States Attorney's Office for the District of Vermont (March 7, 2014); see also Donald Fell Exhibit List, Juror Hearing. The Government not once voiced disagreement with that understanding – even though it was also orally mentioned several times during the hearing.[7]

It would be a violation of the Federal Rules and the Local Rules to permit the Government, now having heard the evidence at the hearing, to renege on that agreement and to challenge the admissibility of evidence by Mr. Fell on grounds it specifically and explicitly waived prior to the hearing and before it heard the evidence. Local Rules 16(a), 16(b)(1), 16(b)(3) require that, prior to a hearing, the parties must meet and confer, identify witnesses expected to be called and the nature of their testimony, prepare and exchange exhibit lists, and attend a final pretrial conference at which the parties are to identify any objections, reach agreements narrowing the issues in contention, and establish an efficient procedure for presentation of the parties' cases at the hearing. See D. Vt. L.R. 16. Among those issues that counsel must be prepared to discuss are "evidentiary or other matters parties wish the court to consider before trial" and "evidentiary issues that would consume a significant amount of time

---

[7] The court reporter for the District of Vermont has not yet prepared a final copy of the transcript of the March 18-19 hearing, but Mr. Fell is prepared to provide a citation when such transcript is available.

and disrupt the flow of the trial." D. Vt. L.R. 16(b)(3). The entire design of Local Rules 16 and 40 is that the parties resolve evidentiary disputes *prior* to trial and identify, again prior to trial, any disputes as to exhibits it would like the Court to resolve. The purpose of a pre-hearing conference is to "improve the quality of justice rendered in the federal courts by sharpening the preparation and presentation of cases, [and] tending to eliminate trial surprise." Fed. R. Civ. P. 16 Advisory Committee's Note. "The conference also enables the parties, under the supervision of the court, to substantiate the real issues and eliminate those that are without merit or not really controverted." 2-18 Moore's Federal Practice and Procedure § 18.05(4).

Mr. Fell – along with the Government (prior to the present filing) followed those Rules. The parties meet and conferred, agreed on exhibits (including portions of exhibits to be dropped) and agreed on the issues to be presented to the Court – and those (including objections on grounds other than Fed. R. Evid. 401) that would not be presented. And Mr. Fell proceeded to trial on the basis of those understandings. He organized his presentation of evidence on the basis of the agreement that the parties had reached and the representations made – and not disputed – at the Pre-Hearing Conference. He chose witnesses to call, and the order of those witnesses, based on the Government's agreements. He also forewent the opportunity to call other witnesses (persons who may now be able to be located only with some difficulty) based on the Government's representations and the parties' agreements.

It would violate those Rules, and undermine their purpose, for one of the parties to backtrack and raise objections specifically foregone at the Pre-Hearing Conference, after both of the parties worked so hard to reach an agreement with respect to exhibits, reported that agreement to the Court, and proceeded to trial on the basis of that agreement. In that circumstance, present here, the objections are waived and the Court has more than ample

discretion to honor the parties' agreement.  See Butler v. Coca-Cola Refreshments USA, Inc., No. 12 Civ. 1971(BMC), 2013 WL 3324995, at *2 (E.D.N.Y. July 1, 2013) ("A premotion hearing falls under the provisions of Rule 16, and concessions made at the conference for the purpose of narrowing the issues in a case are fully binding in subsequent proceedings."); 6A Wright & Miller, Federal Practice & Procedure § 1527 (3d ed. 2013) ("Courts generally hold stipulations, agreements, or statements of counsel made at the pretrial conference binding for purposes of the trial.  This practice furthers the Rule 16 policy of limiting the trial to those issues that are actually in dispute without impairing the basic rights of the litigants."); Cf. NRT Metals, Inc. v. Manhattan Metals (Non–Ferrous) Ltd., 576 F.Supp. 1046, 1053 (S.D.N.Y.1983) ("The policy behind Rule 16—to limit the trial to those issues that are actually in dispute—would be crippled were pre-trial orders held to have no binding effect upon the parties."); Prince Group, Inc. v. MTS Products, 1998 WL 273099, at *3 (S.D.N.Y. May 27, 1998) ("[P]arties should be able to rely upon [pretrial] submissions to define all of the foreseeable legal issues raised in a particular case and they should have the binding effect of judicial admissions.").

**EXHIBIT 8**

The Government objects to Exhibit 8 "being admitted without the corresponding supporting documentation."  Government Objections to Proposed Exhibits at 1.  The supporting documentation for Exhibit 8 is contained in Exhibit 12, Exhibit 13, Exhibit 14, and Exhibit 15, to which the Government does not object, and in Exhibit 7, which was admitted into evidence at the August 15, 2013 hearing.  Exhibit 8 was admitted into evidence at the March 18-19 hearing with no objection and thus the Government's belated objection is moot.  See Official Exhibit and

7

Witness List for Continuation of Hearing Regarding Juror Misconduct, Dkt. No. 486 (March 21, 2014) ("March 2014 Hearing Exhibit List").[8]

**EXHIBIT 9**

The Government objects to Exhibit 9 on the grounds that certain of the information in that exhibit is hearsay or irrelevant.  These objections are baseless.

The Government has waived any hearsay objection to this exhibit.  Moreover, the hearsay objections are without merit and should be overruled.  The Government objects that the exhibit "includes the entire docket sheet, motions and orders from this divorce action, *some* of which reveals private information that bears no relevance on the issues before this Court.  The information is hearsay, and in *some* cases, double and triple hearsay."  Government Objections to Proposed Exhibits at 2 (emphasis added).  As an initial matter, court records, including docket sheets, are classic examples of public records admissible under Fed. R. Evid. 803(8).  See United States v. Gotti, 641 F. Supp. 283, 290 (E.D.N.Y. 1986) (stating that the "court is a 'public office'" and that a docket sheet is "another public record" for purposes of 803(8)).  More fundamentally, the vast majority of the information in the docket sheet, motions, and orders offered by Mr. Fell is not hearsay – in that it is not offered for its truth but rather to show the knowledge or state of awareness of the declarant.[9]

---

[8] In any event, Mr. Fell has produced a document to the Government noting by exhibit number each exhibit wherein the supporting documentation for Exhibit 8 is located.

[9] The Government objections to Exhibit 9 are exceedingly – and impermissibly – vague.  Federal Rule of Evidence 103 requires that, in order to preserve a claim of error in a ruling to admit or exclude evidence, the error must affect a substantial right of the party, and the objecting party must timely object and state "the specific ground" for the objection.  Fed. R. Evid. 103(a)(1).  Lack of specificity in a party's objections prejudices the opposing party's ability to respond to such an objection, and impedes the Court's ability to rule with respect thereto.  See United States v. Bahlav, 2000 U.S. App. LEXIS 8843, at *7 (2d Cir. May 3, 2000) (lack of specificity of objection "deprived the district court of an opportunity to rule on the objection"); 21 Wright & Graham, Federal Practice & Procedure § 5036.1 ("The objection should be specific enough to alert the trial judge to the proper course of action and to enable the opponent to obviate the objection, if possible.").  The exhibit is relevant for numerous reasons.

Exhibit 9 is attached to the Amended 2255 Motion and is part of the Court record. It includes, for example, an affidavit attached to a motion submitted by Juror 162 to Addison County Family Court as part of her son's divorce proceedings in which Juror 162 swore:

> Between October 1992 and May 1995 my son, the Defendant, was living in various facilities and institutions as a result of alcohol related issues and criminal convictions. Throughout that period my son resided at Maple Leaf Farm, The Windsor, Woodstock, Rutland and Chittenden Correctional Centers and Dismas House in Burlington. Throughout that period I transported [my grandson] to see his father at his various locations regularly and faithfully each visitation period. . . . I essentially took over my son's visitation schedule while he was incarcerated.[10]

These sworn statements demonstrate beyond peradventure that Juror 162 knew of her son's criminal and substance abuse history – and thus knew that she was lying when she stated at voir dire that his criminal history was limited to a single incident 16 years earlier after which he was rehabilitated. See Amended 2255 Motion at 333-344. Similarly, the docket sheet,[11] scheduling/entry orders[12] and the final order in the case[13] show that, during the period of time immediately after Mr. Ryan's arrest for felony burglary (and conviction of felony unlawful trespass) in 1992 and immediately before Mr. Ryan's arrest for felony unlawful trespass and two counts of simple assault in 1997, Juror 162 was intimately involved in the details of her son's life belying any contention she was ignorant of those significant events in his life: she was added as a party to his case in 1992, participated in numerous conferences with her son over the years,

---

[10] State v. Patrick Ryan, #53-3-92, Addison County, Vermont, Family Court Records, Affidavit of [Juror 162] (Ex. 9 at FELL-00002883-2884).

[11] State v. Patrick Ryan, #53-3-92, Addison County, Vermont, Family Court Records, Docket Report (Ex. 9 at FELL-00002764-2771).

[12] State v. Patrick Ryan, #53-3-92, Addison County, Vermont, Family Court Records, Scheduling/Entry Order, Oct. 31, 1996 (Ex. 9 at FELL-00002774); Scheduling/Entry Order, Sept. 13, 1996 (Ex. 9 at FELL-00002775); Scheduling/Entry Order, March 14, 1996 (Ex. 9 at FELL-00002777); Scheduling/Entry Order, Oct. 12, 1995 (Ex. 9 at FELL-00002783); Scheduling/Entry Order, July 20, 1995 (Ex. 9 at FELL-00002784); Scheduling/Entry Order, Jan. 11, 1996 (Ex. 9 at FELL-00002876); Scheduling/Entry Order, Sept. 28, 1995 (Ex. 9 at FELL-00002913); Scheduling/Entry Order, July 13, 1993 (Ex. 9 at FELL-00002981); Scheduling/Entry Order, April 30, 1993 (Ex. 9 at FELL-00002991); Scheduling/Entry Order, Feb. 24, 1993 (Ex. 9 at FELL-00003010).

[13] State v. Patrick Ryan, #53-3-92, Addison County, Vermont, Family Court Records, Docket Report (Ex. 9 at FELL-00002771); Am. Order of Modification (Ex. 9 at FELL-00002772).

and filed motions in his case up until the very end.  Indeed, documentation of certain of these arrests, convictions, and corresponding incarcerations are included in the divorce records themselves – records of proceedings in which she was deeply involved.[14]  See Amended 2255 Motion at 338-40.

The Government objects that Mr. Fell seeks to use these records to prove that Juror 162 was a party to a civil case and was herself accused of a crime.  That objection does not go to admissibility, but is baseless in any event.  Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  The test for relevancy is "an extremely modest one," and has been described by the Second Circuit as "nothing more than a threshold test."  United States v. Robinson, 560 F.2d 507, 519 (2d Cir. 1977); see also United States v. Viserto, 596 F.2d 531, 536 (2d Cir. 1979) (relevance of evidence was "not so farfetched as to make its admission an abuse of discretion").  Furthermore, the fact supported by the evidence may be "intermediate, or evidentiary" and, moreover, even "need not be in dispute" –"[e]vidence which is essentially background in nature…is universally offered and admitted as an aid to understanding."  Fed. R. Evid. 401 Advisory Committee's Note.

Exhibit 9 plainly satisfies these standards.  It shows that Juror 162 was a party to a civil case – and that she lied on voir dire when she answered "no" to the relevant question on her short form voir dire questionnaire.  Ex. 2 at FELL-00002727.  The records demonstrate that Juror 162 was added as a "new party" on June 18, 1992, filed numerous motions and affidavits, and

---

[14] State v. Patrick Ryan, Superior Court of Vermont, Addison Criminal Division, Case No. 483-9-92 Ancr., Docket Report (Ex. 9 at FELL-00003034-3035); State v. Patrick Ryan, #53-3-92, Addison County, Vermont, Family Court Records, Docket Report (Ex. 9 at FELL-00002764-2771).

10

was listed as a party by the court.[15]  These facts tend to "make it more…probable than it would be without the evidence" that Juror 162 was a party to a civil action.  See Fed. R. Evid. 401; see also Amended 2255 Motion, Dkt. No. 422 (Oct. 23, 2013), at 345.

Contrary to the Government argument, Exhibit 9 also supports the allegation that Juror 162 lied when she concealed the fact that she was accused of inappropriate sexual touching of the juror's grandson.  See Amended 2255 Motion at 341. The records show that Juror 162 was accused of inappropriate sexual touching.[16]  Indeed, it is precisely this accusation to which Juror 162 responded in an affidavit filed in Addison Family Court and part of this Exhibit.[17]

**EXHIBIT 16**

The Government admits that Exhibit 16 contains relevant evidence at page FELL-00003434.  That evidence shows that Patrick Ryan's residential address as of March 31, 1998 was 24 Middle Road in Barre, Vermont, the same address that other evidence establishes was the residence for Juror 162.[18]  This evidence thus tends to prove a central allegation of the Amended 2255 Motion.  As the Court will recall, Juror 162's initial defense to the claim that she knew about and lied about her son's criminal history was the flat declaration her son had not lived with

---

[15] See State v. Patrick Ryan, #53-3-92, Addison County, Vermont, Family Court Records, Docket Report (Ex. 9 at FELL-00002764-2771); Motion for Grandparent Visitation (Ex. 9 at FELL-00002881-2882); Affidavit of [Juror 162] (Ex. 9 at FELL-00002883-2886); Motion to Continue (Ex. 9 at FELL-00002831-2832); Letter from [Juror 162] to Addison County Family Court, Oct. 19, 1992 (Ex. 9 at FELL-00003031); Motion for Grandparents Visitation, Affidavit of [Juror 162] (Ex. 9 at FELL-00003045-3046); Amended Order of Modification (Ex. 9 at FELL-00002772-2773).

[16] See State v. Patrick Ryan, #53-3-92, Addison County, Vermont, Family Court Records, Memorandum in Opposition to Motion for Grandparent's Visitation (stating that Juror 162's grandson had said that Juror 162 "used to wash my privates" and that he "would not elaborate, other than to say that he did not want to see his grandmother") (Ex. 9 at FELL-00002877-2880); see also Objection to Proposed Order for Grandparent Visitation (Ex. 9 at FELL-00002863-2866).

[17] State v. Patrick Ryan, #53-3-92, Addison County, Vermont, Family Court Records, Affidavit of [Juror 162] (Ex. 9 at FELL-00002883-2886) ("[C]ertain representations were made about inappropriate activity when [my grandson] was at my house.  I vehemently deny any allegation of inappropriate contact.").

[18] State v. Patrick Ryan, Superior Court of Vermont, Washington District Court, Case No. 661-06-97 Wncr., Barre Town Police Department Record (Ex. 14 at FELL-00003349) (providing 24 Middle Road, South Barre, Vermont, as address for Juror 162 in 1997).

11

her since he was age 18: "My son hasn't lived with me since he was like 18 years old.  So a lot of what you are telling me I don't – I don't know anything about it."  Aug. Hr'g Tr. at 157:16-19.

Exhibit 16 undermines that defense and reveals it to be a false exculpatory demonstrating Juror 162 was lying at voir dire: Juror 162 was well aware of her son's activities because she and her son lived together in the same residence or in adjoining apartments in the several years leading up to Mr. Fell's trial – i.e., at precisely the time she was denying knowledge of his criminal background.  See Amended 2255 Motion at 339-340.  The Government is mistaken in its argument, moreover, that Mr. Fell does not have the right to have the entire record received.  Exhibit 16 – which was obtained from a public records request – is the record of an action initiated by the Office of Child Support seeking a determination of the respective parental rights and responsibilities regarding the minor child Ashley Pecor.  See Ex. 16.  The page the Government singles out, and suggests Mr. Fell offer in isolation, is a portion of a Motion for Genetic Testing submitted to the Chittenden Family Court prior to the determination of responsibilities of the defendants Joanne Pecor, Brian Bessette, and Patrick Ryan.  There is no reason for the Court to exclude the document as a whole: it explains the context of the report of Mr. Ryan's address and demonstrates its reliability.[19]  It does not contain any information from which the Court should be shielded – it is a public document (already attached to the Amended 2255 Motion sustained by the Court).  And Mr. Fell is permitted "to prove [his] case by evidence of [his] own choice," and, "with [his] burden of persuasion needs evidentiary depth to tell a continuous story."  Old Chief, 519 U.S. at 186, 190.

---

[19] The Federal Rules of Evidence allow for the admission of "other parts of the record or of other records that relate to the fact sought to be proved" in order to "minimize the inaccuracy of an incomplete presentation of a record." 1-106 Weinstein's Federal Evidence § 106.2(1); see also Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time.").

**EXHIBIT 17**

The Chittenden County Family Court records at FELL-00003481-82 are also plainly relevant. They show that, contrary to Juror 162's testimony, Patrick Ryan's residential address as of December 9, 2005 was 573 Bay Road, Apartment 101 in Colchester, Vermont, the same address of the residence occupied by Juror 162 throughout this same time period.[20] See Fed. R. Evid. 401; Amended 2255 Motion at 339-340. The remaining pages demonstrate the reliability of this evidence: they show that they are part of a Petition to Modify Child Support with respect to child support orders regarding Mr. Ryan's minor child Austin Harley. And, as with Exhibit 16, this is a public document that does not contain information that would prejudice the Court.

**EXHIBIT 22**

The Government objects to this exhibit on the grounds that it "is not self-explanatory." Government Objections to Proposed Exhibits at 4. As the cover letter for Exhibit 22 states, the records contained in this exhibit are "a copy of [Patrick Ryan's] movement log which shows what dates he was under VT Department of Corrections supervision." Ex. 22 at FELL-00003546. These records show, among other things, that Patrick Ryan was on parole under the supervision of the Vermont Department of Corrections in connection with his conviction for DWI #4 *at the same time that* Juror 162 was filling out her voir dire questionnaires and testifying during voir dire that her son's only criminal experience was "16 yrs [sic] ago. He is now ass't manager at Shaws, so he sure has been a better person for it." See Ex. 22 at FELL-00003548; Ex. 2 at FELL-00002727. Indeed, the evidence establishes that Juror 162 was visited by the parole officers. There could be little more probative evidence that Juror 162

---

[20] State v. Patrick Ryan, Superior Court of Vermont, Chittenden County, Case No. 6916-11-01 Cncr., DUI Affidavit (Ex. 15 at FELL-00003393).

had knowledge of these facts, and that she lied on voir dire and in testimony at the 2013 and 2014 juror misconduct hearings when she testified that his only criminal activity had occurred nearly two decades before voir dire.  See Amended 2255 Motion at 336-339.

**EXHIBIT 25**

This exhibit contains a police report indicating that Juror 143 was suspected of stealing public property in 1995, and was investigated by the police regarding that incident.  This exhibit is relevant to Mr. Fell's claim that Juror 143 was dishonest on voir dire when he answered on his short form questionnaire that he had never been "accused of a crime" (Ex. 24 at FELL-00003590), and when he answered on his long form questionnaire that he had never "been the target of a criminal investigation" (Ex. 23 at FELL-00003573).  The Court has already rejected the Government's relevancy argument.  As the Court ruled in granting Mr. Fell's motion to amend with respect to Juror 143, evidence of that juror's omissions during voir dire is directly relevant to Mr. Fell's allegations regarding Juror 143's "pattern of deceit," as "questions regarding both his credibility and impartiality have been asserted from the outset." Memorandum Opinion and Order: Motion to Amend Petition, Dkt. No. 478 (Mar. 12, 2014), at 14-15.  Exhibit 25 therefore easily satisfies the Rule 401 test for relevancy.

**EXHIBIT 28**

The Government objects to the Colchester Police Department records at FELL-00003652-3663 on the grounds that they are dated after July of 2005.  But these pages, which happened to be dated after Mr. Fell's trial, more importantly show that Mr. Ryan's license was suspended for life following his conviction for DWI #4 in 2002, *before* trial.[21]  These records also show that Patrick Ryan was living at 573 Bay Road – in the same building as Juror 162's

---

[21] Superior Court of Vermont, Chittenden County,  Case No. 5045-10-05 Cncr., Affidavit of Officer Michael Fish (Ex. 28 at FELL-00003656).

Colchester apartment – as of September 19, 2005, which is directly relevant to Mr. Fell's allegations regarding the closeness of their lives during this time period. See Amended 2255 Motion at 339-340. Furthermore, the Court sustained Mr. Fell's inquiry into these areas over the Government's objection at the August 15, 2013 hearing. Juror 162 testified at that hearing that her son's criminal conduct occurred when he was "in his twenties," and that "[h]e is 50 some odd now." Aug. Hr'g Tr. at 129:9-10. As the Court ruled when counsel for Mr. Fell elicited evidence that these statements were untrue by pointing to convictions that had taken place after Mr. Fell's trial:

> [Juror 162] had answered some questions suggesting that [her son] only was convicted 16 years ago and he has been doing just fine since….she has testified that she has been doing – that her son has been doing extraordinarily well for the last 16 years….And [Mr. Fell] is using those convictions [which took place after Mr. Fell's trial had ended] to suggest that that is not an accurate statement.

Aug. Hr'g Tr. at 135:17-136:15.

The Government objects to FELL-00003665-667, a police report filed by Juror 162 regarding property damage caused by her neighbor, on relevancy grounds. These pages are relevant to Mr. Fell's claim that Juror 162 lied on voir dire when she answered "no" to Question 36 on the long form questionnaire "Have you ever filed a complaint with the police against anyone?" Ex. 3 at FELL-00002742.

The Government objects to FELL-00003699-3763 on the grounds that they are dated after July of 2005. Mr. Fell is prepared to withdraw FELL-00003699-3702, FELL-00003717-3719, FELL-00003725-3727, FELL-3737-3739, and FELL-00003743-3746. But the remaining pages to which the Government objects are plainly relevant.[22]

---

[22] Those pages contain police complaints filed by Juror 162 between 2007 and 2010 which Mr. Fell contends are false – and therefore undermine her testimony that she has always been truthful. FELL-00003703-3716, FELL-00003720-3724, FELL-00003728-3736, FELL-00003740-3742, and FELL-00003746-3763. Under separate cover, Mr. Fell is supplying the Court and the Government with a corrected Exhibit 28, identified as Exhibit 28a.

**EXHIBITS 30 AND 31**

The Government expressed to counsel for Mr. Fell at meet and confer following the March 18-19 hearing that the nature of their hearsay objection to these exhibits is not Mr. Fell's failure to call the newspaper reporters as witnesses, but Mr. Fell's offer of Juror 162's out of court statements contained within the articles. In any event, there is no need to call the newspaper reporters. Juror 162 was asked about the statements she made to newspaper reporters in 2013 at the March 18-19 hearing, and she testified that she had spoken to these reporters, and she had read the articles and voiced no disagreement with the report of her statements.[23]

Juror 162's statement in Exhibit 31 that when "her son began using drugs as a teenager..., on the advice of her doctor, she sent him to an inpatient treatment program" is highly relevant. That Juror 162 knew in October of 2013 that in her son's teenage years he had been in treatment for drug abuse directly supports the proposition that – nine years earlier, at the time of trial – she also knew her son was in drug treatment but yet falsely and misleadingly omitted that fact when specifically asked about it at voir dire.[24] See Ex. 3 at FELL-00002747; DeMarco v. Robertson Stephens Inc., 318 F. Supp. 2d 110, 117-18 (S.D.N.Y. 2004). Likewise, Juror 162's statement in Exhibit 31 that her son lived with her in October 2013 also is not hearsay. It is offered to show her perception of the closeness of their relationship, a fact which is directly relevant to her knowledge of her son's criminal and substance abuse history.[25] See Amended 2255 Motion at 339-340.

---

[23] It is with respect to this exhibit that the Government's about-face is most troubling. Had the Government revealed prior to trial that it intended to make a hearsay objection, Mr. Fell would have done even more to elicit from the juror that the statements attributed to her in the press were statements given by her.

[24] Furthermore, this statement is also admissible under Fed. R. Evid. 613(b), as inconsistent with Juror 162's testimony at the August 15, 2013 hearing that "I believe he went to an alcohol counselor, yes, at one time." Aug. Hr'g Tr. 158:24-25.

[25] This statement is also admissible under Fed. R. Evid. 613(b) because it is plainly inconsistent with Juror 162's testimony at the August hearing that "My son hasn't lived with me since he was like 18 years old." Aug. Hr'g Tr. at 157:16-19; see Fed. R. Evid. 613(b).

16

Juror 162's statement in Exhibit 30, dated October of 2013, that her son had "not been in criminal trouble for seven years" is not offered to show the dates of Mr. Ryan's criminal convictions, but is offered for a non-hearsay purpose – to show Juror 162's knowledge of subsequent criminal acts by her son, knowledge which she possessed when she told this Court at the August 15, 2013 hearing that her son's previous criminal acts had taken place when he was "in his twenties," over 25 years prior.[26]  Aug. Hr'g Tr. at 129:9-10.

**EXHIBIT 35**

This exhibit was admitted into evidence at the March 18-19 hearing with no objection, and thus the Government has waived its ability to object to its admissibility.  See March 2014 Hearing Exhibit List.

**EXHIBIT 36**

The Government objects to this exhibit on the grounds that Mr. Fell "has failed to establish that they relate to Juror 26."  Government Objections to Proposed Exhibits at 6.  Mr. Fell understands the nature of this objection to be that the Government is uncertain as to whether Juror 26 and members of Juror 26's immediate family are the same individuals as those named as plaintiffs and defendants in the civil suit records contained in this exhibit.  However, South Main Body Shop Inc. v. [Juror 26] and Calco, Inc. v. [Juror 26] both name as the defendant an individual with the same name as Juror 26; Citizens Savings Bank & Trust v. Hodgdon names as the defendant an individual with the same name as Juror 26's son; and Hodgdon v. Town of Victory and Hodgdon v. Brown both name as the plaintiff an individual with the same name as Juror 26's father.  The exhibit supports Mr. Fell's claim that Juror 26 failed to disclose the long

---

[26] This statement is also admissible under Fed. R. Evid. 613(b) as inconsistent with the juror's testimony in August, and inconsistent with her testimony on voir dire, when she painted a picture of her son as a person who was "rehabilitated."  Voir Dire Tr., JVD-9 136:22.

17

history of civil suits involving him and his family on his short questionnaire.  See Amended 2255

Motion at 353-54.

**EXHIBIT 37**

Exhibit 37 contains records of the Northfield Police Department describing

serving Juror 143 on September 2, 2005 with a temporary abuse prevention order obtained by

Kaulene Kelsey.  As the Court will recall, Ms. Kelsey testified that she went to Rutland,

Vermont with Juror 143 during the summer of 2005 because the juror wanted to see the crime

scenes for himself, and that they went to the house where Ms. Fell and Charles Conway were

murdered and to the Price Chopper where Ms. King was abducted.  She was cross-examined on

whether she remembered the exact date of the visit.  The records corroborate her testimony that

the visit was during trial.  Specifically, they describe how on September 2, 2005 Juror 143

"threw the contents of his cup at the windshield" of Ms. Kelsey's van upon hearing that she had

obtained the order against him, and how the Northfield Police had instructed Juror 143 to contact

them to obtain a bag of his belongings from Ms. Kelsey.  See Ex. 37.  This document supports

the testimony of Ms. Kelsey that her relationship with Juror 143 ended in the late summer of

2005, and that it had been around August 30 when she and Juror 143 last had contact with one

another.  Exhibit 37 thus tends to make it "more probable" that Ms. Kelsey visited Rutland with

Juror 143 during Mr. Fell's trial and not after – because after the trial they ceased having a

relationship with each other.  See Fed. R. Evid. 401.  Exhibit 37 is therefore directly relevant to

Mr. Fell's claim that Juror 143 engaged in misconduct and violated his pledge not to learn

anything about the case outside of the courtroom during trial, lied when asked every day at trial

whether he was exposed to extrajudicial information about the case, and subsequently perjured

himself when examined about those actions at the August hearing.  See Amended 2255 Motion

at 354-57.

18

**EXHIBITS 39 THROUGH 41**

The Government purports to object to Exhibits 39 through 41, which, along with Exhibit 38, represent video tapes provisionally admitted at the March 18-19 hearing subject to linkage in Mr. Fell's pleadings.  Consistent with the direction of the Court, Mr. Fell will establish the relevance of those videos in subsequent briefing.

**<ins>CONCLUSION</ins>**

For the foregoing reasons, Mr. Fell respectfully requests that the Court admit Mr. Fell's proposed exhibits without the need for argument.

19

Dated:  April 4, 2014
Barre, Vermont

RESPECTFULLY SUBMITTED,


/s/ Richard Rubin
RICHARD RUBIN
Rubin, Kidney, Myer & DeWolfe
237 N. Main Street
Barre, Vermont, 05641-4125
(802) 479-2514
Fax: (802) 479-2516

Dated:  April 4, 2014
New York, New York


/s/ Lewis J. Liman
LEWIS J. LIMAN
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2550
Fax: (212) 225-3999

Dated:  April 4, 2014
New York, New York


/s/ Cathleen Price
CATHLEEN PRICE
P.O. Box 321762
New York, New York 10032
(212) 998-6193

*Attorneys for Donald Robert Fell, Jr.*

20