**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

_____

|  |  |
|---|---|
| DONALD FELL, | ) |
|  | ) |
| Movant, | ) |
|  | ) |
| v. | ) 2:01-CR-12-01 |
|  | ) |
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| Respondent. | ) |
|  | ) |

_____ )

**MOTION OF DONALD FELL FOR COLLATERAL RELIEF, TO VACATE, SET ASIDE, OR CORRECT SENTENCE, AND FOR A NEW TRIAL PURSUANT TO 28 U.S.C. § 2255**

# VOLUME V OF VII

# EXHIBITS 146-210

# TABLE OF CONTENTS

## INDEX TO EXHIBITS

## NON-SEALED EXHIBITS

Exhibit

Donald Fell Mitigation Binder ..................................................................................................1

Van Gorp Report (Apr. 6, 2001) .............................................................................................2

Mills Report (May 7, 2001) .....................................................................................................3

Lipman Report (May 14, 2001) ...............................................................................................4

Cunningham Report (June 14, 2005) .......................................................................................5

Declaration of Mark Cunningham, Ph.D., ABPP (June 27, 2005) .........................................6

Wetzel Report (Oct. 11, 2002) ................................................................................................7

Rabun Report (Dec. 31, 2002) ................................................................................................8

Wetzel Report (June 27, 2005) ...............................................................................................9

Welner Report (July 5, 2005) ................................................................................................10

CYS Contact Sheet (Apr. 22, 1985) ......................................................................................11

CYS Contact Sheet (May 8 1985) .........................................................................................12

CYS Contact Sheet (Sept.—Oct.1985) .................................................................................13

CYS Contact Sheet (Aug. 8, 1991) .......................................................................................14

CYS Contact Sheet (Aug. 8, 1991) .......................................................................................15

CYS Contact Sheet (Aug. 8, 1991) .......................................................................................16

CYS Contact Sheet (Oct. 1991) ............................................................................................17

First Hospital Wyoming Valley Discharge Report (Oct. 31, 1991) ......................................18

Wilkes-Barre General Hospital Progress Record (Apr. 1992) ..............................................19

Wilkes-Barre General Hospital Adolescent Psych. Unit Interdisciplinary Progress Record (Apr. 1992)................................................................................................................20

Wilkes-Barre General Hospital Discharge Face Sheet (June 6, 1993) .........................................21

Wilkes-Barre General Hospital Adolescent Psychiatric Unit Nursing Record (Apr. 1992)..........22

Wilkes-Barre General Hospital Adolescent Psychiatric Unit Nursing Record (Jan. 1993) ..........23

Wilkes-Barre General Hospital Adolescent Psychiatric Unit Nursing Record (June 1993) .........24

CRR Group Home Selection and Review (Sept. 22, 1993)............................................................25

Psychological Consultation of Donald Fell (Apr. 12, 1994) .........................................................26

Service Plan (Medical) (1994)......................................................................................................27

Service Plan (Medical – Dental) (1995) .......................................................................................28

CYS Contact Sheet (May 26, 1995) ..............................................................................................29

Intentionally Left Blank.................................................................................................................30

Rutland City Police Department Incident Table (Jan. 11, 1996)...................................................31

Rutland City Police Department Incident Table (Sept. 4, 1996) ...................................................32

Rutland City Police Department Incident Table (Nov. 6, 1996) ....................................................33

Rutland City Police Department Incident Table (Nov. 6, 1996) ....................................................34

Rutland City Police Department Incident Table (Mar. 4, 1997)....................................................35

Rutland City Police Department Incident Table (July 3, 1997)......................................................36

Rutland City Police Department Incident Table (Sept. 16, 1997) ..................................................37

Rutland City Police Department Incident Table (Jan. 14, 1998)....................................................38

Rutland City Police Department Incident Table (June 5, 1998)......................................................39

Rutland City Police Department Incident Table (July 28, 1998)....................................................40

Rutland City Police Department Incident Table (Apr. 30, 1999) ...................................................41

Rutland City Police Department Incident Table (May 26, 1999)....................................................42

Rutland City Police Department Incident Table (Oct. 30, 1999) .................................................43

Rutland City Police Department Incident Table (Feb. 20, 2000) .................................................44

Luzerne County Detention Center Admission Page (Sept. 10, 1996) ..........................................45

Sullivan County Sheriff's Department Criminal Complaint (Aug. 12, 2000) ..............................46

New York State Incident Report and Arrest Report (Aug. 12, 2000) ..........................................47

Sullivan County Sheriff's Department Statement of Donny McNeeley (Aug. 12, 2000) .............48

Sullivan County Sheriff's Department Statement Joshua Jones (Aug. 12, 2000) ........................49

New York State Incident Report (Aug. 12, 2000) .......................................................................50

Sullivan County Sheriff's Department Statement (Teri Fell) (Aug. 12, 2000) ...........................51

Sullivan County Sheriff's Department Handwritten Notes (Aug. 12, 2000) ...............................52

Sullivan County Sheriff's Department Supporting Deposition (Aug. 12, 2000) ..........................53

Sullivan County Sheriff's Department Handwritten Notes (Aug. 12, 2000) ...............................54

Sullivan County Sheriff's Department Handwritten Notes (Aug. 12, 2000) ...............................55

Sullivan County Sheriff's Department Handwritten Notes (Aug. 12, 2000) ...............................56

FBI FD-302 (Nov. 30, 2001 – Dec. 1, 2001) ..............................................................................57

Intentionally Left Blank ..............................................................................................................58

Intentionally Left Blank ..............................................................................................................59

Interview of Donald Fell at Johnson County Sheriff's Department (Dec. 1, 2000) .....................60

Interview of Donald Fell at Johnson County Sheriff's Department (Dec. 2, 2000) .....................61

Interview of Donald Fell at Johnson County Sheriff's Department (Dec. 2, 2000) .....................62

New York State Police Investigation Report (Dec. 1, 2000) .......................................................63

New York State Police Supporting Deposition (Dec. 2, 2000) ...................................................64

Autopsy Report of Teresca King (Dec. 2, 2000) ........................................................................65

3

Interview of Donald Fell at Johnson County Sheriff's Department (Dec. 2, 2000) ......................66

United States Marshals Service Prisoner Intake ..........................................................................67

New York State Police Supporting Deposition of Francis Bellantoni (Dec. 1, 2000)..................68

Warrant Information Network Subject Report (Dec. 15, 2000) ....................................................69

Letter from A.U.S.A. Gregory Waples to Alex Bunin, Gene Primomo, and John Pacht
    (Dec. 22, 2000)  ..................................................................................................................70

Vermont Department of Corrections Inmate Disciplinary Report (Dec. 27, 2000) ......................71

Vermont Department of Corrections Inmate Disciplinary Report (Dec. 27, 2000) ......................72

NWSCF Facility Incident Report (Dec. 27, 2000) .......................................................................73

Letter from A.U.S.A. Gregory Waples to Alex Bunin, Gene Primomo, and John Pacht
    (Dec. 28, 2000) ..................................................................................................................74

Prison Medical Records of Donald Fell........................................................................................75

2001 FBI Report ...........................................................................................................................76

Vermont Department of Corrections Disciplinary Hearing Report (Dec. 27, 2000)....................77

FBI Report (Jan. 4, 2001) .............................................................................................................78

Letter from A.U.S.A. Gregory Waples to Alex Bunin, Gene Primomo, and John Pacht
    (Jan. 8, 2001)......................................................................................................................79

Letter from Alex Bunin to A.U.S.A. Gregory Waples (Jan. 9, 2001) ..........................................80

FBI FD-192 (Jan. 22, 2001)..........................................................................................................81

Letter from A.U.S.A. Gregory Waples to Alex Bunin, Gene Primomo, and John Patch
    (Jan. 24, 2001)....................................................................................................................82

Redacted E-mail (Mar. 15, 2001) .................................................................................................83

Letter from A.U.S.A Gregory Waples to Alex Bunin, Gene Primomo, and John Pacht
    (Mar. 26, 2001) ..................................................................................................................84

New York State Certificate of Disposition (Mar. 28, 2001).........................................................85

Letter from A.U.S.A. Gregory Waples to Alex Bunin, Gene Primomo, and John Patch (Apr. 5, 2001)..................................................................................................................86

Memorandum from Cynthia Ayres to Dr. Mark Mills (Apr. 23, 2001)........................................87

Letter from Peggy Peterson, Luzerne County CYS......................................................................88

Letter A.U.S.A. Gregory Waples to Alex Bunin, Gene Primomo, and John Pacht (Apr. 5, 2001)..................................................................................................................90

Handwritten D Management Team Meeting Notes (Apr. 21, 2001) ............................................91

Vermont Department of Corrections Facility Report Form (June 13, 2001)................................92

Correctional Medical Services Interdisciplinary Progress Notes (July 2001) ..............................93

Pennsylvania State Police Central Repository Criminal History of Christopher Eike ..................94

Handwritten D Management Team Meeting Notes (July 16, 2001)..............................................95

D Wing Activity Sheet.................................................................................................................96

Redacted E-mail (Sept. 20, 2001) ..............................................................................................97

Redacted E-mail (Sept. 20, 2001)...............................................................................................98

Redacted E-mail (Sept. 20, 2001)...............................................................................................99

Redacted E-mail (Sept. 20, 2001).............................................................................................100

Redacted E-mail (Sept. 20, 2001).............................................................................................101

Vermont Department of Corrections Facility Report Form (Sept. 20, 2001)..............................102

Redacted E-mail (Sept. 20, 2001).............................................................................................103

Handwritten note of Bobby Lee.................................................................................................104

Handwritten note of Bobby Lee.................................................................................................105

Individual Voir Dire (May 4, 2005)...........................................................................................106

Redacted E-mail (Sept. 25, 2001).............................................................................................107

5

Commonwealth of Pennsylvania Police Criminal Complaint against Christopher Eike (Nov. 7, 2001) ...................................................................................................108

Prison Health Records of Robert Lee ................................................................................109

Intentionally Left Blank .....................................................................................................110

Intentionally Left Blank .....................................................................................................111

Vermont Department of Corrections Incident Report (Mar. 17, 2004) ............................112

Intentionally Left Blank .....................................................................................................113

FOIA 302 (Apr. 6, 2005) ...................................................................................................114

Letter to Judge Sessions from A. Bunin (Apr. 27, 2005) .................................................115

Sealed Document Order, Case No.:2:01-CR-12 (Apr. 28, 2005) ......................................116

Jury Instructions ................................................................................................................117

Intentionally Left Blank .....................................................................................................118

FOIA 302 (May 9, 2005) ...................................................................................................119

Intentionally Left Blank .....................................................................................................120

Intentionally Left Blank .....................................................................................................121

Letter from William B. Darrow and Stephen Kelly to Alexander Bunin, Gene Primomo, and Paul Volk..............................................................................................................................122

Blank Juror Questionnaire .................................................................................................123

Juror No. 26 Questionnaire (May 13, 2005) .....................................................................124

Juror No. 162 Questionnaire (May 23, 2005)....................................................................125

Intentionally Left Blank .....................................................................................................126

Intentionally Left Blank .....................................................................................................127

FBI Report (June 14, 2005) ...............................................................................................128

FBI 302 Report of Interview with Christopher Eike (June 15, 2005) ...............................129

United States' Trial Memorandum, United States v. Donald Fell ...............................................130

Letter to Judge Sessions from David V. Kirby (June 29, 2005) ...................................................131

FBI 302 Report of Interview with [Redacted] (July 5, 2005) ......................................................132

FedEx Air Bill from Town of Bethel Justice Court to Andrew Bartnick (July 6th, 2006)..........133

Letter to Judge Sessions from Alex Bunin (July 8, 2005) ...........................................................134

Stipulation (July 8, 2005)..............................................................................................................135

Intentionally Left Blank.................................................................................................................136

Memorandum to Alex Bunin from Paul Volk (July 20, 2005).....................................................137

Donald Fell's Motions for Judgment of Acquittal and New Trial, United States v. Donald Fell
      (Aug. 26, 2005) ....................................................................................................................138

Affidavit of Richard Wetzel, Ph. D (Sept., 12, 2005)..................................................................139

Appeal from the United States District Court for the District of Vermont, Brief of the United
      States, United States v. Donald Fell (May 25th, 2007) ........................................................140

Letter to Victims Resource Center from Wanda Rivera (Apr. 21, 2005) ....................................141

Letter from Victims Resource Center to Andrew Bartnick (May 4, 2005) .................................142

School Heath Record of Donald Fell .............................................................................................143

Intentionally Left Blank.................................................................................................................144

Wilkes-Barre General Hospital Progress Record of Donald Fell (June 1993) ............................145

Raymond Kotzer and Theresa Kotzer Divorce Records (Oct. 22, 1967) ....................................146

Arrest Warrant Affidavit for Donald Fell, Sr. (Mar. 4, 1990) .....................................................147

CYS Contact Sheet (Apr. – May 1990) ........................................................................................148

Jenkins Township Incident Report (Apr. 21, 1990)......................................................................149

CYS Contact Sheet (June 1990) ....................................................................................................150

Service Planning/Family Functioning Report (June 1990)...........................................................151

CYS Contact Sheet (Nov. 28, 1990)...................................................................................152

CYS Contact Sheet (Jan. 14, 1991) ..................................................................................153

CYS Contact Sheet (Feb. 14, 1991)..................................................................................154

Intentionally Left Blank....................................................................................................155

Intentionally Left Blank....................................................................................................156

CYS Contact Sheet (Mar. 19, 1991) .................................................................................157

Suspected Child Abuse Referral Note (Apr. 18, 1993) ...................................................158

CYS Contact Sheet (May 1, 1991) ...................................................................................159

CYS Contact Sheet (May 2, 1991) ...................................................................................160

CYS Contact Sheet (June 4, 1991) ...................................................................................161

CYS Contact Sheet (June 24, 1991) .................................................................................162

CYS Contact Sheet (July 8, 1991) ....................................................................................163

CYS Contact Sheet (Dec. 20, 1991) .................................................................................164

CYS Contact Sheet (Dec. 23, 1991) .................................................................................165

CYS Contact Sheet (Jan. 13, 1992) ..................................................................................166

CYS Contact Sheet (Mar. 3, 1992)....................................................................................167

CYS Contact Sheet (Apr. 20, 1992)..................................................................................168

Intentionally Left Blank....................................................................................................169

Wilkes-Barre General Hospital Adolescent Psych. Unit Progress Record (1993) ......................170

CYS Client Information Profile (Apr. 18, 1993) .......................................................................171

CYS Contact Sheet (Apr. 20, 1993)..................................................................................172

Police Report (Jan. 26, 2001)............................................................................................173

Intentionally Left Blank....................................................................................................174

8

Wilkes-Barre General Hospital Adolescent Psych. Unit Progress Record (June 8, 1993)..........175

Office of the Sheriff, Luzerne County (Aug. 31, 1993)...............................................................176

CYS Client Information Profile (Jan. 19, 1994) ........................................................................177

CYS Contact Sheet (Jan. 24, 1994) ..........................................................................................178

CYS Contact Sheet (Jan. 24, 1994) ..........................................................................................179

CYS Contact Sheet (Feb. 4, 1993)............................................................................................180

CYS Contact Sheet (Mar. 10, 1994) .........................................................................................181

CYS Contact Sheet (Mar. 24, 1994) .........................................................................................182

CYS Contact Sheet (Apr. 7, 1994)............................................................................................183

CYS Contact Sheet (Apr. 12, 1994)..........................................................................................184

CYS Contact Sheet (Apr. 12, 1994)..........................................................................................185

St. Michael's School Psychiatric Note (May 1994)...................................................................186

St. Michael's School Psycho Social Summary (Apr. 1994) .......................................................187

FBI Identification Record for Debra Fell (June 9, 1994)...........................................................188

Wilkes-Barre Police Department Jailer's Report (Oc. 18, 1994) ..............................................189

Arrest Report for John Rhodes (Oct. 18, 1994).........................................................................190

Citation for John Rhodes (Oct. 18, 1994) .................................................................................191

Wilkes-Barre Police Special Report for John Rhodes (Oct. 18, 1994)......................................192

Risk /Severity Assessment Form (Oct. 26, 1994)......................................................................193

Arrest Report for John Rhodes (Jan. 12, 1995) .........................................................................194

Arrest Warrant for John Rhodes (Feb. 9, 1994).........................................................................195

Arrest Warrant for John Rhodes (Jan. 12, 1995) .......................................................................196

CYS Contact Sheet (Jul. 1995) .................................................................................................197

Substance Abuse Evaluation for Donald Fell (Sept. 16, 1996) ...................................................198

Affidavits Submitted in Motion in Limine in United States v. Haynes (May 24, 2000).............199

Letter to Judge Niedermeier (Dec. 5, 2000) ...................................................................200

Letter to Charles Tetzlaff (Dec. 5, 2000)........................................................................201

Letter to Judge Murtha (Dec. 11, 2000)..........................................................................202

Rutland Herald Article (May 13, 2002).............................................................................203

Burlington Free Press Article (May 15, 2002)..................................................................204

Donald Fell's Objections to Punishment-Related Questions (Jun. 10, 2002)............................205

Declaration of Thomas V. Ryan ......................................................................................206

Letter to David Kirby (Feb. 23, 2005) .............................................................................207

Letter to Judge Sessions (Jun. 29, 2005)..........................................................................208

Special Verdict Form (Jul. 14, 2005)................................................................................209

Criminal History Record of Deborah Fell (Apr. 10, 1996) ...............................................210

Rutland City Police Department Incident Report (1996) ...............................................211

Rutland City Police Department Report (1994-2000) .....................................................212

New York State Police Investigation Report (Dec. 1, 2000)............................................213

Criminal Docket for Christopher Eike (Oct. 8, 2002) .................................................214

Government Opposition to Motion (Jul. 10, 2002)...........................................................215

FBI Record (Apr. 25, 2005)..............................................................................................216

Donald Fell Event Table (Apr. 30, 2005) .........................................................................217

FBI Record (May 11, 2005)..............................................................................................218

FBI Record (May 16, 2005)..............................................................................................219

FBI Record (Jun. 9, 2005)................................................................................................220

FBI Record (Jun. 6, 2005)..................................................................................................221

Adolescent Psychiatric Reports for Donald Fell (1993) ...............................................222

Bail Certificate (Mar. 4, 1997)........................................................................................223

CYS Contact Sheet (May 20, 1992) ...............................................................................224

FBI Record (Jun. 27, 2005)..............................................................................................225

FBI Record (Jun. 9, 2005)................................................................................................226

Statement by Teri Fell to Sullivan County Sheriff (Aug. 12, 2000)...........................227

Deposition of Lance Rowland (Aug. 12, 2000)..............................................................228

Certificate of Disposition (Aug. 16, 2000) ....................................................................229

Individual Voir Dire (Jun. 1, 2005) ................................................................................230

Police Report (Nov. 1, 2002) ..........................................................................................231

Wilkes-Barre Times Leader Article (Oct. 5, 2004) .......................................................232

Law and Human Behavior Article (1991) .......................................................................233

Specialty Guidelines for Forensic Psychology ..............................................................234

United States v. Fell Court Order (Apr. 7, 2005)...........................................................235

Transcript Excerpt (May 13, 2005)..................................................................................236

Intentionally Left Blank....................................................................................................237

Fell Motion to Dismiss Notice of Intent to Seek Death Penalty ..................................238

Declaration of Juror 23 ....................................................................................................239

Conviction Record of Juror 26 (Apr. 2, 1996)...............................................................240

Declaration of Juror 143 ..................................................................................................241

Declaration of Sally Fell Francis .....................................................................................242

Declaration of Ronald Cupano..........................................................................................243

Declaration of Rose O'Hop ...................................................................................................244

Declaration of Claudia Bublo ..............................................................................................245

Trial Transcript Excerpt (May 13, 2005)............................................................................246

Declaration of Robert Fell ...................................................................................................247

Declaration of Dorothy Grivner...........................................................................................248

Declaration of John Timek....................................................................................................249

Declaration of Florence Wallace .........................................................................................250

Declaration of John Gacek....................................................................................................251

Declaration of Adele Gacek .................................................................................................252

Declaration of Ernie Schuldaski ..........................................................................................253

Declaration of Jon Migatulski...............................................................................................254

Declaration of Steve Ratte ...................................................................................................255

Declaration of Marc Pelkey .................................................................................................256

Voir Dire Transcript..............................................................................................................257

Declaration of Richard T. Callery, M.D., F.C.A.P. ...................................................................258

Intentionally Left Blank.........................................................................................................259

Declaration of Mark J. Mills, J.D., M.D. ..............................................................................260

Intentionally Left Blank.........................................................................................................261

Declaration of Andrew Bartnick...........................................................................................262

Declaration of Gene Primomo ..............................................................................................263

Declaration of Alexander Bunin ...........................................................................................264

Declaration of Cynthia Ayres  ..............................................................................................265

Declaration of Sandra Shum .................................................................................................266

Declaration of Deborah Wisell ...................................................................................267

Declaration of Anthony Mistretta ...............................................................................268

Declaration of Dora Carter...........................................................................................269

Declaration of Jeff Van Buren .....................................................................................270

Declaration of Pat Johnson ..........................................................................................271

Declaration of Mary Bell .............................................................................................272

Transcript of Juvenile Proceedings (Apr. 8, 1994) .....................................................296

Childline Record (Apr. 22, 1991) ................................................................................297

Officers Report.............................................................................................................298

Prison Record (Jun. 11, 2001)......................................................................................299

Declaration of Michael Sikirica ...................................................................................300

Declaration of Francis Bellantoni ................................................................................301

Declaration of Lucinda Fruean ....................................................................................302

Declaration of Michael Leight ......................................................................................303

Declaration of Paul Stoss..............................................................................................304

Declaration of Paul Volk ..............................................................................................305

Declaration of Charles Wetli ........................................................................................306

Birth Certificate of Theresa Kozersky (Aug. 9, 1935).................................................307

Death Certificate of Frances Kozerski (Apr. 20, 2001) ...............................................308

Declaration of John Edens ............................................................................................309

Government Motion in Limine to Exclude Report (Jul. 6, 2005)..................................310

Individual Voir Dire Excerpt (Jun. 6, 2005).................................................................311

Photographs of Fell Home .............................................................................................312

Declaration of Jamie Dominick ...................................................................................................313

**SEALED EXHIBITS**

15

# EXHIBIT 146

416

416

NO. Oct. TERM 1967

Raymond Kotzen

VS.

Theresa Kotzen
for Divorce

## NOTICE

THESE PAPERS MUST NOT BE
TAKEN FROM THE OFFICE WITHOUT
AN ORDER FROM COURT.

THE DATE OF REMOVAL AND
TO WHOM DELIVERED MUST
ALWAYS BE NOTED ON FILING
CARD BY FILE CLERK AND
RECEIPT TAKEN THEREFOR.

Common Pleas of Luzerne County.
CERTIFIED FROM THE RECORDS THIS
21 DAY OF Sept A.D. 20 10
CAROLEE MEDICO OLENGINSKI
PROTHONOTARY
PER



416 October Term 1967

# Decree in Divorce

## to

Raymond Kotzer

FELL-00001802

# In the Court of Common Pleas of Luzerne County

Raymond Kotzer

**Plaintiff.**

vs.

Theresa Kotzer

**Defendant.**

No. 416 October Term, 19 67

# Decree in Divorce

Now December 2 , 19 6 7 , the Court having carefully read, scrutinized and considered the evidence in this case and the Master's findings of fact, conclusions of law and discussion of the same, and proceeded to determine the same as to law and justice appertain

Do sentence and decree that Raymond Kotzer be divorced and separated from the nuptial ties and bonds of matrimony heretofore contracted between h im the said Raymond Kotzer the Plaintiff, and the said Theresa Kotzer Defendant.

And that their said marriage be dissolved; and that thereupon all and every the duties, rights and claims accruing to either the said Raymond Kotzer or the said Theresa Kotzer at any time heretofore, in pursuance of said marriage, shall cease and determine.

By the Court,

J.

FELL-00001803

AFFIDAVIT OF NON MILITARY SERVICE

OF DEFENDANT
************************************

COMMONWEALTH OF PENNSYLVANIA   :
                                   : SS
COUNTY OF LUZERNE                 :

  BARBARA A. TRUSKOWSKI                being duly sworn according to law, does depose and say that she did, upon request of _____
  CLEMENT E. KISAILUS, ESQ., ATTORNEY FOR RAYMOND KOTZER
investigate the status of _____ THERESA KOTZER
with regards to the Soldiers' and Sailors' Civil Relief Act of 1940; and that she made such investigation personally_____
and your affiant avers that_____ THERESA KOTZER
is/are not now, nor was/were she/they, within a period of three months last, in the military or naval service of the United States within the purview of the aforesaid Soldiers' and Sailors' Relief Act of 1940.

Barbara A. Truskowski

Sworn to and subscribed before me
this 22 day of October , 1967.

Clement E. Kisailus

CLEMENT E. KISAILUS, Notary Public
Wilkes-Barre, Luzerne Co., Pa.
My Commission Expires July 6, 1970

FELL-00001804



4th October 1967

FELL-00001805

IN THE COURT OF COMMON PLEAS OF
LUZERNE COUNTY
In Divorce

NO. 416      OCTOBER TERM, 1967

RAYMOND KOTZER,

                          Plaintiff,

    vs.

THERESA KOTZER,

                          Defendant.

T E S T I M O N Y

Phyllis Usher
Standing Commissioner

FELL-00001806

RAYMOND KOTZER,                     :   IN THE COURT OF COMMON PLEAS OF
                Plaintiff,              LUZERNE COUNTY
                                   :
        vs.                                In Divorce
                                   :
THERESA KOTZER,
                Defendant.  :   NO. 416      OCTOBER TERM, 1967

## T E S T I M O N Y

        Testimony taken at a hearing held in the office
of the Master, Joseph V. Kasper, Esquire, 35 N. Franklin
Street, Wilkes-Barre, Pennsylvania, on Thursday, November
2, 1967, at 11:00 o'clock A.M., pursuant to a notice given
by the Master.


## APPEARANCES

Joseph V. Kasper, Esq., .. .. .. .. .. .. Master

Raymond Kotzer, .. .. . .. .. .. .. .. .. Plaintiff in person

Clement E. Kisailus, Esq., .. .. .. .. .. Counsel for Plaintiff


        The defendant, Theresa Kotzer, was not present at
the hearing, neither was she represented by counsel, and was
therefore considered to be in default.

## BY:  MR. KISAILUS.

        If it please the Master, I would like at this time
to offer into evidence the files in this case, consisting of
the following, Complaint in Divorce, with Notice to Plead
endorsed thereon, filed September 25, 1967;  Affidavit of
Charles Prohaska, Deputy Constable, evidencing that he served
a certified copy of the aforesaid Complaint in Divorce personally
upon the defendant, Theresa Kotzer, at her place of residence,
229 N. Washington Street, Wilkes-Barre, Pennsylvania, on
September 25, 1967, making known to her the contents thereof,
filed September 26, 1967;  Motion for Appointment of Master
and Order of Court appointing Joseph V. Kasper, Esquire, Master

FELL-00001807

in these proceedings, signed Hourigan, J., filed October 18, 1967; Praecipe for Appearance by Frank McGuigan, Esquire, on behalf of the Defendant, filed October 23, 1967· Notice of Master's Hearing fixing Thursday, November 2, 1967, at 11:00 A.M., and the office of the Master, 35 N. Franklin Street, Wilkes-Barre, Pennsylvania, as the time and place for the hearing, and attached thereto certification by Joseph V. Kasper, Esq., Master, that he did personally serve a certified copy of the aforesaid Notice of Master's Hearing on the Plaintiff, c/o his Attorney, Clement E. Kisailus, Esq., and on the defendant, c/o her attorney, Frank McGuigan, Esq., on October 23, 1967, filed October 24, 1967; Acceptance of Service of aforesaid Notice of Master's Hearing by Frank McGuigan, Esq., on behalf of the Defendant.

BY: THE MASTER.

         The files are accepted and placed of record.

RAYMOND KOTZER, PLAINTIFF, BEING DULY SWORN, TESTIFIED AS FOLLOWS:
PRELIMINARY QUESTIONS BY: THE MASTER.

Q.  What is your full name?

A.  Raymond Kotzer.

Q.  And your date of birth?

A.  REDACTED - FELL

Q.  Where do you presently reside?

A.  REDACTED - FELL          Wilkes-Barre, Luzerne County, Pa.

Q.  Where were you born?

A.  In Pennsylvania.

Q.  Is this your first marriage?

A.  Yes.

Q.  Are you of the white race?

A.  Yes.

Q.  What is your usual occupation?

A.  Night shift foreman.

Q.  What was your wife's full maiden name?

A.  Theresa Frances Kyzerski.

Q.  And her date of birth?

A.  REDACTED - FELL

Q.  Where does she presently reside?

A.  REDACTED - FELL          Wilkes-Barre, Luzerne County, Pa.

Q.  Is this her first marriage?

A.  Yes.

Q.  Is she of the white race?

A.  Yes.

Q.  What is her usual occupation?

A.  Sewing machine operator.

Q.  Where did this marriage take place?

A.  In Wilkes-Barre, Luzerne County, Pennsylvania.

Q.  On what date?

A.  August 29, 1953.

Q.  Were any children born as a result of this marriage?

A.  Yes, three.

Q.  What are their names and ages?

A.  Deborah Ann, 13 years, Sandra Jean, 11 years and Donna Marie, 8 years.

Q.  You, the husband, are the plaintiff in this action?

A.  Yes.

Q.  Who has custody of the three minor children?

A.  My wife.

Q.  On what legal grounds are you seeking this divorce?

A.  On the grounds of indignities.

BY:  THE MASTER.

That's all for now, thank you.

= # =

DIRECT EXAMINATION BY:  MR. KISAILUS.

Q.  Mr. Kotzer, you are the plaintiff in this divorce action
against your wife, is that correct?

A.  Yes.

Q.  And you live at **REDACTED - FELL**        Wilkes-Barre?

A.  That's correct.

Q.  And your wife is Theresa Kotzer?

A.  That's correct.

Q.  And she lives at **REDACTED - FELL**        in the City
of Wilkes-Barre.

A.  That's right.

Q.  And both of you are citizens of the Commonwealth of
Pennsylvania and of the United States?

A.  That's right.

Q.  And both of you have resided here in Luzerne County for
more than 2 years prior to the filing of this Complaint.

A.  That's right.

Q.  Now, you were married on the 29th August, 1953 by whom?

A.  The Reverend Kreskiewicz.

Q.  And at what Church was that?

A.  Holy Resurrection Russian Orthodox Church on North Main
Street.

Q.  Now, for the convenience of the Court, Mr. Kotzer, I want you
to relate in your own words, exactly what happened to your
marriage, why you are alleging that you have grounds for
divorce, and relate these incidents in terms of where you
lived.  That is to say, where did you first move to after
you were married?

A.  On Washington Street, right above Butler and Washington
Streets there.  We lived in a 2 room basement apartment.

Q.  O.K.  Now, will you tell the Master in your own words what
are some of the things that happened immediately after your

- 4 -

marriage between you and your wife.

A. Well, she was swearing, throwing things at me, cursing at me, filthy language, I can't even repeat in front of the young lady, and she was hanging around beer gardens Cornis's and California Bar, in fact, she worked in the California Bar at the time.

Q. In Wilkes-Barre?

A. In Wilkes-Barre. And she was seen coming out of the California Bar many times with more than one man.

Q. O.K. Now, let's start with the drinking. How much would she drink, and how often?

A. She would drink about a fifth of liquor every week.

Q. And she'd become intoxicated?

A. Intoxicated.

Q. And describe her attitude and her conduct when she was intoxicated towards you.

A. Well, very abusive, she swore at me, whatever she had in her hand she threw at me, she smashed dishes and everything else.

Q. Now, let's talk about this radical behavior. What would she throw at you?

A. Knoves, pots, pans, dishes.

Q. And were you struck by these objects?

A. Many times.

Q. Were you injured?

A. Oh yes, she caught me when she threw a knife here, it's still there, and she cut me with a knife on the hand, she hit me over the head with a bottle.

Q. Was it necessary for you to see a doctor?

A. I went up to the General Hospital, but I never reported that my wife did it.

Q. But medical care was necessary.

A. Right.

— 5 —

FELL-00001811

Q. Now, let's talk about this cursing and swearing. What were some of the words that you would be able to tell the Court she used against you?

A. Son of a bitch.

Q. She used the four-letter word?

A. The four-letter word, she used a little more than that word too, but I just can't repeat it in front of this young lady here. I mean, filthy language.

Q. What other words?

A. Goddam it, every possible curse word in the book she used.

Q. Now, did she use this language in a loud tone of voice?

A. Loud enough so the whole neighborhood hears it.

Q. And did the neighborhood hear it?

A. That's right.

Q. Did you ever receive complaints about this?

A. Yes, many times.

Q. Now, you stated that you had arguments with your wife, would you tell us how often you had these arguments?

A. Well, every night, it seems like. I used to work night shift, and every time I'd come home, she was either drinking, or she neglected the children, the children weren't being properly taken care of, there was neglect over me, she never had my meals ready.

Q. Did she wash your clothes properly?

A. She washed my clothes.

Q. Properly?

A. Not properly, they were washed.

Q. Did she clean the house?

A. No. I had many people come over to the house and they all used to say how dirty my wife was as a housekeeper.

Q. Did she take care of the children well and properly

A. No, not well.

Q. Now, what was the reason for these arguments basically, the

- 6 -

FELL-00001812

general reason?

A. Basically because she was drinking and running around with men and I used to come home and I used to tell her, "Theresa, sit home, you have children to take care of." She never wanted to sit home, she just wanted to run around.

Q. Did you drink at that time?

A. No, I didn't.

Q. Now, let's talk about this running around. How do you know she was running around?

A. People used to come and tell me, and in fact, a couple of years back, I caught her with a man, about 2 years back. Me and my friend went down having something to eat, and here she's pulling in with another man in the car, she had a car at the time. I told Theresa, I said, "Get home," I says, "You got children." I told the man to take off. He said, "Forget it, buddy," he said, "You have nothing to do with this woman," I says, "She's my wife." He said, "No it isn't." I said, "Don't tell me she's not." And she said she didn't want to come home.

Q. Is there any other incident you can tell us about?

A. Well, when we were living on Madison Street up there, she went to a Christmas party, she was drunk, fell down the steps, I said, "Theresa, let's go home," I come up to pick her up, she said, "No, I'm going home with my boss." So I finally drug her out of the place, not drug her, but took her out of the place and I got her mother, and I says to her mother, "Come on, help me take her up to the house," I says, "She's drunk." And about 2 days later after that she told me that my older daughter wasn't mine, and on Public Square there she was walking hand in hand. I said, "Theresa, let's go home." She said, "No." In fact she went back in Cornis's and she come after me with an axe, and it was right in the bar room.

— 7 —

FELL-00001813

Q. Now, did you ever see her walking?

A. Yes, I did.

Q. When?

A. Many times, many times.

Q. With who?

A. With different men, I couldn't tell you their names.

Q. You don't know their identity, but they were with her.

A. Right.

Q. Was she close and intimate?

A. She was hand in hand.

Q. She was hand in hand and she'd be walking.

A. Right. My brother seen her couple times with men walking out of a barroom. This was when he come home from work.

Q. And did your brother tell you about this?

A. He told me about it.

Q. Now, was your wife known to these people on East Market Street?

A. Very well.

Q. Did they know that you were married to her?

A. Yes.

Q. And did you feel himiliated about this?

A. Very much so.

Q. Now, where is the next place you went to live? You went to live on Madison Street, did you not?

A. Right.

Q. About when was this?

A. About a year after we were married.

Q. Now, what was the condition of your wife then, was she stil

A. She was still drinking, intoxicated, the baby was born, she come home from the hospital, she didn't even want to take care of the baby, I watched the baby, fed the baby the formula, make the formula, feed the baby, get up in the middle of the night, I used to be working day shift at the

— 8 —

FELL-00001814

time, get up in the middle of the night, walk the floor
with the baby, she didn't want to have any part of married
life.

Q. Now, was she happy about the baby's birth?

A. No, she said it was not mine, she was very much disgusted,
she didn't want to have the baby, and she just didn't
treat the baby properly either at the time.

Q. Then did you at all ever separate?

A. Yes, we did.

Q. While you were still on Madison Street?

A. Yes.

Q. What was the reason for separating?

A. The separation was because she got drunk at a Christmas
party, when I took her home, she didn't want to go home
with me, she wanted to go home with her boss.

Q. So this was the reason for your separation.

A. Right.

Q. And did you then reconcile at a later date?

A. Yes, we did.

Q. At whose instance?

A. Mine.

Q. Then did you move from there?

A. Yes, we did.

Q. And where did you go?

A. On Grant Street.

Q. And tell us what happened on REDACTED -

A. Well, she started running around - well, she never stopped
running around, she kept on running around, I was too
ashamed to live in one place too long, so I kept on moving,
about a year, two years I lived in a place, I had to move,
people was telling me my wife was running around and this
and that. So she was drinking there, she never wanted to
stay home, kept late hours, come home 3, 4 o'clock in the

- 9 -

FELL-00001815

morning, coming home, and drinking, throwing things at me.

Q. Still arguments and foul language?

A. Still arguments, still foul language.

Q. To a lesser degree or to a greater degree?

A. More so.

Q. More so, to a greater degree you mean.

A. Greater degree.

Q. Mr. Kotzer, did you ever confront your wife with her conduct and her running around with other men? And if so, what did she say?

A. Yes, I did, and she said she was running around with John Kormis, in fact she had a relationship with him, and he bought her different things, he bought her electric razors, women's electric razors, clock radios and different things like that, and when I asked her where she got them, she said she won them.

Q. She won them?

A. She won them on a chance board.

Q. And of course, when she admitted that she had a relationship, of course, she actually meant a sexual relationship.

A. Right.

Q. Now, did you then separate again?

A. Yes.

Q. And how long did you stay apart?

A. About 6 months.

Q. Then you got back together again and where were you living at that time?

A. Then we moved up to REDACTED - We got rid of the furniture, because she left the doors open, I went back to my mother's to live and I left the doors open for her to come home, she didn't come home in 30 days, so I gave

- 10 -

FELL-00001816

the furniture back to the store.  Then we moved up Lincoln
Street in a furnished apartment, and at that time I was
working down at Bass Manufacturing, and there was a Firemen's
Convention, I was working on Saturday.  Saturday came and
I called her up, I said, "Theresa," I said, "I can't get
out of Plymouth," She said, "What do you mean you can't
get out of Plymouth," She started swearing at me on the
phone.  I says, "Don't blame me, come down."  She took a
taxicab down and she couldn't get into Plymouth, so she
walked from Carey Avenue Bridge to the Polish Lions Hall,
and I was downstairs with the boss, and all these firemen
were in there, and she started drinking, got intoxicated,
she started dancing with these men, and she started making
a fool out of me.  So I said, "Theresa," I says, "Let's
go."  She says, "I'm going to smash your car."  She went
outside and she got a big rock and threw it at my car, the
cop picked her up and locked her up in jail.  My boss and I
went and bailed her out.

Q.  Did you take her home?

A.  I took her home.

Q.  On the way what did she say or what happened?

A.  Well, she started to swear at me and she jumped out of the
car.  She said, "I'm going to jump out of the car."  I said,
"You're going to hurt yourself."  She opened the door and
she jumped.  After that we separated again, I didn't see
her for about I'd say about 4 months after that.  She never
came back home, never made an attempt to come back home.

Q.  O.K.  Now, you got together again finally?

A.  Right.

Q.  At whose instance?

A.  Mine.

Q.  Did you see a priest?

- 11 -

FELL-00001817

A.  No, we didn't.

Q.  Now, when you lived on REDACTED - FELL    was she behaving herself the same way?

A.  The same way.  In fact, we had a christening down on Empire Street and my aunts were down there, and she was drunk when my aunts come down for the christening, to visit the baby, you know.

Q.  Did her conduct increase or diminish in reference to running around with other men, drinking and swearing?

A.  Increased.

Q.  Tell us how.

A.  Well, she was bringing her boy friends round to live in the house that I was living in.  Many times she fed them, many times they slept over there.

Q.  Was she drinking any more?

A.  More and more.  As far as I was concerned she was turning out to be an alcoholic.

Q.  Now, when did you live on REDACTED - FELL ?

A.  The date?

Q.  Roughly, the year.

A.  About 1961, 1962.

Q.  So that all this was going on from 1958 to 1962.

A.  Right.

Q.  Now, from 1962 until the present time, did the course of her conduct remain the same or increase?

A.  Increased.

Q.  Increased.  Were there still arguments?

A.  Still arguments.

Q.  Still drinking?

A.  Still drinking.

Q.  Still running around?

A.  Still running around.

- 12 -

FELL-00001818

Q. Still swearing?.

A. Still swearing.

Q. Still the same course of conduct that you testified to here today.

A. Right.

Q. And you lived at a few places. As a matter of fact, where did you live after Empire Street?

A. We moved down to REDACTED - .

Q. And then?

A. From REDACTED - FELL

Q. Culp. And then where?

A. Then we moved to REDACTED - FELL

Q. And then where?

A. Then we moved to REDACTED - Then Butler.

Q. Then where?

A. Then down to REDACTED - FELL

Q. REDACTED - FELL where you live right now. Why did you move so many times?

A. Well, she was embarrassing. People used to come and tell me, when I was working on night shift she had different men over the house, and she was swearing, cursing, coming in drunk, I was very embarrassed, so I kept on moving.

Q. How did she behave toward other people?

A. She threatened a woman up on Butler Street that she was going to kill her if she don't leave her alone. And in fact she was arrested and Murphey put her on a Peace Bond.

Q. She was put under a peace bond?

A. Yes, she was.

Q. Tell us any other incidents you think are important.

A. Well, many times, even this landlord, where I live right now on REDACTED - FELL ., he used to come over to the house, he said, "I had dinner up your house last night, Ray," he said, and I said, "You did?" And I said, "What were you

- 13 -

FELL-00001819

doing up the house?" He said, "I come for the rent." I says, "The rent wasn't due for another week or so." And I had an argument with my wife about it, I says, "What you bringing the landlord up here for?" And she says, "Well, we're getting free rent." I says, "What you mean, free rent, I've given you the money for the rent every month." I said, "I don't want no free rent, you just keep him out of here."

Q.  Tell us what happened on REDACTED - ?

A.  Well, they brought a man home, her and her mother, and she said, "Ray, can I bring him in for a cup of coffee?" "Theresa," I says, "Is this your boy friend?" She said, "No, it's my mother's." I said, "Your mother's? Your mother's quite old for this man," I said, "The man is only 21 years old, more like your age. Well, bring him in," I says, I didn't care any more, I was disgusted. She brought him in for a cup of coffee, after he had the cup of coffee, he went over my parlor, laid all over my parlor chair, didn't care where he threw his feet, I says, "Get your feet off my chairs," I says, "This is my house, not your's." And he started swearing at me. He says, "Your wife said I could do it," he says, "I was here before, I can do it, I can do anything I want in this house."

Q.  Did your wife ever have you arrested for anything?

A.  Yes, she did.

Q.  Why?

A.  Simply because every time she had me arrested she had men over the house. Every time. The neighbors always told me, they even called my sister up and my mother up, they said, "Come on down the house and see the man over the house while she puts Ray in jail."

Q.  Now, what was the last incident you recall, Mr. Kotzer, when you had evidence that your wife was running around with

- 14 -

FELL-00001820

other men and misconducting herself?

A.  Well, she wasn't home, she went out Saturday- - -

Q.  When was this?

A.  It was about 6 months ago.

Q.  6 months ago from this date?

A.  That's right.

Q.  All right, tell us about it.

A.  Well, she went out Saturday, said she was going out with her girl friend, she didn't come home Saturday, she didn't come home Sunday. I went up her mothers, I called up the hospitals, she had my car, I figured she was hurt or something. But then her girl friend called me up and she said, "Ray," she said - no, I called the girl friend up, rather, I says, "Rose," I says, "Where's Theresa? She went out with you last night." "Ray," She said, "I left Theresa about 12:00 o'clock." I said, "Where did she go?" "Well," she said, "Either of three places, 3 motels she either went." So she gave me two motels, and the third one I found my wife. I had my friend take me up there, him and his wife took me up there, and there she was, coming out of the motel with this man. My car was parked right out in front of the motel. I took my car, she called the taxi up, she got in the taxi with this man, and she went down and checked in Quinn's Hotel down here on Pennsylvania Ave.

Q.  Mr. Kotzer, is there anything else you would like to tell the Master concerning your domestic problems?

A.  Well, we always had trouble, her drinking and her running around, and her swearing, cutting me with a knife, hitting me over the head with a bottle, I never hit her.

Q.  Did you ever do anything to contribute to this conduct of hers?

A.  No, I didn't.

-- 15 -

FELL-00001821

Q.  Did you behave yourself as a good husband?

A.  Yes, I did.

BY:  MR. KISAILUS.

Cross examine.

CROSS EXAMINATION BY:  THE MASTER.

Q.  Mr. Kotzer, you were married in 1953, right?

A.  Right.

Q.  And you separated finally about 6 months ago.

A.  Right.

Q.  Is she living at the place where you separated from?

A.  Yes, she is.

Q.  You left there, then, about 6 months ago, is that right?

A.  No, I left there about 4 months ago.

Q.  4 months ago.  But the last episode about the motel business was about 6 months ago, wasn't it?

A.  About 6 months ago, yes.

Q.  I see.  Did she still continue to carry on after the motel incident?

A.  Yes, she did.  In fact, she didn't come home until 30 days after.  I mean, I was just going to separate, but she didn't come home at all.  And then she finally came home and we got together, and then she left again, I didn't say that before, but she left again, she went with this man, I couldn't stand this no more, she lived common law with this man up on Market Street, she lived with this man up on Market Street.  So I just couldn't stand it no more, so I left. I left for one reason too, because the kids had to go to school, and she couldn't find a place for the kids, and I had nobody to watch the kids, and they were staying with their mother, and she asked me, she said, "Ray, can I keep this house, and you keep half and me keeping half of the furniture?"  I said, "Theresa, keep all the furniture," I

- 16 -

FELL-00001822

said, "I don't care," I said, "For the kids' sake," I said, "You can have everything in the house." I didn't want to live any more in those conditions.

Q. And you've tried to put up with it now for some — — —

A. 13 to 14 years.

Q. Did you ever try to sit down and talk to her about her conduct?

A. Many times, many times.

Q. Did she promise on occasion to change?

A. Well, she promised, but she never kept her promises.

Q. How often would she go out on the average during the week.

A. Well, I'd say about pretty near every night. She would be home before I come home from work. She would have my oldest daughter right now watching the kids, the other two, and she used to get babysitters, and she used to go out every night.

Q. And of course you were working.

A. I was working night shift.

Q. So that you didn't know really when she left or how long she was gone or anything else.

A. I didn't know anything.

Q. But this was a constant situation.

A. Constant situation.

Q. And of course, you must have lived in about 10 places or so over the period of 13 years.

A. Right.

Q. And you worked steady all during this time.

A. I worked steady always.

Q. And there was no question about providing adequately or anything like that.

A. In fact, just before I took off, I gave her my vacation pay, I gave her my pay, it was over $200.00, and she didn't

— 17 —

pay a bill with it.

Q. There's no way that this marriage could work out, is there?

A. Definitely not.

Q. Why?

A. Well, I couldn't stand her any more, she's swearing, cursing, running around, abusive language, throwing things at me, cutting me.

Q. Then this divorce is not the result of any agreement both of you, is it?

A. No, it isn't.

Q. And you're paying for this divorce yourself?

A. Right.

Q. Has there been any other action for divorce or annulment started in this or any other jurisdiction other than this particular one?

A. No.

Q. That is between both of you.

A. No, there isn't.

Q. And of course, you're both citizens of the United States.

A. Right.

Q. You've lived in Pennsylvania and you've been a resident here upwards of one year prior to filing of this Complaint.

A. That's right.

Q. Does she have custody of the children?

A. Yes, she does now. I agree with her having custody of the children. I am supporting the children.

Q. Neither you, Mr. Kotzer, nor your wife, is presently or have been a member of the Armed Forces since the time you were married, have you?

A. No.

BY: THE MASTER.

I have no further questions.

- 18 -

FELL-00001824

CERTIFICATE

I HEREBY CERTIFY that the testimony taken at the Master's Hearing was taken fully and accurately by me at the time and place herein set forth; that the foregoing is a true and correct transcript of my shorthand notes;  and that the plaintiff was duly sworn according to ·law by the Master.

_____
Phyllis Usher
Standing Commissioner

NOW, this        day of November, 1967, the under-- signed Master certifies that he has read the foregoing testimony and does hereby approve the same.

_____
Joseph V. Kasper
Master

FELL-00001825

RAYMOND KOTZER,          :      IN THE COURT OF COMMON PLEAS OF

        Plaintiff,       :        LUZERNE COUNTY

   vs.                  :         IN DIVORCE

THERESA KOTZER,          :

        Defendant.      :   NO. 416 OCTOBER TERM, 1967

## CERTIFICATE

I hereby certify that I did send a Notice of Filing Master's Report to the Plaintiff, Raymond Kotzer, C/o Clement E. Kisailus, Esq., 11 West Union Street, Wilkes-Barre, Pennsylvania, and Theresa Kotzer, C/o Frank McCuigan, Esq., First National Bank Building, Wilkes-Barre, Pennsylvania, by mailing a copy of the notice to the above parties by regular United States Mail on December ___13___, 1967. A copy of said notice is hereby attached.

                                              _____
                                                 MASTER

FELL-00001826



IN THE COURT OF COMMON PLEAS

OF LUZERNE COUNTY
IN DIVORCE
NO. 416 OCTOBER TERM, 1967

RAYMOND KOTZER,

Plaintiff,

vs.

THERESA KOTZER,

Defendant.

CERTIFICATE

FILED

67 DEC 13 PM 3 05

PROTHONOTARY

JOSEPH V. KASPER

FELL-00001827

RAYMOND KOTZER,            :    IN THE COURT OF COMMON PLEAS OF

            Plaintiff,    :        LUZERNE COUNTY

    vs.                   :        IN DIVORCE

THERESA KOTZER,           :

            Defendant.    :    NO. 416 OCTOBER TERM, 1967


NOTICE OF FILING MASTER'S
REPORT


TO:  Raymond Kotzer, Plaintiff
     C/o Clement E. Kisailus, Esq.
     11 West Union Street
     Wilkes-Barre, Pennsylvania

            - and -

     Theresa Kotzer, Defendant
     C/o Frank McGuigan, Esq.
     First National Bank Building of Wilkes-Barre
     Wilkes-Barre, Pennsylvania

DEAR SIR AND MADAM:

    You are hereby notified that the report of Joseph V.
Kasper, the Master, in the above captioned matter reccommen
the granting of a divorce AVM was filed in the Office of th
Prothonotary of Luzerne County at the Luzerne County Court
House, Wilkes-Barre, Pennsylvania, on December _13_, 19(

    If no exceptions are filed by you to said report with
ten days from December __15__, 1967, the report will be
available to be presented to the Court promptly thereafter
final action.

                                    _____
                                              Master



IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY
IN DIVORCE

NO 416    OCTOBER TERM, 1967

RAYMOND KOTZER,

                PLAINTIFF

VS.

THERESA KOTZER,

                DEFENDANT

NOTICE OF MASTER'S HEARING
AND

CERTIFICATION

Clement E. Kisailus, Esq.
11 West Union Street
Wilkes-Barre, Pennsylvania

FP

FELL-00001829

RAYMOND KOTZER,                    :   IN THE COURT OF COMMON PLEAS

           PLAINTIFF    :        OF LUZERNE COUNTY

   VS.                             :            IN DIVORCE

THERESA KOTZER,                    :

           DEFENDANT    :   NO. 416        OCTOBER TERM, 1967


## NOTICE OF MASTER'S HEARING


TO THERESA KOTZER, DEFENDANT AND RAYMOND KOTZER, PLAINTIFF:

     This is to advise you that I have been appointed Master by the Court in the above entitled case to take testimony of witnesses and to make a report on the same, together with a recommendation.

     For this purpose I have fixed Thursday, November 2, 1967, at 11:00 A.M. at 35 North Franklin Street, Wilkes-Barre, Pennsylvania, as the time and place for a hearing.

     You may, if you so desire, appear at this meeting for purpose of presenting any testimony on your own behalf and to cross-examine, either personally or by your own counsel, the witnesses produced by the Plaintiff.

                                   *Joseph V. Kasper*, Master

October 23, 1967

| | | |
|---|---|---|
| RAYMOND KOTZER, | : | IN THE COURT OF COMMON PLEAS |
| PLAINTIFF | : | OF LUZERNE COUNTY |
| VS. | : | IN DIVORCE |
| THERESA KOTZER, | : | |
| DEFENDANT | : | NO. 416    OCTOBER TERM, 1967 |

## C E R T I F I C A T I O N

I, JOSEPH V. KASPER, hereby certify that as Master in the above captioned matter and that I did personally serve a Notice of Master's Hearing, a copy of which is attached hereto on the Plaintiff, c/o his attorney, Clement E. Kisailus, Esq., 11 West Union Street, Wilkes-Barre, Pennsylvania and on the Defendant, c/o her attorney, Frank McGuigan, Esq., First National Bank Building, Wilkes-Barre, Pennsylvania, on October 23, 1967.

_____
Joseph V. Kasper, Esq.

FELL-00001831

No 416 Oct 1967

Kotzer

vs

Kotzer.

Acceptance of Master
Notice of Hearing

PROTHONOTARY
1-2-3-4-5-7-8-9
FILED
1967 DEC 13   07

FELL-00001832

RAYMOND KOTZER,           :    IN THE COURT OF COMMON PLEAS OF

            Plaintiff,    :        LUZERNE COUNTY

    vs.                   :        IN DIVORCE

THERESA KOTZER,           :

            Defendant.    :    NO. 416 OCTOBER TERM, 1967


    NOW, this 23rd day of October, 1967 service of a copy of
Notice of Master's Hearing is hereby accepted and copy received.

                              Frank M. Guigan
                              Attorney for Defendant.

FELL-00001833

IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY
IN DIVORCE

NO. 416    OCTOBER TERM,    1967

RAYMOND KOTZER,

Plaintiff,

vs.

THERESA KOTZER,

Defendant.

PRAECIPE FOR APPEARANCE

FILED
PROTHONOTARY'S OFFICE
LUZERNE COUNTY
OCT 23 1967

_____ Clerk

FELL-00001834



RAYMOND KOTZER,               :   IN THE COURT OF COMMON PLEAS

          Plaintiff,         :        OF LUZERNE COUNTY

   vs.                        :          IN DIVORCE

THERESA KOTZER,               :

          Defendant.        :   NO. 416    OCTOBER TERM,   1967

PRAECIPE FOR APPEARANCE


TO THE PROTHONOTARY:

    Enter my appearance in the above-captioned matter on behalf of defendant.

                              Frank McGuigan
                          Attorney for Defendant

Dated:   October 23, 1967

FELL-00001835



IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY
IN DIVORCE

NO. 416          OCTOBER TERM, 1967

RAYMOND KOTZER,

PLAINTIFF

VS.

THERESA KOTZER,

DEFENDANT

MOTION FOR
APPOINTMENT MASTER

Now _____ 19 _____ day of _____ 19__

RECEIVED $100.00 MASTER'S FEE

BERNARD J. RODCASY, PROTHONOTARY

Per _____

FELL-00001836

RAYMOND KOTZER,        :  IN THE COURT OF COMMON PLEAS

       PLAINTIFF  :      OF LUZERNE COUNTY

   VS.              :        IN DIVORCE

THERESA KOTZER,      :

       DEFENDANT  :  NO. 416     OCTOBER TERM, 1967

<u>MOTION FOR APPOINTMENT MASTER</u>

TO THE HONORABLE, THE JUDGES OF SAID COURT:

NOW, this _____18_____ day of October, 1967, Clement E. Kisailus, Esq., Attorney for Plaintiff, respectfully moves the Court to appoint a Master in the above-captioned proceeding, the Defendant having been properly served as required by law, and in accordance with the Rules of court, and no Answer having been filed to the said Complaint.

                                  ATTORNEY FOR PLAINTIFF

FELL-00001837

RAYMOND KOTZER,                    :    IN THE COURT OF COMMON PLEAS

                    PLAINTIFF      :            OF LUZERNE COUNTY

       VS.                         :            IN DIVORCE

THERESA KOTZER,                    :

                    DEFENDANT      :    NO. 416         OCTOBER TERM, 1967

<u>APPOINTMENT OF MASTER</u>

NOW, this ___18th___ day of October, 1967, at ___9:50___ o'clock ___A___. M., it appearing to the Court that the Complaint in Divorce in the above captioned case has been duly served upon the Defendant, and no Answer or other proceedings having been filed by the Defendant or on her behalf, and on motion of Clement E. Kisailus, Esq, Attorney for Plaintiff,

IT IS ORDERED that _____, Esquire, be and he hereby is appointed Master in the above entitled case for the purpose of taking testimony and reporting thereon to the Court.

BY THE COURT,

_____ J.

FELL-00001838



IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY
IN DIVORCE
NO. 416        TERM, 1967

RAYMOND KOTZER,
                    PLAINTIFF

            VS.

THERESA KOTZER,
                    DEFENDANT

C O M P L A I N T

TO THE DEFENDANT WITHIN:
    You are hereby notified
to plead to the enclosed
Complaint within 20 days
from the date of service
hereof.

By
    Attorney for Plaintiff

FELL-00001839

RAYMOND KOTZER,        :   IN THE COURT OF COMMON PLEAS

       Plaintiff      :      OF LUZERNE COUNTY

   vs.                  :

THERESA KOTZER,        :           <u>IN DIVORCE</u>

       Defendant      :  NO.                TERM, 1967


## C O M P L A I N T

1. Raymond Kotzer is the Plaintiff and Theresa Kotzer is the Defendant.

2. The Plaintiff, Raymond Kotzer is an adult individual residing at 1REDACTED - FELL      Wilkes-Barre, Pennsylvania.

3. The Defendant, Theresa Kotzer is an adult individual residing at REDACTED - FELL      Wilkes-Barre, Pennsylvania.

4. The Plaintiff and the Defendant are both citizens of Pennsylvania and the United States of America.

5. The Plaintiff and the Defendant have resided in the Commonwealth of Pennsylvania for a period of more than two years immediately preceding the filing of this Complaint.

6. The Plaintiff and the Defendant were lawfully joined in marriage on the 29th day of August, 1953 by Reverend John Kreskievicz, Holy Resurrection Russian Orthodox Cathedral Rectory.

7. There were the following issue born of this marriage; Deborah Ann, age 13 years, Sandra Jean, age 11 years and Donna Marie, age 8 years.

8. The Plaintiff avers that in violation of her marriage vows and of the Laws of the Commonwealth the said Theresa Kotzer, Defendant, hath offered such indignities to the person of the

FELL-00001840

Plaintiff as to render the condition of the Plaintiff intolerable and life burdensome.

9.   That this action is not collusive.

10.  That there has been no prior action for divorce or annulment of marriage between the parties in this or any other jurisdiction.

WHEREFORE, Plaintiff prays that a decree in Divorce be entered divorcing Plaintiff from the bonds of Matrimony heretofore existing between Plaintiff and Defendant.

CLEMENT E. KISAILUS, ESQ.
Attorney for Plaintiff

## Affidavit

COMMONWEALTH OF PENNSYLVANIA    )
                                )   SS.
COUNTY OF LUZERNE               )


        RAYMOND KOTZER being duly sworn according to law
deposes and says that the facts set forth in the foregoing
are true and correct to the best of his knowledge, information,
and belief.

                            _Raymond Kotzer_
                            RAYMOND KOTZER



Sworn to and subscribed

before me this  2 2

day of  _Sept._      ,1967.

_Clement E. Kisailus_
Notary Public

CLEMENT E. KISAILUS, Notary Public
Wilkes-Barre, Luzerne Co., Pa.
My commission expires July 2, 1969

FELL-00001843

FILED

1967 ___ 23 AM ___

PROTHONOTARY
1-2-3-4-5-6-7-8-9

Order
of
Service
of
Complaint

COMMONWEALTH OF PENNSYLVANIA    :           IN THE COURT OF COMMON PLEA
                                :    SS
COUNTY OF LUZERNE               :           OF LUZERNE COUNTY

_Raymond Kotzer_
                Plaintiff

            vs                              No. _416 Cct_    Term, 19

_Theresa Kotzen_
                Defendant


                        NOTICE OF

                    RETURN OF SERVICE
                    ***************
                    . . . . . . . . . . . . .

_Charles Prohacka Dept Conttte_ being duly sworn according to law depos
and says that he served a CERTIFIED copy of the NOTICE _Complaint In Divor_
upon _Theresa Kotzer_ _Immediate_, at her place of employment REDACTED - FELL
_Wilkes-Barre_ Pennsylvania, on the day of _25_
_Sept_ 196_7_, at _____ A.M.
                                    P.M.  (EDST) o'clock and made
to _he_ the contents thereof.


                                    _Charles Prohacka_


Sworn and subscribed to this
_26_ day of _Sept_, 196 _7_.
_Jos B Meffs_

            NOTARY PUBLIC
    Wilkes-Barre, Luzerne Co., Pa.
    My Commission Expires Dec. 29, 1969

FELL-00001844



IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY
IN DIVORCE

NO. 416 OCTOBER TERM, 1967.

RAYMOND KOTZER,

                Plaintiff,

    vs.

THERESA KOTZER,

                Defendant.

MASTER'S REPORT

JOSEPH V. KASPER
ATTORNEY AT LAW
35 NORTH FRANKLIN STREET
WILKES-BARRE, PENNA. 18701

FELL-00001845

RAYMOND KOTZER,                :    IN THE COURT OF COMMON PLEAS OF
                              :
              Plaintiff,       :         LUZERNE COUNTY
                              :
     vs.                       :         IN DIVORCE
                              :
THERESA KOTZER,                :
                              :
              Defendant.       :    NO. 416 OCTOBER TERM, 1967.

## MASTER'S REPORT

JOSEPH V. KASPER, ESQ., the Master appointed by your Honorable Court to take the testimony of witnesses in the above entitled divorce action and to return the same together with a report thereon, respectfully represents:

I.  PLEADINGS AND SERVICE OF PROCESS AND NOTICES OF HEARING

1.  The Complaint in this action was filed on September 25, 1967. A certified copy of said Complaint was served personally upon the defendant, THERESA KOTZER, by CHARLES PROHASKA, Deputy Constable, by handing the certified copy to her personally at her residence, REDACTED - FELL Wilkes-Barre, Pennsylvania on September 25, 1967. The Affidavit of Service was filed on September 26, 1967.

2.  The Order of Court appointing the undersigned as Master was made on October 18, 1967.

3.  That FRANK McCUIGAN, ESQ., entered his appearance on behalf of THERESA KOTZER, filed of record on October 23, 1967.

4.  The Notice of Master's Hearing was accepted by counsel for the plaintiff on October 23, 1967 by FRANK McCUIGAN, attorney for the defendant, on the same date. Said acceptances are about to be filed of record.

5.  The hearing was held as scheduled on Thursday, November 2, 1967 at 11:00 A.M., after the notice given as above stated.

II.  HEARING, ATTENDANCE AND WITNESSES

At the hearing the plaintiff was present with his attorney.  The defendant was neither present nor was she represented by counsel at the hearing.

III.  ALLEGED GROUNDS FOR DIVORCE

1.  Indignities to the person.

IV.  ABSTRACT OF TESTIMONY

The plaintiff, RAYMOND KOTZER being duly sworn according to law, testified that he lives at REDACTED - FELL Street, Wilkes-Barre, Luzerne County, Pennsylvania, and that his wife, THERESA KOTZER, lives at REDACTED - FELL Wilkes-Barre, Luzerne County, Pennsylvania.  He also stated that both of them are citizens of the Commonwealth of Pennsylvania and of the United States, and that both have resided in Luzerne County for more than three (3) years prior to the filing of this Complaint by him.  They were married on August 29, 1953 by Rev. Kreskiewicz at the Russian Orthodox Church on North Main Street, Wilkes-Barre, Pennsylvania.

Plaintiff testified that after they were married they moved to a basement apartment on Washington Street, right above Butler and Washington Streets.  He testified that immediately after co-habitation his wife started to swear, used filthy language and throw things at him.  He also said that she was hanging around beer gardens, namely the California Bar and she was seen coming out of the bar many times with more than one man. He also stated that she would drink about a fifth of liquor every week, became intoxicated, and when she did that, she was very abusive.  He indicated that in her radical behavior she would throw almost anthing, including knives, pots and pans and dishes.  He said that he was struck many times by these objects and was injured.

- 2 -

FELL-00001847

He indicated that his wife threw a knife and also where he was cut and she also hit him over the head with a bottle, which medical care was required at the General Hospital. Then he related as to her cursing and swearing, using such words as a son of a bitch and the four-letter word, which the plaintiff was hesitant of repeating before the stenographer. He also indicated that she used every possible curse word in the book, and in this use, she was so loud that the whole neighborhood heard it. Plaintiff indicated that he received complaints many times concerning his wife's languge and the arguments that they had. He stated that it seemed to him that arguments developed almost every night and the arguments started because she was either drinking or neglecting the children or for the fact that she never had any meals ready.

Plaintiff stated that his wife's drinking and runnin around with other men was the major cause of the problems between the two. He indicated that he tried to remonstrate with her about staying home with her children but she never wanted to do that. She just wanted to go out all the time.

Plaintiff further testified that he caught his wife running around with a man about two years back. At the time his wife had a car and he saw her when she was pulling in with a man in the car and he tried to get his wife home and also tried to rebuff the man, who apparently did not think that she was married. Plaintiff's wife refused to come home.

Then he recalled an incident that happened when they were living on Madison Street. Apparently the wife went to a Christmas party, got drunk and fell down the steps. He tried to get her to come home but she refused and said that she was going home with her boss. He had to finally take her out of the place because of her condition. Two days later, defendant told him that his older daughter wasn't his and came after him with

- 3 -

FELL-00001848

an axe in the California bar. He also indicated that he saw his wife on many occasions walking or being with other men and that they were walking together in an intimate fashion. He also related that the defendant was known to many people on East Market Street where she apparently visited a great deal and most of these people knew that he was married to her and because of the type of conduct she carried on he was very much himiliated.

He also related that after a year that they were married they lived on Madison Street, and he had to take on his wife's duties to the extent that after the baby was born, he watched the baby, fed the baby the formula, made the formula, got up in the middle of the night even though he was working day shift. All of this was done without any interest on the part of the defendant, who did not want any part of married life.

He also indicated that his wife was very much disgusted with the birth of the baby, claiming that it wasn't his and he felt that she did not treat the baby properly.

While the parties were still on Madison Street they separated and the realbasis for it was her, the defendant, getting drunk at the Christmas party and the fact that she wanted to go home with her boss. Subsequently they did reconcile and then they moved to Grant Street and while the parties were living on Grant Street she still continued to run around, nothing changed and plaintiff said that he was ashamed to live in one place too long. He related that the defendant never wanted to stay home, she kept late hours coming in as late as 3, 4 o'clock in the morning and her foul language and arguments continued to a grater degree. He also indicated that he did confront his wife about her conduct in running around with other men. She related that she was going around with a John Kormis and as a matter of fact he bought her

- 4 -

FELL-00001849

many different things such as electric razors, clock radios and different things like that. She did in fact admit that she did have a relationship with this man. As a result of this the parties separated and were apart for six months, but they did get back together and they moved to Lincoln Street. During this period of time he related an incident where he was working in Plymouth at the Bass Manufacturing, he called her and asked to her that she come down and get him. At this time there was a Firemen's Convention. Meanwhile his wife did come down and while he was there she got drunking, started dancing with the men and making a fool out of him. When he asked her to go she said that she was going to smash his car. She did in fact go out side, and she got a big rock and threw it at his car, as a result of which a cop picked her up and locked her up in jail. Subsequently, his boss and him bailed her out.

On the way home he related that she started to swear at him and jumped out of the car. A result of this action was that they separated once again and he did not see her for about four months. During this time she never came back home or even made an attempt to come back home. However, they did finally get together and they went to live on Empire Street but nothing changed. Her conduct was the same as in the past. he related that an incident occured when they had a christening down on Empire Street and when his aunts were down there, she again got drunk. He also related that she continued to go out and go with other men and as a matter of fact she was bringing her boy friends round to live in the house when he was living in. He indicated that many times his wife fed these boy friends and they even slept there. He further indicated that she was turning out to be an alcoholic.

- 5 -

FELL-00001850

The parties stayed at Empire Street and then they moved to Sherman Street, then to Culp, and then from Culp to Pennsylvania Avenue. From there they moved to Darling Street and then to Butler Street, then down to Washington Street. He related that the reason why they moved so many times was that it was embarrassing to him when people in the neighborhood use to come and tell him about her conduct, her swearing, her coming in drunk and because of this embarrassment he kept on moving. He related that while living on Butler Street his wife threatened a woman to the extent that she was going to kill her and a matter of fact she was arrested because of this and was put under a Peace Bond.

He also related the fact that even his landlord told him that he had dinner at his house when he was away. He questioned his wife why the landlord was coming up before the rent was due she told him what should he care, he's getting free rent. He then had to order her to keep the landlord out of the house.

Another incident which the plaintiff related concerning hi wife was when the parties were living on Darling Street and his wife brought home a man and was supposeively the boy friend of his wife's mother. He said he didn't care anymore about this because he was so disgusted. However, the man that was brough in and served coffee laid all over his parlor chair. When he remonstrated with him about it the man told him he could do anything he wanted to do as he was there before and his wife said that he had permission.

He then related the last incident invovling he and his wife which happend about six months prior to the hearing. Apparently his wife went out on a Saturday night but did not come home neither Saturday or Sunday. On inquiry he tried t check out where she was and he was referred to two or three

- 6 -

FELL-00001851

motels. After checking two of them he found her in a third one. He caught her up there coming out of the motel with a man. He then followed her to Quinn's Hotel where she checked in there.

He related that the type of conduct carried on by his wife was not due to anything that he did. He said that he tried to be a good husband to her.

On cross examination he indicated that he finally separated about six months ago, that she is living separate and a part from him. He said that he got so disgusted with the motel incident and the fact that they couldn't get together and the fact that she went to live as he called it common law with a man on Market Street that he couldn't stand it any more and that he the reason that he left. In leaving he left all of the furniture which he said he did for the kids sake but he would not live any longer under those conditions. He indicated that he put up with this type of conduct for a period of about thirteen years. When asked whether or not hetried to talk to his wife he said that he did on many occasions. She did promise but she never changed and never kept her promises. He indicated that she went out almost every night. He said the type of conduct was a constant situation and there was never any question about him adequately providing as he worked steady for thirteen years. He indicated that there is no way in which this marriage could work out, that he couldn't stand his wife any more, her constant swearing, cursing and running around and throwing things at him and even injuring him. He indicated that this divorce is not a result of any agreement and that he is paying for the divorce himself. He also testified that there was no other action for divorce or annulment started in this or any other jurisdiction other than this particular one. He also indicated that they are both citizens of the United States. He has indicated that his wife has custody of the children and

- 7 -

FELL-00001852

that he is in fact supporting them, the children. He also related that neither he or his wife is presently or have been a member of the Armed Forces since the time they were married.

V. FINDINGS OF FACT.

1. The plaintiff and the defendant were married on August 29, 1953 in Wilkes-Barre, Pennsylvania, by Reverend Kreskiewicz.

2. The plaintiff has been a resident of the Commonwealth of Pennsylvania for a period in excess of one year prior to the filing of this action.

3. The Plaintiff presently REDACTED - FELL REDACTED - FELL .lkes-Barre, Pennsylvania. And, the defendant's present address is REDACTED - FELL Wilkes-Barre, Pennsylvania.

4. The plaintiff is 40 years of age and the defendant is 36 years of age.

5. There were three children born of this marriage, all presently minors, who are in the custody of the defendant.

6. There are no other actions for divorce or annulment pending between the parties in this or any other jurisdiction.

7. The plaintiff always conducted himself in a proper manner and gave the defendant no cause to complain.

8. The defendant did offer such indignities to the person of the plaintiff as to render his condition intolerable and his life burdensome.

9. There is no agreement between the parties with reference to the procurring of a divorce.

10. The defendant has shown no good faith or interest in a reconciliation.

- 8 -

FELL-00001853

VI.   CONCLUSIONS OF LAW

1.   The plaintiff and the defendant contracted a legal marriage and the marriage relation still subsists between them.

2.   The parties are properly before this Court.

3.   The Court has jurisdiction over both of the parties and of the subject matter.

4.   The facts testified to by the plaintiff are sufficient to meet his burden of proving the averments in the Complaint setting forth a cause of action on the grounds of indignities to the person.

5.   There has been no fraud or collusion between the parties to this action.

6.   The plaintiff is an innocent and injured spouse.

7.   The plaintiff is entitled to a divorce from the bonds of matrimony on the grounds of indignities to the person.

VII.   RECOMMENDATION

In accordance with the above Findings of Fact and the Conclusions of Law the Master finds that the record in this case will support the granting of a divorce from the bonds of matrimony.

                                        JOSEPH V. KASPER, ESQ.
                                              MASTER

December 12, 1967.

FELL-00001854



FELL-00001855

Raymond Kotzes     Complaint in Divorce.

| | |
|---|---|
| Judgment | |
| Debt | |
| Interest | |
| Costs | |
| Atty. | |
| Atty. Com. | |

Exit Sept. 25, 1967,

416   FINAL DECREE GRANTED

vs.

Theresa Kotzes

9:42 A.M.

Now this Sept 26, 1967, Charles Brahushes, Deputy Constable, says that he served a certified copy of Complaint in Divorce, upon Theresa Kotzes, personally at her place of residence, 229 N. Washington St. Wilkes Barre, Pa on the 26 day of Sept, 1967, at    made known to her the contents thereof Filed

And Now October 18, 1967, Joseph V. Kasper Esq, is hereby appointed Master. By the Court, Hourigan J.

Nov 23 October 1967 by Praecipe filed Frank M. Sugar Esq directs the Prothonotary to enter his appearance on behalf of the defendant

Nov 24 Oct. 1967 Notice of Master's Hearing and Certification filed

Nov 22 November 1967 affidavit of non military service filed

Nov 13 piener 1967 Master's Report & Testimony filed

Nov 13 December 1967 Notice of filing Master's Report filed

Now Dec 28 1967 THE COURT HAVING CAREFULLY READ, SCRUTINIZED AND CONSIDERED the EVIDENCE IN THIS CASE AND THE REPORT OF ... OF LAW AND DISCUSSION OF THE SAME, AND ...

SEPERATED FROM ... Raymond Kotzes ... Raymond Kotzes ... BE DIVORCED AND ... BETWEEN ... Raymond Kotzes ... Theresa Kotzes ... DEFENDANT, Raymond Kotzes ... Theresa Kotzes ... CLAIM ACCRUING TO EITHER THE AT ANYTIME HERETOFORE IN PURSUANCE OF SAID MARRIAGE SHALL CEASE AND DETERMINE.

BY THE COURT Hourigan J.

CERTIFIED FROM THE RECORDS THIS 23 DAY OF March A.D. 20 01 CAROLEE A. MEDICO, PROTHONOTARY PER D. Votrursc

M000076

FELL-00001857

# EXHIBIT 147

# ARREST WARRANT AFFIDAVIT

Louise Pesotski

**DISTRICT JUS...CE**
MAGISTERIAL DISTRICT NO.11-03-08
50 Second Street Plains Pa 18705



| COMPLAINT NUMBER | YEAR | TYPE | NUMBER |
|---|---|---|---|
| H 31945 | 1991 | C | 42 |

Complaint Numbers if Other Participar

| INCIDENT NUMBER | UCR NO. | OTN |
|---|---|---|
| 91-407 | | C564894-1 |

OMMONWEALTH OF PENNSYLVANIA
OUNTY OF _____LUZERNE_____

**COMMONWEALTH OF PENNSYLVANIA**

DEFENDANT:                **VS.**

NAME    Donald Robert FELL
AND        REDACTED - FELL Inkerman
ADDRESS   Jenkins Township Pa 18640

Ptlm. Sam Nardone          Jenkins Township Police Dept.          654-1281
(Name of Affiant)          (Police Department or Address of Private Affiant)          (Telephone Number)

being duly sworn (or affirmed) before me, according to law, deposes and says that there is probable cause to believe that:

PROBABLE CAUSE BELIEF IS BASED ON THE FOLLOWING FACTS AND CIRCUMSTANCES: (see instruc. below)

On 3-04-90 at about 1600 Hrs. this officer recieved a call to go to   REDACTED - FELL
Inkerman. Upon arrival this officer spoke to Debbie Fell that she wanted her ex-husband
Donald Fell to leave her home. At that time this officer asked  the above named Defendant
to leave the home  in which he refused.

---

## PLEASE READ AND FOLLOW THESE INSTRUCTIONS CAREFULLY

1. If information was obtained from another person, e.g., an informant, a private citizen, or a fellow law officer, state specifically what information was received, and how and when such information was obtained. State also the factual basis for believing such other person to be reliable.

FELL-00001858

# EXHIBIT 148

CONTACT SHEET

CASE NUMBER:

CLIENT NAME: *fall*

ADDRESS:

MONTH: April 90 - May 90

WORKER: *Crushfalli*

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE) |
| | 2. ) OUTCOME: (WHAT TRANSPIRED) |

| | |
|---|---|
| Date: April 24<br>Location: P-Office<br>Who Seen: 3conker<br><br>9:30 | 1.) to discuss report<br>2) not in trail later<br>on today<br><br>2. ) |
| May 1<br>P-Officer<br>3conker<br><br>1:30 | 1) to discuss reports<br>2) not in trail later on today |
| May 1<br>P- theresa Sharpe<br>2:00 | 1) to discuss report<br>2) no answer |
| May 8<br>home visit<br>C 1:45-2:15<br>mr & mrs. fell | 1) to discuss reports<br>2) trailer was clean but<br>cluttered.<br>Debbie said ok stayed<br>away for 3 days until<br>things settled down. |

FELL-00001859

no protection order, they were [illegible].
she can't afford one. We [illegible] to the magistrate
Donald was charged w/ D.V.I. — has to go through A.R.O.
no charges on this incident.

Children were at a friends house & the one checked came
to ask if they can stay down there.

denial report that cops were to the house, said
cops were at the neighbors house.

mary Ann ← Couldn't remember the cops name but said she was a
lady. Children were at [Inkerson] trailer Park
w/Rose?. . Her daughter plays w/ Rose's daughter

Donald — 4th [illegible] elem   {little league}
teri  — 2nd    "    "  {Boy scouts}
        doing really good in school - improved.

m. [illegible] @ Packett Auto Parts   on [Kidder] St in
        WB.

mrs. sell works 12 to 8   at Suburn publishing

living in this trailer one year - wants to
stay here because the children are doing
really well in school.

FELL-00001860

# EXHIBIT 149

# INCIDENT REPORT

| | | INCIDENT REPORT NUMBER |
|---|---|---|
| **Jenkins Township Police Department**<br>46½ Main Street, Inkerman<br>Jenkins Township, Pennsylvania 18640 | DATE OF REPORT 24 Apr. 90<br><br>STATION _Jenkins Twp._ CODE 219 | 90-162 |

| NAME | Last | (First) | (Middle) AGE/SEX/RACE | PHONE |
|---|---|---|---|---|
| | Fell | Donald | | |

ADDRESS: REDACTED - FELL, _In Kirman, Jenkins Township_

| DATE | REPORTED BY: |
|---|---|
| 21 April 1990 | Ron Cugano 655-0115 |

| TIME OCCURED | LOCATION OF INCIDENT |
|---|---|
| Approx. | Pad 8 Arrone Trailer Park |

| SECTION | OFFENSE |
|---|---|
| N/A | Child Abandonment |

| STATUTE OR ORDINANCE | TOTAL AMOUNT OF PROPERTY STOLEN |
|---|---|
| N/A | N/A |

**DETAILS OF INCIDENT:**

On 21 April 1990 at approx. _____ hours this officer met Mr. Ron Cugano at the Jenkins Township Municipal Building. Mr. Cugano stated that Donald Fell, Jr. and Terry Fell showed up at his trailer this date stating that their mother & father had a fight and that they left the house because their father threatened to kill their mother and their mother left the residence leaving the children with Donald Fell, Sr. The children were afraid so they went to the Cugano residence because they are friends of his children. Mr. Cugano further stated that he was willing to keep the children over night since he was going for Pizza for them and just gave them a bath and got them ready for bed.

This officer then spoke with a Mary Ann Lombre from the Bureau of Children & Youth Services who stated that she would speak with Mr. and Mrs.

| CHECK: ☐ UNFOUNDED | REPORTING OFFICER'S SIGNATURE: | BADGE NUMBER | SUPERVISOR'S INITIALS |
|---|---|---|---|
| ☑ CLEARED ☐ NOT CLEARED | | | |

FELL-00001861

Cupano and give them permission to keep the children over-night. She also stated that she would turn all information over to an Intake Officer on Monday. This officer then informed Ms. Rambus that Children & Youth Services were notified in September of the condition is in the Fell residence.

This officer then spoke with a Mrs. Sharp, the children's Maternal Grandmother who stated that she would pick up the children in the morning from the Cupano residence and keep them at her house. (Phone No. 822-7135). This officer then spoke, again, with Mary Ann Rambus and asked her to clear everything with the children's grandmother.

This officer later spoke with Ron Cupano who stated that his wife spoke with Mr. Fell and told him that she had his children and that he stated that "I don't give a fuck where my children are or what you do with them."

FELL-00001862

# EXHIBIT 150

CASE NUMBER:

CLIENT NAME: Fell

ADDRESS:

MONTH: June 90

WORKER: Carol Gacci

---

CONTACTS

1. ) GOAL OF CONTACT. (PURPOSE)
2. ) OUTCOME: (WHAT TRANSPIRED)

Date: June 1
Location: P- M. Cupono
Who Seen: 4:00

1) to discuss resident w/ Cupono residence
1. ) Mr & Mrs. Cupono want food shopping. Spoke to M.C. mother.
2. ) Wk left name & phone #

---

June 1
P Debbie Fell
4:05

1) Wk discusses the outcome of the case w/ Mrs. Fell

2) casework will be assigned for ongoing service due to domestic disputes & alcohol usage.

Wk is attempting to contact officer Zoonker & schedule a time so we can both come to the home & address these issues. Mrs. Fell feels it is a good idea & is in agreement.

Her husband does not work on this.

She starts a new job tonight 11 to 7 in Dupont. Wk asked her what about the job she had & she said they are going to close down soon so she started looking for something else.

She picks her husband up @ 5 & sometimes they have to go to Donald's game & don't get home until 8:30.

Wk will call officer now & see if Dorothy would be set up. Tues would be a good day. He checked with Q & school & the 20th of you will be here from work. Will let her know.

---

FELL-00001863

?- Jenkins
tup police

no one is answering.

654-3316

4:10

June 4
p-cupano
residence

10:30

1) to discuss incident
2) no answer

FELL-00001864

# EXHIBIT 151

SERVICE PLANNING/FAMILY FUNCTIONING

Family Name: ▓▓▓

**Complete the following for Service Planning:**

1.  **Date case accepted for service:** May 8, 1990

2.  **Reason(s) for accepting this case: (Identify the Protective Service Issues present in the family)**

On April 21, 1990 Officer Zcanker of the Jenkins Township Police Department notified the on-call worker to report that the parents of the Fell children were fighting and the father threatened to kill the mother in front of the children. The mother left the trailer and the father was intoxicated. The children ran to a neighbor's house for help and this neighbor contacted the police. ▓▓ and Donald Fell stayed at the Cupano residence overnight and in the morning the children went with their maternal grandmother who is Theresa Sharpe. This case is being assigned for ongoing services due to the ongoing neglect issues, domestic problems and the alcohol usage of both parents. This worker discussed this case with Officer Zcanker who reported the police are continuously at this home for domestic disputes. This officer stated that in September 1989, Children and Youth was contacted regarding a domestic dispute and the children were not being taken care of. This officer feels the children should be placed with the maternal grandmother who seems very appropriate. Mr. Fell was arrested for DUI twice within ten days. This officer had denied Mr. Fell A.R.D. as he was intoxicated and hit a child who was riding his bike. On Mr. Fell's second offense, he didn't show up for his arraignment and was placed in jail for a two week period and he was also driving without a driver's license. This officer stated that Mr. Fell is always intoxicated and several times she wanted to take Mrs. Fell to file for Protection from Abuse Order, but she had refused to do so.

This worker discussed this case with Mrs. Sharpe who stated her daughter's husband is a drunk. Mrs. Sharpe states Mr. Fell is very belligerent, cursing all the time and calling her daughter names and won't allow her to go to a friend's house or to go to church. Mrs. Sharpe states since the children were sexually molested by a babysitter, Mr. Fell has been continuously drinking ever since then. Mrs. Sharpe states her daughter would do very well on her own without him and the two weeks he was incarcerated, things were fine.

On May 8, 1990, this worker met with Mr. & Mrs. Fell to discuss this incident. Mrs. Fell stated to worker she left the trailer for three days until things settled down. Both Mr. and

1

FELL-00001865

Mrs. Fell deny there was any physical violence in the home on that night. Mrs. Fell states that her daughter, ████ after school went to a friend's house and Mr. Fell sent Donald to this home in order to get ████. The children then contacted their parents and asked if they could stay over night. On May 16, 1990, this worker again went to the home and met with Mrs. Fell and her two children to discuss this incident. This worker questioned both Teri and Donald who gave worker the same story as their parents.

This worker informed Mr. & Mrs. Fell that this case will be assigned for ongoing services at the agency and worker recommends that both of them become involved in drug and alcohol counseling and marital counseling. Mr. & Mrs. Fell were agreeable to these services.

### 3.  FAMILY FUNCTIONING

A)  Economic:  Both Mr. & Mrs. Fell are employed full time and their combined income is approximately $400 a week. Mrs. Fell states they are able to meet their financial expenses.

B)  Housing:  Mr. & Mrs. Fell and their two children reside in a trailer at 7 Main Street, Inkerman, PA. The family has lived in this trailer for approximately one year. The trailer has three bedrooms, kitchen, bath and living room. Worker has found the trailer to be clean, but cluttered as it appears to be small for the family of four.

C)  Medical Care:  Dr. Stanish is utilized as the family physician. ████ or Donald do not have any outstanding medical problems.

D)  Educational History of Parents:  Mrs. Fell quit school in the 10th grade at Coughlin High School. Mrs. Fell never went for her GED. Mrs. Fell is employed for the past 8 months at Suburban Publishing in Exeter. Prior to this job, Mrs. Fell had worked at S&L Graphics, Hart-Hanks and other factories.

Mr. Fell graduated from Meyers High School and had two years of college while he was living in Florida. Mr. Fell works at Auto Pachter on Scott Street in Wilkes-Barre and was assistant manager, but was recently demoted to another position due to his incarceration. Prior to this job, Mr. Fell also worked at Sears for five years as a service manager and also worked at Mr. Donut. Mr. Fell is employed from 8:30 A.M. to 5:00 P.M. and Mrs. Fell is employed from 12:00 A.M. to 8:00 A.M.

2

FELL-00001866

E)  Educational History of Child(ren):  Donald is in the 4th grade and ███████ s in the second grade and they both attend Lincoln Elementary School in Pittston.  Worker contacted the guidance counselor regarding Teri and Donald and was told they present no behavioral or attendance problems and they are both average students.


F)  Physical Care and Hygiene:  This worker has observed the children to be dressed neatly and in clean clothes and appropriate for the weather conditions.  The physical hygiene and appearance of Mr. & Mrs. Fell and the children are not an area of concern.


G)  Family Interactions (Describe strengths, conflicts, and behaviors):

    1)  Adult Interaction:  Mr. & Mrs. Fell have been married since November 1979 and before they were married they had lived together for two and a half years.  Mr. & Mrs. Fell deny any physical violence within the home.  Mrs. Fell stated that they do argue like any other married couple and denied being abused by her husband.  Mr. & Mrs. Fell have denied ever being abusive to their children.  Mr. Fell admits to having a few drinks and stated that this is done so at night in his own home.  Mr. and Mrs. Fell intend to stay together and are willing to work on their marriage.  Mrs. Fell has never gone through with a Protection from Abuse Order.


    2)  Parent/Child(ren) Interaction:  Worker has observed both children with their parents and they do not seem to be afraid to go to either one.  It appears Mrs. Fell is much closer to Teri and said that if ███████ has to be placed, the separation would be very hard for her.  Donald appears to align with his father.  The parents discipline the children by withholding privileges and sending them to their room.  The parents say both children usually accept limits placed upon them.

    As far as relatives, there is minimal contact with extended family members.  Mrs. Fell's mother, Theresa Sharpe, has been a resource for ███████ and Donald in the past and would intervene when a domestic dispute took place.  However, this worker questions the relationship between Mrs. Fell and her mother, as Mrs. Fell had stated to this worker if her children had to be removed, she would want them with a stranger before she would place them with her own mother.

3

FELL-00001867

3) <u>Sibling Interaction</u>: ███████nd Donald appear to get along with one another. Donald is currently on the Little League Team and is also in Boys Scouts.

H) <u>Community involvement (legal, school, agencies, relatives, neighborhood, etc.):</u>

Mrs. Fell has stated to this worker she has never had any legal involvement with the law. However, Mr. Fell was incarcerated for a two week period in April of 1990 when he failed to appear for a court arraignment on his DUI charges. Mr. Fell was released on his own recognizance.

The police were called to the Fell home on several occasions due to domestic disputes. Mr. Fell had two DUI arrests within a two week time period. On October 31, 1989 Mr. Fell was arrested for DUI and also hit a child who was riding his bicycle. On November 10, 1989, Mr. Fell was again arrested for DUI. This worker had spoken with Office Zcanker and stated to worker she had denied him ARD.

This agency originally became involved with the Fell family on March 11, 1985 when their two children were sexually abused by their babysitters. The family was referred to Victims Resource Center and actively participated in counseling until July 1985. The case was then closed on March 22, 1985. On April 21, 1985, this family was again referred to Children and Youth Services by the Kingston Police. The Kingston Police had taken protective custody of the two Fell children and they were placed on a temporary basis with their maternal grandmother, Theresa Sharpe, who was also a foster parent at the time. Mr. Fell was found walking down the street after being stabbed in the back by his wife. When the police took Mr. Fell to his home, they found Mrs. Fell profusely bleeding from the leg from a stab inflicted by a Mr. Fell. They had been drinking heavily that day███████a physical altercation took place as they were both unable to deal with the issue of their children being sexually abused. The children at the time were asleep and unharmed.

Mr. and Mrs. Fell have been married for ten years. Mrs. Fell stated to worker that she feels they have a good marriage, but they do fight like any married couple and they do not fight in front of the children. Mr. Fell admits to havi███████drink occasionally at night, he does not feel he or his wife have a drinking problem. Mr. & Mrs. Fell have agreed to undergo a drug and alcohol evaluation at Court Advocate.

Mr. & Mrs. Fell have agreed to undergo a drug and alcohol evaluation at Court Advocate.

4

FELL-00001868

Mr. & Mrs. Fell maintain minimal contact with extended family members and appear to rely on one another for support. In the past, Theresa Sharpe, maternal grandmother, has intervened during a domestic dispute. This worker questions the relationship between Mrs. Fell and her mother. Mrs. Fell does rely on her mother to babysit as she feels she cannot trust another babysitter since the incident with her children. Mrs. Fell's parents are divorced and she has no contact with her natural father, but her mother resides at 32 East Chestnut Street in Wilkes-Barre. Mrs. Fell states that her mother remarried and her stepfather died when she was very young. Mrs. Fell has three other sisters, one who resides in Virginia, a 16 year old who still lives at home with her mother and the other one living next door to her mother. Theresa Sharpe had informed this worker that Mr. Fell is divorced from his first wife and has three children. However, his wife and his children do not have any contact with him due to his drinking. Both Mr. Fell's parents are deceased. Mr. Fell has two sisters one in California and the other in Florida and contact is maintained by phone.

Family's Attitude Toward Community: Mr. and Mrs. Fell are receptive to services with the agency and stated that they intend to keep their marriage together and would follow any recommendations that would improve their marital relationship. The Fell's have had past involvement with Children and Youth Services.

I) Worker's hypothesis about the cause of the problems in the family:

Mr. and Mrs. Fell have been involved with Children and Youth Services in the past due to domestic disputes and alcohol usage. Mr. and Mrs. Fell admit to drinking on occasion, however, they do not feel a problem exists.

This worker feels the alcohol usage and domestic problems have adversely effected their inability to provide a stable home environment for their children. This worker feels this type of physical behavior has a negative impact on their children and it has not happened yet, but it may, that the children could end up in the middle of their dispute and seriously get injured. This worker feels the marital relationship needs improvement as they need to communicate with one another and not resort to violence as a way of getting each other's attention. Mr. and Mrs. Fell have very little insight into the cause of their problem and tend to minimize them.

5

FELL-00001869

The family is somewhat isolated from extended family members and do not receive much support.  This family could benefit from active involvement with Children and Youth Services as well as Court Advocate and marriage counseling.  This worker will be filing a Dependency Petition in order to ensure services are provided to this family.


Date: June 5, 1990     Carol Galli

Carol Galli, GPS Intake Caseworker


Mark J. Zara, GPS Intake Supervisor


CG/MJZ:LM


Date transcribed:   June 4, 1990


6

FELL-00001870

# EXHIBIT 152

CONTACT SHEET

CASE NUMBER:

CLIENT NAME: Fell

ADDRESS:

MONTH: Nov

WORKER: D.Geiman

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE) |
| | 2. ) OUTCOME: (WHAT TRANSPIRED) |

Date: 11/28/90
Location: Home
Who Seen:

Teri
Debbie

1. ) Unannounced Visit

2. ) Danny was outside playing w/ friends.
Teri was in the kitchen eating pie.
Debbie informed who that Don had signed himself into a Detox on Friday night. - He will be there until Fri & then he will attend out patient counseling w/ Tom Lavelle at Choices in Nesbitt Hosp. - this counseling will also include family counseling sessions on Sats - from 10:30 - 2:30pm.

FELL-00001871

Don back in the house. When he
is out of detox he will go to
Visions   (shelter)

Debbie also told her don quit
his job b/c they had cut back on his
hrs.
  (Panther Auto).

FELL-00001872

# EXHIBIT 153

CONTACT SHEET

CASE NUMBER:

CLIENT NAME: Fell

ADDRESS:

MONTH: January

WORKER: D. Summ

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE)<br>2. ) OUTCOME: (WHAT TRANSPIRED) |
|---|---|
| Date: 1/14/91<br>Location:<br>Who Seen: Home<br><br>Debbie<br>Teri<br>Donny Jr. | 1. ) To review 11/90 FSP<br><br>2. ) — Debbie agreed to sign, however there was no signature page.<br><br>Wkr discussed the C.O.A. (children of alcoholics) groups with Teri & Donny.<br><br>Debbie reported that Don is staying at Visions, but every once in a while he does stay there.<br>She claims she attended 2 appts. at Catholic Social Service but now her car doesn't walk so she hasn't returned — |

FELL-00001873

Wkr explained that she could utilize
Lorene/Wyoming Counties Transportation as long
as she had an MA card.

Wkr instructed her to call &
schedule an appt for next week
& then call this wkr to schedule
transportation. She said she'd call
tomorrow.

Wkr also encouraged her to
go to these appts. w/ Dan and
wkr informed her that Lori
Troy (court advocate) would like
her to come in w/ Dan for a few of
his OH sessions.

FELL-00001874

# EXHIBIT 154

CONTACT SHEET

CASE NUMBER:

CLIENT NAME: Fell

ADDRESS:

MONTH: Feb.

WORKER: D. D. Germa

| CONTACTS | 1.) GOAL OF CONTACT: (PURPOSE) |
|---|---|
| | 2.) OUTCOME: (WHAT TRANSPIRED) |
| Date: 2/14/91<br>Location: Home<br>Who Seen:<br><br>Debbie<br>Denny<br>Teri | 1.) Unnannounced Visit<br><br>2.) Debbie informed wkr that she went to a D&A appt. w/ Don & learn that appt. They have decided to not get back together.<br>Wkr asked Denny & Teri how they felt + Denny just shrugged his shoulders + said he didn't care. Teri said she didn't want to live w/ her dad.<br>Debbie said "it feels like there's been a huge weight lifted from my shoulders since he left." Dt said Don came + picked up his clothes + said |

FELL-00001875

she could get rid of the rest of his staff

— Donny + Leri said they both enjoyed
the C.O.A. groups. — Donny then ~~$$~~
left to ~~to~~ play w/ his friends.

Debbie was cooking supper.

Wkr encouraged Debbie to continue w/
the counseling at Catholic Social Services
& possible include the kids so they
can deal with the separation.

Debbie said she is interested in
returning to work, but wants to wait
until the summer is over.

FELL-00001876

# EXHIBIT 155

# INTENTIONALLY LEFT BLANK

FELL-00001877

# EXHIBIT 156

# INTENTIONALLY LEFT BLANK

FELL-00001878

# EXHIBIT 157

CONTACT SHEET

CASE NUMBER:
CLIENT NAME: Fell
ADDRESS:

MONTH: March
WORKER: D S Germano

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE) |
| | 2. ) OUTCOME: (WHAT TRANSPIRED) |

Date: 3/19/91
Location: Home
Who Seen:
Debbie
Denny Jr
Teri

1. ) Scheduled visit.

2. ) Denny said hello +
he liked the groups —
then he rec'd 2 phone
calls (one right after the
other) + he said
goodbye + left. He
starts baseball in 2 wks.
Teri was at the
kitchen table + she
talked to wkr a/b what
she did in the COA grps
+ that she liked them.
Debbie said Den had

FELL-00001879

Come back to pick up the rest of
his clothes. He had brought
the police up there to ensure
that there would be no probs.

She said he threw his keys
on the table & left; however the
house key was not there.

She said she has spoken of her
counselor at C.S.S. + has asked for
family counseling instead of marital counsel
— They have not gotten back to her yet.

Teri said she doesn't really like
her dad + she didn't want him
to move back.

Debbie had meat out on the counter
defrosting for supper.

FELL-00001880

# EXHIBIT 158

# CHILDLINE REPORT OF SUSPECTED CHILD ABUSE AND NEGLECT
## FOR CHILDLINE USE ONLY

| DATE OF ORAL REPORT 4/18/93 | PENDING COMPLAINT NUMBER GPS | COUNTY WHERE ABUSE OCCURRED Luzerne |  |
|---|---|---|---|
| INVESTIGATING COUNTY Luzerne | CPS WORKER Mary Lou Mehl | GIVEN | TIME: 8:25 DATE: |
| PRIOR REPORTS ☐ YES (See attached) ☐ NO ☐ INSUFFICIENT INFO. | CHILDLINE WORKER Lorrie Deck | RECEIVED | TIME: 8:06 DATE: |

### REPORTING SOURCE (Confidential)

| NAME | |
|---|---|
| ADDRESS | TELEPHONE NUMBER ☐ Work ☐ Home |

| SOURCE OF KNOWLEDGE OF SITUATION ☐ OBSERVED ☐ TOLD BY ANOTHER PARTY | DATE |
|---|---|

NAME/ADDRESS OF OTHER PARTY:

| ACTIONS TAKEN OR ABOUT TO BE TAKEN ☐ PHOTO-GRAPHS ☐ HOSPITAL-IZATION ☐ MEDICAL EXAM ☐ X-RAYS | POLICE (LIST DEPARTMENT) ☐ | EMERGENCY ☐ CUSTODY TAKEN | OTHER (SPECIFY) ☐ |
|---|---|---|---|

| 1. NAME OF CHILD (Last, First, Initial) All #8 | SOC. SEC. NO. | BIRTHDATE | SEX ☐ M ☐ F |
|---|---|---|---|
| ADDRESS (Street, City, State & Zip Code) REDACTED - FELL    Wilkes Barre | | COUNTY | |
| 1A. PRESENT LOCATION IF DIFFERENT THAN ABOVE | | COUNTY | |
| 1B. SCHOOL OR DAY CARE (NAME & ADDRESS) | | GRADE | ☐ Regular Class ☐ Special Class |
| 2. BIOLOGICAL/ADOPTIVE MOTHER (Last, First, Initial) Unknown | SOC. SEC. NO. | D.O.B. | TELEPHONE NO. Unknown ☐ Work ☐ Home |
| ADDRESS (Street, City, State & Zip Code) Same as 1 | | | COUNTY |
| 3. BIOLOGICAL/ADOPTIVE FATHER (Last, First, Initial) Unknown | SOC. SEC. NO. | D.O.B. | TELEPHONE NO. Unknown ☐ Work ☐ Home |
| ADDRESS (Street, City, State & Zip Code) Same as 1 | | | COUNTY |
| 4. LEGAL GUARDIAN/AGENCY WITH CUSTODY | SOC. SEC. NO. | BIRTHDATE | SEX ☐ M ☐ F |
| ADDRESS (Street, City, State & Zip Code) | COUNTY | TELEPHONE NO. ☐ Work ☐ Home | |
| 5. PLACEMENT AGENCY | | | |
| ADDRESS (Street, City, State & Zip Code) | COUNTY | TELEPHONE NO. ☐ Work ☐ Home | |
| 6. ALLEGED PERPETRATOR (Last, First, Initial) parents | SOC. SEC. NO. | RELATIONSHIP TO CHILD | SEX ☐ M ☐ F |
| ADDRESS (Street, City, State & Zip Code) | D.O.B. | COUNTY | TELEPHONE NO. ☐ Work ☐ Home |
| 7. ALLEGED PERPETRATOR (Last, First, Initial) | SOC. SEC. NO. | RELATIONSHIP TO CHILD | SEX ☐ M ☐ F |
| ADDRESS (Street, City, State & Zip Code) | D.O.B. | COUNTY | TELEPHONE NO. ☐ Work ☐ Home |

### 8. FAMILY HOUSEHOLD COMPOSITION (Excluding Above Names)

| | NAME (Last, First, Initial) | AGE or D.O.B. | RELATIONSHIP TO CHILD | | NAME (Last, First, Initial) | AGE or D.O.B. | RELATIONSHIP TO CHILD |
|---|---|---|---|---|---|---|---|
| A. | Unknown | 11? | male | E. | | | |
| B. | Terry | 9? | female | F. | | | |
| C. | | | | G. | | | |
| D. | | | | H. | | | |

Commonwealth of Pennsylvania    Department of Public Welfare    Office of Children Youth & Families    CY 47C - 9/90

FELL-00001881

4.23.93 ...ting To ...
cc Q. S...

**9. SPECIFIC ALLEGATIONS:** Describe what ...pened to child. When and where did alleged abuse... ...ect occur? What is child's current condition? What's frequency & severity of alleged abuse/neglect?

DATE OF INCIDENT 4/17/93

Chn are frequently lft home alone RS believes parents were not all night, are still not home. Parents appeared drunk when they left last night. Male ch has out ~~...~~ somewhere until 11 pm. Unk if sib was home alone or not during that time period. Parents have done this one other time

**10. ADDITIONAL RISK FACTORS: CHILD**

**A. DESCRIBE ANY PHYSICAL, MENTAL OR BEHAVIORAL FACTORS THAT MAY PLACE THE CHILD AT RISK:**

Chn home alone

**B. DOES THE CHILD APPEAR TO NEED IMMEDIATE MEDICAL ATTENTION?** ☐ NO ☑ UNKNOWN ☐ YES    IF YES, PLEASE EXPLAIN:

**C. DOES THE CHILD APPEAR TO BE FEARFUL, SUICIDAL OR WITHDRAWN?** ☐ NO ☑ UNKNOWN ☐ YES    IF YES, PLEASE EXPLAIN:

**11. ADDITIONAL RISK FACTORS: FAMILY**

**A. DESCRIBE ANY CARETAKER/PERPETRATOR CHARACTERISTICS THAT PLACE THE CHILD AT RISK:**

**B. DESCRIBE THE EXTENT OF PERPETRATOR(S) ACCESS TO CHILD:**

HHM

**C. IS THERE ANY SUBSTANCE ABUSE IN THE HOUSEHOLD?** ☐ NO ☑ UNKNOWN ☐ YES    IF YES, PLEASE EXPLAIN:

See Above

**D. DOES THE CARETAKER/PERPETRATOR HAVE A HISTORY OF VIOLENCE OR SEVERE EMOTIONAL PROBLEMS?** ☐ NO ☑ UNKNOWN ☐ YES    IF YES, PLEASE EXPLAIN:

**E. WHAT IS THE ENVIRONMENTAL CONDITION OF THE HOME?**

Unknown

**F. WILL CHILD BE AT RISK DUE TO CPS INVOLVEMENT?** ☐ NO ☑ UNKNOWN ☐ YES    IF YES, PLEASE EXPLAIN:

FELL-00001882

# EXHIBIT 159

CONTACT SHEET

CASE NUMBER:

CLIENT NAME: Fell

ADDRESS:

MONTH: May

WORKER: D. Geiman

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE) |
| | 2. ) OUTCOME: (WHAT TRANSPIRED) |

Date: 5/1/91

Location: Phone

Who Seen: Mrs. Fell

'eft Sunday afternoon
returned Tues.
Bunker slept at friend's
(Todd) Sat.

She thinks Mr. Fell
may have done
it himself.

C.S.C.
↓
April 22 — went
to C.S.C.

1. ) Mrs Fell called to cancel today's appt. She said her mother is having a birthday party for Donny Jr. after school.

2. ) She said she had been out of town for a couple days. She left Sunday afternoon + returned Tues. afternoon. Wkr. asked her where she was Saturday night. She said Donny was sleeping over at his friend Todd's house, + Teri was sleeping at her girlfriends house. Be she was home most of the night.                     over

FELL-00001883

W/a explained to her a/b the
referral that came in on April 27.
She said the kids were not home
on Saturday; and she doesn't know
anything a/b Mr Fell being there —
She said she walked to the convenient
store for cigarettes + when she came back
she did notice that the knob on the
back door was broken. She really didn't
think too much a/b it then; but ~~she~~
She says it is possible that Mr.
Fell broke in. — She thinks he may
have even called Helpline. B/c she has
told him it's over + he wants to
get back together.    She said she is
dating this guy who is a carpenter + he's
really nice + the kids like him. That's
who they went away w/. They went
to Conn. to meet his parents for their
anniversary party.
                                    Con't

FELL-00001884

Debbie said C.S.S. never
Called her back to have family
Counseling — So she went to C.S.C
    She had one appt. on April 22
and now she has to schedule an
appt. of Dr Housha for Danny.
    She said she does have some probs.
W Danny — B/c he tries to act like
his dad.
        She asked ukr to come out tomorrow
instead of today.

FELL-00001885

# EXHIBIT 160

CONTACT SHEET

CASE NUMBER:

CLIENT NAME: Fell

ADDRESS:

MONTH: May

WORKER: LD Seiman

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE)<br>2. ) OUTCOME: (WHAT TRANSPIRED) |
|---|---|
| Date: 5/2/91<br>Location: Home<br>Who Seen:<br>Mrs Fell<br>Donny<br>+<br>Teri<br>Al ? | 1. ) Scheduled Visit to review 4/90 FSP & discuss goals fir 5/91 FSP.<br><br>Mrs. Fell introduced wkr to her paramour who was on the couch. She said he has not been staying there - He works 3rd shift.<br><br>Wkr reviewed previous FSP & Debbie signed it.<br><br>Donny came home from school & sat at the Kitchen table & talked to wkr for a few minutes. |

FELL-00001886

He said things are going well, but
he does miss his dad ~~sometimes~~.
He then went outside to play
w/ his friends.

Debbie said she went to one
appt at CSI & she is scheduled
to take Donny to see Dr Harsha - (she
showed us the appt. card). She thinks the
kids need to deal w/ her & Mr Fell
separating.

WKU asked Debbie if she has been
drinking at all & she said no—
her boyfriend doesn't drink. There were
no signs of alcohol in the home.

Teri was just returning from
her C.O.A. group as who was leaving,
but when did ~~stop~~ & talk to ~~her~~ for
a few minutes.

FELL-00001887

# EXHIBIT 161

CONTACT SHEET

CASE NUMBER:

CLIENT NAME: Fell

ADDRESS:

MONTH: June

WORKER: [signature]

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE) |
| | 2. ) OUTCOME: (WHAT TRANSPIRED) |

Date: 6/4/91

Location: Home

Who Seen:

Debbie
Donny
Teri

1. ) Unannounced visit to review 5/91 F.S.P.

2. ) Both children were home when wkr arrived & they appeared to be fine. Donny had stayed home from school b/c he wasn't feeling well.
    Teri went to her friend's house.
    Wkr sat down w/ Mrs Fell + reviewed her progress on the objectives in the FSP. Once it was completed she signed it.
    Debbie then told wkr she has to move out of the

trailer by July 1 b/c her landlord sold the trailer.

She has already applied to Pittston Housing Authority. But since she is not a resident of Pittston, she's low priority. — She said she does not want to live in W-B. — She has been sending the papers. Wkr told her to contact wkr if she needed any assistance or letters for any one. — She is still seeing the same guy. His name is Al Wilcox + he works at KC Construction Co. She is interested in sending the kids to camp, but was told there was no funding available. Wkr put her name on a list to Jack McCutcheon.

FELL-00001889

# EXHIBIT 162

CONTACT SHEET

CASE NUMBER:                          MONTH: June

CLIENT NAME: Fell                    WORKER: DJ

ADDRESS:

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE) |
| --- | --- |
|  | 2. ) OUTCOME: (WHAT TRANSPIRED) |

Date: 6/24/91
Location: PRove
Who Seen:

Debbie Fell

883-1109

$430⁰⁰
cont costs
&
back rent

1. ) Debbie called to give her new number.

2. ) She said she is still at the same address, but she only has until July 28, However, the Magistrate said if she paid court costs & back rent (totalling $430⁰⁰) then she could stay 30 more days (that would be until August 28). She said she's having a hard time finding a 3 bedroom apt. →

FELL-00001890

She said she's still upset
a/b the fact that Pittston
Housing Authority doesn't consider
her to be a Pittston resident.

She said she called for
Section 8, but they said she
needed an apt. first. ● Wkr
said she didn't think that's
the way they did it. Debbie
said she'd to call them again.

Wkr told her to call CEO
+ ● see if they could help w/ the
$ 435.⁰⁰.

She said she has already started
to pack her stuff, but she's thinking
a/b just getting a 2-bed room apt in Pittston
for now - So she can qualify for their
subsidized housing + then get a 3 bedroom.

FELL-00001891

# EXHIBIT 163

## CONTACT SHEET

CASE NUMBER:

CLIENT NAME: Fell

ADDRESS:

MONTH: July

WORKER: DH Feeman

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE) |
|---|---|
| | 2. ) OUTCOME: (WHAT TRANSPIRED) |

Date: 7/8/91
Location: Phone
Who Seen:

1. ) To return Debbie's call -
2. ) Her phone has been disconnected.

7/8/91

883-1109
7/8/91 l.c.

12:42pm

wkr called Directory Assistance and was given this number for Debbie Fell.

1) Same as above
2) No answer



IMPORTANT MESSAGE

FOR

DATE 7-5-91 TIME 10 A.M. P.M.

M Debbie Fell

OF

PHONE ___ AREA CODE ___ NUMBER ___ EXTENSION

7/8/91 Phone call Debbie

1) Debbie called to inform wkr that she moved to

FELL-00001892

# REDACTED - FELL / betw.

main + N. Washington) - Big grey house. - 4 bedrooms - She said she was moving today. She will call CEO to find out if they can help her w/ the security deposit. She asked me also to wait at least 2 weeks before coming out so she could get moved in + clean up the place.

w/a suggested the 24 or 25 + Debbie said that would be fine. - She'll call when she gets her new phone.

FELL-00001893

# EXHIBIT 164

CLIENT NAME: Fell

ADDRESS:

MONTH: December

WORKER: D.L. German

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE) |
|---|---|
| | 2. ) OUTCOME: (WHAT TRANSPIRED) |

Date: 12/20/91

Location: Phone

Who Seen:

Al

4/5/04

Mom had called to say was coming to pick up gifts.

1. )

2. ) Wk returned Debbie's call - She was not in. -

Al started talking to wkr - he seemed depressed & possibly intoxicated. He admitted that he did have a couple of beers. - He said he'd like to talk to wkr b/c he really loves the kids, but he does not love Debbie - only ~~her~~ as a ~~sister~~ sister - He said Debbie can't accept that. I'm not sure

FELL-00001894

him to handle it. He'd like
to talk w/ wkr b/c he
feels comfortable talking w/ this
wkr - he doesn't want to
go for counseling.
    He said he doesn't love
her + he hasn't even kissed h.
for a few months - "I can't
even go to bed w/ her."
    He feels that he is going to
have to move out, but it'll
have to wait until he feels better.
    wkr suggested that he stop
drinking b/c that will depress
him more.

FELL-00001895

# EXHIBIT 165

CASE NUMBER:

CLIENT NAME: Fell

ADDRESS:

MONTH: 9 Dec

WORKER: J Osteen

W Brian Wkunf

---

CONTACTS

1. ) GOAL OF CONTACT: (PURPOSE)

2. ) OUTCOME: (WHAT TRANSPIRED)

---

Date: 12/23

Location: Home

Who Seen:

Donny

Debbie

Teri

M

1. ) CPS Investigation

— childline # for emotional abuse.

— Brian explained to Debbie the allegations + the process. — Who spoke to Donny + he appeared to be fine at this time. He said there'd be no problems over the holidays.

— Brian said he'd be in touch of the family after New Year. to complete the

---

FELL-00001896

FELL-00001897

# EXHIBIT 166

CONTACT SHEET

ASE NUMBER:                          MONTH: January
LIENT NAME:                          WORKER:
DDRESS: Fell

| CONTACTS | 1. ) GOAL OF CONTACT: (PURPOSE) |
| | 2. ) OUTCOME: (WHAT TRANSPIRED) |

Date: 1/13/92

Location:

Who Seen: Phone

VH

1. ) To schedule an appt
2. ) for w/Kr + Brian (C)
to come out for follow
up on CPS report.
— Debbie had taken Denny
to the hospital for Blood
tests & a CAT scan.
— He will leave a
message that we'll
be out Wed. at 4:30 pm

FELL-00001898

# EXHIBIT 167