# EXHIBIT 323



**State of Vermont**
**Office of the Secretary of State**

**James C. Condos, Secretary of State**
**Brian H. Leven, Deputy Secretary**

**Vermont State Archives & Records Administration**
1078 US Route 2, Middlesex          [phone]    802-828-3700
Montpelier, VT 05633-7701           [fax]      802-828-3710
                                    www.sec.state.vt.us

**Tanya Marshall, State Archivist**

I hereby certify that the attached documents, each with an impression of our seal, are:

☐ true and accurate copies of the following records in the holdings of the State Archives located at the Vermont State Archives and Records Administration's building in Middlesex, Vermont.

X copies of the following records stored in the State Records Center at the Vermont State Archives and Records Administration's building in Middlesex, Vermont on behalf of the Family Division of the Superior Court.

**Description:**      State v. Patrick ███ #53-3-92
**Series Number:**    FC-001
**Series Title:**     Family Case Files
**Series Creator:**   Family Division of the Superior Court
**Box Number:**       AF-00093

September 26, 2013

*Marshall*

TANYA MARSHALL
VERMONT STATE ARCHIVIST





# State of Vermont

VSARA  1078 US Rte 2 -  Middlesex,
Montpelier,  VT 05633-7701

*Reference / Research Requisition Order*

| | | | |
|---|---|---|---|
| **Requisition No:** | 46372 | **Requestor:** | Rubin,Kidney,Myer & Dewolfe |
| **Operator:** | sherrel.adams | **Customer No:** | |
| **Date Received:** | 9/26/2013 12:10:3 | **Status:** | 0 |
| **DateCompleted:** | 9/26/2013 | **Job Type:** | 1 - Vital Record |
| **Completed By:** | sadams | **Online Reference No:** | |
| **Address:** | 237 N. Main Street | **Tracking No:** | |
| | Barre, VT  05641 | **Notes:** | |

| Certificate No. | Name On Certificate | Date Of Event | Item Number | Quantity | OrderItemPrice | Item Total |
|---|---|---|---|---|---|---|
| Certification | | | 9131 | 1 | $2.00 | $2.00 |
| Photocopy - Simplex | | | 9141 | 312 | $0.05 | $15.60 |

|  |  |
|---|---|
| OrderTotal: | $17.60 |
| Amount Received: | |
| Amount Due*: | $0.00 |

\* If the Amount Due is in parentheses, the amount due is owed to Reference/Research. Otherwise, it represents an amount to be refunded to the customer. No Refunds of $5.00 or less. (Please allow 6-8 weeks for processing)

If paying by check, please make check payable in U.S. funds to the Office of the Secretary of State.
Send Payment in care of The Vermont State Archives and Records Administration 1078 US Route 2,
Middlesex, Montpelier, VT 05633-7701.  Thank You.

FELL-00002763

Vermont Family Court.                                                    Addison County

---

Docket No.  53-3-92 Andm          Currier vs. Ryan

| No. | Role | Litigant Name | Attorney Name | Telephone |
|-----|------|--------------|--------------|-----------|
| p#1 | plf | Currier, Karen M. | Marsh, Pamela | 388-4026 |
| p#2 | def | ████████████ | | H:476-8971 |
| | | | | W:479-0153 |
| p#3 | min | ████████ | | |
| p#4 | gp | ████████ | Shingler, Karen | 802-865-0654 |
| p#5 | gal | Bennett, Susan REMOVED | | H:388-1252 |
| p#6 | gal | Mansfield, Tom REMOVED | | H:453-4260 |
| | | | | W:388-0853 |

Case Type:     Divorce                    Last judge: Matthew I. Katz
Case Track:    Not set                    Recused:    None
Case Status:   Disposed-Case Closed       Ripe date:  09/30/92
Next Hearing:
COPING WITH DIVORCE Entries:
    None

====================================================================
Motion/Petitions/Requests for Relief:
====================================================================

| # | | | | |
|---|---|---|---|---|
| 1 | R/to establish child support | order | MG-SJG | 03/25/93 |
| 2 | R/to establish parental rights & resp. | finord | MSK | 02/24/93 |
| 3 | R/to establish parent-child contact | finord | MSK | 02/24/93 |
| 4 | R/for Property Division | finord | MSK | 02/24/93 |
| 5 | M/for Temporary Relief | order | MSK | 01/26/93 |
| 6 | M/Grandparent's Visitation. | finord | MSK | 02/24/93 |
| 7 | M/Increased Grandparents Visit. | finord | MSK | 02/24/93 |
| 8 | M/to Continue | granted | MSK | 11/23/92 |
| 9 | P/to modify child support | order | MG-SJG | 03/25/93 |
| 10 | M/for Enforcement | granted | EJC | 04/30/93 |
| 11 | M/to Continue | denied | EJC | 04/29/93 |
| 12 | M/for Enforcement | granted | EJC | 07/13/93 |
| 13 | M/to Enforce Order for Parent-Child Contac | order | STV | 03/25/94 |
| 14 | M/for Enforcement of Child Support Order | order | MG-SJG | 06/08/94 |
| 15 | M/for Exparte Motion to Suspend P/C | order | MIK | 10/12/95 |
| 16 | M/for Leave to Withdraw | granted | MSK | 08/11/95 |
| 17 | M/to Set Aside Ex Parte Order.. | order | MIK | 10/12/95 |
| 18 | M/to Continue | granted | MSK | 08/31/95 |
| 19 | M/For Grandparent Vistation | order | MIK | 04/11/97 |
| 20 | M/to modify parent-child contact | order | MIK | 03/14/96 |
| 21 | M/to Continue | denied | CLE | 07/26/96 |
| 22 | M/to Continue | granted | CLE | 08/02/96 |
| 23 | M/to Continue | granted | CLE | 08/28/96 |
| 24 | M/to Seal Records | granted | MIK | 10/24/96 |
| 25 | M/to Continue | denied | MIK | 10/31/96 |
| 26 | M/to Continue | granted | CLE | 01/27/97 |

====================================================================

3/30/92  New party: plf Karen M. Currier -Atty.  Pamela Marsh.
         New party: def ████████████.
         New party: min ████████.
         Complaint filed by Plaintiff Currier against Defendant ███.
         Minors: 1 IV-D: no.
         MPR 5) Motion for Temporary Relief filed by Plaintiff Currier. Motion
         for Temporary Relief is set for hearing.  Service complete on
         party(s) 2: Acceptance filed. Documents served: Accept of Svc/Dft
         appeared at court.
         Consolidated Final Order for Relief from Abuse, Docket No.
         F32-3-92AnFa.
4/08/92  Appearance entered by DELETED - DUPLICATE on behalf of Defendant

FELL-00002764

█████  ██. │ Answer filed by Attorney DELETED - DUPLICATE for Defendant ████
filed by Defendant Ryan against Plaintiff Currier.

04/17/92  Temp.Hrg held. Interim Stip filed. GAL a ppointed, Custody in dispute. Needs 2-ho urs.
New party: gal Susan Bennett.

04/20/92  Interim Stip granted. Copies to attnys. Woth notices for 6/26/92 contested hrg.

05/07/92  Child Support hrg reset, notice to attny s.

05/14/92  Child Support Hrg held. P&D filed 813s, worksheet, CSO granted. Copies to attnys and reg. P&D accept svc. 5/14/92.

06/18/92  New party: gp ██████████ -Atty.  Karen Shingler.
MPR 6) Motion Grandparent's Visitation. Filed by Grandparent ████.
Motion Grandparent's Visitation. Is set for hearing.

06/25/92  Parties filed Stip. For Temp. Order.

07/17/92  Temp.Order granted.  MPR status changed to tmpord, MPR 2-5.

07/21/92  Judge Jenkins ordred motion for grandpar ent's visitation be set for hrg. Copies to Attnys, ████.

08/06/92  Hearing on Motion for grandparent's visi tation held. Stipulation and order grant ed. Copies to attnys, ████.

08/24/92  2 documents filed for party 1: Temp.Order for Relief from Abuse, Docket; No. F98-8-92AnFa consolidated.

09/08/92  1 document filed for party 1: Final Order for Relief from Abuse.

10/07/92  1 document filed for party 1: District court case materials.

10/08/92  Status Conf. Held. Set further in 30 day s. MSK/jl/wh/tape/jc.

10/21/92  MPR 7) Motion Increased Grandparents Visit. Filed by Grandparent ████n. Motion Increased Grandparents Visit. Is set for hearing.

11/23/92  Appearance entered by Kevin E. Brown on behalf of Defendant ████.
MPR 8) Motion to Continue filed by Defendant ████. Motion to Continue given to judge.
MPR 8) Motion to Continue given to Judge M. S. Kupersmith.
Entry order re MPR 8) Motion to Continue.  Ex parte motion. Granted MSK.

12/21/92  MPR 9) Petition to modify child support filed by Defendant ████.
Petition to modify child support waiting for Memo in Opposition.

12/22/92  Status Conf. Held. Dft incarcerated as o f 12/21/92. Cust/Vis in dispute. Set fur ther SC in 30 days. (Check Motion).
Status Conference set for 01/25/93 at 08:30 AM.

01/08/93  Status Conference scheduled for 01/25/93 rescheduled.
Status Conference set for 01/26/93 at 08:30 AM.  Status Conference.

01/26/93  Status Conference held.  MSK/TAPE.
Parties agreed upon visitation, and file d Amended Stipulation Regarding Relief f rom Abuse Order. Parties considering ban cruptcy to address marital debt.
Final Hearing - Uncontested Divorce set for 02/24/93 at 01:30 PM.
MPR status changed to stiphrg, MPR 5.  MPR status changed to order, MPR 5.

02/08/93  1 document filed for party 2: Accept of Svc. Of Final Order Relief.

02/24/93  Final Hearing - Uncontested Divorce held.  MSK/TAPE.
Entry order re MPR's 2-4,6-7: 2) Request to establish parental rights & resp; 3) Request to establish parent-child contact; 4) Request for Property Division; 6) Motion Grandparent's Visitation; 7) Motion Increased Grandparents Visit.  Stipulated at Hearing. Finord MSK.

3/01/93  Final Child Support Hearing set for 03/25/93 at 02:30 PM.

3/09/93  2 documents filed for party 1: Proposed Final Order for Relief from Abu; Proposed Final Order.
Proposed Orders to MSK for signatures.

3/22/93  1 document filed for party 1: Acceptance of Service of Final Order.

3/25/93  Notice of Pro Se appearance filed by Plaintiff Currier.
Final Child Support Hearing held.  MG-SJG/TAPE.  Child Support Order.
Dispute 1-2 Judgment by Default.  MPR status changed to order, MPR 9.

4/12/93  2 documents filed for party 2: Letter requesting Enforcement and; Modification of Final Order.

4/13/93  MPR 10) Motion for Enforcement filed by Defendant ████ Motion for Enforcement to be set for hearing.
Status changed to dpju.

FELL-00002765

Motion Hearing set for 04/30/93 at 01:00 PM.
Sent to Attorney for service on client Defendant ███: NOH, copy of mprfiled w/affidavits.
Certified Mail/Restricted Plaintiff Currier: NOH, Motion for Enforcement, Aff (2).
First Class Mail Defendant ███: NOH, copy of Motion, Aff. (2).

04/28/93   2 documents filed for party 1: Acceptance of Service of Motion for; Enforcement, Affidavit, NOH.
MPR 11) Motion to Continue filed by Plaintiff Currier. Motion to Continue given to judge.

04/29/93   Entry order re MPR 11) Motion to Continue. M/Reaction Form. Denied EJC.

04/30/93   Motion Hearing held. EJC/TAPE.
Entry order re MPR 10) Motion for Enforcement. Contested Hearing. Granted EJC. Notice given on record.
Status changed to dis.

06/03/93   Notice of Pro Se appearance filed by Defendant ███.
MPR 12) Motion for Enforcement filed by Defendant ███. Motion for Enforcement is set for hearing.
Motion Hearing set for 07/13/93 at 08:30 AM.

06/09/93   Service complete on party(s) 1: Certified Mail/Restricted.

07/13/93   Motion Hearing held. EJC/TAPE.
Entry order re MPR 12) Motion for Enforcement. Stipulated at Hearing. Granted EJC. Entry Order on the record: Parent child visitation agreed between parties - every other weekend starting 7/23 or 7/24 either Sunday or Saturday - depending on when ███ picks up child. Father and mother - no contact except in emergency for 90 days - reset for further hearing on need to continue Order, 10/14/93 at 8:30 a.M. Motion as heard parties stipulation.

10/04/93   Status changed to dpju.
Status Conference set for 10/14/93 at 08:30 AM.
First Class Mail Plaintiff Currier: NOH.
First Class Mail Defendant ███: NOH.
First Class Mail Grandparent ███ NOH.

10/14/93   Status Conference held. EJC/TAPE.
Entry Order: court to prepare entry order.

10/19/93   Order GRANTED; copies to pltff & dft.
Status changed to dis.

11/08/93   1 document filed for party 2: Accept of svc of Entry Order 10/18/93.
Case Closed.

12/14/93   Notice of Pro Se appearance filed by Defendant ███
MPR 13) Motion to Enforce Order for Parent-Child Contac filed by Defendant ███n. Motion to Enforce Order for Parent-Child Contac to be set for hearing.
Motion Hearing set for 01/20/94 at 08:30 AM.
Certified Mail/Restricted Plaintiff Currier: Motion to Enforce Order for PC/Contact; Affidavit, Coversheet; Sheriff Service Info Sheet; Defendant's Pro se Appearance form; NOH for 1/20/94; Did not send Sheriff Svc Info Sheet.
First Class Mail Defendant ███: NOH, returned check made out to Sheriff.

2/28/93   Service complete on party(s) 1: Certified Mail/Restricted. Documents served: green card.

1/17/94   Telephone call to Plf at the Grand Union, had to leave message for her to call Family Court as soon as possible. Telephone call to Def at his employment, had to leave message for him to call Fam ily Court as soon as possible.

1/18/94   Telephone call from Plf and Def. Both are clear that the 1/20/94 hrg is off and the hrg is now set for 2/11/94 at 3:00 p.M.
Motion Hearing scheduled for 01/20/94 rescheduled.
Motion Hearing set for 02/11/94 at 03:00 PM.
First Class Mail Plaintiff Currier: NOH.
First Class Mail Defendant ███ NOH. Party removed.

2/11/94   Motion Hearing scheduled for 02/11/94 cancelled.

2/15/94   New party: gal Tom Mansfield.
First Class Mail Plaintiff Currier: GAL Order,NOH.

First Class Mail Defendant ▮▮▮: GAL Order,NOH.
Telephone call to Rutland Family Court, Debbie, to explain that Judge
Cashman has recused himself and that this case need to be set in
their court.Debbie gave me the date of 3/2/94 with Clarissa, Case
Manager. Notices done and sent to GAL,Atty Barrer
a,Defendant,▮▮▮▮.
First Class Mail Grandparent ▮▮▮n: GAL Order,NOH.

03/02/94    1 document filed for party 2: Ltr from Dismas House.
03/05/94    Hrg is set in Rutland for 3/25/94.All parties noticed.
03/11/94    MPR 14) Motion for Enforcement of Child Support Order filed by
            Plaintiff Currier. Motion for Enforcement of Child Support Order to
            be set for hearing.
03/14/94    Telephone call to Rutland Family Court. Two hour hrg is set for
            March. Telephone call to Atty Barrera, Amy stat es that they did not
            recieve the NOH for the settlement conf with Rutland Family Court
            Case Manager. Amy states that Atty Barrera will probably not be
            representin g Karen Currier as she has not contacted him and he did
            not have a phone number o r address at which to contact her. She has
            not retained him for the settlement conference in Rutland.
            Attorney John R. Barrera withdraws.
            Hearing to Establish Wage Enforcement set for 04/07/94 at 03:00 PM.
            First Class Mail Plaintiff Currier: NOH.
            Certified Mail/Restricted Defendant▮▮▮: Motion,Aff.NOH.
03/16/94    1 document filed for party 4: Ltr to Court.
03/25/94    Motion Hearing held.   STV/TAPE.
03/30/94    Entry order re MPR 13) Motion to Enforce Order for Parent-Child
            Contac.  Contested Hearing. Order STV.  Order signed by Judge STV on
            3/30/94.
03/31/94    Rutland Family Court sent Plf & Def copy of Order of 3/30/94. Copy
            for GAL in file.
04/07/94    Hearing to Establish Wage Enforcement was continued as the Plf could
            not get her car started and the Def did not object to the continuance
            via telephone. The Magistrate suggests that this is a good case for
            Case Manager to handle.
04/11/94    First Class Mail Guardian ad litem Mansfield: Order signed by Judge
            STV 3/30/94.
04/27/94    Telephone call to OCS to see if they can do a settlement conference
            May 10th. They are fille up and do not have another day available
            until June. Percy will need to case manage this one.
05/17/94    Case Managers Conference set for 05/24/94 at 09:00 AM.
            First class mail w/Acknowledgment Plaintiff Currier: NOH for 5/24/94.
            First class mail w/Acknowledgment Defendant▮▮▮: NOH for 5/24/94.
05/24/94    Case Managers Conference held.  PHW/OFFREC.
            Parties entered into stip. CSO to the Magistrate for review.
            1 document filed for party 1: 813.
            1 document filed for party 2: 813, copy of 3 paystubs, insurance card.
06/08/94    Magistrate reviewed CSO and signed it.  Child Support Order.
            Copies of the 6/8/94 CSO sent to parties with acceptances. Copy sent
            to Reg.  Case Closed.
06/27/94    1 document filed for party 2: Acceptance of svc of CSO.
07/13/94    1 document filed by Attorney John R. Barrera for party 1: Accept of
            svc of CSO filed 6/8/94.
5/19/95     Appearance entered by Pamela Marsh on behalf of Plaintiff Currier.
            MPR 15) Motion for Exparte Motion to Suspend P/C filed by Plaintiff
            Currier. Motion for Exparte Motion to Suspend P/C given to judge.
            Entry order re MPR 15) Motion for Exparte Motion to Suspend P/C.  Ex
            parte motion. Granted MSK.  Order.
            Attorney Kevin E. Brown withdraws.
5/31/95     Coversheet,Memeorandum,Affidavit, Affidavit,Affidavit,Motion to
            Modify, Ex-Parte Motion to Suspend PC/C, Order w/NOH:Service complete
            5/26/95.
6/13/95     Motion Hearing set for 07/10/95 at 03:00 PM.  Please disregard the
            Notice of Hearing for July 3, 1995. This is not a Family Court Day, I
            mistakingly thought it was.
            NOH to Def restricted mail.Others 1st class.
5/14/95     1 document filed by Attorney Pamela Marsh for party 1: Accept of svc

Order/NOH.

06/20/95  1 document filed for party 2: Accept of Svc/Grn card.

06/28/95  Telephone call from Atty Marsh. Concern that GAL may have been re-activated w/o a request from the parties. Telephone call to GAL, he did receive NOH, I asked him to disregard the NOH and we will not re-activate him unless the Judge tells me to. He had no problem with that.

07/07/95  Motion Hearing scheduled for 07/10/95 Judge conflict.
Motion Hearing set for 07/20/95 at 08:30 AM.  This will be a status conference.  ███k may appear by telephone.
Motion Hearing scheduled for 07/20/95 corrected.
Motion Hearing set for 07/20/95 at 01:30 PM.  This will be a status conference as we are waiting for the results to the evaluation. ██████ may appear by telephone.
Motion Hearing scheduled for 07/20/95 corrected.
Motion Hearing set for 07/20/95 at 01:00 PM.  This will be on the Plf's Motion to Suspend Parent-child Contact. If the evaluation is not completed by then the Judge will decide if the contested hearing will go forward or if it will be used as a status conference.
Telephone call to Atty Marsh, re: 7/10 cancelled. Telephone to Dismas House to leave message for Def. Telephone to a # in St.Albans that Atty Marsh provided for Def. Sent NOH to Atty Marsh,Def,████n.
Appearance entered by Kenneth Mark Appel on behalf of Defendant ███.

07/14/95  MPR 17) Motion to Set Aside Ex Parte Order. Filed by Defendant ███.
Motion to Set Aside Ex Parte Order. To be set for hearing.

07/20/95  Motion Hearing held.  MSK/TAPE.
Entry Order: Tom Mansfield is excused as GAL. Parties do not believe another GAL is necessary.  This case needs two full days.
Motion Hearing set for 09/07/95 at 10:00 AM.
Motion Hearing set for 09/08/95 at 10:00 AM.  Party removed.

07/27/95  1 document filed by Attorney Kenneth Mark Appel for party 2: Ltr from Def dismissing Atty Appel.

07/28/95  MPR 16) Motion for Leave to Withdraw filed by Defendant ███. Motion for Leave to Withdraw given to judge.

08/01/95  mpr 16 given to Judge, MSK on vacation.

08/11/95  Entry order re MPR 16) Motion for Leave to Withdraw.  Ex parte motion. Granted MSK.  Order part of Motion dated 8/11/95.
Attorney Kenneth Mark Appel withdraws.

08/14/95  Telephone call to Atty Marsh for a status. Atty Marsh states that the Def has said that he will not contest the request for him to do an evaluation before visitation will resueme. Yet, the evaluator states that the Def stormed out at the beginning of the session and Atty Marsh has not heard from the evaluator or the Def. Leave on for the contested 2 days, however, back it up.

08/30/95  MPR 18) Motion to Continue filed by Plaintiff Currier. Motion to Continue given to judge.

08/31/95  Entry order re MPR 18) Motion to Continue.  M/Reaction Form. Granted MSK.
Motion Hearing scheduled for 09/07/95 continued.
Motion Hearing scheduled for 09/08/95 continued.
Status Conference set for 09/28/95 at 09:00 AM.

09/28/95  Status Conference held.  MIK/TAPE.
Entry Order: Psychological evaluation has been done.  Pam Marsh hopes that this matter can be resolved based on recommendations in evaluation. Reset in two weeks.
Status Conference set for 10/12/95 at 08:30 AM.
NOH for 10/12 sent to Atty Marsh, Def, & Grandparent ██████████ via 1st class mail.

10/12/95  Status Conference held.  MIK/TAPE.
Entry Order: Parties have settled this case and filed proposed order.
Entry order re MPR's 15,17: 15) Motion for Exparte Motion to Suspend P/C; 17) Motion to Set Aside Ex Parte Order.  Stipulated at Hearing.
Order MIK.  Case Closed.
Copy of 10/12/95 Order accepted in hand at court.

12/14/95  MPR 19) Motion For Grandparent Vistation filed by Grandparent ███.
Motion For Grandparent Vistation to be set for hearing.

12/18/95  2 documents filed by Attorney Pamela Marsh for party 1: memorandum in opposition to motion for; grandparent visitation.

12/26/95  Domestic Hearing set for 01/11/96 at 01:00 PM.
Certified Mail/Restricted Defendant ▇ : noh.

12/29/95  Service complete on party(s) 2: Certified Mail/Restricted. Documents served: noh.

01/11/96  Domestic Hearing held.  MIK/TAPE.
Entry order re MPR 19) Motion For Grandparent Vistation.  Contested Hearing. Granted MIK.  Scheduling/entry order.
Entry Order: Grandmother to see Dr. Candido. Unless Candido says otherwise, Grandmother mayi start seeing boy at Discovery Zone, 2hrs once month. After 2 months, review.

02/06/96  1 document filed for party 2: Correspondence from Dft.
Status Conference set for 03/14/96 at 09:30 AM.
First Class Mail Plaintiff Currier: Notice of Hearing.
First Class Mail Grandparent ▇ : Notice of Hearing.
Certified Mail/Restricted Defendant ▇ : Notice of hearing; Blank Pro Se Appearance form.
MPR 20) Motion to modify parent-child contact filed by Defendant ▇ . Motion to modify parent-child contact is set for hearing.  MPR status changed to isset, MPR 19.

02/08/96  Service complete on party(s) 2: Certified Mail/Restricted.

03/14/96  Notice of Pro Se appearance filed by Defendant ▇ .
Status Conference held.  MIK/TAPE.
Entry Order: Grandma has met with Dr. Candido. He wants to speak with her M.D. And therapist. Grandma expects to pay Candido and get report by April 1.  Expects favorable report and visit at Discovery Zone soon. Dad has not seen ▇ . Counsellor Carruth wants to see boy right after contact; Father off only Mondays; Carruth appt changed to Vergennes - Mondays - should work out.  MPR status changed to order, MPR 19-20.  Case Closed.
Entry order re MPR's 19-20: 19) Motion For Grandparent Vistation; 20) Motion to modify parent-child contact.  Stipulated at Hearing. Order MIK.

04/01/96  Status changed to dis.  Case Closed.

06/03/96  2 documents filed by Attorney Karen Shingler for party 4: Affidavit of Karen Shingler; Proposed Order.

06/14/96  1 document filed by Attorney Pamela Marsh for party 1: Objection to Proposed Order.

06/18/96  1 document filed for party : Psychological Evaluation.

07/03/96  Status Conference set for 08/08/96 at 01:00 PM.
First Class Mail Plaintiff Currier, Defendant ▇ Grandparent ▇ : Notice of Hearing.

07/23/96  1 document filed by Attorney Pamela Marsh for party 1: Certificate of Service.

07/26/96  MPR 21) Motion to Continue filed by Grandparent ▇ . Motion to Continue given to judge.
Entry order re MPR 21) Motion to Continue.  M/Reaction Form. Denied CLE.

08/02/96  MPR 22) Motion to Continue filed by Plaintiff Currier. Motion to Continue given to judge.
Entry order re MPR 22) Motion to Continue.  M/Reaction Form. Granted CLE.
Mpr 22 Order to Attys.
Status Conference scheduled for 08/08/96 rescheduled.
Motion Hearing set for 09/12/96 at 09:30 AM.  Please Note: The hearing set for August 8, 1996 has been cancelled. Parties are notified to appear at the above date and time for the Motion for Grandparent Visitation.
First Class Mail Plaintiff Currier, Defendant ▇ Notice of Hearing.

08/07/96  1 document filed by Attorney Pamela Marsh for party 1: Letter updating status of case.

08/27/96  MPR 23) Motion to Continue filed by Plaintiff Currier. Motion to Continue given to judge.

08/28/96  Motion Hearing scheduled for 09/12/96 rescheduled.
Entry order re MPR 23) Motion to Continue.  M/Reaction Form. Granted

FELL-00002769

CLE.
Motion Hearing set for 09/13/96 at 11:00 AM.
First Class Mail Plaintiff Currier, Defendant ████, Grandparent ████: Notice of Hearing.

09/13/96  Motion Hearing held.  MIK/TAPE.
Entry order re MPR 19) Motion For Grandparent Vistation.  Contested Hearing. Denied MIK.  Notice given on record. Written findings filed. Grandmother won't turn over Candido- Whitman evaluation; No report = No Visits.  Case Closed.

10/21/96  Appearance entered by Karen Shingler on behalf of Defendant ████
2 documents filed by Attorney Karen Shingler for party 2: Dr. Candido Report; Dr. Weker Report.
MPR 24) Motion to Seal Records filed by Defendant ████. Motion to Seal Records given to judge.
Attorney Karen Shingler withdraws.

10/23/96  Motion Hearing set for 11/14/96 at 11:00 AM.
Sent to Attorney for service on client Plaintiff Currier, Defendant ████, Grandparent ████: Notice of Hearing.

10/24/96  Response re MPR 24 filed by party 1.
Entry order re MPR 24) Motion to Seal Records.  M/Reaction Form. Granted MIK.
Telephone conference set for 10/31/96 at 09:00 AM.  Attorneys may participate via telephone by calling the Court ahead of time to make the necessary arrangements.
First Class Mail Plaintiff Currier, Grandparent ████: Notice of Telephone Conference.

10/29/96  MPR 25) Motion to Continue filed by Plaintiff Currier. Motion to Continue waiting for Memo in Opposition.

10/31/96  Telephone conference held.  MIK/VTAPE.
Entry Order: Further telephone conference on Nov. 14.  Carruth plan for regular grandma visits starting Mar. 1, 1996.
Entry order re MPR 25) Motion to Continue.  M/Reaction Form. Denied MIK.  Attorneys are to status with the judge on this day and time.

11/04/96  Service complete on party(s) 2: Certified Mail/Restricted.

11/13/96  1 document filed for party : Reunification Plan.

11/14/96  Motion Hearing held.  MIK/VTAPE.
Entry Order: Court places case on hold to mid-Jan.97.

12/31/96  Status changed to dpju.
Motion Hearing set for 02/13/97 at 10:00 AM.
First Class Mail Plaintiff Currier, Grandparent ████ Notice of Hearing.
Certified Mail/Restricted Defendant ████ Notice of Hearing.

01/09/97  Service complete on party(s) 2: Certified Mail/Restricted.

01/21/97  MPR 26) Motion to Continue filed by Grandparent ████. Motion to Continue given to judge.

01/27/97  Entry order re MPR 26) Motion to Continue.  M/Reaction Form. Granted CLE.
Motion Hearing scheduled for 02/13/97 rescheduled.
Motion Hearing set for 02/21/97 at 10:00 AM.
First Class Mail Plaintiff Currier, Grandparent Gagnon: Notice of Hearing.
Certified Mail/Restricted Defendant Ryan: Notice of Hearing; Pro Se form.

02/03/97  Service complete on party(s) 2: Certified Mail/Restricted.

02/19/97  1 document filed for party 2: Letter.
████ advises Court that he is unable to attend hearing scheduled for 2/21/97 but he will be available by telephone if need be.

02/20/97  Motion Hearing scheduled for 02/21/97 cancelled.
Cancelled for divorce hrg starting today and going into tomorrow. Atty Shingler and Atty Marsh notified.

3/06/97  Service complete on party(s) 2: Certified Mail/Restricted.

3/07/97  Motion Hearing set for 04/11/97 at 10:00 AM.
First Class Mail Plaintiff Currier, Grandparent ████: Notice of Hearing.
Certified Mail/Restricted Defendant ████ Notice of Hearing; Pro Se

form.
04/11/97   Motion Hearing scheduled for 04/11/97 cancelled: case settled.
           Entry order re MPR 19) Motion For Grandparent Vistation.   Stipulated
           w/o Hearing. Order MIK.   Amended Order of Modification.   Case Closed.

FELL-00002771

STATE OF VERMONT

ADDISON COUNTY, SS.

FILED

APR 11 1997

ADDISON FAMILY COURT

|  |  |  |
|---|---|---|
| KAREN CURRIER | ) | ADDISON FAMILY COURT |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| ▮▮▮▮▮▮ | ) | DOCKET NO. F53-3-92 Andmd |

## AMENDED ORDER OF MODIFICATION

Based upon the agreement of the parties, it is hereby ORDERED as follows:

1. An Order of Modification was entered by the court on October 25, 1995, providing for a safe and gradual resumption of parent-child contact between ▮▮ and ▮▮▮▮ Over the past 1 ½ years, the parties have conducted parent-child contact in a theraputic setting. The parties now agree that visits can occur in a more normalized manner. This Amended Order of Modification is intended to replace the Order of Modification entered on October 25, 1995.

2. Karen shall be entrusted with legal and physical rights and responsibilities for the minor child of the parties, ▮▮▮▮, born ▮▮▮▮▮ 1989.

3. ▮▮ shall be entitled to parent-child contact with ▮▮▮ one weekend per month commencing in May, 1997, ~~or when ▮▮ has his own apartment, whichever is later~~. Karen or her husband shall call ▮▮ on or about the first of each month to discuss which weekend will be the best for their schedules. ▮▮ shall provide Karen with his current address and phone number. ▮▮ shall provide transportation for visits. Pick up and drop off shall be from the Middlebury Grand Union.

4. ~~▮▮ mother, ▮▮▮▮▮ shall not be part of these visits at this time. The resumption of parent-child contact for an unsupervised weekend with ▮▮ is a substantial change for ▮▮ and it is important that he be permitted to adjust to this change before the paternal grandmother is added to the equation.~~

4. ▮▮ mother, ▮▮▮▮▮▮ may have contact w/ ▮▮ during ▮▮ parent-child contact time. Initially such contact shall be for short periods of time.

Page 2

DATED at Middlebury, Vermont this ___ day of April, 1997.

Hon. Matthew I. Katz

The undersigned parties agree to the entry of this Amended Order of Modification.

Karen Currier

pro se

APPROVED AS TO FORM:

Pamela A. Marsh
Pamela A. Marsh, Esq.
Attorney for Karen Currier

Karen Shingler, Esq.
Attorney for

FELL-00002773

```
============================================================================
Vermont Family Court    SCHEDULING/ENTRY ORDER - JUDGE         Addison County
============================================================================
| Docket 53-3-92 Andm  (div)         Currier vs.  ███████                    |
|---------------------------------------------------------------------------|
Case Track:    Not set                        Last judge: Matthew I. Katz
Hearing(s) set:Motion Hearing, Thu, 11/14/96, 11:00 AM
               Telephone conference, Thu, 10/31/96, 09:00 AM
----------------------------------------------------------------------------
p# 1  plf  ___  Currier, Karen M.      ___  Marsh, Pamela
p# 2  def  ___  ████████████████       ___
p# 3  min  ___  ████████████████       ___
p# 4  gp   ___  ████████████████       ___  Shingler, Karen
p# 5  gal  ___  Bennett, Susan         ___
p# 6  gal  ___  Mansfield, Tom         ___
----------------------------------------------------------------------------
Motion/Petitions/Requests              Filed     ----- Current Status  -----
                                                 Status  Jud/Mag Date
 1  R/to establish child support       03/30/92  order   MG-SJG  03/25/93
 2  R/to establish parental rights & resp.03/30/92 finord MSK    02/24/93
 3  R/to establish parent-child contact 03/30/92 finord  MSK     02/24/93
 4  R/for Property Division             03/30/92  finord  MSK     02/24/93
 5  M/for Temporary Relief             03/30/92  order   MSK     01/26/93
 6  M/Grandparent's Visitation.        06/18/92  finord  MSK     02/24/93
 7  M/Increased Grandparents Visit.    10/21/92  finord  MSK     02/24/93
 8  M/to Continue                      11/23/92  granted MSK     11/23/92
 9  P/to modify child support          12/21/92  order   MG-SJG  03/25/93
10  M/for Enforcement                  04/13/93  granted EJC     04/30/93
11  M/to Continue                      04/28/93  denied  EJC     04/29/93
12  M/for Enforcement                  06/03/93  granted EJC     07/13/93
13  M/to Enforce Order for Parent-Child Co12/14/93 order  STV    03/25/94
14  M/for Enforcement of Child Support Ord03/11/94 order  MG-SJG 06/08/94
15  M/for Exparte Motion to Suspend P/C 05/19/95  order   MIK     10/12/95
16  M/for Leave to Withdraw            07/28/95  granted MSK     08/11/95
17  M/to Set Aside Ex Parte Order..    07/14/95  order   MIK     10/12/95
18  M/to Continue                      08/30/95  granted MSK     08/31/95
19  M/For Grandparent Vistation        12/14/95  isset   MIK     10/23/96
20  M/to modify parent-child contact   02/06/96  order   MIK     03/14/96
21  M/to Continue                      07/26/96  denied  CLE     07/26/96
22  M/to Continue                      08/02/96  granted CLE     08/02/96
23  M/to Continue                      08/27/96  granted CLE     08/28/96
24  M/to Seal Records                  10/21/96  granted MIK     10/24/96
25  M/to Continue                      10/29/96  wait            10/29/96
============================================================================

Scheduled for:              Moving party:  Commenced  Completed  Continued
Telephone conference                       _____    _____    _____
----------------------------------------------------------------------------
```

Judge's entries: *Nov 14        Carruth plan*
*for regular grandma visits starting*
*Mar 1.*

_____          _____
      Date                    Judge

```
==================================================================
Vermont Family Court    SCHEDULING/ENTRY ORDER - JUDGE    Addison County
==================================================================
| Docket 53-3-92 Andm (div)    Currier vs. █████           |
|-----------------------------------------------------------------
Case Track:    Not set                    Last judge: Matthew I. Katz
Hearing(s) set:Motion Hearing, Fri, 09/13/96, 11:00 AM
------------------------------------------------------------------
p# 1  plf  ___  Currier, Karen M.    ___  Marsh, Pamela
p# 2  def  ___  ██████████           ___  Pro Se
p# 3  min  ___  ██████████
p# 4  gp   ___  ██████████           ___  Shingler, Karen
p# 5  gal  ___  Bennett, Susan
p# 6  gal  ___  Mansfield, Tom
------------------------------------------------------------------
```

| | Motion/Petitions/Requests | Filed | Status | Jud/Mag | Date |
|---|---|---|---|---|---|
| 1 | R/to establish child support | 03/30/92 | order | MG-SJG | 03/25/93 |
| 2 | R/to establish parental rights & resp. | 03/30/92 | finord | MSK | 02/24/93 |
| 3 | R/to establish parent-child contact | 03/30/92 | finord | MSK | 02/24/93 |
| 4 | R/for Property Division | 03/30/92 | finord | MSK | 02/24/93 |
| 5 | M/for Temporary Relief | 03/30/92 | order | MSK | 01/26/93 |
| 6 | M/Grandparent's Visitation. | 06/18/92 | finord | MSK | 02/24/93 |
| 7 | M/Increased Grandparents Visit. | 10/21/92 | finord | MSK | 02/24/93 |
| 8 | M/to Continue | 11/23/92 | granted | MSK | 11/23/92 |
| 9 | P/to modify child support | 12/21/92 | order | MG-SJG | 03/25/93 |
| 10 | M/for Enforcement | 04/13/93 | granted | EJC | 04/30/93 |
| 11 | M/to Continue | 04/28/93 | denied | EJC | 04/29/93 |
| 12 | M/for Enforcement | 06/03/93 | granted | EJC | 07/13/93 |
| 13 | M/to Enforce Order for Parent-Child Co | 12/14/93 | order | STV | 03/25/94 |
| 14 | M/for Enforcement of Child Support Ord | 03/11/94 | order | MG-SJG | 06/08/94 |
| 15 | M/for Exparte Motion to Suspend P/C | 05/19/95 | order | MIK | 10/12/95 |
| 16 | M/for Leave to Withdraw | 07/28/95 | granted | MSK | 08/11/95 |
| 17 | M/to Set Aside Ex Parte Order.. | 07/14/95 | order | MIK | 10/12/95 |
| 18 | M/to Continue | 08/30/95 | granted | MSK | 08/31/95 |
| 19 | M/For Grandparent Vistation | 12/14/95 | isset | MIK | 08/28/96 |
| 20 | M/to modify parent-child contact | 02/06/96 | order | MIK | 03/14/96 |
| 21 | M/to Continue | 07/26/96 | denied | CLE | 07/26/96 |
| 22 | M/to Continue | 08/02/96 | granted | CLE | 08/02/96 |
| 23 | M/to Continue | 08/27/96 | granted | CLE | 08/28/96 |

```
==================================================================
Scheduled for:              Moving party:  Commenced  Completed  Continued
MPR 19 M/For Grandparent Vistation    gp     _____      _____      _____
------------------------------------------------------------------
```

Judge's entries: _Grandmother won't turn over Candido-Whitman eval. No report = NO visits._

Date _____    Judge _____

Off Record/Reporter ___071___    Asst. Judges ___JC___  ___WH___

lflt.ws

Family Court of Vermont
Addison County

========================================================================

E N T R Y   R E G A R D I N G   M O T I O N

========================================================================

Docket No: 59-3-92 Andm      Currier vs. ████   [Marsh/Pro Se]

Title of Motion:         Motion to Continue. No. 22

Date Motion Filed:       August 2, 1996

Motion Filed By:         Marsh, Pamela, Attorney for:
                              Plaintiff Karen M. Currier

MPR Response:            NONE

✓  Granted    Compliance by _____

___  Denied

___  Scheduled for hearing On: _____ at _____; Time Allotted _____

___  Other

<br>

_____         8/2/96
      Judge / Magistrate                    Date

========================================================================

ate copies sent to: _____         Clerk's Initials _____
opies sent to:
      Attorney Pamela Marsh for Plaintiff Karen M. Currier
      Attorney Karen Shingler for Grandparent ████████
      Defendant ████████
      Court Case File

FELL-00002776

```
===================================================================
Vermont Family Court    SCHEDULING/ENTRY ORDER - JUDGE    Addison County
===================================================================
 | Docket 53-3-92 Andm  (div)        Currier vs. ███
 -------------------------------------------------------------------
Case Track:    Not set                    Last judge: Matthew I. Katz
Hearing(s) set:Status Conference, Thu, 03/14/96, 09:30 AM
-------------------------------------------------------------------
p# 1  plf  ___  Currier, Karen M.       ___  Marsh, Pamela
p# 2  def  ___  ███████████
p# 3  min  ___  ███████████
p# 4  gp   ___                          ___  Shingler, Karen
p# 5  gal  ___  Bennett, Susan          ___
p# 6  gal  ___  Mansfield, Tom          ___
-------------------------------------------------------------------
```

| Motion/Petitions/Requests | Filed | Status | Jud/Mag | Date |
|---|---|---|---|---|
| 1 R/to establish child support | 03/30/92 | order | MG-SJG | 03/25/93 |
| 2 R/to establish parental rights & resp. | 03/30/92 | finord | MSK | 02/24/93 |
| 3 R/to establish parent-child contact | 03/30/92 | finord | MSK | 02/24/93 |
| 4 R/for Property Division | 03/30/92 | finord | MSK | 02/24/93 |
| 5 M/for Temporary Relief | 03/30/92 | order | MSK | 01/26/93 |
| 6 M/Grandparent's Visitation. | 06/18/92 | finord | MSK | 02/24/93 |
| 7 M/Increased Grandparents Visit. | 10/21/92 | finord | MSK | 02/24/93 |
| 8 M/to Continue | 11/23/92 | granted | MSK | 11/23/92 |
| 9 P/to modify child support | 12/21/92 | order | MG-SJG | 03/25/93 |
| 10 M/for Enforcement | 04/13/93 | granted | EJC | 04/30/93 |
| 11 M/to Continue | 04/28/93 | denied | EJC | 04/29/93 |
| 12 M/for Enforcement | 06/03/93 | granted | EJC | 07/13/93 |
| 13 M/to Enforce Order for Parent-Child Co | 12/14/93 | order | STV | 03/25/94 |
| 14 M/for Enforcement of Child Support Ord | 03/11/94 | order | MG-SJG | 06/08/94 |
| 15 M/for Exparte Motion to Suspend P/C | 05/19/95 | order | MIK | 10/12/95 |
| 16 M/for Leave to Withdraw | 07/28/95 | granted | MSK | 08/11/95 |
| 17 M/to Set Aside Ex Parte Order.. | 07/14/95 | order | MIK | 10/12/95 |
| 18 M/to Continue | 08/30/95 | granted | MSK | 08/31/95 |
| 19 M/For Grandparent Vistation | 12/14/95 | isset | MIK | 02/06/96 |
| 20 M/to modify parent-child contact | 02/06/96 | isset | | 02/06/96 |

```
===================================================================
Scheduled for:              Moving party:  Commenced  Completed  Continued
Status Conference                          _____    _____    _____
-------------------------------------------------------------------
```

Judge's entries: Grandma has met w/ Dr. Candido (Mr. 12). He wants to ~~sta~~ speak w/ her M.D. + therapist Grandma expects to pay Candido + get report by April 1. Expect favorable ~~visits~~ report + visit at "Discovery Zone" soon.

_____        _____
Date                           Judge

Off Record/Reporter _____    Asst. Judges ___ JL  WH ___
dflt.ws

Dad has not seen ███████ Counsellor Carruth wants to see boy right after contact; Father off only Mondays; Carruth app't changed in Vercennes – Mondays – should work out.

Form No. 350
Supplemental Docket Sheet

## SUPPLEMENTAL DOCKET SHEET

| Defendant XXXXXXX KAREN CURRIER V. ▮▮▮▮ | Docket No. F53-3-92AnDmd | Count No. |
|---|---|---|

3/2/94 Status Conference held. Both parties present, pro se. Guardian ad Litem, T. Mansfield present. The defendant, ▮▮▮▮ filed a letter from the director of Dismiss House, Burlington as well as a Parent/Child contact plan that includes 9 requests for this court to order. These requests shall be brought to the attention of the presiding judge on a motion reaction form. Cpoies were given to all parties. This matter has been scheduled for a 2 hour contested hearing on March 25, 1994 at 10:00 a.m. The GAL shall be visiting with Mr. ▮▮▮ and his son at his residence in Burlington this coming Sat. and shall alert the parties to his opinion, and contact the court RE: status. CAR

3/25/94 Hrg. held. STV presiding. Both parties present pro se. (under advisement.) Gal, T. Mansfield present. The parties met w/ the Case Manager and entered into an agreement for Issue 4, 6, 7, 8 and 9 of the Defts. Motion. The GAL shall remain active in this case per agreement of the parties, Gal & the presiding Judge. CAR

3/29/94. Order prepared.

3/30/94 - Order Signed

3/31/94 - Mailed to parties. CAR

Init. 5M 9/81 Tri-Set VT I.I.

FELL-00002778

Sealed by Order of Court
10/24/96

FELL-00002779

STATE OF VERMONT

ADDISON COUNTY, SS.

KAREN CURRIER ) ADDISON FAMILY COURT
)
v. )
)
█████████████ ) DOCKET NO. F53-3-92 Andmd

## ORDER OF MODIFICATION

The above-entitled matter came on for hearing of all pending motions before the Addison Family Court, Hon. Matthew Katz presiding.    Plaintiff was present and represented by Pamela A. Marsh, Esq., of Marsh, Fraser & Grant, P.C..   Defendant was present and appeared *pro se* .    Based on the Stipulation of the parties and the recommendations in the Psychological Evaluation completed by Paul Candido, Ph.D. and Patricia Whitman, Ph.D., it is hereby **ORDERED** as follows:

1.  There shall be a period of supervised parent-child contact with the goal of eventually re-establishing the ~~court~~ *Previously* ordered schedule of unsupervised visits every other weekend, and weekly telephone contact.

2.  Initially, supervision shall be provided by an individual with psychological training.   Prior to the first visit, ████████ should meet with ████████ therapist, Frank Carruth, for one session to learn more about ████████ needs.

3.  The supervisor shall meet with ████████ and consult with the child's therapist before the first visit with Mr. ████.    The supervisor should be able to recognize any stress during the visits, and to facilitate a healthy interaction for ████████   The supervisor shall have the authority to terminate a visit if ████████ appears to be under stress, or if s/he feels that Mr. ████'s behavior may be harmful to ████████.

4.  The supervisor shall provide feedback to the child's therapist after each visit regarding ████████ adjustment to his relationship with Mr. ████  The supervised visits

OCT 1 2



should be followed as closely as possible with a counseling session between ▮▮▮▮▮ and his therapist, so that ▮▮▮▮ can have time to process the visit and address the feelings and memories that such contact may stimulate.

5. With the agreement of ▮▮▮▮ therapist that he is ready to move on, visits shall progress to supervised visits at Mr. ▮▮▮▮ home. If those are successful, the visits shall progress to unsupervised community visits on days proximate to ▮▮▮▮ therapy appointment, and eventually to unsupervised visits at Mr. ▮▮▮▮ home. The pace of moving toward increasingly less supervised visits should be dependent upon ▮▮▮▮ response to renewed contact with Mr. ▮▮▮, as determined by his therapist after consultation with the visit supervisor.

6. Unsupervised contact shall not occur until and unless that Mr. ▮▮▮ is able to demonstrate a reasonable period of sobriety, as determined by Jean Reinsbouro or another competent authority in the area of alcohol abuse. Mr. ▮▮▮ shall only be permitted to visit with ▮▮▮▮ if he is sober and does not smell of alcohol from prior drinking.

7. Visits shall include only ▮▮▮▮ and his father, Mr. ▮▮▮. ▮▮▮▮ paternal grandmother shall not have any contact with ▮▮▮▮ until and unless he requests it and she participates in an appropriate evaluation of herself and her relationship with ▮▮▮▮, and commits to following any recommendations made in the evaluation.

8. Ms. Currier shall have ▮▮▮▮ evaluated for fetal alcohol syndrome or fetal alcohol effects by Dr. Guttmacher in Burlington as soon as reasonably possible.

9. ▮▮▮▮ shall be referred for a comprehensive evaluation at his school to determine eligibility for special education services as an emotionally or behaviorally disordered student.

10. Supervised visits shall be started as soon as reasonably possible once a qualified supervisor is located and has the opportunity to meet with the parties.

11. Mr. ▮▮▮ shall pay for any costs of supervision that are not covered by ▮▮▮▮ s Medicaid.

12. This Order for Modification shall supersede all prior orders entered with regard to parent-child contact in this matter, including the Final Order entered March

24, 1993, the Order entered March 30, 1994, and the *ex parte* Order entered May 19, 1995. This Order for Modification resolves all pending motions.

DATED at Middlebury, Vermont this ____ day of October, 1995.

Hon. Matthew Katz, Presiding Judge

Hon. James D. Lilly

Hon. Wayne Heath

FELL-00002782

```
================================================================================
Vermont Family Court    SCHEDULING/ENTRY ORDER - JUDGE        Addison County
================================================================================
|   Docket 53-3-92 Andm  (div)        Currier vs. ███████                      |
|-----------------------------------------------------------------------------|
Case Track:    Not set                       Last judge: Matthew I. Katz
Hearing(s) set:Status Conference, Thu, 10/12/95, 08:30 AM
--------------------------------------------------------------------------------
p# 1  plf  ___  Currier, Karen M.      ___  Marsh, Pamela
p# 2  def  ___  ███████████████        ___
p# 3  min  ___  ███████████████        ___
p# 4  gp   ___  ███████████████        ___
p# 5  gal  ___  Bennett, Susan         ___
p# 6  gal  ___  Mansfield, Tom         ___
--------------------------------------------------------------------------------
Motion/Petitions/Requests              Filed    ----- Current Status  -----
                                                Status  Jud/Mag Date
1   R/to establish child support       03/30/92  order   MG-SJG  03/25/93
2   R/to establish parental rights & resp.03/30/92 finord MSK    02/24/93
3   R/to establish parent-child contact 03/30/92  finord  MSK    02/24/93
4   R/for Property Division            03/30/92  finord  MSK     02/24/93
5   M/for Temporary Relief             03/30/92  order   MSK     01/26/93
6   M/Grandparent's Visitation.        06/18/92  finord  MSK     02/24/93
7   M/Increased Grandparents Visit.    10/21/92  finord  MSK     02/24/93
8   M/to Continue                      11/23/92  granted MSK     11/23/92
9   P/to modify child support          12/21/92  order   MG-SJG  03/25/93
10  M/for Enforcement                  04/13/93  granted EJC     04/30/93
11  M/to Continue                      04/28/93  denied  EJC     04/29/93
12  M/for Enforcement                  06/03/93  granted EJC     07/13/93
13  M/to Enforce Order for Parent-Child Co12/14/93 order  STV    03/25/94
14  M/for Enforcement of Child Support Ord03/11/94 order  MG-SJG 06/08/94
15  M/for Exparte Motion to Suspend P/C 05/19/95  isset   MIK    09/28/95
16  M/for Leave to Withdraw            07/28/95  granted MSK     08/11/95
17  M/to Set Aside Ex Parte Order..    07/14/95  isset   MIK     09/28/95
18  M/to Continue                      08/30/95  granted MSK     08/31/95
================================================================================

Scheduled for:            Moving party:  Commenced  Completed  Continued
APR 15 M/for Exparte Motion to Suspend plf  ___        ___       ___
APR 17 M/to Set Aside Ex Parte Order.. def  ___        ___       ___
--------------------------------------------------------------------------------
```

Judge's entries: _Stip accepted/discussed._

_____    _____
                    Date                        Judge

ff Record/Reporter _Tape_    Asst. Judges _Heath Lilly_
flt.ws

FELL-00002783

```
=======================================================================
Vermont Family Court    SCHEDULING/ENTRY ORDER - JUDGE        Addison County
=======================================================================
| Docket 53-3-92 Andm  (div)         Currier vs. ███                     |
|------------------------------------------------------------------------|
Case Track:    Not set                         La███ dge: M. S. Kupersmith
Hearing(s) set:Motion Hearing, Thu, 07/20/95, 01:00 PM
-----------------------------------------------------------------------
p# 1  plf    / Currier, Karen M.       / Marsh, Pamela
p# 2  def    ████████████              / Appel, Kenneth Mark
p# 3  min    ___ ████████████          ___
p# 4  gp     ___ Gagnon, Joyce         ___
p# 5  gal    ___ Bennett, Susan        ___
p# 6  gal    ___ Mansfield, Tom        ___
-----------------------------------------------------------------------
Motion/Petitions/Requests              Filed      ----- Current Status -----
                                                  Status  Jud/Mag Date
1  R/to establish child support        03/30/92   order   MG-SJG  03/25/93
2  R/to establish parental rights & resp.03/30/92 finord  MSK     02/24/93
3  R/to establish parent-child contact 03/30/92   finord  MSK     02/24/93
4  R/for Property Division             03/30/92   finord  MSK     02/24/93
5  M/for Temporary Relief              03/30/92   order   MSK     01/26/93
6  M/Grandparent's Visitation.         06/18/92   finord  MSK     02/24/93
7  M/Increased Grandparents Visit.     10/21/92   finord  MSK     02/24/93
8  M/to Continue                       11/23/92   granted MSK     11/23/92
9  P/to modify child support           12/21/92   order   MG-SJG  03/25/93
10 M/for Enforcement                   04/13/93   granted EJC     04/30/93
11 M/to Continue                       04/28/93   denied  EJC     04/29/93
12 M/for Enforcement                   06/03/93   granted EJC     07/13/93
13 M/to Enforce Order for Parent-Child Co12/14/93 order   STV     03/25/94
14 M/for Enforcement of Child Support Ord03/11/94 order   MG-SJG  06/08/94
15 M/for Exparte Motion to Suspend P/C 05/19/95   granted MSK     05/19/95
=======================================================================

Scheduled for:                 Moving party:  Commenced  Completed  Continued
Motion Hearing                                _____     _____     _____
-----------------------------------------------------------------------

Judge's entries:
```

_(handwritten)_ ) Transferred ..... as GAC

```
_____        _____
        Date                         Judge

ff Record/Reporter _____   Asst. Judges _____
flt.ws
```

FELL-00002784

Form 802

| Vermont Family Court | County | Addison | | Docket Number F 53-3-92 |
|---|---|---|---|---|
| Plaintiff KAREN M CURRIER | | | Defendant V. | |

## CHILD SUPPORT ORDER

### OBLIGOR (Person Who Must Pay Child Support)

| Last Name | First Name | Middle Initial |
|---|---|---|
| | | |

Street Address: PO BOX 5473

| City | State | Zip Code |
|---|---|---|
| BURLINGTON | VT | 05402-5473 |

Telephone Number: 658-0381

Social Security Number: ___  Date of Birth: /

### OBLIGOR'S EMPLOYER

Name: INDEPENDENT FOODS

Street Address: 137 SO CHAMPLAIN ST

| City | State | Zip Code |
|---|---|---|
| BURLINGTON | UT | 05401 |

Telephone Number: 862-0800

### OBLIGEE (Person Who Receives Child Support)

| Last Name | First Name | Middle Initial |
|---|---|---|
| CURRIER | KAREN | M |

Street Address: PO BOX 3710

| City | State | Zip Code |
|---|---|---|
| VERGENNES | Ut | 05491 |

Telephone Number: 802-759-2128

Social Security Number: ___  Date of Birth:

### OBLIGEE'S EMPLOYER

Name: GRANT UNION CO INC

Street Address: WASHINGTON ST

| City | State | Zip Code |
|---|---|---|
| MIDDLEBURY | UT | 05753 |

Telephone Number:

### CHILDREN WHO ARE SUBJECT TO THIS ORDER:

| Last Name | First Name | M. | Date of Birth | Grade | Social Security Number |
|---|---|---|---|---|---|
| | | | / | | |
| Last Name | First Name | M. | Date of Birth | Grade | Social Security Number |
| Last Name | First Name | M. | Date of Birth | Grade | Social Security Number |
| Last Name | First Name | M. | Date of Birth | Grade | Social Security Number |
| Last Name | First Name | M. | Date of Birth | Grade | Social Security Number |
| Last Name | First Name | M. | Date of Birth | Grade | Social Security Number |
| Last Name | First Name | M. | Date of Birth | Grade | Social Security Number |

All children are the biological or adopted children of both parties and live at the obligee's address, except:

ADDISON FAMILY COURT
FILED
JUN 8 1994
CHIP EPPERSON
CLERK

Rev 3/92 lsmc

FELL-00002785

**Child Support Order**                                 Docket Number 53-3-92 Page 2

1. A. Physical responsibility for the child(ren) for purposes of child support is:

☐ solely with KAREN M. CURRIER

☐ split as follows

| Parent A | % of Time | Parent B | % of Time |
|---|---|---|---|
| | | | |

☐ shared as follows:

B. Physical responsibility is based on:     __ A stipulation of the parties     ✓ An Order of the Court

C. Comments _____

2. ☒ A child support worksheet is attached and incorporated as findings in this order.

3. The obligor shall pay child support in the amount of $ 40.33 per    Time Period month

beginning Date 6/1/94 . The annualized (yearly) amount of child support is $ 483.96

☒ This amount is agreed to by the parties.

4. This child support obligation includes consideration of $ 0 in annualized child care costs.

5. The obligor shall pay maintenance supplement in the amount of $ 0 per    Time Period 0

beginning Date _____ . ☐ This amount is agreed to by the parties.

6. A. Judgment for past due child support in favor of obligee is $ 240.00 Total Arrearage as of Date 5/31/94 .

Obligor shall pay $ 86.66 per    Time Period month beginning Date 6/1/94 .

☒ This amount is agreed to by the parties.

B. Judgment for past due child support in favor of the Office of Child Support is $ _____ Total Arrearage

as of Date _____ . Obligor shall pay $ _____ per    Time Period _____

beginning Date _____ . ☒ This amount is agreed to by the parties.

C. ☒ Other: Obligor agrees to repayment of arrears in an amount greater than 25% of current obligation based on his desire + ability to pay his debts.    OR $29.31/week

7. METHOD OF PAYMENT
A. ☒ WAGE WITHHOLDING ORDER

The employer of the obligor shall deduct $ 126.99 per    Time Period month
from wages for current support and arrearage payments and shall pay the amount deducted directly to:
**Office of Child Support, Support Registry, 103 South Main Street, Waterbury, VT 05671-1901.**
This order is subject to the limits on withholding contained in 15 U.S.C. Section 1673(b) and Section 303(b) of the Consumer Credit Protection Act.

☒ At any time the child support obligation is not being paid through wage withholding, the obligor shall send support payments directly to ☐ the obligee     ☒ the Office of Child Support at the above address.

☐ Other: _____

Rev. 3/92 lsmc

FELL-00002786

**Child Support Order**                                    Docket Number 53-3-92 Page 3

B. ☐ DIRECT PAYMENT ORDER

The obligor shall pay child support of ☐$ _____ per | Time Period _____ | to the
**Office of Child Support, Support Registry, 103 South Main Street, Waterbury, VT 05671-1901.**

☐ The obligor shall pay child support in the amount of ☐$ _____ per | Time Period _____ |
directly to the obligee.
This order is based on:    ☐ a finding of good cause    ☒ the written agreement of the parties

> If any support payment is found to be late by 7 days or more, after a petition for wage withholding has been filed and heard, the court shall issue a wage withholding order within 15 days of the notice sent to the obligor pursuant to Title 15 V.S.A. Section 782.

## 8. HEALTH EXPENSES

A. The ☒ obligor    ☐ obligee  shall provide health insurance for the child(ren) subject to this order.

| | Plan Name and Address | Insured's Name |
|---|---|---|
| Policy currently in effect: | Blue Cross/Blue Shield of Vt. | ███████ |
| Health Plan Policy Number 16198000 | Freedom Plan | Insured's I.D. Number (for the Health Plan) 21A ███████ |

B. Medical or other health expenses that are unreimbursed by insurance (including but not limited to expenses for eye, dental, mental health) shall be shared/split as follows: *unreimbursed or uninsured health expenses shall be shared 50% - 50% between the parties.*

C. If a parent pays a health expense of a child subject to this order and the other parent receives reimbursement from insurance for the expense, the reimbursement shall be sent to the parent who advanced payment within 7 days of receipt. If the child(ren) also have Medicaid coverage, payment is to be sent to the Department of Social Welfare, Medicaid Division within 7 days.

D. The parties shall provide each other with copies of bills for health expenses and documentation of insurance determination within 7 days of receipt.

9. Each party shall notify the:
    **Office of Child Support Registry, 103 South Main Street, Waterbury, VT 05671-1901**
    within 7 days of a change in address, employment or health insurance carrier. This notification requirement applies until all obligations to pay support or support arrearage or orders to provide visitation are satisfied.

10. This order shall remain in effect unless and until it is changed or discontinued by further order of the court or operation of law. Unless otherwise specified, an Obligor's support obligation will continue beyond a child's eighteenth birthday if the child is enrolled in, but has not completed high school.

11. Other:

_____

_____

_____

_____

_____

_____

Rev. 3/92 lsmc

FELL-00002787

**Child Support Order**                          Docket Number 53-3-92 Page 4

The above is stipulated to by the parties.

| Office of Child Support Representative | Date |
|---|---|

| Signature of Obligor | Date 5/24/04 | Signature of Obligee   Karen Currier | Date may 24-04 |
|---|---|---|---|

Approved as to Form.

| Signature of Obligor's Attorney | Date | Signature of Obligee's Attorney | Date |
|---|---|---|---|

It is so ORDERED.

| Magistrate/Presiding Judge | Date 6/8/94 |
|---|---|

| Assistant Judge | Date | Assistant Judge | Date |
|---|---|---|---|

## ACCEPTANCE OF SERVICE

### I have received a copy of this Order and I waive all other service.

| Obligor | Date | Obligee | Date |
|---|---|---|---|

## NOTICE OF RIGHT TO APPEAL

An order signed by the Magistrate may be appealed by filing a Notice of Appeal with the Clerk of the Family Court within 30 days of filing of this order.

## NOTICES

**This is a Court Order.**

All parties are expected to comply with the terms of the order for as long as it is in effect.

**Right to Seek Modification of the Order.**

A party has the right to request a modification of the child support order based upon a real, substantial, unanticipated change of circumstances.

**Right to Seek Enforcement of the Order.**

A party has the right to request the Court to enforce this Order. A party also has the right to request the Vermont Office of Child Support to assist the party to enforce this Order. If the Office of Child Support is or becomes involved in this case, based either on a current or future request for their services, or otherwise, the Office has the ability to take the following steps:

- The Office of Child Support may use any lawful collection remedies to collect any outstanding balance from the Obligor.

- The Office of Child Support may annually certify all qualifying child support debts to the Vermont Tax Department and/or the Internal Revenue Service for the purpose of tax offset.

- The Office of Child Support may report an Obligor's delinquent account balance to consumer credit reporting agencies.

Rev. 3/92 lsmc

Office of Child Support Services

OCSS 131A  (R. 11/93)

Karen M. Currier

vs.

**FAMILY COURT**

County Addison

Docket 53-3-92 Anclm

SSN

### Child Support Worksheet and Findings of Fact

| Child's Name | SSN | DOB | Child's Name | SSN | DOB |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

## PART I. CALCULATING MONTHLY AVAILABLE INCOME

| | Custodial | Noncustodial | Combined |
|---|---|---|---|
| 1. Monthly Gross Income | $ 0 | $ 988.50 | |
| 1a. Minus Self-Employment and/or Spousal Support Adjustment | – | – | |
| 2. Monthly Adjusted Gross Income | $ 0 | $ 988.50 | |
| 3. Monthly After Tax Income (From yellow Tax Conversion Table) | $ 55.14 | $ 816.30 | |
| 3a. Minus Pre-existing Child Support | – | – | |
| 3b. Minus Health Insurance | – | – 55.97 | |
| 3c. Minus Additional Self-Employment and/or Spousal Support Adjustment | – | – | |
| 4. Monthly Unadjusted Available Income | $ 55.14 | $ 760.33 | |
| 4a. Minus Additional Dependent Adjustment | – | – | |
| 5. Monthly Available Income | $ 55.14 + | $ 760.33 = | $ 815.47 |

## PART II. CALCULATING THE CHILD SUPPORT OBLIGATION

| | | | |
|---|---|---|---|
| 6. Proportional Share of Income (Line 5 for each parent divided by Line 5 "Combined") | 7 % | 93 % | |
| 7. Child Support Guideline Amount (Apply line 5 "Combined" to blue Intact Family Expenditures Table) | | | $ 189 |
| 7a. Qualified Child Care Costs | | | + — |
| 7b. Extraordinary Medical Expenses | | | + — |
| 7c. Extraordinary Educational Expenses | | | + — |
| 8. Combined Family Expenditures | | | $ 189 |
| 9. Parental Support Obligation (Line 6 for each parent multiplied by Line 8) | $ 13.23 | $ 175.77 | |

## PART III. ABILITY TO PAY CALCULATION

| | | |
|---|---|---|
| 10. Self-Support Reserve (Amount found on the green Reference Sheet) | | $ 720 |
| 11. Income Available for Support (Line 4 minus Line 10) | | $ 40.33 |
| Enter the smaller of Line 9 or Line 11 on Line 12. If Income Available for Support (Line 11) is less than $50.00, a minimum support order of $50.00 is recommended. | | |
| 12. Monthly Support Payable (From Non-custodial Line 9 or Line 11) | | $ 40.33 |
| 13. Monthly Incomes (After Support Payment) (For Custodial Parent, Line 4 plus Line 12; For Non-Custodial Parent, Line 4 minus Line 12) | $ 95.47 | $ 720 |
| 14. Maintenance Supplement | | $ |

**COMMENTS, CALCULATIONS, OR REBUTTALS TO SCHEDULE:**

Obligor's income based on $6.25/hr. for an average of 36.5 hrs/wk or $228.13/wk or $988.50/mo.

Obligor is currently unemployed, remarried, and expecting child in August, 1994.

Prepared by: Pepsis H. Worrall

Date: 5/24/94

FELL-00002789

Form 102 var
Divorce

STATE OF VERMONT
APPOINTMENT OF GUARDIAN AD LITEM

Karen Currier                          Addison Family Court
                vs.

▮▮▮▮▮▮▮▮▮                          Docket No. F53-3-92AnDmd


WHEREAS, it appears to this Court that the rights and interests of _____

▮▮▮▮▮▮▮▮▮_____, the designated ward in the above named case, may not

be adequately represented in a pending proceeding before this court;

NOW, THEREFORE, IT IS ORDERED that Tom Mansfield_____,

a reputable person and resident of the County of  Addison____, State of

Vermont_____, be and is hereby appointed Guardian ad Litem to act

for said ward and in the ward's behalf in said proceeding, until this Order

is superseded or until said proceeding is terminated.

DATED at  Middlebury___, in the County of  Addison_____,

this  15th___ day of  February_____, 19 94.

                              Family Court Judge , Edward J. Cashman


FEB 15 1994

FELL-00002790

STATE OF VERMONT
ADDISON COUNTY, SS

Karen Ryan                                    ADDISON FAMILY COURT

vs.

[REDACTED]                                    DOCKET NO.   F53-3-92AnDmd

## ENTRY ORDER

The above entitled action came for hearing on the Defendant's Motion for Enforcement on October 14, 1993.

Based on the testimony presented at the hearing the court hereby Amends the Final Order dated February 24, 1993 to add the following:

"Contact between parents shall be permitted by telephone at any reasonable time.  Contact between parents in person shall only be permitted at the time of the exchange of the child for parent-child contact."

Dated at Middlebury, Vermont this __18__ day of October, 1993.

Presiding Judge ___Edward Johnson___

Assistant Judge ___N/A___



FILED

OCT 1 8 1993

ADDISON FAMILY COURT
CHIP EPPERSON, CLERK

FELL-00002791

```
================================================================================
Vermont Family Court    SCHEDULING/ENTRY ORDER - JUDGE        Addison County
================================================================================
| Docket 53-3-92 Andm  (div)        Ryan vs. ███                             |
|------------------------------------------------------------------------------|
Case Track:    Not set                      Last judge: Edward J. Cashman
Hearing(s) set:Status Conference, Thu, 10/14/93, 08:30 AM
--------------------------------------------------------------------------------
p# 1  plf  ___  Ryan, Karen M.           ___  Pro Se
p# 2  def  ___  ██████████               ___  Pro Se
p# 3  min  ___  ██████████               ___
p# 4  gp   ___  ██████████               ___
p# 5  gal  ___  Bennett, Susan           ___
--------------------------------------------------------------------------------
Motion/Petitions/Requests            Filed      ----- Current Status  -----
                                                Status  Jud/Mag Date
1   R/to establish child support      03/30/92  order   MG-SJG  03/25/93
2   R/to establish parental rights & resp.03/30/92 finord MSK    02/24/93
3   R/to establish parent-child contact 03/30/92 finord  MSK    02/24/93
4   R/for Property Division           03/30/92  finord  MSK    02/24/93
5   M/for Temporary Relief            03/30/92  stiphrg MSK    01/26/93
6   M/Grandparent's Visitation.       06/18/92  finord  MSK    02/24/93
7   M/Increased Grandparents Visit.   10/21/92  finord  MSK    02/24/93
8   M/to Continue                     11/23/92  granted MSK    11/23/92
9   P/to modify child support         12/21/92  order   MG-SJG  03/25/93
10  M/for Enforcement                 04/13/93  granted EJC    04/30/93
11  M/to Continue                     04/28/93  denied  EJC    04/29/93
12  M/for Enforcement                 06/03/93  granted EJC    07/13/93
================================================================================

Scheduled for:                Moving party:  Commenced  Completed  Continued
Status Conference                            _____    _____    _____
--------------------------------------------------------------------------------
```

Judge's entries: *#7 of final order to permit Contact between the parents by phone as agreed only except for visitation pickups and return of child during visitation period.*

*and in person*

*and Entry order per over*

FILED

OCT 1 4 1993

ADDISON FAMILY COURT
CHIP EPPERSON, CLERK

Date _____    _____ Judge

ff Record/Reporter _____    Asst. Judges _____
mjdflt20.ws

Paragraph 7 of final order of
February 24, 1993 is amended to add

"Contact between parents permitted
by phone at any reasonable time.
Contact in person permitted only
at time of exchange of child for
parent child contact."



FELL-00002793

Form 802

| Vermont Family Court | County *Adison* | Docket Number *F 53 - 3 - 92* |
|---|---|---|

| Plaintiff *KAREN* ▮ *RYAN* | V. | Defendant ▮ ~~*FINEN*~~ *RYAN* |
|---|---|---|

## CHILD SUPPORT ORDER

| OBLIGOR (Person Who Must Pay Child Support) | OBLIGOR'S EMPLOYER |
|---|---|
| Last Name ▮ | First Name ▮ | Middle Initial ▮ | Name |
| Street Address *WOODSTOCK CORRECTIONAL CTR* | Street Address |
| City | State | Zip Code | City | State | Zip Code |
| Telephone Number | Telephone Number |
| Social Security Number | Date of Birth | |

| OBLIGEE (Person Who Receives Child Support) | OBLIGEE'S EMPLOYER |
|---|---|
| Last Name *RYAN* | First Name *KAREN* | Middle Initial *M* | Name *GRAND UNION CO INC* |
| Street Address *RT 3. BOX 3710* | Street Address *WASHINGTON ST* |
| City *VERGENNES* | State *VT* | Zip Code *05491* | City *Middlebury* | State *VT* | Zip Code *05753* |
| Telephone Number *759-2128* | Telephone Number *388 6431* |
| Social Security Number | Date of Birth | |

## CHILDREN WHO ARE SUBJECT TO THIS ORDER:

| Last Name | First Name | M. | Date of Birth | Grade | Social Security Number |
|---|---|---|---|---|---|
| ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| ▮ | | M. | Date of Birth | ▮ | Social Security Number |
| Last Name | First Name | M. | Date of Birth | Grade | Social Security Number |
| Last Name | First Name | M. | Date of Birth | Grade | Social Security Number |
| Last Name | First Name | M. | Date of Birth | Grade | Social Security Number |
| Last Name | First Name | M. | Date of Birth | Grade | Social Security Number |
| Last Name | First Name | M. | Date of Birth | Grade | Social Security Number |

All children are the biological or adopted children of both parties and live at the obligee's address, except:

M : 2 5 93

ADDISON FAMILY COURT

Rev 3/92 lsmc

FELL-00002794

**Child Support Order**                                    Docket Number _____ Page 2

1. A. Physical responsibility for the child(ren) for purposes of child support is:

☒  solely with ___KAREN___ ████████

☐  split as follows _____

| Parent A | % of Time | Parent B | % of Time |
|----------|-----------|----------|-----------|
☐  shared as follows: | | | | |

B. Physical responsibility is based on:   ˣ A stipulation of the parties    ☓ An Order of the Court

C. Comments _____

2. ☐  A child support worksheet is attached and incorporated as findings in this order.

3. The obligor shall pay child support in the amount of  $ ○  per | Time Period |

beginning  Date 12/18/92 . The annualized (yearly) amount of child support is $ ○

☐ This amount is agreed to by the parties.

4. This child support obligation includes consideration of $ _____ in annualized child care costs.

5. The obligor shall pay maintenance supplement in the amount of $ ○ per | Time Period |

beginning  Date _____ .  ☐ This amount is agreed to by the parties.

6. A. Judgment for past due child support in favor of obligee is | Total Arrearage $ | as of | Date |

Obligor shall pay $ _____ per | Time Period | beginning | Date | .

☐ This amount is agreed to by the parties.

B. Judgment for past due child support in favor of the Office of Child Support is | Total Arrearage $ ○ |

as of | Date | . Obligor shall pay $ _____ per | Time Period |

beginning | Date | .  ☐ This amount is agreed to by the parties.

C. ☐ Other: _____

7. **METHOD OF PAYMENT**
A. ☐ **WAGE WITHHOLDING ORDER**

The employer of the obligor shall deduct $ _____ per | Time Period |
from wages for current support and arrearage payments and shall pay the amount deducted directly to:
**Office of Child Support, Support Registry, 103 South Main Street, Waterbury, VT   05671-1901.**
This order is subject to the limits on withholding contained in 15 U.S.C. Section 1673(b) and Section 303(b) of the Consumer Credit Protection Act.

☐ At any time the child support obligation is not being paid through wage withholding, the obligor shall send support payments directly to  ☐ the obligee    ☐ the Office of Child Support at the above address.

☐ Other: _____

Rev. 3/92 lsmc

FELL-00002795

Child Support Order                                    Docket  Number  _____Page 3

B. ☐  DIRECT PAYMENT ORDER

The obligor shall pay child support of  $_____ per [Time Period]_____ to the
Office of Child Support, Support Registry, 103 South Main Street, Waterbury, VT 05671-1901.

☐  The obligor shall pay child support in the amount of  $_____ per [Time Period]_____
directly to the obligee.

This order is based on:   ☐ a finding of good cause   ☐ the written agreement of the parties

> If any support payment is found to be late by 7 days or more, after a petition for wage
> withholding has been filed and heard, the court shall issue a wage withholding order
> within 15 days of the notice sent to the obligor pursuant to Title 15 V.S.A. Section 782.

8.  HEALTH  EXPENSES

A.  The  ☐ obligor   ☐ obligee ·  shall provide health insurance for the child(ren) subject to this order.

| | Plan Name and Address | Insured's Name |
|---|---|---|
| Policy currently in effect: | | |
| Health Plan Policy Number | | Insured's I.D. Number (for the Health Plan) |

B.  Medical or other health expenses that are unreimbursed by insurance (including but not limited to expenses for eye, dental,
mental health) shall be shared/split as follows:

_____

_____

_____

C.  If a parent pays a health expense of a child subject to this order and the other parent receives reimbursement from insurance for
the expense, the reimbursement shall be sent to the parent who advanced payment within 7 days of receipt. If the child(ren)
also have Medicaid coverage, payment is to be sent to the Department of Social Welfare, Medicaid Division within 7 days.

D.  The parties shall provide each other with copies of bills for health expenses and documentation of insurance determination
within 7 days of receipt.

9. Each party shall notify the:
Office of Child Support Registry, 103 South Main Street, Waterbury, VT 05671-1901
within 7 days of a change in address, employment or health insurance carrier. This notification requirement applies until all
obligations to pay support or support arrearage or orders to provide visitation are satisfied.

10. This order shall remain in effect unless and until it is changed or discontinued by further order of the court or operation of law.
Unless otherwise specified, an Obligor's support obligation will continue beyond a child's eighteenth birthday if the child is
enrolled in, but has not completed high school.

11. Other:

_____

_____

_____

_____

_____

_____

Rev 3/92 lsrnc

FELL-00002796

Child Support Order                                      Docket # _____ Page 4

STIPULATION REGARDING
CHILD SUPPORT

The Court shall enter the following
Final Order regarding child support:

1. WHEREAS the Obligor', ▮▮▮▮▮, was ordered on
May 14, 1992 to pay temporary child support
in the Amount of $135.17 per week for the
support of the parties' minor child, ▮▮▮▮▮▮
(DOB ▮▮▮▮▮▮);

2. WHEREAS Mr. lost his employment in
September of 1992 and subsequently enrolled
in the residential treatment program at
Maple Tree Farm Associates, Inc.;

3. Whereas, As a result of this termination
of employment and enrolled enrollment
at Maple Tree Farms constituted #a
substantial and unanticipated change
of circumstances; and

4. Whereas the obligor filed a motion
to modify child support on December
18, 1992 on the information and belief

Rev. 3/92 lsmc

FELL-00002797

Child Support Order    Docket # _____ Page 4

that ~~the is~~ under the Child Support Guidelines, the existing support order would be decreased by more than 10%; and

(5) Whereas the obligor was subsequently incarcerated and currently has no income

The parties stipulate and agree that ~~the obligor's~~ ████████████ child support obligation shall be zero, retroactive to the filing of the motion to modify.

_Karen M. Ryan_
KAREN M RYAN
PLAINTIFF

████████████ by _Kevin E Brown_
████████████ Attorney
DEFENDANT    in fact

Approved as to Form
_Kevin E. Brown_
Attorney for Defendant

_Karen M. Ryan_
Rev. 3/92 lsmc  KAREN RYAN

FELL-00002798

**Child Support Order**                          Docket Number _____Page __

The above is stipulated to by the parties.

| Office of Child Support Representative | Date |
| --- | --- |

| Signature of Obligor | Date 3/25/93 | Signature of Obligee | Date |
| --- | --- | --- | --- |
| | by Kevin E. Brown this attorney in fact | Karen M. Ryan March 25-2 | |

**Approved as to Form.**

| Signature of Obligor's Attorney | Date 3/25/93 | Signature of Obligee's Attorney | Date |
| --- | --- | --- | --- |

**It is so ORDERED.**

| Magistrate/Presiding Judge | Date 3/25/93 |
| --- | --- |

| Assistant Judge | Date | Assistant Judge | Date |
| --- | --- | --- | --- |

## ACCEPTANCE OF SERVICE

### I have received a copy of this Order and I waive all other service.

| Obligor | Date 3/25/93 | Obligee | Date |
| --- | --- | --- | --- |
| by Kevin E. Brown as his attorney in fact | | Karen M. Ryan March 25 93 | |

## NOTICE OF RIGHT TO APPEAL

An order signed by the Magistrate may be appealed by filing a Notice of Appeal with the Clerk of the Family Court within 30 days of filing of this order.

## NOTICES

**This is a Court Order.**
All parties are expected to comply with the terms of the order for as long as it is in effect.

**Right to Seek Modification of the Order.**
A party has the right to request a modification of the child support order based upon a real, substantial, unanticipated change of circumstances.

**Right to Seek Enforcement of the Order.**
A party has the right to request the Court to enforce this Order. A party also has the right to request the Vermont Office of Child Support to assist the party to enforce this Order. If the Office of Child Support is or becomes involved in this case, based either on a current or future request for their services, or otherwise, the Office has the ability to take the following steps:

- The Office of Child Support may use any lawful collection remedies to collect any outstanding balance from the Obligor.

- The Office of Child Support may annually certify all qualifying child support debts to the Vermont Tax Department and/or the Internal Revenue Service for the purpose of tax offset.

- The Office of Child Support may report an Obligor's delinquent account balance to consumer credit reporting agencies.

Rev 3/92 lsmc

FELL-00002799

STATE OF VERMONT                                    RUTLAND FAMILY COURT
RUTLAND COUNTY, SS                                  DOCKET NO. F53-3-92AnDmd


KAREN CURRIER                        )
PLAINTIFF                            )
                                     )
     V.                              )          ORDER
                                     )
                                     )
███████ ███                          )
DEFENDANT                            )


The above entitled action came for hearing on the Defendant's motions for
enforcement, contempt, and modification on March 25, 1994 at Rutland Family
Court, the Honorable Silvio T. Valente presiding. Both parties were present pro
se. Also present was Tom Mansfield, Guardian ad Litem for the minor child,
██████████.


Prior to the hearing the parties met with the Family Case Manager where the
parties entered into an agreement regarding issues 4., 6., 7., 8., and 9.,
outlined on the Defendant's pending motions.

As a result of the evidence adduced, the pleadings and papers on file herein,
and the foregoing agreement of the parties, it is **HEREBY ORDERED:**

1. Parental Contact shall occur every other weekend from Saturday at 10:00 a.m.
until Sunday at 5:00 p.m. to begin April 2, 1994.

2. The court awards the defendant four of the eight weekends of missed parental
contact to occur on the following schedule: April 23, 1994 – April 24, 1994,
May 21, 1994 – May 22, 1994, June 18, 1994 – June 19, 1994, and July 16, 1994 –
July 17, 1994.

3. Telephone contact between the Defendant and his minor child, ████████████
shall occur every Wednesday evening from 7:00 p.m. until 7:15 p.m. The
Defendant shall initiate this contact.

4. Defendant shall have access to the medical, schooling, psychological and
hospital records of the child without interference. Defendant shall be informed
of any medical condition of the child requiring treatment. Defendant shall be
informed in the event the plaintiff travels with the child outside the State of
Vermont.

5. Transportation: The parties shall both share in the responsibility to
transport their son to effect the parental contact schedule. They shall meet at
the IGA in Vergennes, VT at the designated time.

6. The parties agree that they shall not make disparaging comments regarding
the other parent in the presence of their child or make any statements that
would lead ███████ to believe that there was a possibility of reconciliation
between his parents.

7. The court denies the Defendant's request for monetary reimbursement as
requested in issue 2 of the Defendant's motion.

FELL-00002800

8. The parties agree that the Defendant shall supply ▮▮▮▮ with preaddressed stamped envelopes for sending photographs and letters. The plaintiff shall assure that they get mailed.

9. Neither party shall be under the influence of alcohol while transporting ▮▮▮▮, and must refrain from allowing ▮▮▮▮ to partake in the consummation of any alcoholic beverages.

10. The Defendant's motion for contempt and incarceration outlined in issue 9 of the Defendant's motion is dismissed by his request.

Dated this 30th day of March, 1994 at Rutland, VT.

_____
Silvio T. Valente, Presiding Judge

STATE OF VERMONT                FAMILY COURT
                                CIVIL ACTION
COUNTY OF ADDISON, ss.          DOCKET NO. F53-3-92AnDmd


KAREN M. ███████

        vs.

████████ █ ██████


## FINAL ORDER

This matter came on for final hearing on February 24, 1993. The Plaintiff was present and represented by John R. Barrera, Esq. The Defendant was/was not present, and was represented by Mitchell Pearl, Esq. The grandparent ████████ ██████ was/was not present. The guardian ad litem Susan J. Bennett was not present.

In accordance with the testimony and other evidence presented, it is the final order of this Court that:

1.  Notice, residence, and marriage is proven. A divorce is granted to the Plaintiff on the grounds that the parties have lived separate and apart for six (6) consecutive months, and there is no reasonable probablity or possibility of a reconciliation.

2.  Decree nisi to become absolute on _____, 1993.

3.  The parties shall share legal rights and responsibilities for the minor child, and shall communicate and cooperate as needed regarding the sharing of these responsibilities. Karen shall have the physical legal rights and responsibilities for the minor



FILED

F- 2   1993

███████ FAMILY COURT
███████ PERSON, CLERK

JOHN R. BARRERA
ATTORNEY AT LAW
102-C COURT STREET
DDLEBURY, VT 05753
(802) - 388-6371

- 1 -

FELL-00002802

child, ███████ subject to visitation rights in favor of ███████, as herein stated.

4. During the period that ████ is incarcerated, Karen shall transport the minor child to the Rutland Correctional Center one (1) weekend per month, on Sunday afternoon from approximately 3:00 p.m. to 4:45 p.m.

5. The grandparent █████ █████ shall have the right to have the child with her for one (1) weekend per month, from Friday evening at 7:00 p.m. until Sunday at 4:00 p.m. The particular weekend shall be by agreement of the parties.

6. When ██████ is released from incarceration, he shall have reasonable rights of visitation, at reasonable times and places, upon reasonable prior notice to Karen.

7. Each party is perpetually restrained and enjoined from interfering with the personal liberty of the other, nor shall either party abuse the other, or physically contact the other in any way, nor shall there be verbal harassment or abuse of any kind. In addition, neither party shall ever enter or be in the residence of the other party. This provision may be enforced under the abuse provisions of 15 V.S.A. Chapter 21. The prohibition pertaining to the entering the residential property of the parties, includes the residential property of Karen's parents in Ripton, Vermont, and the residential property of ██████ parents in Barre, Vermont.

JOHN R. BARRERA
ATTORNEY AT LAW
102-C COURT STREET
IDDLEBURY, VT 05753
(802) - 386-6371

- 2 -

FELL-00002803

8. Child support payments shall be made in accordance with the Vermont Child Support Guidelines.

9. The personal property and motor vehicles which the parties owned at the time this action was filed (March 30, 1992) ~~has~~ *have* been disposed of by agreement of the parties. ~~Neither party is awarded any interest in any particular item of personal property.~~ *Each party is awarded personal property in his/her possession.*

10. As to marital debt, the indebtedness to GMAC has been resolved by a repossession of the car in question. Any deficiency owed GMAC shall be the equal responsibility of each party. The Mastercard debt ($1,430.00), the Chase Manhattan Visa debt ($1,100.00), and the Sears debt ($1,550.00), shall be the sole responsibility of Karen. The Vermont Federal Visa debt (approximately $1,000.00), shall be the sole responsibility of ███████ Each shall hold the other harmless for any liability in connection with said indebtedness.

11. Each party is restrained and enjoined from making further use of any joint credit cards owned by the parties.

12. Other than as stated above, there is no other marital debt.

13. When ███████ becomes employed, he shall maintain ███████ on any group health insurance policy if available through his work at a reasonable cost. The parties shall each be responsible for 1/2 of the cost of any uninsured (including deductible) medical or dental

JOHN R. BARRERA
ATTORNEY AT LAW
102-C COURT STREET
MIDDLEBURY, VT 05753
(802) - 388-6371

- 3 -

FELL-00002804

costs.

14.  During any time when ████████ is exercising visitation, he shall be alcohol and drug free, nor shall he have any alcoholic beverage or drugs on his person or in his possession at the time.

Dated at Middlebury, Vermont this __24__ day of February, 1993.

JOHN R. BARRERA
ATTORNEY AT LAW
102-C COURT STREET
MIDDLEBURY, VT 05753
(802) - 388-6371

— 4 —

FELL-00002805

Form 152F

**Vermont Family Court**

County: Addison

Docket Number: F98-8-92 AmFa

## FINAL ORDER FOR RELIEF FROM ABUSE

| Plaintiff's Name | Date of Birth | Defendant's Name | Date of Birth |
|---|---|---|---|
| KAREN ▮ | ▮ 7 V. ▮ ▮ ▮ | | ▮ |

| Defendant's Street Address | City, State, Zip Code |
|---|---|
| | |

| A Complaint in this case was filed on Date 8/22/92 | A Hearing in this case was held on: Date 1/26/93 | Plaintiff ☑ was present ☐ was not present with attorney: Name of Attorney JOHN BARRERA |
|---|---|---|
| | | Defendant ☐ was present ☑ was not present with attorney: Name of Attorney KEVIN BROWN |

**FINDINGS BY THE COURT:** (Check the applicable box; cross out what does not apply)

☑ Defendant has abused ☑ Plaintiff ☑ Plaintiff's Child(ren) ☐ the following family or household member(s):

Name(s) of family or household member(s): _____ as defined in 15 V.S.A. Section 1101(1).

☑ There is an immediate danger of further abuse.

☑ Plaintiff ☐ and Plaintiff's child(ren) and the other person(s) named above has/have been forced from the household and will be without shelter unless the Defendant is ordered to vacate the premises.

☑ There is an immediate danger of physical or emotional harm to the minor child(ren).

**ORDER OF THE COURT:** IT IS ORDERED THAT

☑ Application to proceed in forma pauperis is ☑ granted ☐ denied.

☑ Defendant shall refrain from abusing ☑ Plaintiff ☑ and Plaintiff's child(ren) and and shall refrain from interfering with his/her/their personal liberty.   Name(s) of Person(s)

☑ Defendant shall vacate immediately the household and Plaintiff shall have sole possession of the home located at:

Street and Town Address: ▮▮ h S ▮▮ Midd. VT 05753

☑ Plaintiff shall have custody of the minor child(ren)

Name(s) and Date(s) of Birth of Minor Child(ren): ▮▮▮▮▮▮

☑ Defendant is permitted to have contact with the child(ren) according to the conditions listed on page 2 of this Order.

☑ Other: Def. shall not come within 100 feet of plaintiff and shall not telephone plaintiff

This order shall remain in effect until Date 8/31/93 at Time 9:00 am

> **Defendant's presence on the premises with permission of the plaintiff does not invalidate this order**

**VIOLATION OF THIS ORDER IS A CRIME SUBJECT TO A TERM OF IMPRISONMENT OR A FINE, OR BOTH, AND MAY ALSO BE PROSECUTED AS CRIMINAL CONTEMPT PUNISHABLE BY FINE OR IMPRISONMENT, OR BOTH.**
**\*\*This order may be served by any sheriff, municipal or state police officer.\*\***

| Date 1/26/93 | Time 9:00 a.m. | Judge (typed or printed) Michael S. Kupersmith | Judge (signature) _____ |
|---|---|---|---|
| | | | Assistant Judge _____ |
| cc: ☐ Local Police ☐ State Police ☐ Sheriff | ☐ Plaintiff ☐ Plaintiff's Attorney ☐ Defendant ☐ Defendant's Attorney | | Assistant Judge _____ |

**SEE IMPORTANT NOTICE ON BACK**

Distribution: White: Served on defendant and returned to Court   Yellow: Plaintiff   Pink: Defendant   Goldenrod: File
Rev. 10/91 lsmc

FELL-00002806

Form 152F2

| **Vermont Family Court** | County Addison | Docket Number F98-8-92 AnFa |
|---|---|---|

Plaintiff Karen ▮▮▮     V     Defendant ▮▮▮

## FINAL ORDER FOR RELIEF FROM ABUSE - PAGE 2

☐ 1. Defendant shall not threaten, assault, molest, harass or otherwise interfere with the personal liberty of the plaintiff or plaintiff's minor child(ren).

☐ 2. Defendant shall not intentionally follow plaintiff and/or plaintiff's minor child(ren).

☐ 3. Defendant shall not telephone, write to, contact or otherwise communicate with the plaintiff in any way, except that defendant may: _____

☐ 4. Defendant shall not place him/herself within _____ feet of plaintiff individually or of the following address(es): _____

☐ 5. Defendant shall not enter the household premises for any purpose except in the company of a law enforcement officer or _____ after prior permission has been granted by the plaintiff.

☐ 6. Defendant shall deliver and temporarily relinquish to _____ the defendant's weapons which have been used or been threatened to be used in an incident of abuse against the plaintiff or the minor child(ren): _____
Return of the weapons to the defendant is subject to the following restrictions and conditions, deemed appropriate to protect the plaintiff or minor child(ren) from further abuse through the use of weapons: _____

**VERMONT LAW ENFORCEMENT OFFICERS ARE AUTHORIZED TO ARREST WITHOUT WARRANT PERSONS WHO VIOLATE THE ABOVE PROVISIONS OF THIS RELIEF FROM ABUSE ORDER, PURSUANT TO 15 V.S.A. SEC. 1108, V.R.Cr.P. 3 AND 13 V.S.A. SEC. 1030.**

☒ 7. Parental contact by ▮▮▮ with the parties' minor child(~~ren~~) shall take place on _ALTERNATE SUNDAYS_ from _3:00 pm_ to _7:45 pm_.

☐ 8. The court finds that visitation may result in abuse. The court therefore imposes the following conditions upon all contact between defendant and the following named child(ren): _____

☐ a. Contact shall occur only ~~in~~ _At_ the ~~presence of~~: _Rutland Co. Correctional Center_

☐ b. During scheduled parental contact the defendant shall not be under the influence of intoxicating substances and shall not consume or possess alcohol. If, when defendant arrives for parental contact, defendant appears to be under the influence of alcohol or intoxicating substances, the plaintiff may cancel the scheduled parental contact.

☐ c. Transportation to the visits will be provided by ▮▮▮ _and Karen Ryan on Alternate_.
Transportation from the visits will be provided by _Same as above_ _visitation_

☐ d. During the scheduled parental contact the child(ren) shall have no contact with the following individuals: _weekends_

☐ e. Plaintiff is granted sole possession of the following automobile, keys or other personal property necessary for the protection of the plaintiff and care of the child(ren): _____

9. Other: _____

| Date 4/26/93 | Time 9:00 u | Judge (Print or Type) Michael S. Kupersmith | Judge (signature) _[signature]_ |
|---|---|---|---|
| | | Assistant Judge _[signature]_ | Assistant Judge _[signature]_ |

Rev. 11/91 lsmc

Distribution: White: Served on defendant and returned to Court   Yellow: Plaintiff   Pink: Defendant   Goldenrod: File

Form 152T

| Vermont Family Court | County ADDISON | Docket Number |
|---|---|---|

## TEMPORARY ORDER FOR RELIEF FROM ABUSE

| Plaintiff's Name Karen ▓ | Date of Birth ▓ | Def ▓ V. ▓ |
|---|---|---|

| A Complaint in this case was filed on Date 8/22/92 | A Hearing in this case was held on: Date | Plaintiff ☐ was present ☐ was not present with attorney: <br> Defendant ☐ was present ☐ was not present with attorney: |
|---|---|---|

### FINDINGS BY THE COURT:

☑ Defendant has abused ☑ Plaintiff ☑ Plaintiff's Child(ren) as defined in 15 V.S.A. Section 1101(1).

☑ There is an immediate danger of further abuse.

☑ Plaintiff ☑ and Plaintiff's child(ren) has/have been forced from the household and will be without shelter unless the Defendant is ordered to vacate the premises.

☑ There is an immediate danger of physical or emotional harm to the minor child(ren).

### ORDER OF THE COURT:

☑ Application to proceed in forma pauperis is ☑ granted ☐ denied.

☐ The application for an ex parte ORDER has been DENIED ☐ in whole ☐ in part; Reasons for Denial, if any, are attached

☑ The application for an ex parte ORDER has been GRANTED, as follows:

☑ Defendant shall refrain from abusing ☑ Plaintiff ☑ and Plaintiff's child(ren) and shall refrain from interfering with his/her/their personal liberty.

☑ Defendant shall vacate immediately the household and Plaintiff shall have sole possession of the home located at: Street and Town Address ▓ et, Middlebury, VT 05753

☑ Defendant shall not enter the residence except with plaintiff's prior permission and in the presence of a law enforcement officer or the following person designated by the court: Name of Person

☑ Temporary custody of the minor child(ren) named below is awarded to ☑ Plaintiff ☐ Other: Name(s) and Date(s) of Birth of Minor Child(ren)

☑ Other: Defendant shall not come within 100 feet of plaintiff and shall not telephone plaintiff.

If your request for emergency relief has been denied, in whole or in part, you may request that the court hold a hearing on your complaint after notice to the defendant. Any such hearing shall be scheduled as soon as reasonably possible, which in no event shall be more than ten days from the date of the request.

### NOTICE OF HEARING:

This order shall remain in effect until Date 8/31/92 at Time 9:00 A.M. when a HEARING will be held at

Name and Descriptive Address of Court 5 Court St. Middlebury, VT 05753 on whether to extend or modify this order.

**VIOLATION OF THIS ORDER IS A CRIME SUBJECT TO A TERM OF IMPRISONMENT OR A FINE, OR BOTH, AND MAY ALSO BE PROSECUTED AS CRIMINAL CONTEMPT PUNISHABLE BY FINE OR IMPRISONMENT, OR BOTH.**

**This order may be served by any sheriff, municipal or state police officer.**

| Date 8/22/92 | Time 12:35 A.M. | Judge (typed or printed) Michael S. Kupersmith | Judge (signature) Michael S. Kupersmith /ce |
|---|---|---|---|

cc: ☐ Local Police ☐ Plaintiff<br>☐ State Police ☐ Plaintiff's Attorney<br>☐ Sheriff ☐ Defendant<br>Rev. 10/91 lsmc ☐ Defendant's Attorney

Assistant Judge Afterhours. Assistant Judge

### SEE IMPORTANT NOTICES ON BACK INCLUDING DEFENDANT'S RIGHT TO A HEARING TO MODIFY THIS ORDER

Distribution: White: Served on defendant and returned to Court  Yellow: Plaintiff  Pink: Defendant  Goldenrod: File

| Form 150 | **Vermont Family Court** | County | Docket Number |
|---|---|---|---|

## COMPLAINT FOR RELIEF FROM ABUSE
### Pursuant to 15 V.S.A. Chapter 21

| Plaintiff's Name | Date of Birth | Defendant's Name | Date of Birth |
|---|---|---|---|
| KAREN ████ | ████ V. | ████ | ████ |

| Defendant's Street Address | City, State, Zip Code |
|---|---|
| ████ | Middlebury, VT 05753 |

**RELATIONSHIP OF PARTIES:**
☑ Spouses ☐ Former Spouses ☐ Persons living as Spouses ☐ Other:
☐ Now ☐ In the Past

**EXISTING COURT ORDERS OR PROCEEDINGS:**
Is there an existing order or a pending court proceeding involving you, the Defendant, or the child(ren) named in this Complaint?

\* Please indicate the court and name of attorneys representing either of the parties for any "Yes" box checked:

|  | No | Yes \* |
|---|---|---|
| Divorce | ☐ | ☑ |
| Annulment | ☑ | ☐ |
| Abuse Prevention | ☑ | ☐ |
| Support | ☐ | ☑ |
| Child Custody | ☑ | ☐ |
| Child Visitation | ☑ | ☐ |
| Parentage | ☑ | ☐ |

☑ Vermont ☑ Family ☐ District ☐ Superior — County ADDISON
State VT. — County ADDISON
Attorney for Plaintiff JOHN BARRERA
Attorney for Defendant Anthony RATT

1. On **8/22/92** the Defendant did the following to: ☐ Plaintiff ☐ Plaintiff's child(ren) ☐ Other Family or Household Member(s)
   a. ☐ Attempted to cause physical harm
   b. ☑ Caused physical harm
   c. ☐ Placed him/her/them in fear of imminent serious physical harm
   d. ☑ Abused the child(ren) as defined by 33 V.S.A. Section 682;
      i.e. physically injured or otherwise treated the child(ren) in a manner which placed the child(ren)'s life, health, development or welfare in jeopardy.

2. The Plaintiff requests that the court enter an order which includes the following:
   a. ☑ an order that the Defendant refrain from abusing ☑ Plaintiff ☑ and Plaintiff's child(ren) and refrain from interfering with his/her/their personal liberty.
   b. ☑ an order that the Defendant immediately leave the household and Plaintiff be awarded sole possession of the residence. The residence is ☐ owned in: ☑ Plaintiff's name only ☐ Defendant's Name
      ☑ rented/leased ☐ Both Plaintiff's & Defendant's Name
   c. ☑ an award of temporary custody of the following minor child(ren):

   | Name(s) and Date(s) of Birth of Minor Child(ren) |
   |---|
   | ████ |

   Relationship of Plaintiff to Child(ren): ☑ Parent ☐ Stepparent ☐ Other:
   Relationship of Defendant to Child(ren): ☑ Parent ☐ Stepparent ☐ Other:
   d. ☑ Other: _No telephone contact – NOT TO COME NEAR PLAINTIFF._
   Instruction: MUST BE SIGNED BELOW; Complete Sections 3, 4 and 5 only if immediate relief is requested.
   \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### REQUEST FOR EMERGENCY RELIEF - MOTION FOR TEMPORARY ORDER

3. ☑ Plaintiff is in immediate danger of further abuse and therefore requests the Court to order the Defendant to refrain from abusing the ☑ Plaintiff ☑ Plaintiff's child(ren) and refrain from interfering with his/her/their personal liberty.
4. ☑ ☑ Plaintiff ☑ Plaintiff's child(ren) has/have been forced from the household and will be without shelter unless the Defendant is ordered to leave the premises and therefore Plaintiff requests the Court to order the Defendant to immediately leave the household and to order sole possession to the Plaintiff of the home located at:

   | Street and Town Address |
   |---|
   | ████ Middlebury, VT 05753 |

5. ☑ There is an immediate danger of physical or emotional harm to the minor child(ren) and therefore Plaintiff requests the Court to award temporary custody of the minor child(ren) identified in Paragraph 2(c) to the Plaintiff or to other persons.
**The facts to support this request for emergency relief can be found Plaintiff's accompanying affidavit.**

| Signature of Plaintiff/Attorney | Date |
|---|---|
| ████ | 8/22/92 |

Rev. 10/91 lsmc

Distribution: White: Court    Yellow: Plaintiff    Pink: Defendant    Goldenrod: File

FELL-00002809

Form No. 151
Affidavit: Relief from Abuse

Docket Number

## STATE OF VERMONT
## AFFIDAVIT IN SUPPORT OF REQUEST FOR EMERGENCY RELIEF FROM ABUSE
Pursuant to 15 V.S.A. Chapter 21

Plaintiff

Karen                                V.

In support of the claims made in Plaintiff's request for emergency relief from abuse, subject to the penalties for perjury, I state the following facts, which are true to the best of my knowledge and belief, about the abusive treatment and present situation. ( Please be brief )

On 8/22/92, Bruce (friend) + I arrived at my house. While we were sitting in the car, _____ started to harass Bruce. Bruce refused to fight with him, especially in front of the kids. He came to the car. and yank me (by the hair) out of the car. He started to pound my face. and head into the pavement. He hit me in the stomach and other place. Over eight times. He continued to pound my head into the pavement. I tried to get away but couldn't.

He then grabbed my son out of the car, and went into my apartment.

Signature of Plaintiff    Karen M.              Date 8/22/92

_____ sworn to before me.    Signature of Notary Public  Carl R. Epperson    Date 8/22/92    Expiration Date 2/10/95

R 2M 08/87 V.C.I.        White–Court        Yellow–Plaintiff        Pink–Defendant        Goldenrod–File

FELL-00002810

St of Vt                                    Family Court
Addison County                              Docket No. F53-3-92

Karen ███████
█████████████                              Stipulation as to
█████████████                              Grandparent Visitation

The parties agree that █████████
███████████████ of ████████████, shall
have visitation as follows:
1. Until such time as ██████ has established the
right to week-end visitation, grandparent
shall have ████████ with her, from Friday
night at ███ PM, until ████████ Sun. at
4:00 P.M. The particular week-end shall
be by agreement of the parties, and shall
be (1) one week-end per month.

2. At such time as ████████ has the right
to alternating week-end visitation, the
grandparents visitation shall be
an Saturday of one (1) of the two (2)
alternating week-ends, as agreed
to between ████████ and grandparent.

FILED
AUG - 3 1992

It is So Ordered:

FELL-00002811

STATE OF VERMONT

COUNTY OF ADDISON, ss.

FAMILY COURT
CIVIL ACTION
DOCKET NO. F53-3-92AnDmd

KAREN M. █████

    vs.

█████████   █████

## TEMPORARY ORDER

Based upon a Stipulation for Temporary Order filed by the parties on June 25, 1992, it is hereby ORDERED as follows:

1.  The parties shall share legal rights and responsibilities for the minor child, and shall communicate and cooperate as needed regarding the sharing of these responsibilities.  Karen shall have the physical rights and responsibilities for the minor child, █████, subject to visitation rights in favor of █████, as herein stated.

2.  █████ shall have visitation with █████ for two (2) days per week, on his days off, from 8:30 a.m. until 7:00 p.m.  In the event █████ regular day off is not on a Thursday, then he shall give two (2) days prior notice to Karen of his day off.

3.  Karen shall enroll in a counseling program at the Addison County Counseling Service, pertaining to the responsible use of alcohol.  Neither party shall consume alcoholic beverages or drugs (except drugs for medicinal purposes) while the child is in the care and custody of

FILED

JUL 17 1992

Family Court of Vermont
Unit #9
Addison Circuit

- 1 -

FELL-00002812

that particular parent.

4. ███████ shall be entitled to overnight visitations with ███████l, and shall have alternating weekend visitations, beginning Friday evenings at 5:00 p.m., and ending on Sunday afternoons at 5:00 p.m., when it is established that he has enrolled in, and is actively participating in a structured alcohol program, and has further restructured his residential living arrangements to avoid associations with persons with alcohol or substance abuse problems.

5. In addition, after these conditions are met, ███████ shall be entitled to have ███████ with him for ███████ one (1) week summer vacation.

6. During those times when ███████ is with ███████ any motorcycle rides shall be confined to paved roads within a two (2) mile radius of ███████ place of residence.

7. ███████ shall maintain ███████ on his group health insurance policy. The parties shall each be responsible for ½ of the cost of any uninsured (including deductible) medical or dental costs.

8. ███████ shall have the use and possession of the 1977 Chevy pick-up truck, and may sell same and retain the proceeds for himself. He shall also retain the use and ownership of the 1989 Chevrolet car and the 1978 Jeep.

9. The Plaintiff shall retain the use and ownership of the vehicle presently in her possession.

10. Each party shall be restrained and enjoined from

- 2 -

FELL-00002813

interfering with the personal liberty of the other, nor shall either party abuse the other, or physically contact the other in any way, nor shall there be verbal harassment or abuse of any kind.  In addition, neither party shall enter or be in the residence of the other. This provision may be enforced as though the Temporary Order were issued under the abuse provisions of 15 V.S.A. §21.  This prohibition pertaining to entering the residential property of the parties, includes the residential property of Karen's parents in Ripton, Vermont, and the residential property of ▮▮▮▮▮ parents in Barre, Vermont.

Dated at Middlebury, Vermont this __17__ day of July, 1992.

_____

__N/A_____

__N/A_____

- 3 -

FELL-00002814

| VERMONT<br>FAMILY COURT | County<br>ADDISON | Docket Number<br>F53-3-92AnDmd |
|---|---|---|

| Plaintiff | Defendant |
|---|---|
| KAREN ▮ | ▮ |

## CHILD SUPPORT ORDER

| OBLIGOR (Person Who Must Pay Child Support) | OBLIGOR'S EMPLOYER |
|---|---|
| Last Name    First Name    Middle Initial<br>▮    ▮ | Name<br>A&P SUPERMARKETS |
| Street Address<br>P.O. BOX 136 | Street Address<br>Route 7 South |
| City    State    Zip Code<br>RIPTON    VT    05766 | City    State    Zip Code<br>MIDDLEBURY    VT    05753 |
| Telephone Number<br>388-1120 | Telephone Number<br>388-2199 |
| Social Security No.    Date of Birth | |

| OBLIGEE (Person Who Receives Child Support) | OBLIGEE'S EMPLOYER |
|---|---|
| Last Name    First Name    Middle Initial<br>▮    KAREN | Name |
| Street Address | Street Address |
| City    State    Zip Code | City    State    Zip Code |
| Telephone Number | Telephone Number |
| Social Security No.    Date of Birth | |

| Last Name | First Name | M. | Date of Birth | Grade | Social Security No. |
|---|---|---|---|---|---|
| ▮ | First Name | M. | ▮ | NA | ▮ |
| Last Name | First Name | M. | Date of Birth | Grade | Social Security No. |
| Last Name | First Name | M. | Date of Birth | Grade | Social Security No. |
| Last Name | First Name | M. | Date of Birth | Grade | Social Security No. |

All children are the biological or adopted children of both parties and live at the obligee's address, except:_____

FILED

MAY 14 1992

Family Court of Vermont
Form 802 Rev.3/92 ISMC Unit # 2
Addison Circuit

Rev. dh/vt 4/92

FELL-00002815

CHILD SUPPORT ORDER                                          Docket No. F53-3-92 Anilund Page 2

1.    A. Physical responsibilities for the child(ren) for purpose of child support is:

☐      solely with _____

☐      split as follows:_____

☑      shared as follows: KAREN _____ 71 _____ ████ ██ ___ 29 ____
                          Parent A       % of Time        Parent B      % of Time

B.      Physical responsibility is based on:    ✓ A stipulation of the parties    ____ An Order of the Court

C.      Comments    _____
        _____

2.    ☑      A child support worksheet is attached and incorporated as findings in this Order.

3.    The obligor shall pay child support in the amount of $ 585.30 per month beginning 5/22/92.
                                                                   Time Period        Date
      The Annualized (yearly) amount of child support is $ 7023.60.

      ☑      This amount is agreed to by the parties.

4.    This child support obligation includes consideration of $ 5445.00 in annualized child care costs.

5.    The obligor shall pay maintenance supplement in the amount of $ ∅ per _____ beginning
                                                                             Time Period
      _____.
        Date

      ☐      This amount is agreed to by the parties.

6.A.  Judgment for past due child support in favor of obligee is $ ∅ as of _____.
                                                                  Total Arrearage        Date

      Obligor shall pay $_____ per _____ beginning _____.
                                          Time Period            Date

      ☐      This amount is agreed to by the parties.

B.    Judgment for past due child support in favor of the Office of Child Support is $ ∅ as of
                                                                                     Total Arrearage
      _____.    Obligor shall pay $_____ per _____ beginning _____.
        Date                                              Time Period            Date

      ☐      This amount is agreed to by the parties.

C.    ☐ Other:_____
        _____

7.    METHOD OF PAYMENT

A.    ☑ WAGE WITHHOLDING ORDER
        The employer of the obligor shall deduct $ 135.17 per week from wages for
                                                               Time Period
      current support and arrearage payments and shall pay the amount deducted directly to:
      Office of Child Support, Support Registry, 103 South Main Street, Waterbury, VT 05671-1901.
        This order is subject to the limits on withholding contained in 15 U.S.C. § 1673(b) and § 303(b) of the
      Consumer Credit Protection Act.

      ☑      At any time the child support obligation is not being paid through wage withholding, the obligor shall send
      support payments directly to    ☑ the obligee    ☐ the Office of Child Support at the above address.

      ☐      Other: _____

Form 802 Rev.3/92 ISMC                                                    Rev. dh/vt 4/92

FELL-00002816

CHILD SUPPORT ORDER                                                    Docket No. 153 392AnDin Page 3

B.     ☐  DIRECT PAYMENT ORDER

The obligor shall pay child support of $_____ per _____ to the
                                                            Time Period

Office of Child Support, Support Registry, 103 South Main Street, Waterbury, VT  05671-1901.

☐     The obligor shall pay child support of $_____ per _____ to the
                                                            Time Period

directly to the obligee.

This order is based on:    ☐ a finding of good cause     ☐ the written agreement of the parties

> If any support payment is found to be late by 7 days or more, after a petition for wage
> withholding has been filed and heard, the court shall issue a wage withholding order within
> 15 days of the notice sent to the obligor pursuant to Title 15 V.S.A. § 782.

8.     HEALTH EXPENSES

A.     The ☒ obligor    ☐    obligee    shall provide health insurance for the child(ren) subject to this Order.

| Policy currently in effect: | Plan Name and Address | Insured's Name |
| --- | --- | --- |
| Health Plan Policy Number | | Insured's I.D. Number (for the Health Plan) |

B.     Medical or other health expenses that are unreimbursed by insurance (including but not limited to expenses for eye,
       dental, mental health) shall be shared/split as follows:

       _Shall be divided equally (50/50) between the parties._

C.     If a parent pays a health expense of a child subject to this order and the other parent receives reimbursement from
       insurance for the expense, the reimbursement shall be sent to the parent who advanced payment within 7 days of
       receipt. If the child(ren) also have Medicaid coverage, payment is to be sent to the Department of Social Welfare,
       Medicaid Division within 7 days.

D.     The parties shall provide each other with copies of bills for health expenses and documentation of insurance
       determination within 7 days of receipt.

9.     Each party shall notify the:

                    Office of Child Support Registry, 103 South Main Street, Waterbury, VT  05671-1901

       within 7 days of a change in address, employment or health insurance carrier. This notification requirement applies
       until all obligations to pay support or support arrearage or orders to prove visitation are satisfied.

10.    This order shall remain in effect unless and until it is changed or discontinued by further order of the court or
       operation of law. Unless otherwise specified, an Obligor's support obligation will continue beyond a child's
       eighteenth birthday if the child is enrolled in, but has not completed high school.

11.    Other:
       _____
       _____
       _____
       _____

Form 802 Rev.3/92 ISMC                                                     Rev. dh/vt 4/92

FELL-00002817

CHILD SUPPORT ORDER

Docket No. F53392AnDm Page 4

Form 802 Rev.3/92 ISMC

Rev. dh/vt 4/92

FELL-00002818

CHILD SUPPORT ORDER                                                                    Docket No. F533 92An D... Page 5

The above is stipulated to by the parties

| Office of Child Support Representative Date |
|---|

| Signature of Obligor |
|---|
|  |

| Signature of Obligee | Date |
|---|---|
| Karen N. ███ | May 14-92 |

Approved as to Form.

| Signature of Obligor's Atty. | Date |
|---|---|
|  | May 11, 1992 |

| Signature of Obligee's Atty. | Date |
|---|---|
| Panera | May 14, 92 |

It is so ORDERED.

| Magistrate/Presiding Judge | Date |
|---|---|
| Shelly J. Greene | 5/14/92 |

| Assistant Judge | Date |
|---|---|
|  |  |

| Assistant Judge | Date |
|---|---|
|  |  |

## ACCEPTANCE OF SERVICE

I have received a copy of this Order and I waive all other service.

| Obligor | Date |
|---|---|
| 8-4-92 |  |

| Obligee | Date |
|---|---|
| Karen M ███ | May 14-92 |

## NOTICE OF RIGHT TO APPEAL

An order signed by the Magistrate may be appealed by filing a Notice of Appeal with the Clerk of the Family Court within 30 days of filing of this order.

### NOTICES

**This is a Court Order.**
All parties are expected to comply with the terms of the order for as long as it is in effect.

**Right to Seek Modification of the Order.**
A party has the right to request a modification of the child support order based upon a real, substantial, unanticipated change of circumstances.

**Right to Seek Enforcement of the Order.**
A party has the right to request the Court to enforce this Order. A party also has the right to request the Vermont Office of Child Support to assist the party to enforce this Order. If the Office of Child Support is or becomes involved in this case, based either on a current or future request for their services, or otherwise, the Office has the ability to take the following steps:
- The Office of Child Support may use any lawful collection remedies to collect any outstanding balance from the Obligor.
- The Office of Child Support may annually certify all qualifying child support debts to the Vermont Tax Department and/or the Internal Revenue Service for the purpose of tax offset.
- The Office of Child Support may report an Obligor's delinquent account balance to consumer credit reporting agencies.

Form 802 Rev.3/92 ISMC                                                                    Rev. dh/vt 4/92

FELL-00002819

KAREN ███████

                vs.                                    INTERIM STIPULATION

        ██████████████

        Now come the parties, and hereby stipulate to terms of parent/child contact pending the temporary hearing, and without prejudice to either party at such hearing, as follows:

        1. Defendant shall have parent/child contact for the minor child on alternating weekends commencing the weekend of April 25, commencing at 6:30pm on Friday and ending at 6:30pm on Sunday.
        2. Defendant shall have parent/child contact every Thursday, commencing on Thursday morning at 9:00am and ending on Friday Morning when the Defendant shall drop the child off at the baby sitter.
        3. During periods of child contact, Defendant is not to take the child to Barre except for the purpose of seeing the child's great grandparents.

        The terms of this stipulation are effective only until the reconvened hearing, and both parties reserve their right to seek different terms at said hearing.

approved as to form:

_M. Barrera_ April 17 92
_____ April 13, 1992

Karen ███████  april 17 92

██████████ april 17 92

*Heard After* April 17th, 1992

It is So Ordered:

FELL-00002820

Form 29

STATE OF VERMONT

*Joint* ACCEPTANCE OF SERVICE

*Addison* COUNTY

| ☐ District Court | ☒ Family Court | ☐ Superior Court |

| Re: | Defendant | | Docket No. |
| Re: | State vs. | | In re: |
| Re: | Plaintiff *Karen* ▮▮▮ s. | Defendant ▮▮▮ |

*we*
*I*, *Karen & ▮▮▮* hereby Accept Service of

the *Interim Temp. Order* filed

*april 17, 92* in the above-entitled cause and waive all

other form of service.

| Date *april 17, 92* | Signature x *Karen M* ▮▮▮ |
| | x ▮▮▮ |

*april 17, 1992*

9/26/90

FELL-00002821

Form 152F

| Vermont Family Court | County Addison | Docket Number F32-3-92A |
|---|---|---|

## FINAL ORDER FOR RELIEF FROM ABUSE

| Plaintiff's Name KAREN | Date of Birth | Def V. | Date of Birth |
|---|---|---|---|

| Defendant's Street Address | City, State, Zip Code |
|---|---|

| A Complaint in this case was filed on Date 3/27/92 | A Hearing in this case was held on: Date 3/30/92 | Plaintiff ☒ was present ☐ was not present with attorney: Name of Attorney J BAKOKRA  Defendant ☒ was present ☐ was not present with attorney: Name of Attorney |
|---|---|---|

**FINDINGS BY THE COURT:** (Check the applicable box; cross out what does not apply)

☑ Defendant has abused ☒ Plaintiff ☐ Plaintiff's Child(ren) ☐ the following family or household member(s):

Name(s) of family or household member(s): _____ as defined in 15 V.S.A. Section 1101(1).

☑ There is an immediate danger of further abuse.

☐ Plaintiff ☐ and Plaintiff's child(ren) and the other person(s) named above has/have been forced from the household and will be without shelter unless the Defendant is ordered to vacate the premises.

☐ There is an immediate danger of physical or emotional harm to the minor child(ren).

**ORDER OF THE COURT:    IT IS ORDERED THAT**

☐ Application to proceed in forma pauperis is ☐ granted ☐ denied.

☑ Defendant shall refrain from abusing ☐ Plaintiff ☐ and Plaintiff's child(ren) and and shall refrain from interfering with his/her/their personal liberty.    Name(s) of Person(s)

☐ Defendant shall vacate immediately the household and Plaintiff shall have sole possession of the home located at:

Street and Town Address *Defendant may have possession of Ripton apartment*

☑ Plaintiff shall have custody of the minor child(ren)

Name(s) and Date(s) of Birth of Minor Child(ren)

☒ Defendant is per_____ according to the conditions listed on page 2 of this Order.

☑ Other: *DEFENDANT SHALL HAVE NO CONTACT WITH PLAINTIFF EXCEPT THRU ATTORNEYS AND STAY 50 FEET AWAY FROM PLAINTIFF EXCEPT DURING VISIT VISITION AT NEW'S RESIDENCE 7:30 PM - 8:30 PM ON 3/30 AND EVERY OTHER 1 NIGHT FROM 6:00 PM TO 7:30. DEF SHALL BE ALCAHOL FREE BEFORE + DURING VISITATION*

This order shall remain in effect until Date 4/17/92 at Time 12:00 NOON

| Defendant's presence on the premises with permission of the plaintiff does not invalidate this order |
|---|

**VIOLATION OF THIS ORDER IS A CRIME SUBJECT TO A TERM OF IMPRISONMENT OR A FINE, OR BOTH, AND MAY ALSO BE PROSECUTED AS CRIMINAL CONTEMPT PUNISHABLE BY FINE OR IMPRISONMENT, OR BOTH.**

**\*\*This order may be served by any sheriff, municipal or state police officer.\*\***

| Date 3/30/92 | Time 5:00 PM | Judge (typed or printed) DAVID A JENKINS | Judge (signature) |
|---|---|---|---|

cc: ☐ Local Police ☐ State Police ☐ Sheriff    ☐ Plaintiff ☐ Plaintiff's Attorney ☐ Defendant ☐ Defendant's Attorney

Assistant Judge N/A

Assistant Judge

### SEE IMPORTANT NOTICE ON BACK

Distribution: White: Served on defendant and returned to Court   Yellow: Plaintiff   Pink: Defendant   Goldenrod: File
Rev. 10/91 lsmc

FELL-00002822

## STATE OF VERMONT

## ADDISON COUNTY, SS.

| | | |
|---|---|---|
| KAREN M. CURRIER | ) | ADDISON FAMILY COURT |
| | ) | |
| v. | ) | |
| | ) | |
| ▮▮▮▮▮▮▮▮▮▮▮ | ) | DOCKET NO. 53-3-92 Andm |

## ACCEPTANCE OF SERVICE

At ___*Middlebury*___ in the County of Addison and State of Vermont on the __28__ day of April, 1997, I accept service of the attached AMENDED ORDER OF MODIFICATION dated April 11, 1997, by accepting a true copy thereof, and I agree that such acceptance of service shall be effective and binding upon me with the same force and effect as though served upon me by a duly qualified officer, and all further and more particular services are hereby expressly waived.

_____
Karen M. Currier

family:forms:accptser

FELL-00002823

**MARSH & ASSOCIATES, P.C.**
ATTORNEYS AT LAW
62 Court Street
Middlebury, VT  05753

Pamela A. Marsh
Janet P. Shaw

TEL: (802) 388-4026
FAX: (802) 388-2021

April 29, 1997

Chip Epperson, Clerk
Addison Family Court
7 Mahady Court
Middlebury, VT  05753

Re:    Currier v. █████

Dear Chip:

Enclosed please find an Acceptance of Service from Karen Currier in the above-referenced matter.

Sincerely,

*Tina Cartwright*

Christina Cartwright
Legal Assistant

Enclosure

FELL-00002824

### STATE OF VERMONT

### ADDISON COUNTY, SS.

| | | |
|---|---|---|
| KAREN M. CURRIER | ) | ADDISON FAMILY COURT |
| | ) | |
| v. | ) | |
| | ) | |
| ▮▮▮▮▮▮▮ | ) | DOCKET NO. 53-3-92 Andm |

### ACCEPTANCE OF SERVICE

At MIDDLEBURY _____ in the County of ADDISON and State of Vermont on the __11__ day of April, 1997, I accept service of the attached AMENDED ORDER OF MODIFICATION dated April 11, 1997, by accepting a true copy thereof, and I agree that such acceptance of service shall be effective and binding upon me with the same force and effect as though served upon me by a duly qualified officer, and all further and more particular services are hereby expressly waived.



family:forms:accptser

FELL-00002825

**MARSH & ASSOCIATES, P.C.**
ATTORNEYS AT LAW
62 Court Street
Middlebury, VT 05753

Pamela A. Marsh
Janet P. Shaw

TEL: (802) 388-4026
FAX: (802) 388-2021

April 24, 1997

Chip Epperson, Clerk
Addison Family Court
7 Mahady Court
Middlebury, VT 05753

Re:    Currier v. █████

Dear Chip:

I enclose an Acceptance of Service from █████████.

Sincerely,

*Tina Cartwright*

Christina Cartwright
Legal Assistant

Enclosure

APR  5 1997

FELL-00002826

Family Court of Vermont
Addison County
7 Mahady Court
Middlebury, Vermont 05753
(802) 388-4605


Court Case File


```
┌─────────────────────────────────────────────────────────┐
│              N O T I C E   O F   H E A R I N G            │
└─────────────────────────────────────────────────────────┘
```

March 7, 1997

Karen M. Currier
          vs.                          Docket No. 53-3-92 Andm
█████ █ █████


This is to notify you to appear at the Court named above in connection
with the above named case for the following:

        Motion Hearing
              Motion For Grandparent Vistation


        Friday April 11, 1997 at 10:00 AM

                                    Tammy Cota, Assistant Clerk

        Copies sent to:

                        arsh for Plaintiff Karen M. Currier
    P 146 048 635        ingler for Grandparent █████████
                           ██ █
    US Postal Service      3/7/97
    **Receipt for Certified Mail**
    No Insurance Coverage Provided.
    Do not use for International Mail *(See reverse)*

| | |
|---|---|
| Se █████████ | |
| Street & Number P.O. Box 610 | |
| Post Office, State, & ZIP Code S. Barre VT   05670 | |
| Postage | $ |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ 4.82 |
| Postmark or Date | |

PS Form 3800, April 1995



**SENDER:**
■ Complete items 1 and/or 2 for additional services.
■ Complete items 3, 4a, and 4b.
■ Print your name and address on the reverse of this form so that we can return this card to you.
■ Attach this form to the front of the mailpiece, or on the back if space does not permit.
■ Write *Return Receipt Requested* on the mailpiece below the article number.
■ The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☑ Restricted Delivery
Consult postmaster for fee.

3. Article Addressed to:

█████ ███████
P.O. Box 610
So. Barre, VT
        05670

| 4a. Article Number | P 146 048 635 |
|---|---|

4b. Service Type
☐ Registered       ☑ Certified
☐ Express Mail     ☐ Insured
☐ Return Receipt for Merchandise  ☐ COD

7. Date of Delivery  3/8/97

5. Received By: *(Print Name)*  ██████████

8. Addressee's Address *(Only if requested and fee is paid)*

6.  ████████████████

53-3-92 Andm   3/7/97

PS Form 3811, December 1994

Domestic Return Receipt

Feb, 18, 1997

To Chip Epperson;

I am unable to attend court on 2/21 at 10:00. This is in regard to grandparent visitation for ▓▓▓▓▓▓ & ▓▓▓▓ and ▓▓▓▓ Currier vs. ▓▓▓▓ Docket# 53-3-92Anvm.

Previously I had time off and missed work only to have the hearing cancelled. This time I could not get the day off, but if you need to speak with me during the hearing, you can call me at 475-0153, ask for meat Department and then for me, if I don't answer -

Sincerely

▓▓▓▓▓▓▓▓▓▓



FILED

FEB 1 9 1997

ADDISON FAMILY COURT
CHIP EPPERSON, CLERK

FELL-00002828

Family Court of Vermont
Addison County
7 Mahady Court
Middlebury, Vermont 05753
(802) 388-4605

Court Case File

```
┌──────────────────────────────────────────────────────────────┐
│                N O T I C E   O F   H E A R I N G               │
└──────────────────────────────────────────────────────────────┘
```

January 27, 1997

Karen M. Currier
          vs.                        Docket No. 53-3-92 Andm
███████████

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

        Motion Hearing
                Motion For Grandparent Vistation

        Friday February 21, 1997 at 10:00 AM

                                Tammy Cota, Assistant Clerk

P 203 309 011          rsh for Plaintiff Karen M. Currier
         1/27/97       ngler for Grandparent ████████
                       █ █

**US Postal Service**
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail *(See reverse)*

| | |
|---|---|
| Sent to ████████ | |
| Street & Number P.O. Box 610 | |
| Post Office, State, & ZIP Code So. Barre/ VT  05670 | |
| Postage | $ |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ 4.82 |
| Postmark or Date  NOH, Pro Se form. | |

PS Form **3800**, April 1995

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *Return Receipt Requested* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☑ Restricted Delivery
Consult postmaster for fee.

3. Article Addressed to:
████████████
P.O. Box 610
So. Barre, VT.
05670

| | |
|---|---|
| 4a. Article Number  P 203 309 011 | |
| 4b. Service Type | |
| ☐ Registered | ☑ Certified |
| ☐ Express Mail | ☐ Insured |
| ☐ Return Receipt for Merchandise | ☐ COD |

7. Date of Delivery  1-31-97

5. Received By: *(Print Name)* ████████

6. Signature: *(Addressee or Agent)*
X

8. Addressee's Address *(Only if requested and fee is paid)*

53-3-92 4ndm   1/27/97

Is your RETURN ADDRESS completed on the reverse side?

PS Form **3811**, December 1994
**Domestic Return Receipt**

FELL-00002829

Family Court of Vermont
Addison County

================================================================

E N T R Y   R E G A R D I N G   M O T I O N

================================================================

Docket No: 53-3-92 Anom        Currier vs. ███        (Marsh/None)

Title of Motion:        Motion to Continue, No. 26

Date Motion Filed:        January 21, 1997

Motion Filed By:        Shingler, Karen, Attorney for:
                        Grandparent ███████████

✓ Granted      Compliance by_____

__ Denied

__ Scheduled for hearing on: _____ at _____; Time Allotted _____

__ Other

Judge / Magistrate                                    1/27/97
                                                      Date

================================================================

Date copies sent to:  1/28/97                Clerk's Initials tammy
Copies sent to:
        Attorney Pamela Marsh for Plaintiff Karen M. Currier
        Attorney Karen Shingler for Grandparent ███████████
        Defendant ███████████  ███████
        Court Case File

FELL-00002830

STATE OF VERMONT
ADDISON COUNTY, SS.

KAREN M. CURRIER                )        VERMONT FAMILY COURT
                                )
    V.                          )
                                )        DOCKET NO. 53-3-92Andm
    ███   █   ███                )

MOTION TO CONTINUE

NOW COMES Karen Shingler, Esq., attorney for ████ ████, the Petitioner in this case, and respectfully requests the Honorable Court to continue the hearing presently scheduled on February 13, 1997 at 10:00 a.m. In support hereof, Counsel asserts the following:

-Dr. Jonathan Weker is a necessary and essential witness to the presentation of Petitioner's case and is out of state in Louisiana on the day of the hearing.

DATED at Burlington, Vermont this $\underline{17}$ day of January, 1997.

Respectfully Submitted,

Karen Shingler
Attorney at Law

cc:   Pamela Marsh, Esq.
      ██████

LAW OFFICE OF
KAREN R. SHINGLER
131 MAIN STREET
BURLINGTON, VT 05401

(802) 865-0654

1



FILED
2 1 1997
ADDISON FAMILY COURT
CHIP EMERSON CLERK

**LAW OFFICES OF**
**KAREN RUSH SHINGLER**
131 Main Street
Burlington, Vermont 05401

Karen Rush Shingler
Peter B. Schubart

Tel. (802) 865-0654
Fax (802) 865-4270

January 17, 1997

Tammy Cota, Assistant Court Clerk
Vermont Family Court
7 Mahady Court
Middlebury, Vermont   05753

Re:   <u>Currier v. ████</u>
      Docket No. 53-3-92Andm

Dear Tammy:

Enclosed please find a Motion to Continue in regard to the above mentioned case for filing with the Court.

Thank you for your assistance in this matter.

Sincerely,

Karen Shingler

KRS/kab
encl.

cc:   <u>Pamela Marsh</u>, Esq.
      ████████



FILED

2 1 1997

ADDISON FAMILY COURT
CHIP EPPERSON, CLERK

FELL-00002832

Family Court of Vermont
Addison County
7 Mahady Court
Middlebury, Vermont 05753
(802) 388-4605

Court Case File

---

## N O T I C E   O F   H E A R I N G

---

December 31, 1996

Karen M. Currier
vs.                          Docket No. 53-3-92 Andm

[REDACTED]

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

    Motion Hearing

        Motion For Grandparent Vistation

    Thursday February 13, 1997 at 10:00 AM

Tammy Cota, Assistant Clerk

P 203 308 881    arsh for Plaintiff Karen M. Currier
             ingler for Grandparent [REDACTED] on

12/31/96

**US Postal Service**
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail *(See reverse)*

| | |
|---|---|
| Sent to [REDACTED] | |
| Street & Number P.O. Box 361 | |
| Post Office, State, & ZIP Code St. Albans, Vt. 05478 | |
| Postage | $ |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ 4.82 |
| Postmark or Date NOH. | |

PS Form **3800**, April 1995

---

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "*Return Receipt Requested*" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☑ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

[REDACTED]
P.O. Box 361
St. Albans, Vt.
05478

| 4a. Article Number | |
|---|---|
| P 203 308 881 | |

4b. Service Type

| | |
|---|---|
| ☐ Registered | ☑ Certified |
| ☐ Express Mail | ☐ Insured |
| ☐ Return Receipt for Merchandise | ☐ COD |

7. Date of Delivery
1-7-97

5. Received By: *(Print Name)*

8. Addressee's Address *(Only if requested and fee is paid)*

6. Sig [REDACTED]
X

53-3-92 Andm    12/31/96

PS Form **3811**, December 1994

Domestic Return Receipt

FELL-00002833

11-13-1996 05:08PM    FROM CSAC               TO        93884643    P.02

## COUNSELING SERVICE
### OF ADDISON COUNTY
• MAILING ADDRESS
89 Main Street, Middlebury, VT 05753

• MENTAL RETARDATION SERVICES
61 Court Street, Middlebury • Phone 802/388-4021

• MENTAL HEALTH SERVICES
89 Main Street, Middlebury • Phone 802/388-6751
14 School Street, Bristol • Phone 802/453-3009
257 Main Street, Vergennes • Phone 802/877-3715

November 11, 1996

Judge Matthew I. Katz
Addison County Family Court
Middlebury, VT   05753

Dear Judge Katz,

I am responding to your request for a plan for reunification between my client, ▮▮▮▮▮ and his paternal grandmother, ▮▮▮▮▮. I appreciate your request for my input into this particular proceeding affecting ▮▮▮▮.

I have reviewed both Dr. Candido's and Dr. Weker's evaluations of Ms. ▮▮▮▮ and would like to request the following: That the framework for reunification recommended by Dr. Candido be followed. There are several reasons that I would request this:

1.  Concurrent visitation between ▮▮▮▮ and his father and ▮▮▮▮ and his grandmother would likely be overwhelming for ▮▮▮. Dr. Candido's framework takes what is likely to be helpful and manageable to ▮▮▮▮ into account.

2.  Dr. Candido has evaluated and interviewed ▮▮▮▮, his mother, step-father, father and grandmother. Dr. Candido's recommended framework is based on direct contact with my client and all key members of my client's family system (i.e., his grandmother, father, mother and step-father). Any recommended plan for visitation between ▮▮▮▮ and his grandmother should be made with knowledge and experience of ▮▮▮▮ and the context within which visits with his grandmother would occur.

3.  Dr. Candido's framework proceeds with a systematic approach based on building success for ▮▮▮▮ in a manner that is least likely to evoke overwhelming past traumatic memories and provides Michael a clear, sequenced structure. It is important to remember that ▮▮▮▮ is a child who has experienced overwhelming incidents of violence. Re-introduction to relationships and/or settings where associations to these events will be stimulated should proceed gradually and carefully.



A COMMUNITY MENTAL HEALTH/MENTAL RETARDATION SERVICE
MEMBER AGENCY—UNITED WAY OF ADDISON COUNTY

TOTAL P.02

FELL-00002834

-2-

In regard to a March deadline for a plan to commence and/or be completed, I would urge that progressive contact between ████ and his grandmother occur within the framework outlined by Dr. Candido and proceed based on ████'s success, rather than a pre-established date.

Please feel free to contact me again regarding this matter.

Sincerely,

Frank Carruth, LCSW
Outpatient Clinician

FELL-00002835

11-13-1996 05:09PM    FROM    CSAC                    TO            93884643    P.01

COUNSELING SERVICE OF ADDISON COUNTY
89 Main Street
Middlebury, VT  05753
Telephone:  802-388-6751
Fax:  802-388-3108

TO:    _Judge Mathew Katz    Fax # 388-4643_

FROM:    _Frank Carruth (CSC)_

DATE:    _11/13/96_

PAGES SENT (including cover sheet) ___3___

### PRIVILEGE AND CONFIDENTIALITY NOTICE

The information in this telecopy is intended for the named
recipients only.  It may contain privileged and confidential
matter.  If you have received this telecopy in error, please
notify us immediately by a telephone call to 802-388-6751,
and return the original to the sender by mail.  We will
reimburse you for postage.  Do not disclose the contents to
anyone.  Thank you.



FILED
NOV 1 3 1996
ADDISON FAMILY COURT
CHIP EPPERSON CLERK

FELL-00002836

Family Court of Vermont
Addison County

=============================================================
E N T R Y   R E G A R D I N G   M O T I O N
=============================================================

Docket No. 53-3-92 Ancm        Currier vs. ███████    (Marsh/None)

Title of Motion:        Motion to Continue, No. 7a

Date Motion Filed:      October 29, 1996

Motion Filed By:        Marsh, Pamela, Attorney for:
                        Plaintiff Karen M. Currier


___ Granted    Compliance by_____

✓ Denied

___ Scheduled for hearing on: _____ at _____; Time Allotted _____

✓ Other

Attorneys are to status with the judge on this day and time.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Chip Epperson                              10/31/96
_____                   _____
Judge / Magistrate                          Date
=============================================================

Date copies sent to:    10/31/96              Clerk's Initials  tammy
Copies sent to:
        Attorney Pamela Marsh for Plaintiff Karen M. Currier
        Attorney Karen Shingler for Grandparent ███████
        Defendant ███████
        Court Case File

FELL-00002837

## MARSH & ASSOCIATES, P.C.
### ATTORNEYS AT LAW
62 Court Street
Middlebury, VT 05753

Pamela A. Marsh
Deborah Grant

TEL: (802) 388-4026
FAX: (802) 388-2021

Monday, October 28, 1996

Chip Epperson, Clerk
Addison Family Court
7 Mahady Court
Middlebury, VT 05753

Re: Currier v. ███ , Docket No. F53-3-92 Andmd

Dear Chip:

I am enclosing my Motion to Continue in this matter. My client is unavailable for hearings on Thursdays because of her daughter's ongoing medical appointments in Burlington on Thursdays.

Thank you for your consideration of this motion.

Sincerely,

*Pam*

Pamela A. Marsh, Esq.

PAM/map

cc: Client

███

Karen Rush Shingler, Esq.

OCT 2 9 1996

FELL-00002838

STATE OF VERMONT

ADDISON COUNTY, SS.

KAREN CURRIER                    )      ADDISON FAMILY COURT
                                 )
      v.                         )
                                 )
████████████████                 )      DOCKET NO.  F53-3-92 Andmd

## MOTION TO CONTINUE

NOW COMES Plaintiff, Karen Currier, by and through her attorney, Pamela A. Marsh, Esq. of Marsh & Associates, P.C.,  and moves to continue the hearing on the grandmother's Motion for Grandparent Visitation set for Thursday, November 14, 1996 as follows:

Plaintiff's 2 year old daughter Ashley is still being treated for cancer following the removal of a partially malignant tumor from her kidney.  At this time and for the forseeable future, she is scheduled for appointments with doctors, chemotherapy, and tests on Thursdays.  Plaintiff would be available to attend a hearing on any day of the week except Thursdays.

Thus, Plaintiff requests that the hearing set for November 14 be rescheduled for any day other than Thursday.

DATED at Middlebury, Vermont this 25th day of October, 1996.

_Pamela A Marsh_
Pamela A. Marsh, Esq.
Marsh & Associates, P.C.
62 Court Street
Middlebury, VT  05753

OCT 2 9 1996

FELL-00002839

STATE OF VERMONT
ADDISON COUNTY, SS.

| | | |
|---|---|---|
| KAREN M. CURRIER | ) | VERMONT FAMILY COURT |
| | ) | |
| V. | ) | |
| | ) | DOCKET NO. 53-3-92Andm |
| ████████ ███ | ) | |

<u>MOTION TO SEAL RECORDS</u>

NOW COMES Grandparent, ███████████, by and through her attorney, Karen Shingler, and hereby moves the Honorable Court to seal the Psychological Evaluation issued by Champlain Valley Psychiatry and the Psychiatric Evaluation Report of Dr. Weker on the grounds that the contents thereof are highly personal and sensitive and are submitted for the limited purpose of supporting ██████████████ request for Grandparental visitation.

DATED at Burlington, Vermont this �month 8 day of October, 1996.

JOYCE GAGNON

By: _Karen Shingler, Esq._

cc:  Pamela Marsh, Esq.

So ordered.

DATED at Middlebury, Vermont this 24th day of October, 1996.

_Hon. Matthew I. Katz_
Family Court Judge

LAW OFFICE OF
KAREN R. SHINGLER
131 MAIN STREET
BURLINGTON, VT 05401

(802) 865-0654

FILED

OCT 24 1996

ADDISON FAMILY COURT
CHIP EPPERSON CLERK

FELL-00002840

LAW OFFICE OF
KAREN RUSH SHINGLER
131 Main Street
Burlington, Vermont 05401

Karen Rush Shingler
Laurie LeClair

Tel. (802) 865-0654
Fax (802) 865-4270

October 18, 1996

Hon. Matthew I. Katz, Family Court Judge
Vermont Family Court
7 Mahady Court
Middlebury, Vermont  05753

Re:  <u>Karen M. Currier v.</u> █████████
     Docket No. 53-3-92Andm

Dear Judge Katz:

Enclosed please find copies of Paul Candido's report
together with a report from Dr. Weker regarding ██████████
and the suitability of contact with her grandson. I also
enclose a letter from ██████ son ████████, the father of the
child, for the Court's review and consideration.

Finally, please find a Motion to Seal the aforementioned
documents for the Court's consideration.

Would the Court set this matter for hearing at its
earliest convenience so that we can present the testimony of
Dr. Weker in further support of our request for grandparental
visitation.

Sincerely,

Karen Shingler

KRS/kab
encl.

cc:  Pamela Marsh, Esq.



ADDISON FAMILY/
DISTRICT COURT

OCT 2 1 1996

CHIP EPPERSON
COURT MANAGER

# MARSH & ASSOCIATES, P.C.
### ATTORNEYS AT LAW
62 Court Street
Middlebury, VT 05753

Pamela A. Marsh
Deborah Grant

TEL: (802) 388-4026
FAX: (802) 388-2021

Wednesday, October 23, 1996

Chip Epperson, Clerk
Addison Family Court
7 Mahady Court
Middlebury, VT 05753

Re: Currier v. ▮▮▮ Docket No. F53-3-92 Andmd

Dear Chip:

I have received copies of the evaluation reports regarding ▮▮▮▮▮ presumably related to her motion for grandparent visitation. I was under the impression that the motion had been denied at the last hearing. Is it now to be revived because the grandmother has found a psychologist more to her liking?

In any event, I concur in Karen Shingler's request that the documents be sealed by the court until necessary to be reviewed in connection with a pending motion or hearing.

Sincerely,

Pamela A. Marsh, Esq.

PAM/map

cc: Client
▮▮▮
Karen Rush Shingler, Esq.

OCT 2 4 1996

FELL-00002842

Family Court of Vermont
Addison County
7 Mahady Court
Middlebury, Vermont 05753
(802) 388-4605

Court Case File

```
┌──────────────────────────────────────────────────────────────┐
│                N O T I C E   O F   H E A R I N G               │
└──────────────────────────────────────────────────────────────┘
```

October 23, 1996

Karen M. Currier
            vs.                          Docket No. 53-3-92 Andm

█████████████████████

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

        Motion Hearing

              Motion For Grandparent Vistation


        Thursday November 14, 1996 at 11:00 AM

                                        Tammy Cota, Assistant Clerk

P 203 317 084

                    rsh for Plaintiff Karen M. Currier
                    ngler for Grandparent ███████████  1st class

---

**US Postal Service**                                           10/23/96
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail *(See reverse)*

Sent to ████████████████

P.O. Box 361
Post Office, State, & ZIP Code  St. Albans, Vt. 05478

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ 4.82 |
| Postmark or Date  NoH | |

PS Form **3800**, April 1995

---

Is your RETURN ADDRESS completed on the reverse side?

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *"Return Receipt Requested"* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☑ Restricted Delivery
Consult postmaster for fee.

3. Article Addressed to:
████████████████████
P.O. Box 361
St. Albans, Vt.
                05478

5. Received By (Print Name):  ████████

X

4a. Article Number
P 203 317 084
4b. Service Type
☐ Registered          ☑ Certified
☐ Express Mail        ☐ Insured
☐ Return Receipt for Merchandise  ☐ COD
7. Date of Delivery  11/1/96
8. Addressee's Address *(Only if requested and fee is paid)*

53-3-92 Andm     10/23/96

PS Form **3811**, December 1994                  **Domestic Return Receipt**

Thank you for using Return Receipt Service

Family Court of Vermont
Addison County
7 Mahady Court
Middlebury, Vermont 05753
(802) 388-4605

Court Case File

---

## N O T I C E   O F   H E A R I N G

August 28, 1996

Karen M. Currier
      vs.                              Docket No. 53-3-92 Andm

████████████████

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

       Motion Hearing
           Motion For Grandparent Vistation

       Friday September 13, 1996 at 11:00 AM

                           Tammy Cota, Assistant Clerk

Copies sent to:
    Attorney Pamela Marsh for Plaintiff Karen M. Currier
    Attorney Karen Shingler for Grandparent ████████
    Defendant ████████████
    Court Case File

FELL-00002844

Family Court of Vermont
Addison County

====================================================================
E N T R Y   R E G A R D I N G   M O T I O N
====================================================================

Docket No: 53-3-92 Andm      Currier vs. ▮▮▮▮  (Marsh/Pro Se)

Title of Motion:        Motion to Continue, No. 23

Date Motion Filed:      August 27, 1996

Motion Filed By:        Marsh, Pamela, Attorney for,
                        Plaintiff Karen M. Currier

MPR Response:           NONE

☑ Granted    Compliance by _____

__ Denied

__ Scheduled for hearing on: _____ at _____; Time Allotted _____

☑ Other

Reset on September 13 at 11:00 A.M.

_____          8/27/96
Judge / Magistrate                          Date

====================================================================

Date copies sent to: __8/28/96__          Clerk's Initials __TSC__
Copies sent to:
        Attorney Pamela Marsh for Plaintiff Karen M. Currier
        Attorney Karen Shingler for Grandparent ▮▮▮▮
        Defendant ▮▮▮▮▮▮
        Court Case File

FELL-00002845

# MARSH & ASSOCIATES, P.C.
ATTORNEYS AT LAW
62 Court Street
Middlebury, VT 05753

Pamela A. Marsh
Deborah Grant

TEL: (802) 388-4026
FAX: (802) 388-2021

Friday, August 23, 1996

Chip Epperson, Clerk
Addison Family Court
7 Mahady Court
Middlebury, VT 05753

Re: Currier v. ████ Docket No. F53-3-92 Andmd

Dear Chip:

I am enclosing Motion to Continue the hearing set for September 12. As stated in the motion, Plaintiff's daughter is undergoing chemotherapy and tests on Thursdays, and Plaintiff is not available as a result. Any day other than Thursday will be fine.

Sincerely,

/S/ Pamela Marsh

Pamela A. Marsh, Esq.

PAM/map

cc: Client

████████

Karen Rush Shingler, Esq.



STATE OF VERMONT

ADDISON COUNTY, SS.

| | | |
|---|---|---|
| KAREN CURRIER | ) | ADDISON FAMILY COURT |
| | ) | |
| v. | ) | |
| | ) | |
| ▮▮▮▮▮▮▮ | ) | DOCKET NO. F53-3-92 Andmd |

## MOTION TO CONTINUE

NOW COMES Plaintiff, Karen Currier, by and through her attorney, Pamela A. Marsh, Esq. of Marsh & Associates, P.C., and moves to continue the hearing on the grandmother's Motion for Grandparent Visitation set for Thursday, September 12, 1996 as follows:

Plaintiff's 2 year old daughter Ashley is being treated for cancer following the removal of a partially malignant tumor from her kidney. At this time and for the forseeable future, she is scheduled for appointments with doctors, chemotherapy, and tests on Thursdays. Plaintiff would be available to attend a hearing on any day of the week except Thursdays.

Thus, Plaintiff requests that the hearing set for September 12 be rescheduled for any day other than Thursday.

DATED at Middlebury, Vermont this 23rd day of August, 1996.

Pamela A. Marsh, Esq.
Marsh & Associates, P.C.
62 Court Street
Middlebury, VT 05753



ADDISON FAMILY/
DISTRICT COURT

2 7 1996

CHIP EPPERSON
COURT MANAGER

FELL-00002847

Family Court of Vermont
Addison County
7 Mahady Court
Middlebury, Vermont 05753
(802) 388-4605

Court Case File

```
┌──────────────────────────────────────────────────────────────────────┐
│                    N O T I C E   O F   H E A R I N G                    │
└──────────────────────────────────────────────────────────────────────┘
```

August 2, 1996

Karen M. Currier
            vs.                         Docket No. 53-3-92 Andm

████████████████

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

        Motion Hearing
                Motion For Grandparent Vistation


        Thursday September 12, 1996 at 09:30 AM

Please Note: The hearing set for August 8, 1996 has been cancelled. Parties are
notified to appear at the above date and time for the Motion for Grandparent
Visitation.

                                    Tammy Cota, Assistant Clerk
Copies sent to:                     _Tammy Cota_
    Attorney Pamela Marsh for Plaintiff Karen M. Currier
    Attorney Karen Shingler for Grandparent ████  ████
    Defendant  ████████████                            } first class
    Court Case File

FELL-00002848

## MARSH & ASSOCIATES, P.C.
### ATTORNEYS AT LAW
62 Court Street
Middlebury, VT 05753

Pamela A. Marsh
Deborah Grant

TEL: (802) 388-4026
FAX: (802) 388-2021

Tuesday, August 6, 1996

Chip Epperson, Clerk
Addison Family Court
7 Mahady Court
Middlebury, VT 05753

Re:  Currier v. ███, Docket No. F53-3-92 Andmd

Dear Chip:

When Karen Shingler was here for court in another matter this morning, I spoke to her about her Motion for Grandparent Visitation in this matter.  She indicated that she would in "no way" agree to disclose Dr. Paul Candido's evaluation report of her client. I request that when this matter is rescheduled for hearing, that it be for status conference, rather than on the merits of the motion so that this issue can be addressed.

My client's (Karen's) daughter made it though her surgery, but the prognosis is far from clear at this time.  I spoke with my client's mother yesterday, and she told me that part of the tumor was malignant, and that the course of treatment still hasn't been determined because of the need for additional test results. I will let the court know when the crisis has passed.

Thank you for your understanding in this difficult time.

Sincerely,

Pam

Pamela A. Marsh, Esq.

PAM/map

cc:  Client
     ███
     Karen Rush Shingler, Esq.

FILED

AUG - 7 1996

ADDISON FAMILY COURT
CHIP EPPERSON, CLERK

FELL-00002849

STATE OF VERMONT

ADDISON COUNTY, SS.

KAREN CURRIER )    ADDISON FAMILY COURT
)
v. )
)
████████████████ )    DOCKET NO.  F53-3-92 Andmd

## MOTION TO CONTINUE

NOW COMES Plaintiff, Karen Currier, by and through her attorney, Pamela A. Marsh, Esq. of Marsh & Associates, P.C., and moves to continue the hearing on the grandmother's Motion for Grandparent Visitation set for August 8, 1996 as follows:

Plaintiff's 2 year old daughter has been diagnosed with a tumor on her kidney that also touches her liver and spine.  She is undergoing major surgery at Fletcher-Allen Health Care for the removal of the tumor, and will also be having numerous tests and biopsies.  The surgery will occurr as early as July 31, or as late as August 6. Plaintiff will be staying with her daughter in the hospital to assist in her care.  She has been told by the doctors that her daughter will likely be hospitalized for several weeks; she doesn't know exactly how long.

Plaintiff requests that the hearing scheduled for August 8, 1996 be continued until after this crisis has passed.  She will inform the undersigned of her daughter's situation and when she will be available for the hearing in this matter.

The undersigned left a message on Attorney Shingler's answering machine, but was not able to speak with her directly on this issue.

DATED at Middlebury, Vermont this ___ day of July, 1996.

_____
Pamela A. Marsh, Esq.
Marsh & Associates, P.C.
62 Court Street
Middlebury, VT  05753

FELL-00002850

# MARSH & ASSOCIATES, P.C.
### ATTORNEYS AT LAW
62 Court Street
Middlebury, VT 05753

Pamela A. Marsh
Deborah Grant

TEL: (802) 388-4026
FAX: (802) 388-2021

Wednesday, July 31, 1996

Chip Epperson, Clerk
Addison Family Court
7 Mahady Court
Middlebury, VT 05753

Re: Currier v. ▮▮▮ Docket No. F53-3-92 Andmd

Dear Chip:

Enclosed please find for filing my Motion to Continue in the above-entitled matter.

Thank you for your services.

Sincerely,

Pamela A. Marsh, Esq.

PAM/map

cc: Client

▮▮▮▮

Karen Rush Shingler, Esq.

ADDISON FAMILY/
DISTRICT COURT

1 1996

CHIP EPPERSON
COURT MANAGER

FELL-00002851

Family Court of Vermont
Addison County

===============================================================================
E N T R Y   R E G A R D I N G   M O T I O N
===============================================================================

Docket No: 53-3-92 Andm        Currier vs ▮▮▮▮▮▮  [Marsh/Pro Se]

Title of Motion:        Motion to Continue, No. 21

Date Motion Filed:      July 26, 1996

Motion Filed By:        Shingler, Karen, Attorney for
                        Grandparent ▮▮▮▮▮▮▮▮

MPR Response:           NONE

___ Granted    Compliance by_____

✓ Denied

___ Scheduled for hearing on: _____ at _____; Time Allotted _____

___ Other

Judge / Magistrate                                7/26/96
                                                  Date
===============================================================================

ate copies sent to: 7/26/96                       Clerk's Initials _____
opies sent to:
    ✓Attorney Pamela Marsh for Plaintiff Karen M. Currier
    ✓Attorney Karen Shingler for Grandparent ▮▮▮▮▮▮
    ✓Defendant ▮▮▮▮▮▮▮
     Court Case File

FELL-00002852

STATE OF VERMONT
ADDISON COUNTY, SS.

| | | |
|---|---|---|
| KAREN M. CURRIER | ) | VERMONT FAMILY COURT |
| | ) | |
| V. | ) | |
| | ) | DOCKET    NO.    53-3-92AnDm |
| ██████████  ██████ | ) | |

MOTION TO CONTINUE

NOW COMES Karen Shingler, Esq., attorney for Grandparent ██████  ██████ in this case, and respectfully requests the Honorable Court to continue the hearing presently scheduled for August 8, 1996 at 1:00 p.m.  In support hereof, Counsel asserts the following:

-Counsel is unavailable to attend due to prior Family Court commitments in Chittenden County scheduled for the same date (Downs v. Downs).

DATED at Burlington, Vermont this day of July, 1996.

Respectfully Submitted,

Karen Shingler
Attorney at Law

cc:  Pamela Marsh, Esq.

██████████████████

LAW OFFICE OF
KAREN R. SHINGLER
131 MAIN STREET
BURLINGTON, VT 05401

(802) 865-0654

FILED

JUL 26 1996

ADDISON FAMILY COURT
CHIP EPPERSON, CLERK

FELL-00002853

Family Court of Vermont
Addison County
7 Mahady Court
Middlebury, Vermont 05753
(802) 388-4605

Court Case File

## N O T I C E   O F   H E A R I N G

July 3, 1996

Karen M. Currier

vs.                                          Docket No. 53-3-92 Andm

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

> Status Conference
>          Motion For Grandparent Vistation

Thursday August 8, 1996 at 01:00 PM

Tammy Cota, Assistant Clerk

Copies sent to:
Attorney Pamela Marsh for Plaintiff Karen M. Currier
Attorney Karen Shingler for Grandparent ▓▓▓▓▓▓▓  } first class
Defendant ▓▓▓▓▓▓
Court Case File

FELL-00002854

## STATE OF VERMONT

## ADDISON COUNTY, SS.

KAREN CURRIER        )        ADDISON FAMILY COURT

                          )

        v.             )

                          )

██████████       )        DOCKET NO. F53-3-92 Andmd

## CERTIFICATE OF SERVICE

I, Pamela A. Marsh, Esq., of Marsh & Associates, P.C., attorney for the Plaintiff,

hereby certify pursuant to V.R.C.P. Rule 5, that I have served a Request to Produce upon

the grandmother, ██████████ placing a copy of the same, postage prepaid, FIRST

CLASS in the U.S. Mail, addressed to Defendant's attorney of record, Karen Shingler,

Esq., of Burlington, Vermont.

DATED at Middlebury, Vermont this 22nd day of July, 1995.

*Pamela A. Marsh* /cdc

Pamela A. Marsh, Esq.
MARSH & ASSOCIATES, P.C.
62 Court Street
Middlebury, Vermont 05753

msworks/family/carreos



JUL 2 3 1995

ADDISON FAMILY COURT
CHIP EPPERSON, CLERK

FELL-00002855

CHAMPLAIN VALLEY PSYCHIATRY SERVICES
35 TIMBER LANE
SOUTH BURLINGTON. VT 05403

658-0886

Per: Karen Shingler's request in
regard to 'Currier NS

ADDISON FAMILY/
DISTRICT COURT

JUN 1 8 1996

CHIP EPPERSON
COURT MANAGER

FELL-00002856

CHAMPLAIN VALLEY PSYCHIATRY SERVICES
35 TIMBER LANE
SOUTH BURLINGTON, VT. 05403

(802)  658-0886

## PSYCHOLOGICAL EVALUATION

**Name:** ████████
**DOB:** ████ /42

**Referral Information:**

████████ is the grandmother of ████████. In 1995 Champlain Valley Psychiatry Services performed a family evaluation as part of a divorce dispute between his parents in which it recommended that ████ mother retain sole parental rights and responsibilities, and outlined a recommended procedure of supervised visits with his father, ████████, who is Ms. ████████ son. As part of that evaluation ████ expressed a desire not to have contact with his grandmother, and his counselor, Frank Carruth, related that he had concerns about possible inappropriate touching that may have occurred with her. The following was recommended at that time:

"It should be strongly emphasized that visitation as discussed above involves only ████ and his father. ████ has expressed a clear desire to not have contact with his grandmother, and she should not be included in visits until he verbalizes an interest to his therapist or other third party. At that point a similar procedure of gradual contact might be initiated after a formal evaluation of her and her relationship with ████. Mr. ████'s report of his mother is that she is a woman with a history of extreme emotional problems, and her potential influence on ████ is, at present, unknown."

Ms. ████ disputes that fact that she has ever engaged in any inappropriate sexual touching with ████████, and has requested an evaluation to determine her suitability to have regular visitation with him.

**Assessment Procedures:**
- Minnesota Multiphasic Personality Inventory-2
- Clinical Interview
- Interview with Jodi Bisson
- Interview with Frank Carruth
- Review of previous records, including family evaluation and personal references

**Background and History:**

Ms. ████ was born on ████ 1942 in Tompkin County, New York, the youngest of five children. She states that her biological parents lost all of the children due to parental neglect, and that she was in foster homes from birth. She recalls that she was in "four or five homes," but does not remember much of her childhood during this period. She does not recall any form of physical or sexual abuse.

Ms. ████ was adopted at the age of eight, and describes her adopted mother as "very overbearing." She states that her biological child had died prior to the adoption and recalls that her

ADDISON FAMILY/
DISTRICT COURT

CHIP EFFERSON
COURT MANAGER

███████

Psychological Evaluation

mother took her to the baby's grave and told her that she would "never take this child's place." She states that she was also "very overprotective," and that as a result she was "never allowed to have many fiends over."

Ms. ███████ describes her adopted father as a "very good and caring person." However, she also states that at the age of thirteen he engaged in "some fondling" and "some sexual manipulation" with her. She states that "it didn't happen often," but that even now "the thought makes (her) feel dirty." She left home at the age of fifteen for "a couple of weeks," and told her mother only that she wanted to be with a friend. She states that when she returned home her father did not resume the sexual contact, and she did not tell her mother about it until after her father's death. By then she was an adult, and she states that her mother did not believe her.

Ms. ███████ married her first husband, Howard, one month before her eighteenth birthday. He was in the service, and they moved to California in 1960 before she completed high school. She recalls that her parents wrote him a letter describing her as "a horrible girl" who "smoked and ran away from home." They returned to New Jersey, where she had her son, ███████. Three months after his birth her husband burned to death in an accident at work with an acetylene torch. Her in-laws brought her up to Vermont where they lived. She was severely depressed at the time, and recalls that she slept for two days without waking, but that her in-laws did not recognize her depression. She "tried to make it on Her) own" with money she received from a settlement related to her husband's death, but states that his parents "stole" it from her. She later bought a house with his life insurance settlement, but due to the fact that she was not yet twenty-one, the court appointed a guardian, Donald Milne. She continued to be depressed, citing the fact that her father had also died that year while she was pregnant, and states that she "couldn't function." She "did not want to live anymore," and as a result was placed at the Vermont State Hospital. During this period her son was in foster care and later lived with her sister-in-law. While in the hospital, she states that Mr. Milne "stole everything (she) had." When she was discharged, approximately after one year," she had to go to court to get custody of her son.

While she was in the hospital Ms. ███████ met Lucy Tatro, who worked there as a nurse. She needed a place to live in order to be discharged, and Ms. Tatro offered her the option of living with her. She states that due to conflicts with Ms. Tatro's husband, as well as fire in their home, she eventually found an apartment for herself in Montpelier. Ms. Tatro, however, came to live with her, and they began a sexual relationship. She states now that she does not know how this happened, since she does not consider herself a lesbian and states that she "always liked men." However, she describes Ms. Tatro as "a very controlling person," and states that at that time she (Ms. ███████) was "afraid to be on (her) own."

Ms. ███████ states that a she "became stronger" she began dating men, which angered Ms. Tatro to the point where she recalls one incident in which Ms. Tatro threatened to kill herself with a pistol. Ms. ███████s son, ███████, has also reported that during this period he was physically abused by Ms. Tatro. Ms. ███████ states that she "never saw any abuse," and "had no inkling" that it was happening. She now believes that "it could have happened." She met her current husband, Moe ███████ at the Central Vermont Hospital where she was working as a switchboard operator. She states that by this time her son was in jail for "stealing guns," and was an habitual drug user, although she "never recognized that he was on drugs." She states that Ms. Tatro became "very violent towards both of (them)" as the relationship between them progressed. She states that Ms. Tatro "stalked" her, and "tried to run Moe off the road." The tension of this situation resulted in a recurrence of her depression, which eventually led to losing her job. Mr. ███████ and Ms. Tatro also worked at this hospital, and she reports that Ms. Tatro "physically

█████████
Psychological Evaluation

abused him" there. She relates an incident in which she "picked up a mop and tried to hit him, and told everybody that he tried to rape her." The resulting emotional strain led to his being admitted to the psychiatric unit at CVH. With both of them unemployed they lived on their savings and eventually "went on welfare." Ms. ████ eventually worked at several jobs, including Howard Johnson's and the Green Mountain Answering Service, until being employed at the Vermont State Housing Authority as a receptionist, a position she held from September, 1988 until March, 1996.

Mr. ████ developed a brain tumor and has been on SSI Disability benefits. Ms. ████n states that his illness has caused a great deal of stress, and that "it is very difficult to deal with a brain injured person." She states that he is dependent on her care, and can, at times, be quite demanding. She describes him at times "like a child," and states that she must help him in elementary tasks such as tying his shoes. She experiences additional stress from the fact that her son, ████ also resides in her home. According to her therapist, Jodi Bisson, Ms. ████ feels as if she is being taken advantage of by her son, and "has poor limit setting skills." Despite these problems, Ms. ████ reports that she has not been on medication for depression for the past three years, and that she "didn't go back to drinking." She states that "throughout (her) life (she) drank some, but never abused alcohol." She states that she would "at most have two or three beers after work." According to Ms. Bisson, however, in addition to working on issues related to her "chaotic life" due to the difficulty with her husband, they also "did some work on her alcohol abuse." She does corroborate the fact that she has apparently stopped drinking.

Ms. ████ continues to be highly distressed by the fact that she does not have any contact with her grandson, ████ She states that neither she nor her son, ████ have seen him since May, 1995 when on the advice of his counselor, Frank Carruth, his mother suspended visitation rights. During the course of an evaluation by this office ████ expressed the desire to visit with his father but not with his grandmother. There were some suspicions, based primarily upon statements he had made in his counselling, that he may have felt uncomfortable during times when she gave him a bath, and that there may have been some inappropriate sexual touching. Ms. ████denies any form of sexually inappropriate behavior, and states that when giving him a bath she "paid no more attention to his penis than his toes." She states that ████ would on occasion soil his pants or wet his bed, and that she would tell him to bathe, stating that if he did not wash himself she would have to. She also believes that "████l has been told a lot of things" by his mother. The recommendations from the family evaluation were that ████ mother should retain full legal rights and responsibilities, but that supervised visits with his father begin in Mr. Carruth's office. It further stated that visitation with Ms. ████ was not in ████ interest given his statements to Mr. Carruth and the unknown nature of her behavior with him. It was this recommendation that prompted the current evaluation.

Mr. Carruth states that the supervised visitation process with ████ father has just recently begun. He states that as recently as "a few months ago" ████l reiterated his feeling that he did not want contact with his grandmother

**Test Results:**

On the Minnesota Multiphasic Personality Inventory-2 Ms.████ profile is indicative of an individual who is somewhat defensive and is likely minimizing their personal problems and attempting to present themselves in an overly favorable manner. Even within this defensive posture there are indications of psychopathology. Individuals with similar profiles typically harbor feelings of chronic, intense anger, and hostile and aggressive impulses, but are unable to express

FELL-00002859



Psychological Evaluation                                    4

their negative feelings appropriately. They appear overcontrolled most of the time, but brief episodes of acting out may occur. In some rare instances, individuals successfully dissociate themselves from their aggressive acting out behavior. However, such individuals lack insight into the origins and consequences of their behavior, and tend to be extrapunitive, blaming other people for their difficulties. As such, other people may define their behavior as problematic, but they are not likely to view it that way.

Individuals with this profile are reasonable free of disabling anxiety and depression, but complaints of headaches, upper gastrointestinal discomfort, and other somatic distress may occur.

Most of their difficulties stem from deep, chronic feelings of hostility toward family members. They demand attention and approval from others. They are sensitive to rejection, and they become hostile when they are criticized. Although they appear outwardly to be socially conforming, inwardly, they are quite rebellious. They may be sexually maladjusted. Suicidal thoughts and attempts are characteristic of such individuals, and are most likely to follow episodes of excessive drinking and acting out behavior.

There are no indications of a current mood/affect or thought disorder.

**Formulation and Recommendations:**

Ms. ▮▮▮▮ presents a history of emotional problems, likely related to early childhood abuse, which has included an extended hospitalization at Vermont State Hospital, probable alcohol abuse, and a long subsequent period of medication for depression. In addition to her childhood trauma, she has endured several major periods of extreme stress as an adult related to an abusive lesbian relationship, behavioral and legal problems involving her son, and the severe medical disability of her husband. Her psychological profile reflects chronic feelings of anger and hostility with a tendency towards periodic acting out.

Despite the personal adversity and emotional turmoil which Ms. ▮▮▮▮ has endured, her overall functioning, especially over the past few years, indicates an ability to address and overcome these difficulties effectively. She has been highly responsible in her professional capacity and has attempted to construct a normalized home environment despite her son's anger towards her in relation to her lack of protection during the period of her emotional vulnerability, and her husband's extreme dependency on her as a result of his disability. She has remained sober, and currently demonstrates no signs of a disabling depressive disorder, despite the fact that she has discontinued her medication. In support of this characterization, Karen Shingler has provided the examiner with eighteen personal references from Ms. ▮▮▮▮ colleagues which attest to her professionalism, stability, and interpersonal skills.

There is nothing in the current evaluation that can decisively determine whether Ms. ▮▮▮▮ has ever been sexually inappropriate with her grandson. Her own childhood sexual abuse, and her apparent current minimization (i.e. characterizing her father as a "very good and caring person" while at the same time reporting that he repeatedly molested her for two years, prompting her to run away from home) suggests that she may have problems recognizing in a child distress or discomfort related to physical touching, or in accepting the child's perception that they do not consider such touching as benign or harmless as she assumes. It is not likely, however, that she, herself, is sexually motivated or aroused by such behavior, or that she intended to be sexually inappropriate with her grandson. Her explanation regarding his bathing appears credible, and it is

FELL-00002860

██████████
Psychological Evaluation                                5

only her possible insensitivity to ███████ s feelings that create a problematic situation.

Frank Carruth states that ███████ is just now beginning the process of supervised visits with his father, and that he is continuing to express that he does not want contact with his grandmother. Given his statements in this regard and Ms. ███████ overall profile, it is not recommended that she have visitation with him at this time. However, it is in ███████ best interest that he eventually resolves this issue with his grandmother and normalizes his relationship with her; given the assumption that she has not been deliberately inappropriate with him. Towards this end it is recommended that after a period of time in which ███████ s relationship with his father has stabilized, she might begin a similar process of supervised visits in Mr. Carruth's office, during which ███████ can directly express to her his feelings and perceptions. It would be critical that prior to such contact she would have some individual sessions with Mr. Carruth so that she could better understand ███████ perspective, and not say or do anything which could jeopardize his therapy. The timing and pace of such an intervention should be determined solely by ███████ emotional state and needs in consultation with Mr. Carruth. Eventual unsupervised contact would depend upon the outcome of these visits, and cannot be determined at this point in the evaluation process.

Paul Candido, Ph.D.
Licensed Clinical Psychologist

FELL-00002861

## MARSH & ASSOCIATES, P.C.
### ATTORNEYS AT LAW
62 Court Street
Middlebury, VT 05753

Pamela A. Marsh
Deborah Grant

TEL: (802) 388-4026
FAX: (802) 388-2021

Friday, June 14, 1996

Chip Epperson, Clerk
Addison Family Court
7 Mahady Court
Middlebury, VT 05753

Re: Currier v. ███, Docket No. F53-3-92 Andmd

Dear Chip:

Enclosed please find for filing my Objection to Proposed Order for Grandparent Visitation.

Thank you for your services.

Sincerely,

Pamela A. Marsh, Esq.

PAM/map

cc: Client

   ███
   Karen Rush Shingler, Esq.

FILED

STATE OF VERMONT

ADDISON COUNTY, SS.

| | | |
|---|---|---|
| KAREN CURRIER | ) | ADDISON FAMILY COURT |
| | ) | |
| v. | ) | |
| | ) | |
| ███████████ | ) | DOCKET NO. F53-3-92 Andmd |

## OBJECTION TO PROPOSED ORDER FOR GRANDPARENT VISITATION

NOW COMES Plaintiff, by and through her attorney, Pamela A. Marsh, Esq., of Marsh & Associates, P.C., and objects to the proposed Order for Grandparent Visitation filed by Karen Shingler on behalf of the paternal grandmother, ███████ ███████.[1]

The paternal grandmother seeks an order of grandparent's visitation pursuant to 15 V.S.A. §1011(a). Under the statutory scheme, grandparent visitation may be only if the court finds that it is in the best interests of the child. 15 V.S.A. § 1011(a). In making that finding, the court must consider the various factors set forth 15 V.S.A. § 1013.

███████████, the seven year old child that the grandmother seeks to have visitation with, has been diagnosed with Post Traumatic Stress Disorder, probably resulting from witnessing severe abuse by his father, the Defendant, against his mother, the Plaintiff. In addition, ███████ himself was physically abused by his father on several occasions, and was verbally abused frequently by his father. In May, 1995, visitation with the father was suspended temporarily while the parties went through a family evaluation to determine the conditions under which visitation between father and son would be safe. The evaluators, Paul Candido, Ph.D. and Patricia Whitman, Ph.D.,

---

[1] Plaintiff notes that counsel for Defendant did not copy her with the proposed Order and Affidavit; the court sent them to the undersigned after inquiring to determine the Plaintiff's position on the matter.

recommended that there be a period of visitation supervised by a person with psychological training, followed by unsupervised community visits, and eventually, visits at the father's home.  This process is underway, but has been substantially delayed primarily because the father has frequently changed and missed appointments.

During the evaluation, █████ made some statements about his grandmother, the petitioner here, that indicated that he didn't want to be with her.  In particular, the Psychologica Evaluation report issued in September, 1995, states on page 10:

> The examiner asked █████ about his grandmother.  He descirbed her as funny.  When asked to talked [sic] about her husband, █████ said he is nice.  He then said, "He and dad's mother used to wash my privates."  He would not talk about this further, saying only that it happened a long time ago.  He later said that if he were to stay with his father, he would not want his grandmother to be there.

In the recommendations section, Dr. Candido wrote:

> █████ has expressed a clear desire to not have contact with his grandmother, and she should not be included in visits until he verbalizes an interest to his therapist or other third party.  At that point a similar procedure of gradual contact might be initiated after a formal evaluation of her and her relationship with █████.  Mr. █████ [the father's] report of his mother is that she is a woman with a history of extreme emotional problems, and her potential influence on █████ is, at present, unknown.

Psychological Evaluation report, page 18.

As a result of these recommendations, Paragraph 7 of the Order for Modification entered in October, 1995, provided that █████ should not be required to have contact with his paternal grandmother until and unless he indicates that he desires such contact, and unless psychological assessment of the grandmother and her relationship with █████ is completed at grandmother's expense.

When the grandmother's motion was filed, the parties agreed that grandmother's visitation could only begin after a report is issued by Paul Candido, Ph.D., indicating that such visitation would be in █████ best interests. The undersigned spoke with Dr. Candido on June 13, 1996 and was told that he hand-delivered a report to Attorney Shingler on June 10, 1996, in response to her statement

in her letter dated May 31, 1996 that, unless he got his report to her within 10 days, she was going to assume that the Order that she has now submitted for the court's review was agreeable to him.

It was the undersigned's understanding that she and the court both would have access to Dr. Candido's report, in addition to the grandmother. To date, Attorney Shingler has not provided the undersigned with a copy of the report. The undersigned suspects that the report may recommend that there be no contact with the grandmother at this time, given that it has not been disclosed to the court and to the Plaintiff's counsel.

In any event,  therapist, Frank Carruth, believes this would be a particularly bad time to start grandparent visitation. ▮▮▮▮ is in the process of reconnecting to his father pursuant to the terms of the Order of Modification. ▮▮▮▮ and his father have had one visit together; the second visit was delayed at the father's request, due to a change of jobs and living circumstances. Frank Curruth concurred with the delay, believing that the neither ▮▮▮▮ nor the father were ready to beging the clarification process at the originally scheduled date. Mr. Carruth believes that ▮▮▮▮ is very anxious and vulnerable right now and is having PTSD memories. In addition, ▮▮▮▮ has told Frank Carruth several times that he does not want to visit with grandmother. Upon information and belief, Defendant father is now living with his mother, ▮▮▮▮▮▮, the proponent of grandparent visitation. If she is allowed to proceed with grandparent visitation, it would be easy for Defendant father to circumvent the provisions of the Order of Modification requiring the father to comply with a schedule of parent-child supervised by an individual with psychological training. Defendant has shown only minimal motivation to follow through consistently with the provisions of the Order of Modification. The father has frequently missed and/or cancelled meetings with ▮▮▮▮ therapist and with ▮▮▮▮ As a result, ▮▮▮▮ has had only one visit with his dad pursuant to the Order of Modification entered on October 12, 1995.

▮▮▮▮ is showing considerable stress as a result of the one visit with his father. In particular, he has resumed some self-stimulatory behavior (dangling keys in

front of his face) and has been more aggressive toward his school mates. This structured and safe visitation plan must be allowed to progress according to the recommendations of the Psychological Evaluation, and should not be subverted through the vehicle of grandparent visitation.

WHEREFORE, Plaintiff respectfully requests that the Court order grandmother's attorney, Karen Shingler, to provide a copy of Dr. Candido's evaluation of the grandmother to the Plaintiff's counsel and to the court, and that the court only order grandparent visitation if the court, after reviewing said evaluation, finds that such visitation meets the criteria set forth in 15 V.S.A. § 1013.

DATED at Middlebury, Vermont this 14th day of June, 1996.

Pamela A. Marsh, Esq.
Marsh & Associates, P.C.
62 Court Street
Middlebury, VT 05753

FELL-00002866

STATE OF VERMONT
ADDISON COUNTY, SS.

KAREN CURRIER                    )      ADDISON FAMILY COURT
                                 )
        V.                       )
                                 )      DOCKET NO. F53-3-92AnDmd
        ███████████              )

### AFFIDAVIT

NOW COMES Karen Shingler, Attorney for the paternal grandmother, ███████████ in the above mentioned case, and states on her own personal knowledge, information and belief as follows:

1.  I am Attorney for the petitioner, ███████████

2.  ████ met with Paul Candido, Ph.D., as ordered by the Court in February - March, 1996. She completed tests and submitted to extensive interviews.

3.  On April 3, 1996 ███████████ made full payment to Paul Candido for services rendered in connection with this case.

4.  On April 23, 1996 I wrote Paul Candido asking that he forward to me a written opinion as to whether he objects to the resumption of grandparental visitation (letter is attached as Exhibit A and incorporated by reference). I have not received a response.

5.  On May 31, 1996 I wrote Dr. Candido a second letter advising him that he should file any objection he may have with the Court within 10 days. A copy of that letter is

LAW OFFICE OF
AREN R. SHINGLER
131 MAIN STREET
BURLINGTON, VT 05401

(802) 865-0054

1

ADDISON FAMILY/
DISTRICT COURT

3 1996

CHIP EPPERSON
COURT MANAGER

FELL-00002867

attached as Exhibit B.

DATED at Burlington, Vermont this ___ day of May, 1996.

_____
Karen Shingler, Esq.

STATE OF VERMONT
CHITTENDEN COUNTY, SS.

Subscribed and sworn to before me at Burlington, Vermont this _____ day of May, 1996.

_____
Notary Public
Commission Expires 2/10/99

LAW OFFICE OF
KAREN R. SHINGLER
191 MAIN STREET
BURLINGTON, VT 05401

(802) 865-0654

2

LAW OFFICE OF
KAREN RUSH SHINGLER
131 Main Street
Burlington, Vermont 05401

Karen Rush Shingler
Laurie LeClair

Tel. (802) 865-0654
Fax (802) 865-4270

April 23, 1996

Paul Candido, Ph.D.
Champlain Valley Psychiatry Services
35 Timber Lane
South Burlington, VT   05403

Re:   ▮▮▮▮▮▮

Dear Paul:

It is my understanding that payment for your services has been made in full by ▮▮▮▮.  I therefore ask that you reduce to writing your opinion regarding occasional grandparental visitation between ▮▮▮▮ and her grandson, ▮▮▮▮.  Your opinion is essential to the resumption of contact.

On behalf of my client, thank you in advance for your attention to this matter.  Please forward your report to my office as per ▮▮▮▮ s request.

Sincerely,

Karen Shingler

KRS/kab

cc:   ▮▮▮▮▮▮

FELL-00002869

LAW OFFICE OF
KAREN RUSH SHINGLER
131 Main Street
Burlington, Vermont 05401

Karen Rush Shingler
Laurie LeClair

Tel. (802) 865-0654
Fax (802) 865-4270

May 31, 1996

Paul Candido, Ph.D.
Champlain Valley Psychiatry Services
35 Timber Lane
South Burlington, VT   05403

Re:      ▮▮▮▮▮▮▮

Dear Dr. Candido:

I have yet to hear any response regarding your assessment of ▮▮▮▮▮▮▮'s request to resume visitation with her grandson, ▮▮▮▮▮▮. It is my understanding that Ms. ▮n completed and paid for her assessment in early April.

Please consider this letter a request that you provide the Honorable Matthew Katz, Presiding Judge, Addison Family Court, at 7 Mahady Court, Middlebury, Vermont 05753, a written objection if you feel that no contact should occur between ▮▮▮▮▮▮▮▮. If the Court does not hear from you within 10 days from the date of this letter, I will assume you have no objection and will ask the Court to issue an order allowing grandparental visitation.

Thank you in advance for your continuing assistance in this matter.

Sincerely,

Karen Shingler

KRS/kab

cc:   Hon. Matthew Katz
▮▮▮▮▮▮▮

FELL-00002870

LAW OFFICE OF
KAREN RUSH SHINGLER
131 Main Street
Burlington, Vermont 05401

Karen Rush Shingler
Laurie LeClair

Tel. (802) 865-0654
Fax (802) 865-4270

May 31, 1996

Chip Epperson, Court Clerk
Vermont Family Court
Addison County Courthouse
7 Mahady Court
Middlebury, Vermont    05753

Re: <u>Currier v.</u> █████

Dear Chip:

Enclosed please find an Affidavit and proposed Order in
regard to the above mentioned case for filing with the Court.

Thank you for your assistance in this matter.

Sincerely,

Karen Shingler

KRS/kab
encl.

cc: █████████

ADDISON FAMILY/
DISTRICT COURT

3 1996

CHIP EPPERSON
COURT MANAGER

FELL-00002871

STATE OF VERMONT
ADDISON COUNTY, SS.

KAREN CURRIER                              )          ADDISON FAMILY COURT
                                           )
        V.                                 )
                                           )          DOCKET NO. F53-3-92AnDmd
        ███████████                        )

### ORDER

Based on Grandmother's Motion for Grandparental Visitation filed on or about December 12, 1995 and based on discussions between the Court and counsel, together with the Affidavit of Counsel for the Petitioner,

IT IS HEREBY ORDERED:

1.   That commencing the month this Order is issued and for each of 2 successive months, Petitioner, ███████████, shall have contact 1 afternoon on a weekend with ███████████ at the Discovery Zone in South Burlington, Vermont.

2.   That the custodial parent, Karen Currier, shall transport ███████████ to and from the Discovery Zone and that Petitioner, ███████████, shall pay for the price of admission.

3.   That after the first 2 visits ███████████ visits shall expand both as to time and location, by agreement of the parties.

DATED at Middlebury, Vermont this _____ day of _____,

LAW OFFICE OF
KAREN R. SHINGLER
131 MAIN STREET
BURLINGTON, VT 05401

(802) 865-0554

1

FELL-00002872

STATE OF VERMONT
ADDISON FAMILY COURT

Karen Currier
Plaintiff

vs.

███████████

Defendant

53-3-92Andm
Docket Number

PRO SE APPEARANCE

Any citizen is entitled to represent himself or herself in a family court case. If this is your intention, it is necessary to enter your appearance for yourself. (This is called a pro-se appearance.) By completing and filing this form with the clerk's office, and sending a copy to the other party, you are telling the court it is your intention to represent yourself. The purpose of a pro se appearance is so notices of court dates and copies of court papers can be sent to you by first class mail, instead of by restricted certified mail, or by personal service by the sheriff or local law enforcement agency.

As a pro se litigant you must notify this court of any change of your address. If you change your address without informing the court, notices may not be received in time for hearings and you may lose the case (by default) for not being present when you should be.

A person appearing pro-se should understand that Court Officers, Judges, Clerks, etc. must be impartial to both sides of a law suit at all times. If legal advise were to be given to one side of the case that impartial status would be violated. Court personnel will try to help to the extent they can without breaking this rule.

A PRO SE LITIGANT MUST FURNISH A COPY OF ANYTHING THAT HE/SHE FILES WITH THE COURT TO ANY OTHER PARTY WHO HAS ENTERED AN APPEARANCE IN THE MATTER.

I hereby enter a pro-se appearance in the following case. My current address is:

P.O. Box 361

St. Albans, Vermont 05478

Telephone No. 476 - 3070

I understand it is my responsibility to keep the court informed of any changes to my address.

Date: 3/14/96

Sign ███████████

Family Court of Vermont
Addison County
7 Mahady Court
Middlebury, Vermont 05753
(802) 388-4605

Court Case File

```
╔══════════════════════════════════════════════════════════╗
║           N O T I C E   O F   H E A R I N G              ║
╚══════════════════════════════════════════════════════════╝
```

February 6, 1996

Karen M. Currier
               vs.                        Docket No. 53-3-92 Andm
     ██████████████

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

        Status Conference

        Thursday March 14, 1996 at 09:30 AM

                                    Tammy Cota, Assistant Clerk

        Copies sent to:
             Attorney Pamela Marsh for Plaintiff Karen M. Currier
                      ----- gler for Grandparent ██████████████
                         . ██████████

        P 203 308 923



FELL-00002874

February 2, 1996

Judge Matthew Katz
Addison County Family Court
7 Mahady Court
Middlebury, Vt.  05753

Dear Judge Katz:     Re:   Karen Currier vs. ███████
                           **DOCKET # 53-3-92ANDM**

I am writing in regard to my son ███████ and a current problem
pertaining to visitation with him.

I have followed all of the stipulations set by you in the court
order as to my seeing ███████'s Counselor ~~Paul~~ *FRANK* Carruth and meeting
all of the necessary requirements to facilitate regular visitation
with ███████.

Currently, he (*FRANK* ~~Paul~~ Carruth) in conjunction with Pamela Marsh,
Karen Currier's attorney, have told me that I must see ███████ on
Thursdays, with Mr.Carruth.  I have told them that my job will not
permit me to take these days off and I have tried to re-schedule
these visits with Paul Carruth and Ms. Marsh, to no avail.

I would like to schedule a hearing to re-schedule these visits. I
have seen my son exactly once since last May, 1995 and I find it
appalling, that as a father, there is no flexibility afforded me.

Please reply to the following address:

P.O. Box 361
St. Albans, Vt.  05478

Please send any documents that I must sign to facilitate the hearing.

FEB

```
=================================================================================
Vermont Family Court    SCHEDULING/ENTRY ORDER - JUDGE        Addison County
=================================================================================
|  Docket 53-3-92 Andm  (div)         Currier vs. ███              |
|--------------------------------------------------------------------|
Case Track:    Not set                        Last judge: Matthew I. Katz
Hearing(s) set:Domestic Hearing, Thu, 01/11/96, 01:00 PM
---------------------------------------------------------------------------
p# 1  plf  ___  Currier, Karen M.        ___ Marsh, Pamela
p# 2  def  ___  ████████                 ___
p# 3  min  ___  ████████                 ___
p# 4  gp   ___  ████████                 ___ Shingler, Karen
p# 5  gal  ___  Bennett, Susan           ___
p# 6  gal  ___  Mansfield, Tom           ___
---------------------------------------------------------------------------
Motion/Petitions/Requests               Filed      ----- Current Status -----
                                                    Status  Jud/Mag Date
```

|    | Motion/Petitions/Requests | Filed | Status | Jud/Mag | Date |
|----|---------------------------|-------|--------|---------|------|
| 1  | R/to establish child support | 03/30/92 | order | MG-SJG | 03/25/93 |
| 2  | R/to establish parental rights & resp. | 03/30/92 | finord | MSK | 02/24/93 |
| 3  | R/to establish parent-child contact | 03/30/92 | finord | MSK | 02/24/93 |
| 4  | R/for Property Division | 03/30/92 | finord | MSK | 02/24/93 |
| 5  | M/for Temporary Relief | 03/30/92 | order | MSK | 01/26/93 |
| 6  | M/Grandparent's Visitation. | 06/18/92 | finord | MSK | 02/24/93 |
| 7  | M/Increased Grandparents Visit. | 10/21/92 | finord | MSK | 02/24/93 |
| 8  | M/to Continue | 11/23/92 | granted | MSK | 11/23/92 |
| 9  | P/to modify child support | 12/21/92 | order | MG-SJG | 03/25/93 |
| 10 | M/for Enforcement | 04/13/93 | granted | EJC | 04/30/93 |
| 11 | M/to Continue | 04/28/93 | denied | EJC | 04/29/93 |
| 12 | M/for Enforcement | 06/03/93 | granted | EJC | 07/13/93 |
| 13 | M/to Enforce Order for Parent-Child Co | 12/14/93 | order | STV | 03/25/94 |
| 14 | M/for Enforcement of Child Support Ord | 03/11/94 | order | MG-SJG | 06/08/94 |
| 15 | M/for Exparte Motion to Suspend P/C | 05/19/95 | order | MIK | 10/12/95 |
| 16 | M/for Leave to Withdraw | 07/28/95 | granted | MSK | 08/11/95 |
| 17 | M/to Set Aside Ex Parte Order.. | 07/14/95 | order | MIK | 10/12/95 |
| 18 | M/to Continue | 08/30/95 | granted | MSK | 08/31/95 |
| 19 | M/For Grandparent Vistation | 12/14/95 | isset | MIK | 12/26/95 |

```
=================================================================================

Scheduled for:                     Moving party: Commenced  Completed  Continued
MPR 19 M/For Grandparent Vistation     gp       _____  _____  _____
---------------------------------------------------------------------------
```

Judge's entries: Grandma to see Dr. Candido. Unless Candido says otherwise Grandma may start seeing boy at Discovery Zone, 2 hrs./ 1x mo. ) ( After 2 mos. review

_____ Date          _____ Judge

Off Record/Reporter _____    Asst. Judges ___ JL ___ WH

dflt.ws

Family Court of Vermont
Addison County
5 Court Street
Middlebury, Vermont 05753
(802) 388-4605

Court Case File

## N O T I C E   O F   H E A R I N G

December 26, 1995

Karen M. Currier

vs.

▮▮▮▮▮▮▮▮▮▮

Docket No. 53-3-92 Andm

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

Domestic Hearing

Motion For Grandparent Vistation

Thursday January 11, 1996 at 01:00 PM

Copies sent to:

Attorney Pamela Marsh for Plaintiff Karen ▮▮▮
Attorney Karen Shingler for Grandparent ▮▮▮▮▮▮
Defendant ▮▮▮▮▮▮▮▮▮
Court Case File

Persis H. Worrall, Case Manager

P 203 308 765

---

US Postal Service
**Receipt for Certified Mail**

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, and 4a & b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☒ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

▮▮▮▮▮▮▮▮▮▮

6 Rugg Street, Apt. #1

St. Albans, VT 05478

4a. Article Number
P 203 308 765

4b. Service Type
☐ Registered       ☐ Insured
☒ Certified        ☐ COD
☐ Express Mail     ☐ Return Receipt for Merchandise

7. Date of Delivery

5. Signature (Address) ▮▮▮▮▮▮▮▮▮▮

6. Signature (Agent)

8. Addressee's Address (Only if requested and fee is paid)

F 53-3-92 Andm

STATE OF VERMONT

ADDISON COUNTY, SS.

| | | |
|---|---|---|
| KAREN CURRIER | ) | ADDISON FAMILY COURT |
| | ) | |
| v. | ) | |
| | ) | |
| █████████████ | ) | DOCKET NO. F53-3-92 Andmd |

## MEMORANDUM IN OPPOSITION TO MOTION FOR GRANDPARENT'S VISITATION

NOW COMES Plaintiff, by and through her attorney, Pamela A. Marsh, Esq., of Marsh, Fraser & Grant, P.C., and submits this Memorandum in opposition to the Motion for Grandparent Visitation submitted by the paternal grandmother, ████████████

### A. Facts

1. The parties were divorced in 1993 following a very violent marriage, during which Defendant repeatedly abused Plaintiff both physically and emotionally, and often in front of the parties' minor child, ████████.

2. Defendant was convicted of simple assault on Plaintiff, and of felony unlawful trespass for entering Plaintiff's apartment after their separation. During his incarceration, his mother, ████████████, obtained court orders allowing her, in essence, to exercise Defendant's parent-child contact.

3. After Defendant was released from jail and after he completed a period of residence in Oxford House, parent-child contact was exercised at his mother's home in Barre.

4. Michael has told his mother that there is ongoing fighting and yelling during visits at his grandmother's house. Reportedly, Defendant and his mother argue, and

DEC 18 1995

FELL-00002878

she also argues incessantly with her husband. In addition, there have been questions of alcohol abuse in this home environment.

5. ▮▮▮▮ now in first grade, has been diagnosed as suffering from Post Traumatic Stress Disorder [hereinafter, PTSD], arising out of the abuse of his mother, the Plaintiff, by his father, the Defendant. He has been in therapy for nearly one year, making progress only after visits with his father were temporarily suspended.

6. A family forensic evaluation performed by Dr. Paul Candido and Dr. Patricia Whitman during the summer of 1995. During the evaluation, ▮▮▮▮ told the evaluators, "He [referring to ▮▮▮▮ husband] and dad's mother used to wash my privates." He would not elaborate, other than to say that he did not want to see his grandmother.

7. The evaluators recommended resumption of parent-child contact between ▮▮▮▮ and the Defendant in a manner that would allow ▮▮▮▮ to feel safe. Visits are to be supervised initially through the Counseling Service of Addison County, and then move gradually to unsupervised visits at Defendant's home. However, the evaluators specifically recommended that there be no contact with Ms. ▮▮▮▮ unless ▮▮▮▮ initiated it, and then, only after a formal evaluation of Ms. ▮▮▮▮ and her relationship with ▮▮▮▮

8. On October 12, 1995, the parties entered into a comprehensive Stipulation and Order of Modification, which provided, in Paragraph 7 [Paragraph 8 in the Stipulation], "▮▮▮▮ s paternal grandmother shall not have any contact with ▮▮▮▮ until and unless he requests it and she participates in an appropriate evaluation of herself and her relationship with ▮▮▮▮ and commits to following any recommendations made in the evaluation."

9. The parties are in the process of implementing the supervised parent-child contact between Defendant and ▮▮▮▮ Defendant has met twice with ▮▮▮▮ therapist, and it is anticipated that the actual supervised visits will begin early in the new year. It would be very premature to consider establishment of grandparent visitation at this time, given the likely stress that ▮▮▮▮ will have to deal with as contact with his father is resumed.

## B. Argument

The paternal grandmother seeks an order of grandparent's visitation pursuant to 15 V.S.A. §1011(a).  Under the statutory scheme, grandparent visitation may be only if the court finds that it is in the best interests of the child.  15 V.S.A. § 1011(a).  In making that finding, the court must consider the various factors set forth 15 V.S.A. § 1013.

Plaintiff believes that the provisions of Paragraph 7 of the Order of Modification governs any consideration of grandparent visitation.  Until and unless ███████ indicates that he desires such contact, and until and unless further psychological assessment of the grandmother and her relationship with ██████ has been completed (at her expense), no grandparent visitation should be ordered by the court.  Only after such assessment has taken place will the court be in a position to assess the best interests of the child in establishing such contact, including consideration of the factors enumerated un 15 V.S.A. § 1013.

DATED at Middlebury, Vermont this _15th_ day of December, 1995.

_Pamela A Marsh_

Pamela A. Marsh, Esq.
Marsh & Associates, P.C.
62 Court Street
Middlebury, VT  05753

FELL-00002880

STATE OF VERMONT
ADDISON COUNTY, SS.

KAREN CURRIER                         )        ADDISON FAMILY COURT
                                      )
        V.                            )
                                      )        DOCKET NO. F53-3-92AnDmd
        ██████████████               )

### MOTION FOR GRANDPARENT VISITATION

NOW COMES ██████████████, paternal grandmother of ██████ ████, who is the minor son of the parties to this action, and hereby moves the Honorable Court, pursuant to 15 V.S.A. section 1011(a), to order grandparent visitation on the grounds that the requested visitation is in the child's best interests. ████████████ therefore requests that the Court:

1) Order visitation between she and the child at Defendant's home with Defendant present for the purpose of celebrating the Christmas holiday;

2) Order a visitation schedule that permits regular and consistent contact with ████████████. The requested visitation can be supervised by the Defendant at the Defendant's home for a period of time so that the child and his grandmother can resume their relationship in a way so as not to traumatize the child or interfere with the child's contact with the Defendant.

In support hereof ████████████ attaches her Affidavit and hereby incorporates it by reference.

DATED at Burlington, Vermont this ____ day of December, 

DEC 14 1995

LAW OFFICE OF
KAREN R. SHINGLER
131 MAIN STREET
BURLINGTON. VT 05401

(802) 855-0654

1

ADDISON FAMILY COURT
CHIF EPPERSON, CLERK

FELL-00002881

1995.

                              JOYCE GAGNON

                         By: _____
                              Karen Shingler
                              Attorney at Law

cc: ████████████
    Pamela Marsh, Attorney for Karen Currier

LAW OFFICE OF
KAREN R. SHINGLER
131 MAIN STREET
BURLINGTON, VT 05401
———
(802) 865-0654

2

FELL-00002882

STATE OF VERMONT
ADDISON COUNTY, SS.

KAREN CURRIER                              )    ADDISON FAMILY COURT
                                           )
        V.                                 )
                                           )    DOCKET NO. F53-3-92Andmd
        ███████████                        )

AFFIDAVIT

NOW COMES ███████on and hereby states on her own personal knowledge, information and belief as follows:

1.    I am the paternal grandmother of the parties' minor child, ███████████, dob ███89.   The Defendant, ████████, is my son.

2.    Throughout my grandson's young life I have had regular and consistent visits with him. However I have not seen ██████ since May, 1995.

3.    Not only have I been a regular and consistent part of my grandson's life, but on two occasions in the past I have played a major role in ████████s life.  In 1986 for example, I anticipated received custody of my grandson due to serious problems both of the parties were having.  The parties reconciled however and I withdrew my efforts in Family Court in the hopes that reconciliation would solve the problems.

4.    Between October 1992 and May 1995 my son, the Defendant, was living in various facilities and institutions as a result of alcohol related issues and criminal

LAW OFFICE OF
KAREN R. SHINGLER
131 MAIN STREET
BURLINGTON, VT 05401

(802) 865-0654

1

FILED

DEC 14 1995

FELL-00002883

convictions.   Throughout that period my son resided at Maple Leaf Farm,  The Windsor, Woodstock, Rutland and Chittenden Correctional Centers and Dismas House in Burlington. Throughout that entire period I transported ███████ to see his father at his various locations regularly and faithfully each visitation period. As a result I transported ███████ every other weekend for nearly three years throughout the state following my son as he moved. During those weekends, I would not only facilitate the visitation between my son and my grandson but I spent the complete weekend with ███████ ███████ would spend each visitation at my home with me and my present husband. I essentially took over my son's visitation schedule while he was incarcerated.

5) Prior to October of 1992, the approximate date of my stay at Maple Leaf, I visited my grandson regularly which was typically every other weekend.

6) ███████ and I have a wonderful relationship. He appeared to thoroughly enjoy his time with me and often stated that he did not wish to leave me at the end of our visits. I enjoyed being ███████'s grandmother and ███████ appeared to enjoy having regular and consistent access with me.

7) My son and his former wife have been unable to get along despite the passage of time and the fact that the

LAW OFFICE OF
KAREN R. SHINGLER
131 MAIN STREET
BURLINGTON, VT 05401

(802) 865-0054

2

FELL-00002884

Plaintiff, Karen Currier has remarried. Karen has attempted to prevent my son from spending any time whatsoever with his son and she has offered to release my son from his child support obligation if he would simply "sign off on his rights". She did not help to facilitate the contact between ███████ and his father during my sons' incarceration and has thwarted all of my son's efforts to see ███████ beyond the court-ordered minimum.

8) As a result of litigation between the parties a family evaluation was performed during which certain representations were made about inappropriate activity when ███████ was at my house. I vehemently deny any allegation of inappropriate contact. Throughout ███████'s entire life I have been babysitting him at both of his parents request and have never been accused of any inappropriate behavior in the past. I firmly believe that any allegations made against me are the result of Plaintiff's efforts to alienate my son and me from ███████'s life. She has continually expressed a singular interest in removing me and my son from ███████' life.

Dated at Burlington, this 4th day of December, 1995.

LAW OFFICE OF
KAREN R. SHINGLER
131 MAIN STREET
BURLINGTON, VT 05401

(802) 865-0654

3

FELL-00002885

STATE OF VERMONT
COUNTY OF CHITTENDEN, SS.

Signed and sowrn to before me this 4th day of December, 1995.

Notary Public
Comm. exp 2/10/99

4

FELL-00002886

STATE OF VERMONT
ADDISON COUNTY, SS.

KAREN CURRIER ) ADDISON FAMILY COURT
)
V. )
) DOCKET NO. F53-3-92AnDmd
█████████████ )

### CERTIFICATE OF SERVICE

I, Karen Shingler, do hereby certify that I have served a copy of the foregoing Motion for Grandparent Visitation and Affidavit on █████████ and Attorney Pamela Marsh for Karen Currier by mailing copies hereof to 6 Rugg Street, Apt. 1, St. Albans, VT 05478 and 62 Court Street, Middlebury, VT 05753, this 12th day of December, 1995.

Karen Shingler
Attorney for Joyce Gagnon

FILED

DEC 14 1995

ADDISON FAMILY COURT
CHIP EMERSON, CLERK

LAW OFFICE OF
KAREN R. SHINGLER
131 MAIN STREET
BURLINGTON, VT 05401

(802) 865-0054

FELL-00002887

Form No. 29

STATE OF VERMONT

_Addison_ COUNTY, SS.

Karen Currier

_Addison_ FAMILY SUPERIOR COURT

DOCKET NO. _F53-3-92_

VERSUS

ACCEPTANCE OF SERVICE

I, _____ , hereby Accept

Service of the _Order for Modification_ , filed _10/10/95_

in the above-entitled cause and waive all other form of service

Dated: _10/11/95_

Initial 2M 5/83 VT I.I.

FELL-00002888

Form No. 29

STATE OF VERMONT

_____*Addison*_____ COUNTY, SS.

*Karen Curier*

VERSUS



_____*Addison*_____ ~~SUPERIOR~~ *FAMILY* COURT

DOCKET NO. _____*FS3-3-92*_____

## ACCEPTANCE OF SERVICE

I, _____*Karen Curier*_____ , hereby Accept

Service of the _____*Order of Modification*_____ , filed _____*10/12/95*_____

in the above-entitled cause and waive all other form of service.

Dated: _____*Oct 12, 1995*_____    *Karen F. Currie*

Initial 2M 5/83 VT I.I.

FELL-00002889

STATE OF VERMONT

ADDISON COUNTY, SS.



| | | |
|---|---|---|
| KAREN CURRIER | ) | ADDISON FAMILY COURT |
| | ) | |
| v. | ) | |
| | ) | |
| ███████████ | ) | DOCKET NO. F53-3-92 Andmd |

## STIPULATION

NOW COME the undersigned parties and agree and stipulate that parent-child contact between the minor child of the parties, ███████, and the father, ███████████ shall be guided by the recommendations in the Psychological Evaluation completed by Paul Candido, Ph.D. and Patricia Whitman, Ph.D., and shall occur as follows:

1. ███████ was diagnosed with Post Traumatic Stress Disorder in the spring of 1995, after exhibiting severe behavior problems at school. He has shown an increase in problem behaviors after contact with his father, ███████████. Nevertheless, the parties agree that it is in ███████'s best interests to have an ongoing relationship with his father. To that end, the parties have agreed to the gradual resumption of parent-child contact as is described below.

2. There shall be a period of supervised parent-child contact with the goal of eventually re-establishing the court ordered schedule of unsupervised visits every other weekend, and weekly telephone contact.

3. Initially, supervision shall be provided by an individual with psychological training. Prior to the first visit, Mr. ███████ should meet with ███████'s therapist, Frank Carruth, for one session to learn more about ███████'s needs.

4. The supervisor shall meet with ███████ and consult with the child's therapist before the first visit with Mr. ███████ The supervisor should be able to recognize any stress during the visits, and to facilitate a healthy interaction for ███████ The

OCT 1 2 ███

FELL-00002890



supervisor shall have the authority to terminate a visit if ▮▮▮ appears to be under stress, or if s/he feels that Mr. ▮▮'s behavior may be harmful to Michael.

5. The supervisor shall provide feedback to the child's therapist after each visit regarding ▮▮'s adjustment to his relationship with Mr. ▮▮. The supervised visits should be followed as closely as possible with a counseling session between ▮▮ and his therapist. so that ▮▮ can have time to process the visit and address the feelings and memories that such contact may stimulate.

6. With the agreement of ▮▮s therapist that he is ready to move on, visits shall progress to supervised visits at Mr. ▮▮s home. If those are successful, the visits shall progress to unsupervised community visits on days proximate to ▮▮ therapy appointment, and eventually to unsupervised visits at Mr. ▮▮s home. The pace of moving toward increasingly less supervised visits should be dependent upon ▮▮'s response to renewed contact with Mr. ▮▮, as determined by his therapist after consultation with the visit supervisor.

7. Unsupervised contact shall not occur until and unless that Mr. ▮▮ is able to demonstrate a reasonable period of sobriety, as determined by Jean Reinsbouro or another competent authority in the area of alcohol abuse. Mr. ▮▮ shall only be permitted to visit with ▮▮ if he is sober and does not smell of alcohol from prior drinking.

8. Visits shall include only ▮▮ and his father, Mr. ▮▮. ▮▮s paternal grandmother shall not have any contact with ▮▮ until and unless he requests it and she participates in an appropriate evaluation of herself and her relationship with ▮▮, and commits to following any recommendations made in the evaluation.

9. Ms. Currier shall have ▮▮ evaluated for fetal alcohol syndrome or fetal alcohol effects by Dr. Guttmacher in Burlington as soon as reasonably possible.

10. ▮▮ shall be referred for a comprehensive evaluation at his school to determine eligibility for special education services as an emotionally or behaviorally disordered student.

11. Supervised visits shall be started as soon as reasonably possible once a qualified supervisor is located and has the opportunity to meet with the parties.

FELL-00002891

12. Mr. ███ shall pay for any costs of supervision that are not covered by ███ s Medicaid.

13. This Stipulation shall be incorporated into an Order for Modification that will supersede all prior orders entered with regard to parent-child contact in this matter, including the Final Order entered March 24, 1993, the Order entered March 30, 1994, and the *ex parte* Order entered May 19, 1995.

DATED at Middlebury, Vermont this _11_ day of October, 1995.

Karen N. Currier
Karen Currier, Plaintiff

Defendant

APPROVED AS TO FORM:

Pamela A. Marsh
Pamela A. Marsh, Esq.
Attorney for Karen Currier

**CHAMPLAIN VALLEY PSYCHIATRY SERVICES**
**35 TIMBER LANE**
**SOUTH BURLINGTON, VT. 05403**

**(802)  658-0886**

**PSYCHOLOGICAL  EVALUATION**

**Name:** ██████████ /Karen Currier

**Dates of Evaluation:** 8/95 - 9/95

**Referral Information:**

██████████ and Karen Currier are the divorced parents of ██████████ . ██████████ is in Ms. Currier's custody, and has been observed in the past year by her and his therapist to exhibit increased behavioral problems following unsupervised visits with his father.  As a result, Ms. Currier, with the support of ██████ 's therapist, suspended visitation pending a family evaluation to determine what schedule and type of visitation with Mr. ██████ is in ██████ s best interest.

**Assessment  Procedures:**

██████████ /Karen Currier:
- Minnesota Multiphasic Personality Inventory-2
- Adult Adolescent Parenting Inventory
- Joint Interview
- Clinical Interviews
- Parent-Child Observations
- Review of previous records

██████████ :
- Children's Sentence Completion Blank
- Family Figure Drawing
- Achenbach Child Behavior Checklist-Parent Form
- Achenbach Child Behavior Checklist-Teacher Form
- Clinical Interviews

Additional Interviews:
- Frank Caruth
- Dee Hodges
- Irene Norian
- Jean Reinsbouro
- Kim Parsons
- Thomas Mansfield

MARSH, FRASER & GRANT
RECEIVED

SEP 27 1995

**Background  and  History:**

Mr. ██████ was born on ██████████ in South Ambroy, New Jersey.  His father died when he was three months old and he and his mother moved to Vermont.  He states that "relatives stole stuff from her" after his father's death , and the strain resulted in a nervous breakdown and hospitalization at the vermont State Hospital.  Mr. ██████ was placed in foster care for the next four

FELL-00002893

██████Currier Evaluation                                    2
September, 1995

years. He recalls little of this period, with the exception of some traumatic abusive incidents, such as being tied up by other boys in the home. He later lived with his Aunt Peggy for another year and a half before his mother was released from the hospital and they were reunited.

Mr. ████ reports that while she was hospitalized his mother began a lesbian relationship with a nurse there, and this woman left her husband to live with them. He describes her as abusive, and states that she "beat the shit out of (him)" on a regular basis. He recalls incidents in which she "dragged (him) downstairs by the hair" and "put (him) outside with nothing on but underwear in the winter." He was so intimidated by this woman that he recalls admitting to shooting bbs through a window even though he had not. He states that his mother did not believe him when she told him of these incidents, even though she was also apparently physically abused by this woman. He states that she would beat her up, that they "pulled knives on each other," and recalls an incident in which "a gun was involved." He states that his mother was also drinking heavily at the time. In addition to the family turmoil, he also was picked on by children in school because of his mother's lesbian relationship.

When he was sixteen Mr. ████ had a physical altercation with his mother's lover. He states that he "punched her in the face," and moved out of the house. He went to live with friends, and continued in school until part of his senior year at which time he quit school because he needed PE credits and the class interfered with his job. At the age of 18 he was living in his own apartment in Montpelier, and received 26,000.00 from a trust fund left from his father's death. He states that he "blew it in one summer" on drugs, using "just about everything except heroin and crack." He continued in his job as a meat cutter, and states that his drug usage did not affect his work performance.

Mr. ████ states that after his money was gone he "didn't have many friends left," but did meet a woman who was pregnant from his best friend's brother. He lived with her for the next five years, and considered himself a surrogate father to her child, April. He broke off this arrangement when he was transferred to Middlebury because he "wanted (his) own family," but has continued to keep in touch with them. It was while working there that he met Ms. Currier, who was working in the store bakery.

Ms. Currier was born on ██████████████ in Middlebury, Vermont, the last of five children. Her father was a carpenter, who also rented a farm, and her mother worked on the farm, and later worked outside of the home. Her parents divorced when she was thirteen years old, and she states that her childhood was "good" up until that point. However, she states that she later learned that her father had suffered from depression, and that he at one point "hit on one of (her) girlfriends," and had sexually molested her older sister. She describes her father as "a con," and states that she "could never get him to love (her)." She states that after the divorce she went to live with her sister because "the court found both of (her) parents unstable." She lived with her sister for a short period, then moved in with her brother and wife. She later lived briefly with her father, and then at the age of fifteen lived with her mother who had remarried by that time. She reports that she "got along great" with her step-father, and afterwards "didn't see (her) father very much." In recounting these years in her life Ms. Currier gives the clear impression of minimizing what must have been a much more emotionally turbulent childhood.

Ms. Currier quit high school before graduation in order to work. She later obtained her GED. She began work at Middlebury College doing secretarial work, and later worked for the state fish hatchery. She left to attend the O'Brien School of Cosmetology, but left before completing the

FELL-00002894

███ Currier Evaluation                              3
September, 1995

course. She went to work at the bakery at A and P, where she met Mr. ███

Ms. Currier states that when she met Mr. ███ she had just gotten out of another relationship and was just wanting to date. She had a girlfriend who was living with her in her parent's home at the time, and states that Mr. ███ "pretended" to go out with the girlfriend one night so that the three of them could be together. She states that she "got really trashed" and her girlfriend "passed out." At that point Mr. ███ suggested that they have breakfast together, and they rented a hotel room. He made her "rum and cokes," and later had sexual intercourse, although she states she does not remember it due to the amount that she drank. This description of their first encounter is inconsistent with a statement she made earlier in the interview that she did not start drinking heavily until after her marriage to Mr. ███. After this evening, she went to New York to visit her step-sister, with the idea that she might move there, but left after the weekend because "there was too much drinking and drugs." She and Mr. ███ continued to date, and soon afterwards moved in together in an apartment in Middlebury.

Ms. Currier states that the relationship was "a mistake from the beginning," and recalls prior to the marriage coming home and finding Mr. ███ "doing cocaine with (her) girlfriend." he does admit to a cocaine addiction at this time, but also states that their relationship was "based on drinking," and that Ms. Currier and he "went out to bars a lot together." After three months of living together she became pregnant with their son ███ She initially stated that she did not drink throughout the pregnancy, but later stated that he did not want the baby and continued drinking for the first three months of the pregnancy under the assumption that she was going to have an abortion. Mr. ███ contends that she drank throughout the pregnancy. The relationship deteriorated during this period, and Ms. Currier was planning to return home. She states that he spent much of their money on drugs, and as a result his checks for the rent bounced. They both moved in with her parents, and it was at this time that she decided to not terminate the pregnancy.

Ms. Currier and Mr. ███ married when ███ was "three or four months old." She states that the day before the wedding she told her mother that she did not want to marry him, but was convinced by her mother's response that "people change." A month after the marriage they moved to Bristol. She states that he did not want her working outside of the home, and as a result she started a daycare in her home. She states that she was sober while working but would drink heavily after the children left. She describes a "lot of physical abuse" towards her during this period. Mr. ███ states that he "had a bad anger problem," and "would take it out on her," but denies that he was physically abusive during this period. He states that he "didn't beat her up," but would "throw things," and "once might have grabbed her by the hair."

Mr. ███ states that the physical violence began when they moved to Ripton. She also states that "things got worse" after this move. He was placed on the night shift and she began working thirty to fifty hours per week at Grand Union while ███ was with her mother during the day. She states that "he beat (her) up so many times," and that she left him on numerous occasions. In 1992 following a beating "outside of a Vergennes bar" in which she states he broke his hand beating her and also "smashed a kitten's head" she left him with the intention of divorce. Soon after the separation he states that he "beat her up really bad," and "pushed her face into the pavement" when he saw her "with some guy (he) had never seen before." They were in a car with ███, and Mr. ███ states that "they were both drunk." She states that she was returning from taking ███ to The Great Escape, and that Mr. ███ was staying at her apartment "as a resting place after partying." After the altercation he took ███, who was three years old at the time. He was arrested for simple assault and trespassing. According to Ms. Currier, when the police arrested him they found ███ "running around," and Mr. ███ and some friends "passed out and

FELL-00002895

███ Currier Evaluation                    4
September, 1995

drunk."

Mr. ███ was incarcerated for seven months, during which time he saw ███ in prison "a few times." The divorce was finalized in May, 1993, and Ms. Currier married her current husband, Marshall Currier, one month later. Mr. ███ was released to Dismas House in June, 1993, where he lived until November, 1994. During that time he states that he saw Michael only sporadically, and that Ms. Currier would often suspend visitation in a capricious manner. Kim Parsons, the director at Dismas House corroborates this perception. Mr. ███ initiated legal action which resulted in a court order in March, 1994 which stipulated that he would have visitation with ███ every other weekend and weekly telephone contact, as well as access to medical and school records. Mr. ███ moved to St. Albans in November, 1994. He states that since that time he has had visitation with ███ on only three occasions. Ms. Currier states that she suspended visitation at the recommendation of ███'s counselor, Frank Caruth, because of his behavioral problems and anxiety following visits with his father.

███████████

## Parent Interview

Mr. ███n was interviewed after his visit with ███ He was tearful as he said he had not seen him since May, and only saw him three times from December to May. He felt that the visit in the examiner's office was positive, and that ███l behaved as he usually does when with him. ███ tends to want to change rules, and can get upset if he is not winning. Mr ███ works hard to keep his attention focused and to give him choices. He has seen Michael "snap." At those times, he will not listen.

Being a parent has been "an experience" for Mr. ███n. His own father died when he was an infant, and he was raised by two women. Being a father was new to him. He has done a lot of reading about parenting (explaining, for example, the difference between punishment and discipline), and learns a lot as he spends time with ███ Now that he is older, parenting "seems to come more naturally."

Mr. ███ was asked to explain how the current situation evolved. From his perspective, Ms. Currier mentioned that ███ was having problems in school and was seeing a counselor. Ms. Currier told him that after visits, ███l did not mind as well. She said that the best way to solve these problems was for ███ to stop seeing his father.

In Mr. ███s view, he has been battling to see his son from the beginning. He had to file three orders to enforce visitation. The court knew that he physically abused Ms. Currier, but they ordered visitation. Ms. Currier asked Mr. ███ to relinquish his parental rights so that Mr. Currier could adopt ███. She told him that he would not have to play child support if this happened. Mr. ███ will "never ever relinquish" his parental rights of ███l. He did say that if it were in ███ best interests that he stop seeing his father, then, Mr. ███ would stop seeing him. His said that his only concern is ███

Mr. ███ would like to sit down with Mr. and Ms. Currier, and ███s counselor, and work together for ███'s sake. He is willing to take responsibility for his past mistakes, and said, "but, I'm not responsible for every problem ███e has." He said that ███ did not directly witness much of the abuse in the marriage, citing the incident in the car as being the only time that

██ n Currier Evaluation                                    5
September, 1995

was present.

Mr. ████ knows that ████████ is "an angry little boy", but does not know whether, in fact, he has Post Traumatic Stress Disorder. Mr ████ feels there are other disruptions in ████████ 's life which might be having an impact on his adjustment. Since the divorce, ████████ has moved six times. He has a new step-father, and a new sister. He also started school. Mr. ████ believes that Ms. Currier takes good care of ████████ l, and that he is happy in his home. However, he also feels that she has a drinking problem. He said that she drank everyday when she was pregnant with ████████ and that she has seemed drunk when he has talked to her on the phone. Mr. ██ n wonders whether ████████ experiencing any fetal alcohol effects, citing his hand gestures, toe walking, and key "dingling" as possible signs of such difficulties.

Mr. ██ n said that he does not know how to help ████████ l. He has talked to him about what happened in the home. He explained to ████████ that it is not right to hit, and that he made mistakes. When M████ asks him questions, he does not know what to say. Mr. ██ n believes that ████████ needs to see his father. He would be willing to work with a counselor to make visits go well for ████████ He feels uncomfortable with the idea of supervised visits, as he knows he would never hurt ████████ l, but would do agree to this, if it meant he could see his son.

When ████████ was visiting with his father, Mr. ████████ that the visits went well. Mr. ████ said he did not put Ms. Currier down in front of ████████ , and tried to communicate politely with her. He recently moved into his own apartment in St. Albans. He would like to visit with ████████ l there. He has some toys for ████████ including a bicycle, and has a bed set up for him. Mr. ████ knows that his mother has had a negative impact on ████████ . She is "high strung and loud," but she loves her grandson. ████████ would not have to see her, as Mr. ████████ now living on his own.

When Mr. ████ arrived for his session with ████████ and the examiner, the examiner noted that he smelled of alcohol. He did not appear intoxicated. Mr. ████ was asked about his substance use. He acknowledged that he has a drinking problem. He continues to go out on weekends, and this is when he will drink. He had gone out the night before this interview, and drank quite a bit. He said that he realizes he probably should not have done this. He stressed that if he were caring for ████████ , he would not drink while he was with him.

Parent-Child Observation

Before the visit began, ████████ said he was excited to see his father. When Mr. ████ arrived, ████████ l ran to him, hugged him, and held tightly onto his leg. He became tearful, and through quivering lips said, "I wish I could see you at your house." He then began to cry. Mr. ██ n said that perhaps some day ████████ could come to his house. ████████ asked, "But when?" Mr. ████ seemed uncomfortable with the question. He tried to explain the situation to ████████ He said that people had told him that ████████ was having trouble in school, and that there were "just a couple other things" that needed to be resolved before visits could occur. Mr. ████ then changed the subject. ████████ sat in his father's lap while Mr. ████ looked at ████████ 's lost tooth. He was affectionate with ████████ and told him that he missed him. He gave ████████ l a "fanny pack" that he had bought for him. ████████ happily took it and thanked his father. Inside were some keys that ████████ had lost. ████████ held them in front of his face, and Mr. ████ said, "I didn't know if I should bring them or not."

█ Currier Evaluation
September, 1995

6

Mr. █ asked █ about the Curriers, and school. He talked about █ relatives. █ seemed uninterested in these topics, and asked to play. They went to the toy closet and returned with a game. Mr. █ read the directions. █ said that he knew how to play; but he seemed to be making up rules. Mr. █ provided a structure for the game. █ pushed the limits, and Mr. █ responded appropriately by clarifying the rules for him. He was enthusiastic with █ and praised him frequently. █ was attentive to, as well as relaxed and comfortable with his father. He teased Mr. █ in a competitive way.

Mr. █ took out a book, Charlotte's Web. It was apparent that he and █ been reading the book together when █ visited with his father. █ told Mr. █ that he had that book at home. Mr █ looked disappointed, but then talked about the book with █ █ went over and hugged his father. He jumped up so that his father would hold him.

Mr. █ n noticed that █ was bored with the game they were playing, and helped him choose another. █ tried to explain the game to his father, but was unclear in his instructions. Mr. █ checked the rules, to be sure that █ was correct. █ seemed frustrated with this. Mr. █ n noticed his frustration, and clarified the rules by asking █ l questions. █ tried to roll the dice for his father, but Mr. █ asked to go for himself. He nicely explained to █ why he wanted to do this. At several points, █ tried to inappropriately control the game. Mr. █ redirected him by asking questions. When █ became rough, Mr █ set appropriate limits.

█ asked his father to go outside. Mr. █ empathized with █ but told him they had to stay inside to play. M █ asked, "But when dad? When are we going to see each other? I really want to see you, Dad." Mr. █ tried to explain saying, "Some people have different problems. We have to come here and these people can see how we get along." He then changed the subject, and █ asked to play a different game. As they were cleaning up the marbles, █ say, "Boy, I'll miss you dad." Mr. █ replied, "We'll get this all straightened out pretty soon." █ asked his father for a lifesaver, and then another. Mr. █ gave him one.

They played another game together. █ had trouble putting the toy together, and Mr. █ helped him. He showed flexibility in allowing █ some freedom to structure the task. The examiner told them it was time to end the visit. █ went to his father and hugged him tightly. He began to cry. He told his father that he loved him. It was clear that █ did not want to leave the office. Mr. █ remained calm, and asked █ to help him pick up the toys. The visit ended quietly.

The visit between █ and his father was a very positive one. █ seemed relaxed and comfortable with his father, and mutual affection was shown between th █ Mr. █ was very responsive to █ needs. He spoke and played with him at his level, and noticed when █ was frustrated or agitated. He set appropriate limits when necessary, and naturally praised and encouraged █ . Mr. █ seemed unsure of how to respond to █ s questions about their relationship. He tried to explain things in vague terms. He remained positive and hopeful with █ and expressed compassion for █ 's feelings. He also tried to shield █ from his own distress about the situation, and did not cry until after █ had left.

Several days after the visit, Mr. and Ms. Currier called to express concern about something that happened during the visit. After leaving the examiner's office, █ cried for a long time. The Curriers knew he was sad because he misses his father. However, █ also said that his father had told him that the reason █ could not see him was because he had thrown a chair in

FELL-00002898

███ Currier Evaluation                    7
September, 1995

school. Mr. Currier was very upset with this, and feels that because of Mr. ███ 's statement, ███ left the visit blaming himself for the separation between himself and his father.

## Test Results

On the Minnesota Multiphasic Personality Inventory-2 Mr. ███ appeared to respond in a somewhat defensive manner, and his profile is indicative of an attempt to minimize personal problems and present himself in an unrealistically favorable light. Given this response set, it is all the more significant that his profile is indicative of psychopathology. Individuals with similar profiles are characterized as immature, narcissistic, and self-indulgent. They are passive-dependent individuals who make excessive demands on others for attention and sympathy, but they are resentful of even the most mild demands made on them by others. They do not get along well with others in social situations. They are suspicious of the motivations of others and avoid deep emotional involvement. They generally have poor work histories, and marital problems are common. Repressed hostility and anger are characteristic of such individuals. They appear to be irritable, sullen, argumentive, and obnoxious, They seem to be especially resentful of authority and may derogate authority figures.

Individuals with this type of profile tend to deny serious psychological problems. They rationalize and transfer blame to others, and they accept little or no responsibility for their own behavior. They sometimes report feeling nervous and depressed, and they are typically indecisive and insecure.

There were no indications of a current mood/affect or thought disorder.

On the Adult-Adolescent Parenting Inventory Mr. ███ indicated that he may hold somewhat inappropriate expectations regarding a child's ability to act independently, especially in regard to self-care skills, and may have a below average understanding of normal childhood growth and development. He does not espouse the use of corporal punishment techniques; and expressed a very good understanding of appropriate social and family role between children and parents, and an adequate degree of emotional empathy and nurturance.

## Ms. Currier:

### Parent Interview

Ms. Currier, with the assistance of ███ counselor, asked for the current evaluation to find out whether contact between ███ and his father should occur. Ms. Currier feels that Mr. ███ "plays a lot of mind games with ███" After visits with his father, ███ was often angry and anxious. He would have trouble in school. Ms. Currier kept ███ from seeing his father, and is now in trouble because of this. She explained that if this were "a normal situation," she would want ███ "to have all the contact in the world" with Mr. ███ She believes such contact is harmful to him, and if she had her way, she "wouldn't have him any where around" her son. She feels that when ███ does not see Mr. ███, he is much calmer. She also is afraid that Mr. ███ might "take off" with ███

███ witnessed a lot of violence in the home when his parents were together. Mr. ███ beat Ms. Currier frequently, once while ███ watched from the back seat of a car. The police were

FELL-00002899

███ Currier Evaluation                     8
September, 1995

often at the house, and ███ had to accompany his mother to the police station after a particularly brutal beating. Ms. Currier was "covered with blood" and ███ was afraid that she was dead. ███ also witnessed his father breaking into the home at least three times.

To her knowledge, Mr. Currier was not physically abusive to ███ However, one time, ███ got a concussion when he "fell down the stairs" while in his father's care. On another occasion, Mr. ███ put ███ "up against the wall" for playing with a light switch. ███ was two at the time.

After the ███ separated, ███ was to see his father every other weekend. Mr. ███ often was out drinking, and did not see his son. Ms. Currier stated that it was only when Mr. ███ went to jail that he wanted his visits with ███ ███ s guardian at the time recommended that he see his father in jail.

Ms. Currier feels that ███ l is still "coming to grips" with all of these issues. He talks about his memories of the abuse. He says that he knows what is father did was not right, and that he is glad that Mr. Currier is not like that. He loves his father, and has a hard time integrating the "bad image" he has of Mr. ███ into the image of the man he loves. She feels he has to make his own judgments.

Last year in school, ███ had a hard time. He was easily frustrated and angry. He talked back to his teacher, and threatened to send his father to school, saying, "I'm going to get my daddy, and he'll beat you up and kill you." He had to leave the room on many occasions. Toward the end of the year, he did better. He started seeing Mr. Caruth, to help him deal with these issues.

███ does not often talk about his father. He has said that he misses Mr. ███ and will sometimes mention things that he and his father did together. At times, he has said that he wants to live with his father. He also has said that he would like Mr. Currier to adopt him, whether he sees his father or not.

Ms. Currier expressed concerns about ███ grandmother. She described this woman as someone who would often scream, yell, and start fights. Ms. Currier believes that Mr. ███ s difficulties stem from his mother's violence. ███ has said that he does not want to be with his grandmother, because she and her husband fight around him.

Mr. Currier feels that he and ███ get along well. ███ refers to him as "Marshall." Last year, ███ had a lot of trouble at home and in school. He was extremely aggressive toward Ms. Currier, especially after visits. It seemed that he was "re-enacting violence." He also was "blowing up" at school and getting angry over minor things, and did not know how to handle himself. He is doing better now, and is often able to stop before he acts.

███ does not often talk about Mr. ███, but will mention him if Mr. Currier and ███ are doing something together which reminds him of his father (e.g., when doing something with bicycles). Mr. Currier knows that ███ is tired of dealing with the legal issues. He will not say what he wants. Mr. Currier knows that ███ wants to see his father, but he is concerned about ███ safety when he is with Mr. ███. He does not believe that Mr. ███ would do anything intentionally harmful to ███, but does not believe he would supervise him enough.

FELL-00002900

███ Currier Evaluation                                    9
September, 1995

Parent-Child Interaction

███ was observed while playing with his mother, step-father and half-sister. At the start of the session, ███ went excitedly to Mr. Currier and told him about the toys in the office. The family decided to play Jenga. Mr. Currier helped ███ set up the blocks, while Ms. Currier watched. ███ smiled and said he was good at this game. He wanted to take a piece off of the bottom. Mr. and Ms. Currier commented that the game was likely to topple. They let him discover this for himself, and were reassuring of him when he became frustrated. At one point, Ms. Currier suggested that Mr. Currier help ███ by saying, "We'll let Dad take it off. He's good at this." ███ did not refer to Mr. Currier as "Dad," but called him Marshall throughout the visit.

███ was overly excited during the early part of the visit. Mr. and Ms. Currier set limits on the behavior. They reminded him of the structure of the game, and encouraged him to stay calm in order to get better results. They both helped him when he had difficulty with the game, and praised his efforts and accomplishments. ███ responded well to their limits and feedback. The three obviously enjoyed playing the game together. They smiled at and laughed with one another and seemed very relaxed. Ms. Currier naturally called ███ "Honey" several times, and mutual affection was shown between them.

As time went on, ███ became more agitated and silly. He laughed, repeated statements, jumped on Mr. Currier, and asked his mother if he could do anything he wanted. The Curriers responded appropriately to this behavior. They ignored his attention seeking behavior and tried to redirect him to the game. As he became more excited, he stared at his hands, made odd hand gestures, and "dingled" his fingers. Toward the end, he became rough with his mother. Ms. Currier raised her voice and said, "Hey, don't be rough with me. You know better than that." ███ was heard to say to himself, "Bad, bad, bad." He then asked to play the game again. He was told he could play if he could calm himself.

Test Results

On the Minnesota Multiphasic Personality Inventory-2 Ms. Currier responded in an apparently open and honest Manner. There were no indications of significant emotional distress or psychopathology. Individuals with similar profiles are characterized as generally outgoing and free of any disabling symptomatology. They are effective in carrying out their daily duties and behave in a socially responsible manner. There were no indications of a mood/affect or thought disorder.

On the Adult-Adolescent Parenting Inventory Ms. Currier indicated that she may hold somewhat inappropriate expectations regarding a child's ability to act independently, especially in regard to self-care skills, and may have a below average understanding of normal childhood growth and development. She may resort to using some corporal punishment techniques, but expressed an adequate understanding of appropriate social and family role between children and parents, and a high degree of emotional empathy and nurturance.

███████

Individual Interview

███ was interviewed on three occasions. The purpose of the evaluation was explained to him

FELL-00002901

██ Currier Evaluation                                10
September, 1995

at the beginning of the first interview. In response, he sighed and said, "Not again." He was very restless during this interview. He moved all over the room. He explored many objects present there, and asked the examiner about them. He had difficulty focusing, and seemed agitated and uncomfortable. He frequently clicked his fingers in front of his face. These hand gestures seemed to serve a self-stimulatory and soothing function.

██ was asked where he lives. He gave his address, and then went into detail about how to get to his house. He said that he lives with "Mom and Marshall and Ashley." Mr. Currier is his step-father. ██ added, "And, I got [sic] my real dad. I can't see him." When asked to explain this, he became exasperated and said, "Don't you know about it?" He did not want to talk about it. ██ said that he misses his father and does not feel good about what happened with his dad. He agreed that he has had a hard time and told the examiner it was hard to talk about these issues. As he said this, he became more restless. He rubbed his hands together, and moved, almost frantically, around the room. He asked to go to the bathroom.

When he returned, he acted silly. He said that he never saw his father, and denied that his father ever got mad. He then told the examiner that he saw his father hurt his mother, but said he was "not telling." He later said that his father "broke out a window" in one of their apartments because he wanted to see ██ He then said, "Guess what, Mom had to go to the doctors, because she was all bloody. I don't know if he used weapons or not."

██ told the examiner that he was afraid to talk about this, because his mother would get angry. He then described a time when he, Mr. ██ and Mr. Currier were chasing his mother. ██ and Mr. Currier were "trying to save her," because his father "wanted to get her." He changed his story saying, "Well, I wasn't trying to save her, I just thought it was a game." ██ was asked to name some good things about his father, and said, "There was one bad thing. I asked if he would ever be mean to mom or kill her. He said no. He lied, because he was."

The second interview took place more than two weeks later. ██ was much calmer during this session. He did not move about the room as restlessly, and his hand gestures were rare. He came in and told the examiner that he really wanted to see his father. He said that he feels safe with Mr. ██ and described his father as "big and strong." He acknowledged that he saw a lot of violence in his home, and that his father was mean to his mother. He stressed that he still loves his father.

The examiner told ██ that his father would be coming to visit with him in the office. ██ excitedly asked, "My real dad?" He smiled and asked, "I'm really going to see my dad?" He said he would like that "even if just for one minute." ██ reiterated that he misses his father, "a lot." When asked how much, he added, "The whole space of the whole world."

██ was asked what he likes to do with his father. He likes to ride bicycles, watch T.V., and play on the playground. He added, "Me and my dad can do more than me and my step-dad because he has more time." ██ liked spending the night at his father's house. He talked about one time when he was able to spend "more nights than one." This was fun. He would like to spend many nights at his father's house.

The examiner asked Michael about his grandmother. He described her as funny. When asked to talked about her husband, ██ said he is nice. He then said, "He and dad's mother used to wash my privates." He would not talk about this further, saying only that it happened a long time ago. He later said that if he were to stay with his father, he would not want his grandmother to be there.

FELL-00002902