█████ Currier Evaluation                           11
September, 1995

During the third interview, which took place just prior to ████████ s visit with his father, ████████ was calm. He said he was excited to see his father, and was not nervous. He had a hard time talking about his family situation that day. He agreed that he thinks about the bad things that happened in his family "a teeny weeny bit." He told the examiner that he does not like to talk about it, and does not want to see Mr. Caruth anymore. He implied that Mr. Caruth is responsible for separating him from his father. ████████ dded, "I just want to see my dad." He mentioned several times that his father had been in jail, and moved frequently. He also knows that his father does not have a license. He remained unemotional as he talked about this.

Test Results

Children's Sentence Completion Blank:

████████ was unable to complete this form independently, so the examiner read the sentence stems to him, and he gave his responses aloud. During this task, ████████ was extremely restless. He could not sit in a chair, and walked around the room or turned in a chair as he gave his responses. At times he sucked his thumb. On some items, after he gave his response, ████████ continued talking about the theme of the sentence. At times, he seemed to be perseverating on his responses, while at other times he seemed preoccupied with and troubled by the issues raised in his statements. Toward the end of the task, he said his mother did not want him telling anyone what happened in his family. He knows that his father went to jail for hurting his mother, but he does not understand why his father was so aggressive. He stressed that he still loves his father.

████████ reiterated his love for his father in some of his sentences (e.g., My father..."is the best father in the world."), and his discomfort in not being able to see him (e.g., I am ashamed..." of [sic]that I can't see my father."). He expressed similarly positive feelings about his mother (e.g., My mother..." is the most nice mother in the whole world."). He added that she cooks well, as does Mr. Currier. He then talked about a lot of fun things he does with Mr.Currier. He would like Mr. Currier to teach him to drive a dump truck. He would like his father to learn "how to build stuff and fix stuff."

In some of ████████ sentences, a desire to escape from his current situation, into a fantasy-like life, was evident (e.g., I would like to..."have a castle, and I would like my own world." and I secretly..." want to have my very own tree house, up in a tree, without a ladder, with sticks on a tree, and a hide out."). ████████ was preoccupied with bullies and aggressive themes, and expressed a desire to save others in trouble, especially females. He explained that it was not nice to hit anyone, but said that if bullies tried to kill his girlfriends, he would have to hit them. To the phrase In school I..., ████████ responded, "save girls." When asked to explain this, he said he saved them from bullies. As he talked about this, he said that he wished he was bigger when his father was "being mean" to his mother. He would have tried to help her.

████████ acknowledged that he has trouble with his behavior, and gets frustrated at times. He would like to learn how to tell people when he is angry. He expressed some inconsistency in his conduct, and in his perception of himself (e.g., People think that I..."am kind of good, kind of bad, kind of silly, kind of sad, kind of miserable, kind of angry, kind of special." He would like to be "the specialist [sic]man and boy in the world." He also expressed some interest in sexual themes (e.g., Girls..."nothing, I'm kidding, are sexy."

Family Figure Drawing:

███ Currier Evaluation                    12
September, 1995

███ was very resistant to this task. He was asked several times to start and finish the drawing. He "made a deal," by saying that he would make the drawing if he could use glitter on it. He took out a piece of red paper and started drawing himself on a pogo stick. He intentionally threw a small amount of glitter on the floor, as if challenging the examiner. He responded well when limits were clearly set with him. ███ asked the examiner to draw a picture, and started to argue with her. He asked who was in her family, and then said, "You don't have nothing except your very own father." He became more oppositional and annoyed. He said the examiner was a spy, and chanted, "Eye lens, eye lens, look at the eye lens." He insisted that the examiner wore glasses, even though she did not.

███ began his picture. He drew himself first, but became frustrated when he did not draw a baseball cap on his head correctly. He said, "I don't look very nice. I don't like myself that way." He broke a crayon. The examiner tried to help him figure out what was bothering him. He became increasingly oppositional and defiant. The examiner helped him find a way to solve the problem, by drawing and cutting out the hat, and gluing it to his picture. He liked this idea, but then grabbed crayons, and threatened to cut the examiner's hair with the scissors. When limits were again set, he was able to refocus his attention on the task. He continued to challenge the examiner, and seemed to be looking for attention, power and control. When this behavior was ignored, and limits were reinforced, Michael completed the task.

He drew himself, with his mother next to him. Next to her, he drew "My Ashley" and then "My Marshall." The figures were drawn proportionally, and they were all smiling. When asked what they were doing, he said, "holding hands of course." He did not include his father in the drawing.

Child Behavior Checklist (CBCL):

Ms. Currier and Mr. ███ completed the CBCL, in order to help assess their perceptions of ███ overall behavioral adjustment. Both parents described ███ as showing average participation and skill in sporting and non-sporting activities (e.g., hobbies, chores). Ms. Currier reported that his social contacts, and behavior with others is well below average, as compared to other boys his age, and described his school competence as average. Mr. ███ did not answer enough items to score these scales.

On the problem scales, Ms. Currier reported borderline elevated levels of anxious/depressed behavior. She described ███ as self-conscious, lonely, nervous, fearful, and sad. He sometimes cries, feels unloved, and worries. She also reported borderline elevated levels of aggressive behavior. ███ often argues, demands attention, and destroys his own belongings. He is moody, has a bad temper, and can be stubborn and mean. He sometimes shows off, talks too much, and threatens others. Ms. Currier reported that ███ is free of any serious withdrawn or delinquent behavior. He does not exhibit significant social, thought or attention problems at home, and has few somatic complaints. Mr. Ryan reported that ███ is free of any significant behavior problems.

Teacher Report Form (TRF):

Cathy Sontum, ███'s current teacher, completed the TRF, in order to assess his behavioral adjustment in school. She expressed concern that ███ has difficulty telling the truth or acknowledging his own "wrong-doing." She sees him as easily "set off." When he is having trouble, he is "difficult, even impossible, to reason with." He can be loud and defiant. Ms.

FELL-00002904

█████ Currier Evaluation                           13
September, 1995

Sontum sees █████ as a bright boy, but feels that if his current behavior patterns continue, he will have a hard time learning in school.

In the areas of adaptive functioning, Ms. Sontum reported that █████ is working as hard, and learning about as well as his peers. He appears much less happy, and is behaving much less appropriately than his age mates. On the problem scales, Ms. Sontum noted difficulties in several areas. She described █████ as showing extreme levels of aggressive behavior in the classroom. He often argues, is defiant and mean, disturbs others, fights, disrupts the class, and can be very loud and demanding. He threatens and teases others, is moody, has a bad temper, and can be explosive. He is often stubborn, talks too much, and can be destructive. █████ also shows clinically elevated levels of social and thought problems. He acts young for his age, does not get along with his peers, feels others are out to get him, and seems lonely. He cannot get his mind off of certain things (e.g., fairness), repeats acts (e.g., odd hand gestures), has strange ideas, and exhibits strange behavior.

Ms. Sontum reported that █████ shows borderline elevated levels of anxious/depressed behavior. He seems nervous and suspicious, is sad and lonely, and feels unloved. He is somewhat self-conscious and fearful and is easily hurt by criticism. █████ also shows borderline levels of delinquent-like behavior. He does not appear to feel guilt for his misbehavior, lies and cheats, and spends time with bad companions. █████ does not exhibit significant withdrawal or attention problems in the classroom, and does not report many somatic complaints.


**Additional Interviews:**

Frank Caruth:

Mr. Caruth has been working with █████ since February of 1995. Ms. Currier was encouraged to bring █████ in for treatment by his guidance counselor. He had been in therapy previously, in 1992, for an adjustment reaction with disturbance of behavior. At that time, his temper had escalated, and he was confused about his parents' separation.

An intake assessment was completed by Mr. Caruth on 2/16/95, before he began treatment with █████. In this report, Mr. Caruth states that Mr. and Ms. Currier expressed concerns about █████s anger, aggression toward Ms. Currier, and adjustment to school. They described the violence in the Ryan family, and its possible impact on █████ They discussed █████s habit of "dangling" keys in front of his eyes as he talks to himself or others about difficult topics. They reported that he gets angry and upset if he hears others arguing and said that he has hit himself and banged his head. He used to have nightmares and was continuing to wet the bed.

Mr. Caruth's initial assessment of █████ states that he seemed very bright, verbal and alert, "if not hypervigilant." He seemed concerned about the location of his mother and step-father during the intake session. He walked on his toes a number of times. Mr. Caruth noted that █████ was a child who had been exposed to violence, and who was negatively affected by his father's substance abuse. He wrote, "Some imposition of structure and curtailing of contact with his father as long as his father continues to abuse substances is likely going to be a significant consideration for treatment. He was diagnosed with Post Traumatic Stress Disorder.

During a telephone interview, Mr. Caruth reported that he has had to provide an unusual amount of structure during therapy sessions with █████ █████ has been showing much impulsiveness,

FELL-00002905

███Currier Evaluation                                    14
September, 1995

anxiety and anger. A clear pattern emerged during treatment. Following visits with Mr. ███ ,
███████ became more aggressive and "out of control." He also showed increased signs of anxiety
before visits.

Mr. Caruth was concerned about ███████ s safety when he went to visit his father. He is aware
that Mr. ███ has a history of not following through on treatment for his alcoholism and violent
behavior, and has been observed by Ms. Currier to be impaired in ███████ s presence. ███████
also was cared for by his grandmother and her partner when he went to see his father. ███████ has
made some statements suggestive of inappropriate sexual touching by these individuals while they
bathed him. He has shown sexually reactive behavior with his peers, and a behavior program was
needed to decrease this behavior. ███████ described in treatment the difficulties he has controlling
these impulses.

When ███████ is more agitated, he will dangle keys in front of his face. He seems to use this as a
self-soothing strategy. He has described being a witness to "an extraordinary amount of violence."
Mr. Caruth does not know how much violence he has experienced himself. In a recent session,
███████ made reference to falling down some stairs because his father was not careful. ███████
wants to see his father. He believes that Mr. Caruth is keeping him from visiting Mr. ███ .
Mr. Caruth would like to find a safe way for ███████ to see his father.

Dee Hodges:

Ms. Hodges is the guidance counselor in ███████ school. Last year, ███████ showed outbursts
of aggression, which were usually triggered by his contact with other students. During these
episodes, he would "lose control." This year, he is able to control himself much more than he
could last year. He has been willing to let his teacher help him think of alternative ways to handle
his problems. He has had two aggressive incidents in school this year. One occurred in Ms.
Hodges's office, when she asked ███████ to help her come up with a visual cue to remind him to
get himself under control. When people are firm with ███████ and very clear about limits, he does
better. ███████ seems to have a good relationship with his mother and step-father, who are very
involved with his school program. Ms. Hodges has not had contact with Mr. ███ .

Irene Norian:

Ms. Norian was ███████ s kindergarten teacher last year. She described him as a very bright and
observant boy, who loves to learn. He especially likes music. It seemed to calm him when he was
upset. ███████ did okay in school until after Thanksgiving, when he often became very angry
without provocation. He would "fly into a rage with any little thing." He was highly volatile and
threatening to his peers, and to Ms. Norian, and it was difficult to bring him back into control. At
times, he thought that people were out to get him, and saw himself as victimized. He engaged in
some bizarre behavior, which he referred to as "dingling." While doing this, he seemed to go into a
self-induced trance. ███████ did not talk about things that were troubling him, and was unable to
say why he was angry or frightened. He had some good days, where he could reflect on things,
and try to resolve his problems.

Kim Parsons:

Ms. Parsons is the director of Dismas House where Mr. ███ lived following his incarceration.
She states that she had several opportunities to directly observe Mr. ███ and ███████ together
during weekend visitations. She states that Mr. ███ was always very focused on the visits and

FELL-00002906

██████ Currier Evaluation          15
September, 1995

planned ahead for them so that they would have activities to do. She reports that he was able to set consistent and appropriate limits at times when ██████ exhibited behavioral problems, and that Mr. █████ was never abusive in his tone or physically inappropriate. She observed that he read numerous books on parenting and made an effort to apply these principles in his interactions with Michael.

She also reports that Ms. Currier would often not be consistent in bringing ██████ for scheduled visits, and at one point suspended privileges so that Mr. ████ had to return to court to re-instate visits. She found Mr. █████ to be a generally responsible individual to the point where he was made the night manager there and performed well in this position.

Thomas Mansfield:

Mr. Mansfield was ████████ guardian ad litem, and made two observations at the Dismas House of █████ and Mr. ████ during a visit. He states that he felt that "everything was appropriate," and that Mr. █████ concerns were always in ██████ best interest. He saw no reason why visits between ██████ and his father should be curtailed, and recommended unsupervised visitation at that time.

Jean Reinsbouro:

Ms. Reinsbouro was Mr. █████ therapist at Champlain Drug and Alcohol Services. She saw him for approximately twenty sessions, and states that he was focused on substance abuse issues, recovery, and living a sober life style. He often brought up issues regarding his son, and this relationship was clearly important to him. He also worked hard on controlling his explosive impulses, and was able to verbalize alternative strategies for dealing with anger.

The examiner related to Ms. Reinsbouro that Mr. █████ was not maintaining complete sobriety, and had been drinking heavily on the night prior to his observation with Michael. She stated that he is not a good candidate for controlled drinking, given his history, and that she would expect him to have on time-limited success with his approach before entering into a downward spiral into his previous dependency. She called his behavior as described "a big red flag," and stated that in her opinion it is necessary for him to maintain complete sobriety.

**Formulation and Recommendations:**

Mr. █████ and Ms. Currier were evaluated on the following criteria:

1. The relationship of the children with each parent, and the ability and disposition of each parent to provide the children with love, affection, and guidance.

Both parents demonstrate a strong emotional attachment to ██████ and relate to him with obvious affection. In structured observations they were both able to set appropriate limits and to interact with him on an age-appropriate manner. In the current evaluation ██████ has also demonstrated a strong bond with both his mother and father as indicated by both his verbal statement and his behavior during the observations. There have been no indications that either parent has abused him in any manner, although Ms. Currier questions whether ██████ was harmed while in his father's

FELL-00002907

███ Currier Evaluation
September, 1995                                          16

care. ███████ s with visiting with his father appears primarily related to his memories of past incidents of violence towards Ms. Currier which he has observed, and possible anxiety that his father might engage in similar behavior in the future. ████████ misses his father and very much wants to visit with him, but has also shown behavioral signs of stress when having such contact. Mr. ████ acknowledges his past violent temperament, and his current psychological testing is consistent with an individual who could act-out in an impulsive and possibly anti-social manner. However, he appears to be honestly confronting these issues in counseling, and has not demonstrated such behavior in the past year.

2. The ability and disposition of each parent to assure that the children receive adequate food, clothing, medical care, other material needs, and a safe environment.

Although a formal homestudy was not performed, neither parent alleges that the other is in any way neglectful of ███████ s physical needs.

3. The ability and disposition of each parent to meet the children's present and future developmental needs.

In formal testing both parents indicated a tendency towards somewhat inappropriate expectations towards children in assuming that they may be more developmentally competent in self-care skills when compared to normal childhood development; and Ms. Currier indicated a greater reliance on the use of corporal punishment in behavioral management. However, neither parent appears to interact with ███████ n a significantly inappropriate manner in relation to his age and development.

4. The quality of the children's adjustment to the children's present housing, school, and community, and the potential effect of any change.

████████ is clearly adjusted to his current placement with his mother, and considers this environment his home. He has voiced concerns regarding visits with his father at his grandmother's home for reasons which are unclear at this time.

5. The ability and disposition of each parent to foster a positive relationship and frequent and continuing contact with the other parent, including physical contact, except where the contact will result in harm to the children or to the parents.

At present both parents demonstrate a high degree of animosity towards one another. In the joint interview they were unable to sustain a conversation of their past relationship or the current situation without an animated argument. Ms. Currier expresses the desire not to restrict contact between Mr. ████ and ███████. She states that she is concerned by ███████ 's behavior and it is only at his therapist's request that she has suspended visitation. However, she appears to have unilaterally restricted visitation in the past when it was not supported by an independent opinion, and told one evaluator that if it were up to her she would not want Mr. ████ anywhere around ████████. While there is nothing to indicate that either parent is deliberately attempting to influence ████████ to hold a negative opinion of the other, there are indications that Ms. Currier would like ████████ to see Mr. Currier as his father. For example, when talking about Mr. Currier to ████████ during the observation she referred to him as "dad" even though ████████ calls him "Marshall." They need to be careful not to focus on ████████ s relationship with Mr. Currier as a father to the exclusion of Mr. ████.

FELL-00002908

█████Currier Evaluation                    17
September, 1995

6.   The quality of the children's relationship with the primary care provider, if appropriate given the children's age and development.

Ms. Currier was █████████s primary care provider, and continues to function adequately in providing for his needs.

7.   The relationship with the children with any other person who may significantly affect the children.

████████appears to have formed a positive relationship with his step-father, Marshall Currier, and is emotionally attached to his half-sibling from this marriage.  He has expressed a strong desire to not have contact with his paternal grandmother, and there are some indications that inappropriate sexual touching may have occurred with her and her husband.

8.   The ability and disposition of the parents to communicate and cooperate with each other and make decisions concerning the children where parental rights and responsibilities are to be shared or divided.

The present level of animosity and distrust between Ms. Currier and Mr. ██████precludes any shared parental rights and responsibilities regarding ████████.

Given the above profile, the following is recommended:

████████ is clearly integrated into his mother's home and community.  She has been his primary care provider, and continues to provide a safe and nurturing family environment.  There are no compelling reasons to alter physical and legal custody, which should remain with Ms. Currier.

In regard to visitation with his father, it is recommended that█████████and Mr. ██████begin a period of supervised visitation with the goal of eventually re-establishing the court ordered schedule of unsupervised visits every other weekend, and weekly telephone contact.  Supervised visits should initially occur within the context of █████████s counseling sessions in order to provide an environment in which █████████feels safe and protected.  ████████presents as an emotionally fragile child who is suffering from symptoms of Post Traumatic Stress Disorder related to incidents involving family violence by his father.  He is also clearly upset by the loss of contact with Mr. ██████, and it would be in his best interest to establish a positive, albeit limited, relationship with him.  This conflict can best be resolved in a therapeutic environment with his current therapist.  Mr. ██████ presents a history and current profile of significant emotional problems, but appears to be genuinely attempting to resolve them.  Although clearly emotionally attached to ████████he has not always acted in his best interest (such as engaging in substance abuse and violence in his presence), and is not always clear on the most appropriate ways of communicating and explaining the current situation to him.  He denies that ████████ has serious behavioral and emotional problems, and, as such, is likely unaware of his psychological needs at this time.  By meeting with █████████in the context of his therapy session with Frank Caruth, Mr. █████can also get corrective feedback on his own behavior in relating to ████████ as well as a better understanding of ████████s emotional problems and needs.  Additionally, meetings in this context also provide an immediate opportunity for████████to process feelings about his father with his therapist afterwards.

These visits should gradually evolve into supervised day visits at Mr. ██████'s home, unsupervised day visits on days proximate to ████████'s therapy appointment, and eventual unsupervised

FELL-00002909

█ Currier Evaluation                              18
September, 1995

weekend visits. Although there needs to be some flexibility regarding the pace of such a procedure, the current examiners envision an approximate four month period until normal visitation can be established. The pace should be dependent upon █████ s response to renewed contact with his father, as determined in consultation with his therapist. However, it should be anticipated that such a change is likely to elicit strong emotions, including some anxiety, from █████ and such demonstrations should not, in and of themselves, be sufficient to terminate visits. Rather, they should be interpreted as issues to be further resolved in therapy, which could also include session with Mr. █████ f deemed appropriate.

The examiners have significant concerns regarding Mr. █████ s continued use of alcohol. His former therapist, Jean Reinsbouro, does not believe that he is a suitable candidate for controlled drinking, and that he is very likely to have only a time-limited success in this mode before entering a downward spiral to his previous level of dependence. Continued alcohol use also places him at higher risk to act out in an aggressive manner. It is recommended that he resume therapy for drug and alcohol abuse, and that as a condition for resuming unsupervised visits he is able to demonstrate a reasonable period of sobriety as determined by Ms. Reinsbouro or another competent authority in this area. Similarly, it is imperative that Mr. █████ does not arrive at supervised visits either intoxicated or smelling of alcohol from previous drinking. Such a state should be considered sufficient reason to terminate the visit, since it could create anxiety in █████ from associations to previous times when he was drinking and behaved aggressively.

It should be strongly emphasized that visitation as discussed above involves only █████ and his father. █████ has expressed a clear desire to not have contact with his grandmother, and she should not be included in visits until he verbalizes an interest to his therapist or other third party. At that point a similar procedure of gradual contact might be initiated after a formal evaluation of her and her relationship with █████. Mr. █████ s report of his mother is that she is a woman with a history of extreme emotional problems, and her potential influence on █████ is, at present, unknown.

Mr. █████ has expressed concern that █████ may be suffering from Fetal Alcohol Syndrome or Fetal Alcohol Effects due to the fact that Ms. Currier was drinking heavily throughout the pregnancy. Although she denies this specific allegation, she does admit to drinking during the first trimester, and this appears a plausible hypothesis for further evaluation. A referral to Dr. Alan Guttmacher in Burlington is recommended. Dr. Guttmacher is an expert in this area, and would be able to assess whether fetal alcohol issues play a role in █████ 's difficulties. If, in fact, some of his symptoms are related to this disorder, rather than entirely to the stress of his parent's volatile marriage and divorce, medical intervention or other strategies may also help to relieve some of his emotional and social problems.

It is also recommended that █████ be referred for a comprehensive school psychological evaluation to assess whether he is eligible for special educational services as an emotionally/behaviorally disordered student.


Paul Candido, Ph.D.
Licensed Clinical Psychologist

Patricia B. Whitman, Ph.D.
License Clinical Psychologist

10/11/1995    07:28    8028603613    CHAMP VALLEY PSYCH    PAGE 02

**CHAMPLAIN VALLEY PSYCHIATRY SERVICES**
35 TIMBER LANE
SOUTH BURLINGTON, VT 05403

658-0686

October 10, 1995

To:    Pam Marsh, Attorney
From: Patricia B. Whitman, Ph. D.
Re:    ▮▮▮▮▮▮

As per our phone conversation, I am writing a brief addendum to the psychological evaluation of ▮▮▮▮▮ and his family completed by myself and Paul Candido, Ph. D. After talking with Frank Carruth, ▮▮▮▮ s therapist, and Dr. Candido, I would like to qualify our recommendation about supervised visits between ▮▮▮▮ and his father. I do believe that Mr. ▮▮▮ should meet with Mr. Carruth individually on one occasion to learn more about ▮▮▮▮▮ needs. Mr. Carruth is in a unique position to be able to provide this information to Mr. ▮▮▮. However, with respect to the visits between ▮▮▮▮ and his father, I feel that Mr. Carruth should not be the one to supervise these sessions. Putting Mr. Carruth in such a role may only serve to undermine his relationship with ▮▮▮▮, a relationship that he will need as he resumes a relationship with his father. Instead, Dr. Candido and I recommend that visits between ▮▮▮▮ and his father be supervised by an individual with psychological training. This person should be able to recognize any stress during the visits, and facilitate a healthy interaction for ▮▮▮▮ This person also should have significant contact with Mr. Carruth to learn more about ▮▮▮▮ needs, as well as to provide, and be given, ongoing feedback about ▮▮▮▮ adjustment to his relationship with Mr. ▮▮▮ The supervised visits should be followed by a counseling session with Mr. Carruth, so that ▮▮▮▮ can have time to process the visit, and address the feelings and memories such contact may stimulate.

I hope that this information clarifies the nature of ▮▮▮▮ visits with his father, and facilitates your ability to begin such contact after your court hearing on Thursday. Please let me, or Dr. Candido know if you need any additional information.

Sincerely,

Patricia B. Whitman, Ph. D. /
Licensed Clinical Psychologist

FELL-00002911

Family Court of Vermont
Addison County
5 Court Street
Middlebury, Vermont 05753
(802) 388-4605

Court Case File

```
┌─────────────────────────────────────────────────────────────────┐
│              N O T I C E   O F   H E A R I N G                     │
└─────────────────────────────────────────────────────────────────┘
```

September 28, 1995

Karen M. Currier
             vs.                        Docket No. 53-3-92 Andm

███████████████

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

           Status Conference
                     Motion for Exparte Motion to Suspend P/C
                     Motion to Set Aside Ex Parte Order..

           Thursday October 12, 1995 at 08:30 AM

                                    Chip Epperson, Family Court Manager
Copies sent to:
     Attorney Pamela Marsh for Plaintiff Karen M. Currier
     Grandparent ███████████████
     Defendant ███████████████
     Court Case File

FELL-00002912

```
=================================================================================
Vermont Family Court    SCHEDULING/ENTRY ORDER - JUDGE      Addison County
=================================================================================
|  Docket 53-3-92 Andm  (div)        Currier vs. █████
|-------------------------------------------------------------------------------
Case Track:    Not set                    Last judge: Matthew I. Katz
Hearing(s) set:Status Conference, Thu, 09/28/95, 09:00 AM
-------------------------------------------------------------------------------
p# 1   plf  ___  Currier, Karen M.    ___  Marsh, Pamela
p# 2   def  ___  ████████████████     ___
p# 3   min  ___  ████████████████     ___
p# 4   gp   ___  ████████████████     ___
p# 5   gal  ___  Bennett, Susan       ___
p# 6   gal  ___  Mansfield, Tom       ___
-------------------------------------------------------------------------------
Motion/Petitions/Requests              Filed       ----- Current Status -----
                                                   Status  Jud/Mag Date
 1  R/to establish child support       03/30/92    order   MG-SJG  03/25/93
 2  R/to establish parental rights & resp.03/30/92 finord  MSK     02/24/93
 3  R/to establish parent-child contact 03/30/92   finord  MSK     02/24/93
 4  R/for Property Division            03/30/92    finord  MSK     02/24/93
 5  M/for Temporary Relief             03/30/92    order   MSK     01/26/93
 6  M/Grandparent's Visitation.        06/18/92    finord  MSK     02/24/93
 7  M/Increased Grandparents Visit.    10/21/92    finord  MSK     02/24/93
 8  M/to Continue                      11/23/92    granted MSK     11/23/92
 9  P/to modify child support          12/21/92    order   MG-SJG  03/25/93
10  M/for Enforcement                  04/13/93    granted EJC     04/30/93
11  M/to Continue                      04/28/93    denied  EJC     04/29/93
12  M/for Enforcement                  06/03/93    granted EJC     07/13/93
13  M/to Enforce Order for Parent-Child Co12/14/93 order   STV     03/25/94
14  M/for Enforcement of Child Support Ord03/11/94 order   MG-SJG  06/08/94
15  M/for Exparte Motion to Suspend P/C 05/19/95   isset   MIK     08/31/95
16  M/for Leave to Withdraw            07/28/95    granted MSK     08/11/95
17  M/to Set Aside Ex Parte Order..    07/14/95    isset   MIK     08/31/95
18  M/to Continue                      08/30/95    granted MSK     08/31/95
=================================================================================

Scheduled for:                   Moving party:  Commenced  Completed  Continued
MPR 15 M/for Exparte Motion to Suspend plf
MPR 17 M/to Set Aside Ex Parte Order.. def          ___        ___       ___
                                                    ___        ___       ___
-------------------------------------------------------------------------------
```

Judge's entries: Visitation. 6 yr old. Champ Valley Psych Services. Therapist Carruth. Husband to speak w/ Carruth & Marsh. Oct 12 8:30

_____          _____
          Date                            Judge

Off Record/Reporter _____    Asst. Judges _____
dflt.ws

FELL-00002913

Family Court of Vermont
Addison County
5 Court Street
Middlebury, Vermont 05753
(802) 388-4605

Court Case File

| N O T I C E   O F   H E A R I N G |
|---|

September 1, 1995

Karen M. Currier
            vs.                                    Docket No. 53-3-92 Andm
████████████

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

        Status Conference
                Motion for Exparte Motion to Suspend P/C
                Motion to Set Aside Ex Parte Order..

        Thursday September 28, 1995 at 09:00 AM

Chip Epperson, Family Court Manager

Copies sent to:
   ✓Attorney Pamela Marsh for Plaintiff Karen M. Currier
   ✓Grandparent █████████████
   ✓Defendant ████████████████
    Court Case File

FELL-00002914

==================================================================================

## E N T R Y   R E G A R D I N G   M O T I O N

==================================================================================

Docket No: 53-3-92 Andm      Currier vs. ████      [Marsh/Appel]

Title of Motion:          Motion to Continue, No. 18

Date Motion Filed:        August 30, 1995

Motion Filed By:          Marsh, Pamela, Attorney for:
                              Plaintiff Karen M. Currier

MPR Response:             NONE

_✗_ Granted      Compliance by_____

___ Denied

___ Scheduled for hearing on: _____ at _____; Time Allotted _____

___ Other

_____          _____
         Judge / Magistrate                              Date  8/3(/5√

==================================================================================

Date copies sent to: ___9/1/95___                    Clerk's Initials CLE
Copies sent to:
        ✓Attorney Pamela Marsh for Plaintiff Karen M. Currier
        ✓Grandparent ███████████
        ✓Attorney Kenneth Mark Appel for Defendant ████████████████
         Court Case File

Family Court of Vermont
Addison County
5 Court Street
Middlebury, Vermont 05753
(802) 388-4605


Court Case File


```
| N O T I C E   O F   H E A R I N G |
```

July 23, 1995

Karen M. Currier
    vs.           Docket No. 53-3-92 Andm
█████████████


This is to notify you to appear at the Court named above in connection
with the above named case for the following:

    Motion Hearing
       Motion for Exparte Motion to Suspend P/C


    Thursday September 7, 1995 at 10:00 AM


            Chip Epperson, Family Court Manager

Copies sent to:
  ✓Attorney Pamela Marsh for Plaintiff Karen M. Currier
  ✓Grandparent █████████
  ✓Attorney Kenneth Mark Appel for Defendant ███████████
  Court Case File

FELL-00002916

Family Court of Vermont
Addison County
5 Court Street
Middlebury, Vermont 05753
(802) 388-4605


Court Case File


| N O T I C E   O F   H E A R I N G |
| --- |

July 23, 1995

Karen M. Currier
            vs.                                    Docket No. 53-3-92 Andm
▮▮▮▮▮▮▮▮▮▮▮▮


This is to notify you to appear at the Court named above in connection
with the above named case for the following:

        Motion Hearing
                Motion for Exparte Motion to Suspend P/C


        Friday September 8, 1995 at 10:00 AM


                                    Chip Epperson, Family Court Manager

Copies sent to:
    ✓Attorney Pamela Marsh for Plaintiff Karen M. Currier
    ✓Grandparent ▮▮▮▮▮▮▮▮▮
    ✓Attorney Kenneth Mark Appel for Defendant ▮▮▮▮▮▮▮▮
     Court Case File

STATE OF VERMONT

ADDISON COUNTY, SS.

KAREN CURRIER                              )        ADDISON FAMILY COURT
                                           )
        v.                                 )
                                           )
███████████████████                        )        DOCKET NO.  f53-3-92 Andmd

## MOTION TO CONTINUE

NOW COMES Plaintiff, Karen Currier, by and through her attorney, Pamela A. Marsh, Esq. of Marsh, Fraser & Grant, P.C., and moves to continue the hearing presently scheduled for September 7 and 8, 1995. The reason this continuance is requested is that there is family evaluation being completed by Champlain Valley Psychiatry, which will not be completed in time for a hearing on September 7 or 8. Said evaluation is essential to possible settlement of this matter, and to a hearing on the motions, should one be necessary. The Defendant agrees with this request. The parties suggest that this matter be set for a status conference in late September, to see whether this matter needs hearing time, or can be resolved without hearing.

DATED at Middlebury, Vermont this 29th day of August, 1995.

_Pamela A. Marsh_

Pamela A. Marsh, Esq.
Marsh, Fraser & Grant, P.C.
62 Court Street
Middlebury, VT  05753

FELL-00002918

STATE OF VERMONT                          ADDISON FAMILY COURT
ADDISON COUNTY, SS.                       DOCKET    NO.    F53-3-
92Andm


KAREN CURRIER                    )
                                 )
        VS                       )
                                 )
███████████████████             )


## MOTION FOR LEAVE TO WITHDRAW

Kenneth Appel, Esquire, counsel for defendant, moves for leave to withdraw as defendant's attorney. As grounds therefor it is stated that defendant has stated to counsel that he has written to the Court indicating that he no longer desires to contest this matter and therefore that he no longer wants to have or to pay counsel to represent him. Defendant has further indicated that he wishes to go back to representing himself in this matter. (See attached July 25, 1995 letter)

WHEREFORE, counsel requests leave to withdraw as attorney for defendant as per his specific request.

Dated at St. Albans, Vermont, this 27th day of July, 1995.

                                        _____
                                        Kenneth Appel, Esq.


## ORDER

Based upon the foregoing Motion, Kenneth Appel, Esq. is granted leave to withdraw as counsel for defendant. The clerk shall note the pro se appearance of the defendant in this matter.

Dated at Middlebury, VT this __11__ day of _____Aug_____, 1995.

                                        _____
                                        Family Court Judge

FELL-00002919

Karen Currier                                    July 25, 1995

███████████████

                                        Addison Family Court
                                        Docket # F53-3-92 Andmd

Defendant, ████████████ no longer wishes

to contest this matter. Therfore I no longer

wish to be represented by attorney

Kenneth Appel and request that he be

taken off this case ~~matter~~.

If any other matters arise in connection

with this case it is my intention to

represent myself.

I hope to co-operate with plantiff and

do what-ever is necessary in the best

interest our

~~Reguards~~ of ~~my~~ Son ████████ in the future

████████████

ADDISON FAMILY COURT
CHIP EPPERSON, CLERK
FILED
JUL 8 1995

FELL-00002920

Karen Currier                              July 25, 199:

vo

███████████████████        Addison Family Court
                           Docket # F5 3- 3 -92 And mo

    Defendant, ██████████████ no longer wishes

to contest this matter. Therefore I no longer

wish to be represented by attorney

Kenneth Appel and request that he be

taken off this case.

If any other matters arise in connection

with this case it is my intention to

represent myself.

I hope to co-operate with plantiff

and do whatever is necessary in the best

interest of our ███████████████ in the future

                              Sincerley,

FELL-00002921

STATE OF VERMONT                          ADDISON FAMILY COURT
ADDISON COUNTY, SS.                       DOCKET NO. F53-3-92Andmd


KAREN CURRIER          )
                       )
      VS               )
                       )
███████████████        )


## VERIFIED MOTION TO SET ASIDE EX PARTE ORDER SUSPENDING PARENT/CHILD CONTACT


Defendant, ███████████████, by and through counsel, moves that the Court strike the existing ex parte Order suspending visitation and allow defendant to resume the regular parent/child contact awarded to him after the contested proceedings held in March of 1994.  As grounds therefore, it is stated as follows:

1.  In the past defendant has had to file Court enforcement proceedings to attempt to get plaintiff to adhere to his existing parent/child contact rights which have continually been frustrated by plaintiff.

2. Notwithstanding the fact that the March 30, 1994 Order of the Family Court awarded defendant contact, inter alia, every other weekend, plaintiff and her present husband have only allowed defendant to have contact with his son three times since December of 1994.

3.  In the spring of this year defendant again threatened to file an  action to enforce his parent/child contact and, on information belief, this was the reason that plaintiff initiated the current proceedings and applied for an ex parte Order suspending visitation.

4.  No changed circumstances have occurred in either parties', nor the child's, circumstances sufficient to justify

FILED

JUL 1 4 1995

ADDISON FAMILY COURT
CHIP EPPERSON, CLERK

FELL-00002922

modification of the last fully litigated Order of parent/child contact and involvement.

5. Numerous individuals including the guardian ad litem involved in the prior court proceedings have had occasion to observe defendant with his son and have described the relationship as positive, nurturing, loving, consistent and thoughtful.

6. While defendant has absolutely no objection to a psychological evaluation of the child and the parties and is willing to cooperate therein, there is no evidence that he places the child at any risk supporting his total termination of contact. Rather, given the relationship he has with his son, the unilateral termination of such relationship, in fact, has a negative effect on the child.

7. Numerous dynamics in the circumstances of the parties as well as in plaintiff and her now husband's existing circumstances have played a role in creating or fostering the child's recognized behavioral problems. Defendant alone is neither responsible for this nor does terminating his relationship with his child address it.

WHEREFORE, defendant respectfully requests that: A. That the court afford him a hearing at the very earliest convenience on this Motion. B. He be restored to his existing visitation rights unilaterally suspended by the ex parte Order. C. That the Court award all further relief to plaintiff as is appropriate under the evidence.

Dated at St. Albans, Vermont, this 12th day of July, 1995.

Kenneth Appel, Esquire
Attorney for Defendant

FELL-00002923

STATE OF VERMONT
FRANKLIN COUNTY, S.S.

At St. Albans, Vermont, this 13 day of July, 1995

personally appeared [redacted] and gave oath to the truth of

the foregoing.

Before me

Notary Public

FELL-00002924

Family Court of Vermont
Addison County
5 Court Street
Middlebury, Vermont 05753
(802) 388-4605

Court Case File

| N O T I C E   O F   H E A R I N G |
| --- |

July 7, 1995

Karen M. Currier
        vs.                         Docket No. 53-3-92 Andm

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

        Motion Hearing


        Thursday July 20, 1995 at 01:00 PM

This will be on the Plf's Motion to Suspend Parent-child Contact. If the
evaluation is not completed by then the Judge will decide if the contested
hearing will go forward or if it will be used as a status conference.

                             Debbie Bashaw, Assistant Court Clerk

Copies sent to:
    Grandparent
    Guardian ad litem Tom Mansfield
    Attorney Pamela Marsh for Plaintiff Karen M. Currier
    Attorney Kenneth Mark Appel for Defendant
    Court Case File

FELL-00002925

Family Court of Vermont
Addison County
5 Court Street
Middlebury, Vermont 05753
(802) 388-4605

Court Case File

---
N O T I C E   O F   H E A R I N G
---

June 13, 1995

Karen M. Currier
vs.
                                        Docket No. 53-3-92 Andm

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

Motion Hearing

Monday July 10, 1995 at 03:00 PM

Please disregard the Notice of Hearing for July 3, 1995. This is not a Family
Court Day. I mistakenly thought it was.

                                Debbie Bashaw, Assistant Court Clerk

Z 217 167 719

**Receipt for Certified Mail**
No Insurance Coverage Provided

Tom Mansfield
arah for Plaintiff Karen M. Currier




**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete Items 3, and 4a & b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☑ Restricted Delivery
Consult postmaster for fee.

3. Article Addressed to:

P.O. Box 5473
Burlington, VT 05402

4a. Article Number
   Z 217 167 719
4b. Service Type
   ☐ Registered    ☐ Insured
   ☐ Certified     ☐ COD
   ☐ Express Mail  ☐ Return Receipt for Merchandise
7. Date of Delivery
   6-17-95
8. Addressee's Address (Only if requested and fee is paid)

   53-3-92AnDmd

Cancelled Judge unavailable

PS Form **3811**, December 1991    ☆U.S. GPO: 1993—352-714    **DOMESTIC RETURN RECEIPT**

FELL-00002926

STATE OF VERMONT

ADDISON COUNTY, SS.

| | | |
|---|---|---|
| KAREN CURRIER | ) | ADDISON FAMILY COURT |
| | ) | |
| v. | ) | |
| | ) | |
| ▮▮▮▮▮▮▮▮▮ | ) | DOCKET NO.  F53-3-92Andmd |

## ACCEPTANCE OF SERVICE

At _____ in the County of Addison and the State of Vermont on the ____ day of May, 1995, I accept service of the attached ORDER and Notice of Hearing dated May 19, 1995, by accepting a true copy thereof, and I agree that such acceptance of service shall be effective and binding upon me with the same force and effect as though served upon me by a duly qualified officer and all further and more particular services are hereby expressly waived.

Karen Currier

jep:forms:acceptser

FELL-00002927

STATE OF VERMONT

ADDISON COUNTY, SS.

KAREN CURRIER                          )     ADDISON FAMILY COURT
                                       )
        v.                             )
                                       )
███████████████                        )     DOCKET NO. f53-3-92 Andmd
                                       )

## ORDER

Upon consideration of the Plaintiff's *ex parte* Motion to Suspend Parent-Child Contact, the Court finds that there is a substantial risk of harm to Plaintiff and the minor child of the parties, ████, if parent-child contact with the Defendant is not suspended until further order of this Court or until a family psychological evaluation can be obtained to assess the appropriate roles of each parent in ████████ treatment process, and to recommend conditions under which parent-child contact may be safely resumed.

A hearing on this Order shall be held on ___July 3_____, 1995 at ___1:00___ .m. at the Addison Family Court, 5 Court Street, Middlebury, Vermont.

DATED at Middlebury, Vermont this __19__ day of May, 1995.

_____
Hon. Michael Kupersmith



Z 217 167 994

**Receipt for Certified Mail**
No Insurance Coverage Provided

SENDER:
• Complete items 1 and/or 2 for additional services.
• Complete items 3, and 4a & b.
• Print your name and address on the reverse of this form so that we can return this card to you.
• Attach this form to the front of the mailpiece, or on the back if space does not permit.
• Write "Return Receipt Requested" on the mailpiece below the article number.
• The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☑ Restricted Delivery
Consult postmaster for fee.

3. Article Addressed to:
███████████████████
PO Box 5473
Burlington VT 05402-5473

4a. Article Number
Z 217 167 994

4b. Service Type
☐ Registered    ☐ Insured
☐ Certified     ☐ COD
☐ Express Mail  ☐ Return Receipt for Merchandise

7. Date of Delivery
5-26-95

8. Addressee's Address (Only if requested and fee is paid)

f53-3-92 Andmd

PS Form 3811, December 1991    ☆U.S. GPO: 1993—352-714    DOMESTIC RETURN RECEIPT

MAY 19 1995

FELL-00002928

STATE OF VERMONT

ADDISON COUNTY, SS.

| | | |
|---|---|---|
| KAREN CURRIER | ) | ADDISON FAMILY COURT |
| | ) | |
| v. | ) | |
| | ) | |
| ██████████ | ) | DOCKET NO. f53-3-92 Andmd |

### EX-PARTE MOTION TO SUSPEND PARENT-CHILD CONTACT

NOW COMES Plaintiff, Karen Currier, by and through her attorney, Pamela A. Marsh, Esq. of Marsh, Fraser & Grant, P.C., and moves *ex parte* that the court suspend the parent-child contact rights of the Defendant, ██████████ for the reasons set forth below, and in the accompanying affidavits and Memorandum.

1. Plaintiff was married to the Defendant, ██████████. One child was born of the marriage: ██████████ born ██████████ Plaintiff's divorce became final on May 24, 1993.

2. Plaintiff has since remarried, to Marshall Currier.

3. Defendant was extremely violent to Plaintiff during the marriage. He beat her repeatedly during the marriage, often in front of ██████ He tried to choke her around the neck several times. He has pulled her hair, and hit her in the face and other places on her body. On one occasion, he pounded her around her head and stomach, causing a concussion as well as severe bruising, for which Plaintiff had to get treatment from the hospital. He told her he was going to kill her. He called her a "fucking slut" and other abusive names. He would throw beer cans around the house if he was out of pot.

4. On one occasion when ██████ was two or three, Defendant picked ██████ up by his shirt and put him against the wall because ██████ was playing with a light switch. He said that he had told ██████ not to do this a thousand times, and ██████ was going to listen to him.

MAY 1 9 1995

FELL-00002929



5. Defendant would often beat the parties' dog, a black lab, in front of ▌▌▌▌▌ He would kick her and hit her whenever he thought that the dog had done something wrong. ▌▌▌▌learned to be mean to animals, and has tried to harm Plaintiff's cat. Plaintiff has been trying to teach him not to be mean to animals.

6. Defendant was convicted of simple assault on Plaintiff (Docket No. 448-8-92 Ancr), felony Unlawful Trespass into her apartment after they were separated (Docket No. 483-9-92 Ancr) and DWI 2 (Docket No. 357-7-92 Ancr), all in Addison County. Plaintiff is still afraid of Defendant, due to the severity of the abuse she suffered at his hands.

7. ▌▌▌▌ often witnessed arguments between Defendant and Plaintiff, and heard the Defendant's abusive and threatening language toward Plaintiff.

8. ▌▌▌▌ exhibits emotional problems both at home and at school. He is quick to anger; he gets mad at himself as well as objects and people. For example, if he bumps into a chair, he feels that the chair is at fault. He sees himself always as the victim. When he gets mad, he tries to beat up whatever has made him mad; he tries to destroy things.

9. ▌▌▌▌ teacher referred him to Dee Hodges, the school guidance counselor, because of his behavior in school. The school formed a support team to address ▌▌▌▌behavior problems. In addition to school staff, the meetings have been attended by Plaintiff and her husband, Marshall Currier, and Frank Carruth, ▌▌▌▌ counselor. The purpose of these meetings has been to design and implement a behavior plan for ▌▌▌▌ and to ensure close communication between home and school.

10. At the recommendation of the school, Plaintiff obtained counseling for ▌▌▌▌ from Frank Carruth of the Counseling Service of Addison County. Mr. Carruth has informed Plaintiff that ▌▌▌▌is suffering from Post Traumatic Stress Disorder, and will require ongoing counseling for at least two years. Mr. Carruth has recommended to Plaintiff that ▌▌▌▌ visits to his father be suspended temporarily, or at least be reduced to once monthly, and be supervised. Mr. Carruth has told Plaintiff

that ███████ will not make progress in therapy until the visits with his father are suspended or at least supervised as stated above.

11. Plaintiff and ███████s teacher have a small notebook that is sent back and forth to school with ███████ to provide each other with information regarding ███████ day. They note any significant events in ███████s life and any difficult behavior he has exhibited.

12. ███████ has told Plaintiff that his father and his grandmother, ███████████████ fight during visits. (Many visits are held at Defendant's mother's house.) In addition, ███████ and her husband Moe fight. On one occasion, around Christmas time, 1994, ███████ eturned from a visit there and stated he never wanted to go back because of the fighting there.

13. The school has noted an increase in ███████ angry and aggressive behaviors after visits with his father.

14. After ███████ returns from visits to his father, he is always angry and anxious at home. He walks on his toes when he is anxious. He also stares at keys that he dangles in front of himself. For some reason, that seems to calm him a little.

15. Plaintiff requests that parent-child contact be temporarily suspended until a way can be found to assure ███████ safety during visits and that they not be resumed until arrangements can be made for supervision of the visits.

16. The next visit is scheduled for the weekend of May 27, 1995.

17. Plaintiff is afraid that both she and ███████ will be at increased risk of harm if ███████ is compelled to continue visits with Defendant while the Motion to Modify is pending.

DATED at Middlebury, Vermont this 19ᵗʰ day of May, 1995.



Pamela A. Marsh, Esq.
Marsh, Fraser & Grant, P.C.
62 Court Street
Middlebury, VT  05753

STATE OF VERMONT

ADDISON COUNTY, SS.

KAREN CURRIER                 )     ADDISON FAMILY COURT

                            )

v.                             )

                            )

██████████████           )     DOCKET NO. f53-3-92 Andmd

## MOTION TO MODIFY

NOW COMES Plaintiff, Karen Currier, by and through her attorney, Pamela A. Marsh, Esq. of Marsh, Fraser & Grant, P.C., and moves to modify the Final Order entered March 24, 1993, and the Order entered March 30, 1994 as follows:

1. Plaintiff and Defendant were divorced by Final Order entered on March 24, 1993. At the time the Final Order was issued, Plaintiff and Defendant were awarded shared legal rights and responsibilities for ████████████████ , the minor child of the parties. Plaintiff was entrusted with physical rights and responsibilities for Michael.

2. At the time of the entry of the Final Order, Defendant was incarcerated. The Final Order awarded visitation once monthly with Plaintiff's mother, ██████████ and provided for "reasonable visitation" to Defendant after his incarceration. Subsequently, that order was modified upon application by Defendant to provide that Defendant was entitled to parent-child contact every other weekend from Saturday at 10:00 a.m. until Sunday at 5:00 p.m.. Order, March 30, 1994, Paragraph 1. No mention was made in the 1994 Order regarding separate visitation rights for Ms. ██████.

3. Plaintiff requests that these orders be modified to place legal rights and responsibilities solely with her, and to require supervised parent-child contact with ██████

4. Plaintiff alleges that there has been a substantial and unanticipated change in circumstances since the entry of these orders. In particular, Plaintiff alleges that ██████ is exhibiting severe behavior problems, and has been recently diagnosed with

MAY 1 9 1995

FELL-00002932

Post Traumatic Stress Disorder. ▮▮▮▮▮ behaviors have been addressed by a behavior management plan, but his anger and aggressive behaviors increase significantly after visits to the Defendant.

5. Defendant was extremely violent to Plaintiff during the marriage. He beat her repeatedly during the marriage, often in front of ▮▮▮▮▮ Defendant was convicted of simple assault on Plaintiff (Docket No. 448-8-92 Ancr), felony unlawful trespass into her apartment after they were separated (Docket No. 483-9-92 Ancr) and DWI 2 (Docket No. 357-7-92 Ancr), all in Addison County. Plaintiff is still afraid of Defendant, due to the severity of the abuse she suffered at his hands.

6. ▮▮▮▮▮ often witnessed arguments between Defendant and Plaintiff, and heard the Defendant's abusive and threatening language toward Plaintiff. Plaintiff believes that his behavior and his PTSD are related to witnessing her abuse by the Defendant.

7. Plaintiff cannot exercise shared legal custody of ▮▮▮▮▮ with Defendant. Because of the abuse, it is not safe or appropriate for Plaintiff to have to share legal decision-making with Defendant. Plaintiff only agreed to this provision in the Final Order because of her fear of Defendant. Plaintiff wishes to have as little contact as possible with the Defendant. Continuation of the shared legal custody arrangement also puts ▮▮▮▮▮ at risk, in that Defendant can object to arrangements made by Plaintiff for counseling for ▮▮▮▮▮, as well as to interventions put in place for ▮▮▮▮▮ at school.

8. Plaintiff, through Frank Carruth, is applying for funding for a family psychological evaluation to be performed by Patricia Whitman, Ph.D. and Paul Candido, Ph.D. Plaintiff requests that all parties be ordered to participate in a family forensic evaluation, assuming that funding is successfully found for such an evaluation.

9. Plaintiff requests that parent-child contact with Defendant be modified consistent with the recommendations of the evaluation, assuming one is completed. If no evaluation can be completed due to lack of funding, Plaintiff requests that parent-child contact be modified to permit monthly supervised visits, and that the supervisor be a mental health counselor, licensed social worker, or other individual having specific

FELL-00002933

Page 3

training to recognize issues of control and abuse, as well as being sensitive to ███████ s stress level.

DATED at Middlebury, Vermont this 19th day of May, 1995.

*Pamela A Marsh*

Pamela A. Marsh, Esq.
Marsh, Fraser & Grant, P.C.
62 Court Street
Middlebury, VT 05753

FELL-00002934

STATE OF VERMONT

ADDISON COUNTY, SS.

| | | |
|---|---|---|
| KAREN CURRIER | ) | ADDISON FAMILY COURT |
| | ) | |
| v. | ) | |
| | ) | |
| ███████████████ | ) | DOCKET NO. f53-3-92 Andmd |

## AFFIDAVIT OF KAREN CURRIER

NOW COMES Karen Currier, being duly sworn, and deposes and says as follows:

1. I was married to the Defendant, ██████████ We had one son, █████████ ████████, born ████████████. Our divorce became final on May 24, 1993.

2. I have since remarried, to Marshall Currier.

3. Pat was extremely violent to me during the marriage, and even when we had separated. He beat me on numerous occasions, often in front of ████████ He tried to choke me around the neck several times. He ripped out my hair, and hit me in the face and other places on my body. On one occasion, in front of ████████ he pounded me around my head and stomach, causing a concussion as well as severe bruising, for which I had to get treatment from the hospital. He told me he was going to kill me. He called me a "fucking slut" and other abusive names. He would throw beer cans around the house if he was out of pot.

4. On one occasion when ████████ was two or three, Pat picked ████████ up by his shirt and put him hard against the wall because ████████ was playing with a light switch. He said that he had told ████████ not to do this a thousand times, and ████████ was going to listen to him.

5. Defendant would often beat the our dog, a black lab, in front of ████████ He would kick her and hit her whenever he thought that the dog had done something



MAY 19 1995

FELL-00002935



wrong. ██████ learned to be mean to animals, and has tried to harm my cat. I have been trying to teach him not to be mean to animals.

6. Pat was convicted of simple assault on me (Docket No. 448-8-92 Ancr), and of felony unlawful trespass into my apartment after we were separated (Docket No. 483-9-92 Ancr). He had a bad alcohol problem, and was convicted of DWI 2 (Docket No. 357-7-92 Ancr).

7. I am still afraid of Defendant, due to the severity of the abuse I suffered at his hands.

8. ██████ often witnessed arguments between his father and me, and heard his abusive and threatening language toward me.

9. I believe ██████ is afraid of his father. Even now, if I am discussing something with Pat in front of ██████, and I ask ██████ a question, he always looks at his father before answering, as if to get permission, or to determine his reaction to the question before he answers.

10. ██████ exhibits emotional problems both at home and at school. He is quick to anger; he gets mad at himself as well as objects and people. For example, if he bumps into a chair, he feels that the chair is at fault. He sees himself always as the victim. When he gets mad, he tries to beat up whatever has made him mad; he tries to destroy things.

11. ██████'s teacher referred him to Dee Hodges, the school guidance counselor, because of his behavior in school. The school formed a support team to address ██████'s behavior problems. In addition to school staff, the meetings have been attended by Marshall and me, and by Frank Carruth, ██████'s counselor. The purpose of these meetings has been to design and implement a behavior plan for ██████ and to ensure close communication between home and school.

12. At the recommendation of the school, I obtained counseling for ██████ from Frank Carruth of the Counseling Service of Addison County. Mr. Carruth has informed me that ██████ is suffering from Post Traumatic Stress Disorder, and will require ongoing counseling for at least two years.

13. ███████ s teacher and I now have a small notebook that is sent back and forth to school with ███████ to provide each other with information regarding ███████ day. We note any significant events in ███████ s life and any difficult behavior he has exhibited.

14. ███████ has told me often that his father and his grandmother, ███████ ███████ fight during visits. (Many visits are held at Defendant's mother's house.) In addition, ███████ and her husband Moe fight. On one occasion, around Christmas time, 1994, ███████ returned from a visit there and stated he never wanted to go back because of the fighting there.

15. The school has noted an increase in ███████ angry and aggressive behaviors after visits with his father.

16. After ███████ returns from visits to his father, he is always angry and anxious at home. He walks on his toes when he is anxious. He also stares at keys that he dangles in front of himself. For some reason, that seems to calm him a little.

17. I request that parent-child contact be temporarily suspended until a way can be found to assure ███████ safety during visits and that they not be resumed until arrangements can be made for supervision of the visits.

DATED at Middlebury, Vermont this 19th day of May, 1995.

_Karen Currier_
Karen Currier

SUBSCRIBED AND SWORN to before me this 19th day of May, 1995.

_Pamela A Marsh_
Notary Public

My Commission expires: 2/10/95

STATE OF VERMONT

ADDISON COUNTY, SS.

| | | |
|---|---|---|
| KAREN CURRIER | ) | ADDISON FAMILY COURT |
| | ) | |
| v. | ) | |
| | ) | |
| ███████████ | ) | DOCKET NO.  f53-3-92 Andmd |

### AFFIDAVIT OF FRANK CARRUTH

I, Frank Carruth, being duly sworn, depose and say as follows:

1. I am a Licensed Clinical Social Worker. I have worked as a psychotherapist with children for 7 years. I am presently employed by the Counseling Service of Addison County.

2. I have been seeing ███████████, age 6, for a little over two months. I have seen him approximately 8 times. He was referred to me because of acting out behaviors in school.

3. In my opinion, ███████ is suffering from Post Traumatic Stress Disorder [PTSD]. He will need ongoing treatment for at least the next year.

4. Because of the severity of the PTSD symptoms, it is crucial to assess the appropriate role for each parent in his treatment process.

5. I therefore recommend that ███████ and his parents participate in a forensic evaluation for this purpose.

DATED at Middlebury, Vermont this 10th day of May, 1995.

_Frank Carruth_
Frank Carruth

SUBSCRIBED AND SWORN to before me this 10th day of May, 1995.

_Pamela A Marsh_
Notary Public

MAY 1 9 1995

FELL-00002938

STATE OF VERMONT

ADDISON COUNTY, SS.

KAREN CURRIER                    )    ADDISON FAMILY COURT
                                 )
        v.                       )
                                 )
█████████████████               )    DOCKET NO. f53-3-92 Andmd

### AFFIDAVIT OF DEE HODGES

I, Dee Hodges, being duly sworn, depose and say as follows:

1. I have been guidance counselor at Mary Hogan School for the last 10 years. I have a M.A. in Counseling Psychology.

2. ████████████ age 6, is in kindergarten at Mary Hogan School. He was referred to me due to severe acting out behaviors in the classroom.

3. The school has formed a support team to address his behaviors. We referred ██████ to the Counseling Service for therapy. Frank Carruth has worked with the school and the parents to devise a behavior management program for ███████. We have attempted to structure his school environment to help him maintain control of his behavior. ████████ mother and step-father have been working very closely with the school and the Counseling Service to address his behaviors.

4. ████████ ability to learn is diminished due to emotional problems. He is frequently not able to maintain control of his behavior in the classroom. We see periods of improvement in his behavior, but we have noticed that he regresses after visits with his father, ██████████.

MAY 1 9 1995

FELL-00002939

5. After visits, we see an increase in aggressive behaviors. These behaviors have included spitting on his teacher, throwing a chair in the classroom, and threatening behaviors toward school staff and peers.

DATED at Middlebury, Vermont this _8th_ day of May, 1995.

_Dee Hodges_
Dee Hodges

SUBSCRIBED AND SWORN to before me this _8th_ day of May, 1995.

_Pamela A Marsh_
Notary Public

FELL-00002940

STATE OF VERMONT

ADDISON COUNTY, SS.

| | | |
|---|---|---|
| KAREN CURRIER | ) | ADDISON FAMILY COURT |
| | ) | |
| v. | ) | |
| | ) | |
| ████████████ | ) | DOCKET NO. F53-3-92 Andmd |

## MEMORANDUM

NOW COMES Plaintiff, by and through her attorney, Pamela A. Marsh, Esq., of Marsh, Fraser & Grant, P.C., and submits this Memorandum in support of the Ex-Parte Motion to Suspend Parent-Child Contact and the Motion to Modify filed herewith.

Plaintiff seeks to temporarily suspend parent-child contact between the minor child of the parties, ████████, and the Defendant, his father until a family psychological assessment can be obtained to recommend conditions under which parent-child contact may be safely resumed.

### 1. Facts

Defendant repeatedly abused Plaintiff both physically and emotionally during the marriage. Defendant hit her in the face and on other places on her body. He ripped out handfuls of her hair; he hit her in the face. He attempted to choke her on several different occasions. He threw objects around the house. He called Plaintiff a "fucking slut" and other abusive names. He told her that he was going to kill her.

████████ was a witness to much of this abuse. On one occasion that Plaintiff particularly remembers, Defendant hit her around her head and stomach, causing a concussion as well as severe bruising, for which she had to get medical treatment. ████████ saw this beating, and was terrified. He saw Plaintiff abused on many other occasions as well. At least once, ████████ himself was physically abused by Defendant. ████████ was playing with a light switch. Defendant picked him up by the shirt and shoved him up against the wall, yelling at him for playing with the light switch. He told

MAY 19 ██

FELL-00002941

███████ that he had told him a thousand times not to play with the switch, and ███████ *was* going to listen to him.

In addition, ███████ saw Defendant beat the family dog repeatedly. ███████ learned to be mean to animals, and Plaintiff has had to work hard with ███████ to keep him from abusing her cat.

Defendant was convicted of simple assault on Plaintiff, and of felony unlawful trespass for entering Plaintiff's apartment after their separation.

Not too surprisingly, ███████ has been exhibiting emotional and behavioral problems. He is quick to anger; he gets mad at himself as well as objects and other people. When he gets mad, he often tries to beat up whatever has made him mad. He sees himself always as the victim. This six-year-old boy has been diagnosed as having Post Traumatic Stress Disorder [PTSD].

███████ entered kindergarten in September, 1994. The school noticed his behavioral and emotional problems, and formed a support team to address the problems. With the help of a counselor, Frank Carruth, they developed a behavioral program for ███████ in school. Although the program has been beneficial, the school has noted regression after ███████ returns from visits to his father.

███████ has told his mother that there is ongoing fighting and yelling during his visits. Visits are often held at his paternal grandmother's in Barre. Reportedly, Defendant and his mother argue, and she also argues incessantly with her husband.

## 2. Argument

For the first three and one-half years of his life, ███████ witnesses repeated acts of violence by this father against his mother, and at least once, against himself. Children who witness domestic violence are also vict███████e violence, even if they are not physically abused themselves.

> An abuser's violence toward his mate causes a variety of psychological problems for this children, whether the violence is also directed at the children, whether the children are merely witnesses to the abuse, or whether the children do not witness the abuse directly but do suffer its consequences or aftermath. This psychological damage takes the form of 1) immediate trauma, 2) adverse affects on the development of the children, 3) living with high stress, including fear of injury to their mother and themselves, and 4) exposure to violent role models. In addition they may be victims of abuse themselves as well.

> Children who live in a home where abuse occurs are <u>always</u> affected by it. It is easy to understand that children who are themselves abused suffer a great deal from this abuse. However, direct witnessing of the abuse of their mother affect the children in a similar manner to children who are themselves abused. Some of the most traumatizing experiences are those where children are themselves abused and also witness the abuse of their mothers.

<u>The Effect of Woman Abuse on Children: Psychological and Legal Authority</u>, National Center on Women and Family Law, 1991, pp. 1-2, 5. ████████, at the young age of six years, has been diagnosed with Post Traumatic Stress Disorder.

> Children exposed to wife abuse may be similar to those children described and suffering from post-traumatic stress disorder. <u>DSM-III-R</u> (American Psychiatric Association, 1987) contains a detailed definition of Post-Traumatic Stress Disorder (PTSD). Traumata that may result in PTSD for a domestic violence victim or her children include:
>> "a serious threat to one's life or physical integrity; or harm to one's children, spouse or other close relatives and friends; ...or seeing another who has recently been, or is being, seriously injured or killed as the result of ... physical violence. In some cases, the trauma may be learning about a serious threat or harm to a close friend or relative..."

<u>Id.</u>, p. 9 [citations omitted]. ████████ witnessed the ongoing physical and emotional abuse of his mother, including events which resulted in her hospitalization and in the police being called. It is not surprising that he shows signs of PTSD. He exhibits behavioral and emotional problems. He is quick to anger, and has trouble controlling how his anger is expressed. He learned to be mean to animals, which his mother is now trying to correct. He has acted in his classroom in a manner which endangers other students (i.e., throwing a chair, and exhibiting other aggressive and threatening behaviors). In short, ████████ demonstrates the behaviors he learned from his father.

> Growing up in a violent family creates problems in later life because of the values, attitudes and coping mechanisms it teaches. Children who see their own parents engage in violence, as well as children who are abused themselves, are more likely to be violent with their mates. The more violence they see, the more they will tolerate as adults.

<u>Id.</u>

Domestic abuse often has an adverse impact upon the motoric, sensory, cognitive, emotional, motivational, and social development of children. Id., pp. 22 - 45. The adjustment to school is particularly problematic for child victims of domestic abuse.

> School adjustment in general has been shown to pose particular problems for children exposed to wife abuse. One study found that such children often had "difficulties with school, including poor academic performance, school phobia and difficulties in concentrating." Another pointed out that "children in violent homes learn several lessons about conflict resolution. They are taught that violence is an appropriate way of resolving conflict in intimate relationships. These children learn that assaultive behavior and threats are a very effective means to maintain power and control over other people. They will acquire all of the rationalizations about the violence being an essential strategy whenever there is too much stress or too many problems to address." The same study concluded that "children's perceptions of social situations may be distorted as a function of their negative family experience."

Id., p. 44 [citations omitted]. On at least one occasion when ▉▉▉▉ didn't get his way in kindergarten, he threatened to "get my Dad to kill you [the teacher]." On another occasion, he threw a chair, endangering his classmates. ▉▉▉▉ has clearly been badly damaged by the domestic violence that was so much a part of his early years.

At the present time, Defendant is allowed unsupervised contact with ▉▉▉▉. Following that contact, his aggressive and nervous behaviors increase both at his mother's home and at school. Plaintiff requests that parent-child contact be suspended temporarily while appropriate professionals assess the role of both parents in ▉▉▉▉ mental health treatment, and under what conditions parent-child contact can be safe and beneficial to him.

> Across the country, professionals are looking for models that can best serve the interests of high-risk children and that will allow these children to grow up in as safe and as healthy a fashion as possible while maintaining supportive, growth-fostering parental relationships. It is essential to balance children's needs for protection from psychological and physical harm with their needs to maintain a positive, supportive relationship with both parents.
> The courts, attorneys, and mental health professionals must work together to create plans tailored to each child's needs. For these families, the well-being of the children must be the primary consideration over and above the parents' right to visitation.

"Custody and Visitation: Is it Safe?" Carla Garrity, Ph.D. and Mitchell A. Baris, Ph.D., Family Advocate, Vol. 17, No. 3, Winter 1995.

Although Vermont does not have a statutory provision requiring the courts to consider evidence of domestic violence in determining issues of parental rights and responsibilities and parent-child contact, 15 V.S.A. § 665 (b) (5) provides that in making a parental rights and responsibilities order, the court shall consider

> the ability and disposition of each parent to foster a positive relationship and frequent and continuing contact with the other parent, including physical contact, except where contact will result in harm to the child or to a parent.

In this particular case, there is ample evidence that parent-child contact has already resulted in harm to ████████ The Vermont Supreme Court has repeatedly supported the right of parents to parent-child contact even where there is evidence of abuse, see, e.g. Mullin v. Phelps, No. 93-143 (1993).

Unlike in Mullin, Plaintiff does not seek, in essence, to terminate all parent-child contact, but rather to suspend it temporarily to allow for further assessment of the parties and the conditions under which ████████ needs for safety and for contact with his father can both be met.

> A parent's "right to visitation" cannot take precedence over a child's exposure to a high-risk environment. Visitation is designed to build supportive relationships and to allow a child to feel loved and cared for by a parent who will promote the child's continuing development. Unfortunately, relationships do not grow and flourish in an environment of fear.
>
> Instead, a child is at risk of being hurt physically or emotionally and needs to find a means of coping with that hurt. Over time, the maladaptive coping strategies that fearful children may adopt are incorporated into their developing personalities and later interpersonal relationships. As a result, many of these children will repeat the problems of their parents.

"Custody and Visitation," supra, at 43. Hopefully the counseling and interventions put in place by Plaintiff and his school will help ████████ to learn more constructive ways to deal with his hurt and anger. However, it seems evident that the present system of unsupervised contact with Defendant is detrimental to ████████ recovery. Garrity and Baris recommend that an abusive parent be initially be allowed only "supervised therapeutic visitation." Id. at 44 - 45. During this phase, visitation takes place only in

the presence of a trained professional in a "family or dyadic therapy session." The purpose of this stage is to assess the violent parent's capacity for safe parenting. Id. at 45. If there is a poor prognosis for the parent's recovery, supervised therapeutic visitation will continue to be required, if visitation is not suspended temporarily or permanently. If there appears to be a guarded prognosis for the parent's recovery, the parent may be able to move from supervised therapeutic visitation to short blocks of visitation with non-professional supervision. Finally, where there is a good prognosis for the parent's recovery, visitation would progress from supervised therapeutic visitation to short periods of unsupervised visitation followed by de-briefing by a mental health professional, to gradually increasing length of visits, with ongoing contact with a mental health professional, eventually leading up to a normal developmentally appropriate visitation schedule. Id.

Garrity and Baris indicate that the assessment phase can take anywhere from one month to one year. Id. at 44. Plaintiff hopes that by mandating all parties to participate in a family psychological evaluation, the assessment phase can be shortened considerably. Given ███████ extreme symptoms, visits with Defendant should be suspended until the results of the assessment are known. The assessment should make specific recommendations for how parent-child contact between Michael and his father should be structured to ensure ███████ physical and psychological safety. If contact with Defendant is not suspended during this assessment phase, ███████ may be at greater risk of harm because of Defendant's anger toward Plaintiff for initiating these proceedings.

WHEREFORE, Plaintiff respectfully requests that her Motion to Suspend Parent-Child Contact be GRANTED, and that the parties be ordered to participate in a family psychological assessment for the purposes set forth above.

DATED at Middlebury, Vermont this 19th day of May, 1995.

Pamela A. Marsh, Esq.
Marsh, Fraser & Grant, P.C.
62 Court Street
Middlebury, VT 05753

Form 800

| COVER SHEET | Vermont Family Court | County _Addison_ | | Docket Number _F53-3-92Andmd_ |
|---|---|---|---|---|

**Plaintiff Name and Address**

Karen Currier

**Defendant Name and Address**

V. ▮▮▮▮▮
P.O. Box 5473
Burlington, VT 05402-5473

Telephone #: Day ( ____ ) _____
Evening ( ____ ) _____

Telephone #: Day ( ____ ) _____
Evening ( ____ ) _____

**1. Case Type:**

A) ___ New   _X_ Existing   ___ Existing Human Service Board Order (attached)   If this is an existing case:   **Name of Petitioner**

B) _X_ Divorce ___ Annulment ___ Desertion & Nonsupport ___ Parentage ___ Legal Separation
___ Other:

C) Minor Children? _X_ Yes ___ No  (If this is a New Case involving Minor Children, attach a completed Affidavit of Child Custody, Form No. 135.)

D) Are Parental Rights and Responsibilities Contested? ___ Yes ___ No

**2.**

A) The ___ Plaintiff ___ Defendant receives services from the Office of Child Support Services.

B) The ___ Plaintiff ___ Defendant is or has been a recipient of public assistance from or through the Department of Social Welfare.

**3. Existing Court Orders** or Court proceedings involving the plaintiff, defendant, or their children:

A) ___ Child Support Order:

| Date of the Order and the Date(s) it was Modified |
|---|
| Name and Location of the Court |
| |
| Docket Number |

B) ___ Domestic Abuse, Guardianship, or Adoption:

| Name and Location of the Court |
|---|

ADDISON FAMILY COURT
FILED

MAY 19 1995

CHIP PETERSON
CLERK

**4. Action Requested:**

___ Establish Support
___ Child
___ Maintenance Supplement
___ Spouse
___ Establish Parental Rights and Responsibilities (Custody)
___ Establish Parent-Child Contact (Visitation)
___ Establish Parentage
___ Wage Withholding
___ Other:

___ Modify Support
___ Child
___ Maintenance Supplement
___ Spouse
_x_ Modify Parental Rights and Responsibilities (Custody)
_X_ Modify Parent-Child Contact (Visitation)
___ Contempt
___ Enforcement

**5. Service of Process:**

___ Service Completed; Return/Acceptance of Service is attached
___ Plaintiff's/Petitioner's Attorney will Serve
___ No Child Support Issues; Plaintiff/Petitioner will Serve
___ Child Support Issues; Clerk will Serve:
___ Serve by Certified Mail ___ Serve by Personal Service
___ Serve by 1st Class Mail with Acknowledgment

$ _____ attached

**6.** ___ Plaintiff ___ Petitioner requests assistance from the Office of Child Support Services.

Rev. 11/91 lsmc

**SEE INSTRUCTIONS ON THE BACK OF THIS COVER SHEET**

FELL-00002947

STATE OF VERMONT

ADDISON FAMILY COURT


Karen Currier

v.                                                    Docket No. 53-3-92Andm

███████████


ACCEPTANCE OF SERVICE


I, Karen Currier, hereby accept service of the Child Support Order filed
June 8, 1994 in the above-entitled cause and waive all other form of service.


Date ___/July 10-94___                 Signature ___Karen Currier___


NOTE: Enclosed please find a copy of the Court Order in your case. Please sign,
      date and return only this Acceptance of Service. The Order is yours to
      keep for your records.



FILED

JUL 13 1994

ADDISON FAMILY COURT
CHIP EPPERSON, CLERK

STATE OF VERMONT

ADDISON FAMILY COURT

Karen Currier

v.                                    Docket No. 53-3-92Andm

████████████

ACCEPTANCE OF SERVICE

████████, ████████████, hereby accept service of the Child Support Order filed June 8, 1994 in the above-entitled cause and waive all other form of service.

Date 6/23/94 _____                 Signature ████████████████████

NOTE: Enclosed please find a copy of the Court Order in your case. Please sign, date and return only this Acceptance of Service. The Order is yours to keep for your records.



FILED

JUN 2 7 1994

ADDISON FAMILY COURT
CHIP EPPERSON, CLERK

FELL-00002949

Form 813

| Vermont Family Court | County Addison | Docket Number 53-3-92 |
| --- | --- | --- |

## AFFIDAVIT OF INCOME AND ASSETS

| Plaintiff Karen M. Currier | Defendant ████████████ |
| --- | --- |

| Your Name Karen Currier | Your Social Security Number ████████████ |
| --- | --- |
| Street Address Rt 3 Box 3711 | Telephone Number: Day: 759-2128 |
| Mailing Address Vergennes | Evening: 759-2128 |
| City, State, Zip Vt. 05491 | |

A. **MONTHLY EMPLOYMENT INCOME:** (Your weekly income multiplied by 4.333)

| Employer Name and Address | Second Employer Name and Address |
| --- | --- |
| | |

Monthly Income

1. Total wages, salary and tips (including overtime)............... ____ 0
2. Reimbursements or in-kind payments received in the course
   of employment which reduces personal living expense............. ____
3. Other (commissions, royalties, bonuses, severance pay,
   gifts, prizes, inheritances):  Specify: _____ ____
   _____ ____

B. **SPOUSAL SUPPORT ACTUALLY RECEIVED:**................................ ____

C. **CAPITAL GAINS** (Current Annual Capital Gains Income divided by 12).. ____

D. **BENEFITS**
   1. Social Security Benefits: (type:_____) ____
   2. Workers' Compensation Benefits .................................. ____
   3. Unemployment Insurance Benefits ................................. ____
   4. Disability Insurance Benefits ................................... ____

E. **SCHEDULES**
   1. NON-INCOME PRODUCING ASSETS - IMPUTED INCOME (ATTACH SCHEDULE A). ____
   2. INCOME PRODUCING ASSETS (ATTACH SCHEDULE B)...................... ____
   3. MONTHLY BUSINESS INCOME (ATTACH SCHEDULE C)...................... ____
   4. RENT FROM INCOME PRODUCING PROPERTY (ATTACH SCHEDULE E).......... ____

**TOTAL MONTHLY INCOME**.................................................. $ 0

SEE REQUEST FOR ADDITIONAL INFORMATION ON BACK

8/91

FELL-00002950

F. Non-Income Producing Assets

___ 1. I have listed my non-income producing assets on Schedule A.

X  2. I have not attached Schedule A because:
   (a) The total equity value (market value minus amount owed) of my checking
   accounts, real property (other than my personal residence), and personal property
   (boats, jewelry, stereos, etc.) is less than $10,000.00;   AND
   (b) The total equity value of my automobile, snowmobiles and recreational
   vehicles and other motor vehicles is less than $15,000.00.

G. Income from Public Assistance

Do you receive public assistance from the Vermont Department of Social Welfare?
   ___ yes      X  no (skip this Section and go to Section H.)    Monthly Amount
If yes:
   1. Aid to Families with Needy Children                        _____
   2. Supplemental Security Income                               _____
   3. Food Stamps                                                _____
   4. Fuel Assistance                                            _____
   5. General Assistance                                         _____
   6. Other: Medicaid                                            _____

H. Expenses Related to Child Support Worksheet Calculation

                                                                Monthly Amount
   1. Preexisting spousal support obligation actually paid:     _____
   2. Spousal support obligation paid to party in present action:  _____
   3. Preexisting child support obligations actually paid:      _____
      (for children who are not subject to this action)
   4. Health insurance premiums paid for children involved      _____
      in this action:
   5. Out-of-pocket child care costs incurred for employment
      or employment related education:
      (Amount of gross child care costs          $_____
       minus amount of any child care subsidy     $_____
       minus amount of any child care tax credits $_____):  _____

   6. Extraordinary medical expenses or expenses related to
      special needs of the children involved in the present action:  _____
      (Extraordinary medical uninsured expenses in excess of $16.67 per month.)

I. Do you have any natural, adopted, or stepchildren who are living in your
   household?    ___ yes    ✓ no    How many? _____

## CERTIFICATION

I certify that the monthly income and additional information provided on this Affidavit
and the attached Schedules are true and accurate to the best of my knowledge.

_Karen Currier_      _May 24-94_
              Signature                    Date

Subscribed and sworn to before me:

_____  _3/24/94_            _2/10/95_
Notary Public          Date                 Expiration Date

8/91

FELL-00002951

Form 813 - Schedule D

| Name of Affiant | Docket Number |
|---|---|
| Karen Curnier | F53-3-92 |

### AFFIDAVIT OF INCOME AND ASSETS - SCHEDULE D

### RESOURCES AND LIABILITIES

**A. Resources**

**1. Life Insurance Policies**

| Face Value | Person Covered | Beneficiary | Policy # & Company | Cash/Loan Value |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

|  | Market Value | - Liens | = Equity |
|---|---|---|---|
| 2. IRA's & Keoughs - List separately: | | | |
| 3. Primary Residence - (if owned); Include Name on Deed: | | | |
| 4. Household Furnishings: Stereo, Entertanment center, Vacum cleaner | | | 75.00 |
| 5. Other: Describe and list separately: | | | |

**B. Liabilities**

**1. Loans** (List each separately; identify what the loan is for)

| Date of Loan | Name of Lender | Collateral (if any) | Payment per Time Period | Balance |
|---|---|---|---|---|
| | Chittendad Bank | (Student Loan) | taxes | 2600 |
| | | | | |
| | | | | |

**2. Installment Debts** (Include credit card balances)

| Date Commenced | To Whom Owed | What the Debt is For | Item Mortgaged |
|---|---|---|---|
| | Sears | | |
| | Visa    FASHion Bug | | 1800 |
| | master card | | |

**3. Other Liabilities** (Include court ordered payments other than spousal or child support)

### SEE REQUEST FOR ADDITIONAL INFORMATION ON BACK

3/17/92

FELL-00002952

| C. Monthly Expenses | Self | Children | Total |
|---|---|---|---|
| Federal Taxes................... | | | |
| State Taxes.................... | | | |
| Social Security Taxes (FICA).. | | | |
| Rent or Mortgage.............. | ~~~~ | | 400.00 |
| Property Taxes and Assessments | | | |
| Property Insurance............ | | | |
| Home Maintenance.............. | | | |
| Utilities..................... | | | |
| Electricity................... | | | |
| Telephone..................... | | | 50.00 |
| Water......................... | | | |
| Gas for Home.................. | | | |
| Heat - Type:_____.. | | | |
| Food.......................... | | | 250.00 |
| Laundry and Cleaning.......... | | | 30.66 |
| Clothing...................... | | | 70.00 |
| Medical & Dental (not covered by insurance................ | | | |
| Insurance: Life............... | | | |
| Health............. | | | |
| Accident........... | | | |
| Other_____... | | | |
| Entertainment................. | | | |
| Vacation...................... | | | |
| Transportation: | | | |
| Gas........................ | | | 60.00 |
| Maintenance................ | | | 50.00 |
| Registration............... | | | |
| Insurance.................. | | | |
| Union and Other Dues and Employment Required Expenses (Please Specify): | | | |
| _____... | | | |
| _____... | | | |
| _____... | | | |
| Incidentals................... | | | |
| Child Care Cost: Total cost minus subsidies minus tax credits.......... | | | |
| Extraordinary travel expenses incurred in exercising the right to periods of visitation or parent-child contact..... | | | |
| Other (Specify): | | | |
| _____... | | | |
| _____... | | | |
| _____... | | | |
| _____... | | | |
| Total......................... | | | |

3/17/92

Form 813

| Vermont Family Court | County Addison | Docket Number F53-3-92 |
|---|---|---|

### AFFIDAVIT OF INCOME AND ASSETS

| Plaintiff KAREN M CURRIER | V. | Defendant ███████████ |
|---|---|---|

| Your Name ███████████ ███████████ ███████████ | Your Social Security Number ███████████ |
|---|---|
| Mailing Address PO BOX 5473 | Telephone Number: Day: 862-0800 Evening: _____ |
| City, State, Zip BURLINGTON VT 05402-5473 | |

A. **MONTHLY EMPLOYMENT INCOME:** (Your weekly income multiplied by 4.333)

| Employer Name and Address INDEPENDENT FOOD CO 237 SO CHAMPLAIN STREET BURLINGTON VT | Second Employer Name and Address |
|---|---|

Monthly Income

1. Total wages, salary and tips (including overtime)................ 988.50
2. Reimbursements or in-kind payments received in the course of employment which reduces personal living expense............. 0
3. Other (commissions, royalties, bonuses, severance pay, gifts, prizes, inheritances): Specify: _____

B. SPOUSAL SUPPORT ACTUALLY RECEIVED:............................... 0

C. CAPITAL GAINS (Current Annual Capital Gains Income divided by 12).. 0

D. BENEFITS
   1. Social Security Benefits: (type:_____ ) 0
   2. Workers' Compensation Benefits ................................... 0
   3. Unemployment Insurance Benefits .................................. 0
   4. Disability Insurance Benefits ................................... 0

E. SCHEDULES
   1. NON-INCOME PRODUCING ASSETS - IMPUTED INCOME (ATTACH SCHEDULE A). 0
   2. INCOME PRODUCING ASSETS (ATTACH SCHEDULE B)...................... 0
   3. MONTHLY BUSINESS INCOME (ATTACH SCHEDULE C)..................... 0
   4. RENT FROM INCOME PRODUCING PROPERTY (ATTACH SCHEDULE E).......... 0

TOTAL MONTHLY INCOME.............................................. $ 988.50

SEE REQUEST FOR ADDITIONAL INFORMATION ON BACK

8/91

FELL-00002954

F.  Non-Income Producing Assets

___ 1. I have listed my non-income producing assets on Schedule A.

✓ 2. I have not attached Schedule A because:
    (a) The total equity value (market value minus amount owed) of my checking
    accounts, real property (other than my personal residence), and personal property
    (boats, jewelry, stereos, etc.) is less than $10,000.00;   AND
    (b) The total equity value of my automobile, snowmobiles and recreational
    vehicles and other motor vehicles is less than $15,000.00.

G.  Income from Public Assistance

Do you receive public assistance from the Vermont Department of Social Welfare?
    ___ yes      ✓ no (skip this Section and go to Section H.)     Monthly Amount
If yes:
    1.  Aid to Families with Needy Children                       _____
    2.  Supplemental Security Income                              _____
    3.  Food Stamps                                               _____
    4.  Fuel Assistance                                           _____
    5.  General Assistance                                        _____
    6.  Other:_____                     _____

H.  Expenses Related to Child Support Worksheet Calculation

                                                                 Monthly Amount
    1.  Preexisting spousal support obligation actually paid:     _____
    2.  Spousal support obligation paid to party in present action: _____
    3.  Preexisting child support obligations actually paid:      _____
        (for children who are not subject to this action)
    4.  Health insurance premiums paid for children involved      55.97
        in this action:
    5.  Out-of-pocket child care costs incurred for employment
        or employment related education:
        (Amount of gross child care costs            $ _____
            minus amount of any child care subsidy   $ _____
            minus amount of any child care tax credits $._____ ):  _____

    6.  Extraordinary medical expenses or expenses related to     _____
        special needs of the children involved in the present action:  _____
        (Extraordinary medical uninsured expenses in excess of $16.67 per month.)

I.  Do you have any natural, adopted, or stepchildren who are living in your
    household?    ___ yes    ✓ no    How many? _____

## CERTIFICATION

I certify that the monthly income and additional information provided on this Affidavit
and the attached Schedules are true and accurate to the best of my knowledge.

_____  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉   5/24/94
                                   Signature               Date

Subscribed and sworn to before me:

_____ 5/24/94        _____ 2/10/95
Notary Public           Date             Expiration Date

8/91

FELL-00002955

Form 813 – Schedule D

| Name of Affiant | Docket Number |
|---|---|
| ███████████████ | F53-3-92 |

### AFFIDAVIT OF INCOME AND ASSETS – SCHEDULE D

#### RESOURCES AND LIABILITIES

**A.  Resources**

**1. Life Insurance Policies**

| Face Value | Person Covered | Beneficiary | Policy # & Company | Cash/Loan Value |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

| | Market Value | – Liens | = Equity |
|---|---|---|---|
| 2. IRA's & Keoughs - List separately: | | | |
| 3. Primary Residence - (if owned); Include Name on Deed: | | | |
| 4. Household Furnishings: STERO | $ 30.00 | | |
| RUNK BED | $75.00 | | |
| 5. Other: Describe and list separately: | | | |

**B.  Liabilities**

**1. Loans** (List each separately; identify what the loan is for)

| Date of Loan | Name of Lender | Collateral (if any) | Payment per Time Period | Balance |
|---|---|---|---|---|
| | GmAC | | | 800.00 |
| | | | | |
| | | | | |

**2. Installment Debts** (Include credit card balances)

| Date Commenced | To Whom Owed | What the Debt is For | Item Mortgaged |
|---|---|---|---|
| 4/94 | CITI BANK VISA | BACK DEbT 980.00 | 25 payment monthly |
| 4/94 | LANGROCK SPERRY & WOOL | BACK DEbT 5000.00 | 25 " " |

**3. Other Liabilities** (Include court ordered payments other than spousal or child support)

A 40.00 MONTH FINES (COURT) PEP BURLINGTON UT
80.00 MONTH CDAS COURT ORDERED BURLINTON PEP

### SEE REQUEST FOR ADDITIONAL INFORMATION ON BACK

3/17/92

FELL-00002956

C. Monthly Expenses

| | Self | Children | Total |
|---|---|---|---|
| Federal Taxes.................. | # 79.77 | | 79.77 |
| State Taxes.................... | 19.95 | | 19.95 |
| Social Security Taxes (FICA).. | 58.94 | | 58.94 |
| Rent or Mortgage.............. | 250.00 | | 250.00 |
| Property Taxes and Assessments | | | |
| Property Insurance............ | | | |
| Home Maintenance.............. | | | |
| Utilities..................... | 15.00 | | 15.00 |
| Electricity.................. | 30.00 | | 30.00 |
| Telephone.................... | | | |
| Water......................... | | | |
| Gas for Home................. | | | |
| Heat - Type: ELECTRIC ... | | | |
| Food.......................... | 100.00 | | 100.00 |
| Laundry and Cleaning......... | 20.00 | | 20.00 |
| Clothing..................... | 20.00 | 50.00 | 70.00 |
| Medical & Dental (not covered by insurance............... | 50.00 | | 50.00 |
| Insurance: Life.............. | | | |
| Health............. | 55.97 | 55.97 | 111.94 |
| Accident........... | | | |
| Other_____... | | | |
| Entertainment................. | 20.00 | | 20.00 |
| Vacation..................... | | | |
| Transportation: BUS | 20.00 | | |
| Gas........................ | | | 20.00 |
| Maintenance................. | | | |
| Registration............... | | | |
| Insurance................... | | | |
| Union and Other Dues and Employment Required Expenses (Please Specify): | | | |
| _____... | | | |
| _____... | | | |
| _____... | | | |
| Incidentals.................. | | | |
| Child Care Cost: Total cost minus subsidies minus tax credits.......... | | | |
| Extraordinary travel expenses incurred in exercising the right to periods of visitation or parent-child contact..... | 20.00 | | 20.00 |
| Other (Specify): | | | |
| _____... | | | |
| _____... | | | |
| _____... | | | |
| _____... | | | |
| Total....................... | 703.66 | | 865.60 |

3/17/92

FELL-00002957

CERTIFICATE NUMBER: ZIA[redacted] GRP NO 16198000

00 PA ICK

02 [redacted]

REFER TO YOUR OUTLINE OF
COVERAGE FOR DEDUCTIBLES
AND OFFICE VISIT MAXIMUMS
PRES DRUG COPAYMENT
$2 GENERIC/$5 BRAND
$50 DEDUCTIBLE

PREADMISSION REVIEW REQUIRED

BC PLAN 415 BS PLAN 915

## INDEPENDENT FOOD COMPANY, INC.
BURLINGTON, VERMONT 05401

PAY STATEMENT

| Co. Code | Department | File No. | Clock#/ID | Social Security No. / Name | Pay Period | Pay Date |
|---|---|---|---|---|---|---|
| G3X | 320210 | 96600 | | [redacted] | ENDING 04/01/94 | 4/07/94 |

| Hours/Units | Rate | Earnings | Type | Deduction | Type | Deduction | Type |
|---|---|---|---|---|---|---|---|
| 6771 | 62500 | 42319 | REG | 5167 | BLXFLX | | |
| 800 | 62500 | 5000 | HOLIDY | | | | |
| 429 | 62500 | 2681 | P.T.O. | | | | |
| 21 | 93750 | 197 | O/T | | | | |

INFO ON FIRE DRILL FOR APRIL 19, ATTACHED

| | Gross Pay | Federal Income Tax | Soc. Sec. Tax | Medicare Tax | State Income Tax | Local Income Tax | SUI/SDI | Net Pay |
|---|---|---|---|---|---|---|---|---|
| This Pay | 50197 | 3855 | 2792 | 653 | 964 | | | 36766 |
| YTD | 357925 | 27969 | 19949 | 4666 | 7331 | | | |

34.11 P.T.O.

© 1992 Automatic Data Processing, Inc.

TEAR HERE

## INDEPENDENT FOOD COMPANY, INC.
BURLINGTON, VERMONT 05401

PAY STATEMENT

| Co. Code | Department | File No. | Clock#/ID | Social Security No. / Name | Pay Period | Pay Date |
|---|---|---|---|---|---|---|
| G3X | 320210 | 96600 | | [redacted] | ENDING 05/13/94 | 5/19/94 |

| Hours/Units | Rate | Earnings | Type | Deduction | Type | Deduction | Type |
|---|---|---|---|---|---|---|---|
| 7546 | 62500 | 47163 | REG | 5167 | BLXFLX | | |

| | Gross Pay | Federal Income Tax | Soc. Sec. Tax | Medicare Tax | State Income Tax | Local Income Tax | SUI/SDI | Net Pay |
|---|---|---|---|---|---|---|---|---|
| This Pay | 47163 | 3400 | 2604 | 609 | 850 | | | 34533 |
| YTD | 495907 | 37643 | 27543 | 6442 | 9750 | | | |

41.49 P.T.O.

© 1992 Automatic Data Processing, Inc.

TEAR HERE

## INDEPENDENT FOOD COMPANY, INC.
BURLINGTON, VERMONT 05401

PAY STATEMENT

| Co. Code | Department | File No. | Clock#/ID | Social Security No. / Name | Pay Period | Pay Date |
|---|---|---|---|---|---|---|
| G3X | 320210 | 96600 | | [redacted] | ENDING 03/18/94 | 3/24/94 |

| Hours/Units | Rate | Earnings | Type | Deduction | Type | Deduction | Type |
|---|---|---|---|---|---|---|---|
| 7609 | 62500 | 47557 | REG | 5167 | BLXFLX | | |
| 354 | 62500 | 2213 | P.T.O. | | | | |

| | Gross Pay | Federal Income Tax | Soc. Sec. Tax | Medicare Tax | State Income Tax | Local Income Tax | SUI/SDI | Net Pay |
|---|---|---|---|---|---|---|---|---|
| This Pay | 49770 | 3791 | 2765 | 647 | 948 | | | 36452 |
| YTD | 307728 | 24114 | 17157 | 4013 | 6367 | | | |

35.94 P.T.O.

© 1992 Automatic Data Processing, Inc.

```
|=====================================================================
| ermont Family Court    SCHEDULING/ENTRY ORDER - JUDGE Cᴀꜱʜ M  Addison County
|=====================================================================
|   Docket 53-3-92 Andm  (div)        Currier vs. ██████
|---------------------------------------------------------------------
Case Track:    Not set                   Last judge: Edward J. Cashman
Hearing(s) set:Case Managers conference, Tue, 05/24/94, 09:00 AM
```

p# 1  plf  ✓  Currier, Karen M.
p# 2  def  ✓  ████████████        ____ Pro Se
p# 3  min  ___  ████████████      ____
p# 4  gp   ___  ████████████      ____
p# 5  gal  ___  Bennett, Susan    ____
p# 6  gal  ___  Mansfield, Tom    ____

| Motion/Petitions/Requests | Filed | ----- Current Status ----- | | |
|---|---|---|---|---|
| | | Status | Jud/Mag | Date |
| 1  R/to establish child support | 03/30/92 | order | MG-SJG | 03/25/93 |
| 2  R/to establish parental rights & resp. | 03/30/92 | finord | MSK | 02/24/93 |
| 3  R/to establish parent-child contact | 03/30/92 | finord | MSK | 02/24/93 |
| 4  R/for Property Division | 03/30/92 | finord | MSK | 02/24/93 |
| 5  M/for Temporary Relief | 03/30/92 | order | MSK | 01/26/93 |
| 6  M/Grandparent's Visitation. | 06/18/92 | finord | MSK | 02/24/93 |
| 7  M/Increased Grandparents Visit. | 10/21/92 | finord | MSK | 02/24/93 |
| 8  M/to Continue | 11/23/92 | granted | MSK | 11/23/92 |
| 9  P/to modify child support | 12/21/92 | order | MG-SJG | 03/25/93 |
| 10  M/for Enforcement | 04/13/93 | granted | EJC | 04/30/93 |
| 11  M/to Continue | 04/28/93 | denied | EJC | 04/29/93 |
| 12  M/for Enforcement | 06/03/93 | granted | EJC | 07/13/93 |
| 13  M/to Enforce Order for Parent-Child Co | 12/14/93 | order | STV | 03/25/94 |
| 14  M/for Enforcement of Child Support Ord | 03/11/94 | isset | EJC | 05/17/94 — Stip. entered |

```
=====================================================================
cheduled for:              Moving party:  Commenced  Completed  Continued
PR 14 M/for Enforcement of Child Suppo  plf    _____     _____      _____
---------------------------------------------------------------------
```

Cash M,

Judge's entries:  Stip. entered.

_____

_____

_____

_____

_____

_____

        ___5/24/94___        ___Judge Cash M___
           /Date/

f Record/Reporter _____  Asst. Judges _____
lt.ws

FELL-00002959

Family Court of Vermont
Addison County
5 Court Street
Middlebury, Vermont 05753
(802) 388-4605


P.O. Box 1052
Montpelier VT 05602

┌─────────────────────────────────────────────────────────────┐
│          N O T I C E   O F   H E A R I N G                    │
└─────────────────────────────────────────────────────────────┘

May 17, 1994

Karen M. Currier
                vs.                    Docket No. F53-3-92 Andmd
██████████

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

          Case Managers conference
                    Motion for Enforcement of Child Support Order

          Tuesday May 24, 1994 at 09:00 AM

                                        Debbie Bashaw, Assistant Court Clerk

Copies sent to:
     Grandparent ██████████
     Defendant ██████████
     Guardian ad litem Tom Mansfield
     Plaintiff Karen M. Currier

FELL-00002960

```
==================================================================
: Family Court   SC. DULING/ENTRY ORDER - MAGI: 'ATE    Addison County
==================================================================
:ket 53-3-92 Andm  (div)        Currier vs. [redacted]          |
------------------------------------------------------------------|
, Affidavit Plf ___    Def ___  |  Existing CSO ___    |    Not IV-D   |
------------------------------------------------------------------|
    plf  ___  Currier, Karen M.       ____
  : def  ___  [redacted]          .   ___  Pro Se
  3 min  ___  [redacted]              ____
  4 gp   ___  [redacted]              ____
  5 gal  ___  Bennett, Susan          ____
  6 gal  ___  Mansfield, Tom          ____
```

se Track:    Not set                      Last judge: Edward J. Cashman
aring(s) set:Hearing to Establish Wage Enforcement, Thu, 04/07/94, 03:00 PM

tion/Petitions/Requests               Filed      ----- Current Status  -----
                                                 Status  Jud/Mag Date

| Motion/Petitions/Requests | Filed | Status | Jud/Mag | Date |
|---|---|---|---|---|
| R/to establish child support | 03/30/92 | order | MG-SJG | 03/25/93 |
| R/to establish parental rights & resp. | 03/30/92 | finord | MSK | 02/24/93 |
| R/to establish parent-child contact | 03/30/92 | finord | MSK | 02/24/93 |
| R/for Property Division | 03/30/92 | finord | MSK | 02/24/93 |
| M/for Temporary Relief | 03/30/92 | order | MSK | 01/26/93 |
| M/Grandparent's Visitation. | 06/18/92 | finord | MSK | 02/24/93 |
| M/Increased Grandparents Visit. | 10/21/92 | finord | MSK | 02/24/93 |
| M/to Continue | 11/23/92 | granted | MSK | 11/23/92 |
| P/to modify child support | 12/21/92 | order | MG-SJG | 03/25/93 |
| M/for Enforcement | 04/13/93 | granted | EJC | 04/30/93 |
| M/to Continue | 04/28/93 | denied | EJC | 04/29/93 |
| M/for Enforcement | 06/03/93 | granted | EJC | 07/13/93 |
| M/to Enforce Order for Parent-Child Co | 12/14/93 | isset | EJC | 01/18/94 |
| M/for Enforcement of Child Support Ord | 03/14/94 | isset | MG-SJG | 03/14/94 |

```
==================================================================
```

ieduled for:                Moving party:  Commenced  Completed  Continued
R 14 M/for Enforcement of Child Suppoplf   _____    _____    __√__
------------------------------------------------------------------

gistrate's entries:
__ Proposed child support order pursuant to stipulation submitted and
      approved. Child support order issued.
__ Evidence taken; guideline determination by court; findings on the record.
      Child support order issued.
__ Chambers conference with counsel off the record; contested issues
      identified; rescheduled for hearing as per below.

_____

_____

_____

_____

at Proceeding:  Court ___    Magistrate ___    Date _____    Time _____

              Tape _____    Magistrate _____
```
==================================================================
            METHOD OF DISPOSITON OF SCHEDULED HEARING
```

| thdrawn- | --Stipulation--- | | -Default- | -Rescheduled-- | ---------Contested---------- |
| by | Hrg. | No Hrg. | | (No Hearing) | Order | Com&Cont | U.A. |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

FELL-00002961

Family Court of Vermont
Addison County
5 Court Street
Middlebury, Vermont 05753
(802) 388-4605

Tom Mansfield
P. O. Box 6
Monkton VT 05469

| N O T I C E   O F   H E A R I N G |
| --- |

March 14, 1994

Karen M. Currier
      vs.                                          Docket No. F53-3-92 Andmd
█████████████

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

        Hearing to Establish Wage Enforcement
                Motion for Enforcement of Child Support Order

        Thursday April 7, 1994 at 03:00 PM

*Debbie M Bashaw*
Debbie Bashaw, Assistant Court Clerk

Copies sent to:
    Grandparent ████████████ /
    Defendant ██████████████ / /
    Guardian ad litem Tom Mansfield /
    Plaintiff Karen M. Currier /

Note: This is a Child Support issue, Gal need not be present unless you choose to.

| Vermont Family Court | County | Docket Number 53-3-92 Andm |
|---|---|---|

## MOTION TO ENFORCE

| Plaintiff Karen Currier | V. | Defendant ███████████████████ |
|---|---|---|

I, Karen Currier _____ petition the court to enforce the child support order dated March 25 1993 _____ obligating ██████████████████ to pay 125.00 per ~~month~~ week for the support of ███████████████████ .

Since the court issued the child support order, the respondent has Paid for awhile then stopped Paying in November.

_____

_____

_____

I am requesting the Court To attach ████████████ paycheck to support his son ████████ We had an agreement of $50.00 a week and Pat has failed to pay since November.

Date 3-11 94

Signature Karen Currier

FILED

MAR 1 1 1994

ADDISON FAMILY COURT
CHIP EPPERSON, CLERK

Form 804

| Vermont Family Court | County | Docket Number |
|---|---|---|

## AFFIDAVIT

Plaintiff

Karen Currier    V.    Defendant ████████

In support of the complaint, motion, petition or objection filed in this case, subject to the penalties for perjury, I state the following facts, which are true to the best of my knowledge and belief:

█████ and I had an agreement for 50.00 a week for child support. █████ has failed to keep up with his agreement with me. (He has not paid since November) ████████ has a full time job so he has income. I ask the court to attach his paycheck for support since he is ~~unable~~ unwilling to support ████████ (child) himself.

Signature: Karen Currier    Date: 3-11-94    KC

Subscribed and sworn to before me:

Signature of Notary: Kere Confell

Date: 3/11/94

Expiration Date: 2/10/95

4/91 lsmc

FILED

MAR 11 1994

ADDISON FAMILY COURT
CHIP EPPERSON, CLERK

FELL-00002964

Form 800

| COVER SHEET | Vermont Family Court | County Addison | Docket Number 53-3-93 Anwm |
|---|---|---|---|

| Plaintiff Name and Address | Defendant Name and Address |
|---|---|
| Karen Currier RT3 Box 3410 Vergennes | V. ▮▮▮▮▮▮▮▮▮▮ |

Telephone #: Day (802) 759-2128
Evening (802) 759-2128

Telephone #: Day (_____)_____
Evening (_____)_____

**1. Case Type:**

A) ___ New   ☒ Existing   ___ Existing Human Service Board Order (attached)   **If this is an existing case:**   Name of Petitioner: _____

B) ✓ Divorce   ___ Annulment   ✓ Desertion & Nonsupport   ___ Parentage   ___ Legal Separation
___ Other:

C) Minor Children? ✓ Yes   ___ No   (If this is a New Case involving Minor Children, attach a completed Affidavit of Child Custody, Form No. 135.)

D) Are Parental Rights and Responsibilities Contested? ___Yes   ___No

**2.**

A) The ___Plaintiff   ___Defendant   receives services from the Office of Child Support Services.

B) The ___Plaintiff   ___Defendant   is or has been a recipient of public assistance from or through the Department of Social Welfare.

**3. Existing Court Orders** or Court proceedings involving the plaintiff, defendant, or their children:

A) ___Child Support Order:

| Date of the Order and the Date(s) it was Modified |
|---|
| Name and Location of the Court |
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |
| Docket Number |
| Name and Location of the Court |

B) ✓ Domestic Abuse, Guardianship, or Adoption:

**4. Action Requested:**

✓ Establish Support
  ✓ Child
  ___ Maintenance Supplement
  ___ Spouse
___ Establish Parental Rights and Responsibilities (Custody)
___ Establish Parent-Child Contact (Visitation)
___ Establish Parentage
✓ Wage Withholding
___ Other:

___ Modify Support
  ___ Child
  ___ Maintenance Supplement
  ___ Spouse
___ Modify Parental Rights and Responsibilities (Custody)
___ Modify Parent-Child Contact (Visitation)
___ Contempt
___ Enforcement

MAR 11 1994
ADDISON FAMILY COURT
CHIP EPPERSON, CLERK
$5⁰⁰ attached

**5. Service of Process:**

___ Service Completed; Return/Acceptance of Service is attached
___ Plaintiff's/Petitioner's Attorney will Serve
___ No Child Support Issues; Plaintiff/Petitioner will Serve
___ Child Support Issues; Clerk will Serve:
  ___ Serve by Certified Mail   ___ Serve by Personal Service
  ___ Serve by 1st Class Mail with Acknowledgment

**6.** ___ Plaintiff   ___ Petitioner   requests assistance from the Office of Child Support Services.

Rev. 11/91  lsmc

## SEE INSTRUCTIONS ON THE BACK OF THIS COVER SHEET

FELL-00002965

COURT INFORMATION SHEET

_Karen Currier_
Plaintiff                    VT FAMILY COURT    ADDISON COUNTY

v.                                          Docket # _____

███████████████████

Plaintiff:    _Currier_         _Karen_        _M_
              Last name         First name     M.I.

_Rt 3 Box 3711_
Street address

_Vergennes  Vt._                              _05491_
City                State                     Zip Code

_759-2128_        _388-0930_                  ██████████
Phone number:  Home      Work                 Social Security #

Defendant:    Last name      First name       M.I.
              █████████   ██████████      ███████
Street address    ██

City                State                     Zip Code

Phone number:  Home      Work                 Social Security #

Children:

| Last Name | First Name | M.I. | DOB | SS# |
|---|---|---|---|---|
| ████████ | █████████ | ██ | ██████████ | ██████████████ |

FILED

███ 1 1 1994

ADDISON FAMILY COURT
CHIP EPPERSON, CLERK

FELL-00002966

March 15, 1994

Re:  Karen Currier vs. ██████
Docket # - F53-3-92AN DMD

Rutland Family Court
83 Center Street
Rutland, Vt.  05701



FILED

MAR 1 6 1994

RUTLAND FAMILY COURT

Dear Gentleperson:

I am writing this letter because of concerns I have regarding the welfare of my grandson, ██████ and the reason for the hearing which will be held on March 25, 1994 before your court.

It is my understanding that Karen ██████ who is the mother wishes to reduce visitation between ██████ and my son, ██████  I believe that this would be detrimental to ██████ who loves his father.  There has always been a problem with visitation.  Over time, Karen has had more and more excuses to prevent my son from exercising his court ordered visitation. When I had the visitation rights, while my son was incarcerated, she would do the same to me.  However, I only contacted the court once because of it, since I did not wish to cause trouble for fear my son would not get to see him at all.  So, I would just like the Court to be aware that this is not a new problem.  Karen has never abided by the Court Order and I have been amazed at how my grandson is being used as a pawn by her, to punish my son.
That is what is appears to me, anyway.

Since I am the person who transports my grandson to see his father, I have first hand knowledge of the interaction between my son and ██████  ██████ spends quality time with ██████ and always has things to do, planned out in advance.  The problem as I see it began when ██████ did not want to go home but wanted to remain with his father.  I believe this is perfectly normal for a child who has experienced loss, after going through a divorce and rather than rip this child away from his father, he should be seeing a psychologist to help him deal with feelings that he cannot express as an adult would.  However, I believe that it is Karen that cannot cope with the fact that ██████ does not want to leave his father and that since she now has a new life that we are thorns that she would rather not deal with.

My grandson has been separated from his father, through a divorce, and was replaced by another man soon after and yet no one is questioning that this is another adjustment my grandson has had to go through.  It is no wonder he is experiencing behavioral problems and yet my son, who sees ██████ only ten percent of the time is being totally blamed for all of ██████ problems.

I cannot, in good conscience stand by and watch my son slowly lose his son, when I know that there is no valid reason for it.  ██████ lives at Dismas House in Burlington and has made remarkable progress in rehabilitating himself and only wishes to see his son as the Court ordered in the first place.

*I believe that what Karen is doing is benefiting her and no concern has been given to the long-term effect that it is having on my grandson, ███████ Depression and hostility are two factors that I can foresee for ███████ in the long run and also that he might blame himself if he cannot see his father, as I believe he has every right to do.*

*I would also hope that ███████ guardian, Tom Mansfield be assigned to remain as such, even after this proceeding as I think ███████ needs someone who will have only his best interest at heart. Also, if the court feels my son should continue seeing ███████ every other week-end, then someone should enforce it, since Karen will continue the same pattern, unless there is someone or something to make sure it is.*

*Thank you for listening .*

*Sincerely,*



## Vermont Dismas House

**A residence for former prisoners**

March 1, 1994

FILED

MAR   2 1994

RUTLAND FAMILY COURT
Rutland, Vermont

RUTLAND FAMILY COURT

To Whom it May Concern:

█████ has resided at Vermont Dismas House since June of 1993. In July of 1993 he became a night manager. Pat is a valued member of this community who has gained the respect of those around him. As a director of Vermont Dismas House I value the gifts that he brings to this community.

As night manager ███ is responsible for handling any emergencies that may arise during the night and on weekends. There has never been a situation in the house that ███ has not been able to deal with. He is effective as a night manager because he remains calm and thoughtful. Recently he has become trained as a facilitator and facilitates house meetings.

Furthermore, I have come to known ███ as a father. I believe that any child would benefit from having a father like ███. He is a compassionate and caring father who is consistent and thoughtful about his responsibilities. ███ discussed the importance of his relationship with his son before moving to Dismas House. At that time he made it clear that his son was very important to him and that he wanted ██████ to be in an environment that was nurturing for him. He stressed that he wanted a consistent relationship in which his son would know that he could rely on.

Since those early days ███ has made a home here for ██████ on the weekends that he was able to visit. He has planned those weekends around ██████ in an effort to make him feel at home. I have been present when ██████ is visiting and can attest to the fact that Pat is caring and loving and yet consistent and thoughtful about the way that he is raised.

Dismas House has been home to many children over the years. Whether they are the children of volunteers visiting for dinner, the director's children, or residents children visiting on weekends and for holidays. The one thing that they all have in common is that they are a valued part of the community when they are here. Recently my new baby has joined the community as she comes to work with me daily. I feel that she is blessed to have such an extended family in which she is valued.

Sincerely,

Kimberly S. Parsons
Director

DISMAS, INC. 96 Buell St., Burlington, VT  05401

FELL-00002969

Form Number 850Rd

**RUTLAND FAMILY COURT**
**83 Center Street**
**·P.O. Box 6644**
**Rutland, Vermont  05702**
**802-773-5856**

Date
3/5/94

To:

In Re: | MOTION TO ENFORCE PARENTAL CONTACT

Docket Number
F53-3-92Andmd

Re: | Plaintiff
KAREN CURRIER    **V.**    Defendant ▮▮▮▮▮▮▮▮

## NOTICE OF HEARING

You are notified to appear at the **Rutland Family Court** in connection with the above named case on:

Date
3/25/94    at    Time
10:00 a.m.    m

for the following:

| | |
|---|---|
| ___ Request for a Temporary Order | ___ Juvenile Hearing on the Merits |
| ___ Uncontested Final Divorce | ___ Juvenile Disposition Hearing |
| ___ Contested Final Divorce | ___ Juvenile Review Hearing |
| ___ Status Conference | ___ Motion to Dismiss |
| ___ Motion to Modify | ___ Motion to Compel |
| ___ Motion to Enforce | ___ Motion for Wage Withholding |
| ___ Motion for Contempt | ___ Motion to Withdraw as Counsel |
| ___ Show Cause Hearing | _XX_ Hearing on all Pending Motions |
| ___ Judicial Review Hearing | Other |
| ___ Hearing on the Merits | ___ |

**The Court has allotted** _2 Hours_ **Minutes/Hours/Days for this hearing.**

__XX__ All Parties Must be Present

Assistant Family Court Clerk
Clarissa A. Romano, Deputy Family Case Manager

cc:  __xx__Plaintiff's Attorney
__xx__Defendant's Attorney xxxx
___ State's Attorney
___ Public Defender
___ Assistant Attorney General

___ Department of SRS
_xx_ Guardian Ad Litem
___ Office of Child Support Services

Other
___

r10/92 lsmc

FELL-00002970

Form No. _____
Family Court
Notice of Hearing

FAMILY COURT, COUNTY OF   Addison_____

_____

NOTICE OF HEARING
_____

Docket  No.  F53-3-92AnDmd_____

___Karen Currier_____    VS _____    _____
Plaintiff                                        Defendant

THIS MATTER IS SCHEDULED FOR  A STATUS CONFERENCE AT THE RUTLAND FAMILY

COURT *_____

ON  March 2, 1994_____    AT__10:00 a.m._____

                                        ~Debbie M Bashaw
                                        CLERK, FAMILY COURT


                                        DATE  2/15/94_____

Copy to__J.Barrera, Esq._____

          _____._____

          ___T.Mansfield, GAL____



          original-court
            copies-attorneys


*This status conference is with the Family Court Case Manager who will
 determine if there may be an agreement that can be reached and/or how
 much time is needed before the Judge. This is Rutland Family Court's pro-
 cedures if you have further questions you may telephone their office
 and speak with Clarissa Romano.

FELL-00002971

```
===================================================================
ırmont Family Court    SCHEDULING/ENTRY ORDER - JUDGE    Addison County
===================================================================
   Docket 53-3-92 Andm  (div)        Currier vs. ████
-------------------------------------------------------------------
:ase Track:    Not set              Last judge: Edward J. Cashman
[earing(s) set:Motion Hearing, Fri, 02/11/94, 03:00 PM
-------------------------------------------------------------------
# 1   plf   ✓ Currier, Karen M.      ✓ Barrera, John R.
# 2   def   ✓ ████████████           ✓ Pro Se
# 3   min   ___                       ___
# 4   gp    ___                       ___
# 5   gal   ___ Bennett, Susan        ___
-------------------------------------------------------------------
otion/Petitions/Requests          Filed    ----- Current Status -----
                                            Status  Jud/Mag  Date
  R/to establish child support     03/30/92  order   MG-SJG  03/25/93
  R/to establish parental rights & resp.03/30/92 finord MSK  02/24/93
  R/to establish parent-child contact 03/30/92 finord MSK    02/24/93
  R/for Property Division           03/30/92  finord  MSK     02/24/93
  M/for Temporary Relief            03/30/92  order   MSK     01/26/93
  M/Grandparent's Visitation.       06/18/92  finord  MSK     02/24/93
  M/Increased Grandparents Visit.   10/21/92  finord  MSK     02/24/93
  M/to Continue                     11/23/92  granted MSK     11/23/92
  P/to modify child support         12/21/92  order   MG-SJG  03/25/93
0 M/for Enforcement                 04/13/93  granted EJC     04/30/93
1 M/to Continue                     04/28/93  denied  EJC     04/29/93
2 M/for Enforcement                 06/03/93  granted EJC     07/13/93
3 M/to Enforce Order for Parent-Child Co12/14/93 isset EJC    01/18/94
===================================================================
cheduled for:            Moving party:  Commenced Completed Continued
PR 13 M/to Enforce Order for Parent-Chdef       _____    _____   _____
-------------------------------------------------------------------
udge's  entries:
```

— Recommend parents attend
(children) coping with divorce...
E/or mediation...

— Reset for hearing before another judge.
when read...

✓ and see of Susan Bennett is
available __(?)

_____2/11/94_____          Edward J. Cashman
      Date                         Judge

Ff Record/Reporter _____    Asst. Judges _____
njdflt20.ws

FELL-00002972

Family Court of Vermont
Addison County
5 Court Street
Middlebury, Vermont 05753
(802) 388-4605

Susan Bennett
36 Evergreen Lane
Middlebury VT 05753

---

## N O T I C E   O F   H E A R I N G

---

January 18, 1994

Karen M. Currier
vs.                                    Docket No. F53-3-92 Andmd

█████████████

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

      Motion Hearing

           Motion to Enforce Order for Parent-Child Contac


      Friday February 11, 1994 at 03:00 PM

                            Debbie Bashaw
                            Debbie Bashaw, Assistant Court Clerk

Copies sent to:
    Attorney John R. Barrera for Plaintiff Karen M. Currier/via telephone
    Grandparent ██████████████
    Guardian ad Litem Susan Bennett
    Defendant ████████████ ✓ via telephone.

FELL-00002973

Family Court of Vermont
Addison County
5 Court Street
Middlebury, Vermont 05753
(802) 388-4605


Susan Bennett
36 Evergreen Lane
Middlebury VT 05753


## N O T I C E   O F   H E A R I N G

December 21, 1993

Karen M. Currier
                    vs.                         Docket No. F53-3-92 Andmd



This is to notify you to appear at the Court named above in connection
with the above named case for the following:

        Motion Hearing
                    Motion to Enforce Order for Parent-Child Contac


        Thursday January 20, 1994 at 08:30 AM


                                        Debbie B.                P 416 366 127

Copies sent to:
    Attorney John R. Barrera for Plaintiff Karen M.                **Receipt for**
    Grandparent                                                    **Certified Mail**
    Guardian ad litem Susan Bennett                                No Insurance Coverage Provided
    Defendant                                                      Do not use for International Mail

**SENDER:**
• Complete items 1 and/or 2 for additional services.
• Complete items 3, and 4a & b.
• Print your name and address on the reverse of this form so that we can
return this card to you.
• Attach this form to the front of the mailpiece or on the back if space
does not permit.
• Write "Return Receipt Requested" on the mailpiece below the article number.
• The Return Receipt will show to whom the article was delivered and the date
delivered.

I also wish to receive the
following services (for an extra
fee):
1. ☐ Addressee's Address
2. ☑ Restricted Delivery
Consult postmaster for fee.

3. Article Addressed to:

Karen Currier
P.O. Box 3710
Vergennas VT 05491

4a. Article Number
P 416 366 127

4b. Service Type
☐ Registered          ☐ Insured
☐ Certified           ☐ COD
☐ Express Mail        ☐ Return Receipt for
                         Merchandise

5. Signature (Addressee)
Karen Currier

6. Signature (Agent)

7. Date of Delivery
12/27/93

8. Addressee's Address (Only if requested
and fee is paid)

PS Form **3811**, December 1991    ☆U.S. GPO: 1992-323-402    **DOMESTIC RETURN RECEIPT**

| Vermont<br>Family Court | ADDISON<br>~~Chittenden~~<br>County | Docket Number<br>FS3-3-92 ANDMD |
|---|---|---|

## MOTION TO ENFORCE ORDER FOR
## PARENT CHILD CONTACT

| Plaintiff<br>KAREN M RYAN | V. | Defendant<br>▮▮▮▮▮▮▮▮▮▮ |
|---|---|---|

The Plaintiff (Defendant,) ▮▮▮▮▮▮▮▮▮▮ petitions the Court
to enforce parental contact as defined in the final order issued by Judge
_Cashman_ , dated _2/24/93_ , which states the contact
shall be as follows: _every other weekend ~~(alternating)~~_
_(alternating Weekends)_
_____
_____
_____

The attached affidavit provides specific facts based on my own knowledge,
information, and belief, supporting this motion to enforce.

Signed ▮▮▮▮▮▮▮▮▮▮ _____

Dated _12/8/93_

DEC 14 1993

FELL-00002975

Form 804

**\* EMERGENCY \***

| Vermont Family Court | County ADDISON | Docket Number F53-3-92 AnDmd |
|---|---|---|

### AFFIDAVIT

| Plaintiff KAREN M RYAN | V. | Defendant |
|---|---|---|

**In support of the complaint, motion, petition or objection filed in this case, subject to the penalties for perjury, I state the following facts, which are true to the best of my knowledge and belief:**

On 12/7/93 I recieved a call from Karen (who once again sounded intoxicated) informing me that my son ▓▓▓▓ would not be coming for his usual bi-weekly ~~this~~ weekend visit. She stated that she felt ▓▓▓▓ needed a break from seeing me and that not seeing me was in his best interest. She further stated that "maybe" he could see me at Christmas which also happens to be one of our scheduled weekends ~~that~~ for visitation

On 12/9/93 I phoned Karen at work to see if she had changed her mind and again she stated that ▓▓▓▓ couldn't come. This will be the third enforcement order that I have filed, she seems to have no reguard for the courts decision on child visitation, this enforcement order is being filed as a last resort

Subscribed and sworn to before me:

_Joanne Charbonneau_
Signature of Notary

Date 12-13-93

Expiration Date 2/95

4/91 lsmc

DEC 1 4 1993

Form 830

| Vermont Family Court | County ADDISON | Docket Number F53-3-92 AnDmd |
|---|---|---|

PRO SE APPEARANCE

| Plaintiff KAREN M. RYAN | V. | Defendant ███████████ |
|---|---|---|

I enter my pro se appearance in this case. I will represent myself. Unless I or an attorney notify you otherwise, no attorney will represent me in this case.

All Court papers may be mailed to me by first class mail at the address listed below. I understand that it is my responsibility to notify the Court of any change in my mailing address.

I understand that I must provide copies of any papers filed with the court to all other parties involved in my case.

Name: ███████████

Street Address: 96 BUELL ST
BURLINGTON UT

Mailing Address (if different from Street Address):
███████████     DEC 14 1993
PO BOX 5473
BURLINGTON UT
05402-5473

Telephone Number: Day: (802) 660-0013 EXT 280
Evening (802) 658-0381

12/8/93
Date

███████████
Signature

ls 3/93

FELL-00002977

SHERIFF SERVICE INFORMATION SHEET

The name and address of person requesting service.

Name_____

Address PO BOX 5473_____

Burlington Vt. 05402-5473

The name, home address and work address of the person to be served. (PLEASE
NOTE: the addresses must be physical locations; service can **not** be provided to
a P.O. Box or RFD number.)

Name Karen m. Ryan (currier)

Home address P.O. Box 3710 Vergennes, VT 05491

Home phone 759·2128

Times person is likely to be at this location:

_____

Work address Grand Union

Middlebury Vt

Times person is likely to be at this location:

morning or afternoon

Physical description of the person to be served:

| white | F | 5'7" | 110 | | Brown |
|-------|-----|--------|--------|----------------|------------|
| RACE | SEX | HEIGHT | WEIGHT | BEARD MUSTACHE | HAIR Color |

IDENTIFYING MARKS

_____

Description of their car: Dodge Omni 82-84 Silver

| ? | Karen works in Bakery Dept of Middlebury |
|--------------|------------|
| PLATE NUMBER | MISC. INFO. |

Grand-Union

Will defendant avoid service or is there anything the serving officer should
know when he/she attempts service of the paperwork on the person? Or any
specific instructions in providing service:
no

_____

_____

DEC 1 4 1993

FELL-00002978

Form 800

| COVER SHEET | Vermont Family Court | County ADDISON | | Docket Number F53-3-92 AnDmd |
|---|---|---|---|---|

| Plaintiff Name and Address | Defendant Name and Address |
|---|---|
| KAREN M RYAN<br>PO BOX 3710<br>VERGENNES UT | V. ▮▮▮▮▮▮<br>PO BOX 5473<br>BURLINGTON UT 05402-5473 |
| Telephone #: Day ( ____ ) GRAND-UNION MIDDLEBURY<br>Evening ( ____ ) 759-2178 | Telephone #: Day (802) 660-0013 EXT 280<br>Evening (802) 658-0 |

1. **Case Type:**

A) ___ New ___ Existing ___ Existing Human Service Board Order (attached)

B) ✔ Divorce ___ Annulment ___ Desertion & Nonsupport ___ Parentage ___ Legal Separation
___ Other:

If this is an existing case:

| Name of Petitioner |
|---|
| |

C) Minor Children? ✔ Yes ___ No (If this is a New Case involving Minor Children, attach a completed Affidavit of Child Custody, Form No. 135.)

D) Are Parental Rights and Responsibilities Contested? ___ Yes ✔ No

2.  A) The ___ Plaintiff ___ Defendant receives services from the Office of Child Support Services.
    B) The ___ Plaintiff ___ Defendant is or has been a recipient of public assistance from or through the Department of Social Welfare.

3. **Existing Court Orders** or Court proceedings involving the plaintiff, defendant, or their children:

A) ___ Child Support Order:

Date of the Order and the Date(s) it was Modified

Name and Location of the Court

Docket Number

B) ✔ Domestic Abuse, Guardianship, or Adoption:

Docket Number
F53-3-92 AnDmd

Name and Location of the Court
ADDISON FAMILY COURT

4. **Action Requested:**

___ Establish Support
  ___ Child
  ___ Maintenance Supplement
  ___ Spouse
___ Establish Parental Rights and Responsibilities (Custody)
___ Establish Parent-Child Contact (Visitation)
___ Establish Parentage
___ Wage Withholding
___ Other:

___ Modify Support
  ___ Child
  ___ Maintenance Supplement
  ___ Spouse
___ Modify Parental Rights and Responsibilities (Custody)
___ Modify Parent-Child Contact (Visitation)
___ Contempt
✔ Enforcement

DEC 1 4 1993

5. **Service of Process:**

___ Service Completed; Return/Acceptance of Service is attached
___ Plaintiff's/Petitioner's Attorney will Serve
___ No Child Support Issues; Plaintiff/Petitioner will Serve
___ Child Support Issues; Clerk will Serve:
  ✔ Serve by Certified Mail ___ Serve by Personal Service
  ___ Serve by 1st Class Mail with Acknowledgment

$5.25 attached

6. ___ Plaintiff ___ Petitioner requests assistance from the Office of Child Support Services.

FELL-00002979

STATE OF VERMONT

ADDISON FAMILY COURT
5 COURT STREET
MIDDLEBURY, VERMONT 05753
(802)388-4605

Karen Ryan

    v.                                          Docket No. F53-3-92AnDmd

████████████

ACCEPTANCE OF SERVICE

    I, ██████████████ hereby accept service of the Entry Order filed October 18, 1993 in the above-entitled cause and waive all other form of service.

Date  11/5/93                    Signature  ████████████████████

NOV    8 1993

NOTE: Enclosed please find a copy of the Court Order in your case. Please sign,
      date and return only this Acceptance of Service. The Order is yours to
      keep for your records.

FELL-00002980

```
===========================================================================
rmont Family Court     SCHEDULING/ENTRY ORDER - JUDGE        Addison County
===========================================================================
   Docket 53-3-92 Andm  (div)         Ryan vs. ████
---------------------------------------------------------------------------
ase Track:    Not set                    Last judge: Edward J. Cashman
earing(s) set:Motion Hearing, Tue, 07/13/93, 08:30 AM
---------------------------------------------------------------------------
# 1  plf  ____  Ryan, Karen M.          ____  Pro Se
# 2  def  ____  ████                    ____  Pro Se
# 3  min  ____  ████                    ____
# 4  gp   ____  ████                    ____
# 5  gal  ____  Bennett, Susan          ____
---------------------------------------------------------------------------
otion/Petitions/Requests              Filed     ----- Current Status -----
                                               Status  Jud/Mag Date
   R/to establish child support       03/30/92  order   MG-SJG  03/25/93
   R/to establish parental rights & resp.03/30/92  finord  MSK    02/24/93
   R/to establish parent-child contact 03/30/92  finord  MSK    02/24/93
   R/for Property Division            03/30/92  finord  MSK    02/24/93
   M/for Temporary Relief             03/30/92  stiphrg MSK    01/26/93
   M/Grandparent's Visitation.        06/18/92  finord  MSK    02/24/93
   M/Increased Grandparents Visit.    10/21/92  finord  MSK    02/24/93
   M/to Continue                      11/23/92  granted MSK    11/23/92
   P/to modify child support          12/21/92  order   MG-SJG  03/25/93
 0 M/for Enforcement                  04/13/93  granted EJC    04/30/93
 1 M/to Continue                      04/28/93  denied  EJC    04/29/93
 2 M/for Enforcement                  06/03/93  isset   EJC    06/03/93
===========================================================================

cheduled for:              Moving party: Commenced  Completed  Continued
PR 12 M/for Enforcement         def        _____     _____      _____
---------------------------------------------------------------------------
```

udge's  entries:  *(handwritten)*  — parent child visitation agreed between parties — every other weekend starting 7-23 or 24 until Friday or Saturday (depending on whom) ... Mrs ████ expects attorney child. — ... father and mother — Every other week — No contact except in Emergency for 90 days — pursuant for further motion or heard parties stipulation. ... hearing on need to continue order, 10/14/93 at 830

7-13-93
Date

Edward J. Cashman
Judge

f Record/Reporter _____    Asst. Judges _____
ajdflt20.ws

Family Court of Vermont
Addison County
5 Court Street
Middlebury, Vermont 05753
(802) 388-4605

~~Susan Bennett~~
~~36 Evergreen Lane~~
~~Middlebury VT 05753~~

| N O T I C E   O F   H E A R I N G |
| --- |

June 3, 1993

Karen M. Ryan
        vs.                      Docket No. F53-3-92 Andmd

████████████

This is to notify you to appear at the Court named above in connection
with the above named case for the following:

      Motion Hearing
           Motion for Enforcement

      Tuesday July 13, 1993 at 08:30 AM

P 253 777 946

Jane Costel      Receipt for

Copies sent to:
    Plaintiff Karen M.
    Grandparent ████
    ~~Guardian ad Litem~~
    Defendant ████

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, and 4a & b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☒ Restricted Delivery
Consult postmaster for fee.

3. Article Addressed to:

Karen Ryan
PO Box 3710
Verg., VT 05491

4a. Article Number
P 253 777 946

4b. Service Type
☐ Registered      ☐ Insured
☒ Certified       ☐ COD
☐ Express Mail    ☐ Return Receipt for Merchandise

7. Date of Delivery
6-8-93

5. Signature (Addressee)
X Karen B. Ryan
6. Signature (Agent)

8. Addressee's Address (Only if requested and fee is paid)

53-3-92

PS Form **3811**, December 1991   ☆ U.S.G.P.O.: 1992-307-530   **DOMESTIC RETURN RECEIPT**

PS Sent 6/3/93

| Vermont Family Court | County Addison | Docket Number F53-3-92 Andm |
|---|---|---|

MOTION TO ~~MODIFY~~ Enforce (PR) PARENTAL CONTACT

| Plaintiff Karen Ryan | V. | Defendant ▮ |
|---|---|---|

1. Petitioner, ▮ requests the
court ~~modify~~ enforce (PR) it's final order dated Feb 24 1993 & April 30, 1993
granting ▮ parental contact with his/her
minor child(ren) ▮ .

~~2. Since the Court issued the order for parental contact, there has
been a real, substantial and unanticipated change of circumstances.
I have detailed the change of circumstances in the attached
affidavit.~~

3. I am requesting the Court ~~modify~~ Enforce (PR) parental contact to be Same as
outlined in the Family Courts decision of ~~4~~ April (PR)/30/93. Karen does not Seem
to understand her responsibilities in allowing me access to my Son, via
▮ picking him up every other weekend, {As stipulated by the
Court} Please refer to facts on attached affidavit Concerning
problems being encountered with Plaintiff abiding by said decision.

FILED
JUN 3 1993
[COURT CHIEF SUPERIOR CLERK]

Dated at Woodstock , Vermont this 30 day of May , 1993.
Signature ▮

JUN 2 1993

Form 804

| Vermont Family Court | County Addison | Docket Number F53-3-92 Ardm |
|---|---|---|

### AFFIDAVIT

| Plaintiff Karen Ryan | Defendant V. ████████████ |
|---|---|

**In support of the complaint, motion, petition or objection filed in this case, subject to the penalties for perjury, I state the following facts, which are true to the best of my knowledge and belief:**

On 5/26/93 my Mother ████████ Spoke to Karen ~~regarding~~ regarding (PR) my bi-weekly visitation. At the time of this telephone conversation my Mother states that Karen's speech was slurred, ~~and~~ her statements were incoherent, and sounded as if she (Karen) was under the influence of alcohol. When addressed on the matter of transportation for my appointed Sunday visit 5/30/93, Karen stated that my son michael would not be available, due to the fact it would interfere with a previously made plan. I experienced this same behavior (PR) ~~situation~~ from 2/93 to 4/93 up to my last family court appearance. As of late I'm noticing the similar situation reoccuring I went to court on ~~4~~April (PR)/30 to thoroughly resolve this issue once and for all. The visiting time table is clear cut enough - no previous plans should be made on Karens part which interfers with her ~~responsibih~~ (PR) responsibilities As expressed by the court visitation policy if I can mark a calendar why can't she. Thank-you for your time ████████ | Date 5/30/93

Subscribed and sworn to before me:

| _Signature of Notary_ (signature) | CFSS | Date 05-30/93 | Expiration Date 02/94 |
|---|---|---|---|

FILED
4/9? lsmc

JUN 3 1993

ADDISON FAMILY COURT
CHIP EPPERSON, CLERK

ADDRESS SHEET

VT FAMILY COURT            ADDISON COUNTY        DOCKET ＃ _F 53-3-92 Andm_

~~Karen~~ (PR)  ███████        Karen              M.
Plaintiff   last name           first name        middle initial

PO Box 3710
Street address

Vergennes          Vt                  05491
City               State               Zip Code

        (?)              Grand Union (Middlebury)
Phone number   home                  work

_____

████████████████████████████████████████
Defendant    last name         first name         middle initial

PO Box 47 (please send any further correspondence to this address
Street address

Barre              Vt                  05641
City               State               Zip Code

476-3070 (mother)            ___
Phone number   home                  work

_____



FELL-00002985

Form 800

| COVER SHEET | Vermont Family Court | County Addison | | Docket Number F53-3-92 Andm |
|---|---|---|---|---|

| Plaintiff Karen Ryan | V. | Defendant ███████████ |
|---|---|---|
| Tel. #: Day _____ Evening: _____ | | Tel. #: Day _____ Evening: 476·3070 (Mothers) |

1. Case Type: A) __ New    ✓ Existing
   B) ✓ Divorce    __ Annulment    __ Desertion & Nonsupport
   __ Parentage    __ Legal Separation    __ Other: _____
   C) Minor Children?    __ Yes    __ No

2. The __ Plaintiff    __ Defendant is a recipient of public assistance from or through the Department of Social Welfare.

3. Existing Court Orders or Court proceedings involving the plaintiff, defendant, or the child(ren) of the plaintiff and the defendant:
   A) __ Child Support Order: Date of the Order and the date(s) it was modified: _____. Name and location of court _____
   B) __ Domestic Abuse, Guardianship, or Adoption: Docket # _____ _____ Name and location of court _____

4. If the plaintiff and the defendant together have minor children, attach a completed Affidavit of Child Custody, Form No. 135.

5. Action Requested:
   __ Establish Support                        __ Modify Support
      __ Child                                    __ Child
      __ Maintenance Supplement                   __ Maintenance Supplement
      __ Spouse                                   __ Spouse
   __ Establish Parental Rights and             __ Modify Parent Rights and
      Responsibilities (Custody)                  Responsibilities (Custody)
   __ Establish Parent-Child Contact            __ Modify Parent-Child Contact
      (Visitation)                                (Visitation)
   __ Establish Paternity                       __ Contempt
   __ Wage Withholding                          ✓ Enforcement
                                                __ Other: _____

6. Service of Process:
   __ No Child Support Issues; Plaintiff will serve                    Paid $5.00
   __ Child Support Issues; Clerk will serve
      __ Serve by 1st Class Mail with Acknowledgment                   # 2483
      __ Serve by Certified Mail; $_____ attached
      __ Serve by Personal Service; $_____ attached
   __ Service Completed; Return/Acceptance of Service is attached

7. __ Plaintiff    __ Petitioner requests assistance from the Office of Child Support Services.

SEE INSTRUCTIONS ON THE BACK OF THIS COVER SHEET

FILED
JUN 3 1993
11/16/90
ADDISON FAMILY
CHIP EPPERSON, CLERK

FELL-00002986